UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA      *      Case No. 16—MJ—1000(PK)
                              *
                              *      Brooklyn, New York
                              *      November 12, 2016
      v.                      *
                              *
DAN ZHONG,                    *
                              *
            Defendant.        *
                              *
* * * * * * * * * * * * * * * *

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          IAN RICHARDSON, ESQ.
                             DOUGLAS PRAVDA, ESQ.
                             Asst. United States Attorney
                             United States Attorney's Office
                             271 Cadman Plaza
                             Brooklyn, NY 11201


For the Defendant:           THOMAS FITZPATRICK, ESQ.


Certified Interpreter:       MS. PATSY ONG




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced at 1:19 p.m.)

2              THE CLERK:  Okay.  United States v. Dan Zhong.

3    Counsel, please state your name for the record.

4              MR. RICHARDSON:  Good afternoon, Your Honor.  Ian

5    Richardson and Douglas Pravda for the United States.

6              THE COURT:  Good afternoon.

7              MR. FITZPATRICK:  Good afternoon, Your Honor.

8    Thomas Fitzpatrick for the defendant, Dan Zhong.

9              THE COURT:  All right.  And I take it that's -- and

10   I'm assuming it's a Chinese speaking interpreter.  Is that --

11             MR. FITZPATRICK:  It's a Mandarin interpreter, Your

12   Honor.

13             THE COURT:  Mandarin.  All right.  And can we have

14   the interpreter state her name for the record?

15             THE INTERPRETER:  Patsy Ong.

16             THE COURT:  All right.  Ms. Ong, is it?

17             THE INTERPRETER:  Yes, Your Honor.

18             THE COURT:  O-H-N-G, or am I pronouncing it --

19             THE INTERPRETER:  O-N-G, Ong.

20             THE COURT:  O-N -- right.  Ms. Ong, please raise

21   your right hand.

22        (The interpreter is sworn.)

23             THE COURT:  All right.  Then I want to confirm, Mr.

24   Fitzpatrick, have you had an opportunity with the aid of Ms.

25   Ong, to review the complaint that has previously been signed

3

1    that charges your client with a federal crime?

2              MR. FITZPATRICK:  Yes, Your Honor.

3              THE COURT:  All right.  And did he understand the

4    charges against him?

5              MR. FITZPATRICK:  I think he did, Your Honor.  I

6    did not go through it with him in -- I didn't read the whole

7    thing to him.  I have only seen him this morning since I

8    received a copy of it but I described the three charges and,

9    yes, I think he understands them.

10             THE COURT:  All right.  Well, do you believe he

11   requires more time to fully review the charges against him,

12   because that's certainly important.

13             MR. FITZPATRICK:  I don't think for purposes of

14   today's hearing, it's necessary, Judge.  No.

15             THE COURT:  All right.  All right.

16             Mr. Zhong, I want you to know that if wish to speak

17   more fully with your attorney before we go forward with this

18   arraignment, you're entitled to do that.

19             But I want you to also understand that as Mr.

20   Fitzpatrick is here to represent you, you're entitled to have

21   a lawyer represent you until this case is concluded.  So if

22   it gets to a point where you cannot afford a lawyer, then of

23   course the Court will appoint counsel to represent you until

24   the case is concluded.

25             I also want to tell you you have a Fifth Amendment

4

1    privilege, and that is a privilege not to be compelled to

2    incriminate yourself.  Do you understand what your rights

3    are?

4              THE DEFENDANT:  I do.

5              THE COURT:  All right.  And just so I'm satisfied

6    that you understand what the charges are I'm going to ask the

7    government to just summarize the charges for us.

8              MR. RICHARDSON:  Yes, Your Honor.  The defendant is

9    charged with three separate offenses in the complaint.

10             The first offense charges the defendant with

11   conspiracy to commit forced labor, along with his co-

12   defendant, Landong Wong.

13             The second charge charges the defendant with

14   conspiracy to commit alien smuggling, along with his co-

15   defendant, Landong Wong.

16             And in the third charge listed in the complaint

17   he's charged with conspiracy to commit visa fraud, also with

18   his co-defendant, Landong Wong.

19             THE COURT:  And these charges, as I recall, is all

20   in connection with the construction business, correct, that

21   the defendant is managing?

22             MR. RICHARDSON:  That's correct, Your Honor.  The

23   defendant runs U.S. operations for this construction business

24   and these charges related to that construction business.

25             THE COURT:  All right.  Okay.  So, let me just turn

1    to the Government, give you an opportunity to discuss with

2    the defendant any package on bail.

3              MR. RICHARDSON:  Your Honor, we briefly discussed

4    with the defendant the bail package that he's proposing.  I

5    can allow Mr. Fitzpatrick to explain to the court what bail

6    package he's prepared at this time, if that's helpful, or I

7    can recount my discussions with Mr. Fitzpatrick.

8              THE COURT:  All right.  Have you provided counsel

9    with a copy of the letter submitted to the Court with respect

10   to bail?

11             MR. RICHARDSON:  We have, Your Honor.  Mr.

12   Fitzpatrick was presented a copy of the detention letter this

13   morning.

14             THE COURT:  Okay.  So, what is the Government's

15   position on bail, other than what we've stated in the letter,

16   which is very clear that you're seeking detention?

17             MR. RICHARDSON:  That's correct, Your Honor.

18             The Government is seeking a permanent order of

19   detention because the defendant presents a very serious risk

20   of flight.

21             Under the circumstances of this case and the

22   information that the government has obtained in the course of

23   the investigation, obviously, first of all the charges

24   against the defendant are very serious.  The maximum

25   penalties in the serious charge is 20 years.

1          And as detailed in government's complaint, the

2    initial very preliminary guidelines calculations that the

3    defendant faces very serious potential charges of

4    incarceration.

5          As a result, he has a strong incentive to flee.

6    There's also -- what the Court needs to consider here is the

7    fact that the defendant could escape easily from the

8    government if he were allowed to be released on bail.

9          And that's because in part, first, the defendant

10   could easily flee to the Chinese Mission or the Chinese

11   Consulate.  The Chinese Mission, his business has an office

12   he has access to.  This isn't a typical case in which there

13   is a theoretical risk that some foreign national could flee

14   to an embassy or a mission or a consulate.  The defendant

15   actually has an office at the mission.

16         And so there is very serious concern here that he

17   could put himself beyond the reach of U.S. law enforcement

18   authorities by taking a rather short trip to the PRC Mission

19   in midtown Manhattan, or the PRC Consulate.

20         In addition to that -- and I would note that there

21   is no amount of electronic monitoring that would adequately

22   permit the Government to prevent that flight.

23         Another important note here is the defendant has

24   vast financial resources at his disposal and in his control.

25   And those resources take the form of numerous bank accounts

1  held in the name of various different entities affiliated

2  with or associated with the construction business that he

3  operates.

4  They also take into account the significant wealth

5  of other of the defendant's family members who are overseas,

6  and it also takes into -- I would also note that because of

7  the amounts that we've detailed in the detention letter, the

8  amount of money that he has access to would give him a very

9  significant incentive to flee, and it also means that he

10  would not be in bad shape if he were to leave behind the

11  resources that he has here in the United States.

12  THE COURT:  All right.  Well, let me develop that

13  with you.  I've spoken to the Pretrial Services officer.  I

14  understand that there are assets in China as well.  Is that

15  correct?

16  MR. RICHARDSON:  Our understanding, Your Honor, is

17  at the very least the defendant has extremely wealthy family

18  members in China and -- that have assets in China and in

19  other countries that would potentially be available to him.

20  Even if his assets within the United States were

21  encumbered, there's obviously the risk that those assets

22  could be deployed to affect his escape and justice here in

23  the United States.

24  THE COURT:  I'm going to ask the Pretrial Services

25  officer right now to just describe what you stated to me on

8

1    the record with respect to whatever business contacts the

2    defendant has in China.  So, at least counsel are aware of

3    what I'm considering as well.

4               THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

5    The defendant stated to me that he operates his business, not

6    only here in the United States, but also operates working

7    contracts in China, and stated to me that earns about $33,000

8    a month from China in commission from those business --

9    whatever they are, contracts.

10              THE COURT:  Okay.  All right.  Is there anything

11   else you wanted to add to that, Mr. Pravda?

12              MR. RICHARDSON:  Mr. Richardson, Your Honor.  I

13   apologize.  Mr. Pravda is standing next to me here.

14              Your Honor, I believe that that significantly

15   understates the resources that are available to the

16   defendant, in China, and I believe that the defendant has

17   significant resources.

18              I had a moment to speak with the Pretrial Services

19   officer before this proceeding.  I understand the defendant

20   has -- there are a number of properties in the United States

21   that are -- over which he has extensive control.

22              And I mean, I would note, for example, as we

23   described in the detention letter, the defendant wrote two

24   checks totaling approximately $2 million for a deposit on

25   apartments that were purchased in the name of a limited

9

1    liability company at the Time Warner Center.

2            So, that is just an example of the kinds of assets

3    that are available to this defendant and just a reason why

4    this Court should find that he is a serious risk of flight.

5

6            THE COURT:  All right.  Let me -- Mr. Fitzpatrick,

7    do you have any kind of a package that you're proposing

8    today?

9            MR. FITZPATRICK:  Yes, Your Honor.  We would be

10   prepared, obviously, to give up his passport, to consent to

11   home confinement with electronic monitoring, and even a

12   private security guard that we would pay for at our expense,

13   and he would put up his home in which he has about $375,000

14   of equity.

15           And if Your Honor wanted additional cash or

16   property security we would look into that.  But I submit to

17   Your Honor that wealth alone is not a motive to flee, and I

18   would be prepared to address the reasons why he is not

19   likely to flee.

20           THE COURT:  Go ahead.

21           MR. FITZPATRICK:  Okay.  First of all, Your Honor,

22   he has been a permanent resident here since 2010.  He has a

23   green card.

24           He lives in Livingston, New Jersey, in a house he

25   and his wife own, with their 8year old daughter.  And his

1   wife is here.  He also has an older daughter, Nan who is 23

2   years old.  She's also here.  And he has a son who is 21-

3   years old, who is in college.  Nan is in dental school at

4   NYU and is engaged to be married.

5        So he has substantial roots here.  His life is

6   here.  He's the president of a company called U.S. Rilin

7   Corporation.  It's a construction company in Manhattan that

8   the government has characterized as the U.S. arm of the,

9   apparently Chinese company.  We would dispute that, Your

10  Honor.

11       This company has been under investigation for a

12  while.  It has fully complied with grand jury subpoenas.

13  And in fact just last week, with the assistance of Mr.

14  Zhong, the company in three days produced all the payroll

15  records and I-9 records that the government requested.

16       Since Mr. Zhong learned that he was under

17  investigation earlier this year, he traveled to China for

18  his father's birthday.  The company counsel informed the

19  government when he was leaving.  He was interviewed at the

20  airport on his departure and on his arrival.  He knew he was

21  under investigation, he went to China, and he came back.

22  His life is here.

23       He does not speak English, Your Honor, even though

24  he's been here that long.  He does not speak English.  I

25  always talk to him with an interpreter.  And --

1          THE COURT:  Well, when you say for that long, I

2    thought you said he set up roots here in 2010.

3          MR. FITZPATRICK:  Yes, Your Honor.  So but in that

4    time he has not learned to speak English.

5          THE COURT:  Okay.

6          MR. FITZPATRICK:  So --

7          THE COURT:  I just wanted to clear that up.

8          MR. FITZPATRICK:  Yes.  So, Your Honor, it's very,

9    very difficult for him at the MDC not being able to speak

10   the language.  And obviously, it will be very, very

11   difficult for him and me to meet to prepare to defend this

12   case.

13          Plus, he has medical issues.  In fact, when he was

14   transported by the FBI to the Marshal Service on Thursday, I

15   was told the marshals were concerned enough about his health

16   that they sent him to the hospital and required a letter

17   from the hospital saying he was fit for confinement, I

18   believe is the expression.

19          So he does have health issues.  He has high blood

20   pressure, high cholesterol, high blood sugar.  He has a

21   stomach disorder.  He has a heart murmur.  The one

22   medication he took with him -- not a medication but a

23   substance to take in the event of an emergency with his

24   heart, which has happened to him once before.

25          So his life is here, Your Honor.  He wants to stay

1    here and I think -- I know this is not a preliminary

2    hearing, but from having read the complaint and the

3    detention letter which I've barely been able to read, I read

4    it enough that I see where they're going, but I haven't read

5    it in totality.  I submit, Your Honor, we can demonstrate

6    that the government's charges are considerably overblown.

7            And I think that goes to the question of risk of

8    flight, and the notion in the detention letter that his co-

9    defendant, Mr. Landong Wang, fled the country, Your Honor.

10           As I understand it, on the 9th of November he was

11   notified by the State Department that his A-2 immunity was

12   going to be revoked on the 11th, and he'd be subject to

13   prosecution.  I also understand, I don't have first hand

14   knowledge --

15           THE COURT:  So, what?  What does that mean?  That

16   he left because he was going to be subject to prosecution?

17           MR. FITZPATRICK:  Your Honor, I think it's more

18   than that because I also understand that he and his lawyer

19   met with the government before he left.  So he did not flee.

20   My understanding is he had the choice to stay here --

21           THE COURT:  So, let's put him aside for the

22   moment.  He's not before us, but the way you described it,

23   it sounded like when he learned that his -- that as of

24   November 11th his immunity would be revoked, he left before

25   the 11th.  That's what you seem to describe.

13

1     MR. FITZPATRICK:  Your Honor, my --

2     THE COURT:  But that's not who's before me today

3 so let's move on to your client.

4     MR. FITZPATRICK:  Okay.  But I think they would

5 argue if one co-defendant did it, he's likely to do it.  And

6 I submit, it's much more complicated than that.  I believe

7 the Government knew he was leaving.  So, I think, Your

8 Honor, he simply did not flee and Mr. Zhong is not about to

9 flee.

10     THE COURT:  All right.  Anything else?

11     MR. FITZPATRICK:  No, Your Honor.

12     THE COURT:  Okay.  I don't dispute that there is a

13 -- there may be a possible package in this case.  First of

14 all, I want to make it clear, I do find the defendant to be

15 a risk of flight.

16     I mean, first of all the connections to China,

17 family in China, business interest in China, property in

18 China, money in China, I'm also persuaded by some of the

19 allegations in the complaint and that -- as outlined and

20 sworn to, that several of the laborers who are under grand

21 jury subpoena with the aid of your client, Mr. Zhong, were

22 given tickets so they could leave the United States before

23 they would have to appear before the grand jury in an

24 investigation that involved him.

25     So, that hardly suggests that the defendant is

14

1    inclined to stay once, as things develop and heat up against

2    him.

3            MR. FITZPATRICK:  Your Honor, may I respond to

4    that briefly?

5            THE COURT:  Sure.

6            MR. FITZPATRICK:  Because that's the other issue,

7    the other allegation I take substantial issue with.

8            Those defendant -- those workers were served with

9    grand jury subpoenas, and he left before the return date of

10   the grand jury subpoena.

11           I have been informed by company counsel that that

12   issue about whether they're subject to grand jury

13   appearances is being litigated, and they -- the appearance

14   was adjourned before November 4th, which was the date of

15   their appearance.  So, I am told that they are not --

16           THE COURT:  Unless --

17           MR. FITZPATRICK:  -- they are not in violation or

18   in defiance of those subpoenas.

19           THE COURT:  All right.  Well, I'll hear from the

20   government on that.  But I mean, they were -- they left on

21   the 20th.

22           They were told on the 19th they had a grand jury

23   subpoena outstanding.  They left on the 20th with the

24   assistance of your client.  So, I doubt very much that the

25   question of whether or not they had an appearance on

1  November 4th or not was resolved as they boarded the plane.

2  But I'll hear from the government on that issue.

3          MR. RICHARDSON:  Your intuition is correct, Your

4  Honor.  They were served with grand jury subpoenas in the

5  evening.  They then booked tickets the next morning, flying

6  out of a different airport and left the country.

7          And although we are in litigation -- it's correct

8  that we are in litigation with company counsel as to whether

9  or not those workers need to return to the United States to

10 comply with those subpoenas, it is strongly indicative that

11 they were taken out of the country in order to avoid their

12 availability to testify in the grand jury.  So, I would

13 agree, Your Honor, that is a strong indication here that

14 there is potential risk that the defendant would further

15 obstruct the investigation if he were allowed to remain free

16 on bail.

17         THE COURT:  All right.  Now -- and I also am

18 highly concerned about the defendant's access to the mission

19 or the consulate, and he may be able to basically obtain

20 sanctuary through that vehicle.  That's what the electronic

21 monitoring --

22         MR. FITZPATRICK:  Your Honor, may --

23         THE COURT:  Hold on, Mr. Fitzpatrick.  Let me

24 finish, then I'll hear from you.

25         MR. FITZPATRICK:  Sorry, Your Honor.

16

1          THE COURT:  The electronic monitoring, inadequate.

2    You proposed something with respect to some security.  That

3    may be a possibility, but here's what I believe has got to

4    happen, Mr. Fitzpatrick.

5          You have to work out a very detailed plan that

6    involves the sequestration of his assets, you know, the

7    surrender of his passport, the electronic monitoring, house

8    arrest, with a private security system that is 24 hours,

9    seven days a week.

10          It is a huge invasion on the privacy of the family

11    but it is the package that would -- the only kind of package

12    which would satisfy this Court that he is being sufficiently

13    monitored such that he can't avail himself of the mission or

14    the consulate so that he's able to flee.  I do find there's

15    a risk of flight here.

16          There has absolutely got to be some sequestration

17    of his assets so that it's limited so his access to money is

18    limited to whatever his personal expenses are, and not

19    beyond that.

20          So a lot of work has to be done in order to come

21    up with a proposal that -- and by the way, it must be passed

22    -- reviewed by the Government so that they have some input

23    into this.  So, my idea is, until you can work up a very

24    detailed plan -- I'm not going to release him today.  That's

25    just not going to happen.

1           But I will enter a temporary order of detention

2      and give you time to come, you know, put that plan before

3      the government to confer with them on what might work.

4           Obviously, the government could object to the plan

5      or have its own demands in that regard, but that's --

6      something could be discussed -- that's a discussion for

7      another day.  But right now the plan that's on deck is

8      insufficient.

9           MR. RICHARDSON:  Your Honor, may I make a

10     recommendation to the Court?

11          THE COURT:  Yes.

12          MR. RICHARDSON:  Instead of a temporary order of

13     detention to require the defendant to appear, I believe, in

14     four days, very soon, given that there might need to be some

15     negotiation with counsel to see if counsel can come up with

16     some package that would satisfy the government that the

17     defendant would not be a flight risk --

18          THE COURT:  Right.

19          MR. RICHARDSON:  -- it may be more useful to have

20     a permanent order of detention with leave to reopen.  That

21     way that when the package is available an application could

22     be made to the duty magistrate here in Brooklyn to resolve

23     that instead of putting us on a strict deadline to come back

24     in a few days.

25          THE COURT:  Well, that may make sense because Mr.

18

1    Fitzpatrick, you've got a lot of work to do.  You've got to

2    line up a security agency, you've got to work out the

3    details of it.  You've got to figure out how you're going to

4    sequester, and what are the assets.  Pretrial Service is

5    going to have to do a detailed review of what assets he has.

6    Maybe it might require financial statements.  I don't know.

7            But if I do it as a TUD I don't know that I'm

8    giving you adequate time either, Mr. Fitzpatrick, which is

9    sort of what the government is saying.  So, what do you say

10   about that?

11           MR. FITZPATRICK:  Well, Your Honor, can't you

12   order a temporary order of detention and then adjourn it if

13   we need more time?

14           THE COURT:  You could do it that way, sure.

15   Temporary order of detention is usually only several days.

16   Is that going to -- you know, is that a productive

17   appearance?  That's sort of what I'm asking.

18           Are you, in two days or three days, going to have

19   enough time to put down -- put together a detailed package

20   and confer with the government to secure whatever approval

21   they might give in three days?

22           MR. FITZPATRICK:  I'm not sure I can do that, Your

23   Honor, but to be honest with you, a temporary order of

24   detention sounds a lot better than a permanent order of

25   detention with the right to reopen.

1          THE COURT:  Okay.

2          MR. FITZPATRICK:  And I think it --

3          THE COURT:  And a permanent order would only mean

4    that when you're ready, Mr. Fitzpatrick, you can absolutely

5    petition the Court to put the case on, so it would be left

6    to you to set the schedule.  That's what a permanent order

7    would do for you.

8          So, when you have, you know, everything lined up

9    in accordance with what the Court has outlined, you would

10   simply contact counsel for the government and tell them we

11   want to put the case on.  So, it doesn't mean you don't have

12   control of the situation, or that it goes into some black

13   hole.  It just means you're the one who determines when the

14   next date should be because you're ready.

15         So tell me what you want to do.

16         MR. RICHARDSON:  And, Judge, just for the record --

17   -

18         THE COURT:  Well, let me just hear -- yeah, go

19   ahead.

20         MR. RICHARDSON:  I would just say, for the record,

21   Judge, that's also the way that it's typically done.  At

22   least in Brooklyn with the magistrate judges that's

23   frequently the condition is that there's a permanent order

24   of extension, I believe, to reopen, and that's a routine

25   part of the practice in Brooklyn.

20

1          So, to the extent that counsel is concerned that

2   this is an aberration, this is a pretty typical part of the

3   --

4          THE COURT:  No, I'm sure Mr. Fitzpatrick is

5   experienced enough to know that.  But I'll be happy to go

6   with his recommendation and --

7          MR. FITZPATRICK:  Your Honor, may I test your

8   patience just a little bit longer?

9          THE COURT:  Of course.

10          MR. FITZPATRICK:  Because the first thing you

11   mentioned was a need to sequester his assets.  As far as I

12   know from my client, he does not have property in China.  He

13   received his commission income from a company in China.

14   Income.

15          As far as I know, he has no property there.  And

16   the fact that family members are wealthy does not -- you

17   can't automatically make the connection that they're going

18   to subsidize him if he flees to China.  I just don't think

19   that's a fair inference.

20          THE COURT:  Well, if he has accounts here, and a

21   business account, but I'm given to understand that he has

22   some management or control of a business account, then

23   that's going to be part of what's going to be controlled.

24          MR. FITZPATRICK:  Certainly his --

25          THE COURT:  I mean, the whole thing is -- yeah.

1          MR. FITZPATRICK:  From his --

2          THE COURT:  Assets.  I'm not talking about -- or

3    him -- assets controlled by him and his wife, his immediate

4    family, that's what you've got to look to, and be aware that

5    the government has a lot of information about this client,

6    your client.  So --

7          MR. FITZPATRICK:  Alleged information.

8          THE COURT:  Oh, I'm not expecting you to sequester

9    the assets of aunts and uncles and brothers and sisters, but

10   his -- the money he has access to, absolutely.  I want some

11   control over it.

12         Now, these are my ideas.  My thoughts that I'm

13   throwing out to you, which I think would satisfy the Court

14   that the package would address the risk of flight that the

15   Court has.  But the specifics of it remain to be worked out.

16   I'm giving you some overview of how this could be

17   constructed in a way that would address the real risk --

18   concern the Court has of a risk of flight.

19         And just as importantly, you know, when we talk

20   about risk of flight we're not just talking about getting on

21   a plane and going to China where he can set up, you know,

22   his operations or carry on his life.

23         I'm talking about the other concern as well, with

24   him just going off to the mission or the consulate, and then

25   escaping prosecution through that method as well.

1          So, those are my thoughts.  We're not going to

2     resolve that here.  Only -- the only question to resolve

3     right now, Mr. Fitzpatrick, he's not walking out of this

4     courtroom.  I've decided that part.

5          The only part that is still open to question is

6     whether or not we do it as a temporary order or a permanent

7     order and give you the flexibility to put it back on the

8     calendar.

9          MR. FITZPATRICK:  Your Honor, may I have a moment

10     to ask my client one question in connection with what you

11     just said?  I want to clarify something with him?  Thank

12     you.

13          (Counsel and defendant confer.)

14          MR. FITZPATRICK:  Thank you, Your Honor.  Your

15     Honor, on that critical question about whether he has an

16     office at the Chinese Mission and special access to that,

17     I've never heard that before and I just asked my client that

18     and he says that's not true.

19          So does that mean any Chinese citizen who has a

20     problem can walk into the Chinese Mission and avoid American

21     law enforcement?  I don't get it.

22          MR. RICHARDSON:  Sorry, Judge.  You may be muted.

23     We can't hear you.

24          (Pause.)

25          THE COURT:  The question Mr. Fitzpatrick asked, is

23

1      whether or not --

2                  THE CLERK:  Getting terrible feedback.

3                  THE COURT:  Okay.

4                  MR. RICHARDSON:  Yes.

5                  THE COURT:  All right.  So, the question that Mr.

6      Fitzpatrick asked as I understood it, was is it the claim of

7      the government that any Chinese citizen could walk into the

8      mission or the consulate and thereby evade prosecution by

9      the United States?  The answer to that is, yes.

10                 If the consulate or mission were willing to

11     entertain that person's presence, and in this case Mr. Zhong

12     really has relations or business connections to the

13     consulate, does business for them, his whole business was

14     involved in supposedly doing repairs at the consulate.

15                 I'll hear from the government on that, but that's

16     what I understood.

17                 MR. RICHARDSON:  Yes, Your Honor.  That's correct.

18                 I won't speculate as to the basis for the

19     defendant's claims, but the truth is that the defendant runs

20     the U.S. operations for this construction business.

21                 And what he's charged with doing in this complaint

22     is using construction workers who are here in the United

23     States on diplomatic visas to do work for the PRC Consulate

24     and the mission, abusing his control over them to make them

25     do private contracting work.

24

1          And he does have access --

2          THE COURT:  There's no question he has connections

3     to the mission and the consulate.

4          So, to be able to get that kind of approval for

5     work to be done at the mission or the consulate gives him

6     more access than most.  So, on the question of whether or

7     not that's a concern (indiscernible).

8          So, Mr. Fitzpatrick, back to you.  Do you prefer a

9     temporary order of detention, which could wind up just

10    wasting time?  Or -- I mean, I'm going to make the decision

11    for you if I don't get some good reason to be a permanent

12    order of detention with (indiscernible) up for you to put it

13    back on when you're ready.

14         MR. FITZPATRICK:  Would the matter come back

15    before you if I consented to the permanent order?

16         THE COURT:  No, it would a Brooklyn case.

17         But this record and recommendation to this court

18    would be before the magistrate and, of course, that

19    magistrate, whoever that might be, could decide that

20    whatever package you propose is inadequate.   That they

21    could review this consistent with  Title 18, 3142.

22         MR. FITZPATRICK:  If you entered a temporary order

23    of detention, would the matter come back -- would the matter

24    stay with you?

25         THE COURT:  It would not.  You seem to like me,

25

1    Mr. Fitzpatrick.

2            MR. FITZPATRICK:  I do, Your Honor.  I do.  May I

3    have one more minute to consult with company counsel?

4            THE COURT:  Yes.

5            MR. FITZPATRICK:  Thank you.

6        (Pause.)

7            MR. FITZPATRICK:  Thank you, Your Honor.  Yes,

8    Your Honor, we believe we can put a package together by the

9    middle of next week.  And so, yes, I am requesting a

10   temporary order of detention.

11           THE COURT:  Okay.  So, let's (inaudible).

12           MR. RICHARDSON:  Sorry, Judge.  We're having

13   trouble hearing you.

14           THE COURT:  Okay.  I just need a date next week.

15           MR. RICHARDSON:  Judge, I understand based on the

16   statute it's five days on motion of the defendant, which

17   would be Thursday, November 17th, and I think typically

18   these are held at 11:00 a.m.

19           THE COURT:  Thursday, 11/17.

20           MR. RICHARDSON:  That's correct, Your Honor,

21   November 17th at 11:00 a.m.

22           THE COURT:  All right.  So, that's when the order

23   of detention should be signed and I'm going to sign a

24   medical form requesting that the defendant be examined for

25   whatever issues he has.

26

1          Were you able to hear that?

2          MR. RICHARDSON:  Yes.

3          MR. FITZPATRICK:  Yes, Your Honor.  Yes.

4          THE COURT:  Okay.  All right.  I don't think

5     there's any reason -- well, Mr. Fitzpatrick, have you

6     conferred with your client about waiving a preliminary

7     hearing?

8          MR. FITZPATRICK:  I have not had the opportunity

9     to do that, Your Honor.  I think it may be a little

10    premature.

11         If I don't waive it, they'll indict him so I

12    probably would be inclined to waive but I'd like a chance to

13    talk to him about that.

14         THE COURT:  So make sure that's addressed on the

15    17th.

16         MR. FITZPATRICK:  Yes, Your Honor.

17         THE COURT:  All right.

18         MR. FITZPATRICK:  Your Honor, I had one more --

19    one more logistical issue to put before you.  It's my

20    problem and my neglect, not yours.

21         I went to the MDC yesterday afternoon to see my

22    client.  My Secure Pass, which I didn't realize you use in

23    federal facilities, has expired and I haven't renewed it

24    yet.  So, they wouldn't let me in.

25         Now, they said I could go to Legal to see if I

27

1    could provide some other kind of identification.  Otherwise

2    I have to try and get approved as an ordinary visitor.  So,

3    I haven't had a chance to speak to legal because they were

4    closed yesterday.

5            Is it possible that Your Honor could issue an

6    order that I can be admitted there, or that he could be

7    brought here to consult with me?

8            THE COURT:  I'll tell you what. Have -- he's not

9    going to be brought here to consult with you, but if you

10   submit a proposed order to the Court, and you can submit it

11   to my chambers, I'm out at Central Islip, I'd be happy to

12   sign an order which would allow you to have access to your

13   client until you're able to get the Secure Pass.

14           MR. FITZPATRICK:  But you wouldn't be able to do

15   it until we put a package together?  Is that what you said?

16           THE COURT:  That isn't what I said.

17           MR. FITZPATRICK:  Sorry.

18           THE COURT:  I said, prepare, in draft -- prepare

19   an order for my signature.

20           MR. FITZPATRICK:  Thank you.

21           THE COURT:  (Inaudible) which would give you

22   access to your client at the MDC until you're able to get

23   the Secure Pass.

24           MR. FITZPATRICK:  Thank you.  Thank you, Your

25   Honor.

28

1          THE COURT:  All right.  Anything else?

2          MR. RICHARDSON:  Your Honor, the defendant should

3    be required to surrender his passport to Pretrial Services.

4    It is -- we don't have it right now.

5          We do have -- the only piece of property that was

6    taken from the defendant on his arrest was his driver's

7    license, and the agents have just provided it back to the

8    defendant, or through counsel.

9          THE COURT:  Do you have that with you?

10         MR. FITZPATRICK:  I have it, Your Honor.  I'm

11   ready to give it up.  I'm turning it over to Mr. Manginaro

12   right now.

13         THE COURT:  Anything else?

14         MR. RICHARDSON:  No, Your Honor.  And I

15   understand, for the record, that the preliminary hearing has

16   been deferred until the 11/17 detention hearing.

17         THE COURT:  And let's make sure that conditions

18   (inaudible).

19         MR. RICHARDSON:  We will, Your Honor.

20         THE COURT:  Okay.  All right, folks.  You need

21   anything else, then?

22         MR. RICHARDSON:  Not from the government, Your

23   Honor.

24         MR. FITZPATRICK:  No, Your Honor.

25         THE COURT:  All right.  Thank you very much.

29

1          MR. RICHARDSON:  Thank you.

2          (Proceedings concluded at 1:58 p.m.)

3          I, CHRISTINE FIORE, court-approved transcriber and

4     certified electronic reporter and transcriber, certify that

5     the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9          *Christine Fiore*

10    _____          November 14, 2016

11         Christine Fiore, CERT

12

13

14

15

16

17

18

19

20

21

22

23

24