

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JDG:AAS/DMP/ICR

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 12, 2016

By ECF

The Honorable Arlene R. Lindsay
United States Magistrate Judge
Eastern District of New York
814 Federal Plaza
Central Islip, New York 11722

> Re:   United States v. Dan Zhong
>       Magistrate Docket No. 16-1000

Dear Judge Lindsay:

      Later today, defendant Dan Zhong is scheduled to be arraigned before Your Honor on the above-referenced complaint. The government respectfully submits that the Court should enter a permanent order of detention because the defendant presents a risk of flight. As set forth in more detail below, the defendant is a former diplomat from the People's Republic of China ("PRC"), maintains an office in the PRC Mission to the United Nations in Manhattan, which is inviolable under applicable international law, and has access to significant financial resources to aid his flight from justice.[1]

I.   Background

      The defendant is charged in the complaint with conspiracy to commit labor trafficking, in violation of Title 18, United States Code, Section 1594(b), conspiracy to commit alien smuggling, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i), and conspiracy to commit visa fraud, in violation of Title 18, United States Code, Section 371.

      As detailed in the complaint, the defendant is the principal of a construction business (the "Construction Business") based in the PRC which performs construction work

---

[1] Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

on PRC governmental facilities in the United States, including the Permanent Mission of the PRC to the United Nations ("PRC Mission"), the Embassy of the PRC to the United States, and PRC Consulates General in the United States (collectively, the "PRC Facilities"). The Construction Business uses citizens of the PRC to perform construction work on the PRC Facilities. Pursuant to an agreement between the United States and the PRC, PRC citizens are permitted to enter the United States with appropriate diplomatic visas issued by the U.S. Department of State to work on the PRC Facilities.

To date, the government's investigation has revealed that Construction Business workers who were PRC citizens and who were admitted to the United States for the sole purpose of performing construction work at the PRC Mission or other PRC Facilities, instead performed private contracting work at other sites not owned by the PRC, including the construction of a high-rise building on Fifth Avenue in Manhattan and a private residence in Fresh Meadows, Queens. In so doing, the Construction Business workers were in violation of the conditions of their immigration status in the United States.

The evidence includes numerous electronic communications showing the defendant's direction and control over, as well as knowledge as of, the illicit deployment of the Construction Business's workers.

For example, on December 10, 2014, co-defendant Landong Wang wrote to the defendant, addressing the defendant as "Chief Zhong" and seeking the defendant's help to obtain additional workers for projects including the building on Fifth Avenue. In a memorandum attached to the email to the defendant, Wang explained to the Construction Business's management in the PRC that the Construction Business workers were performing construction work on a building on Fifth Avenue in Manhattan and further requested that the PRC Mission provide invitation letters to the U.S. Department of State to obtain visas that would authorize the Construction Business to bring additional construction workers from the PRC to the United States to work on the site at Fifth Avenue, even though the site at Fifth Avenue was not a PRC Facility.

Similarly, in electronic communications in the summer and fall of 2015, the owner of the private residence in Fresh Meadows, Queens (the "Owner") requested that the defendant deploy Construction Business workers to the Fresh Meadows residence or another non-PRC worksite. The defendant responded that he would send Landong Wang to address the situation or would personally verify the work status. In October 2015, law enforcement agents observed and questioned workers performing construction work on the Fresh Meadows residence. In response to requests for the workers' identification, five workers stated in Chinese, in the presence of a Chinese-speaking linguist, in sum and substance, that they were citizens of the PRC employed by a construction company and were present at the Fresh Meadows residence to renovate the first floor of the building. After the Owner contacted the Construction Business, Landong Wang came to the residence and stated in sum and substance that the workers were employees of the Construction Business and members of the "Chinese delegation" present in the United States to perform construction work at the PRC Mission. Wang provided agents with four of the workers' PRC Passports and a copy of

the fifth worker's PRC Passport. Each of the five workers' diplomatic visas stated "CONSTRUCTION WORKER FOR CHINESE MISSION TO UN RENOVATION PROJECT" and the name of the Construction Business.

The investigation has further revealed that these Construction Business workers are compelled to work at the direction of the Construction Business by means of physical restraint, serious harm and threat of serious harm, and abuse and threatened abuse of law and legal process, in violation of United States law. In particular, persons who have escaped from Construction Business custody have stated that the Construction Business maintains a policy of requiring workers it brings to the United States to pledge their houses in the PRC and large cash deposits as collateral as a condition of their employment in the United States. The Construction Business forces workers to work as directed by threatening them with the loss of their houses and money if they fail to work as directed or escape from the custody of the Construction Business.

An electronic communication sent to the defendant corroborated this debt bondage scheme. Specifically, the defendant's email included a debt bondage contract from July 2012 (the "Contract"). In the Contract, the Construction Business agreed to pay a particular worker (the "Victim Worker") "a base salary of RMB8000 per month," a sum equal to approximately $1,180 at current exchange rates.[2] The Contract also required the Victim Worker "to pay a cash deposit of RMB150,000," a sum equal to approximately $22,000 at current exchange rates, with the understanding that the money would be returned to the Victim Worker "upon completion of the project" if the Victim Worker "has not violated any of the stipulations in the contract." Those stipulations included, among other things, the Victim Worker's agreement to "not escape [the Construction Business's] management control and flee to the U.S. or a third country."

The Contract also provided for "administrative punishment and economic penalties" for certain violations by the Victim Worker. Potential violations included "[w]ords or deeds detrimental to national prestige of [the Construction Business's] reputation," "[s]ecretly leaving the Consulate General or the worksite or living quarters," "[f]leeing to the U.S. or third country," and "[s]pilling . . . [the Construction Business's] commercial secrets." Potential punishments included repatriation to the PRC, recoupment of all losses caused by the Victim Worker, such as the costs stemming from searching for a worker who had escaped and escorting the worker back to the PRC, and recoupment of "the fees paid by [Construction Business] for processing [the Victim Worker's] exit and entry."

Finally, the investigation has also shown that the Construction Business housed its workers in uninhabitable conditions and the workers were not permitted to leave. For example, during inspection of a premises at Pavonia Avenue in Jersey City, New Jersey,

---

[2] "RMB" is an abbreviation for Renminbi, the official currency of the PRC. Additionally, all translations of Chinese documents and translations are in draft form and subject to change.

3

inspectors observed, among numerous housing and fire code violations, that the building's exits were locked from the outside by double-key cylinder locks.  During the inspection, inspectors encountered 14 adult Asian males, who did not possess any identification and claimed not to speak English.  After inspectors contacted the PRC Consulate General in New York and the Construction Business, Landong Wang and several other Construction Business employees arrived with passports belonging to the Asian males.  The individual who transported the passports to the site indicated that he had been sent to the premises by the defendant.  The passports reflected that the residents of the premises were all PRC citizens, holders of diplomatic visas and employed by the Construction Business.

The defendant was arrested pursuant to the above-referenced complaint during the afternoon of November 10, 2016.  As the defendant was not deemed fit for confinement until the evening of November 10, 2016, the defendant has been detained pending the arraignment later today before Your Honor.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141, et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  See 18 U.S.C. § 3142(g).  As discussed below, these factors weigh heavily against pretrial release.

III.    The Court Should Enter a Permanent Order of Detention

The investigation has revealed that the defendant enjoys access to significant liquid financial assets, much of which are located in the PRC—the defendant's country of citizenship and origin.  Additionally, he has significant familial and community ties to the PRC that make him a unique risk of flight.  In particular:

- The defendant maintains office space at the PRC Mission and enjoys access to the PRC Mission and PRC Consulate.  Should the defendant enter either building during pretrial release, the government would be unable to cause him to return to future court appearances because law enforcement agents are prohibited from entering these inviolable diplomatic facilities.

4

- The defendant is the principal of U.S. operations of the Construction Business and appears to use bank accounts held in the name of the Construction Business and its affiliates for personal use, including to make housing payments for his daughter's apartment in New Brunswick, New Jersey. A review of financial records has revealed that tens of millions of dollars per year are funneled through these accounts. Accordingly, the defendant has vast financial resources at his immediate disposal to aid his flight from justice.

- The defendant wrote two checks totaling approximately $2 million on behalf of a relative in order to purchase three apartments at the Time Warner Center in Manhattan, confirming the defendant's access to significant financial resources.

- Like numerous other construction workers, the defendant's wife entered the country under a diplomatic visa allowing her to work as a construction worker for the Construction Business. There is no evidence suggesting that she ever worked as a construction worker in this country. This fact, together with other evidence in the case, suggests that the defendant successfully abuses the visa process to the detriment of the U.S. immigration system.

- In the early morning hours of November 11, 2016, following the execution of search warrants at multiple locations in New Jersey and the defendant's arrest, co-defendant Landong Wang – who was aware of the warrant for his own arrest – fled to the PRC after booking five separate flights scheduled to depart from more than one New York City-area airport within hours of each other.

As set forth below, the factors to be considered in the detention analysis show that the defendant presents a substantial risk of flight if released on bond. Accordingly, the Court should enter a permanent order of detention pending trial.

  A. <u>The Nature and Circumstances of the Offense Charged</u>

The charged offenses are extremely serious. The defendant is charged with orchestrating and profiting from a forced labor scheme in which laborers from the PRC are brought into the United States under diplomatic visas permitting them to work at PRC governmental buildings in the United States, but are rather forced to perform private contracting work. The victim workers agree to pledge their houses or substantial sums of money as a precondition for their labor in the United States.

In this case, the forced labor charge carries a maximum sentence of 20 years' imprisonment, as well as a Guidelines range of 108 to 135 months' imprisonment. The prospect of a lengthy term of incarceration confirms the defendant's status as a serious risk of flight. Indeed, there is every reason to think that he will make efforts to flee from the

5

United States so that he can avoid the prospect of a lengthy prison term, just as Landong Wang fled early yesterday morning.

  B. The Weight of the Evidence

  The evidence against the defendant includes, inter alia, (1) the testimony of law enforcement agents who observed the Construction Business workers at non-PRC governmental work sites, (2) the testimony of inspectors who observed the Construction Business workers confined in dangerous living quarters, (3) the testimony of the construction workers who escaped from Construction Business custody who describe the defendant as the U.S. leader of the Construction Business, and (4) electronic communications showing the defendant's knowledge of the debt bondage contracts, as well as the defendant's direction and control over the workers holding diplomatic visas. Because the documentary evidence cited above confirms the defendant's knowledge and control of the forced labor, alien smuggling and visa fraud schemes, this factor weighs in favor of a finding that the defendant is a flight risk.

  C. The Defendant's History and Characteristics

  The defendant's history and characteristics also confirm that he presents a substantial risk of flight. Indeed, the defendant is a citizen of the PRC who has substantial familial ties to that country, as well as access to untold wealth. Moreover, since he faces a sentence of up to 20 years' imprisonment, as well as an effective Guidelines-range of approximately 10 years, there is no reason for the defendant to remain in the United States to face trial. Were the defendant to flee the United States, he would have access to considerable wealth to aid his flight and, the United States would have limited ability to recapture or extradite him. Notably, the United States does not have an extradition treaty with the PRC. Moreover, the United States would not be able to recapture the defendant were he to enter the PRC Mission or PRC Consulate—both of which are located in Manhattan—during his pretrial release. Accordingly, the government respectfully submits that the defendant represents a serious risk of flight if released on bond.

IV. Conclusion

  For all of the foregoing reasons, the defendant should be detained pending trial. The defendant is charged with extremely serious offenses, which carry a potential sentence of 20 years' imprisonment. The government respectfully submits that no condition

or combination of conditions will assure the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

                Respectfully submitted,

                ROBERT L. CAPERS
                United States Attorney

           By: /s/ Alexander A. Solomon
              Alexander A. Solomon
              Douglas M. Pravda
              Ian C. Richardson
              Assistant U.S. Attorneys
              (718) 254-7000

cc: Clerk of Court (ARL) (by ECF)
   Thomas Fitzpatrick, Esq., counsel for the defendant (by email)