

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS/DMP/ICR
F. #2015R01787

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 17, 2016

<u>By ECF and Email</u>

The Honorable Ramon E. Reyes, Jr.
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Dan Zhong
     <u>Magistrate Docket No. 16-1000</u>

Dear Judge Reyes:

  In advance of the detention hearing scheduled for 11:00 a.m. this morning, the government writes to respond to the defendant's November 16, 2016 letter to the Court regarding his bail application, and to renew its request in its November 12, 2016 detention letter to Magistrate Judge Lindsay that the Court order the defendant's detention pending trial.

 I. <u>The November 12 Detention Hearing</u>

  On November 12, 2016, the defendant made his initial appearance on the complaint, which charges him with conspiracy to commit forced labor, alien smuggling, and visa fraud.  Following a detention hearing, Judge Lindsay remanded the defendant, entered a temporary order of detention, and – at the request of defendant's counsel – scheduled a detention hearing for this morning.

  At the November 12 detention hearing, the defendant argued that he should be released subject to the conditions that he surrender his passport, consent to home confinement with electronic monitoring, that he pay for a private security guard, and that he post with the Court his home in Livingston, New Jersey, which he represented to have approximately $375,000 in equity, as security for his release.  (Tr. 9:6-14).

  Judge Lindsay found the proposed package of conditions to be insufficient to ensure the defendant's appearance (Tr. 17:7-8), concluding that the defendant, a citizen of

the People's Republic of China ("PRC") who was a PRC diplomat in the United States for nearly ten years until he became a legal permanent resident of the United States in 2010, presented a risk of flight in light of, among other things, "all the [defendant's] connections to China," including family, business interests, property, and money (Tr. 13:12-15).

Judge Lindsay found that the defendant's proposal for electronic monitoring and home confinement was "inadequate" to assure his appearance as required. (Tr. 16:1). In making that finding, Judge Lindsay explained that she was "highly concerned about the defendant's access to the mission or the consulate, and he may be able to basically obtain sanctuary through that vehicle." (Tr. 15:17-21). As the government noted at the detention hearing, the defendant runs the U.S. operations for a construction business that has an office at the PRC Mission, and the defendant is charged in the complaint with abusing his control over construction workers who are present in the United States solely to work on PRC diplomatic facilities. In these circumstances, Judge Lindsay explained that "when we talk about risk of flight we're not just talking about getting on a plane and going to China where he can set up, you know, his operations or carry on his life. I'm talking about the other concern as well, with him just going off to the mission or the consulate, and then escaping prosecution through that method as well." (Tr. 21:19-25).

Judge Lindsay was willing to consider a bail package that included private security guards to prevent the defendant from escape, noting that such a plan would require "the surrender of his passport, the electronic monitoring, house arrest, with a private security system that is 24 hours, seven days a week." (Tr. 16:6-9). Judge Lindsay further noted that such a plan would be "a huge invasion on the privacy of the family," but she explained that such a package was "the only kind of package which would satisfy this Court that he is being sufficiently monitored such that he can't avail himself of the mission or the consulate so that he's able to flee." (Tr. 16:10-15).

Responding to the government's concern about the defendant's access to considerable wealth that could be deployed to aid his flight from justice, Judge Lindsay also noted that any plan proposed by the defendant at the next detention hearing would have to be a "very detailed plan that involves the sequestration of his assets," (Tr. 16:5-6), and emphasized that "[t]here has absolutely got to be some sequestration of his assets so that it's limited so his access to money is limited to whatever his personal expenses are, and not beyond that." (Tr. 16:16-19).

As noted above, in scheduling the renewed detention hearing for this morning, Judge Lindsay advised defense counsel that "a lot of work has to be done in order to come up with a proposal that -- and by the way, it must be passed -- reviewed by the Government so that they have some input into this." (Tr. 16:20-23).

II.     The Defendant's Proposed Conditions of Pretrial Release

On the afternoon of November 16, 2016, defense counsel called the government to provide information regarding the revised package of release conditions he

2

intends to propose at the November 17 detention hearing. Defense counsel indicated that the defendant will consent to home confinement which would be guaranteed by a private security firm that would monitor the premises using both guards and cameras. According to defense counsel, two retired or off-duty law enforcement officers would guard his home twenty-four hours a day and would be authorized to use all reasonable force to prevent the defendant from fleeing. The same private guards would also search every person who entered the residence.

In addition, defense counsel indicated that the defendant would post his home in Livingston, New Jersey with the Court as security for his appearance and represented that the value of the equity in the defendant's home is approximately $500,000. When asked whether the defendant would propose an amount of money to be posted as security, defense counsel indicated that the defendant might be willing to post "a little bit of cash" as security, but declined to say how much, and he declined to identify to the government any potential sureties who might be willing to sign a bond to secure the defendant's appearance.

Notably, when the government inquired who would be paying for the private security firm that the defendant intends to hire, defense counsel repeatedly refused to answer, stating that he found the government's question offensive. Indeed, even in defense counsel's letter to the Court dated November 16, 2016 ("Def. Ltr."), which he provided to the government after the call, defense counsel identifies the person paying for the private security firm only as the defendant's "family."

In addition to the terms that defense counsel described to the government on the telephone, the defendant's letter again proposes electronic monitoring as a condition of release, and proposes to post "$500,000 in various bank and investment accounts" as security, with the caveat that the "mechanics" of "mak[ing] the funds secure for bail" are "to be determined." (Def. Ltr. at 4).

   III.   <u>The Defendant's Bail Proposal Does Not Provide Reasonable Assurance That The Defendant Will Appear as Required</u>

The defendant's bail proposal is most notable for what it does not do. At the initial detention hearing, the government expressed concern with the defendant's access to considerable financial resources of his own in the United States and to the assets of extremely wealthy family members located overseas that could be deployed to effect his flight from justice. Judge Lindsay specifically instructed defense counsel that any future bail package would "absolutely" have to include the "sequestration of his assets so that it's limited so his access to money is limited to whatever his personal expenses are, and not beyond that." (Tr. 16:16-19). Instead, defense counsel proposes to post only $500,000 in liquid assets, as well as the defendant's home, but discloses nothing about the extent of the defendant's financial resources and proposes no plan for how assets at his disposal will be secured, stating only that the "mechanics" will be worked out later.

The government's investigation has revealed that the defendant has access to significant financial resources in bank accounts held in the names of several affiliated business entities. The entities include a construction business based in the PRC (the "PRC Construction Business") and several of its U.S. affiliates, including the business that the defendant claims to own, "U.S. Rilin Corp." (Def. Ltr. at 3).

For example, in 2015 alone, the defendant:

- Instructed a bank to transfer more than $3.5 million from the bank account of a limited liability company to the bank account of an affiliated entity, and in September 2015 alone the defendant wired more than $6 million from the same bank account to the PRC Construction Business;

- Cashed several checks from the PRC Construction Business totaling at least $360,000 that were each made out to "CASH," including a check for $100,000 in February 2015; and

- Wrote numerous checks from the bank account of the PRC Construction Business, including over a dozen checks made out to "CASH" for $10,000 each, salary checks to his co-defendant Landong Wang, and several apparent rent checks to the "Chinese Consulate General" with specific room numbers listed on the memo line.

The fact that the defendant has authority to write checks against the accounts of the PRC Construction Business is unsurprising. In 2010, the defendant provided the U.S. Department of Homeland Security a certificate on the letterhead of the PRC Construction Business which stated that "[o]n 22 December 2000 Mr. Dan Zhong was appointed Manager of USA Operation for our company" and further stated that "[f]rom 22 December 2000 to the present he has worked at the Embassy and Consulates of the People's Republic of China in the United States of America Overseas Buildings Operations Office responsible for managing all of [the Construction Business's] projects in the USA." Despite defendant's contention in his November 16, 2016 letter that he is a principal only of a U.S. entity, and the implication that he has no ties to the PRC Construction Business, the certification provided to the Department of Homeland Security and the evidence of the defendant's ability to write checks on behalf of the PRC Construction Business demonstrate otherwise. Indeed, that the defendant is falsely denying his connection to the PRC Construction Business in an effort to minimize his risk of flight is troubling.

Moreover, the government's concern that the defendant's access to considerable wealth that could be deployed to effect his escape is only reinforced by defense counsel's refusal to identify the nameless benefactor who is willing to pay the presumably significant bill for private guards 24 hours a day, 7 days a week. Indeed, the fact that a member of the defendant's family has the resources to pay for expensive private guards only

4

confirms the government's contention that that considerable financial resources would be available to the defendant to secure his escape and to reimburse any potential sureties for losses suffered as a result of his flight.

   The risk of flight in this case is far from theoretical. The defendant is charged with extremely serious offenses, which carry a potential sentence of 20 years' imprisonment. As discussed in the government's November 12 detention letter, the defendant's co-defendant Landong Wang chose to leave the United States instead of facing the charges against him after learning on November 10, 2016, that he had been charged in the complaint. Since the defendant's arrest and the execution of search warrants at rooming houses used by the PRC Construction Business to house construction workers on November 10, approximately 30 workers have departed from New York City-area airports on flights ultimately bound for the PRC.

   In light of the considerable assets available to the defendant both in the United States and in China that could be used to aid his flight from justice and to reimburse losses suffered by any potential sureties, the defendant's proposal simply fails to provide reasonable assurance that the defendant will remain in the United States to face charges here. For all of the foregoing reasons, the defendant should be detained pending trial. The government respectfully submits that no condition or combination of conditions will assure the defendant's return to court, or his compliance with the Court's directives, and the Court should thus enter a permanent order of detention pending trial.

           Respectfully submitted,

           ROBERT L. CAPERS
           United States Attorney

      By: /s/ Alexander A. Solomon
           Alexander A. Solomon
           Douglas M. Pravda
           Ian C. Richardson
           Assistant U.S. Attorneys
           (718) 254-7000

cc: Clerk of Court (RER) (by ECF)
   Thomas Fitzpatrick, Esq., counsel for the defendant (by email)