```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2   ----------------------------------x
                                          16-CR-614(DLI)
 3   UNITED STATES OF AMERICA,
                                          United States Courthouse
 4            Plaintiff,                  Brooklyn, New York

 5            -against-                   December 8, 2016
                                          3:00 p.m.
 6   DAN ZHONG,

 7            Defendant.

 8   ----------------------------------x

 9          TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
             BEFORE THE HONORABLE DORA L. IRIZARRY
10              UNITED STATES CHIEF DISTRICT JUDGE

11   APPEARANCES
     For the Government:        ROBERT L. CAPERS, ESQ.
12                              United States Attorney
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  ALEXANDER SOLOMON, AUSA
                                     DOUGLAS PRAVDA, AUSA
15                                   IAN RICHARDSON, AUSA

16   For the Defendant:        DORSEY & WHITNEY LLP
                                51 West 52nd Street
17                              New York, New York 10019
                                BY:  NICK AKERMAN, ESQ.
18                                   JOSHUA N. COLANGELO-BRYAN, ESQ.
                                     MICHELLE NG, ESQ.
19                                        -and-
                                     THOMAS FITZPATRICK, ESQ.
20                              500 Fifth Avenue
                                New York, NY 10010
21
     Court Reporter:           Georgette K. Betts, RPR, CSR, OCR
22                              Phone:  (718)804-2777
                                Fax:    (718)804-2795
23                              Email:  Georgetteb25@gmail.com

24   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
25
```

1            THE COURT:  Please be seated.

2            No talking in the courtroom.

3            You can call this case.

4            THE COURTROOM DEPUTY:  Criminal cause for

5    arraignment, docket number 16-CR-614, United States versus

6    Zhong.

7            Please state your appearances.

8            MR. SOLOMON:  Good afternoon, Your Honor, Alex

9    Solomon, Doug Pravda and Ian Richardson for the government.

10            THE COURT:  Good afternoon.

11            MR. AKERMAN:  Good afternoon, Your Honor, Nick

12    Akerman, Tom Fitzpatrick and Joshua Colangelo-Bryan and

13    Michelle Ng for the defendant.  Also seated at the table is

14    the defendant, Mr. Zhong.

15            THE COURT:  Good afternoon to all of you.  Mr. Zhong

16    is being assisted today by the Mandarin language interpreter.

17    May we have your name, please, for the record.

18            THE INTERPRETER:  Good afternoon, Your Honor, my

19    name is Nancy Wu.  Last name spelled W-U.

20            THE COURT:  Please administer the oath to Ms. Wu.

21            (Interpreter sworn.)

22            THE COURTROOM DEPUTY:  Thank you.

23            THE COURT:  Before we go anywhere today, the only

24    attorney of record, as far as I am concerned, is Mr. Joshua

25    Colangelo-Bryan, because he is the only attorney who filed a

1    notice of appearance in this case.

2              MR. COLANGELO-BRYAN:  No, Your Honor, notices have

3    been filed for Mr. Akerman and --

4              THE COURT:  Where?

5              MR. COLANGELO-BRYAN:  Those are on the docket.

6              MR. AKERMAN:  In fact --

7              THE COURT:  Nothing like doing it timely.  So you

8    filed it today.

9              MR. AKERMAN:  No.  A couple of days ago.

10             THE COURT:  Excuse me.  Today is December 8th,

11   notice of attorney appearance for Ms. Ng.

12             MR. COLANGELO-BRYAN:  Right, that was today.

13   Mr. Akerman filed two days ago.

14             THE COURT:  Two days ago.

15             MR. COLANGELO-BRYAN:  I filed earlier.

16             THE COURT:  You filed earlier.

17             MR. COLANGELO-BRYAN:  Right.

18             THE COURT:  Mr. Fitzpatrick has not filed.

19             MR. FITZPATRICK:  Not on the indictment, Your Honor,

20   correct.

21             THE COURT:  Nor on the complaint either.  You just

22   showed up at the arraignment on the complaint.  That's not

23   filing a notice of appearance.

24             MR. FITZPATRICK:  I'll rectify that immediately,

25   Your Honor.

1    THE COURT:  Those are the rules of the Court and I

2  expect the rules to be followed.

3    Now, the defendant has been indicted, he has not

4  been arraigned on the indictment, so I want to address that

5  first.  Unless there is something you want to address before

6  that, Mr. Solomon?

7    MR. SOLOMON:  No, we believe we should proceed to

8  the arraignment first.

9    THE COURT:  Who is going to take the lead for

10  Mr. Zhong from defense counsel?

11    MR. AKERMAN:  I will, Your Honor.

12    THE COURT:  If you could remain seated and speak

13  into the microphone.

14    MR. AKERMAN:  Sure.

15    THE COURT:  Have you received a copy of the

16  indictment on behalf of your client, Mr. Akerman?

17    MR. AKERMAN:  Yes, we have.

18    THE COURT:  And have you reviewed it with your

19  client?

20    MR. AKERMAN:  Yes, we did.

21    THE COURT:  Did you review it with the assistance of

22  a Mandarin language interpreter?

23    MR. AKERMAN:  Yes, we did.  We reviewed it with an

24  attorney, Ms. Ng, who is an attorney with us who speaks

25  Mandarin.

```
1              THE COURT:  Are you fluent in the Mandarin language,

2   Ms. Ng?

3              MS. NG:  I am, Your Honor.

4              THE COURT:  Am I pronouncing your name correctly?

5              MS. NG:  You are, Your Honor.

6              THE COURT:  Thank you.  And do you read and write in

7   Mandarin as well?

8              MS. NG:  I do.

9              THE COURT:  And, Mr. Zhong, the government has

10  charged you with the following under Count One with a forced

11  labor conspiracy, in that on or about -- in or about and

12  between January 2010 and November 2016, both dates being

13  approximate and inclusive, within the Eastern District of New

14  York and elsewhere, the Eastern District includes the counties

15  of Brooklyn -- of Kings, Queens, Staten Island, Nassau and

16  Suffolk County.  The defendants Dan Zhong and Landong Wang,

17  together with others, did knowingly and intentionally conspire

18  to (1) provide and obtain the labor and services of one or

19  more persons by means of (a) physical restraint, (b) serious

20  harm and threats of serious harm to such persons and other

21  persons, (c) the abuse and threatened abuse of law and legal

22  process and, (d) a scheme, plan and pattern intended to cause

23  such persons to believe that if they did not perform such

24  labor and services they would suffer serious harm and physical

25  restraint contrary to Title 18 of the United States Code
```

1    Section 1589(a) and (2) benefit, financially and by receiving

2    one or more things of value from participation in a venture

3    that engaged in such acts, knowingly and in reckless disregard

4    of the fact that such venture had engaged in the providing and

5    obtaining of labor and services by any of such means, contrary

6    to Title 18, United States Code, Section 1589(b).

7            Count Two is the substantive count relating to Count

8    One of forced labor, in that in or about and between

9    January 2010 and November 2016, both dates being approximate

10   and inclusive, within the Eastern District of New York and

11   elsewhere, the defendants Dan Zhong and Landong Wang, together

12   with others, did knowingly and intentionally (1) provide and

13   obtain the labor and services of one or more persons by means

14   of (a) physical restraint, (b) serious harm and threats of

15   serious harm to such persons and other person, (c) the abuse

16   and threatened abuse of law and legal process and (d) a

17   scheme, plan and pattern intended to cause such persons to

18   believe that if they did not perform such labor and services

19   they would suffer serious harm and physical restraint and (2)

20   benefit, financially and by receiving one or more things of

21   value from participation in the venture that engaged in such

22   acts, knowingly and in reckless disregard of the fact that

23   such venture had engaged in the providing and obtaining of

24   labor and services by any of such means.

25           Count Three charges you with concealing passport and

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1    immigration documents in connection with the forced labor

2    charge of counts relating to Counts Two and One, in that in or

3    about and between January 2010 and November 2016, both dates

4    being approximate and inclusive, within the Eastern District

5    of New York and elsewhere, the defendants Dan Zhong and

6    Landong Wang, together with others, did knowingly and

7    intentionally conceal, remove, confiscate and possess one or

8    more actual and purported passports and other immigration

9    documents of one or more persons (a) in the course of one or

10   more violations of Title 18 of the United States Code,

11   Sections 1589 and Title 18, United States Code,

12   Section 1594(a), (b) with intent to violate Title 18, United

13   States Code, Section 1589, and (c) to prevent and restrict and

14   to attempt to prevent and restrict, without lawful authority,

15   one or more persons' liberty to move and travel, in order to

16   maintain the labor and services of such persons when such

17   persons were and had been victims of a severe form of

18   trafficking in persons, as defined in Section 103 of the

19   Trafficking Victims Protection Act of 2000, to wit:  The

20   recruitment, harboring, transportation, provision, and

21   obtaining of one or more persons for labor and services

22   through the use of force and coercion for the purpose of

23   subjection to debt bondage.

24          Count Four charges alien smuggling conspiracy, in

25   that in or about between January 2014 and November 2016, both

1  dates being approximate and inclusive, within the Eastern

2  District of New York and elsewhere, the defendants Dan Zhong

3  and Landong Wang, together with others, knowingly and in

4  reckless disregard of the fact that one or more aliens had

5  remained in the United States in violation of law, did

6  knowingly and intentionally conspire to transport and move

7  such aliens within the United States by means of

8  transportation, in furtherance of such violation of law, and

9  for the purpose of commercial advantage and private financial

10  gain contrary to Title 8 of the United States Code, Sections

11  1324 subdivisions (a)(1)(A)(ii) and 1324(a)(1)(B)(i).

12         Count Five charges visa fraud conspiracy, in that in

13  or about and between January 2010 and November 2016, both

14  dates being approximate and inclusive, within the Eastern

15  District of New York and elsewhere, the defendants Dan Zhong

16  and Landong Wang, together with others, did knowingly and

17  intentionally conspire to utter, use, attempt to use, possess,

18  obtain, accept and receive one or more documents prescribed by

19  statute or regulation for entry into and as evidence of

20  authorized stay and employment in the United States, knowing

21  such documents to have been procured by means of one or more

22  false claims and statements and otherwise procured by fraud

23  and unlawfully obtained, contrary to Title 18 of the United

24  States Code, Section 1546(a).

25         In furtherance of the conspiracy and to effect its

1    objects, within the Eastern District of New York and

2    elsewhere, the defendants Dan Zhong and Landong Wang, did

3    commit and cause to be committed, among others the following:

4    And the following Overt Acts are included in the indictment.

5             A.   On or about December 10, 2014, Wang sent an

6    electronic communication to Zhong in which Wang sought Zhong's

7    assistance to arrange for workers to enter the United States

8    from the People's Republic of China to perform work contrary

9    to the terms of their United States visas.

10            B.   In or about June 2015, Zhong and Wang caused

11   workers to provide contracting work at a residence in Old

12   Brookville, New York -- you want to talk, take it outside.

13   Caused workers to provide contacting work at a residence in

14   Old Brookville, New York, contrary to the terms of their

15   United States visas.

16            C.   In or about August 2015, Zhong sent an

17   electronic communication to an accessory, an individual whose

18   identity is known to the grand jury, (Accessory number 1),

19   concerning the use of workers to provide labor in the United

20   States, contrary to the terms of their United States visas, at

21   a residence in Old Brookville, New York.

22            D.   In or about September 2015, Zhong and Accessory

23   Number 1 engaged in electronic communications concerning the

24   use of workers to provide contracting work at a residence in

25   Flushing, New York, contrary to the terms of their United

1    States visas.

2              E.   In or about October 2015, Zhong and Wang caused

3    workers to provide contracting work at a residence in Fresh

4    Meadows, New York, contrary to the terms of their United

5    States Visas.

6              F.   In or about October 2015, Wang possessed

7    workers' passports and visas at a residence in Fresh Meadows,

8    New York.

9              The indictment also contains a criminal forfeiture

10   allegation as it relates to Counts One through Three, meaning

11   that the government intends to seek to forfeit any assets that

12   may have been derived from the conduct that's alleged in

13   Counts One through Three.

14             There is also a criminal forfeiture allegation that

15   is being alleged in the indictment as to Counts Four and Five.

16   Again, the government is going to look to forfeit assets and

17   any profits that may have been derived as a result of the

18   conduct alleged in Counts Four and Five.

19             How does your client plead to these charges,

20   Mr. Akerman?

21             MR. AKERMAN:  Not guilty, Your Honor.

22             THE COURT:  There are various applications that are

23   before the Court, two are from the government and one from the

24   defendant relating to the bail.  Let me address the

25   government's issues first, and then we will address the bail.

1          Do you wish to proceed, Mr. Solomon?

2          MR. SOLOMON:  Yes.  I believe the first issue was

3    the issue of whether this case should be designated as

4    complex.  As reflected in our December 5th, 2016, letter we

5    believe it should in light of extraordinarily voluminous

6    discovery in this matter.  With respect to subpoena returns

7    alone we're over 250,000 pages.

8          Additionally, we expect that there will be

9    classified litigation in this case and in light of those two

10   factors primarily, Your Honor, as well as the fact that much

11   of the discovery is in Chinese language, we believe this case

12   should be designated as complex.

13         MR. AKERMAN:  May I respond, Your Honor?

14         THE COURT:  Yes.

15         MR. AKERMAN:  Your Honor, we do not believe this

16   case should be designated as complex.  It is a fairly

17   straightforward case.  Just a few issues.  Did the Chinese

18   workers perform work on places other than Chinese government

19   properties, one.  Were the Chinese workers subjugated under

20   bondage contracts?  These are fairly straight issues.  We are

21   prepared to go to trial 30 days from the filing of the

22   indictment.  There is nothing complex about these particular

23   issues.

24         There is the issue about the visas and whether

25   anybody had knowledge ahead of time that they actually created

1    false visas, that's a fairly straightforward issue, too.  And

2    I think it's the government that decided to bring the case

3    when they did.  We are ready to go to trial.  And we would ask

4    that this case be put down for trial in 30 days from the date

5    of the indictment.

6           THE COURT:  You wish to respond?

7           MR. SOLOMON:  I'm a little bit surprised that

8    Mr. Akerman is ready to go to trial without having reviewed

9    the more than 250,000 pages of discovery in this case, or

10   having had us review our classified holdings and possibly make

11   classified disclosure to the defense.  I think he's creating a

12   potential situation where, should there be a conviction in

13   this case, to create the eventuality of an ineffective

14   assistance claim by Mr. Zhong and we oppose that.

15          MR. AKERMAN:  I don't think so at all, Your Honor.

16   This is a fairly straightforward case.  The documents he's

17   referring to are lots of documents that have no relevance to

18   the issues that I mentioned.  They were turned over by the

19   company.

20          This is a case that the government chose to bring at

21   this time and we have the manpower and we want to go ahead and

22   try this case as soon as possible.

23          THE COURT:  The case is deemed complex for the

24   reasons that have been stated by the government and the

25   government is representing that it has discovery to turn over

1    to the tune of over 250,000 pages of documents, some of which

2    are in the Chinese language which will have to be translated.

3            There is also the potential of use of classified

4    information.  There are procedures to follow under the CIPA

5    statute and that certainly merits the classification as

6    complex.

7            MR. AKERMAN:  If I might, Your Honor.

8            THE COURT:  I've heard enough argument on it, thank

9    you.  I gave you the opportunity to respond to the government.

10            The second issue from the government.

11            MR. SOLOMON:  Sorry, one moment please, Your Honor.

12            THE COURT:  Yes.  It was the matter of the relation

13    of the case to the Ying case.

14            MR. SOLOMON:  Yes, Your Honor, I apologize.  We

15    believe that this case should be related to the Ying Lin case.

16    As we articulate in our letter to the Court, some of the work

17    that was done improperly, we allege, by Zhong's workers was at

18    Ying Lin's residence and at her condominium.  In fact, the use

19    of the workers was in violation of their visa status in the

20    United States.  These facts are essential to Ying Lin's

21    prosecution.  We believe that there would be considerable

22    savings and judicial economy by having both cases presided

23    over by Your Honor.

24            THE COURT:  Just for the record, that case is under

25    docket number 15-CR-601.

1              MR. SOLOMON:  Yes, Your Honor.

2              THE COURT:  Mr. Fitzpatrick, although not having

3     filed a notice of appearance, had responded by letter on

4     December 5th opposing the relation.  I don't know who wants to

5     address it, whether you want to address it, Mr. Akerman, or

6     Mr. Fitzpatrick.

7              MR. AKERMAN:  Maybe I could just briefly, Your

8     Honor.

9              THE COURT:  Yes.

10             MR. AKERMAN:  I think the standard here is whether

11    or not there's a savings of judicial resources as to whether

12    this should be a related case, and in this particular case

13    there is, like, a slight overlap in the two cases factually.

14    Two different juries are going to have to consider the same

15    issues, there is no savings of judicial resources.  So there

16    is nothing that is going to be learned from one case that will

17    be applied to another case.

18             It's really just a policy matter for Your Honor in

19    terms of the operation of the Court whether or not this is

20    something that the Court would deem as being a savings of

21    judicial resources.  We just don't see it that way, but it's

22    up to Your Honor of course.

23             THE COURT:  Do you wish to respond?

24             MR. SOLOMON:  No, Your Honor.

25             THE COURT:  I'm going to deem the two cases related.

1    Apparently, Mr. Fitzpatrick didn't understand that I'm

2    assigned to both cases randomly.  So I don't know whether

3    there was a thought that this case was going to somebody else

4    or that the Lin case was assigned to somebody else, but that

5    case also involves the potential for classified information

6    and some of the same use of these construction workers at the

7    property and presumably some of the same evidence.  That's my

8    understanding from reviewing the letter from the government --

9            MR. SOLOMON:  That's correct, Your Honor.

10           THE COURT:  -- and based on what I understand and

11   know from presiding over the Ying Lin case.  So they are both

12   deemed related.

13           Is there anything else that the government wishes to

14   address?

15           MR. SOLOMON:  No, Your Honor.

16           THE COURT:  Okay.  With respect to bail, you know,

17   Mr. Akerman, you and Mr. Colangelo-Bryan were before me for a

18   very lengthy period of time in the Senator Sampson case and so

19   it surprises me that the procedures that you all should know

20   very well in my chambers have not been followed here.

21           I get a last minute, 200-plus page document dated

22   December 6th, despite the fact that you should be aware that I

23   require two copies of everything, hard copies of everything

24   and my deputy reached out to ask for a copy of it because this

25   apparently was docketed at some point in the afternoon on

1    December 6th.  It was taken to the Clerk's Office instead of

2    to my chambers and it should not have required my deputy to

3    have to call to ask for a courtesy copy.  So, as a result, I

4    got this yesterday morning.

5              MR. AKERMAN:  I'm sorry, Your Honor, we thought --

6              THE COURT:  Not only that --

7              MR. AKERMAN:  -- this was given to you.

8              THE COURT:  -- but then there was a last minute

9    reply that was filed this morning -- this afternoon at

10   1:00 o'clock.

11             MR. AKERMAN:  We just got the government's

12   yesterday.

13             THE COURT:  Excuse me.  Well they got very little

14   time to respond to your 200 some odd page tome as well.

15             MR. AKERMAN:  We had no time to respond initially.

16             THE COURT:  Excuse me, I'm talking.  I'm not done

17   talking yet.

18             My deputy was told by somebody in your office that a

19   courtesy copy was on its way to chambers, and I did not get a

20   courtesy copy until after you arrived here, Mr. Akerman, this

21   afternoon.

22             Now the question before me really is why I should

23   even consider any bail application since the defendant has

24   already had three bites at the apple with respect to bail.

25   The same arguments apparently have been raised by the defense

1  before Magistrate Judge Arlene Lindsay, who arraigned the

2  defendant on the complaint, then there was a second bail

3  application that was made in front of Judge Reyes, and then

4  Judge Johnson addressed bail in this case and he wound up

5  reversing the decision of Judge Reyes and entering an order of

6  detention in this case.

7          Now, unless there is something -- excuse me.  I

8  don't know how many times do I have to say, there is only one

9  person talking at a time here and it's either myself or the

10 attorneys in the well.

11         From what I can see, nothing has been raised that is

12 new and different that was not raised before any of these

13 three judges.

14         MR. AKERMAN:  May I address this, Your Honor?

15         THE COURT:  Yes.

16         MR. AKERMAN:  First of all, there were not three

17 bites of the apple.  Magistrate Judge Lindsay did not consider

18 bail, it was not Magistrate Lindsay.   Judge Reyes --

19         THE COURT:  I read the transcript just before coming

20 here today and bail was discussed, Mr. Fitzpatrick was present

21 at the time --

22         MR. AKERMAN:  And it was --

23         THE COURT:  -- the government had submitted a letter

24 opposing bail and requesting an order of detention --

25         MR. AKERMAN:  She put --

1    THE COURT:  -- there was -- there was a discussion

2    on the record in the transcript concerning the nature of the

3    charges, concerning a package that was proposed on behalf of

4    Mr. Zhong by Mr. Fitzpatrick, there was a response by the

5    government, that's a bail hearing.

6    MR. AKERMAN:  She put over the bail hearing, Your

7    Honor.  She did not decide the bail, she put it over --

8    THE COURT:  She put in an order of temporary

9    detention.

10    MR. AKERMAN:  That's right.  And put it over to be

11    decided at a later date, which Judge Reyes then decided in

12    favor of bail, decided on a bail package.  It then went to

13    Judge Johnson, where in 15 minutes -- I mean, just to give you

14    an idea of what happened.  It was an hour and a half before

15    Judge Reyes where this was considered, hashed out, arguments

16    were made, and then it was immediately appealed to Judge

17    Johnson, who did not have the benefit of any of that argument.

18    It all lasted less than 15 minutes.  Mr. Fitzpatrick was not

19    permitted to finish his argument.

20    In response to a question by Judge Johnson,

21    Mr. Solomon said, the case will be indicted in 30 days.  Judge

22    Johnson then asked Mr. Solomon, how long will the trial take?

23    Mr. Solomon responded, a week or two, this is at page 12.

24    We know that when Mr. Solomon estimates trials he's

25    usually off by about a hundred percent on these things --

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter

1       THE COURT:  You know what?  You can really leave the

2   smarmy remarks out of it.

3       MR. AKERMAN:  Well, based on these representations

4   about the timing of the indictment and the length of trial,

5   Judge Johnson immediately remanded the defendant without

6   making any findings on the record.  There was no mention

7   before Judge Johnson of classified information.  There was no

8   mention of there being three months about CIPA issues, about

9   being that addressed.  There was no mention about Mr. Zhong's

10  counsel would have to get security clearances.  There was no

11  mention of hundreds of thousands of pages of discovery.  There

12  was nothing about the trial being complex.  There was nothing

13  about having to wait indefinitely until a co-defendant could

14  be retrieved from China, which is basically an impossibility

15  in this case.  Judge Johnson could well have concluded that

16  the entire case would be completed in a couple months when he

17  remanded Mr. Zhong.

18      Now there is new information.  At the time,

19  Mr. Fitzpatrick was not aware of the details relating to the

20  actual charges in this case.  He was not in a position at that

21  hearing before Judge Reyes to challenge the strength of the

22  allegations.  We have now had a chance to translate certain

23  documents, including this so-called bondage contract, because

24  we have a lawyer on the team who reads and speaks Mandarin so

25  we can communicate more easily with our client who does not

1   speak English.

2          THE COURT:  The issue of bail -- a bail hearing is

3   not a place to have mini trial.  The Second Circuit has spoken

4   on that, that's Black letter law, okay?  And the other thing

5   is, if you were dissatisfied with the ruling by Judge Johnson,

6   okay, then your option was to go up to the circuit and argue

7   it to the circuit --

8          MR. AKERMAN:  Or our option was to take --

9          THE COURT:  -- but you have not presented --

10         MR. AKERMAN:  -- it before the judge the case was

11  assigned to.

12         THE COURT:  And you insist on talking while I am

13  talking and you are going to stop that now.

14         MR. AKERMAN:  Sorry.  Go ahead.

15         THE COURT:  I have your permission to continue?

16         MR. AKERMAN:  You may continue.

17         THE COURT:  Thank you.

18         The bottom line is that none of the arguments that

19  have been raised really raise anything new here.  If anything,

20  there has been an indictment, a grand jury of this district

21  has found probable cause to believe that a crime has been

22  committed and that your client committed it.

23         MR. AKERMAN:  May I respond, Your Honor?

24         THE COURT:  Yes.

25         MR. AKERMAN:  One of the factors for the Court to

1  consider is the strength of the government's allegations.  We

2  were not able to respond to that part of the bail proceeding

3  at the first hearing because no one had done enough

4  investigation.  Since that time we have learned that this

5  so-called bondage contract was mistranslated by the

6  government.  That their language in there was translated in

7  the light most favorable to the government, most notably the

8  word "escape" was put into the contract, which is not correct

9  in Mandarin, it does not mean escape.  There's a number of

10  pieces like that.  We never had a chance to argue that or put

11  evidence before Judge Reyes, or Judge Johnson, even if he

12  would have allowed it, we couldn't have done that.

13         We couldn't put in the evidence about the

14  location --

15         THE COURT:  You are not getting it, that a bail

16  hearing is not a mini trial and it's not a place to start

17  going on some fishing expedition --

18         MR. AKERMAN:  We're not saying it is.

19         THE COURT:  -- or presenting witnesses with respect

20  to the strength of the government's case.

21         MR. AKERMAN:  That's certainly a factor.

22         THE COURT:  That's certainly a, a factor, I will

23  grant you that, the strength of the government's case.  The

24  defendant is facing 20 years in jail, he is not a U.S.

25  citizen.  His construction company apparently has an office

1    in -- it's not the consulate of the PRC.

2              MR. SOLOMON:  The Mission to the United Nations.

3              THE COURT:  The Mission to United Nations.  Among

4    the allegations in the indictment that was voted by a grand

5    jury of this district, is that he engaged in visa fraud and

6    thus has access to people who would engage in that kind of

7    practice.

8              The co-defendant has already absconded.  If the

9    defendant absconds there is very little likelihood of any

10   extradition from the PRC.

11             MR. AKERMAN:  May I respond?

12             THE COURT:  No, I am not going to hear this, because

13   the bottom line is that if you want -- you had your recourse

14   already, as I said, three times, three different judges have

15   heard this.

16             MR. AKERMAN:  So I cannot respond?

17             THE COURT:  No.  I am not going to have you respond.

18   If you want to appeal Judge Johnson's decision, then you go up

19   to the circuit, but you are not going to start attacking --

20   coming at this piecemeal because, frankly, within the number

21   of days that that hearing was held before Judge Johnson to

22   today, has not been a very lengthy period of time.  And if you

23   want a more fulsome hearing then, quite frankly, it's going to

24   have to be put over to a date when I can actually consume all

25   of this reasonably and not get sandbagged.  And I am not going

1   to hear the regurgitation of the same arguments all over

2   again.

3              Does the government wish to be heard?

4              MR. SOLOMON:  No, Your Honor.

5              THE COURT:  I mean, some of the requested conditions

6   were already considered, the home detention and the electronic

7   monitoring, a cash amount.  The defendant's home, which is

8   apparently now subject to criminal forfeiture.  Surrendering

9   passports, given the access to the Chinese mission that

10  doesn't really matter for much.  A lot of the issues that the

11  defense has raised, his ties to the United States, that was

12  all considered by Judge Reyes.

13             And if you wanted me to consider what was discussed

14  in front of Judge Johnson, the appropriate thing was to have

15  provided me with a transcript of that proceeding, but I don't

16  act as an appellate court to Judge Johnson.

17             So what I will do is this:  Even though I don't

18  think that you are entitled to another bail application, I

19  will let you have your time to let me consider this and I will

20  put this over to a date in January to consider it.  But let's

21  get this understood now, that I am not going to hear piecemeal

22  applications and piecemeal arguments and repetitive arguments.

23             Are the parties available on January 9th at noon?

24             MR. SOLOMON:  Yes, Your Honor.

25             MR. AKERMAN:  Yes.  One moment.

```
 1              THE COURT:  This will also give the government an
 2    opportunity -- the government had requested that if the Court
 3    put this over to consider the defendant's bail application,
 4    the government wanted an opportunity to provide something
 5    more -- a more fulsome response.
 6              MR. SOLOMON:  Yes, Your Honor.
 7              THE COURT:  Can you have a response to me by
 8    January 3rd?
 9              MR. SOLOMON:  Yes, Your Honor.
10              MR. AKERMAN:  Judge, that's fine with us.
11              THE COURT:  Two copies, please.
12              Excuse me?
13              MR. AKERMAN:  That works.
14              THE COURT:  I will need two hard courtesy copies
15    immediately upon filing.
16              MR. SOLOMON:  Yes, Your Honor.
17              THE COURT:  Now my understanding, from speaking to
18    Harry Rucker, who is the person from the Department of Justice
19    who handles the security clearances and other issues
20    concerning classified information, is that the process of
21    defense counsel getting security clearance has been started at
22    this point.
23              Am I correct about that?
24              MR. SOLOMON:  Yes, Your Honor.
25              THE COURT:  As to all counsel?
```

1              MR. SOLOMON:  As to all three.

2              THE COURT:  Because there is new counsel has -- all

3    three?

4              MR. SOLOMON:  Yes.

5              THE COURT:  Which three?

6              MR. AKERMAN:  Four.

7              MR. SOLOMON:  I'm sorry.  I apologize, all four.  I

8    forgot there were four today.

9              MR. AKERMAN:  Is that right?  Because no one has

10   contacted me about this.  What are they going by just our

11   information that's filed with the Court?

12             MR. SOLOMON:  Yes.

13             MR. AKERMAN:  Okay.

14             THE COURT:  So eventually you will be contacted and

15   there is a whole process that goes to that.

16             Now it has been related to the -- this case has been

17   related to the Ying Lin case, which is a little further ahead

18   as far as the CIPA motions and so on.  So I don't know, given

19   that defense counsel is not cleared yet in this case, I don't

20   know that the time is ripe yet for setting a CIPA motion.

21             MR. SOLOMON:  Your Honor, we have a fair bit of work

22   to do before we reach that point.  We'll try to do that in the

23   next month or two.

24             THE COURT:  So that would be something that -- the

25   status of that is something that I would like to discuss on

1    January 9th.

2              MR. SOLOMON:  Yes, Your Honor.

3              THE COURT:  I assume the discovery is ongoing or has

4    been turned over already.

5              MR. SOLOMON:  We have not started to turn over

6    discovery, we'll enter into a protective order with the

7    defense and we'll do that promptly.

8              THE COURT:  Okay.  Anything else other than time is

9    excluded, this case has been deemed complex?

10             MR. SOLOMON:  No, Your Honor, thank you.

11             THE COURT:  Anything else from the defense?

12             MR. AKERMAN:  I don't think so, Your Honor.

13             THE COURT:  Mr. Fitzpatrick, you will file a notice

14   of appearance today please.

15             MR. FITZPATRICK:  Yes, Your Honor.

16             THE COURT:  All right.  Marshals, you can take

17   charge.  Thank you, Ms. Wu, it's a pleasure always.

18             MR. SOLOMON:  Thank you, Your Honor.

19             (Matter concluded.)

20                    *    *    *    *    *

21   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

22

23   s/ Georgette K. Betts                December 9, 2016

24   GEORGETTE K. BETTS                   DATE

25

GEORGETTE K. BETTS, RPR, CSR
Official Court Reporter