1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 16-CR-614(DLI)
                               :
                               :
                               :
       -against-               : United States Courthouse
                               : Brooklyn, New York
                               :
                               :
                               : Wednesday, October 25, 2017
DAN ZHONG,                     :
                               :
          Defendant.           :
                               :

- - - - - - - - - - - - - X

        TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
           BEFORE THE HONORABLE DORA L. IRIZARRY
             UNITED STATES CHIEF DISTRICT JUDGE

                   A P P E A R A N C E S:

For the Government: BRIDGET M. ROHDE, ESQ.
                    Acting United States Attorney
                    Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201
                  BY:  IAN RICHARDSON, ESQ.
                       DOUGLAS PRAVDA, ESQ.
                       ELIZABETH MACCHIAVERNA, ESQ.
                       Assistant United States Attorney

 For the Defendant:   ROBERT CLEARY, ESQ.
                      DIETRICH SNELL, ESQ.
                      BRITTANY BENAVIDEZ, ESQ.

Court Reporter:  Richard W. Barry, RPR
                 Official Court Reporter
                 E-mail: rwbarrycourtreporter@gmail.com

        Proceedings recorded by computerized stenography.
        Transcript produced by Computer-aided Transcription.

1          COURTROOM DEPUTY:  Criminal cause for status

2    conference, docket 16-CR-614, United States versus Dan Zhong.

3          State appearances.

4          MR. PRAVDA:  Good morning Your Honor, Doug Pravda,

5    Ian Richardson and Nick Moscow for the United States.

6          We are joined today by Elizabeth Macchiaverna, who

7    is with the taint team.  I also note the presence Your Honor

8    in the courtroom, of the Court Information Security Officer,

9    Harry Rucker.

10          THE COURT:  Good morning to all of you.

11          For the defense?

12          MR. CLEARY:  Good morning Your Honor, Robert Cleary

13    for Mr. Zhong.  He is here in the courtroom with a Mandarin

14    interpreter.

15          Also appearing with me is Dietrich Snell and on my

16    far right, Brittany Benavidez.

17          THE COURT:  Good morning to all of you.

18          May we have the name please of the Mandarin language

19    interpreter.

20          INTERPRETER:  John Law, L-A-U.

21          THE COURT:  Good morning.

22          Can you administer the oath, please, to Mr. Lau.

23          (Interpreter sworn by the Courtroom Deputy.)

24          THE COURT:  Thank you.

25          This matter is on for status conference as well as

- Proceedings -                                              3

1    for some limited oral argument on the defendant's motion for a

2    bill of particulars.  The Government has also made a motion

3    for a protective order, the two are somewhat interrelated.

4            I assume that the parties have had a chance to see

5    the summary order that I issued in connection with the

6    defendant's motion for a bill of particulars, and if you have,

7    you will note that the Court granted the defendant's motion in

8    part, to the extent that the Government is directed to

9    identify false statements in the visa applications, and denied

10   as to specific acts underlying the charged conduct.

11           The Court reserved decision pending today's

12   conference with respect to that prong of the motion that

13   requested identification of victims.

14           So, just to start with, and we're probably going to

15   go back and forth on this.  I just wanted to clarify, does the

16   defendant have-- has the defendant received the names of all

17   250 workers involved here or not?

18           MR. CLEARY:  I believe, Your Honor, I will confirm

19   this with my colleagues, that we have visa applications for

20   250 workers, correct?

21           MS. BENAVIDEZ:  Yes.

22           MR. CLEARY:  That would give us those names.

23           We understand from the Government's filing that

24   there are more workers than the 250 reflected in those

25   applications.  Indeed, in some of the discovery squabbles that

- Proceedings -                                         4

1   we are trying to resolve without the Court-- without bothering

2   the Court, we have been trying to get the Government to

3   produce the other visa applications.  They have not done that

4   yet.  We are not arguing that to the Court today.  But in the

5   course of those discussions, I have come to understand that

6   there could be a substantial number of additional applications

7   and hence additional workers.

8          THE COURT:  What is a substantial number?  What does

9   that mean?

10         MR. PRAVDA:  Your Honor, the Government's

11  understanding right now is that there maybe an additional

12  fifty or so visa applications, in addition to the 250 or so,

13  that we have already provided.

14         There are some-- there are a small handful, within

15  the 250 that the defendant identified to us, that they could

16  not find in the discovery and we are going back and we are

17  either confirming whether or not they are there.  If they are

18  not there, we will be providing it.

19         THE COURT:  So, you are talking about-- two

20  different things here.

21         So, according-- there are an additional

22  approximately fifty names?

23         MR. PRAVDA:  That's correct.

24         THE COURT:  Visa applications that the Government

25  has not yet turned over.

- Proceedings -                                             5

1          MR. PRAVDA:  That's correct.

2          THE COURT:  And, the defense is saying that they are

3    missing within the 250, that the Government previously

4    disclosed, that the defense is missing some visa applications

5    for those.

6          MR. PRAVDA:  That's correct.  I believe it is

7    probably about ten to fifteen.

8          THE COURT:  About ten to fifteen, okay.

9          MR. CLEARY:  Your Honor, the only other piece to the

10   equation is whether there are other workers that came over for

11   which the Government does not have visa applications.  I don't

12   know the answer to that question.  That would increase the

13   number of workers if that is the case.

14         THE COURT:  Is there such a category?

15         MR. RICHARDSON:  Your Honor, if I may.

16         THE COURT:  Yes.

17         MR. RICHARDSON:  What we are going to be-- what we

18   have been doing, and what we are going to be doing is

19   producing all of the visa applications for all of the

20   construction businesses, workers, who are brought into the

21   United States on A2 or G2 visas.  That should define the outer

22   scope of the workers at issue in this case.

23         That is about three hundred, Your Honor, that is the

24   total, that is the largest set we are talking about here.

25         MR. CLEARY:  Your Honor, that is not consistent-- I

- Proceedings -                                6

1   will wait until the Court finishes writing.

2            THE COURT:  You don't have to, I have ears.  My

3   hands work independently of my ears.

4            MR. CLEARY:  Multitasking.

5            THE COURT:  I got trained in State Court.

6            MR. CLEARY:  What the Government just said is not

7   consistent with my understanding.  My understanding maybe

8   mistaken.

9            But, I was under the impression that there were

10  other workers that came over not on A2 or G2 visas, but came

11  over on different visas.  The Government can tell me if I am

12  wrong about that or if they can confirm that I am right, those

13  are applications also.  Those are more workers.

14           THE COURT:  How is the Government going to address

15  that?

16           MR. RICHARDSON:  Your Honor, I'm not clear what

17  defense counsel is referring to.

18           THE COURT:  I'm not either.  That is why I would

19  figure that you know what your discovery is and what your

20  world of workers consist of.

21           MR. RICHARDSON:  We do, Your Honor.

22           In our world of workers is A2 or G2 visa holders

23  brought to the United States to perform construction work on

24  Chinese governmental facilities.  If workers came on other

25  status and the defense is aware of those workers, we request

- Proceedings -                    7

1   reciprocal discovery.

2          THE COURT:  Do you have a reciprocal discovery

3   demand now?

4          Is the Government alleging that all of these, let's

5   say, three hundred workers, approximately, that consist--

6   comprise the universe of workers, are they all victims of the

7   alleged forced labor conspiracy?

8          MR. RICHARDSON:  Your Honor, I would say, in some

9   subset.  I think the theory that is articulated both in the

10  indictment and in the Complaint is that as a condition of

11  their employment and coming to the United States, they were

12  all required to sign the debt bondage contracts that are

13  referred to in the Complaint.

14         We have quoted -- or some variation, in sum and

15  substance, they are essentially the same requirement in each

16  debt bondage contract.  So, depending how you look at it, yes,

17  they have all been victimized in some way or another.

18         The indictment confines the time period that we are

19  looking at, to January 2010 to November 2016.  So some of the

20  workers --

21         THE COURT:  To January 2016?

22         MR. RICHARDSON:  I'm sorry, I believe November 2016.

23         THE COURT:  Okay.

24         MR. RICHARDSON:  So, the visa applications that

25  we're producing to the defendant, come-- some of them come

- Proceedings -                                    8

1    before that time period.  Some of these workers for example

2    came to the United States multiple times under multiple visa

3    applications that were-- visas issued by the State Department.

4              So, the set of visa applications that we had

5    provided to the defendant, provides the universe of workers

6    that we are looking at, but the indictment, addresses a

7    narrower timeframe than the entire timeframe that would be

8    covered by the visa applications themselves.

9              THE COURT:  So, am I hearing the Government to say,

10   that you are limiting yourself to those workers who were part

11   or involved in this conspiracy, I suppose as victims, between

12   January 2010, and November 2016?

13             MR. RICHARDSON:  Yes.  I think that there are

14   important qualifications, limitations there.  Certainly-- I

15   think it is unique to each charge.

16             For example, if we look at the forced labor charge,

17   Count Two, the substantive charge, that charges the defendant,

18   provided and obtained labor and services of one or more

19   persons by means specified in the indictment.

20             Also charges the defendant benefited financially by

21   receiving one or more things of value by participating in a

22   venture that engaged in such acts.

23             From the Government's perspective, proof of the

24   participation in a venture that engaged in such acts is going

25   to involve evidence outside of the time period.  Because it

- Proceedings -                                    9

1    would go to what that venture was engaged in.

2            So, when we talk about victims here, I think that

3    entire-- that broader subset, that covers a broader timeframe,

4    those are victims, and depending on the charge in the

5    indictment, they maybe victim of one charge and perhaps not

6    another, because of the differences in the charges.

7            THE COURT:  Would it be too much to ask the

8    Government to give me a finite number of victims that are

9    involved here, that you intend to prove a case on, or with

10   respect to at trial?

11           So, for example, I have had a number of health care

12   fraud cases, where some have gone to trial, some have not.

13   Involving-- in one particular case, just that I recently

14   tried, thousands of patients.  Because of the long period of

15   time that the offending doctor was engaged.  Not only in the

16   practice of medicine, but in the fraud.  Okay.

17           The Government did not intend to prove their case as

18   to each and every patient.  So, they narrowed it to a subset

19   of patients, I forgot the exact number.  But, whatever the

20   subset of patients was, to try to prove the fraud.  Okay.

21           Needless to say, at that point, given the case law,

22   I did direct that the Government produce in a bill of

23   particulars, specifically, which patients the Government was

24   talking about, because of the large subset.

25           The exhibit listing the amount of the different

- Proceedings -                                            10

1   patients and procedures was a compact disc of just hundreds of

2   pages.

3              So the question here is, there are two questions.

4   One is, okay, how many victims are you talking about

5   generally, so it sounds like you are talking about generally

6   about three hundred.

7              But, of that three hundred, are you looking to

8   extrapolate a smaller number to prove the charges at trial.

9   Because if that is the case, then that presents the issue that

10  I think the defense is concerned about, and that the Court is

11  concerned about, which is the double jeopardy issue.  How do

12  they know that the Government won't come after him for some

13  other individuals that was not the actual subject of the

14  trial, at some later date.

15             I mean there maybe a statute of limitations problem

16  at that point.  But that aside, I think there is a real

17  concern, unless the Government intends to prove all three

18  hundred.  I don't know.  I am not here to tell you how to

19  prove your case.

20             But, I do think that it is a fair question as to

21  what number of victims are actually going to be the subject of

22  the Government's proof at the trial.

23             MR. RICHARDSON:  Understood, Your Honor.  I think on

24  that point, you noted at the beginning here, that this issue

25  is interrelated with the Government's motion for protective

- Proceedings -                                11

1   order.  So I--

2        THE COURT:  I can tell you right now, that your

3   application to wait to disclose this, until the 300 material

4   is disclosed, what, two weeks before trial?  That is not going

5   to happen.  Because two weeks before trial, there is no way

6   that we can have any expedited motion practice.  This is not

7   the only case that I have.

8        MR. RICHARDSON:  I understand, Your Honor.

9        To address--

10        THE COURT:  That is rather late in the game to be

11   deciding whether or not evidence should be suppressed.

12        MR. RICHARDSON:  Well, to address the first ex parte

13   motion that the Government made, and the order that the Court

14   issued.  The Court set a schedule for the production of

15   certain information to the defendant, that relates directly to

16   this victim issue.

17        And that--

18        THE COURT:  Which is I think in July?

19        MR. RICHARDSON:  So that required the Government to

20   disclose certain information relating to victims, 120 days

21   before the trial.

22        And, it is our expectation, that--

23        THE COURT:  120 days before trial, would be

24   approximately four months before trial.

25        MR. RICHARDSON:  Correct, Your Honor.

- Proceedings -                                    12

1          So, it is the Government's expectation, the

2   disclosures that we will make, 120 days before the trial, will

3   provide this evidentiary detail that the defendant is asking

4   for in relation to the victims.

5          I would note Your Honor, one of the cases that the

6   defendant cited--

7          THE COURT:  Then I don't understand, what is it?

8          Are you looking at that disclosure as your 3500

9   material?  When do you propose to make disclosures of 3500

10  material?

11         MR. RICHARDSON: Well --

12         THE COURT:  Then I am not understanding the position

13  that you are taking, that this information should be disclosed

14  at the same time as the 3500 material, unless I am

15  misunderstanding your position.  Maybe I am misunderstanding

16  your position.

17         MR. PRAVDA:  Your Honor, if I can address that.  I

18  think we are talking about --

19         THE COURT:  Mr. Solomon, you can come up.

20         Just let Mr. Solomon get settled and put his

21  appearance on the record.

22         MR. SOLOMON:  Alex Solomon for the Government.

23         THE COURT:  I'm sorry.  Go ahead.

24         MR. PRAVDA:  Your Honor, if I can clarify.  I think

25  there are two different categories of information that we are

- Proceedings -                                    13

1   talking about here.

2           One category of information which is what Mr.

3   Richardson was just addressing, was the information with

4   respect to the identities of the victim.  That is something

5   that we-- the Court already ordered in the ex parte order that

6   the Government would disclose 120 days before the trial.

7           THE COURT:  Okay.

8           MR. PRAVDA:  The second category, that is the

9   subject of the more recent ex parte motion, for a protective

10  order.  It is as to that category that the Government would be

11  proposing to disclose at the same time as the 3500 material.

12          So two separate categories of information that we

13  are talking about.

14          THE COURT:  So, is it the Government's position that

15  the disclosure that will come 120 days prior to trial relates

16  to the bill of particulars request that is made now?

17          MR. RICHARDSON:  I believe it will provide the

18  information that the defendant is asking for in the bill of

19  particulars, Your Honor.

20          THE COURT:  That is different from getting

21  disclosure at the same time as the 3500 material.  That still

22  leaves four months to do a briefing.

23          I would like some-- I also would like a little bit

24  of clarification from the defense as to what the basis of the

25  Franks motion would be, if there is a Franks motion.  Because

- Proceedings -                                    14

1   in looking at Franks versus Delaware, which is at 438 U.S.

2   154, 1978, the Supreme Court held that where-- I'm reading

3   directly from the opinion from 155 to 156.

4           Where the defendant makes a substantial preliminary

5   showing that a false statement knowingly and intentionally or

6   with reckless disregard for the truth, was included by the

7   affiant if the warrant affidavit, and that the allegedly false

8   statement is necessary to the finding of probable cause, the

9   Fourth Amendment requires that a hearing be held at the

10  defendant's request.

11          I -- that is in part, they go on to other things.

12          So I'm trying to wrap my head around, what exactly

13  would be the basis of the defendant's motion.

14          MR. CLEARY:  Franks motion, correct.

15          THE COURT:  Yes, the Franks motion.

16          MR. CLEARY:  So, if we were-- you remember this is

17  an issue we have taken up already with the Court.  There is

18  the affidavit is redacted in large portion.

19          THE COURT:  Forget the redaction.  Okay.  Let's talk

20  about where you are going with this.  Because presumably, and

21  I have not seen the un-redacted search warrant, okay.

22  Presumably the agents did an investigation and got some

23  information, presented it to a court, that found probable

24  cause for the issuance of the search warrant.  That is a

25  pretty tough hurdle to go over.

- Proceedings -                                          15

1        MR. CLEARY:  I understand Your Honor.

2        Our argument would be, if we had access--

3        THE COURT:  And the other thing is, the point is, I

4   don't know what having the identity of the victims has to do

5   with the Franks motion.

6        MR. CLEARY:  I was not connecting the two, Your

7   Honor.  I have two different applications.

8        THE COURT:  Okay.  That is--

9        MR. CLEARY:  If I misled the Court, I didn't mean to

10  do that.  I have two separate issues in my mind.

11       THE COURT:  Okay.

12       MR. CLEARY:  I can get to the Franks in a moment.

13  You may not need to hear from me on that now that I stated my

14  position as to the two different issues.

15       But, as to the bill of particulars and the

16  identification of the victims, I don't believe the Government

17  has answered the Court's fundamental question, which is, how

18  many of these three hundred or so workers--

19       THE COURT:  Go back to that in a minute.  My brain

20  jumped to Franks.

21       MR. CLEARY:  Do you want me to do that?

22       THE COURT:  Yes.  Humor me if you will.

23       MR. CLEARY:  On Franks, what we would look to do is

24  to point to the affidavit, representations made in the

25  affidavit that are incorrect, and then to assess whether-- you

- Proceedings -                                    16

1    know the standard better than I do, then assess whether

2    redacting those or excising those representations out of the

3    affidavit, is what is left in the affidavit, sufficient to

4    establish probable cause.

5           Now, we have already-- we can't make that showing,

6    for reasons we have talked about last time.  I am happy to

7    refresh the Court on that.

8           But, equally important is, we have already

9    identified some, we believe, significant representations in

10   the portions of the affidavits we have seen, that we believe

11   are incorrect statements by the agent.

12          THE COURT:  Like?

13          MR. CLEARY:  Can I do this ex parte, Your Honor?  I

14   don't believe the Government is entitled to hear from me at

15   this point about misrepresentations that I found, particularly

16   given the agent maybe a witness at the trial.

17          I am happy to disclose it to the Court.

18          THE COURT:  If I order a hearing, the witness will

19   have to address it at the hearing anyway.

20          Is this a case agent that we are talking about?  The

21   agent on the search warrant?  Is that a different person?

22          MR. PRAVDA:  It is a different agent, Your Honor.

23          MR. CLEARY:  Could I appear ex parte, Your Honor?

24          If you rule against me, I hope you don't, I hope you

25   rule for me.  If you were to rule against me, I would then

- Proceedings -                              17

1   have made a disclosure that would compromise my position at

2   the trial.  The position of surprise at trial.

3            Again, I don't see how the Government is entitled to

4   this information at this point.

5            THE COURT:  All right.  I will tell you what, I will

6   let you make a written submission.

7            MR. CLEARY:  Thank you.

8            THE COURT:  Ex parte.

9            MR. CLEARY:  Thank you.

10           THE COURT:  Maybe in a week you will do that?

11           MR. CLEARY:  Certainly, Your Honor.

12           THE COURT:  So we will say-- I like to give lawyers

13  definite dates, it is easier to plan that way.  By

14  November 1st, that will be a week.

15           MR. CLEARY:  Thank you.

16           THE COURT:  So let's go back then, we will leave

17  Franks for now.  Let's go back to the --

18           MR. PRAVDA:  Your Honor, if I just, to follow up on

19  that point before we leave the subject of Franks.

20           My understanding of the case law, is that in order

21  to be entitled to a Franks hearing, a defendant is required to

22  make a preliminary showing that would entitle them to the

23  hearing.  I'm not sure I understand, I've never seen any case

24  law that suggests that that kind of showing could be made in

25  an ex parte basis.  Because the Government has a right to

- Proceedings -                              18

1    respond and say--

2            THE COURT:  He has not made the motion yet.

3            MR. CLEARY:  Correct.

4            THE COURT:  This is a multitiered issue.  All right.

5    Because we are not at Franks yet.  In order for the Court to

6    make any kind of Franks decision, as to whether or not a

7    hearing is warranted or is not warranted.

8            The argument that is being made now is with respect

9    to the unsealing of the entire search warrant affidavit.

10   Because the defense is contending that without being able to

11   see the entire affidavit, they are hamstrung.  Their hands are

12   tied, because they are not able to ascertain whether in fact

13   they even have a viable Franks motion.

14           It may be that they decide that there is not a

15   viable Franks motion.  I think that has been discussed at some

16   other prior conferences.

17           MR. CLEARY:  It has.

18           THE COURT:  That we have had here.

19           So, we are not at the level of-- it is not my

20   intention to use any ex parte submission by counsel to make a

21   decision, as to whether or not there should be a Franks

22   hearing.  Because I agree with you, that the Government is

23   entitled to respond.  That is not what we are talking about

24   here.

25           In the same way that the Government has made a

- Proceedings -                                    19

1    motion ex parte for withholding the information, as I

2    understand it, this is more in the nature of a disclosure of a

3    defense.

4              MR. CLEARY:  Correct, Your Honor.

5              THE COURT:  And that is why the defense is concerned

6    about disclosing it.

7              If it should turn out that I feel that it is

8    something that should be disclosed to the Government, the

9    defense will be given an opportunity to either withdraw the ex

10   parte submission or to allow it to be shown to the Government.

11   That will be the two choices that they can make.

12             I mean after all, courts do this all the time.

13   Differentiate between admissible and what is not admissible

14   and come to some sort of a ruling.  We do it at hearings, we

15   do it all the time.  Right.

16             So, did I state that accurately, that this is where

17   you are going with that?

18             MR. CLEARY:  You stated the defense's position

19   accurately, Your Honor.

20             THE COURT:  So I don't think you need to be worried

21   about that, because we are not even at the briefing stage yet

22   for the Franks motion.

23             And it may be that once I receive the defense's

24   submission, because I have not yet seen an un-redacted search

25   warrant, and I am going to ask the Government, unless I missed

- Proceedings -                                     20

1   it in some submission that you gave, there has been a lot of

2   paper already--

3           MR. PRAVDA:  Your Honor, we will provide you --

4           THE COURT:  If I misstated it.

5           MR. PRAVDA:  We will provide you with another copy.

6   It was attached to the March 2016 ex parte application,

7   because what happened was, we submitted a version and asked

8   the Court to authorize the specific redactions that were

9   contained in that affidavit.

10          I'm sorry, March 2017.

11          THE COURT:  March when?

12          MR. PRAVDA:  March 2017.

13          THE COURT:  March 20th?

14          MR. PRAVDA:  But we are happy to provide another

15  copy.

16          THE COURT:  Is the March 20th, that you said?

17          MR. PRAVDA:  It was March 6th, 2017.

18          THE COURT:  March 6th, I'm sorry.

19          Just hold on a second.

20          (Pause.)

21          THE COURT:  You know which exhibit it is, that

22  submission-- besides being lengthy, had a lot of exhibits.

23          MR. PRAVDA:  That is correct, Your Honor.  I believe

24  it is on--

25          THE COURT:  How long is the search warrant

- Proceedings -                                21

1    affidavit?

2              MR. CLEARY:  38 pages.

3              MR. PRAVDA:  Exhibit A1.

4              THE COURT:  I have that.

5              MR. PRAVDA:  And this Your Honor, Exhibit A2, is the

6    same affidavit in redacted form.  So that Your Honor can

7    compare and see what was redacted.

8              THE COURT:  Okay.  So I can look at that again.

9              Let me look at that.  It has just been awhile since

10   I looked at that.  I had a trial right after that, with

11   thousands of pages of medical, Medicare fraud issues.

12             So, let me refresh my memory with that and I will

13   have the back drop of the defense's submission, which I think

14   would be helpful for the Court to make that decision.

15             Because I am wondering whether there might not be

16   some way-- I'm trying to find a way to reach some

17   accommodation that satisfies the Government's concerns and

18   also satisfies the needs of the defendant.

19             I am hopeful that maybe there is some happy medium,

20   somewhere in between there.

21             MR. CLEARY:  Your Honor had made--

22             THE COURT:  The Government in connection with the

23   protection of the victim's names, the Government has just

24   expressed some sort of a generalized concern, and I think part

25   of that concern was that it alleges that the defense had been

- Proceedings -                                                    22

1   approaching certain potential witnesses or victims in the

2   case, and asking whether or not they are cooperating with the

3   Government.  And the Government is concerned of retribution,

4   back in the Peoples Republic of China.

5           And I guess my question is, whether-- where do those

6   concerns come from, have there been any expressions of such

7   concern by any potential witnesses from the Government?

8           MR. PRAVDA:  Your Honor, if the Court wishes, that

9   is something the Government can address in an ex parte letter

10  as well.

11          THE COURT:  I am sort of loathe to have multiple ex

12  parte submissions.  The Government already submitted one and

13  the problem is, that you speak in generalities.

14          MR. PRAVDA:  I think that we can--

15          THE COURT:  I'm also not-- I have a concern that if

16  the defense is-- does get the names of victims, that they do--

17  that there might possibly be some feeling on their behalf,

18  whether intentional or not, or intentional on the part of the

19  defense team, where they might feel threatened in some way.

20  Because I have seen that happen in other cases.  Sometimes

21  un-intentioned.  Unintended, an unintended consequence of the

22  approach.  A lot depends on what the approach is.

23          And the mere fact that a witness or potential

24  witness or a victim might say, I'm not cooperating with the

25  Government, doesn't necessarily mean that if agents spoke to

- Proceedings -                                    23

1   that person and got statements from that person, and the agent

2   uses that information to obtain a search warrant, for example,

3   that the mere fact that the individual says that they are not

4   cooperating, means the agent is lying.

5          Because statements can be obtained by agents and it

6   happens all the time during investigations, as they go along,

7   of potential witnesses who are not necessarily cooperating, as

8   we understand that term, with the Government, but nonetheless,

9   they obtain information that leads to other things.

10         So, that is why I am asking this, because in looking

11  at the defense papers, I have this concern that there is a

12  belief that if the agent said, I spoke to Jane Doe and Jane

13  Doe said X, Y, and Z, that the defense is assuming that that

14  person automatically is a cooperator.  The defense speaks to

15  Jane Doe and she says I'm not a cooperator.  I'm not

16  cooperating with the Government.  The person may have been

17  interviewed.  Doesn't necessarily-- they are not mutually

18  exclusive.

19         MR. CLEARY:  I agree with that, Your Honor.

20         THE COURT:  That is why I am trying to wrap my head

21  around this.

22         MR. CLEARY:  Your Honor, on the-- redacted

23  affidavit, you were saying, I appreciate this, trying to reach

24  accommodation that works for both sides.  You had actually--

25  you were the only one when we appeared last time that came up

- Proceedings -                                    24

1   with a solution that I think works for both sides, certainly

2   our side.

3          You had suggested that the affidavit be un-redacted,

4   for counsel's eyes only and we had after court, broached that

5   subject with the Government, and they ultimately rejected it.

6          But, I think that is something that would work and

7   Your Honor, it should work.  We are officers of the Court.  We

8   were both prosecutors for many decades in my case, we have

9   been members of the defense bar for many many years.  We

10  should be entitled to that information-- we are entitled to

11  the information and the Government should not have concerns

12  that we are going to do anything improper.

13         THE COURT:  Why wouldn't that work?

14         MR. PRAVDA:  Your Honor, in this instance, the

15  defendant's company has demonstrated a history of retribution

16  against people who have cooperated.  That there are specific

17  examples of that in the Complaint, in the public complaint.

18         We can provide the Court, if Your Honor wishes with

19  additional specifics.

20         The concern with the proposal that Mr. Cleary just

21  gave, is that obviously defense counsel is going to use this

22  information for purposes of the defense, and in so doing, will

23  reveal to their client, who these people are.  And the

24  client's company may well act in accordance with this history

25  of retribution.

- Proceedings -                              25

1       MR. CLEARY:  That is easy to solve.  I don't

2  represent the company.  If the Court would tell me, it would

3  be perfectly appropriate.  The Court tells me, I get the

4  information, I'm entitled to, counsel's eyes only, meaning us,

5  and not to share it with the company or company counsel, that

6  is satisfactory.

7       THE COURT:  Or with the defendant.

8       MR. CLEARY:  I'm fine with that too, Your Honor.

9       THE COURT:  So then if-- I mean, this is a legal

10  decision that the lawyers have to make as to whether or not

11  there is a viable motion to make.  I don't think Mr. Zhong is

12  an attorney, I don't think that is among the representations

13  made to the Court.

14       MR. CLEARY:  Correct.

15       THE COURT:  And, in particular since-- as an initial

16  matter, the review would be necessary for the defense to even

17  determine whether or not we are spinning our wheels here.  It

18  may be that at the end of the day, a Franks motion isn't going

19  to be necessary.

20       MR. PRAVDA:  Your Honor, just to be clear, it is not

21  at all clear to the Government that the statements that Mr.

22  Cleary is suggesting maybe in the affidavit, even relate to

23  the issues that we are talking about right now.

24       So, he said himself, that the Franks motion and the

25  identity of the victims are two separate issues.

- Proceedings -                                    26

1        So when you are talking about--

2        THE COURT:  Except to the extent as I understood it,

3   the agent may have been informed as to certain facts by

4   certain individuals, correct?

5        MR. CLEARY:  That is not my argument on the Franks

6   being redacted affidavit and Franks, Your Honor.

7        THE COURT:  Okay.

8        MR. CLEARY:  I don't know what the source of the

9   information is for the agent.  I am treating these in my mind,

10  and in terms of our application, these are two completely

11  different issues.

12       THE COURT:  Okay.

13       MR. CLEARY:  So let's leave the--

14       THE COURT:  So, the question is, because this is

15  part of the problem, I think, things are being conflated here.

16  We are talking about the Franks application, which is

17  dependent on the defense-- this is their argument, being able

18  to see the un-redacted affidavit of the agent, for the search

19  warrant itself.

20       And, if it would be for counsel's eyes only, without

21  disclosure to the defendant's companies or the defendant, for

22  their determination on the motion that they are going to make,

23  and if a portion of the motion has to be made under seal

24  because to the extent that a portion of the motion would

25  relate to what has been redacted by the Government, that would

- Proceedings -                                        27

1    be one way to deal with that.

2           And I have done motions in both civil cases, and in

3    criminal cases where there was sensitive-- for example, in a

4    terrorism case, where there is sensitive information and what

5    was done was that there were two separate documents that were

6    made.  The public documents with the documents that could be

7    made publicly, and a sealed document with arguments that

8    needed to be made addressing sensitive information.  In fact

9    as I am recalling it, it has been some years now.

10          As I recall it, in that particular case, it did

11   involve sensitivity concerning safety of witnesses.

12          So, that might be an accommodation that could be

13   made to allay whatever concerns the Government has, that

14   perhaps, what the disclosure would translate to, would be a

15   motion that is made, that is filed on the public docket, that

16   the defendant and/or his company would be able to access some

17   way or another, and then perhaps act in an untoward way on

18   that information.

19          MR. PRAVDA:  Your Honor, the Government objects to

20   that approach.

21          There is particular information that is referenced

22   in the ex parte submission that obviously I can't discuss here

23   in open court, that is very sensitive to the Government.

24   There is significant concerns that the Government has with

25   even just defense counsel seeing that information.  Between

- Proceedings -                                   28

1   the ex parte letter, I can point Your Honor to it.  But I

2   can't speak specifically to what that fact is.

3            I can say it is on page two of the ex parte letter.

4   It is the last paragraph, before the section on the law.  The

5   September 15th, 2017, ex parte submission, in the second full

6   paragraph.

7            THE COURT:  I'm sorry, which page?

8            MR. PRAVDA:  The second page, the second full

9   paragraph, right before the legal section.

10           THE COURT:  I'm sorry, are you talking about--

11           MR. PRAVDA:  Your Honor, if I may.  It is the

12  September 15th, 2017.

13           THE COURT:  I have the September 15th document in

14  front of me.

15           MR. PRAVDA:  There were two letters filed on

16  September 15th, by the Government.  One was a public letter

17  and the other one is the ex parte letter.

18           If you would like, Your Honor, I can hand up my copy

19  to you.  I --

20           THE COURT:  I have it.

21           I recall reading this, and still wondering why

22  attorney's eyes only review would not be appropriate.  It

23  seems to me that you are assuming that the defense counsel is

24  going to disclose even in the event that the Court directs

25  counsel not to disclose either to the defendant's company or

1   companies, whatever businesses he has, any business he has, or

2   to the defendant or to anyone related to the defendant.

3          This would be a discussion that the two attorneys

4   have or three attorneys have, sitting quietly back there.

5          One day we are going to let her argue a motion,

6   right?

7          I am troubled by that.  Because there is nothing

8   that I have seen in the letters, submission that you just drew

9   the Court's attention to, that would implicate defense

10  counsel.

11         MR. PRAVDA:  Well, Your Honor, quite simply, defense

12  counsel could act on that information simply by doing

13  something like interviewing the person or persons that are

14  referenced in that paragraph.  That would undermine and raise

15  exactly the concerns that the Government has articulated in

16  that paragraph.

17         THE COURT:  I will tell you what we are going to do,

18  we are going to proceed as I had originally planned.  I am

19  going to get the ex parte submission from defense counsel by

20  November 1st.  And I am going to review, again, the

21  un-redacted search warrant against the redactions that have

22  been made.  I will have the benefit of defendant's submission.

23         If the Government has any additional information

24  concerning its safety concerns, concerning any witnesses at

25  all, then you need to submit that to the Court, ex parte by

- Proceedings -                    30

1   November 1st as well.

2          I want to have all of that information together.  I

3   think you really need to think about, seriously, about the

4   eyes only alternative, and to the extent that the Government

5   in any event, as I understand our discussion today, is going

6   to be disclosing identity of victims, 120 days out, I assume

7   that all of these people's names are going to be out to the

8   defense.  Yes?

9          MR. RICHARDSON:  That's correct, Your Honor.

10         THE COURT:  Okay.

11         Then I could to allay some concerns, just prohibit

12  the defense from actually speaking to those individuals until

13  the 120 days, when you get the disclosure, the full

14  disclosure.  That still would provide four months out to do

15  any further investigation or whatever.

16         I mean the witnesses may want to talk to you, they

17  may not want to.  That is their prerogative.  But the defense

18  is entitled to do its own investigation as well.

19         But I need to have something more than some general

20  concern.  I would like to know what the Government is doing to

21  protect these people, because that is not clear to me either

22  from this submission.

23         So, just to make sure that we covered everything, so

24  with respect to-- with respect to the 250-- ultimately there

25  will be three hundred workers that are the subject here, those

- Proceedings -                    31

1   identities are going to be disclosed and given 250 have

2   already been turned over, as far as visa applications are

3   concerned.

4          I still have not heard from the Government going

5   back to the point you were going to make, whether there is

6   going to be a subset of those, that the Government is going to

7   present at trial.

8          MR. PRAVDA:  Your Honor, I think that just from a

9   practical consideration, it is likely that the Government will

10  do some subset. We have not made the determination at this

11  point of who those individuals might be.

12         I would also just note for the Court, that because

13  there are different charges against the defendant.  Example, a

14  forced labor charge, there is a visa fraud charge.  Some of

15  those--

16         THE COURT:  Okay.  What is going to wind up

17  happening, I can tell you this now, is I'm going to give you a

18  deadline for you to decide what subsets, okay, are the

19  Government is going to prove at trial.

20         And you can have a subset based on charge one,

21  another subset based on charge two, and another subset based

22  on charge three.  I'm not going to direct you to disclose that

23  now, but you are going to start thinking about that now,

24  because at some point, we are going to set a trial date here,

25  and we are going to move backwards from that.

- Proceedings -                                     32

1          So that realistically, a lot of this mountain of

2    paper, the defense can prepare for trial.

3          MR. CLEARY:  Part of that --

4          THE COURT:  But, you can't wait until the eve of

5    trial to start whittling down the names, okay.  Because I have

6    had that happen to in these types of cases.  Similar types of

7    cases.  I have not done a forced labor case.

8          But, in cases involving this numerosity, okay, that

9    is the basic issue.  You have this large number that you are

10   dealing with.  And realistically, you have to whittle it down

11   to what you feel you need to prove your case beyond a

12   reasonable doubt.

13         I'm not going to tell you, it is going to be one,

14   two, three.  You are going to make whatever decision that is

15   on your own, but it will be, if there are different people for

16   different counts, then you group it by count.  I don't see

17   what is so difficult about that.  I feel like the Government

18   is making this a lot more difficult than it needs to be.

19         I suggest that you start thinking a little bit more

20   creatively in a way that everyone's needs can be accomplished

21   here.  Because I do think that there is a way, and you are not

22   going to like it if I make that decision for you, so you might

23   as well work together to make that decision among yourselves.

24   It is your case to try.  It is their case to defend.  I am

25   here to just make sure that everybody follows the rules.

- Proceedings -                    33

1    Okay.

2              MR. PRAVDA:  Understood.

3              THE COURT:  Is there aside from the needing names we

4    were talking about, is there any other outstanding discovery

5    issues here?

6              MR. PRAVDA:  Your Honor, I am happy to address where

7    we are.

8              THE COURT:  There was an update on-- from Ms.

9    Maccniaverna, I think, right?  You filed something this week,

10   I think.

11             MR. MACCNIAVERNA:  Yes, Your Honor, I did make a-- a

12   Rule 16 production of E-mails sent to or received by the

13   defendant's E-mail address, that I recently discovered while I

14   was reviewing documents in the filter team data.

15             THE COURT:  Anything else from the Government's

16   perspective?

17             MR. PRAVDA:  If Your Honor wants me to address where

18   we are, I am happy to do that.

19             THE COURT:  Yes, please.

20             MR. PRAVDA:  So, Your Honor, the last status

21   conference, Ms. Maccniaverna updated the Court that she

22   anticipated the filter team would be turning over to the

23   prosecution team, all E-mails by November 10th and all other

24   electronically stored information by December 8th.

25             I understand that we're still roughly on target to

- Proceedings -                                        34

1    meet those deadlines.  It may be off by a week or so.  So it

2    would be like November 17th, December 15th.

3           What we have found so far, Your Honor, this is

4    taking approximately thirty days, give or take, for the-- once

5    the Government receives the material, from filter review team

6    to review for relevance and then turn over to defense counsel.

7           So on that timeline, assuming that everything is

8    done by December 15th, we would then complete the English

9    language discovery production by mid January.

10          The one category that I omitted from that summary,

11   Your Honor, is the foreign language documents.  There are

12   pretty substantial volumes of foreign language documents.

13   What we have seen so far is something like five percent of the

14   total number of documents are in Mandarin or Chinese or some

15   other language.  We are working with F.B.I. linguists, both at

16   filter team level and at the prosecution team level, to work

17   our way through that set of documents.

18          Right now, I am not in a position to say exactly

19   when that will be complete.  It will be at some point after

20   mid January, I would hope, mid February.

21          But, I think we have to see-- we have a very large

22   team of people working on this.  I think we need to get a

23   better sense of how long the translation process is taking,

24   before we can commit to being able to tell the Court exactly

25   when the production of those materials will be complete.

- Proceedings -                           35

1        THE COURT:  Anything that you all want to raise on

2   your end?

3        MR. CLEARY:  I do, Your Honor.

4        I have a number of issues and questions which I will

5   pose to the Court.  But they are really for the Government.

6        Following on the representations that they made on

7   discovery, when we were here in early September,

8   September 6th.

9        In the September 6th conference, the Government

10  said, that the review would be completed in about two months

11  and that the prosecution team would produce materials they

12  received from the taint team, on a rolling basis, almost

13  immediately.  Those are the words that they used at page 7,

14  line 24; page 8, line 3.

15       That has not happened, Judge.  The Government has

16  not given us anything in almost two full months since

17  August 30th.

18       Now, there is a disc they sent over which we have

19  not seen yet.  It didn't arrive at our office before we left

20  for court.  Apparently there is a production.  I don't know

21  what is on that. But, they did not produce almost immediately

22  on a rolling basis that information.

23       So what I want to know is, what is the status of

24  that review that they told the Court about, on September 6th,

25  when are we going to receive it and volume and language.  If

- Proceedings -                                        36

1    it is Chinese, that is a different matter for us than if it is

2    English.

3              I have several other issues to, Your Honor, related

4    to representations made on September 6th.  I can go through

5    each now or if you want me to wait and do one by one, I will

6    do it that way.

7              THE COURT:  Let's take that first.

8              MR. PRAVDA:  Your Honor, the representations that

9    Ms. Maccniaverna made about where filter team review was in

10   the process, in that September 6th conference is exactly what

11   I just told the Court.  November 10th, and December 8th.  And

12   I have just advised the Court that filter team as I understand

13   it, is roughly on target to meet those deadlines.  Right now

14   they might slip by a week.  We are--

15             THE COURT:  What the Government represented was that

16   it was going to make production on a rolling basis, not okay,

17   we are going to accumulate everything by a date certain and

18   then produce everything.

19             MR. CLEARY:  They said almost immediately, Your

20   Honor.

21             THE COURT:  Yes, I remember that.

22             MR. PRAVDA:  Yes, we received the first pass of

23   25,000 documents over the wall from filter team.  We reviewed

24   that, that culminated in the disc we produced yesterday.  That

25   is the English language material that is all of the relevant

- Proceedings -                                    37

1   documents out of those 25,000 documents.

2         The filter team is continuing to provide the

3   Government team, the prosecution team on a rolling basis those

4   materials--

5         THE COURT:  What is your definition of a rolling

6   basis?

7         MR. PRAVDA:  As they are reviewed and deemed to be

8   non privileged, they are being passed over the wall.  As I

9   mentioned, it takes about thirty days for the relevance review

10  given the volume.  Talking about maybe 250,000 documents.

11        So, reviewed a number of documents that were passed

12  over, we tried to put them into the production cue and made a

13  production.  It is not the case that when I give the mid

14  January deadline, that means that there wouldn't be another

15  production until mid January.  We are going periodically

16  between now and then, to make production of the material that

17  the prosecution team has been able to-- has received from

18  filter team, has conducted the relevance review on and has

19  determined to be relevant and discoverable.

20        MR. CLEARY:  They said that last time.  They have

21  not done that.

22        Almost immediately reference, was not documents

23  going over the wall to the prosecution team.  It was the

24  prosecution team producing those materials to us.  That just

25  never happened.

- Proceedings -                    38

1          MR. PRAVDA:  Your Honor, there is still a

2     substantial relevance review that has to be done.  It is not

3     the case--

4          THE COURT:  Perhaps you should use your words more

5     carefully, because it is not immediate production.

6          In other words, when the taint team gets done

7     reviewing, you are not just automatically taking what you get

8     from the taint team and turning it over to the defense.  You

9     are then engaging in an additional review after that, correct?

10         MR. PRAVDA:  That's correct.

11         THE COURT:  The immediacy is gone.

12         For now, I'm going to let the Government proceed as

13    it is doing because perhaps you don't want to be bombarded

14    with millions of documents that a good portion of which are

15    not relevant, necessarily to the case.

16         But then, that doesn't mean that, you know, the

17    Court won't revisit this, if I feel that it is not being

18    turned over as diligently as it should be.

19         MR. CLEARY:  I have a few other issues.

20         MR. PRAVDA:  I was just saying, understood.  We are

21    working diligently.

22         THE COURT:  All right.

23         MR. CLEARY:  I have a few other issues as to a

24    follow onto the September 6th conference.

25         The Court was told on September 6th, that the taint

RB        OCR

1   team's review of what they characterized as hard copy

2   published materials, that that taint team's review was

3   completed and that that information was given to the

4   prosecution that same day, September 6th.

5           This is on page 8, line 25 to page 9, line 2.

6           That information has never been produced to us.  We

7   know that, because they hadn't produced any information to us,

8   from August 30th, until this disc, which we still have not

9   received.  We are led to believe that that disc has just

10  electronic information on it, not hard copy.

11          So, I want to know what that information-- the same

12  questions, Judge, what that information is, why we have not

13  received it yet, since the prosecution team has had it for

14  however many weeks it has been since September 6th.  What is

15  the volume of it, when will we receive it and what language is

16  it in?

17          MR. PRAVDA:  Your Honor, the hard copy document

18  consisted of approximately twenty documents.  None of which

19  were deemed to be relevant.

20          THE COURT:  Okay.  Well, it might be helpful if

21  something like that was memorialized.  You don't have to file

22  it with the Court.  Trust me, I don't want to be receiving all

23  the discovery letters that go back and forth among counsel.

24          But, it might be helpful to follow up and say, of

25  the hard copies that were discussed at the September 6th

- Proceedings -                                    40

1   conference, it has been reviewed and not deemed relevant.

2   Then this way, it obviates the need for addressing it at a

3   conference like this.

4            MR. CLEARY:  That would be very helpful.

5            THE COURT:  So, not left hanging.

6            MR. CLEARY:  That would be very helpful.  But I

7   would also ask the Court to direct the Government to respond

8   promptly to our requests.

9            This has been a huge problem with discovery

10  throughout this case.  I don't want to belabor the record, I

11  don't want to burden the Court with this.  I will give you one

12  or two examples and only one or two examples of which there

13  are many.

14           On June 2nd, we made our request for a bill of

15  particulars.  The Government did not respond in writing to our

16  request for a bill of particulars for eleven weeks.  As you

17  well know, we could not bring a motion, we could not go out,

18  if we had a motion to bring until after they responded in

19  writing.

20           Their response, as you know, is what I believe is

21  the standard response from the U.S. Attorneys' office.

22  Evidentiary, we don't have to produce it.

23           Eleven weeks, almost three months to do that, and

24  that is why, from June 2nd, until October 25th, it has taken

25  that long to resolve the bill of particulars issue.  That is

- Proceedings -                41

1    just one example.

2           Another very recent example, I will stop with the

3    examples, is on September 22nd.  We wrote a detailed discovery

4    letter to the Government, trying to resolve the issues, I have

5    alluded to several times.  Trying to resolve without burdening

6    the Court.  They did not respond to that letter until

7    yesterday.

8           So over a month, and when they responded he only

9    addressed a couple of the issues and said they will respond to

10   the rest later.  That is another month of time.

11          THE COURT:  I have got a response for this.  Okay.

12   If a request is made, from either side, what is good for the

13   goose is good for the gander.  The parties-- the opposing

14   party has fourteen days to respond.  Even if it means, that

15   response is, well, we need more time because.  But not to just

16   sit there, and leave the request hanging.

17          Unfortunately, I see lawyers do this a lot, motions

18   are made, requests are made, and there is no direct response

19   that is made.  Unless there is a directive by the Court and

20   that is wasteful.

21          So, we will just use the federal rules, fourteen day

22   time period and respond in whatever the appropriate response

23   is.  This way matters do not remain unaddressed.

24          MR. CLEARY:  That will be helpful, Your Honor.

25          THE COURT:  This way, also, like I said, I don't

- Proceedings -                    42

1    necessarily need to have these things piled on the docket

2    unless court action is necessary.

3           I am hoping that by having this kind of exchange,

4    that that will eliminate the need for court, for court action.

5           But at least then there is less of a chance of

6    misunderstanding, that will be a hindrance to moving the case

7    forward one way or another.

8           I have no doubt that both sides are working

9    diligently.  This is a complicated case.  It is made more

10   complicated by the fact because of the foreign language

11   documents and privileged documents that are involved.  So it

12   is not easy.  I trust that both sides are working diligently.

13          But, you have to work a little bit-- as I said, a

14   little bit more creatively and perhaps smarter to be able to

15   be more responsive and make a clearer record of what is

16   happening so that there is less misunderstanding going on.

17          MR. CLEARY:  Thank you.

18          THE COURT:  Is there something else?

19          MR. CLEARY:  Two related issues again coming out of

20   the September 6th conference.

21          MR. PRAVDA:  Before Mr. Cleary moves on, if I can

22   address that.

23          THE COURT:  Yes.

24          MR. PRAVDA:  The Government is happy to respond

25   within fourteen days.  But I want the Court to understand that

- Proceedings -                               43

1    the defense has endeavored over the last several months to

2    drown the Government in paper.

3           There were requests made--

4           THE COURT:  That is what large firms do.

5           MR. PRAVDA:  And every time the Government has to

6    spend--

7           THE COURT:  I understand.  That is why I said, even

8    if the response is, you know what, we are working on it, this

9    is how much longer it is going to take.

10          MR. PRAVDA:  Okay.

11          THE COURT:  I understand that.  This is what large

12   firms do.

13          MR. PRAVDA:  That is fine.

14          THE COURT:  That is to be expected.

15          MR. PRAVDA:  Okay.

16          THE COURT:  I get it.

17          But, it is more difficult to work with no response

18   at all.  That is my point.  Okay.

19          Second point or third point?

20          MR. CLEARY:  I guess they are related.

21          Metadata, we had a discussion in the conference on

22   September 6th.

23          THE COURT:  Yes.

24          MR. CLEARY:  The Government said they would get the

25   metadata to us, and the Court had noted in that-- actually

- Proceedings -                              44

1    requested that information be provided in a searchable format.

2              THE COURT:  Yes.

3              MR. CLEARY:  I don't believe we received that yet.

4    In fact in the Government's letter, yesterday's letter, they

5    said that that information, the metadata that we have been

6    waiting for, for a long time now, would be produced shortly.

7              The same series of questions, I would like to know

8    what shortly means, when are we going to get the metadata.

9              THE COURT:  When is that forthcoming?

10             MR. PRAVDA:  Your Honor, I think that that is a

11   request for certain filter team production.  So I will have

12   Ms. Maccniaverna address that.

13             MR. MACCNIAVERNA:  Your Honor, as you maybe aware,

14   in an effort to provide the defendant with his own statements,

15   as expedient a manner as possible, filter team has made

16   productions.

17             THE COURT:  The interpreter can't hear you.

18             MR. MACCNIAVERNA:  In an effort to provide the

19   defendant with his own statements in as expedient manner as

20   possible, filter team has made productions of E-mails sent to

21   and from his E-mail account.

22             We made those productions in PDF form.  I have

23   placed--

24             MR. CLEARY:  Sorry.

25             THE COURT:  PDF form.

- Proceedings -                                    45

1          MS. MACCNIAVERNA:  Yes.  I have placed a request

2    with our technical person that I work with, to reproduce those

3    documents with metadata.  I am confident that will be done by

4    the end of this week.

5          THE COURT:  Okay.

6          MR. CLEARY:  The related issue, and maybe I just got

7    an answer to it, which was, the foreign language documents.

8    Most of those are produced in PDF.  So I am told we need them

9    in native format, with extracted text, so that we can search

10   them.

11         I would like to know whether that is happening as

12   well.

13         MR. PRAVDA:  Your Honor, I'm not clear from Mr.

14   Cleary's question whether he is asking about foreign language

15   documents provided as part of filter review or as part of the

16   prosecution team review?

17         THE COURT:  Which review are you talking about?

18         MR. CLEARY:  The review that leads to documents

19   being produced to us.  That is all I care about is whether--

20         THE COURT:  I guess he is talking about the end

21   review by you.

22         MR. PRAVDA:  Okay.

23         THE COURT:  Whether by the trial team.

24         MR. PRAVDA:  The only foreign language documents

25   that the prosecution team has produced, if they existed in

- Proceedings -                                    46

1    electronic format they have been produced in electronic

2    format.  If they exist in hard copy or some other kind of

3    format, that is the format they have been produced in, in PDF

4    format.  If we don't have it in electronic format.  We have

5    not provided it in electronic format.

6              MR. CLEARY:  I think that answers my question.

7              THE COURT:  I think that sounds like something that

8    maybe you should just discuss together.

9              Let's set a date, I have got another matter where

10   the parties have been waiting patiently.

11             It sounds like there is a lot of stuff that is going

12   on in November.

13             Do the parties want to meet in December?

14             MR. CLEARY:  We would like to, Your Honor.  Early

15   December if the Court is available.

16             THE COURT:  I have time at noon, December 6th, if

17   that is good for the parties.

18             MR. CLEARY:  It is for the defense.

19             MR. PRAVDA:  Your Honor, the only concern on the

20   Government's end is that Ms. Maccniaverna is going to be away

21   for two weeks for Department of Justice training from

22   December 5th through December 14th.  So to the extent she

23   should be present, she wouldn't be available on December 6th.

24             THE COURT:  Are you the only person on the team?

25             MR. MACCNIAVERNA:  I am the only person on the team

- Proceedings -                                    47

1    from the office--

2              MR. PRAVDA:  The only A.U.S.A..

3              MR. MACCNIAVERNA:  I'm sorry, to clarify, actually

4    the training starts on the fourth of December.

5              THE COURT:  For the whole week?

6              MR. MACCNIAVERNA:  Yes, Your Honor.

7              THE COURT:  What about the afternoon of December

8    11th.

9              MR. MACCNIAVERNA:  It is a 2-week period.  It is the

10   week of December 4th, through December 15th.

11             MR. PRAVDA:  Your Honor, would December 1st work.

12             THE COURT:  No.

13             MR. PRAVDA:  The 18th?

14             THE COURT:  I'm sorry.

15             COURTROOM DEPUTY:  The week of the 18th.

16             THE COURT:  I can put this on for Monday

17   December 18th.

18             MR. CLEARY:  That is fine for the defense.

19             THE COURT:  Is 10 o'clock in the morning okay for

20   everybody?

21             MR. CLEARY:  That is fine.

22             MR. PRAVDA:  Yes, Your Honor.

23             THE COURT:  December 18th.

24             Does the defendant consent to the exclusion of time?

25             MR. CLEARY:  We do, Your Honor.

- Proceedings -                                48

1       THE COURT:  Time is excluded on consent and in the

2  interest of justice for the reasons stated on the record.  And

3  the Court does have under advisement the motions with respect

4  to the protective order as well.  Although I am hoping that I

5  will have a decision for you long before December 18th.

6       MR. CLEARY:  Thank you, Your Honor.

7       I know we are keeping another party waiting, I

8  apologize.  I have one thing to put on the record to apprise

9  the Court, there is no decision the Court has to make now.

10      THE COURT:  Okay.

11      MR. CLEARY:  We are going to, having now just heard

12 that discovery will continue through mid February, at least,

13 recognizing that that means, we will probably not be trying

14 the case until the summer, that is way longer than anyone ever

15 anticipated and I will be in light of that, filing a due

16 process bail motion.

17      Your Honor has dealt with risk of flight previously

18 at a time when everyone thought the case was going to be tried

19 in 2017.  Indeed the Government had represented that in court,

20 that they would like to try it in 2017.  That is obviously not

21 going to happen now.  And we are going to miss that mark by a

22 wide margin.  I don't need a decision from the Court, I wanted

23 to apprise the Court that will be coming.

24      THE COURT:  You make the motion at the appropriate

25 time.  I have a ten defendant case scheduled for trial in the

- Proceedings -                                    49

1  summer.  So anything can happen with that case in the interim,

2  but in all likelihood, we are probably looking at early fall.

3              MR. CLEARY:  Thank you, that is helpful.

4              THE COURT:  For a trial on this case.

5              All right.  Thank you.

6              MR. CLEARY:  Thank you very much.

7              THE COURT:  Marshals, you may take charge.

8

9              - - o o O o o - -

10

11  I CERTIFY that the foregoing
   is a correct transcript from
12  the record of proceedings
   in the above entitled matter.
13
   s/Richard W. Barry
14  _____
   Richard W. Barry, RPR
15

16

17

18

19

20

21

22

23

24

25