AAS/DMP/ICR
F. #2015R01787

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                            Docket No. 16-CR-614 (DLI)

DAN ZHONG and
LANDONG WANG,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - X


GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT DAN ZHONG'S MOTION FOR BAIL


BRIDGET M. ROHDE
ACTING UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Nicholas J. Moscow
Assistant U.S. Attorneys
     (Of Counsel)

<u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 1

    I.     Detention Proceedings ............................................................................. 1

    II.    Substantive Motions................................................................................. 6

    III.   Discovery ................................................................................................. 8

          A.    Production of Rule 16 Discovery................................................ 8

          B.    Production of Materials Subject to Filter Team Review ......... 10

    IV.   Recent Obstructive Conduct ................................................................. 12

ARGUMENT ....................................................................................................... 14

    I.     Legal Standard ....................................................................................... 14

    II.    The Defendant's Pretrial Detention Does Not Violate
          Due Process........................................................................................... 15

          A.    The Length of Detention Does Not Compel
                 Pretrial Release ........................................................................ 15

          B.    The Government Is Not at Fault for the Length
                 of Pretrial Detention................................................................ 17

          C.    The Charges Against the Defendant Support
                 Continued Detention ................................................................ 22

          D.    The Strength of the Evidence Supports
                 Continued Detention ................................................................ 23

CONCLUSION..................................................................................................... 25

i

TABLE OF AUTHORITIES

Page

FEDERAL CASES

Bell v. Wolfish,
   441 U.S. 520 (1979) ................................................................................. 14

United States v. Barone,
   No. S1 09 Cr. 91(NRB), 2010 WL 2366581 (S.D.N.Y. June 11, 2010) ................................ 21

United States v. Briggs,
   697 F.3d 98 (2d Cir. 2012) ................................................................ 15, 17

United States v. Dupree,
   833 F. Supp. 2d 241 (E.D.N.Y. 2011) .............................................................. 23

United States v. El–Gabrowny,
   35 F.3d 63 (2d Cir. 1994) ........................................................................ 16

United States v. El–Hage,
   213 F.3d 74 (2d Cir. 2000) ................................................................. 15, 16

United States v. Gonzales-Claudio,
   806 F.2d 334 (2d Cir. 1986) ..................................................................... 21

United States v. Handler-Jacobs,
   697 Fed. Appx. 86 (2d Cir. 2017) ................................................................ 23

United States v. Hill,
   462 Fed. Appx. 125 (2d Cir. 2012) ......................................................... 15, 17

United States v. Melendez-Carrion,
   820 F.2d 56 (2d Cir. 1987) ............................................................. 15, 16, 17

United States v. Millan,
   4 F.3d 1038 (2d Cir. 1993) . ……………………………………………………………15, 16

United States v. Orena,
   986 F.2d 628 (2d Cir. 1993) ................................................................ 15, 22

United States v. Salerno,
   481 U.S. 739 (1987) ................................................................................. 14

United States v. Vondette,
   5 Fed. Appx. 73 (2d Cir. 2001) .................................................................. 23

## STATUTES

18 U.S.C. § 1594(b) ........................................................................................................ 4

18 U.S.C. § 3142(e)(3) ............................................................................................... 4, 23

PRELIMINARY STATEMENT

The defendant Dan Zhong has moved for bail under the Due Process Clause of the Fifth Amendment of the United States Constitution.  In essence, the defendant argues that his pretrial detention is constitutionally excessive, as he has been in custody for approximately 13 months to date.  As detailed below, discovery will be completed and the government will be prepared to proceed to trial no later than mid-2018, at which time the defendant will have been in custody for less than 20 months.  Such length of pretrial custody is not excessive under applicable law, in light of the seriousness of the charges, the complexity of the case, and the unique flight risk the defendant represents.  Moreover, the defendant bears substantial responsibility for the length of the pretrial proceedings by repeatedly pressing bail motions, including a failed appeal to the Second Circuit, as well as numerous substantive motions, and replacing his attorneys 5 months after his indictment.  Additionally, while incarcerated, the defendant has engaged in obstructive conduct that again calls into question his fundamental willingness to obey the law—including any court-imposed restrictions on his liberty in the event of any pretrial release.  Accordingly, the Court should deny the defendant's motion in its entirety.

FACTUAL BACKGROUND

I.      Detention Proceedings

On November 10, 2016, Zhong was arrested on a criminal complaint charging Zhong and his coconspirator Landong Wang with forced labor conspiracy, visa fraud conspiracy, and alien smuggling conspiracy.  As detailed in the complaint, Zhong was a principal of a construction business (the "PRC Construction Business") based in the People's Republic of China ("PRC") that used various coercive methods and means to compel PRC citizens brought to the

1

United States under diplomatic visas allowing them to do construction work on PRC diplomatic facilities to instead perform private contracting work.

The complaint detailed evidence of Zhong's participation in the charged conspiracies, including information from workers who had escaped from the control of the PRC Construction Business despite Zhong's detention of their passports and visas and despite written contracts between the workers and the PRC Construction Business pursuant to which they agreed to forfeit their houses if they fled; information about the workers' living conditions—including numerous housing and fire code violations—and the control Zhong exerted over them; communications between or including Zhong and Wang regarding their efforts to procure additional workers from the PRC to perform private contracting work in the United States; and information obtained through law enforcement surveillance.

The complaint also detailed the defendants' ties to the PRC government and its diplomatic facilities in the United States, including the fact that both Zhong and Wang were PRC citizens who had previously been registered by the government of the PRC with the United States for diplomatic privileges and immunities, and that they worked out of PRC diplomatic facilities in New York.

On November 12, 2016, Zhong made his initial appearance before Magistrate Judge Arlene R. Lindsay.  The government sought Zhong's detention.  (See Government's November 12, 2016 Letter (the "November 12 Letter")).  The November 12 Letter provided additional information regarding Zhong's risk of flight, noting that the PRC Construction Business maintained offices in the PRC Mission to the United Nations and that the U.S. government would not be able to compel his capture if he fled to PRC diplomatic facilities.  (Id. at 4, 6).  The government further noted, based on its review of records, that Zhong had access to vast financial

resources through several affiliated companies over which Zhong exercised substantial control and influence.  (Id. at 5).

Zhong argued that he should be released subject to conditions including home confinement with electronic monitoring, and offered to post as security his home, which he represented to have $375,000 in equity.  (Nov. 12, 2016 Tr. 9).  Judge Lindsay found the proposed package of conditions to be insufficient (id. at 17), concluding that Zhong, as a PRC citizen who was a PRC diplomat in the United States for nearly ten years until he became a legal permanent resident of the United States in 2010, presented a risk of flight in light of, among other things, "all the [defendant's] connections to China," including family, business interests, property, and money, (id. at 13).  Judge Lindsay further found that Zhong's proposal for electronic monitoring and home confinement was "inadequate" to assure his appearance as required, in light of "the defendant's access to the mission or the consulate, [as] he may be able to basically obtain sanctuary through that vehicle."  (Id. at 15-16).  Judge Lindsay entered a temporary order of detention and scheduled a detention hearing for November 17, 2016, before the duty magistrate judge.  (Id. at 25).

On November 17, 2016, Zhong presented a bail package to Magistrate Judge Ramon E. Reyes, Jr., consisting primarily of home confinement secured by private security firm Guidepost Solutions, but refused to tell the government and the Court who would pay Guidepost's monthly fee of $144,000.  (Nov. 17, 2016 Tr. 8, 15).  In addition, Zhong offered again to post his home as security for his appearance, now representing that the equity totaled $500,000.  Notably, Zhong proposed no measures to address his unfettered access to company accounts for the PRC Construction Business and its U.S. affiliates, including U.S. Rilin Corp. ("U.S. Rilin"), and failed even to identify the financial resources to which he had access.  The government also observed

3

that the assets Zhong proposed to post as collateral exceeded those he claimed in his interview with Pretrial Services.  (See id. at 10).

 After hearing argument, Judge Reyes indicated that "this is a bailable case with the right conditions, the right checks, but I . . . certainly don't see them presented yet.  And I don't know how they would be presented." (Id. at 25).  In particular, Judge Reyes noted the seriousness of the charges and "[r]esources that are [at the defendant's] disposal . . . that can help him flee." (Id.).  Despite the reservations he stated on the record, Judge Reyes stated that he would enter a $10 million bond with a $5 million cash component, to be secured by defendant's property and the property of defendant's daughter.  (Id. at 31).

 The government appealed this bail determination to United States District Judge Sterling Johnson, Jr.  In his written order of detention reversing Judge Reyes, Judge Johnson found probable cause to believe that Zhong had committed an offense under Chapter 77 of Title 18 of the United States Code for which a maximum term of imprisonment of 20 years or more is prescribed, i.e., forced labor conspiracy, in violation of 18 U.S.C. § 1594(b).  Accordingly, Judge Johnson found, under 18 U.S.C. § 3142(e)(3), that there was a rebuttable presumption that no condition or combination of conditions would reasonably assure Zhong's appearance as required. (Nov. 17, 2016 Order).  Nevertheless, in his written order, Judge Johnson did not rely on Zhong's failure to rebut the presumption, finding instead that the government had proven by a preponderance of the evidence that no condition or combination of conditions would reasonably assure Zhong's appearance as required based on Zhong's "[s]ignificant family or other ties outside the United States."  (Id. at 3).

 On December 1, 2016, a grand jury in this district returned a five-count indictment against Wang and Zhong.  The case was assigned to this Court and, over Zhong's objection, was

4

designated as complex.  If convicted on all counts, Zhong faces a maximum term of 75 years' imprisonment.  The government's preliminary estimate of Zhong's Sentencing Guidelines range is 108 to 135 months' imprisonment.  (Government's Nov. 17, 2016 Letter).

On December 6, 2016, Zhong made his third application for bail.  At oral argument on January 9, 2017, this Court denied Zhong's application to reopen bail proceedings.  In doing so, the Court found that Zhong had not presented new information material to the determination of whether to re-open the detention hearing.  The Court specified, "a detention hearing is not to serve as a mini trial or as a discovery tool of the defendant," (Dec. 6, 2016 Tr. at 5), and, in any event, agreed, "[c]ontrary to the defendant's attempts to challenge the evidence of the Government, the weight of the evidence is strong here," (id. at 8).  The Court noted that since the last detention hearing, Zhong had been indicted, a changed circumstance "that rather increases the risk of flight—the grand jury certainly is always at liberty not to return an indictment—and lends support to the government's charges."  (Id. at 7).

The Court also held, in the alternative, that "even if I were to reopen the detention hearing based on what has been submitted to me," the Court would find that "the defendant poses a substantial risk of flight and there are no conditions or combination of conditions that will reasonably assure the defendant's appearance."  (Id. at 12).  Addressing the statutory bail factors, the Court noted the seriousness of the charges and the lengthy imprisonment Zhong faced if convicted.  The Court stated that Zhong had not cast doubt on the strength of the government's case, and pointed to the defendant's "very strong ties" to the PRC and its diplomatic facilities, his access to vast wealth through his family members in the PRC, and the fact that Zhong's access to funds included money he directly controlled through various companies.  (Id. at 7).

5

The Court expressed further concern that Zhong had failed to give a truthful listing of his assets to pretrial services, and noted that Zhong's bail package still did "not fully explain how he will be limited from accessing Chinese business assets or family wealth either here in the United States or in the PRC." (Id. at 9).  The Court stated that Zhong's private-jail proposal of home confinement monitored by Guidepost Solutions was inappropriate as a condition of release.  The Court agreed with other courts that private-jail proposals like defendant's would place the Court in the position of deciding a host of questions that are better left to the "trained and experienced and qualified professionals" of the Bureau of Prisons, particularly those relating to the use of force.  (Id. at 14).  In conclusion, this Court explained, "all that just suffice to say even if I were to reopen the detention hearing, I would not change the decision by Judge Johnson. The order of remand stays." (Id. at 16).

Zhong appealed the Court's refusal to reconsider his bail application to the Second Circuit.  Following full briefing by the parties on an expedited schedule set by the Second Circuit and oral argument on March 7, 2017, the Second Circuit affirmed this Court's determination in a summary order dated March 13, 2017.  In pertinent part, the Second Circuit found no error "in the District Court's decision orally on the record to deny Zhong's request for bail pending trial on the ground that he represented a risk of flight.  Nor do we see any error in the District Court's denial of Zhong's request to reopen the bail hearing to provide additional evidence." (Summary Order, at 1-2).

As a result of the bail litigation, Zhong has remained in pretrial custody since his arrest on November 10, 2016.  Zhong filed the instant motion on November 27, 2017.

II.    Substantive Motions

In addition to the bail litigation outlined above, there has been extensive motion practice—most of which motions have been defense motions—even prior to the entry of a formal

motion schedule by the Court.  As detailed below, the Court has promptly resolved all motions filed.

- On February 21, 2017, Zhong filed an opposition to the government's proposed protective order regarding unclassified but sensitive discovery material, also filed on February 21, 2017.  The Court approved the proposed protective order on February 22, 2017.

- On June 15, 2017, Zhong filed a motion to sever his prosecution from that brought against codefendant Landong Wang, who remains a fugitive from justice.  The government filed its opposition on June 30, 2017, and the defendant replied on July 7, 2017.  On September 6, 2017, the Court denied the motion to sever.

- On July 24, 2017, the government filed its motion under Section 4 of the Classified Information Procedures Act ("CIPA") for a protective order to withhold certain materials from discovery.  The defense thereafter filed an ex parte in camera memorandum concerning classified discovery material.  In a status conference on September 6, 2017, the Court orally granted the government's motion and denied the defendant's motion.

- On August 24, 2017, Zhong filed a motion for a bill of particulars as to (1) the victims of the charged conduct; (2) the specific acts underlying the charged conduct; and (3) the false statements referenced in the visa fraud charge.[1]  The government responded on September 8, 2017, and the defense replied on September 15, 2017.  In an order dated October 23, 2017, the Court granted the motion as to the identification of the false statements, denied the motion as to the specific acts underlying the charged conduct, and reserved as to the victims of the charged conduct.  The government provided a bill of particulars on November 3, 2017.  In written correspondence, the defense has indicated that the bill of particulars is insufficient and will bring the matter to the Court's attention, absent provision of additional information by the government.

- At the status conference on October 25, 2017, the Court addressed the defense's complaint that the affidavit in support of the search warrant for Zhong's email account had been provided through Rule 16 discovery with

---

[1] In its brief, the defendant states that the government was responsible for inordinate delay because the defendant requested a bill of particulars on June 2, 2017, and the government did not submit a written response to that request for eleven weeks.  (Def. Mem. at 7).  In fact, the government advised the defense in a telephone conversation on July 24, 2017 that it would not provide a bill of particulars.  Moreover, the bill of particulars motion that the defendant filed on August 24, 2017 contained a vastly different request than the 28 categories of information that the defendant sought in the June 2, 2017 letter.

extensive redactions that prevented the defense from properly assessing the viability of a potential <u>Franks</u> motion and invited <u>ex parte</u> briefing on the matter.  On November 1, 2017, Zhong filed an <u>ex parte</u> submission, and the government filed its <u>ex parte</u> submission on November 3, 2017 in which it proposed allowing defense counsel but not the defendant to view a less redacted version of the affidavit.  The Court approved of the government's proposal in an order dated November 9, 2017.

At the October 25, 2017 status conference, defense counsel announced their intention to file the instant motion for bail, but waited to do so until a month later on November 27, 2017.  Pursuant to the Court's order the government is filing this two weeks later.

III.   Discovery

Because the defendant bases his motion in large part on purported delay caused by the government's production of discovery, the government addresses its production of discovery:

A.   Production of Rule 16 Discovery

The government made its initial production of discovery in accordance with Rule 16 of the Federal Rules of Criminal Procedure on February 15, 2017.  This production totaled approximately 220,000 pages, and included the defendant's statements, records of various financial institutions relating to the defendant and the PRC Construction Business and its U.S. affiliates, and records provided by the PRC Construction Business and its U.S. affiliates.  As the prosecution team has turned over approximately 280,000 pages of documents to date (not counting the production of electronically stored information subject to filter team review and discussed below), this initial production of 220,000 pages represented more than 75 percent of the discovery produced in this case.

The government's second Rule 16 production occurred contemporaneous with a status conference that took place on May 22, 2017.  That production consisted of approximately 24,000 pages, nearly all of which was designated as Sensitive Discovery Material pursuant to a protective order entered by the Court on February 22, 2017.  Although the defendant now criticizes

the government for not turning over this discovery at an earlier date (Def. Br at 5), and also for doing so at a status conference (Def. Br. at 14-15), the timing of this production was entirely the result of the defendant's change of counsel.  Notably, on April 28, 2017 and May 4, 2017, three attorneys from Proskauer Rose LLP (the defendant's current counsel) entered appearances for the defendant.  On May 15, 2017, now-prior counsel from Dorsey & Whitney and Thomas Fitzpatrick moved to withdraw from the case.  The Court directed all counsel to appear on May 22, 2017.  At that status conference, the Court granted the motion for Dorsey & Whitney and Thomas Fitzpatrick to withdraw.  The government provided Proskauer Rose with the discovery at the conference, explaining that it had not provided the discovery production to prior counsel because they had never signed the protective order governing sensitive discovery material that had been entered by the Court on February 22, 2017, and had not wished to be presumptuous by giving the discovery to counsel from Proskauer Rose (who had provided a signed protective order on May 8, 2017) before the Court had determined whether to permit prior counsel to withdraw.

At the May 22, 2017 status conference, the Court directed the government to turn over any remaining Rule 16 discovery that could be turned over by June 12, 2017.  The government did so, producing approximately 33,500 pages of documents and 81 video files on June 12, 2017.  These first three productions totaled more than 275,000 pages.  The government also explained at that status conference that the remaining unclassified materials not yet produced included (a) additional materials that the government anticipated receiving as a result of subpoenas to the PRC Construction Business and its U.S. affiliates and to financial institutions, (b) materials subject to filter procedures because they potentially contained attorney-client privileged materials of the defendant or of other individuals, and (c) materials subject to the Court's March 16, 2017 ex parte order authorizing a delay in the production of certain discovery.  (May 22, 2017 Tr. at 15-16, 23.)

9

The government made an additional production of Rule 16 discovery on July 12, 2017, producing approximately 250 pages of discovery from financial institutions as well as certain materials subject to the Court's March 16, 2017 ex parte order.

Since that time, the government has continued to obtain and produce additional Rule 16 discovery, some of which was in response to specific requests made by the defendant. Not counting materials subject to or the result of the filter review (which the government addresses below), these productions included approximately 700 pages of documents on July 24, 2017, approximately 67 pages of documents on August 30, 2017, approximately 168 pages of documents on December 1, 2017, and approximately 60 pages of documents and audio recordings of the defendant's jail calls on December 8, 2017. Notably, these additional productions total fewer than 1,000 pages of discovery.

B.   Production of Materials Subject to Filter Team Review

In addition, as noted above, a government filter team is in place to review electronic and physical documents seized pursuant to various search warrants that potentially contain attorney-client privileged materials of the defendant or of other individuals. Specifically, the materials subject to filter review consisted of approximately 20 hard copy documents, more than 200,000 emails and attachments, and data collected from approximately 30 electronic devices.

Some of those documents have been produced to the defendant directly by the filter team without review by the prosecution team. Specifically, on May 24, 2017, the filter team produced to the defendant the contents of a search warrant executed on the defendant's email account. These emails were produced in native format. In supplemental productions dated July 12, 2017, August 8, 2017, and October 23, 2017, the filter team produced to the defendant additional emails sent or received by the defendant's email account, including emails recovered from accounts other than the defendant's. These productions consisted of 14,376 pages. On

10

October 26, 2017, the filter team produced these 14,376 pages of emails in native format in response to a request by the defendant.

With respect to the other documents to be reviewed by the filter team, the filter team proposed a schedule on August 1, 2017 for the review and production of these materials to the prosecution team.  Specifically, the filter team proposed completing review of the hard copy documents prior to the September 6, 2017 status conference, and to provide a schedule for the completion of the review of the remaining documents at the September 6, 2017 status conference. (See Aug. 1, 2017 letter, DE 64).  At the September 6, 2017 conference, the filter team explained that it had completed the review of all hard copy documents, it anticipated completing the review of emails and attachments around November 10, 2017, and it anticipated completing the review of non-email electronic documents around December 8, 2017.  (Sept. 6, 2017 Tr. at 8-9).  At the next status conference on October 25, 2017, the government reported that the deadlines would slip by a week to November 17, 2017 for the emails and attachments, and December 15, 2017 for the non-email electronic documents.  (Oct. 25, 2017 Tr. at 33-34.)

The prosecution team advised the Court that it would take approximately 30 days to review and produce relevant documents from the filter team review, which the prosecution team would do on a rolling basis.  (Oct. 25, 2017 Tr. at 37.)  On October 24, 2017, the prosecution team produced to the defendant 3,911 pages of email documents; on December 1, 2017, the prosecution team produced to the defendant an additional 755 pages of email documents.  The prosecution team expects to make another production of email documents by the time of the next status conference on December 18, 2017, and to complete its initial discovery review and production of

11

all relevant materials from the filter team's review of emails and attachments by December 22, 2017.[2]

In addition, the prosecution team will continue to review and produce non-email electronic documents as provided by the filter team. The prosecution team expects to complete the review and production of all English-language electronically stored information by mid-January 2018, and foreign language electronically stored information by mid-February 2018, which is consistent with the schedule it has previously advised the Court it would meet.

IV.   Recent Obstructive Conduct

The government has been investigating the defendant's obstruction of justice, as well as his misuse of privileges at the Metropolitan Detention Center ("MDC"), since his arrest on November 10, 2016. The defendant's recorded calls from the MDC reveal that he has (1) directed family members to hide assets and possibly evidence, (2) misused commissary accounts at MDC, and (3) attempted to engage in unmonitored telephone calls from MDC.

Recorded calls made by the defendant from MDC shortly after his arrest reveal repeated efforts to conceal evidence. For example, on November 16, 2016, the defendant called his wife and directed her to move a bag in the garage of his home residence to a safe place: "Remember to clean up that thing on the table," he said. "Do you understand?' The defendant then stated, "Then, that thing, that, oh, my China-based phone is in my . . . there is a bag in the drawer in the car garage, and please put the bag away. Do you understand?" In the same call, he and his wife discussed her forthcoming meeting with a lawyer to discuss properties and bank accounts. The defendant directed his wife not to say much about bank accounts during their phone conversations, as they were being recorded. Later that day, the defendant called his wife again.

---

[2] While the government has taken a broad view of relevance during this initial discovery review, the government may identify additional documents as relevant as it prepares for trial.

She revealed that she was with an attorney who had provided her with a list of properties, stocks, and bank accounts.  The defendant directed his wife to write down the word "SHAK," which he identified as a "stock" worth $60,000.  He then directed her to sell this stock.

Similarly, in a November 25, 2016 call, the defendant's wife asked whom to contact regarding the payments for the three properties relating to the PRC Construction Business and U.S. Rilin they had previously discussed.  The defendant responded that he could not discuss this matter on the phone.  After the defendant's wife asked where she should find the money, the defendant shouted, "Should not to talk about these over the phone!  What is wrong with you?"

Notably, in his disclosures to Pretrial Services after his arrest, the defendant claimed that he only owned one property—a residence in Livingston, New Jersey—and did not identify with particularity any stock or bank account holdings.

In other recorded calls from MDC, the defendant repeatedly violated Bureau of Prisons regulations by arranging for his family members to send money to the accounts of other inmates for the defendant's own use.  In addition, the defendant also arranged to use the telephone accounts of other inmates to make calls, under the apparent belief that he would thus avoid having those calls connected to him.  Both of these actions violated Bureau of Prisons regulations.  The Code of Federal Regulations, Title 28, Section 541.3 enumerates prohibited acts and available sanctions for misconduct at Bureau of Prisons facilities.  Under Code 297, "Use of the telephone for abuses other than illegal activity which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called; or to commit or further a High category prohibited act" is categorized as a "High Severity Level Prohibited Act."  Under Code 328, "Giving money or anything of value to, or accepting money or anything of value from, another

inmate or any other person without staff authorization" is categorized as a "Moderate Severity Level Prohibited Act."

ARGUMENT

In arguing that the defendant's continued pretrial detention violates due process, defense counsel blames the government for the length of his detention by casting aspersions on alleged shortcomings in the government's Rule 16 disclosures.  However, as the Court has noted during status conferences in this matter, the government has been assiduously working to provide prompt and fulsome disclosures while responding to the defendant's numerous and frequent motions.  The defendant has been in custody for approximately 13 months.  The government anticipates that this matter will be ready for trial by mid-2018, at which time the defendant will have been in custody for fewer than 20 months.  Under Second Circuit precedent and, in light of the complexity of this matter in which a number of documents collected via search warrant are in the Chinese language or potentially contain privileged communications, the severity of the defendant's conduct in which he helped spearhead a forced labor scheme involving debt-bonded workers, the strength of the government's case, and the extreme flight risk posed by the defendant, the defendant's pretrial detention does not represent a due process violation.

I.      Legal Standard

Pretrial detention constitutes punishment in violation of the Fifth Amendment's Due Process Clause when it is excessive in relation to non-punitive purposes of detention, such as "preventing danger to the community," United States v. Salerno, 481 U.S. 739, 746-47 (1987), or "ensur[ing] [a defendant's] presence at trial," Bell v. Wolfish, 441 U.S. 520, 536 (1979).  Indeed, pretrial detention of a defendant, when of a reasonable duration, serves important regulatory purposes including prevention of flight and protection of the community from danger.  See Salerno, 481 U.S. at 747-49.  "To determine whether the length of pretrial detention has become

14

unconstitutionally excessive, a court must weigh: (1) its length, (2) the extent of the prosecution's responsibility for delay of the trial, (3) the gravity of the charges, and (4) the strength of the evidence upon which detention was based, i.e., the evidence of risk of flight and dangerousness." United States v. El–Hage, 213 F.3d 74, 79-80 (2d Cir. 2000). "It is well-settled that so long as pretrial detention is administrative rather than punitive, it is constitutional." Id. at 79.

II.    The Defendant's Pretrial Detention Does Not Violate Due Process

Here, as detailed below, application of the El-Hage factors leads to the conclusion that the defendant's pretrial detention has not been unconstitutionally excessive.

A.    The Length of Detention Does Not Compel Pretrial Release

"[T]he length of a detention period will rarely offend due process." United States v. Orena, 986 F.2d 628, 630 (2d Cir. 1993). While the length of pretrial detention "may, of course, be challenged under the Due Process Clause," id., the Second Circuit "has upheld projected pretrial detention periods of up to thirty-two months," United States v. Millan, 4 F.3d 1038, 1044 (2d Cir. 1993) (citing United States v. Melendez-Carrion, 820 F.2d 56, 60-61 (1987)). In sum, the Second Circuit "review[s] the totality of the circumstances, upholding pretrial detentions of two to three years in some cases, and finding them to violate due process when insufficiently justified by other factors." United States v. Hill, 462 Fed. App'x 125, 127 (2d Cir. 2012) (summary order) (citations omitted of cases collected). Indeed, the Second Circuit has noted the "discrepancy in the outcomes of these cases" and articulated that "length of detention is not dispositive." United States v. Briggs, 697 F.3d 98, 103 (2d Cir. 2012).

Based on the Court's initial assessment in October 2017 of its availability during the summer of 2018, Zhong contends that trial will not take place until the fall of 2018, resulting in two years of pretrial detention. (Def. Mot. at 12-13). While this case may not be ready for trial until the middle of 2018, the Second Circuit has cautioned that in weighing anticipated future

detention, courts should consider only "non-speculative aspects of future confinement." Millan, 4 F.3d at 1044 (citing Melendez-Carrion, 820 F.2d at 60). Given the government's substantial progress to date in providing voluminous discovery to the defense and meeting the projected deadlines of filter team counsel to the Court, the defense's assertions that "there is a strong basis to doubt that the government will complete . . . discovery by mid-February, as projected" and that trial will not occur until late 2018 (Def. Mot. at 12-13) are not based in fact. And while the Court noted a multi-defendant case it had scheduled for trial in the summer of 2018, it also noted that "anything can happen with that case in the interim." (Oct. 25, 2017 Tr. at 48-49).[3] Indeed, the defense later concedes the speculative nature of his projected future confinement in admitting that he "faces the certainty of at least 18 months' incarceration before trial." (Def. Mot. at 14). Under Second Circuit precedent, pretrial confinement of such length in no way automatically compels a conclusion of a due process violation. El–Hage, 213 F.3d at 79–81 (upholding anticipated 30 to 33 month detention before verdict); United States v. El–Gabrowny, 35 F.3d 63, 65 (2d Cir. 1994) (upholding anticipated 27 month detention before verdict); Millan, 4 F.3d at 1044 (reversing order of release and ordering defendants detained pending trial despite anticipated 30 to 31 month detention before verdict); Melendez–Carrion, 820 F.2d at 59 (refusing to hold that pretrial detention of 19 months constituted per se due process violation).[4]

_____

[3] Although the government does not presume to know the case to which the Court was referring, the government is aware of a 12-defendant case in front of this Court that is scheduled for trial on June 25, 2018. Notably, however, since Zhong's October 25 status conference, five defendants in the 12-defendant case have pleaded guilty and the parties reported to the Court on November 20, 2017 that they were optimistic that all remaining defendants would also plead guilty. See United States v. Giallanzo, No. 17-CR-155 (DLI), Docket Entry 205.

[4] The defendant cites cases from the Northern District of New York in support of his claim that six months of pretrial detention has been held to weigh in a defendant's favor in finding a due process violation. (See Def. Mem. at 12). The Second Circuit cases the defendant cites for the

B.     The Government Is Not at Fault for the Length of Pretrial Detention

The defense describes in painstaking detail each alleged misrepresentation by the government during the pendency of this litigation to argue that disclosures have generally been untimely and insufficiently fulsome and that the lengthy discovery process in of itself is solely responsible for the length of the pretrial proceedings.  Indeed, the defense baldly claims, "[I]t would not be appropriate to attribute any responsibility to Mr. Zhong for the delay in these proceedings."  (Def. Mot. at 17).  While it is correct that Rule 16 discovery will not be complete until mid-February 2018, the government has been working diligently to meet that deadline. The defendant's motion, however, takes repeated liberties with the record and ignores the defendant's own role in creating this pretrial delay.  Accordingly, this factor does not weigh in favor of release.

The Second Circuit has articulated that due process violations do not automatically occur in complex cases involving abundant discovery and rigorous motion practice.  In Briggs, the Second Circuit recently found that a pretrial detention of over two years in a narcotics prosecution involving "repeated motions and abundant discovery" led to the conclusion that the defendant "bears some responsibility for his trial's delay" and held that the responsibility for delay factor "weighs against finding a due process violation."  697 F.3d at 102.  Similarly, in Hill, the Second Circuit upheld a 24-month detention of a defendant in a narcotics prosecution was justified in part by "the inherent complexities of this large multi-defendant case, which presents defense counsel with voluminous discovery to absorb and the court with myriad motions to address."  462 Fed. App'x at 127.

Application of Briggs and Hill to the instant case similarly militates against any finding of a due process violation.  The Court has designated this case as complex, due to the

---

proposition that pretrial delay weighs in favor of a due process violation involve time frames of 14 months that was scheduled to last considerably longer, 15 months, and 26 months.  See id.

classified litigation and the abundant discovery, some of which is in Chinese and contains certain privileged communications. Moreover, Zhong has pressed a multitude of pretrial motions, all of which have been expeditiously briefed and reviewed by the Court. Indeed, the first four months of this litigation were devoted to a series of bail motions, including an unsuccessful appeal by the defense to the Second Circuit. Soon after this loss, the defendant changed counsel, necessitating recommencement of the security clearance process and dissemination of discovery. Moreover, motion practice has already included the Court's prompt granting of the government's comprehensive classified CIPA Section 4 motion. More recently, the Court imposed a compressed deadline of less than two weeks for the government to respond to the instant 25-page motion, all while the government simultaneously works to review and produce additional discovery.

The Court has already recognized the defendant's primary role in arguable pretrial delay in denying Zhong's motion to sever. In pronouncing its oral ruling on September 6, 2017, the Court described the complexity of the case, as well as the defendant's actions in changing attorneys and pressing repeated motions, to conclude that the government was not uniquely responsible for any pretrial delay:

> So defendant decided to switch attorneys mid-stream. That's fine. That's his choice, but, as I made it clear, he cannot then complain that there has been a delay when it is his own doing. . . . And so that really is not the government's doing and it's not time that should be charged against the government.
>
> \* \* \*
>
> We have classified information, there are foreign language documents that require translation; and I will let the government address the issue of any privileged documents, since they set up a taint team in this case, which also has yet another layer of complexity here.
>
> \* \* \*
>
> The motions have been briefed quickly. I have tried to address them as quickly as is feasible, given my other responsibilities as well. And I would expect that we would move forward that same way in this case.

Sept. 6, 2017 Tr. at 5-6; <u>see</u> <u>also</u> Oct. 25, 2017 Tr. at 42 ("I have no doubt that both sides are working diligently.  This is a complicated case.  It is made more complicated . . . because of the foreign language documents and privileged documents that are involved.").

Surprisingly, defense counsel argues that "it would not be appropriate to attribute any responsibility to Mr. Zhong for the delay in these proceedings."  (Def. Mem. at 17).   This assertion is inconsistent with this Court's prior findings at two status conferences regarding the defendant's responsibility for pretrial delay.  Moreover, the defendant's assertions that he has repeatedly sought to invoke his right to a speedy trial are difficult to square with the defendant's repeated claims that he lacks sufficient information to prepare for and defend against the charges in his letters to the government and motion to the Court regarding a bill of particulars.

The distortions of the record by defense counsel to incorrectly suggest the government "has, at best, proven itself to be indifferent" to the length of pretrial detention (Def. Mot. at 13) are numerous:

- Defense counsel complains that the government has repeatedly waited until several days before a scheduled status conference to make Rule 16 disclosures to suggest that the disclosures have not been "timely."  (<u>Id</u>. at 14).  However, there is nothing improper about using scheduled conference dates as guideposts for preparing robust discovery productions.  Indeed, the government made one smaller production of 67 pages, which the defendant also then complained about.   <u>Id</u>. at 8 (noting that the government's production contained "a mere 67 pages").  Surely, the defense's objection to discovery productions containing fewer documents suggests that the defense prefers to receive fulsome productions.

- The defense faults the government for not producing any materials until February 22, 2017—"more than three months after Mr. Zhong's arrest." (<u>Id</u>. at 14).  Notably, the defendant was not indicted until December 1, 2016.  Moreover, the defense conveniently ignores the fact that during the first few months of this litigation the defendant repeatedly pressed lengthy bail motions, culminating in an appeal to the Second Circuit on an expedited briefing schedule.  Accordingly, the defendant is uniquely responsibly for this initial delay in the pretrial discovery.

- The defense complains that the filter team has similarly failed to produce unclassified material in a timely fashion because three of five productions were provided on or near the date of a status conference, a filing deadline for an status update, or—bizarrely—a production schedule proposed by the filter team.  (Id. at 15.)  It is not clear how the filter team could fail timely to produce discovery when it did so on the schedule it had proposed to the Court.  Indeed, as set forth above, the filter team's review and production of materials—whether to the defense or to the prosecution team—has been consistent with the schedules it has proposed to the Court.  There is no basis for the defense to suggest that the filter team's work has not been timely or diligent.

- The defendant incorrectly claims that the government promised the Court on December 8, 2016 that it would file a CIPA motion in the "next month or two," (id. at 15), while the CIPA Section 2 scheduling motion was not filed until May 2017.  In fact, during the December 8, 2016 status conference, the Court indicated that defense counsel's lack of security clearance meant that the time was not "ripe yet for setting a CIPA motion."  In response, the government stated that considerable work needed completion "before we reach that point.  We'll try to do that in the next month or two."  (Dec. 8, 2016 Tr. at 25).  The government's statement was not an indication that either the Section 2 scheduling motion or Section 4 brief would be filed at that time.  That was why the government reported to the Court at the next status conference, on January 9, 2017, that it was requesting a further status conference in 45 days "so that we can schedule potentially a CIPA Section 2 status conference."  (Jan. 9, 2017 Tr. at 19).  And it was why the Court, at the February 22, 2017 conference, set the ensuing May 22, 2017 conference as the CIPA Section 2 conference.

- Moreover, though the defense suggests that the government failed to timely file its CIPA Section 4 brief (id. at 15), the government's CIPA Section 4 filing was in fact timely filed on July 24, 2017.  The government proposed this deadline in its CIPA Section 2 memorandum filed on May 17, 2017.  (Docket Entry No. 47.)  At the CIPA Section 2 conference on May 22, 2017, the Court Information Security Officer advised that he estimated it would take four months for Zhong's new counsel to receive a security clearance.  (May 22, 2017 Tr. at 8).  Although the Court inquired of the government whether it wished to take more time for its CIPA 4 filing in light of the fact that defense counsel would not be able to address CIPA issues by July 2017, the government advised the Court that it did not see any need to delay the July 24, 2017 deadline.  (Id. at 8-9).  Accordingly, the process of filing the CIPA briefing did not delay the progress of pretrial proceedings in any way.

- Oddly, the defense faults the government for successfully seeking orders from the Court to delay or withhold from discovery certain materials under

Rule 16(d)(1) as efforts to "prolong discovery." (Def. Mot. at 16). There is nothing improper about this practice, which underlines the government's diligence in recognizing the discoverability of certain materials with unique sensitivities and obtaining the Court's concurrence to delay or withhold such discovery in a manner without impacting the trial schedule in light of those sensitivities. Indeed, the discovery orders contemplate the provision of various categories of discovery materials on certain dates before the commencement of trial.

Notably, the "seminal decision" the defense relies on, United States v. Gonzales-Claudio, 806 F.2d 334 (2d Cir. 1986), is not helpful to the defense.[5] (Def. Mot. at 19). In Gonzalez-Claudio the defendants had been held for fourteen months, their trial was scheduled for four months following the disposition of the appeal, and the trial was expected to last eight months more. Most notably, the government had delayed ten months before notifying the defense of the surveillance videotapes, a fact that the Second Circuit characterized as "inexplicable." Id. at 342. While recognizing a degree of delay was due to defense counsel, who had filed more than 400 motions, and that "defendants cannot litigate pretrial matters to the ultimate degree and then rely on the extra time attributable to their motion practice to claim that the duration of pretrial detention violates due process," id. at 341, the Second Circuit faulted the government for the "non-speculative aspects of future detention," id. at 343, in particular, the pretrial delay caused by the untimely disclosure of the videotapes in finding a due process violation.

Here, in contrast, there has been no contention that the government provided tardy notification of an entire category of discovery that would entail considerable work by the defense to review. To the contrary, the discovery record set forth above makes clear that a substantial

---

[5] Gonzales-Claudio predates the Second Circuit's current four-factor test for determining the constitutionality of pretrial detention. In contrast to the courts in El-Hage and Salerno, the Gonzales-Claudio court did not consider the gravity of the charges in its assessment of the allegedly excessive detention. 806 F.2d at 340-44; see United States v. Barone, 2010 WL 2366581, at *2 n.4 (discussing Second Circuit's "earlier cases" which "framed the test as a three-factor standard" that did not include "gravity of the charges as an additional factor").

majority of the relevant documents were provided in the government's initial Rule 16 production. The additional documents that continue to be produced as a result of the government's ongoing review of electronically stored information from the filter team are not documents that the government relied on in bringing the charges against the defendant (as the prosecution team has seen them for the first time during the review process) and the incidence of relevant documents has been quite low. Moreover, the non-speculative aspects of future detention are considerably more attenuated than in <u>Gonzalez-Claudio</u>. Indeed, the defendant's substantial contribution to the length of pretrial proceedings, which are, at any rate, within well-accepted norms, weighs heavily against any finding of a due process violation.

C.   <u>The Charges Against the Defendant Support Continued Detention</u>

Without citing any authority, the defense suggests that lengthy pretrial detention can be justified on due process grounds only in terrorism-related offenses or cases involving crimes of violence. The defense suggests that the government's decision not to pursue a finding of dangerousness—an approach that would have been unsupported—necessarily means that the charges are insufficiently grave to warrant a lengthy pretrial detention. (Def. Mem. at 18).

As affirmed by the Second Circuit, Judge Johnson found under 18 U.S.C. § 3142(e)(3) a rebuttable presumption that no condition or combination of conditions would reasonably assure Zhong's appearance as required—in light of the forced labor conspiracy charge, an offense under Chapter 77 of United States Code Section 18 carrying a maximum term of imprisonment of 20 years or more. While the Second Circuit has articulated that "the constitutional limits on a detention period based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight because in the former case, release risks injury to others, while in the latter case, release risks only the loss of conviction," <u>United States v. Orena</u>, 986 F.2d 628, 631 (2d Cir. 1993), the defense has not proffered any authority suggesting

22

that risk of flight constitutes an inadequate basis for continued detention.  See United States v. Handler-Jacobs, 697 Fed. App'x 86, 87 (2d Cir. 2017) (unpublished) (rejecting due process challenge of detained defendant charged in an international fraudulent investment scheme); United States v. Vondette, 5 Fed. App'x 73, 75-76 (2d Cir. 2001) (unpublished) (upholding 40-month pretrial detention where "government presented district court with substantial evidence that he posed a risk of flight including evidence forwarded from the Swiss police that [defendant] was attempting to purchase a forged British passport").  Indeed, a judge in this district has found the offense gravity factor to weigh against pretrial release in a bank and mail fraud case, given "the millions of dollars involved in the various frauds" which supported a finding that the charges were "serious."  United States v. Dupree, 833 F. Supp. 2d 241, 254 (E.D.N.Y. 2011).

The defendant does not contest the seriousness of the charges in this case, which concern a forced labor scheme in which the defendant utilized debt-bonded workers to perform unauthorized contracting work in the New York metropolitan area.  While these charges do not carry mandatory minimum periods of incarceration, the charges carry a suggested Guidelines range of approximately 10 years' incarceration—a clear reflection of the charges' gravity and the propriety of the defendant's continued detention.  Accordingly, the seriousness of the charges does not counsel in favor of finding a due process violation.

D.   The Strength of the Evidence Supports Continued Detention

This Court has already provided its own positive assessment of the strength of the government's case in refusing to reopen Judge Johnson's bail determination.  In pertinent part, the Court found that "the weight of the evidence is strong here."  (Jan. 9, 2017 Tr. at 8).  In particular, the Court stressed Zhong's "very strong ties" to the PRC and its diplomatic facilities, his access to vast wealth through his family members in the PRC, and the fact that Zhong's access to funds included money he directly controlled through various companies.  (Id. at 7).  The defense ignores

23

these findings and suggests in conclusory manner that "Mr. Zhong no longer has access to large sums of cash" and—apparently based on a statement by Zhong's counsel that is not based on personal knowledge—that U.S. Rilin, which Zhong was president of, is no longer actively doing business.  (Def. Mot. at 21).  Notably, however, recent recorded calls from the MDC and checks to Zhong's former defense counsel following his arrest that were issued by the PRC Construction Business, an entity for which Zhong has insisted he does not work, suggest that Zhong continues to enjoy access to unlimited funds from his billionaire relatives in the PRC.  Indeed, the government has obtained a check that was issued by the PRC Construction Business to the defendant's fugitive co-defendant Landong Wang on December 6, 2016, weeks after he fled the United States for the PRC.

The Court expressed further concern that Zhong had apparently failed to give a truthful listing of his assets to pretrial services, and noted that Zhong's bail package still did "not fully explain how he will be limited from accessing Chinese business assets or family wealth either here in the United States or in the PRC."  (Id. at 9).  Surprisingly, Zhong now relies on the recommendation for pretrial release of the Pretrial Services Report—a report that, as the Court has noted, contains a litany of misrepresentations regarding the defendant's financial background.

Zhong's motion papers contain nothing more than recycled arguments previously rejected by the Second Circuit, this Court, and Judge Johnson.  Indeed, Zhong does not address the unique risk his release would pose, in light of his former diplomatic status and connections with PRC establishments in New York City.  Moreover, Zhong's obstructive conduct while incarcerated at the MDC—including the obfuscation of potential evidence and his efforts to use telephone accounts belonging to fellow inmates in order to avoid monitoring of his prison calls—

strongly suggests that he is unwilling to or incapable of complying with any court-imposed limitations on his liberty were he to be released pretrial.

<u>CONCLUSION</u>

Undoubtedly recognizing the weakness of his argument regarding the gravity of the charges and the strength of the case, the defendant argues—at bottom—that the Court should release the defendant solely based on the first two factors: length of detention and government's responsibility for the length of pretrial detention.  (Def. Mot. at 22-23) ("The last two factors—gravity of the offenses charged and strength of the evidence supporting detention—fail to cancel out, much less, overcome, the impact of the first two.").  More is needed under Second Circuit authority to compel a finding that the pretrial detention has been unconstitutional.

For the reasons set forth above, the defendant Dan Zhong's motion for bail should be denied.

Dated: Brooklyn, New York
          December 11, 2017

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:    /s/ Alexander A. Solomon
         Alexander A. Solomon
         Douglas M. Pravda
         Ian C. Richardson
         Nicholas Moscow
         Assistant U.S. Attorneys
         (718) 254-7000