UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,                    Index No. 16-CR-614 (DLI)

    v.

DAN ZHONG and LANDONG WANG,
                        Defendants.
-----------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANT DAN ZHONG'S DUE PROCESS MOTION FOR BAIL

                                      Robert J. Cleary
                                      Dietrich L. Snell
                                      Samantha Springer
                                      Brittany N. Benavidez
                                      PROSKAUER ROSE LLP
                                      Eleven Times Square
                                      New York, New York 10036
                                      Telephone: 212.969.3000
                                      Facsimile: 212.969.2900

*Attorneys for Defendant Dan Zhong*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................1

THE GOVERNMENT'S OPPOSITION CONFIRMS THAT MR. ZHONG'S
PRETRIAL DETENTION HAS BECOME UNCONSTITUTIONALLY EXCESSIVE ...............1

    I.    THE LENGTH OF MR. ZHONG'S PRETRIAL DETENTION, BOTH
          TO DATE AND TO COME, CLEARLY SUPPORTS HIS RELEASE .................2

    II.    THE GOVERNMENT IS RESPONSIBLE FOR THE EXTENSIVE
          DELAY OF MR. ZHONG'S TRIAL ....................................................................3

    III.    THE CHARGES DO NOT MATERIALLY AID THE GOVERNMENT'S
          EFFORT TO KEEP MR. ZHONG IN JAIL ..........................................................7

    IV.    THE EVIDENCE ON WHICH PRETRIAL DETENTION WAS BASED
          DOES NOT JUSTIFY HIS CONTINUED DETENTION ......................................8

CONCLUSION................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Barker v. Wingo*,
    407 U.S. 514 (1972)...................................................................................................1

*United States v. Briggs*,
    697 F.3d 98 (2d Cir. 2012)..............................................................................2, 4, 7, 10

*United States v. El-Gabrowny*,
    35 F.3d 63 (2d Cir. 1994) ............................................................................................8

*United States v. El-Hage*,
    213 F.3d 74 (2d Cir. 2000)..........................................................................................7

*United States v. Gonzales-Claudio*,
    806 F.2d 334 (2d Cir. 1986)........................................................................2, 5, 6, 7, 8

*United States v. Hill*,
    462 F. App'x 125 (2d Cir. 2012) ................................................................................4

*United States v. Jackson*,
    823 F.2d 4 (2d Cir. 1987) ............................................................................................2

*United States v. Melendez-Carrion*,
    820 F.2d 56 (2d Cir. 1987)..........................................................................................8

*United States v. Millan*,
    4 F.3d 1038 (2d Cir. 1993).........................................................................................8

Defendant Dan Zhong respectfully submits this memorandum of law in reply to the government's opposition to his motion for bail pursuant to the Due Process Clause of the Fifth Amendment of the United States Constitution.

## PRELIMINARY STATEMENT

Nowhere in its opposition does the government even begin to acknowledge, much less follow, the Supreme Court's teaching in *Barker v. Wingo*, 407 U.S. 514, 532-33 (1972), that pretrial detention inflicts the most serious of liberty deprivations on those who have not yet been convicted of a crime. This telling omission exemplifies the government's blithe acceptance of both Mr. Zhong's continued incarceration – more than 13 months after his arrest – and the inevitability that more than half again as much time will pass before he can be tried.

Although the government indisputably bears substantial, if not exclusive, responsibility for these circumstances due to its dilatory discharge of its discovery obligations, it strives to avoid the consequences of its dereliction by misreading the applicable case law, mischaracterizing the defense's arguments and the factual record, and fabricating an entirely spurious "obstruction" claim. The Court should reject the government's effort to prolong Mr. Zhong's already unconscionable detention and grant his motion for reasonable bail conditions.

## ARGUMENT

**THE GOVERNMENT'S OPPOSITION CONFIRMS THAT MR. ZHONG'S PRETRIAL DETENTION HAS BECOME UNCONSTITUTIONALLY EXCESSIVE**

Unable to contest Mr. Zhong's description of the straightforward applicable four-factor test to decide due process-based challenges (*see* Dkt. No. 85-1, Memorandum of Law in Support of Defendant Dan Zhong's Due Process Motion for Bail ("Def. Br.") at 10-11), the government instead strains to argue that the egregious facts presented by this case somehow support Mr. Zhong's continued detention. The government's effort is utterly unavailing. Indeed,

consideration of *all* of the four relevant factors – length of detention, government responsibility, offense gravity, and strength of evidentiary basis for detention – *in aggregate*, compels the conclusion that conditions now should be set for Mr. Zhong's release on bail.

I. **THE LENGTH OF MR. ZHONG'S PRETRIAL DETENTION, BOTH TO DATE AND TO COME, CLEARLY SUPPORTS HIS RELEASE**

The government does not attempt seriously to dispute that the non-speculative length of pretrial detention in this case – nearly 20 months according to the government's own (overly optimistic) forecast (Dkt. No. 89, Government's Memorandum of Law in Opposition to the Defendant Dan Zhong's Motion for Bail ("Gov't Opp.") at 1)[1] – is extraordinary and suffices to raise due process concerns that weigh in favor of the instant application. Instead, the government simply cites the well-settled principle (duly noted in Mr. Zhong's opening brief, at p. 11) that the duration of detention, standing alone, is not *dispositive* with respect to a due process-based challenge. (Gov't Opp. at 15).

In its effort to downplay precedents recognizing the constitutional significance of extended detention periods (Def. Br. at 12; Gov't Opp. at 16), the government strangely questions the relevance of Second Circuit cases involving detentions manifestly comparable to Mr. Zhong's. *See, e.g., United States v. Jackson*, 823 F.2d 4, 7 (2d Cir. 1987) (15-month pretrial detention "raises grave due process concerns for the government to allay"); *United States v. Gonzales-Claudio*, 806 F.2d 334, 341 (2d Cir. 1986) ("Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points *strongly* to a denial of due process.") (emphasis added); *see also United States v. Briggs*, 697 F.3d 98, 103 (2d

---

[1] While the government does not spell out its timeline calculation, this estimate squares with the government's admission that the case will not be "ready for trial" before "mid-2018." (Gov't Opp. at 14). That prediction, in turn, necessarily flows from (a) the government's concession that it will not complete production of discovery material reviewed by its filter team before mid-February 2018, and (b) the dispensation sought and obtained *ex parte* by the government in the form of the March 2017 protective order, to "delay" certain other discovery until four months before trial. Mr. Zhong's incarceration will reach the 20-month milestone on July 10, 2018.

2

Cir. 2012) (26-month period of pre-trial detention "is approaching the limits of what due process can tolerate"). Those decisions plainly reflect judicial sensitivity to the constitutional speedy trial rights of criminal defendants who, like Mr. Zhong, are subjected to prolonged pretrial incarceration.

Given the certainty that he will suffer *at least* a year and a half in custody – and substantially more should the Court's "early fall" of 2018 projected trial date prove accurate (*see* Dkt. No. 85-2, Benavidez Decl., Ex. L at 48:24-49:2) – the length-of-detention factor cuts significantly in favor of Mr. Zhong's assertion of his liberty interest and due process claim.

## II.    THE GOVERNMENT IS RESPONSIBLE FOR THE EXTENSIVE DELAY OF MR. ZHONG'S TRIAL

Despite conceding explicitly that "Rule 16 discovery will not be complete until mid-February 2018" (Gov't Opp. at 17),[2] and implicitly that trial will be delayed by an additional four months under the March 2017 *ex parte* protective order (*see* footnote 1 above), the government nonetheless would have the Court absolve it of responsibility for the extraordinary delay of Mr. Zhong's trial and the intolerable prolonging of his pretrial imprisonment. In taking this remarkable position, the government spins a threadbare defense consisting of red herring protestations about the "complexity" of the case, Mr. Zhong's supposed but non-existent protraction of the pretrial proceedings, and the government's "diligence" in meeting its discovery obligations. (Gov't Opp. at 17-22). These bankrupt arguments should be swiftly rejected.

Designation of a case as "complex" for Speedy Trial Act purposes certainly does not preclude a due process violation finding, as the Second Circuit has made clear:

> We caution, however, that the difficulties faced by the prosecution in a large and complex case do not justify the indefinite detention of the defendants. The realities of limited resources and the interests of efficiency may lead us to uphold

---

[2] The government substantially qualifies this undertaking by noting that it "may identify additional documents as relevant as it prepares for trial." (Gov't Opp. at 12 n.2).

3

> exercises of prosecutorial discretion, but they do not suffice to excuse failures of prosecutorial diligence. *When the government decides to prosecute a case of considerable complexity and scope, it must still pursue that case with promptness and energy. Due process does not slumber because cases are complex.*

*Briggs*, 697 F.3d at 103 (emphasis added). Thus, the government's reliance on *Briggs* is misplaced. In contrast to the present single-defendant case,[3] both *Briggs* and *United States v. Hill* were multi-defendant prosecutions of large scale drug distribution conspiracies and involved "myriad" and "repeated" motions by the numerous co-defendants. *See id*. at 102; *United States v. Hill*, 462 F. App'x 125, 127 (2d Cir. 2012). Here, any "complexity" is largely a function of the government's own strategic and tactical decisions as to how to prosecute the case.

Indeed, the government's actions belie its claims to be working diligently. Nowhere does the government provide satisfactory answers to the following questions:

- Why did the government delay for months before producing any discoverable materials already received from "the defendant's company," instead of producing them "as we receive them," as the government promised the Court it would at the initial status conference? (Benavidez Decl., Ex. C at 19:24-20:3).

- Why did the government delay producing any further discovery material until the May 22, 2017 status conference, over three months after the initial production? (Benavidez Decl., Ex. G at 14:17-18).[4]

- Why did the government delay until after the Court-imposed deadline of June 12, 2017 before producing such basic and routine discovery material as inventories and receipts for materials obtained in connection with investigative searches (*see* Dkt. No. 69), and photographs, notes and reports from border searches of Mr. Zhong (conducted in January 2016) (*see* Dkt. No. 60)?

---

[3] Landong Wang, Mr. Zhong's absent co-defendant, has not contributed to the delay of trial here in any respect.

[4] The government's proffered explanation – that prior defense counsel "had never signed the protective order governing sensitive discovery material that had been entered by the Court on February 22, 2017" – fails to justify the government's decision to delay by another two weeks production of that material to new defense counsel, "who had provided a signed protective order on May 8, 2017." (Gov't Opp. at 9).

4

- Why did the government wait eleven weeks before finally providing a written response to the defense's meritorious request for a bill of particulars (Def. Br. at 16)?[5]

- Why did it take the filter team more than 2 months – until October 26, 2017 – finally to respond to the defense's multiple requests that it reproduce its July 12 and August 8, 2017 productions in a searchable format?

- Why has the government – by now more than a year after raising the subject at the December 8, 2016 conference (Benavidez Decl., Ex. E at 11:8-9) – never produced any classified material?

The foregoing government-caused delays evince the government's disturbingly cavalier attitude toward its responsibility for expediting the prosecution of an incarcerated defendant. Indeed, to excuse its practice of delaying discovery productions until just before Court-scheduled status conferences and reporting deadlines, the government lamely observes that "there is nothing improper about using scheduled conference dates as guideposts for preparing robust discovery productions."[6] (Gov't Opp. at 19) (emphasis added). The government's evident election to defer production of discovery material *to an incarcerated defendant* until the same day as, or until just a few days before, a scheduled status conference undermines the government's insistence that it has been working feverishly to complete discovery. Moreover,

---

[5] The government's assertion that it "advised the defense in a telephone conversation on July 24, 2017 [*i.e.,* over seven weeks after receiving the defense's request] that it would not provide a bill of particulars" (Gov't Opp. at 7 n.1) is incorrect. In actuality, the government stated during that conversation that while it doubted a bill of particulars would be forthcoming, *it would take a look at the request and then would respond in writing.*

[6] The government twice invokes the "nothing improper" formulation to justify its leisurely approach to Rule 16 compliance. (Gov't Opp. at 19, 21). But this excuse is unavailing in the context of a due process claim. As noted in Mr. Zhong's opening brief, for purposes of assessing responsibility for delay, "[i]t suffices…to conclude that the [g]overnment, *even if not deserving of blame*, bears a responsibility for a portion of the delay significant enough to add considerable weight to the defendant['s] claim that the duration of detention has exceeded constitutional limits." *Gonzales-Claudio*, 806 F.2d at 342-43 (emphasis added). Thus, even if the government-caused delay was not technically "improper" and, indeed, even if such delay was unavoidable, it nevertheless will weigh in favor of finding that the pretrial detention of a defendant violates due process. *Id*. at 342-44.

5

the government's two *ex parte* applications further to delay discovery obliterate any illusion of prosecutorial diligence with respect to discovery.[7]

Assessed against the backdrop of these many failings, the government's attempt to assign to Mr. Zhong responsibility for the length of the pretrial proceedings rings especially hollow. (Gov't Opp. at 18-19). According to the government, the delay responsibility factor should weigh against Mr. Zhong because he has filed some motions and because he once substituted counsel. (*Id*. at 18). Neither contention has the slightest merit, for neither bears any relation to the indisputable fact that discovery remains far from complete – the fundamental reason why the Court to date has been unable to set a motion schedule, much less a trial date. While the government suggests, incredibly and contrary to the record, that its multi-member prosecution team was preoccupied for "four months" with bail-related litigation, even the government stops short of arguing that such litigation – or either of the other two motions filed by Mr. Zhong[8] – somehow impeded the government's effort to produce required discovery.

Nor has Mr. Zhong's decision to substitute counsel slowed the pace of the proceedings in any respect. To the contrary, the record is clear that new counsel has sought to expedite all aspects of the case, without ever seeking a continuance or otherwise contributing to the delay. Moreover, new counsel has received security clearances, yet the government still has not disclosed a single piece of classified material. Thus, substitution of counsel has caused no delay whatsoever.

Lastly, the government's attempt to distinguish the Second Circuit's decision in *United States v. Gonzales-Claudio* falls flat. Similar to the *Gonzales-Claudio* defendants – who had

---

[7] Interestingly, the government conveniently omits from its otherwise comprehensive recitation of "[s]ubstantive [m]otions" (Gov't Opp. at 7-8) the *ex parte* applications that it filed with the Court on March 6 and September 15, 2017.

[8] Such a contention would not be remotely tenable. Indeed, Mr. Zhong's motion for a bill of particulars – which the Court granted in part – would not have been required had the government included sufficient detail in its Indictment and complied with the defense's written request for particulars.

6

been held for 14 months and were expected to be held for another year, 806 F.2d at 341 – Mr. Zhong himself now has entered his 14th month of incarceration and, according to the Court, likely will need to wait an additional nine to ten months, or until early-fall of 2018, to be tried. Furthermore, defense counsel did not receive from the government any audio recordings of calls placed by Mr. Zhong from jail until December 11, 2017, the same day that the government filed its opposition to the present motion. The timing is no coincidence. In seeking to advance its claim that Mr. Zhong somehow attempted to obstruct justice shortly after his incarceration over a year ago, the government relies heavily on a number of these recordings, which are in Chinese and were produced without any draft translations. (Gov't Opp. at 12-14, 24). The government's failure to disclose this entire category of critical foreign language discovery for more than a year is at least as "inexplicable" as the belated production of surveillance videotapes cited by the *Gonzales-Claudio* Court as evidence of government responsibility for the unconstitutionally lengthy pretrial detention in that case.

### III. THE CHARGES DO NOT MATERIALLY AID THE GOVERNMENT'S EFFORT TO KEEP MR. ZHONG IN JAIL

Grossly mischaracterizing Mr. Zhong's position as suggesting "that lengthy pretrial detention can be justified on due process grounds *only* in terrorism-related offenses or cases involving crimes of violence" (Gov't Opp. at 22; emphasis added), the government remarkably ignores the dramatic difference between the charges in the present case and those at issue in the overwhelming majority of cases involving failed due process challenges. Indeed, while Mr. Zhong stands accused of serious crimes, those crimes plainly are not on par with the life sentence and mandatory minimum-carrying charges against the terrorism, narcotics trafficking, and multi-million dollar fraud scheme defendants whose similarly protracted detentions the Second Circuit has sustained. *See Briggs*, 697 F.3d at 100; *United States v. El-Hage*, 213 F.3d 74, 77 (2d Cir.

7

2000); *United States v. El-Gabrowny*, 35 F.3d 63, 64 (2d Cir. 1994); *United States v. Millan*, 4 F.3d 1038, 1040-41 (2d Cir. 1993); *United States v. Melendez-Carrion*, 820 F.2d 56, 57 (2d Cir. 1987); *cf. Gonzales-Claudio,* 806 F.2d at 336 (finding due process violation despite charges involving violent actions by "paramilitary, terrorist organization").

Simply put, here the gravity of offense factor does not warrant the undue weight that the government would have the Court accord it.

**IV.  THE EVIDENCE ON WHICH PRETRIAL DETENTION WAS BASED DOES NOT JUSTIFY HIS CONTINUED DETENTION**

In attempting to persuade the Court that the evidence underlying the original decision to detain Mr. Zhong weighs decisively in favor of detaining him for the better part of another year – on top of the 13½ months he already has endured – the government rehashes the same points that it made over a year ago as a basis for detention.  (*See* Gov't Opp. at 23-24).  While those points carried the day for the government at that time – when Mr. Zhong had just been incarcerated – they no longer possess the dispositive value that this Court assigned them.  Indeed, when Judge Johnson reversed Magistrate Judge Reyes' decision to set bail and entered the existing detention order, no one (including, it seems safe to say, the government) expected that, 13½ months later, discovery would remain incomplete and no trial date would be in sight.

The government startlingly distorts and misrepresents the evidence against Mr. Zhong.  Thus, the government falsely alleges that the Complaint (Dkt. No. 1) cites "[Mr.] Zhong's detention" of the passports of Construction Business workers.  (Gov't Opp. at 2).  It does not.  The Complaint actually alleges that *Landong Wang*, not Mr. Zhong, held the workers' passports. (Dkt. No. 1 at ¶ 11).  Similarly, the government erroneously asserts that the Complaint identifies Mr. Zhong as "a principal of a construction business ('the PRC Construction Business') based in

8

the People's Republic of China." (Gov't Opp. at 1). But the Complaint actually describes Mr. Zhong as "the principal of the Construction Business's U.S. operations." (Dkt. No. 1 at ¶ 8).

Evidently aware of the need to bolster its claim that Mr. Zhong constitutes an unacceptable risk of flight, the government vaguely cites what it terms "recent recorded calls from the MDC" and "checks to [Mr.] Zhong's former defense counsel following his arrest" as evidence of his supposed "access to unlimited funds."[9] (Gov't Opp. at 24). Given the absence of any specific evidentiary underpinning for these allegations, they should receive no weight at all.

Equally unavailing is the government's sudden reliance on MDC phone call recordings to argue that Mr. Zhong somehow has engaged in "obstructive conduct" while in jail. (*Id.*). Presenting a handful of translated snippets extracted from a series of lengthy conversations that allegedly took place between Mr. Zhong and his wife shortly after his imprisonment – when the two of them were struggling to help his defense attorneys assemble a bail package, keep his business afloat, and adjust to the sudden disruption of their family life – the government now seeks to advance "obfuscation of evidence" claims (*id.* at 12, 24) that notably were absent from its arguments in support of detention a year ago. Yet, even the government's carefully culled excerpts from the recorded conversations do not begin to support such an inflammatory conclusion. Indeed, considered in context, the conversations plainly are innocuous and lend no support at all to the government's determined effort to keep Mr. Zhong in custody.

Not surprisingly, there is ample reason to question the accuracy of the translations the government proffers.[10] For example, while the government alleges that on November 16, 2016, Mr. Zhong instructed his wife to "put the bag away" that apparently was located "in the car

---

[9] The government does not explain how phone conversations that took place over a year ago and checks written to former defense counsel could be "recent." Still more troubling, the government fails to provide any evidentiary foundation for its purported translations of the recorded conversations.

[10] In the brief time that the audio files have been available to us, defense counsel had a staff member who is a native Mandarin speaker listen to the cited conversations and provide her own translation.

9

garage" (Gov't Opp. at 12), the recording actually contains an instruction to "put a pouch away in a safe place." Furthermore, the government in its opposition glaringly omits from its distorted presentation a clear direction, during the same call, that the woman alleged to be Mr. Zhong's wife tell the lawyers "whatever they wanted to know" about financial assets. In short, the government's desperate eleventh hour attempt to present such unsubstantiated claims should be rejected.

Finally, and most fundamentally, the government ignores entirely Mr. Zhong's essential point regarding the risk of flight factor, namely that Judge Johnson's findings from over a year ago cannot now, standing alone, dispose of Mr. Zhong's constitutional claim that his extended detention exceeds "the limits of what due process can tolerate" under the Second Circuit's multi-factor test. *See Briggs*, 697 F.3d at 103. No tortured effort to magnify the putative flight risk evidence can overcome this reality.

## CONCLUSION

For all of the foregoing reasons, as well as those discussed in Mr. Zhong's opening brief, his motion for bail on due process grounds should be granted.

Date:   December 14, 2017
        New York, New York

Respectfully submitted,

/s/   Robert J. Cleary
Robert J. Cleary
Dietrich L. Snell
Samantha Springer
Brittany N. Benavidez
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900
rjcleary@proskauer.com
dsnell@proskauer.com
*Attorneys for Defendant Dan Zhong*