1

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK
 2
       - - - - - - - - - - - - - X
 3
       UNITED STATES OF AMERICA,    :   16-CR-614(DLI)
 4                                  :
                                    :   U.S. Courthouse
 5                                  :   Brooklyn, New York
            -against-              :
 6                                  :   TRANSCRIPT OF
                                    :   STATUS CONFERENCE
 7                                  :
                                    :
 8     DAN ZHONG,                   :   February 21, 2018
                                    :   10:00 a.m.
 9          Defendant.              :
                                    :
10     - - - - - - - - - - - - - X
11   BEFORE:
                    HONORABLE DORA L. IRIZARRY, CHIEF JUDGE
12
     APPEARANCES:
13
     For the Government:      RICHARD DONOGHUE, ESQ.
14                            United States Attorney
                              271 Cadman Plaza East
15                            Brooklyn, New York 11201
                              BY:  IAN C. RICHARDSON, ESQ.
16                                 NICHOLAS MOSCOW, ESQ.
                                   ELIZABETH MACCHIAVERNA, ESQ.
17                                 Assistant U.S. Attorneys
18
     For the Defendant:       PROSKAUER ROSE LLP
19                            Eleven Times Square
                              New York, NY 10036
20                            BY:  ROBERT J. CLEARY, ESQ.
                                   DIETRICH L. SNELL, ESQ.
21                                 BRITTANY N. BENAVIDEZ, ESQ.
22
     Court Reporter:     Holly Driscoll, CSR
23                       Chief Court Reporter
                         225 Cadman Plaza East
24                       Brooklyn, New York 11201
                         (718) 613-2274
25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Assisted Transcript.
```

2

1          THE CLERK:  Criminal cause for status conference,

2    docket number 16-CR-614, United States versus Dan Zhong.

3          Counsel, please state your appearances.

4          MR. RICHARDSON:  Good morning, Your Honor, Ian

5    Richardson and Nicholas Moscow for the government prosecution

6    team and with me at counsel table is Elizabeth Macchiaverna

7    from the government filter team.

8          THE COURT:  Good morning to all of you.

9          For the defense?

10         MR. CLEARY:  Good morning, Your Honor, Robert Cleary

11   for Mr. Zhong, who is present in the courtroom with an

12   interpreter, and with me are my colleagues, Dietrich Snell and

13   Brittany Benavidez.

14         THE COURT:  Yes, good morning to all of you.

15         Good morning, Mr. Zhong.

16         And may we please have the name for the record of

17   the Mandarin language interpreter.

18         THE INTERPRETER:  John Lau, L A U.

19         THE COURT:  Good morning, sir.

20         And can we have Mr. Lau sworn please.

21         (Interpreter sworn by the clerk.)

22         THE COURT:  We're here for a status conference, so

23   where are we?  I know that there have been a flurry of

24   communications back and forth about discovery and in response

25   to a defense application with respect to the bill of

3

1   particulars, the Court directed the government to provide some

2   additional information and I believe that that has been turned

3   over according to the deadline provided by the Court.

4          MR. RICHARDSON:  That's correct, Your Honor.  Since

5   the last status conference, Your Honor, the government has

6   made seven productions of a large amount of material and that

7   we've done that, we view our Rule 16 discovery as

8   substantially complete.  I can't guarantee there won't be

9   little bits and pieces and we've been in contact with defense

10  about some of their questions about the discovery and we

11  anticipate as they point to things, we may identify additional

12  materials to turn over to the defense but we've been having --

13  we responded to a number of requests from defense counsel in

14  the last couple of months and we anticipate continuing to do

15  so, that seems to be working well, and so we will be producing

16  a few other pieces of information.

17         The last category of material that still hasn't been

18  turned over is the material that is the subject of -- the last

19  set of materials that is subject to the protective order

20  entered by the Court in March of 2017 and that's material that

21  the government intends to turn over, pursuant to the Court's

22  order, four months before trial.  But at this point we view

23  the government's Rule 16 discovery as substantially complete

24  pursuant to the schedule set by the Court.

25         I think at this point it would be useful for the

4

1    defense to indicate when it intends to turn over its

2    reciprocal discovery, if there is any, to the government and

3    to set a motion and trial schedule.

4         I would also note, Your Honor, that the government

5    provided a plea offer to the defendant yesterday that is going

6    to expire March 23rd.  The defense is going to, you know,

7    consider that obviously with their client but we think that

8    things should proceed regardless of the offer towards a trial.

9         THE COURT:  Okay.  Mr. Cleary, are you in agreement

10   with the assessment that's been made by the government?

11        MR. CLEARY:  In general I am, Your Honor.  I have a

12   couple of discovery issues that we've not been able to resolve

13   with the government.  As Mr. Richardson said, we had a lot of

14   dialogue and that's worked quite well.  There's a couple of

15   lingering issues I want to raise with the Court now, if I

16   might, and I do have an issue with the bill of particulars

17   disclosure that was made that I'd also like to raise with the

18   Court.

19        Having said all that, on scheduling, and I'm happy

20   to tell the Court what we're planning on doing on motions, but

21   on scheduling for trial, if and when the government turns over

22   the, I call it the 120 day evidence, the evidence that they're

23   authorized to withhold until 120 days before trial, once they

24   turn that over, we would ask that the trial get set down for

25   120 days from that point.  So, if they can produce that

5

1  evidence now, we would ask for a trial date 120 days from now

2  if that works with the Court's schedule.

3          THE COURT:  Well, it depends on the motions.

4          MR. CLEARY:  So, should I address that, Your Honor?

5          THE COURT:  First of all, what are the remaining

6  discovery issues?

7          MR. CLEARY:  There's only two or three, Your Honor.

8  The first relates to what are called diplomatic notes.  What

9  diplomatic notes are are correspondence related to the

10 issuance of the visas and, as the Court knows, Count Five is

11 the visa fraud count.  In particular, what the diplomatic

12 notes are are correspondence between the Department of State

13 and the Chinese Embassy in the U.S. during the indictment

14 period, January of 2010 to November of 2016.  The government

15 has provided us the diplomatic notes only for the very tail

16 end of the indictment period, for the year 2016, March 2016

17 through --

18         THE COURT:  Go back again, what is the period of

19 time you're talking about?

20         MR. CLEARY:  The indictment period, Your Honor, is

21 January 2010 through November 2016.

22         THE COURT:  So, what you've received covers what

23 time period?

24         MR. CLEARY:  Just the tail end of that period,

25 March 2016 through November 2016, and we would like those

1   documents, the diplomatic notes for the entire indictment

2   period to be produced.

3          THE COURT:  You want to address that,

4   Mr. Richardson?

5          MR. RICHARDSON:  Sure, Your Honor.  So, just to

6   provide some background to the Court, when defense counsel

7   initially made the request for diplomatic notes, we told them

8   that we understood that they were asking for the notes during

9   the period of time in which we produced them.  The diplomatic

10  notes --

11         THE INTERPRETER:  Excuse me, Judge, the mic.

12         THE COURT:  Yes, please be sure you're speaking into

13  the microphone so we can all hear each other.

14         MR. RICHARDSON:  I apologize, Your Honor.

15         THE COURT:  Sure.

16         MR. RICHARDSON:  So, we initially indicated to

17  defense counsel we understood that they were asking for the

18  set of notes that we turned over.  The notes don't belong to

19  the Department of Justice, they are communications between two

20  states that are the property of the Department of State and

21  subject to their own controls and considerations, so we had to

22  reach out to and ask the Department of State for copies of

23  those notes and for permission to disclose them.  We did that.

24  After we told defense counsel that we understood they were

25  asking for those notes, defense counsel didn't indicate they

7

1    had a different understanding of what they were asking for

2    but then after we produced those notes they came back to us

3    and asked for more.

4            So, we have gone back to the Department of State, we

5    renewed those discussions about the broader set of notes and

6    we are working to obtain them but it would have been easier if

7    we had -- if defense had been more clear the first time around

8    about what notes they wanted us to collect and turn over.  So,

9    we're working on that.

10           THE COURT:  Okay.  What's the other item?

11           MR. CLEARY:  The other item, Your Honor, relates to

12   documents referenced in the search warrant affidavit.  We've

13   reviewed that search warrant affidavit and have concluded that

14   we have a Franks motion, a viable Franks motion that we'd like

15   to make.  We have asked the government -- there are several

16   documents referenced in the search warrant affidavit that are

17   summarized and described in the affidavit as part of the

18   probable cause showing.  We don't have those documents so

19   we've asked the government to produce those documents to us,

20   the documents described as summarized in the search warrant

21   affidavit, and they have refused to do so.  So, we would like

22   those documents.

23           THE COURT:  You wish to be heard?

24           MR. RICHARDSON:  Sure, Your Honor.  As the Court may

25   recall, the Court directed the government to make available on

8

1    an attorneys' eyes only basis certain portions of the search

2    warrant affidavits that had previously been redacted.  The

3    Court permitted the government to withhold I believe it was

4    two paragraphs from the defense.  The paragraphs that the

5    government did actually provide under an attorneys' eyes only

6    basis relate to other related investigations but not to the

7    defendant and not to this case.

8            The materials that are referenced in those

9    paragraphs that were subject to the attorneys' eyes only order

10   the government does not believe are relevant to the charges

11   here, so they are not Rule 16 materials, they're not otherwise

12   discoverable and that's why we're not turning them over.

13           To the extent that the defense counsel believes they

14   have a viable Franks motion to make, the burden of production

15   in the first instance is on the defense to show that the

16   statements in the affidavit were made.

17           THE COURT:  I want to make sure I understood what

18   you just said.  So, the documents that are being requested, it

19   is the government's position that they relate to different

20   investigations?

21           MR. RICHARDSON:  They relate to different matters

22   under investigation than those in which the defendant has been

23   charged, Your Honor, and that was the basis for the Court

24   initially permitting the government to redact those portions

25   of the affidavit and then also allowing us to make them

9

1   available to defense counsel under an attorneys' eyes only

2   stipulation.  It's because the government has investigated a

3   number of different matters in connection with the defendant's

4   case, the defendant isn't charged with all of those matters

5   the government has been investigating, and that's why the

6   government hasn't turned over the documents underlying that

7   material because it's not Rule 16 material for this defendant,

8   Your Honor.

9        THE COURT:  Mr. Cleary?

10       MR. CLEARY:  Your Honor, the question is not as the

11  government poses it, whether those documents relate to this

12  investigation or not.  We're talking about a Franks motion.

13  The question is whether it relates to the probable cause for

14  the issuance of the warrant.  So, they're really talking about

15  the wrong issue here and since this was information that was

16  provided to the magistrate as part of that probable cause

17  showing which led to the search of Mr. Zhong's email account,

18  we believe we're entitled to see that information.

19       THE COURT:  Do you wish to respond?

20       MR. RICHARDSON:  Yes, Your Honor.  I think

21  Mr. Cleary is putting the cart before the horse.  The defense

22  under Franks and the case law that has applied Franks has the

23  prima facie -- has to make a prima facie showing that there

24  were statements made in the warrant that were material to the

25  probable cause determination by the magistrate judge that were

10

1   reckless as to their truth.  That's the defense's prima facie

2   showing.  If the defendant can't do that right now, then we

3   don't get to the part of the Franks hearing where the

4   government comes to court and provides a basis which is what

5   they're asking for now.

6           THE COURT:  But let me ask you this, it sounds like

7   there was more information thrown into the warrant application

8   than ultimately proved relevant for the charges at hand.

9           Correct me if I'm wrong, Mr. Cleary, but I think the

10  defense argument is that all of the information went to shore

11  up the probable cause for the issuance of the warrant

12  regardless of what he was ultimately charged with, right?

13          So, in a different case, let's say in a narcotics

14  case there might be testimony -- the affiant might say, I was

15  in drug dealer's house, I saw him recording transactions,

16  people were coming in, giving money, getting drugs and there

17  was a book recording transactions, there were guns, there were

18  drugs and ultimately perhaps because for lack of evidence,

19  let's say the warrant gets executed, there are no drug records

20  that show the money transactions, there were no guns, maybe

21  you recover drugs, maybe there's not enough to charge him with

22  the guns let's say because no guns are recovered, nonetheless

23  the information about the guns and the drug records was

24  relevant for the ultimate issuance of the warrant as probable

25  cause.  It doesn't mean that the officer was lying, it means

1     that things get moved in and out of a location, it might not

2     be there at the time that they execute the warrant, it might

3     have a different hiding place or maybe it was in the house, it

4     was well hidden somewhere in a trap somewhere in the house in

5     the ceiling or in the floorboards, who knows.

6            So, I guess the ultimate question is whether these

7     documents that relate to things that Mr. Zhong was not charged

8     with relate to Mr. Zhong or do they relate to other people?

9            MR. RICHARDSON: Well --

10           THE COURT: Other people's actions.

11           MR. RICHARDSON: One moment, Your Honor?

12           (Pause in the proceedings.)

13           MR. RICHARDSON: Your Honor.

14           THE COURT: Yes.

15           MR. RICHARDSON: Your Honor is absolutely right, of

16     course, that it is something that happens sometimes when you

17     swear out a search warrant affidavit and then you find other

18     material while you're searching for the material that you

19     obtained the warrant for. The purpose of the burden shifting

20     regime set forth by Franks though puts it first on the defense

21     to put forward a motion before the Court that establishes that

22     the warrant would not have issued but for those reckless false

23     statements and then the government has to come to court and

24     explain either the basis for those statements or argue why the

25     warrant still would have issued even with those statements

12

1   redacted.

2          So, the reason the government has said that the

3   defense is putting the cart before the horse here is that what

4   the defense is arguing here is what's supposed to happen in a

5   Franks motion, if they believe that they have a viable prima

6   facie case here that there were reckless statements that were

7   reckless as to their truth and the warrant would not have

8   issued without them --

9          THE COURT:  What is the problem with giving them the

10  documents again on an attorneys' eyes only basis, besides the

11  government deciding it's not relevant?

12         MR. RICHARDSON:  Your Honor, as I understand it, in

13  our prior discussion the defense counsel specifically conceded

14  that the materials referenced in the warrant are not relevant

15  to this case.  The only argument they have made is that they

16  want to see them to confirm that the government wasn't -- that

17  the agent wasn't lying when they (sic) swore out the affidavit

18  which is, as I've said, what the whole purpose of a Franks

19  hearing, if the Court were to deem one appropriate, is.

20         So, the concern here is that we've asked the Court

21  and the Court has permitted us to provide protections for

22  these materials because they relate to investigations into

23  other individuals that are -- that continue, that are ongoing

24  and they're not related to the charges against the defendant.

25         THE COURT:  What's the volume of documents you're

13

1    talking about here?

2           MR. RICHARDSON:  If I could have a moment, Your

3    Honor?  I think it's relatively slight, I think it's a small

4    collection of emails, Your Honor, and I think a number of

5    government records.

6           MR. CLEARY:  I believe it's 13 documents, Your

7    Honor.

8           THE COURT:  Well, 13 documents, each one is a

9    thousand pages, 13 documents one page each?  That doesn't tell

10   me the volume.

11          MR. RICHARDSON:  They're emails, Your Honor, most of

12   them are emails, they're relatively short and then the records

13   information are also relatively short documents.

14          THE COURT:  Again, short is a relative term.

15          MR. RICHARDSON:  I don't know the length of each of

16   the documents as I sit here.  I don't expect there to be more

17   than 100 pages at the outside and that's just an estimate but

18   I really don't expect it to be more than that and I would

19   expect it to actually be less than that.

20          THE COURT:  Well, the defense mentioned that you

21   feel you already have a viable Franks motion.  Just make your

22   motion.

23          MR. CLEARY:  We plan on doing that, Your Honor, but

24   if we could strengthen our motion, that would be helpful.

25          THE COURT:  If the documents do not relate to the

14

1  charges at hand and are not relevant to the charges at hand

2  and you already have a basis for making the motion, then I

3  don't understand what the point is in having these documents

4  other than to satisfy your curiosity.

5      MR. CLEARY:  Your Honor, it's the point the Court

6  made which is the question is not what Mr. Zhong was charged

7  with, the question was in the representations to the

8  magistrate.

9      THE COURT:  Well, I'm going to split the baby, you

10  make your Franks motion and the government submits the

11  documents to the Court and the Court can review the documents

12  in conjunction with the motion.

13      MR. CLEARY:  Okay.

14      MR. RICHARDSON:  Yes, Your Honor.

15      THE COURT:  You said you had another discovery

16  issue?

17      MR. CLEARY:  One final discovery issue, Your Honor,

18  and then the bill of particulars.  This is an issue we've

19  discussed at several appearance before the Court and that's

20  identifying the victims that the government intends to prove

21  up at trial.  Your Honor said that at some point you would set

22  a deadline for that production, in October you said that and

23  then in the December conference the government argued that

24  that was premature.  So, that's an open issue.

25      We would like the identification of those victims

1   count by count, we'd like that ASAP, particularly if, as it

2   sounds like, we're going to be setting a trial date, we need

3   that to prepare for trial.

4           THE COURT:  Yes, let me hear from the government.

5           MR. RICHARDSON:  Your Honor, over the last couple of

6   months, as the Court is well aware, the government has been

7   focusing all of its effort on meeting the discovery deadline

8   in this case and that has included the review of foreign

9   language documents, it's involved review of a lot of

10  electronic sort of information.  That has been our focus.

11  There is still a category of materials that we've turned over

12  to the defense that the prosecution team hasn't seen and that

13  is the defendant's emails and that's because the filter team

14  has been making sure that the information that we need to

15  review for potential relevance is turned over to the

16  prosecution team so that we can decide what needs to be

17  disclosed to the defense.  So, we still are in the process of

18  getting -- and when I say "we," Your Honor, I mean the

19  prosecution team is still in the process of getting access to

20  the defendant's emails.  We're working as hard as we can on

21  that, that's now our focus as we move forward.

22          THE COURT:  What does that have to do with the

23  identity of the victims here?

24          MR. RICHARDSON:  Well, Your Honor, I think to put it

25  simply, we want to see what the defendant's emails say before

1    we put forward a list to the Court about who the victims are

2    that we intend to prove as to each of the charges.

3          THE COURT:  So, how long is it going to take you to

4    do that?

5          MR. RICHARDSON:  Your Honor, I would suggest that if

6    we disclose the victims in connection with our motions in

7    limine as part of the schedule, that would provide the defense

8    the notice that they need to prepare their defense.  It would

9    also make clear how we see those victims interacting with the

10   evidence at trial which is I think what the Court's initial

11   concern was in asking the government to narrow down the

12   victims that the government intends to prove and make the

13   subject of the trial and that way we do this all in an

14   efficient, consolidated manner in connection with the motions

15   in limine and we're not left, you know, trying to add a victim

16   here or there after the fact as we find new evidence.

17         Before we came to court today I had discussions with

18   Mr. Cleary and Mr. Snell about setting a potential motion

19   schedule, obviously the Court is going to let us know what the

20   Court's availability is for trial, but we could be -- the

21   government could be in a position to file those pretrial

22   motions in two months.

23         THE COURT:  How long do you expect the trial to be?

24         MR. RICHARDSON:  Your Honor, I think it's likely the

25   government's case is going to be about two to three weeks on

17

1    the outside; just from speaking with Mr. Clary, assuming a

2    week for a potential defense case, I think four or so weeks is

3    a reasonable estimate of the trial.

4             THE COURT:  What do you -- again, I never hold any

5    defense team to a hard and fast assessment of how long it will

6    take, it could be no case, it could be a case, but just a ball

7    park just for planning purposes?

8             MR. CLEARY:  I think we should plan on a week for

9    the defense case and I do, when Your Honor is ready, I want to

10   be heard on the scheduling that Mr. Richardson proposed for

11   disclosing victims.

12            THE COURT:  Let me also ask this, I assume the

13   government is not asking for an anonymous jury or anything of

14   that nature?

15            MR. RICHARDSON:  We don't anticipate that, Your

16   Honor.

17            THE COURT:  Okay.

18            Yes, Mr. Cleary, I'll hear you --

19            MR. CLEARY:  Thank you, Your Honor.

20            THE COURT:  -- on the government's schedule.

21            MR. CLEARY:  I object to any delay in disclosing who

22   the victims are and the reason is this, I believe we're going

23   to find out that the alleged victims are all Chinese people

24   living in China who don't speak English.  This is going to

25   take us, for obvious reasons, a substantial amount of time to

1    conduct our own investigation, first of all, to find the

2    alleged victims but then to conduct our own investigation into

3    their circumstances.  I see no reason why after investigating

4    this case for years that the government could not now identify

5    who the victims are.  Mr. Richardson said what he doesn't want

6    to have to do is, as they get Mr. Zhong's emails, add another

7    victim or two to the list.  Why not?  That would present no

8    problems for us and would present no problems for them.  It

9    would at least give us an opportunity to start our

10   investigation on the victims that they know about now and I

11   think it is a very important step in our investigation in

12   defending our client.

13                THE COURT:  Mr. Richardson.

14                MR. RICHARDSON:  Yes, Your Honor.  I think it's

15   important to clarify what we mean when we say disclose the

16   victims.  As the Court is aware, we've been from the inception

17   of this case, from the complaint through the indictment, we've

18   been very clear that we view the victims in this case as the

19   workers who came from China who had A-2 visas or G-2 visas who

20   were used, who the defendant used his power over to make them

21   work on private projects here in the United States and those

22   victims are all disclosed, have been all disclosed, the

23   complete universe of those victims has been disclosed to the

24   defense.  Our first productions in this case included visa

25   records from the State Department that identified those

1  victims.

2        So, it's not that we haven't disclosed the victims

3  to defense counsel.  The defense has known who the universe

4  is.

5        THE COURT:  Well, why wasn't that your first answer

6  instead of saying let's wait until we do motions in limine?

7  Your answer, your initial answer to me seems to presuppose

8  that there are indeed names of victims that have been

9  withheld.

10       MR. RICHARDSON:  I apologize, Your Honor, that

11  wasn't my intention.  When I said that, disclose the victims,

12  I was referring to the Court's instruction that we would have

13  to winnow down that list into the group that we were going to

14  come up --

15       THE COURT:  That's not what we're talking about

16  here.  I don't understand.  Please don't doublespeak me here.

17  I think they're very clear about what they're saying.  To the

18  extent that there are any names of victims that have not yet

19  been disclosed, correct, you have the visa applications,

20  presumably you have the names of those people?

21       MR. CLEARY:  We do, Your Honor.  What I'm looking

22  for is what the Court has mentioned previously which is a

23  deadline for the government to disclose the alleged victims

24  that they're going to prove up at trial count by count and

25  Your Honor harkened back to another case you had, a health

1   care fraud case and you said that that's what you did there

2   and you put the burden on the government, a reasonable burden

3   on the government.

4          THE COURT:  That's Bortnovsky and Nachamie.

5          MR. CLEARY:  That's what we would ask for here and

6   the reason I mentioned that now, who are the victims they're

7   going to prove up at trial count by count, as Your Honor

8   mentioned at a prior hearing.

9          THE COURT:  So, the first question is with respect

10  to the disclosures that the government has made to date in

11  connection with the bill of particulars, is that the universe

12  of victims that the government maintains are the subject of

13  the indictment?

14         MR. RICHARDSON:  Well, so the bill of particulars

15  that related to the visa fraud count, Your Honor, that's

16  Count Five -- the visa fraud conspiracy, so those were the

17  individuals we identified as relating to specific fraudulent

18  statements that were caused by the co-conspirators including

19  the defendant.  So, what we've done in the bill of particulars

20  is we've identified the specific visa applicants who were --

21  who had visa applications that were made with those fraudulent

22  statements.

23         I don't want to say that is also the list of all of

24  the victims for the other crimes because there were some A-2

25  and G-2 visa holders that did not have diplomatic notes and

1   other things submitted in connection with their affidavit that

2   we've identified as fraudulent statements, so there may be a

3   few others that had A-2 or G-2 visas that we would identify as

4   victims, say the forced labor conspiracy, for example, or the

5   alien smuggling conspiracy, but all of the individuals who

6   have come to the United States as A-2 or G-2 visa holders,

7   which is the universe of victims, has been turned over to the

8   defense and so if the defense's concern is that they haven't

9   had a chance to investigate, they have, they've had all that

10  information, they've been able to investigate it frankly --

11              THE COURT:  You're only talking about giving -- if

12  I'm hearing you correctly, you're only talking about having

13  given the defense information concerning victims involved in

14  Count Five.  What about the other counts?

15              MR. RICHARDSON:  Well, that's -- Your Honor, we have

16  turned over victim information because -- for the other

17  counts, because the A-2 and G-2 visa holders are the victims

18  in the forced labor conspiracy, they're the victims of the

19  alien smuggling conspiracy and they're the subjects of the

20  visa fraud conspiracy, the victims in the visa fraud

21  conspiracy.

22              THE COURT:  Are you saying that they are included

23  within that subset, if you will, of Count Five?

24              MR. RICHARDSON:  It's a little broader than that,

25  Your Honor.

1          THE COURT:  Can I get a straight answer?

2          MR. RICHARDSON:  No, Your Honor, the answer is no.

3          THE COURT:  Okay, because I have yet to get a

4    straight answer from you this morning.

5          MR. RICHARDSON:  I apologize, Your Honor.  I'm

6    trying to -- it's not a -- there are different considerations

7    for each count and I'm trying to be direct with the Court

8    about what those different considerations are and I apologize

9    if --

10         THE COURT:  These are yes or no answers.  As to

11   Count One, have you turned over the names of any victims

12   involved there?

13         MR. RICHARDSON:  Yes, in the discovery, Your Honor.

14         THE COURT:  And as to Count Two, that's the forced

15   labor?

16         MR. RICHARDSON:  Yes, Your Honor, in the discovery.

17         THE COURT:  And as to Count Three, concealing

18   passports and immigration documents in connection with forced

19   labor?

20         MR. RICHARDSON:  That's also in the discovery, Your

21   Honor.

22         THE COURT:  And Count Four, the alien smuggling

23   conspiracy?

24         MR. RICHARDSON:  Yes, Your Honor, that's also in the

25   discovery.

1          THE COURT:  So then the information has been turned

2     over.  I don't understand what are you talking about other

3     people that have -- you seem to be saying that there are names

4     of victims that have not yet been turned over.

5          MR. RICHARDSON:  No, Your Honor, I apologize.  I

6     apologize again, Your Honor, that this isn't clear and I'm

7     doing my best, Your Honor, I'm not trying to mislead the

8     Court.  What defense has asked for essentially is a preview of

9     what our trial case is going to be, what victims we're going

10    to being talking about at trial, that's what the defense has

11    asked for and what I have suggested, Your Honor, is that we do

12    that in connection with our motions in limine.

13          So, we have turned over -- we have disclosed the

14    identities of the victims, we have done that in the discovery

15    to the defense at the very beginning of this case and now

16    we're talking about what we're going to disclose to the

17    defense in advance of trial about what our trial proof is

18    going to look like.

19          THE COURT:  In terms of the total number of names

20    that the government has turned over to the defense, can you

21    quantify the total number of names that have been turned over

22    to the defense?

23          MR. RICHARDSON:  I believe it's over 200 names, Your

24    Honor.

25          THE COURT:  Over 200 names.  Are you planning then

24

1    to prove your case as to 200 individuals?

2          MR. RICHARDSON:  I don't believe our trial evidence

3    is going to discuss all 200 individuals, Your Honor, no.

4          THE COURT:  So, are you going to discuss 100

5    individuals?

6          MR. RICHARDSON:  Again, that's possible, I mean the

7    question is -- it's possible, Your Honor, we may do charts

8    that discuss specific individuals.  I know, for example, there

9    are emails between the defendant and others that list a number

10   of individuals.  So, those emails likely would include the

11   emails we use at trial, the evidence we use at trial would

12   likely include that list of individuals and those would be

13   victims that we would be discussing at trial and this is why,

14   Your Honor, I would ask the Court's permission to do this in

15   connection with the motions in limine so that --

16         THE COURT:  Why, why are the motions in limine

17   relevant?

18         MR. RICHARDSON:  Because in the motions in limine,

19   Your Honor, we're going to be talking about what our trial

20   proof is going to look like, what we're planning to prove

21   with respect to these individuals and how they relate to the

22   case.

23         THE COURT:  Do you wish to be heard, Mr. Cleary?

24         MR. CLEARY:  Thank you, Your Honor.  I object to

25   that delay.  All we are asking for now, there's about 300

1    workers, A-2/G-2 workers at issue here.

2          THE COURT:  The government says it's 200.  That's a

3    big disparity.

4          MR. CLEARY:  I think it is 300, Your Honor.  Four

5    months ago at our October conference Your Honor told the

6    government that you were going to set a deadline for the

7    government to identify alleged victims that they're going to

8    prove up at trial count by count.  So, they've had four months

9    to figure that out and that's all we're looking for here, Your

10   Honor, a disclosure by the government, as the Court mentioned,

11   count by count who are the victims they're going to prove up.

12         Once we know that, we can then do a more targeted

13   investigation into those individuals who, as I mentioned, I'm

14   anticipating are going to be in China and difficult to locate.

15   It is, as you're well aware, an incredibly burdensome

16   undertaking to investigate 300, or if you took the

17   government's number, 200 people many of whom will not be the

18   subject of the proof offered by the government at trial and

19   that's what we're looking for, who are they going to offer up

20   proof on count by count and that's what the Court told them

21   you were going to direct them to do four months ago.

22         They should be able to do this now and delaying any

23   further is going to make it very, very difficult for us to do

24   the investigation we need to do as to each of those victims.

25         THE COURT:  Well, my understanding from what the

1  government has said is that they're still waiting for the

2  taint team to finish going through some additional information

3  in order to make that final determination.

4          Am I understanding that correctly?

5          MR. RICHARDSON:  Yes, Your Honor.

6          THE COURT:  So, let me hear from Ms. Macchiaverna,

7  where is the taint team on this?

8          MS. MACCHIAVERNA:  Your Honor, I think we could

9  complete the review of the emails at issue within the next

10 four weeks and produce them to the prosecution on a rolling

11 basis as we have with others throughout the course of the

12 email review in this case and they can in turn develop their

13 list of witnesses or victims.

14         THE COURT:  Why don't we do this, I'm not going to

15 direct the government to turn over that information now.

16 First of all, it seems that the defense already has a list,

17 you have discovery on the witnesses; given the defendant's

18 connections and resources in China, you should be able to get

19 started on it now.  Let's set a motion schedule.

20         Let's start, Mr. Cleary, with you on your -- what

21 I'm thinking now is to perhaps expedite matters a little bit

22 or at least to get the briefing done, and I'm going to throw

23 it out there, you all are the ones that are going to do the

24 work so if you need to give me some pushback on it, I'm happy

25 to hear it, but my thought is perhaps to have something of a

1   simultaneous briefing schedule, in other words, the defense to

2   submit your Franks motion and the government to submit their

3   motion in limine at the same time, although I suspect that the

4   defense is a little bit further ahead in the ability to submit

5   the Franks motion than the government is in the motion in

6   limine given that the government has to wait for the taint

7   team to finish doing its job.

8            As I hear myself talk about it, maybe it makes sense

9   to start the briefing on the Franks motion first and then

10  we'll do a separate schedule for the motions in limine.  Why

11  don't we do that.  Sometimes talking out loud helps.  All

12  right.  When can the defense have its motion?

13           MR. CLEARY:  May I have one minute to consult, Your

14  Honor?

15           THE COURT:  Yes, sure.

16           (Pause.)

17           MR. CLEARY:  Can we have two weeks, Your Honor?

18           THE COURT:  Sure.  Okay.  So, defendant's Franks

19  motion, that will be submitted -- I'll give you to the end of

20  that week, that would be March 9th.

21           MR. CLEARY:  Perfect.  Thank you, Your Honor.

22           THE COURT:  Government's response, how long do you

23  need?

24           MR. RICHARDSON:  Three weeks, Your Honor.

25           THE COURT:  I'm going to put it on for March 30th.

28

1  I think Passover and Good Friday fall on the same day, is that

2  okay?

3            MR. RICHARDSON:  That's fine, Your Honor.

4            THE COURT:  And how much time would you need for a

5  reply?

6            MR. CLEARY:  May I consult briefly, Your Honor?

7            THE COURT:  Of course.

8            (Pause.)

9            MR. CLEARY:  Two weeks, if we could, Your Honor.

10            THE COURT:  Two weeks, of course.  That will bring

11  us to April 13th for a reply.

12            So, that would bring us to close to two months out

13  which is what the government suggested would be the time that

14  you need to make your motion in limine.  So, how is April 20th

15  for the government's motion in limine?

16            MR. RICHARDSON:  Could we do April 27th?  That would

17  give us a solid two months.

18            THE COURT:  Okay.

19            And for a response, Mr. Cleary?

20            MR. CLEARY:  Two weeks please.

21            THE COURT:  Sure.  That would bring us to May 11th.

22            And how much time for a reply, Mr. Richardson?

23            MR. RICHARDSON:  If we could have a week, Your

24  Honor?

25            THE COURT:  That would be March 18th.

1          THE CLERK:  May.

2          THE COURT:  I'm sorry, May, thank you, May 18th.

3          Why don't we put this on for a status conference on

4     June 20th.  We'll set a trial date then.

5          What I will do is I need to see the papers first

6     obviously on the Franks motion to determine whether or not

7     there will be a hearing on the matter or whether I need oral

8     argument.  I don't know if I'm going to need oral argument.  I

9     don't automatically have oral argument on motions.  I find

10    half the time it doesn't influence the Court's decision one

11    way or another but sometimes it does and if I do decide that

12    oral argument is necessary, I will enter a scheduling order

13    and in that scheduling order I will alert counsel as to what

14    issues it is that are particularly troubling to me so that you

15    can focus on that.  Obviously you need to know your case but I

16    mean to be able to sort of fine tune, to focus the argument, I

17    find the lawyers find that helpful and that's a lot more

18    helpful to the Court, and sort of the same thing too with

19    respect to the government's motion in limine.

20         So, my hope is to tackle the Franks motion first

21    given the schedule and then the motion in limine and hopefully

22    have all of that decided prior to June 20.  So, it may be that

23    I'm going to be bringing everybody back to court maybe once or

24    twice before that or we'll order a hearing in between there,

25    okay.

1          MR. CLEARY:  Your Honor, there are two other motions

2    I should alert the Court too.

3          THE COURT:  Yes, sir.

4          MR. CLEARY:  One definite and one potential.  The

5    one definite motion relates to the February 2017 protective

6    order which provides protections for the sensitive discovery

7    materials.  In that order, in particular in paragraph four of

8    that order, that permits the defense to file an ex parte

9    motion seeking authorization to disclose sensitive discovery

10   materials to third parties and we will be making that motion

11   because as we move to trial prep, for obvious reasons we need

12   to be able to show those documents to potential witnesses to

13   see if they could (A) explain it and (B) authenticate the

14   documents so that we could put our defense case on.

15          I mean if the government doesn't object to that, it

16   seems to me an eminently reasonable request and we wouldn't

17   have to file the motion but if they oppose that and try to

18   block our efforts to investigate the case that way, we'll file

19   the motion and we can do that within a week, Your Honor.

20          THE COURT:  Within?

21          MR. CLEARY:  One week.

22          THE COURT:  Of today?

23          MR. CLEARY:  Correct.

24          THE COURT:  Do you wish to be heard on that?

25          MR. RICHARDSON:  Sure, Your Honor.  In order for the

1  government to take a position on that, we have to know what

2  materials the defense intends to disclose and who they intend

3  to disclose them to and provided the defense is willing to

4  provide that information to us, we can take a position on

5  whether we object or not.

6          THE COURT:  So, why don't --

7          MR. CLEARY:  Your Honor, I've got a very strong

8  objection to that.  They have no right to know what documents

9  we're planning on building our defense around and certainly no

10  right to know at this juncture who our witnesses are, just

11  like we don't have a right to know who they're talking about.

12          THE COURT:  Yet you're asking for a list of their

13  witnesses.

14          MR. CLEARY:  Well, I'm asking for who the alleged

15  victims are.  I don't anticipate all those alleged victims are

16  going to be witnesses.  Indeed, I think most of them will not

17  be witnesses.  So, I was not asking for witnesses, I was

18  asking for victims but I think it is wholly inappropriate for

19  the government to try to basically monitor what the defense is

20  doing in this case.

21          MR. RICHARDSON:  Your Honor, the government is not

22  trying to monitor what the defense is doing to get ready for

23  trial.  The reason the protective order the defendants

24  reference discusses this option of filing an ex parte order is

25  precisely so the defense can seek court review and court

1  permission without involving the government in this.  So, if

2  the defense doesn't want to disclose that information to the

3  government because it would reveal work product and trial

4  prep, then the route that the protective order prescribes is

5  to go to the Court if the defense doesn't want to do that,

6  that's part of the order that the Court issued and the defense

7  is free to do that.

8          MR. CLEARY:  That's what we'll do, Your Honor, we'll

9  file the motion within the week.

10         THE COURT:  Okay.  Have it filed by March 2nd.

11         MR. CLEARY:  Yes, Your Honor.

12         THE COURT:  Oh, and just remember with respect to

13  all the motion papers to be sure to provide me with two hard

14  courtesy copies, okay.

15         And then there was a second?

16         MR. CLEARY:  It was a potential motion.

17         THE COURT:  Right.

18         MR. CLEARY:  Perhaps a motion to compel if we have

19  to get to that point.  As you heard, we're working

20  cooperatively with the government, I hope we don't have to get

21  to that point but I just want to flag that as a potential

22  issue down the road.

23         THE COURT:  Okay.

24         MR. CLEARY:  The only other issue I have for the

25  Court today is on the bill of particulars, the supplemental

1   bill of particulars.

2          THE COURT:  I thought we addressed that -- oh, no,

3   not the supplemental, that was what you just got.

4          MR. CLEARY:  Correct, Your Honor.

5          THE COURT:  Okay.

6          MR. RICHARDSON:  Your Honor, before we move to that

7   could I just raise one more issue?

8          THE COURT:  Yes.

9          MR. RICHARDSON:  When the government files its

10  motions in limine, given we don't have a trial date, we

11  haven't figured out exactly who is going to be testifying at

12  trial, the government would like permission to file any

13  motions relating to Giglio material closer to trial on a

14  different motion in limine schedule.

15         THE COURT:  I'm not going to have 50,000 motions

16  here.  Make your motions, any motions in limine.  Frankly, I

17  don't know if there are any motions in limine that the defense

18  wishes to make, you haven't mentioned the possibility of doing

19  any, but if there are, then I would put the defense on the

20  simultaneous motion with respect to the government's motion in

21  limine if that schedule works for you.

22         MR. CLEARY:  It would, Your Honor, we'll give some

23  thought to that.

24         THE COURT:  Okay.  Could you let me know by letter

25  if you're not going to make any motions in limine.

1          MR. CLEARY:  Certainly, Your Honor, certainly.

2          THE COURT:  I'm not going to be doing motions until

3     the eve of trial, that's not going to happen.

4          MR. RICHARDSON:  Understood, Your Honor.

5          THE COURT:  There's going to be a lot of work to be

6     done prior to trial too.  On June 20th we will discuss my

7     procedures for trial including jury instructions and so on.

8     It may not be -- I don't know what you all are used to, I have

9     I think a little different procedure than some of my

10    colleagues.  At the end of the day though I think the

11    attorneys have all liked it because we do the bulk -- we're

12    front loading the work, so to speak, as opposed to waiting

13    until the eve of the charge to do the bulk of the work but

14    I'll explain all of that.

15         We're probably looking at a trial date in the fall

16    and that would be my estimate, probably somewhere around

17    October sometime, just so that you keep that in mind.  Okay.

18         MR. CLEARY:  Thank you, Your Honor.

19         THE COURT:  All right.  So, did we address your

20    supplemental bill of particulars?

21         MR. CLEARY:  We have not, Your Honor.  Thank you,

22    Your Honor.  I don't believe in the supplemental disclosure

23    that the government provided the identification, specific

24    identification of specific false statements that we had

25    requested and the Court had ordered.  You will recall that in

1    October the Court directed the government to disclose false

2    statements alleged to have been made in visa applications.

3    The government did not do that.  Their bill of particulars

4    letter of November 3rd identified 11 letters, these are

5    diplomatic notes and what we call letters of invitation that

6    they allege contain numerous false statements, that was their

7    bill of particulars, and what brought us to where we are today

8    is we had specifically asked them to identify which of those

9    various statements in those letters they allege are false and

10   with respect to which particular visa applicant.

11          They refused to do that and that's what brought us

12   here.  We had to brief the issue again and then on

13   February 8th the Court, noting that the government was in

14   contravention of its order, directed the government to

15   supplement that deficient bill of particulars and provide the

16   information we requested and I don't think the Court could

17   have been any more clear than it was in the February 8th

18   order.

19          You directed them to supplement, I'm quoting the

20   Court now:  By identifying which fraudulent statements pertain

21   to which visa applications.

22          In response we got their February 16 letter which

23   does not provide us any additional information to identify the

24   particular false statement or which particular applicant it

25   relates to.  That February 16 government letter, the

1  supplemental, really just repackages the information they had

2  previously provided us in response to the Court's original

3  October order.  It might be easier for me to articulate the

4  problem if I can hand up one of the letters, one of the

5  letters of invitation that the government says is false that

6  is really at the root of this problem.

7       THE COURT:  Why don't you show it to the government

8  first and hand it up.

9       I'm looking at the government's submission of

10 February 16 and there's a chart, Exhibit A, and it has:

11 Paragraph number identify fraudulent statement in

12 November 3rd, 2017 bill of particulars, it has the approximate

13 date of the visa application, visa applicant names, the date

14 of birth, visa class and the visa control number.

15      MR. RICHARDSON:  Your Honor, I have a copy of the

16 November 3rd, 2017 letter which is referenced in the

17 February 16 filing if the Court -- if it would assist the

18 Court.

19      THE COURT:  Yes, can you just show that to defense

20 counsel before you hand it up.

21      MR. RICHARDSON:  (Handing.)

22      THE COURT:  I'm not clear myself comparing the

23 November 3rd and the February 16th submission of the

24 government and looking at the sample invitation letter exactly

25 what is supposed to be the false statement.  Is it the whole

1    thing?

2              MR. CLEARY:  That's the problem --

3              THE COURT:  Is it one particular sentence?

4              MR. CLEARY:  That's the problem we've been

5    struggling with, Your Honor, in trying to get the government

6    to answer.  You'll notice from the invitation letter, which is

7    specifically listed in their November 3rd bill of particulars

8    at paragraph eight, that invitation letter makes all sorts of

9    representations, that it's a request for a building renovation

10   project, that the project is at the Permanent Mission, that

11   engineers are invited, that they will do prep work,

12   preparation work, in addition they would do construction work.

13             THE COURT:  Are you saying that the whole thing was

14   false?

15             MR. CLEARY:  I don't know.

16             THE COURT:  I'm asking the government.

17             MR. RICHARDSON:  Your Honor --

18             THE COURT:  Just using the example that defense

19   counsel has handed up, this April 24, 2015 letter.

20             MR. RICHARDSON:  Your Honor, the argument is that

21   these are fraudulent statements because it failed to disclose

22   the real purpose these workers --

23             THE COURT:  Are you saying that the entire letter

24   constitutes a false statement?

25             It's a short letter.

38

1      MR. RICHARDSON:  We're saying it is a fraudulent

2 statement.

3      THE COURT:  It's basically got two sentences in it.

4      MR. RICHARDSON:  It is a fraudulent statement, yes.

5      THE COURT:  The whole thing is a fraudulent

6 statement?

7      MR. RICHARDSON:  Yes, because the real purpose for

8 bringing these workers was to do private work, not the public

9 PRC work that's described in the letter.

10      THE COURT:  So, are you saying then that that's the

11 same with respect to the other documents that have been

12 identified?

13      MR. RICHARDSON:  That's correct, Your Honor.

14      THE COURT:  So, in essence, they're saying that the

15 entire letter constitutes a false statement.

16      MR. RICHARDSON:  That's correct, Your Honor.

17      MR. CLEARY:  Your Honor, I've heard Mr. Richardson

18 make two completely inconsistent statements.  He said to the

19 Court that the letter is false because it says that they were

20 going to work on diplomatic property, in this case the

21 Permanent Mission to the UN, when they in fact worked on

22 private property.  If that's the false statement, then the

23 rest of this letter is not false, they will depart from China

24 in April of 2015, this is in the second paragraph.

25      THE COURT:  Right.

1            MR. CLEARY:  They will stay in the U.S. for about

2     three years.  Those are not false statements, according to

3     what Mr. Richardson said.

4            THE COURT:  Is that part of the false statement?

5            MR. RICHARDSON:  Your Honor --

6            THE COURT:  Because apparently the visa -- they were

7     applying for the visas for a particular period of time.

8            MR. RICHARDSON:  Right.  What the government is

9     trying to do here is to show the defendant's criminal

10    agreement to make -- to bring these visa holders -- to obtain

11    visas for these individuals and bring them into the United

12    States involved obtaining a letter from the Chinese

13    government.

14           THE COURT:  You're missing the point.

15           MR. RICHARDSON:  The whole letter is false because

16    the letter -- they obtained the letter from the Chinese

17    government to provide the imprimatur of official legitimacy

18    for their visa applications.  Without that letter, without the

19    assertion that they were here to do government work --

20           THE COURT:  Stop right there.  Okay.  So, the first

21    paragraph really is one sentence, that's the one that was just

22    pointed out by Mr. Cleary:  Requested for the construction of

23    our building renovation project of Permanent Mission of the

24    People's Republic of China to the United Nations, the

25    engineers and workers of your company -- this is addressed to

1   Rilin Construction Group -- are hereby invited to the United

2   States of America to undertake the job of preparation work and

3   then the construction work.

4            So, the government's position is that that is a

5   false statement?

6            MR. RICHARDSON:  Yes.

7            THE COURT:  Because in fact they were not brought to

8   work on the mission, right, that would have been government

9   work.  All right.  They were brought in fact to work on

10  private property.

11           MR. RICHARDSON:  That's right.

12           THE COURT:  Correct?  Okay.  So, that's one false

13  statement, I think that's fairly clear, and to the extent that

14  the other letters are the same, then that's a false statement.

15  I think Mr. Cleary's position is that the next sentence which

16  constitutes basically the rest of the document which reads as

17  follows:  According to the schedule of the work, they will

18  depart on April 2015 and stay in the United States of America

19  for about three years.  Please apply appropriate visas for

20  them.  The list of the 19 people invited is as the name list.

21           What is false about that statement?

22           MR. RICHARDSON:  The name list, that refers to the

23  list of people attached to that letter, that makes clear that

24  the statement is being made in connection with each of their

25  visa applications.

1          THE COURT:  But that statement isn't false because

2   in fact these were people that they expected to leave in

3   April of 2015 and that they expected to have visas applied for

4   on their behalf.  What is false about that statement?

5          MR. RICHARDSON:  It's not the specific false

6   statement, Your Honor.  We're saying this is a fraudulent

7   statement, the whole letter is fraudulent because it is --

8          THE COURT:  No, you're not understanding.  Not the

9   whole letter is not fraudulent because in fact it is their

10  intention to have, and I think this is the defendant's point,

11  right?

12         MR. CLEARY:  Correct.

13         THE COURT:  I'm not espousing one point or the

14  other, I'm trying to flesh this out, okay.  What the defense

15  is saying, in fact, they did seek to get this list of

16  individuals out of China in April of 2015; in order to do

17  that, okay, they had to get visas for them, right?  So, that

18  statement is not false.

19         MR. RICHARDSON:  Your Honor, I think we're taking a

20  broader view of fraudulent and that is because the government

21  has charged a criminal conspiracy, a criminal agreement to

22  commit visa fraud.  We're not undertaking to prove a specific

23  visa application was fraudulent.

24         THE COURT:  The purpose of the visa is fraudulent

25  and that's set forth in the first paragraph because that's the

1    fraudulent statement.  The fraudulent statement is that they

2    were coming to work at the mission of the PRC when in fact

3    they weren't going to be working at the mission of the PRC,

4    they were going to be working, this is the government's

5    theory, on private property.  But the fact of needing visas,

6    that may have been the mechanism by which the fraud was

7    committed but the statement itself is not a fraudulent

8    statement.  You follow what I'm saying?

9              MR. RICHARDSON:  The second statement, Your Honor?

10             THE COURT:  The second -- I'm talking about the

11   second statement.

12             MR. RICHARDSON:  We would say that any reference to

13   the work that is described would be fraudulent and I believe

14   it says the work in there because it's reiterating the

15   statement that they're here to do official work as opposed to

16   private work.

17             THE COURT:  Well, their point is that the entire

18   letter is fraudulent, that's their position.

19             MR. CLEARY:  Right, and what I hear them saying, and

20   what Bortnovsky talks about is not whether a document -- as

21   the Court knows, is not whether a document is fraudulent but

22   what is the false statement within the document.

23             THE COURT:  But I think that you've heard from the

24   discussion here what their view is; in other words, by

25   referencing the work, it's referencing the work to be done at

1   the mission --

2           MR. CLEARY:  I got that.

3           THE COURT:  -- of the PRC and so by including a

4   reference to the work, that that makes that second sentence a

5   fraudulent statement because it's misrepresenting the work to

6   be done.

7           MR. CLEARY:  And I'm hearing the government say and

8   I just want -- we've been trying since June to get this so I

9   want to make sure the record is clear on this.

10          MR. RICHARDSON:  Your Honor, I object to this.

11          MR. CLEARY:  Excuse me.  I'm hearing --

12          THE COURT:  Yes.

13          MR. CLEARY:  Thank you, Your Honor.  I'm hearing the

14  government say that the false statement is that the workers

15  were going to be working in diplomatic property, here the

16  mission, when in fact the intention was to have them work on

17  private property instead of the diplomatic property and if

18  that's the false statement, then we're done with this.  They

19  can then say the whole document is fraudulent as a result of

20  that, I'm fine with that.  I just want to make sure that we're

21  clear that the false statement is what I said, that the

22  government's position is that they worked on a private project

23  rather than the permanent mission, that's what I want to make

24  sure.

25          THE COURT:  That's the fraud, right?

44

1          MR. RICHARDSON:  That's correct, Your Honor.

2          THE COURT:  Okay.  So, what are you objecting to?

3     That's the government's theory.

4          MR. RICHARDSON:  I'm objecting to the fact that they

5     are suggesting that we've been hiding the ball on this.  This

6     was in our complaint.  We've made this clear to the defense

7     from the beginning of the case.

8          THE COURT:  Mr. Richardson, you can pack up the

9     self-righteous indignation and leave it home, okay.  It was

10    not clear to me either.  Maybe it was clear inside your own

11    head but you are not explaining it clearly enough for even me

12    to understand it and I don't have a stake in this.

13          I think it is clearer now that we understand that

14    any reference then to the work is harkening back to the false

15    statement and it's the government's position that that then

16    makes that follow-up statement also a false statement because

17    it is still continuing the impression that the work to be done

18    is on the mission, government work as opposed to working on

19    private property.  I think now we're on the same page.  Are we

20    on the same page?

21          MR. RICHARDSON:  Yes, Your Honor.

22          THE COURT:  Okay.

23          MR. CLEARY:  Thank you, Your Honor.

24          THE COURT:  Okay.  And I gather that the other

25    letters are similar to this.

1          MR. RICHARDSON:  Yes, Your Honor.

2          THE COURT:  Everything is fairly similar.

3          MR. CLEARY:  And the government's position is the

4    same with all the other letters?

5          THE COURT:  Can we hold on to these?

6          MR. CLEARY:  Certainly, Your Honor.

7          I just wanted to make sure that the government's

8    position with respect to the other letters is as we've now

9    kind of muddled through and come to a conclusion and it is the

10   same as with the others?

11         THE COURT:  That's what they've just said.

12         MR. RICHARDSON:  It is.

13         THE COURT:  I think we're banging the same nail too

14   hard already.

15         Okay.  Is there anything else for today?

16         MR. CLEARY:  Can I have one second, Your Honor.

17         THE COURT:  Yes.

18         (Pause.)

19         MR. CLEARY:  Nothing from the defense, Your Honor.

20   Thank you.

21         THE COURT:  Okay.  I just didn't set a time for the

22   conference on June 20th.  Is ten o'clock okay?

23         MR. RICHARDSON:  That works for the government, Your

24   Honor.

25         MR. CLEARY:  Yes.

46

1          THE COURT:  As I said, you may hear back from my

2     case manager for hearing dates if I need either oral argument

3     or a hearing on the Franks motion.

4          MR. CLEARY:  And just in terms of the scheduling,

5     Your Honor, assuming you are going to set a trial date then,

6     which is our operating assumption, would the Court then be

7     ordering that 120 day --

8          THE COURT:  Yes.

9          MR. CLEARY:  -- discovery?

10          THE COURT:  Okay.  You need to stop beating the dead

11     horse.

12          MR. CLEARY:  I'm just asking.

13          Thank you.

14          THE COURT:  All right.  Thank you.

15          Marshals, you may take charge.

16          (Time noted:  11:25 a.m.)

17          (End of proceedings.)

18

19

20

21

22

23

24

25

**1**

**100** [2] - 13:17, 24:4
**10036** [1] - 1:19
**10:00** [1] - 1:8
**11** [1] - 35:4
**11201** [2] - 1:15, 1:24
**11:25** [1] - 46:16
**11th** [1] - 28:21
**120** [5] - 4:22, 4:23, 4:25, 5:1, 46:7
**13** [3] - 13:6, 13:8, 13:9
**13th** [1] - 28:11
**16** [8] - 3:7, 3:23, 8:11, 9:7, 35:22, 35:25, 36:10, 36:17
**16-CR-614** [1] - 2:2
**16-CR-614(DLI** [1] - 1:3
**16th** [1] - 36:23
**18th** [2] - 28:25, 29:2
**19** [1] - 40:20

**2**

**20** [1] - 29:22
**200** [6] - 23:23, 23:25, 24:1, 24:3, 25:2, 25:17
**2010** [2] - 5:14, 5:21
**2015** [5] - 37:19, 38:24, 40:18, 41:3, 41:16
**2016** [6] - 5:14, 5:16, 5:21, 5:25
**2017** [4] - 3:20, 30:5, 36:12, 36:16
**2018** [1] - 1:8
**20th** [4] - 28:14, 29:4, 34:6, 45:22
**21** [1] - 1:8
**225** [1] - 1:23
**23rd** [1] - 4:6
**24** [1] - 37:19
**271** [1] - 1:14
**27th** [1] - 28:16
**2nd** [1] - 32:10

**3**

**300** [3] - 24:25, 25:4, 25:16
**30th** [1] - 27:25
**3rd** [5] - 35:4, 36:12, 36:16, 36:23, 37:7

**5**

**50,000** [1] - 33:15

**6**

**613-2274** [1] - 1:24

**7**

**718** [1] - 1:24

**8**

**8th** [2] - 35:13, 35:17

**9**

**9th** [1] - 27:20

**A**

**A-2** [5] - 18:19, 20:24, 21:3, 21:6, 21:17
**A-2/G-2** [1] - 25:1
**a.m** [1] - 1:8, 46:16
**ability** [1] - 27:4
**able** [6] - 4:12, 21:10, 25:22, 26:18, 29:16, 30:12
**absolutely** [1] - 11:15
**access** [1] - 15:19
**according** [3] - 3:3, 39:2, 40:17
**account** [1] - 9:17
**actions** [1] - 11:10
**add** [2] - 16:15, 18:6
**addition** [1] - 37:12
**additional** [4] - 3:2, 3:11, 26:2, 35:23
**address** [3] - 5:4, 6:3, 34:19
**addressed** [2] - 33:2, 39:25
**advance** [1] - 23:17
**affiant** [1] - 10:14
**affidavit** [7] - 7:12, 7:13, 7:16, 7:17, 7:21, 8:16, 8:25, 11:17, 12:17, 21:1
**affidavits** [1] - 8:2
**agent** [1] - 12:17
**ago** [2] - 25:5, 25:21
**agreement** [3] - 4:9, 39:10, 41:21
**ahead** [1] - 27:4
**alert** [2] - 29:13, 30:2
**alien** [3] - 21:5, 21:19, 22:22
**allege** [2] - 35:6, 35:9
**alleged** [7] - 17:23, 18:2, 19:23, 25:7, 31:14, 31:15, 35:2
**allowing** [1] - 8:25

**AMERICA** [1] - 1:3
**America** [2] - 40:2, 40:18
**amount** [2] - 3:6, 17:25
**anonymous** [1] - 17:13
**answer** [7] - 19:5, 19:7, 22:1, 22:2, 22:4, 37:6
**answers** [1] - 22:10
**anticipate** [4] - 3:11, 3:14, 17:15, 31:15
**anticipating** [1] - 25:14
**apologize** [6] - 6:14, 19:10, 22:5, 22:8, 23:5, 23:6
**appearance** [1] - 14:19
**appearances** [1] - 2:3
**APPEARANCES** [1] - 1:12
**applicant** [3] - 35:10, 35:24, 36:13
**applicants** [1] - 20:20
**application** [4] - 2:25, 10:7, 36:13, 41:23
**applications** [6] - 19:19, 20:21, 35:2, 35:21, 39:18, 40:25
**applied** [2] - 9:22, 41:3
**apply** [1] - 40:19
**applying** [1] - 39:7
**appropriate** [2] - 12:19, 40:19
**approximate** [1] - 36:12
**April** [8] - 28:11, 28:14, 28:16, 37:19, 38:24, 40:18, 41:3, 41:16
**argue** [1] - 11:24
**argued** [1] - 14:23
**arguing** [1] - 12:4
**argument** [9] - 10:10, 12:15, 29:8, 29:9, 29:12, 29:16, 37:20, 46:2
**articulate** [1] - 36:3
**ASAP** [1] - 15:1
**assertion** [1] - 39:19
**assessment** [4] - 4:10, 17:5
**assist** [1] - 36:17
**Assistant** [1] - 1:17
**Assisted** [1] - 1:23
**assume** [1] - 17:12
**assuming** [2] - 17:1,

46:5
**assumption** [1] - 46:6
**attached** [1] - 40:23
**Attorney** [1] - 1:14
**attorneys** [1] - 34:11
**Attorneys** [1] - 1:17
**attorneys'** [5] - 8:1, 8:5, 8:9, 9:1, 12:10
**authenticate** [1] - 30:13
**authorization** [1] - 30:9
**authorized** [1] - 4:23
**automatically** [1] - 29:9
**availability** [1] - 16:20
**available** [2] - 7:25, 9:1
**aware** [3] - 15:6, 18:16, 25:15

**B**

**baby** [1] - 14:9
**background** [1] - 6:6
**ball** [2] - 17:6, 44:5
**banging** [1] - 45:13
**basis** [8] - 8:1, 8:6, 8:23, 10:4, 11:24, 12:10, 14:2, 26:11
**beating** [1] - 46:10
**BEFORE** [1] - 1:11
**beginning** [2] - 23:15, 44:7
**behalf** [1] - 41:4
**believes** [1] - 8:13
**belong** [1] - 6:18
**BENAVIDEZ** [1] - 1:21
**Benavidez** [1] - 2:13
**best** [1] - 23:7
**between** [4] - 5:12, 6:19, 24:9, 29:24
**big** [1] - 25:3
**bill** [14] - 2:25, 4:16, 14:18, 20:11, 20:14, 20:19, 32:25, 33:1, 34:20, 35:3, 35:7, 35:15, 36:12, 37:7
**birth** [1] - 36:14
**bit** [2] - 26:21, 27:4
**bits** [1] - 3:9
**block** [1] - 30:18
**book** [1] - 10:17
**Bortnovsky** [2] - 20:4, 42:20
**brief** [1] - 35:12
**briefing** [3] - 26:22, 27:1, 27:9
**briefly** [1] - 28:6
**bring** [5] - 28:10,

28:12, 28:21, 39:10, 39:11
**bringing** [2] - 29:23, 38:8
**BRITTANY** [1] - 1:21
**Brittany** [1] - 2:13
**broader** [3] - 7:5, 21:24, 41:20
**Brooklyn** [3] - 1:5, 1:15, 1:24
**brought** [4] - 35:7, 35:11, 40:7, 40:9
**building** [3] - 31:9, 37:9, 39:23
**bulk** [2] - 34:11, 34:13
**burden** [4] - 8:14, 11:19, 20:2
**burdensome** [1] - 25:15
**BY** [2] - 1:15, 1:20

**C**

**Cadman** [2] - 1:14, 1:23
**care** [1] - 20:1
**cart** [2] - 9:21, 12:3
**case** [31] - 8:7, 9:4, 9:22, 10:13, 10:14, 12:6, 12:15, 15:8, 16:25, 17:2, 17:6, 17:9, 18:4, 18:17, 18:18, 18:24, 19:25, 20:1, 23:9, 23:15, 24:1, 24:22, 26:12, 29:15, 30:14, 30:18, 31:20, 38:20, 44:7, 46:2
**category** [2] - 3:17, 15:11
**caused** [1] - 20:18
**ceiling** [1] - 11:5
**certain** [1] - 8:1
**certainly** [4] - 31:9, 34:1, 45:6
**chance** [1] - 21:9
**charge** [3] - 10:21, 34:13, 46:15
**charged** [6] - 8:23, 9:4, 10:12, 11:7, 14:6, 41:21
**charges** [6] - 8:10, 10:8, 12:24, 14:1, 16:2
**chart** [1] - 36:10
**charts** [1] - 24:7
**CHIEF** [1] - 1:11
**Chief** [1] - 1:23
**China** [7] - 17:24, 18:19, 25:14, 26:18,

38:23, 39:24, 41:16
**Chinese** [4] - 5:13, 17:23, 39:12, 39:16
**circumstances** [1] - 18:3
**clarify** [1] - 18:15
**Clary** [1] - 17:1
**class** [1] - 36:14
**clear** [14] - 7:7, 16:9, 18:18, 19:17, 23:6, 35:17, 36:22, 40:13, 40:23, 43:9, 43:21, 44:6, 44:10
**clearer** [1] - 44:13
**clearly** [1] - 44:11
**cleary** [1] - 9:21
**CLEARY** [63] - 1:20, 2:10, 4:11, 5:4, 5:7, 5:20, 5:24, 7:11, 9:10, 13:6, 13:23, 14:5, 14:13, 14:17, 17:8, 17:19, 17:21, 19:21, 20:5, 24:24, 25:4, 27:13, 27:17, 27:21, 28:6, 28:9, 28:20, 30:1, 30:4, 30:21, 30:23, 31:7, 31:14, 32:8, 32:11, 32:16, 32:18, 32:24, 33:4, 33:22, 34:1, 34:18, 34:21, 37:2, 37:4, 37:15, 38:17, 39:1, 41:12, 42:19, 43:2, 43:7, 43:11, 43:13, 44:23, 45:3, 45:6, 45:16, 45:19, 45:25, 46:4, 46:9, 46:12
**Cleary** [10] - 2:10, 4:9, 9:9, 10:9, 16:18, 17:18, 24:23, 26:20, 28:19, 39:22
**Cleary's** [1] - 40:15
**clerk** [1] - 2:21
**CLERK** [2] - 2:1, 29:1
**client** [2] - 4:7, 18:12
**close** [1] - 28:12
**closer** [1] - 33:13
**co** [1] - 20:18
**co-conspirators** [1] - 20:18
**colleagues** [2] - 2:12, 34:10
**collect** [1] - 7:8
**collection** [1] - 13:4
**coming** [2] - 10:16, 42:2
**commit** [1] - 41:22
**committed** [1] - 42:7
**communications** [2] -

2:24, 6:19
**company** [1] - 39:25
**comparing** [1] - 36:22
**compel** [1] - 32:18
**complaint** [2] - 18:17, 44:6
**complete** [4] - 3:8, 3:23, 18:23, 26:9
**completely** [1] - 38:18
**Computer** [1] - 1:25
**Computer-Assisted** [1] - 1:25
**concealing** [1] - 22:17
**conceded** [1] - 12:13
**concern** [3] - 12:20, 16:11, 21:8
**concerning** [1] - 21:13
**concluded** [1] - 7:13
**conclusion** [1] - 45:9
**conduct** [2] - 18:1, 18:2
**conference** [7] - 2:1, 2:22, 3:5, 14:23, 25:5, 29:3, 45:22
**CONFERENCE** [1] - 1:6
**confirm** [1] - 12:16
**conjunction** [1] - 14:12
**connection** [9] - 9:3, 16:6, 16:14, 20:11, 21:1, 22:18, 23:12, 24:15, 40:24
**connections** [1] - 26:18
**consider** [1] - 4:7
**considerations** [3] - 6:21, 22:6, 22:8
**consolidated** [1] - 16:14
**conspiracy** [9] - 20:16, 21:4, 21:5, 21:18, 21:19, 21:20, 21:21, 22:23, 41:21
**conspirators** [1] - 20:18
**constitutes** [3] - 37:24, 38:15, 40:16
**construction** [3] - 37:12, 39:22, 40:3
**Construction** [1] - 40:1
**consult** [2] - 27:13, 28:6
**contact** [1] - 3:9
**contain** [1] - 35:6
**continue** [1] - 12:23
**continuing** [2] - 3:14, 44:17
**contravention** [1] -

35:14
**control** [1] - 36:14
**controls** [1] - 6:21
**cooperatively** [1] - 32:20
**copies** [2] - 6:22, 32:14
**copy** [1] - 36:15
**correct** [10] - 3:4, 10:9, 19:19, 30:23, 33:4, 38:13, 38:16, 40:12, 41:12, 44:1
**correctly** [2] - 21:12, 26:4
**correspondence** [2] - 5:9, 5:12
**counsel** [14] - 2:3, 2:6, 3:13, 6:6, 6:17, 6:24, 6:25, 8:13, 9:1, 12:13, 19:3, 29:13, 36:20, 37:19
**Count** [8] - 5:10, 20:16, 21:14, 21:23, 22:11, 22:14, 22:17, 22:22
**count** [15] - 5:11, 15:1, 19:24, 20:7, 20:15, 22:7, 25:8, 25:11, 25:20
**counts** [2] - 21:14, 21:17
**couple** [4] - 3:14, 4:12, 4:14, 15:5
**course** [4] - 11:16, 26:11, 28:7, 28:10
**court** [6] - 10:4, 11:23, 16:17, 29:23, 31:25
**COURT** [132] - 1:1, 2:8, 2:14, 2:19, 2:22, 4:9, 5:3, 5:5, 5:18, 5:22, 6:3, 6:12, 6:15, 7:10, 7:23, 8:17, 9:9, 9:19, 10:6, 11:10, 11:14, 12:9, 12:25, 13:8, 13:14, 13:20, 13:25, 14:9, 14:15, 15:4, 15:22, 16:3, 16:23, 17:4, 17:12, 17:17, 17:20, 18:13, 19:5, 19:15, 20:4, 20:9, 21:11, 21:22, 22:1, 22:3, 22:10, 22:14, 22:17, 22:22, 23:1, 23:19, 23:25, 24:4, 24:16, 24:23, 25:2, 25:25, 26:6, 26:14, 27:15, 27:18, 27:22, 27:25, 28:4, 28:7, 28:10, 28:18, 28:21, 28:25, 29:2,

30:3, 30:20, 30:22, 30:24, 31:6, 31:12, 32:10, 32:12, 32:17, 32:23, 33:2, 33:5, 33:8, 33:15, 33:24, 34:2, 34:5, 34:19, 36:7, 36:19, 36:22, 37:3, 37:13, 37:16, 37:18, 37:23, 38:3, 38:5, 38:10, 38:14, 38:25, 39:4, 39:6, 39:14, 39:20, 40:7, 40:12, 41:1, 41:8, 41:13, 41:24, 42:10, 42:17, 42:23, 43:3, 43:12, 43:25, 44:2, 44:8, 44:22, 44:24, 45:2, 45:5, 45:11, 45:13, 45:17, 45:21, 46:1, 46:8, 46:10, 46:14
**Court** [47] - 1:22, 1:23, 3:1, 3:3, 3:20, 3:24, 4:15, 4:18, 4:20, 5:10, 6:6, 7:24, 7:25, 8:3, 8:23, 11:21, 12:19, 12:20, 12:21, 14:5, 14:11, 14:19, 15:6, 16:1, 16:19, 18:16, 19:22, 22:7, 23:8, 25:10, 25:20, 29:18, 30:2, 32:5, 32:6, 32:25, 34:25, 35:1, 35:13, 35:16, 35:20, 36:17, 36:18, 38:19, 42:21, 46:6
**Court's** [8] - 3:21, 5:2, 16:10, 16:20, 19:12, 24:14, 29:10, 36:2
**courtesy** [1] - 32:14
**Courthouse** [1] - 1:4
**courtroom** [1] - 2:11
**covers** [1] - 5:22
**crimes** [1] - 20:24
**criminal** [2] - 2:1, 39:9, 41:21
**CSR** [1] - 1:22
**curiosity** [1] - 14:4

## D

**Dan** [1] - 2:2
**DAN** [1] - 1:8
**date** [9] - 5:1, 15:2, 20:10, 29:4, 33:10, 34:15, 36:13, 46:5
**dates** [1] - 46:2
**days** [3] - 4:23, 4:25, 5:1
**dead** [1] - 46:10

**deadline** [5] - 3:3, 14:22, 15:7, 19:23, 25:6
**dealer's** [1] - 10:15
**December** [1] - 14:23
**decide** [2] - 15:16, 29:11
**decided** [1] - 29:22
**deciding** [1] - 12:11
**decision** [1] - 29:10
**deem** [1] - 12:19
**defendant** [11] - 1:9, 4:5, 8:7, 8:22, 9:4, 9:7, 10:2, 12:24, 18:20, 20:19, 24:9
**Defendant** [1] - 1:18
**defendant's** [8] - 9:3, 15:13, 15:20, 15:25, 26:17, 27:18, 39:9, 41:10
**defendants** [1] - 31:23
**defending** [1] - 18:12
**defense** [63] - 2:9, 2:25, 3:9, 3:12, 3:13, 4:1, 4:6, 6:6, 6:17, 6:24, 6:25, 7:7, 8:4, 8:13, 8:15, 9:1, 9:21, 10:10, 11:20, 12:3, 12:4, 12:13, 13:20, 15:12, 15:17, 16:7, 16:8, 17:2, 17:5, 17:9, 18:24, 19:3, 21:8, 21:13, 23:8, 23:10, 23:15, 23:17, 23:20, 23:22, 26:16, 27:1, 27:4, 27:12, 30:8, 30:14, 31:2, 31:3, 31:9, 31:19, 31:22, 31:25, 32:2, 32:5, 32:6, 33:17, 33:19, 36:19, 37:18, 41:14, 44:6, 45:19
**defense's** [2] - 10:1, 21:8
**deficient** [1] - 35:15
**definite** [2] - 30:4, 30:5
**delay** [2] - 17:21, 24:25
**delaying** [1] - 25:22
**depart** [2] - 38:23, 40:18
**Department** [6] - 5:12, 6:19, 6:20, 6:22, 7:4, 18:25
**described** [4] - 7:17, 7:20, 38:9, 42:13
**determination** [2] - 9:25, 26:3
**determine** [1] - 29:6

**develop** [1] - 26:12
**dialogue** [1] - 4:14
**DIETRICH** [1] - 1:20
**Dietrich** [1] - 2:12
**different** [10] - 7:1, 8:19, 8:21, 9:3, 10:13, 11:3, 22:6, 22:8, 33:14, 34:9
**difficult** [2] - 25:14, 25:23
**diplomatic** [12] - 5:8, 5:9, 5:11, 5:15, 6:1, 6:7, 6:9, 20:25, 35:5, 38:20, 43:15, 43:17
**direct** [3] - 22:7, 25:21, 26:15
**directed** [5] - 3:1, 7:25, 35:1, 35:14, 35:19
**disclose** [12] - 6:23, 16:6, 18:15, 19:11, 19:23, 23:16, 30:9, 31:2, 31:3, 32:2, 35:1, 37:21
**disclosed** [7] - 15:17, 18:22, 18:23, 19:2, 19:19, 23:13
**disclosing** [2] - 17:11, 17:21
**disclosure** [3] - 4:17, 25:10, 34:22
**disclosures** [1] - 20:10
**discoverable** [1] - 8:12
**discovery** [19] - 2:24, 3:7, 3:10, 3:23, 4:2, 4:12, 5:6, 14:15, 14:17, 15:7, 22:13, 22:16, 22:20, 22:25, 23:14, 26:17, 30:6, 30:9, 46:9
**discuss** [4] - 24:3, 24:4, 24:8, 34:6
**discussed** [1] - 14:19
**discusses** [1] - 31:24
**discussing** [1] - 24:13
**discussion** [2] - 12:13, 42:24
**discussions** [2] - 7:5, 16:17
**disparity** [1] - 25:3
**DISTRICT** [2] - 1:1, 1:1
**docket** [1] - 2:2
**document** [5] - 40:16, 42:20, 42:21, 42:22, 43:19
**documents** [28] - 6:1, 7:12, 7:16, 7:18, 7:19, 7:20, 7:22,

8:18, 9:6, 9:11, 11:7, 12:10, 12:25, 13:6, 13:8, 13:9, 13:13, 13:16, 13:25, 14:3, 14:11, 15:9, 22:18, 30:12, 30:14, 31:8, 38:11
**done** [9] - 3:7, 20:19, 23:14, 26:22, 34:6, 42:25, 43:6, 43:18, 44:17
**DONOGHUE** [1] - 1:13
**DORA** [1] - 1:11
**doublespeak** [1] - 19:16
**down** [4] - 4:24, 16:11, 19:13, 32:22
**Driscoll** [1] - 1:22
**drug** [3] - 10:15, 10:19, 10:23
**drugs** [3] - 10:16, 10:18, 10:21
**during** [2] - 5:13, 6:8

## E

**easier** [2] - 7:6, 36:3
**East** [2] - 1:14, 1:23
**EASTERN** [1] - 1:1
**efficient** [1] - 16:14
**effort** [1] - 15:7
**efforts** [1] - 30:18
**eight** [1] - 37:8
**either** [3] - 11:24, 44:10, 46:2
**electronic** [1] - 15:10
**Eleven** [1] - 1:19
**Elizabeth** [1] - 2:6
**ELIZABETH** [1] - 1:16
**email** [2] - 9:17, 26:12
**emails** [11] - 13:4, 13:11, 13:12, 15:13, 15:20, 15:25, 18:6, 24:9, 24:10, 24:11, 26:9
**Embassy** [1] - 5:13
**eminently** [1] - 30:16
**end** [5] - 5:16, 5:24, 27:19, 34:10, 46:17
**engineers** [2] - 37:11, 39:25
**English** [1] - 17:24
**enter** [1] - 29:12
**entered** [1] - 3:20
**entire** [4] - 6:1, 37:23, 38:15, 42:17
**entitled** [1] - 9:18
**espousing** [1] - 41:13
**ESQ** [7] - 1:13, 1:15, 1:16, 1:16, 1:20,

1:20, 1:21
**essence** [1] - 38:14
**essentially** [1] - 23:8
**establishes** [1] - 11:21
**estimate** [3] - 13:17, 17:3, 34:16
**eve** [2] - 34:3, 34:13
**evidence** [8] - 4:22, 5:1, 10:18, 16:10, 16:16, 24:2, 24:11
**ex** [2] - 30:8, 31:24
**exactly** [2] - 33:11, 36:24
**example** [3] - 21:4, 24:8, 37:18
**excuse** [2] - 6:11, 43:11
**execute** [1] - 11:2
**executed** [1] - 10:19
**Exhibit** [1] - 36:10
**expect** [4] - 13:16, 13:18, 13:19, 16:23
**expected** [2] - 41:2, 41:3
**expedite** [1] - 26:21
**expire** [1] - 4:6
**explain** [2] - 11:24, 30:13, 34:14
**explaining** [1] - 44:11
**extent** [3] - 8:13, 19:18, 40:13
**eyes** [5] - 8:1, 8:5, 8:9, 9:1, 12:10

## F

**facie** [4] - 9:23, 10:1, 12:6
**fact** [11] - 16:16, 38:21, 40:7, 40:9, 41:2, 41:9, 41:15, 42:2, 42:5, 43:16, 44:4
**failed** [1] - 37:21
**fairly** [2] - 40:13, 45:2
**fall** [2] - 28:1, 34:15
**false** [31] - 11:22, 34:24, 35:1, 35:6, 35:9, 35:24, 36:5, 36:25, 37:14, 37:24, 38:15, 38:19, 38:22, 38:23, 39:2, 39:4, 39:15, 40:5, 40:12, 40:14, 40:21, 41:1, 41:4, 41:5, 41:18, 42:22, 43:14, 43:18, 43:21, 44:14, 44:16
**fast** [1] - 17:5
**February** [9] - 1:8,

30:5, 35:13, 35:17, 35:22, 35:25, 36:10, 36:17, 36:23
**few** [2] - 3:16, 21:3
**figure** [1] - 25:9
**figured** [1] - 33:11
**file** [6] - 16:21, 30:8, 30:17, 30:18, 32:9, 33:12
**filed** [1] - 32:10
**files** [1] - 33:9
**filing** [2] - 31:24, 36:17
**filter** [2] - 2:7, 15:13
**final** [2] - 14:17, 26:3
**fine** [2] - 28:3, 29:16, 43:20
**finish** [2] - 26:2, 27:7
**first** [16] - 5:5, 5:8, 7:7, 8:15, 11:20, 18:1, 18:24, 19:5, 20:9, 26:16, 27:9, 29:5, 29:20, 36:8, 39:20, 41:25
**Five** [4] - 5:10, 20:16, 21:14, 21:23
**flag** [1] - 32:21
**flesh** [1] - 41:14
**floorboards** [1] - 11:5
**flurry** [1] - 2:23
**focus** [4] - 15:10, 15:21, 29:15, 29:16
**focusing** [1] - 15:7
**follow** [2] - 42:8, 44:16
**follow-up** [1] - 44:16
**follows** [1] - 40:17
**forced** [4] - 21:4, 21:18, 22:14, 22:18
**foreign** [1] - 15:8
**forth** [3] - 2:24, 11:20, 41:25
**forward** [3] - 11:21, 15:21, 16:1
**four** [7] - 3:22, 17:2, 25:4, 25:8, 25:21, 26:10, 30:7
**Four** [1] - 22:22
**frankly** [2] - 21:10, 33:16
**Franks** [19] - 7:14, 8:14, 9:12, 9:22, 10:3, 11:20, 12:5, 12:18, 13:21, 14:10, 27:2, 27:5, 27:9, 27:18, 29:6, 29:20, 46:3
**fraud** [9] - 5:11, 20:1, 20:15, 20:16, 21:20, 41:22, 42:6, 43:25
**fraudulent** [23] -

20:17, 20:21, 21:2, 35:20, 36:11, 37:21, 38:1, 38:4, 38:5, 41:6, 41:7, 41:9, 41:20, 41:23, 41:24, 42:1, 42:7, 42:13, 42:18, 42:21, 43:5, 43:19
**free** [1] - 32:7
**Friday** [1] - 28:1
**front** [1] - 34:12

## G

**G-2** [5] - 18:19, 20:25, 21:3, 21:6, 21:17
**gather** [1] - 44:24
**general** [1] - 4:11
**Giglio** [1] - 33:13
**given** [5] - 21:13, 26:17, 27:6, 29:21, 33:10
**government** [85] - 2:5, 2:7, 3:1, 3:5, 3:21, 4:2, 4:4, 4:10, 4:13, 4:21, 5:14, 7:15, 7:19, 7:25, 8:3, 8:5, 8:10, 8:24, 9:2, 9:5, 9:6, 9:11, 10:4, 11:23, 12:2, 12:11, 12:16, 13:5, 14:10, 14:20, 14:23, 15:4, 15:6, 16:11, 16:12, 16:21, 17:13, 18:4, 19:23, 20:2, 20:3, 20:10, 20:12, 23:20, 25:2, 25:6, 25:7, 25:10, 25:18, 26:1, 26:15, 27:2, 27:5, 27:6, 28:13, 30:15, 31:1, 31:19, 31:21, 32:1, 32:3, 32:20, 33:9, 33:12, 34:23, 35:1, 35:3, 35:13, 35:14, 35:25, 36:5, 36:7, 36:24, 37:5, 37:16, 39:8, 39:13, 39:17, 39:19, 40:8, 41:20, 43:7, 43:14, 44:18, 45:23
**Government** [1] - 1:13
**government's** [17] - 3:23, 8:19, 16:25, 17:20, 25:17, 27:22, 28:15, 29:19, 33:20, 36:9, 40:4, 42:4, 43:22, 44:3, 44:15, 45:3, 45:7
**Group** [1] - 40:1
**group** [1] - 19:13

**guarantee** [1] - 3:8
**guess** [1] - 11:6
**guns** [5] - 10:17, 10:20, 10:22, 10:23

**H**

**half** [1] - 29:10
**hand** [6] - 10:8, 14:1, 36:4, 36:8, 36:20
**handed** [1] - 37:19
**handing** [1] - 36:21
**happy** [2] - 4:19, 26:24
**hard** [4] - 15:20, 17:5, 32:13, 45:14
**harkened** [1] - 19:25
**harkening** [1] - 44:14
**head** [1] - 44:11
**health** [1] - 19:25
**hear** [8] - 6:13, 15:4, 17:18, 26:6, 26:25, 27:8, 42:19, 46:1
**heard** [7] - 7:23, 17:10, 24:23, 30:24, 32:19, 38:17, 42:23
**hearing** [11] - 10:3, 12:19, 20:8, 21:12, 29:7, 29:24, 43:7, 43:11, 43:13, 46:2, 46:3
**helpful** [3] - 13:24, 29:17, 29:18
**helps** [1] - 27:11
**hereby** [1] - 40:1
**hidden** [1] - 11:4
**hiding** [2] - 11:3, 44:5
**hold** [2] - 17:4, 45:5
**holders** [4] - 20:25, 21:6, 21:17, 39:10
**Holly** [1] - 1:22
**home** [1] - 44:9
**Honor** [112] - 2:4, 2:10, 3:4, 3:5, 4:4, 4:11, 5:4, 5:7, 5:20, 6:5, 6:14, 7:11, 7:24, 8:23, 9:8, 9:10, 9:20, 11:11, 11:13, 11:15, 12:12, 13:3, 13:4, 13:7, 13:11, 13:23, 14:5, 14:14, 14:17, 14:21, 15:5, 15:18, 15:24, 16:5, 16:24, 17:9, 17:16, 17:19, 18:14, 19:10, 19:21, 19:25, 20:7, 20:15, 21:15, 21:25, 22:2, 22:5, 22:13, 22:16, 22:21, 22:24, 23:5, 23:6, 23:7, 23:11, 23:24, 24:3, 24:7,

24:14, 24:19, 24:24, 25:4, 25:5, 25:10, 26:5, 26:8, 27:14, 27:17, 27:21, 27:24, 28:3, 28:6, 28:9, 28:24, 30:1, 30:19, 30:25, 31:7, 31:21, 32:8, 32:11, 33:4, 33:6, 33:22, 34:1, 34:4, 34:18, 34:21, 34:22, 36:15, 37:5, 37:17, 37:20, 38:13, 38:16, 38:17, 39:5, 41:6, 41:19, 42:9, 43:10, 43:13, 44:1, 44:21, 44:23, 45:1, 45:6, 45:16, 45:19, 45:24, 46:5
**HONORABLE** [1] - 1:11
**hope** [2] - 29:20, 32:20
**hopefully** [1] - 29:21
**horse** [3] - 9:21, 12:3, 46:11
**house** [3] - 10:15, 11:3, 11:4

**I**

**Ian** [1] - 2:4
**IAN** [1] - 1:15
**identification** [3] - 14:25, 34:23, 34:24
**identified** [6] - 18:25, 20:17, 20:20, 21:2, 35:4, 38:12
**identify** [7] - 3:11, 18:4, 21:3, 25:7, 35:8, 35:23, 36:11
**identifying** [1] - 14:20, 35:20
**identities** [1] - 23:14
**identity** [1] - 15:23
**immigration** [1] - 22:18
**important** [2] - 18:11, 18:15
**impression** [1] - 44:17
**imprimatur** [1] - 39:17
**inappropriate** [1] - 31:18
**inception** [1] - 18:16
**include** [2] - 24:10, 24:12
**included** [3] - 15:8, 18:24, 21:22
**including** [3] - 20:18, 34:7, 43:3
**inconsistent** [1] -

38:18
**incredibly** [1] - 25:15
**indeed** [2] - 19:8, 31:16
**indicate** [2] - 4:1, 6:25
**indicated** [1] - 6:16
**indictment** [6] - 5:13, 5:16, 5:20, 6:1, 18:17, 20:13
**indignation** [1] - 44:9
**individuals** [13] - 12:23, 20:17, 21:5, 24:1, 24:3, 24:5, 24:8, 24:10, 24:12, 24:21, 25:13, 39:11, 41:16
**influence** [1] - 29:10
**information** [21] - 3:2, 3:16, 9:15, 9:18, 10:7, 10:10, 10:23, 13:13, 15:10, 15:14, 21:10, 21:13, 21:16, 23:1, 26:2, 26:15, 31:4, 32:2, 35:16, 35:23, 36:1
**initial** [2] - 16:10, 19:7
**inside** [1] - 44:10
**instance** [1] - 8:15
**instead** [2] - 19:6, 43:17
**instruction** [1] - 19:12
**instructions** [1] - 34:7
**intend** [2] - 16:2, 31:2
**intends** [5] - 3:21, 4:1, 14:20, 16:12, 31:2
**intention** [3] - 19:11, 41:10, 43:16
**interacting** [1] - 16:9
**interpreter** [2] - 2:12, 2:17
**INTERPRETER** [2] - 2:18, 6:11
**Interpreter** [1] - 2:21
**investigate** [4] - 21:9, 21:10, 25:16, 30:18
**investigated** [1] - 9:2
**investigating** [2] - 9:5, 18:3
**investigation** [8] - 8:22, 9:12, 18:1, 18:2, 18:10, 18:11, 25:13, 25:24
**investigations** [3] - 8:6, 8:20, 12:22
**invitation** [5] - 35:5, 36:5, 36:24, 37:6, 37:8
**invited** [1] - 37:11, 40:1, 40:20
**involved** [4] - 15:9,

21:13, 22:12, 39:12
**involving** [1] - 32:1
**IRIZARRY** [1] - 1:11
**issuance** [4] - 5:10, 9:14, 10:11, 10:24
**issue** [12] - 4:16, 9:15, 14:16, 14:17, 14:18, 14:24, 25:1, 26:9, 32:22, 32:24, 33:7, 35:12
**issued** [4] - 11:22, 11:25, 12:8, 32:6
**issues** [4] - 4:12, 4:15, 5:6, 29:14
**item** [2] - 7:10, 7:11
**itself** [1] - 42:7

**J**

**January** [2] - 5:14, 5:21
**job** [2] - 27:7, 40:2
**John** [1] - 2:18
**JUDGE** [1] - 1:11
**Judge** [1] - 6:11
**judge** [1] - 9:25
**juncture** [1] - 31:10
**June** [5] - 29:4, 29:22, 34:6, 43:8, 45:22
**jury** [2] - 17:13, 34:7
**Justice** [1] - 6:19

**K**

**keep** [1] - 34:17
**kind** [1] - 45:9
**known** [1] - 19:3
**knows** [3] - 5:10, 11:5, 42:21

**L**

**labor** [4] - 21:4, 21:18, 22:15, 22:19
**lack** [1] - 10:18
**language** [2] - 2:17, 15:9
**large** [1] - 3:6
**last** [5] - 3:5, 3:14, 3:17, 3:18, 15:5
**Lau** [1] - 2:18
**lau** [1] - 2:20
**law** [1] - 9:22
**lawyers** [1] - 29:17
**least** [2] - 18:9, 26:22
**leave** [2] - 41:2, 44:9
**led** [1] - 9:17
**left** [1] - 16:15
**legitimacy** [1] - 39:17
**length** [1] - 13:15

**less** [1] - 13:19
**letter** [24] - 33:24, 35:4, 35:22, 35:25, 36:16, 36:24, 37:6, 37:8, 37:19, 37:23, 37:25, 38:9, 38:15, 38:19, 38:23, 39:12, 39:15, 39:16, 39:18, 40:23, 41:7, 41:9, 42:18
**letters** [9] - 35:4, 35:5, 35:9, 36:4, 36:5, 40:14, 44:25, 45:4, 45:8
**likely** [3] - 16:24, 24:10, 24:12
**limine** [20] - 16:7, 16:15, 19:6, 23:12, 24:15, 24:16, 24:18, 27:3, 27:6, 27:10, 28:14, 28:15, 29:19, 29:21, 33:10, 33:14, 33:16, 33:17, 33:21, 33:25
**lingering** [1] - 4:15
**list** [14] - 16:1, 18:7, 19:13, 20:23, 24:9, 24:12, 26:13, 26:16, 31:12, 40:20, 40:22, 40:23, 41:15
**listed** [1] - 37:7
**living** [1] - 17:24
**LLP** [1] - 1:18
**loading** [1] - 34:12
**locate** [1] - 25:14
**location** [1] - 11:1
**look** [2] - 23:18, 24:20
**looking** [6] - 19:21, 25:9, 25:19, 34:15, 36:9, 36:24
**loud** [1] - 27:11
**lying** [2] - 10:25, 12:17

**M**

**Macchiaverna** [2] - 2:6, 26:6
**MACCHIAVERNA** [2] - 1:16, 26:8
**magistrate** [3] - 9:16, 9:25, 14:8
**maintains** [1] - 20:12
**manager** [1] - 46:2
**Mandarin** [1] - 2:17
**manner** [1] - 16:14
**March** [8] - 3:20, 4:6, 5:16, 5:25, 27:20, 27:25, 28:25, 32:10
**marshals** [1] - 46:15
**material** [10] - 3:6,

3:17, 3:18, 3:20, 9:7, 9:24, 11:18, 33:13
**materials** [10] - 3:12, 3:19, 8:8, 8:11, 12:14, 12:22, 15:11, 30:7, 30:10, 31:2
**matter** [1] - 29:7
**matters** [4] - 8:21, 9:3, 9:4, 26:21
**mean** [6] - 10:25, 15:18, 18:15, 24:6, 29:16, 30:15
**means** [1] - 10:25
**mechanical** [1] - 1:25
**mechanism** [1] - 42:6
**meeting** [1] - 15:7
**mentioned** [7] - 13:20, 19:22, 20:6, 20:8, 25:10, 25:13, 33:18
**mic** [1] - 6:11
**microphone** [1] - 6:13
**might** [6] - 4:16, 10:14, 11:1, 11:2, 36:3
**mind** [1] - 34:17
**minute** [1] - 27:13
**mislead** [1] - 23:7
**misrepresenting** [1] - 43:5
**missing** [1] - 39:14
**Mission** [3] - 37:10, 38:21, 39:23
**mission** [7] - 40:8, 42:2, 42:3, 43:1, 43:16, 43:23, 44:18
**moment** [2] - 11:11, 13:2
**money** [2] - 10:16, 10:20
**monitor** [2] - 31:19, 31:22
**months** [9] - 3:14, 3:22, 15:6, 16:22, 25:5, 25:8, 25:21, 28:12, 28:17
**morning** [7] - 2:4, 2:8, 2:10, 2:14, 2:15, 2:19, 22:4
**MOSCOW** [1] - 1:16
**Moscow** [1] - 2:5
**most** [2] - 13:11, 31:16
**motion** [41] - 4:3, 7:14, 8:14, 9:12, 11:21, 12:5, 13:21, 13:22, 13:24, 14:2, 14:10, 14:12, 16:18, 26:19, 27:2, 27:3, 27:5, 27:9, 27:12, 27:19, 28:14, 28:15,

29:6, 29:19, 29:20, 29:21, 30:5, 30:9, 30:10, 30:17, 30:19, 32:9, 32:13, 32:16, 32:18, 33:14, 33:20, 46:3
**motions** [21] - 4:20, 5:3, 16:6, 16:14, 16:22, 19:6, 23:12, 24:15, 24:16, 24:18, 27:10, 29:9, 30:1, 33:10, 33:13, 33:15, 33:16, 33:17, 33:25, 34:2
**move** [3] - 15:21, 30:11, 33:6
**moved** [1] - 11:1
**MR** [136] - 2:4, 2:10, 3:4, 4:11, 5:4, 5:7, 5:20, 5:24, 6:5, 6:14, 6:16, 7:11, 7:24, 8:21, 9:10, 9:20, 11:9, 11:11, 11:13, 11:15, 12:12, 13:2, 13:6, 13:11, 13:15, 13:23, 14:5, 14:13, 14:14, 14:17, 15:5, 15:24, 16:5, 16:24, 17:8, 17:15, 17:19, 17:21, 18:14, 19:10, 19:21, 20:5, 20:14, 21:15, 21:24, 22:2, 22:5, 22:13, 22:16, 22:20, 22:24, 23:5, 23:23, 24:2, 24:6, 24:18, 24:24, 25:4, 26:5, 27:13, 27:17, 27:21, 27:24, 28:3, 28:6, 28:9, 28:16, 28:20, 28:23, 30:1, 30:4, 30:21, 30:23, 30:25, 31:7, 31:14, 31:21, 32:8, 32:11, 32:16, 32:18, 32:24, 33:4, 33:6, 33:9, 33:22, 34:1, 34:4, 34:18, 34:21, 36:15, 36:21, 37:2, 37:4, 37:15, 37:17, 37:20, 38:1, 38:4, 38:7, 38:13, 38:16, 38:17, 39:1, 39:5, 39:8, 39:15, 40:6, 40:11, 40:22, 41:5, 41:12, 41:19, 42:9, 42:12, 42:19, 43:2, 43:7, 43:10, 43:11, 43:13, 44:1, 44:4, 44:21, 44:23, 45:1, 45:3, 45:6, 45:12, 45:16, 45:19, 45:23, 45:25,

46:4, 46:9, 46:12
**MS** [1] - 26:8
**muddled** [1] - 45:9

## N

**Nachamie** [1] - 20:4
**nail** [1] - 45:13
**name** [3] - 2:16, 40:20, 40:22
**names** [10] - 19:8, 19:18, 19:20, 22:11, 23:3, 23:19, 23:21, 23:23, 23:25, 36:13
**narcotics** [1] - 10:13
**narrow** [1] - 16:11
**Nations** [1] - 39:24
**nature** [1] - 17:14
**necessary** [1] - 29:12
**need** [15] - 15:2, 15:14, 16:8, 25:24, 26:24, 27:23, 28:4, 28:14, 29:5, 29:7, 29:8, 29:15, 30:11, 46:2, 46:10
**needing** [1] - 42:5
**needs** [1] - 15:16
**never** [1] - 17:4
**new** [1] - 16:16
**NEW** [1] - 1:1
**New** [4] - 1:5, 1:15, 1:19, 1:24
**next** [2] - 26:9, 40:15
**Nicholas** [1] - 2:5
**NICHOLAS** [1] - 1:16
**nonetheless** [1] - 10:22
**note** [1] - 4:4
**noted** [2] - 16:8, 37:6
**noting** [1] - 35:13
**November** [8] - 5:14, 5:21, 5:25, 35:4, 36:12, 36:16, 36:23, 37:7
**number** [10] - 2:2, 3:13, 9:3, 13:4, 23:19, 23:21, 24:9, 25:17, 36:11, 36:14
**numerous** [1] - 35:6
**NY** [1] - 1:19

## O

**o'clock** [1] - 45:22
**object** [5] - 17:21, 24:24, 30:15, 31:5, 43:10
**objecting** [2] - 44:2, 44:4
**objection** [1] - 31:8
**obtain** [2] - 7:6, 39:10
**obtained** [2] - 11:19, 39:16
**obtaining** [1] - 39:12
**obvious** [2] - 17:25, 30:11
**obviously** [4] - 4:7, 16:19, 29:6, 29:15
**October** [5] - 14:22, 25:5, 34:17, 35:1, 36:3
**OF** [3] - 1:1, 1:3, 1:6
**offer** [3] - 4:5, 4:8, 25:19
**offered** [1] - 25:18
**officer** [1] - 10:25
**official** [2] - 39:17, 42:15
**once** [3] - 4:23, 25:12, 29:23
**one** [20] - 11:11, 12:19, 13:8, 13:9, 14:17, 27:13, 29:10, 30:4, 30:5, 30:21, 33:7, 36:4, 37:3, 39:21, 40:12, 41:13, 45:16
**One** [2] - 22:11
**ones** [1] - 26:23
**ongoing** [1] - 12:23
**open** [1] - 14:24
**operating** [1] - 46:6
**opportunity** [1] - 18:9
**oppose** [1] - 30:17
**opposed** [3] - 34:12, 42:15, 44:18
**option** [1] - 31:24
**oral** [5] - 29:7, 29:8, 29:9, 29:12, 46:2
**order** [19] - 3:19, 3:22, 8:9, 26:3, 29:12, 29:13, 29:24, 30:6, 30:7, 30:8, 30:25, 31:23, 31:24, 32:4, 32:6, 35:14, 35:18, 36:3, 41:16
**ordered** [1] - 34:25
**ordering** [1] - 46:7
**original** [1] - 36:2
**otherwise** [1] - 8:11
**outside** [2] - 13:17,

17:1
**own** [4] - 6:21, 18:1, 18:2, 44:10

## P

**pack** [1] - 44:8
**page** [3] - 13:9, 44:19, 44:20
**pages** [2] - 13:9, 13:17
**papers** [2] - 29:5, 32:13
**paragraph** [6] - 30:7, 36:11, 37:8, 38:24, 39:21, 41:25
**paragraphs** [3] - 8:4, 8:9
**park** [1] - 17:7
**part** [6] - 7:17, 9:16, 10:3, 16:7, 32:6, 39:4
**parte** [2] - 30:8, 31:24
**particular** [7] - 5:11, 30:7, 35:10, 35:24, 37:3, 39:7
**particularly** [2] - 15:1, 29:14
**particulars** [14] - 3:1, 4:16, 14:18, 20:11, 20:14, 20:19, 32:25, 33:1, 34:20, 35:3, 35:7, 35:15, 36:12, 37:7
**parties** [1] - 30:10
**Passover** [1] - 28:1
**passports** [1] - 22:18
**pause** [3] - 11:12, 28:8, 45:18
**Pause** [1] - 27:16
**people** [9] - 10:16, 11:8, 17:23, 19:20, 23:3, 25:17, 40:20, 40:23, 41:2
**People's** [1] - 39:24
**people's** [1] - 11:10
**perfect** [1] - 27:21
**perhaps** [4] - 10:18, 26:21, 26:25, 32:18
**period** [9] - 5:14, 5:16, 5:18, 5:20, 5:23, 5:24, 6:2, 6:9, 39:7
**permanent** [1] - 43:23
**Permanent** [3] - 37:10, 38:21, 39:23
**permission** [4] - 6:23, 24:14, 32:1, 33:12
**permits** [1] - 30:8
**permitted** [2] - 8:3, 12:21
**permitting** [1] - 8:24

**pertain** [1] - 35:20
**pieces** [2] - 3:9, 3:16
**place** [1] - 11:3
**plan** [2] - 13:23, 17:8
**planning** [5] - 4:20, 17:7, 23:25, 24:20, 31:9
**Plaza** [2] - 1:14, 1:23
**plea** [1] - 4:5
**point** [13] - 3:11, 3:22, 3:25, 4:25, 14:3, 14:5, 14:21, 32:19, 32:21, 39:14, 41:10, 41:13, 42:17
**pointed** [1] - 39:22
**portions** [2] - 8:1, 8:24
**poses** [1] - 9:11
**position** [11] - 8:19, 16:21, 31:1, 31:4, 40:4, 40:15, 42:18, 43:22, 44:15, 45:3, 45:8
**possibility** [1] - 33:18
**possible** [2] - 24:6, 24:7
**potential** [7] - 15:15, 16:18, 17:2, 30:4, 30:12, 32:16, 32:21
**power** [1] - 18:20
**PRC** [4] - 38:9, 42:2, 42:3, 43:3
**precisely** [1] - 31:25
**premature** [1] - 14:24
**prep** [3] - 30:11, 32:4, 37:11
**preparation** [2] - 37:12, 40:2
**prepare** [2] - 15:3, 16:8
**prescribes** [1] - 32:4
**present** [3] - 2:11, 18:7, 18:8
**presumably** [1] - 19:20
**presuppose** [1] - 19:7
**pretrial** [1] - 16:21
**preview** [1] - 23:8
**previously** [3] - 8:2, 19:22, 36:2
**prima** [4] - 9:23, 10:1, 12:5
**private** [9] - 18:21, 38:8, 38:22, 40:10, 42:5, 42:16, 43:17, 43:22, 44:19
**probable** [6] - 7:18, 9:13, 9:16, 9:25, 10:11, 10:24
**problem** [5] - 12:9, 36:4, 36:6, 37:2,

37:4
**problems** [2] - 18:8
**procedure** [1] - 34:9
**procedures** [1] - 34:7
**proceed** [1] - 4:8
**Proceedings** [1] - 1:25
**proceedings** [2] - 11:12, 46:17
**process** [2] - 15:17, 15:19
**produce** [3] - 4:25, 7:19, 26:10
**produced** [4] - 1:25, 6:2, 6:9, 7:2
**producing** [1] - 3:15
**product** [1] - 32:3
**production** [2] - 8:14, 14:22
**productions** [2] - 3:6, 18:24
**project** [4] - 37:10, 39:23, 43:22
**projects** [1] - 18:21
**proof** [4] - 23:17, 24:20, 25:18, 25:20
**property** [9] - 6:20, 38:20, 38:22, 40:10, 42:5, 43:15, 43:17, 44:19
**proposed** [1] - 17:10
**prosecution** [5] - 2:5, 15:12, 15:16, 15:19, 26:10
**PROSKAUER** [1] - 1:18
**protections** [2] - 12:21, 30:6
**protective** [4] - 3:19, 30:5, 31:23, 32:4
**prove** [10] - 14:20, 16:2, 16:12, 19:24, 20:7, 24:1, 24:20, 25:8, 25:11, 41:22
**proved** [1] - 10:8
**provide** [10] - 3:1, 6:6, 8:5, 12:21, 16:7, 31:4, 32:13, 35:15, 35:23, 39:17
**provided** [7] - 3:3, 4:5, 5:15, 9:16, 31:3, 34:23, 36:2
**provides** [2] - 10:4, 30:6
**public** [1] - 38:8
**purpose** [5] - 11:19, 12:18, 37:22, 38:7, 41:24
**purposes** [1] - 17:7
**pursuant** [2] - 3:21,

3:24
**pushback** [1] - 26:24
**put** [8] - 11:21, 15:24, 16:1, 20:2, 27:25, 29:3, 30:14, 33:19
**puts** [1] - 11:20
**putting** [2] - 9:21, 12:3

---

## Q

**quantify** [1] - 23:21
**questions** [1] - 3:10
**quite** [1] - 4:14
**quoting** [1] - 35:19

---

## R

**raise** [3] - 4:15, 4:17, 33:7
**rather** [1] - 43:23
**reach** [1] - 6:22
**reads** [1] - 40:16
**ready** [2] - 17:9, 31:22
**real** [2] - 37:22, 38:7
**really** [5] - 9:14, 13:18, 36:1, 36:6, 39:21
**reason** [5] - 12:2, 17:22, 18:3, 20:6, 31:23
**reasonable** [3] - 17:3, 20:2, 30:16
**reasons** [2] - 17:25, 30:11
**received** [1] - 5:22
**reciprocal** [1] - 4:2
**reckless** [4] - 10:1, 11:22, 12:6, 12:7
**record** [2] - 2:16, 43:9
**recorded** [1] - 1:25
**recording** [2] - 10:15, 10:17
**records** [5] - 10:19, 10:23, 13:5, 13:12, 18:25
**recover** [1] - 10:21
**recovered** [1] - 10:22
**redact** [1] - 8:24
**redacted** [2] - 8:2, 12:1
**reference** [4] - 31:24, 42:12, 43:4, 44:14
**referenced** [5] - 7:12, 7:16, 8:8, 12:14, 36:16
**referencing** [1] - 42:25
**referring** [1] - 19:12
**refers** [1] - 40:22
**refused** [2] - 7:21, 35:11
**regardless** [2] - 4:8,

10:12
**regime** [1] - 11:20
**reiterating** [1] - 42:14
**relate** [10] - 8:6, 8:19, 8:21, 9:11, 11:7, 11:8, 12:22, 13:25, 24:21
**related** [4] - 5:9, 8:6, 12:24, 20:15
**relates** [5] - 5:8, 7:11, 9:13, 30:5, 35:25
**relating** [2] - 20:17, 33:13
**relative** [1] - 13:14
**relatively** [3] - 13:3, 13:12, 13:13
**relevance** [1] - 15:15
**relevant** [10] - 7:10, 10:8, 10:24, 12:11, 12:14, 14:1, 24:17
**remaining** [1] - 5:5
**remember** [1] - 32:12
**renewed** [1] - 7:5
**renovation** [2] - 37:9, 39:23
**repackages** [1] - 36:1
**reply** [3] - 28:5, 28:11, 28:22
**Reporter** [2] - 1:22, 1:23
**representations** [2] - 14:7, 37:9
**Republic** [1] - 39:24
**request** [3] - 6:7, 30:16, 37:9
**requested** [4] - 8:18, 34:25, 35:16, 39:22
**requests** [1] - 4:13
**resolve** [1] - 4:12
**resources** [1] - 26:18
**respect** [7] - 2:25, 20:9, 24:21, 29:19, 32:12, 33:20, 35:10, 38:11, 45:8
**respond** [1] - 9:19
**responded** [1] - 3:13
**response** [5] - 2:24, 27:22, 28:19, 35:22, 36:2
**rest** [2] - 38:23, 40:16
**result** [1] - 43:19
**reveal** [1] - 32:3
**review** [7] - 14:11, 15:8, 15:9, 15:15, 26:9, 26:12, 31:25
**reviewed** [1] - 7:13
**RICHARD** [1] - 1:13
**Richardson** [10] - 2:5, 4:13, 6:4, 17:10, 18:5, 18:13, 28:22,

38:17, 39:3, 44:8
**RICHARDSON** [75] - 1:15, 2:4, 3:4, 6:5, 6:14, 6:16, 7:24, 8:21, 9:20, 11:9, 11:11, 11:13, 11:15, 12:12, 13:2, 13:11, 13:15, 14:14, 15:5, 15:24, 16:5, 16:24, 17:15, 18:14, 19:10, 20:14, 21:15, 21:24, 22:2, 22:5, 22:13, 22:16, 22:20, 22:24, 23:5, 23:23, 24:2, 24:6, 24:18, 26:5, 27:24, 28:3, 28:16, 28:23, 30:25, 31:21, 33:6, 33:9, 34:4, 36:15, 36:21, 37:17, 37:20, 38:1, 38:4, 38:7, 38:13, 38:16, 39:5, 39:8, 39:15, 40:6, 40:11, 40:22, 41:5, 41:19, 42:9, 42:12, 43:10, 44:1, 44:4, 44:21, 45:1, 45:12, 45:23
**righteous** [1] - 44:9
**Rilin** [1] - 40:1
**road** [1] - 32:22
**ROBERT** [1] - 1:20
**Robert** [1] - 2:10
**rolling** [1] - 26:10
**root** [1] - 36:6
**ROSE** [1] - 1:18
**route** [1] - 32:4
**Rule** [4] - 3:7, 3:23, 8:11, 9:7

---

## S

**sample** [1] - 36:24
**satisfy** [1] - 14:4
**saw** [1] - 10:15
**schedule** [13] - 3:24, 4:3, 5:2, 16:7, 16:19, 17:20, 26:19, 27:1, 27:10, 29:21, 33:14, 33:21, 40:17
**scheduling** [6] - 4:19, 4:21, 17:10, 29:12, 29:13, 46:4
**search** [7] - 7:12, 7:13, 7:16, 7:20, 8:1, 9:17, 11:17
**searching** [1] - 11:18
**second** [7] - 32:15, 38:24, 42:9, 42:10, 42:11, 43:4, 45:16
**see** [7] - 9:18, 12:16,

15:25, 16:9, 18:3, 29:5, 30:13
**seek** [2] - 31:25, 41:15
**seeking** [1] - 30:9
**seem** [1] - 23:3
**self** [1] - 44:9
**self-righteous** [1] - 44:9
**sense** [1] - 27:8
**sensitive** [2] - 30:6, 30:9
**sentence** [4] - 37:3, 39:21, 40:15, 43:4
**sentences** [1] - 38:3
**separate** [1] - 27:10
**set** [14] - 3:19, 3:24, 4:3, 4:24, 6:18, 7:5, 11:20, 14:21, 25:6, 26:19, 29:4, 41:25, 45:21, 46:5
**setting** [2] - 15:2, 16:18
**seven** [1] - 3:6
**several** [2] - 7:15, 14:19
**shifting** [1] - 11:19
**shore** [1] - 10:10
**short** [4] - 13:12, 13:13, 13:14, 37:25
**show** [6] - 8:15, 10:20, 30:12, 36:7, 36:19, 39:9
**showing** [4] - 7:18, 9:17, 9:23, 10:2
**sic** [1] - 12:17
**similar** [2] - 44:25, 45:2
**simply** [1] - 15:25
**simultaneous** [2] - 27:1, 33:20
**sit** [1] - 13:16
**slight** [1] - 13:3
**small** [1] - 1:20
**smuggling** [3] - 21:5, 21:19, 22:22
**SNELL** [1] - 1:20
**Snell** [2] - 2:12, 16:18
**solid** [1] - 28:17
**sometime** [1] - 34:17
**sometimes** [3] - 11:16, 27:11, 29:11
**somewhere** [3] - 11:4, 34:16
**sorry** [1] - 29:2
**sort** [3] - 15:10, 29:16, 29:18
**sorts** [1] - 37:8
**sounds** [2] - 10:6, 15:2
**speaking** [2] - 6:12,

17:1
**specific** [7] - 20:17, 20:20, 24:8, 34:23, 34:24, 41:5, 41:22
**specifically** [3] - 12:13, 35:8, 37:7
**split** [1] - 14:9
**Square** [1] - 1:19
**stake** [1] - 44:12
**start** [3] - 18:9, 26:20, 27:9
**started** [1] - 26:19
**State** [5] - 5:12, 6:20, 6:22, 7:4, 18:25
**state** [1] - 2:3
**statement** [35] - 35:24, 36:11, 36:25, 37:24, 38:2, 38:4, 38:6, 38:15, 38:22, 39:4, 40:5, 40:13, 40:14, 40:21, 40:24, 41:1, 41:4, 41:6, 41:7, 41:18, 42:1, 42:7, 42:8, 42:9, 42:11, 42:15, 42:22, 43:5, 43:14, 43:18, 43:21, 44:15, 44:16
**statements** [17] - 8:16, 9:24, 11:23, 11:24, 11:25, 12:6, 20:18, 20:22, 21:2, 34:24, 35:2, 35:6, 35:9, 35:20, 37:21, 38:18, 39:2
**STATES** [2] - 1:1, 1:3
**states** [1] - 6:20
**States** [7] - 1:14, 2:2, 18:21, 21:6, 39:12, 40:2, 40:18
**status** [4] - 2:1, 2:22, 3:5, 29:3
**STATUS** [1] - 1:6
**stay** [2] - 39:1, 40:18
**stenography** [1] - 1:25
**step** [1] - 18:11
**still** [7] - 3:17, 11:25, 15:11, 15:17, 15:19, 26:1, 44:17
**stipulation** [1] - 9:2
**stop** [2] - 39:20, 46:10
**straight** [2] - 22:1, 22:4
**strengthen** [1] - 13:24
**strong** [1] - 31:7
**struggling** [1] - 37:5
**subject** [7] - 3:18, 3:19, 6:21, 8:9, 16:13, 20:12, 25:18
**subjects** [1] - 21:19
**submission** [2] - 36:9,

36:23
**submit** [3] - 27:2, 27:4
**submits** [1] - 14:10
**submitted** [2] - 21:1, 27:19
**subset** [1] - 21:23
**substantial** [1] - 17:25
**substantially** [2] - 3:8, 3:23
**suggest** [1] - 16:5
**suggested** [2] - 23:11, 28:13
**suggesting** [1] - 44:5
**summarized** [2] - 7:17, 7:20
**supplement** [2] - 35:15, 35:19
**supplemental** [5] - 32:25, 33:3, 34:20, 34:22, 36:1
**supposed** [2] - 12:4, 36:25
**suspect** [1] - 27:3
**swear** [1] - 11:17
**swore** [1] - 12:17
**sworn** [2] - 2:20, 2:21

# T

**table** [1] - 2:6
**tackle** [1] - 29:20
**tail** [2] - 5:15, 5:24
**taint** [3] - 26:2, 26:7, 27:6
**talks** [1] - 42:20
**targeted** [1] - 25:12
**team** [10] - 2:6, 2:7, 15:12, 15:13, 15:16, 15:19, 17:5, 26:2, 26:7, 27:7
**ten** [1] - 45:22
**term** [1] - 13:14
**terms** [2] - 23:19, 46:4
**testifying** [1] - 33:11
**testimony** [1] - 10:14
**THE** [135] - 2:1, 2:8, 2:14, 2:18, 2:19, 2:22, 4:9, 5:3, 5:5, 5:18, 5:22, 6:3, 6:11, 6:12, 6:15, 7:10, 7:23, 8:17, 9:9, 9:19, 10:6, 11:10, 11:14, 12:9, 12:25, 13:8, 13:14, 13:20, 13:25, 14:9, 14:15, 15:4, 15:22, 16:3, 16:23, 17:4, 17:12, 17:17, 17:20, 18:13, 19:5, 19:15, 20:4, 20:9, 21:11, 21:22, 22:1,

22:3, 22:10, 22:14, 22:17, 22:22, 23:1, 23:19, 23:25, 24:4, 24:16, 24:23, 25:2, 25:25, 26:6, 26:14, 27:15, 27:18, 27:22, 27:25, 28:4, 28:7, 28:10, 28:18, 28:21, 28:25, 29:1, 29:2, 30:3, 30:20, 30:22, 30:24, 31:6, 31:12, 32:10, 32:12, 32:17, 32:23, 33:2, 33:5, 33:8, 33:15, 33:24, 34:2, 34:5, 34:19, 36:7, 36:19, 36:22, 37:3, 37:13, 37:16, 37:18, 37:23, 38:3, 38:5, 38:10, 38:14, 38:25, 39:4, 39:6, 39:14, 39:20, 40:7, 40:12, 41:1, 41:8, 41:13, 41:24, 42:10, 42:17, 42:23, 43:3, 43:12, 43:25, 44:2, 44:8, 44:22, 44:24, 45:2, 45:5, 45:11, 45:13, 45:17, 45:21, 46:1, 46:8, 46:10, 46:14
**theory** [2] - 42:5, 44:3
**they've** [4] - 21:9, 21:10, 25:8, 45:11
**thinking** [1] - 26:21
**third** [1] - 30:10
**thousand** [1] - 13:9
**Three** [1] - 22:17
**three** [5] - 5:7, 16:25, 27:24, 39:2, 40:19
**throughout** [1] - 26:11
**throw** [1] - 26:22
**thrown** [1] - 10:7
**today** [5] - 16:17, 30:22, 32:25, 35:7, 45:15
**took** [1] - 25:16
**total** [2] - 23:19, 23:21
**towards** [1] - 4:8
**transactions** [3] - 10:15, 10:17, 10:20
**TRANSCRIPT** [1] - 1:6
**transcript** [1] - 1:25
**Transcript** [1] - 1:25
**trap** [1] - 11:4
**trial** [40] - 3:22, 4:3, 4:8, 4:21, 4:23, 4:24, 5:1, 14:21, 15:2, 15:3, 16:10, 16:13, 16:20, 16:23, 17:3, 19:24, 20:7, 23:9,

23:10, 23:17, 24:2, 24:11, 24:13, 24:19, 25:8, 25:18, 29:4, 30:11, 31:23, 32:3, 33:10, 33:12, 33:13, 34:3, 34:6, 34:7, 34:15, 46:5
**troubling** [1] - 29:14
**truth** [2] - 10:1, 12:7
**try** [2] - 30:17, 31:19
**trying** [9] - 16:15, 22:6, 22:7, 23:7, 31:22, 37:5, 39:9, 41:14, 43:8
**tune** [1] - 29:16
**turn** [7] - 3:12, 3:21, 4:1, 4:24, 7:8, 26:12, 26:15
**turned** [14] - 3:2, 3:18, 6:18, 9:6, 15:11, 15:15, 21:7, 21:16, 22:11, 23:1, 23:4, 23:13, 23:20, 23:21
**turning** [1] - 8:12
**turns** [1] - 4:21
**twice** [1] - 29:24
**two** [16] - 5:7, 6:19, 8:4, 16:22, 16:25, 18:7, 27:17, 28:9, 28:10, 28:12, 28:17, 28:20, 30:1, 32:13, 38:3, 38:18
**Two** [1] - 22:14

# U

**U.S** [4] - 1:4, 1:17, 5:13, 39:1
**ultimate** [2] - 10:24, 11:6
**ultimately** [3] - 10:8, 10:12, 10:18
**UN** [1] - 38:21
**under** [4] - 8:5, 8:22, 9:1, 9:22
**underlying** [1] - 9:6
**understood** [5] - 6:8, 6:17, 6:24, 8:17, 34:4
**undertake** [1] - 40:2
**undertaking** [2] - 25:16, 41:22
**UNITED** [2] - 1:1, 1:3
**United** [8] - 1:14, 2:2, 18:21, 21:6, 39:11, 39:24, 40:1, 40:18
**universe** [4] - 18:23, 19:3, 20:11, 21:7
**up** [14] - 10:11, 14:21, 19:14, 19:24, 20:7,

25:8, 25:11, 25:19, 36:4, 36:8, 36:20, 37:19, 44:8, 44:16
**useful** [1] - 3:25

## V

**various** [1] - 35:9
**versus** [1] - 2:2
**viable** [4] - 7:14, 8:14, 12:5, 13:21
**victim** [3] - 16:15, 18:7, 21:16
**victims** [44] - 14:20, 14:25, 15:23, 16:1, 16:6, 16:9, 16:12, 17:11, 17:22, 17:23, 18:2, 18:5, 18:10, 18:16, 18:18, 18:22, 18:23, 19:1, 19:2, 19:8, 19:11, 19:18, 19:23, 20:6, 20:12, 20:24, 21:4, 21:7, 21:13, 21:17, 21:18, 21:20, 22:11, 23:4, 23:9, 23:14, 24:13, 25:7, 25:11, 25:24, 26:13, 31:15, 31:18
**view** [5] - 3:7, 3:22, 18:18, 41:20, 42:24
**visa** [26] - 5:11, 18:24, 19:19, 20:15, 20:16, 20:20, 20:21, 20:25, 21:6, 21:17, 21:20, 35:2, 35:10, 35:21, 36:13, 36:14, 39:6, 39:10, 39:18, 40:25, 41:22, 41:23, 41:24
**visas** [10] - 5:10, 18:19, 21:3, 39:7, 39:11, 40:19, 41:3, 41:17, 42:5
**volume** [2] - 12:25, 13:10

## W

**wait** [2] - 19:6, 27:6
**waiting** [2] - 26:1, 34:12
**warrant** [18] - 7:12, 7:13, 7:16, 7:20, 8:2, 9:14, 9:24, 10:7, 10:11, 10:19, 10:24, 11:2, 11:17, 11:19, 11:22, 11:25, 12:7, 12:14
**week** [7] - 17:2, 17:8, 27:20, 28:23, 30:19, 30:21, 32:9

**weeks** [8] - 16:25, 17:2, 26:10, 27:17, 27:24, 28:9, 28:10, 28:20
**whole** [8] - 12:18, 36:25, 37:13, 38:5, 39:15, 41:7, 41:9, 43:19
**wholly** [1] - 31:18
**willing** [1] - 31:3
**winnow** [1] - 19:13
**wish** [4] - 7:23, 9:19, 24:23, 30:24
**wishes** [1] - 33:18
**withheld** [1] - 19:9
**withhold** [2] - 4:23, 8:3
**witnesses** [8] - 26:13, 26:17, 30:12, 31:10, 31:13, 31:16, 31:17
**words** [2] - 27:1, 42:24
**workers** [7] - 18:19, 25:1, 37:22, 38:8, 39:25, 43:14
**works** [3] - 5:2, 33:21, 45:23

## Y

**year** [1] - 5:16
**years** [3] - 18:4, 39:2, 40:19
**yesterday** [1] - 4:5
**YORK** [1] - 1:1
**York** [4] - 1:5, 1:15, 1:19, 1:24

## Z

**Zhong** [6] - 2:2, 2:11, 2:15, 11:7, 11:8, 14:6
**ZHONG** [1] - 1:8
**Zhong's** [2] - 9:17, 18:6