UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

                                        Index No. 16-CR-614 (DLI)

      v.

DAN ZHONG and LANDONG WANG,

                Defendants.

-----------------------------------------------------------x

## DEFENDANT DAN ZHONG'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

Robert J. Cleary
Dietrich L. Snell
Brittany N. Benavidez
Samantha Springer
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900

*Attorneys for Defendant Dan Zhong*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ...........................................................................................................4

I.    PRE-INDICTMENT EVIDENCE OF MR. ZHONG'S ALLEGED
      PARTICIPATION IN THE FORCED LABOR SCHEME IS INADMISSIBLE ...............4

      A.    Mr. Zhong Has Residual Diplomatic Immunity For Acts Pre-Dating 2010 ...........4

      B.    Evidence Related To Mr. Zhong's Alleged Conduct Before November 2009 Is
            Not Direct Evidence Of The Charged Forced Labor Scheme .................................5

      C.    The Proffered Evidence Is Not Admissible Under Rule 404(b) .............................7

      D.    The Proffered Evidence Should Be Excluded Under Rule 403 ..............................9

II.   THE COURT SHOULD DEFER RULING ON THE GOVERNMENT'S
      MOTION TO ADMIT "PRC LEGAL DOCUMENTS" ....................................................10

III.  EVIDENCE AND ARGUMENT REGARDING PRC LAW ARE ADMISSIBLE ........12

IV.   THE GOVERNMENT'S WITNESSES SHOULD NOT BE PERMITTED TO
      TESTIFY USING PSEUDONYMS .................................................................................15

V.    THE GOVERNMENT PROVIDES NO BASIS TO ADMIT DOCUMENTS
      ALLEGEDLY IN THE POSSESSION OF WORKERS ...................................................19

VI.   THE GOVERNMENT PROVIDES NO BASIS TO ADMIT EVIDENCE OF
      OBSTRUCTIVE CONDUCT ...........................................................................................21

VII.  THE MOTION TO PERMIT TESTIMONY ABOUT THE REDFIELD
      AFFIDAVIT SHOULD BE DENIED AS PREMATURE ...............................................23

VIII. THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO
      PRECLUDE DEFENSE EXHIBITS NOT PRODUCED TO THE
      GOVERNMENT FOUR MONTHS BEFORE TRIAL ....................................................23

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Butler v. United States,*
   992 F. Supp. 2d 165 (E.D.N.Y. 2014) ................................................15

*Doe No. 2 v. Kolko,*
   242 F.R.D. 193 (E.D.N.Y. 2006) .......................................................18

*Gonzales v. Digital Equipment Corp.,*
   8 F. Supp. 2d 194 (E.D.N.Y. 1998) ...................................................11

*S.E.C. v. Boock,*
   2011 WL 3792819 (S.D.N.Y. Aug. 25, 2011) ...................................11

*Smith v. Illinois,*
   390 U.S. 129 (1986)............................................................................17

*Swarna v. Al-Awadi,*
   607 F. Supp. 2d 509 (S.D.N.Y. 2009) .................................................4

*United States v. Aboumoussallem,*
   726 F.2d 906 (2d Cir. 1984)...............................................................10

*United States v. Ahmed,*
   2016 WL 3647686 (E.D.N.Y. July 1, 2016) ........................................6

*United States v. Bourne,*
   2011 WL 4458846 (E.D.N.Y. Sept. 23, 2011) ...................................10

*United States v. Carboni,*
   204 F.3d 39, 44 (2d Cir. 2000)............................................................6

*United States v. Celis,*
   608 F.3d 818 (D.C. Cir. 2010)...........................................................18

*United States v. Chalmers,*
   474 F. Supp. 2d 555 (S.D.N.Y. 2007).................................................15

*United States v. Curley,*
   639 F.3d 50 (2d Cir. 2011).................................................................10

*United States v. Dolney,*
   2005 WL 2129169 (E.D.N.Y. Sept. 1, 2005) ..................................6, 7

*United States v. El-Mezain,*
　　664 F.3d 467 (5th Cir. 2011) ............................................................17

*United States v. Garcia,*
　　291 F.3d 127 (2d Cir. 2002)...............................................................8

*United States v. Gasperini,*
　　2017 WL 3140366 (E.D.N.Y. July 21, 2017)...................................20

*United States v. Gordon,*
　　987 F.2d 902 (2d Cir. 1993).................................................................8

*United States v. Gutierrez de Lopez,*
　　761 F.3d 1123 (10th Cir. 2014) .........................................................17

*United States v. Hatfield,*
　　685 F. Supp. 2d 320 (E.D.N.Y. 2010) .............................................6, 9

*United States v. Kahale,*
　　789 F. Supp. 2d 359 (E.D.N.Y. 2009) ................................................9

*United States v. Khan,*
　　591 F. Supp. 2d 202 (E.D.N.Y. 2008) ................................................9

*United States v. Khobragade,*
　　15 F. Supp. 3d 383 (S.D.N.Y. 2014)...................................................4

*United States v. Malpiedi,*
　　62 F.3d 465 (2d Cir. 1995).................................................................23

*United States v. McCallum,*
　　584 F.3d 471 (2d Cir. 2009)...............................................................9

*United States v. Midyett,*
　　603 F. Supp. 2d 450 (E.D.N.Y. 2009) ................................................9

*United States v. Mollica,*
　　849 F.2d 723 (2d Cir. 1988).................................................................7

*United States v. Monaco,*
　　194 F.3d 381 (2d Cir. 1999)...............................................................14

*United States v. Napout,*
　　2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ..............................15, 20

*United States v. Naseer,*
　　No. 10-CR-19 (S-4) (E.D.N.Y. Jan. 26, 2015) .................................18

*United States v. Palermo,*
   410 F.2d 468 (7th Cir. 1969) ............................................................................18

*United States v. Paris,*
   2007 WL 1484974 (D. Conn. May 18, 2007)...................................................18

*United States v. Prevezon Holdings, Ltd.,*
   319 F.R.D. 459 (S.D.N.Y. 2017) ......................................................................11

*United States v. Ramos-Cruz,*
   667 F.3d 487 (4th Cir. 2012) ............................................................................17

*United States v. Rivera,*
   2015 WL 1875658 (E.D.N.Y. Apr. 22, 2015) ...................................................8

*United States v. Robinson,*
   635 F.2d 981 (2d Cir. 1980) .............................................................................23

*United States v. Sliker,*
   751 F.2d 477 (2d Cir.1984)...............................................................................11

*United States v. Triumph Capital Grp., Inc.,*
   544 F.3d 149 (2d Cir. 2008)..............................................................................22

*United States v. Wozniak,*
   126 F.3d 105 (2d Cir. 1997)................................................................................7

*United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC,*
   2018 WL 1517691 (E.D.N.Y. Mar. 28, 2018) .................................................21

**STATUTES**

18 U.S.C. § 1589 ....................................................................................................13, 14

22 U.S.C. § 254d ...........................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Crim. P. 16(b)(1)(A)........................................................................................24

Fed. R. Evid. 401 ....................................................................................................14, 21

Fed. R. Evid. 402 ..........................................................................................................14

Fed. R. Evid. 403 .................................................................................................*passim*

Fed. R. Evid. 404(b)............................................................................................*passim*

Fed. R. Evid. 801(d)(2)(E)............................................................................................20

Fed. R. Evid. 803(6)................................................................................................20, 21

Fed. R. Evid. 901(a)........................................................................................................11

Fed. R. Evid. 902(3)........................................................................................................11

U.S. Const. amend. V.........................................................................................................1

U.S. Const. amend. VI ............................................................................................. *passim*

U.S. Const. amend. XIV .................................................................................................17

Defendant Dan Zhong respectfully submits this memorandum of law in opposition to the government's motions *in limine*.

## PRELIMINARY STATEMENT

The government's motions *in limine* amount to a multi-faceted prescription for reversible error. With breathtaking disregard for fundamental constitutional protections, the government would have this Court abrogate Mr. Zhong's rights under the Fifth and Sixth Amendments to answer only those charges presented to a grand jury; to receive due process of law; to craft a defense to the charges against him with the effective assistance of counsel; and to confront adverse witnesses at trial. In similarly cavalier fashion, the government seeks to deny Mr. Zhong, a former accredited diplomat, the residual immunity to which he is entitled under the Vienna Convention and federal law, immunity that until now, the government itself has acknowledged in its own pleadings. Compounding the prejudice inherent in the foregoing requests, the government also asks the Court to receive otherwise inadmissible evidence by dispensing with the authentication requirements established by the Federal Rules of Evidence.

The government makes no cognizable factual showing to support its effort to gut Mr. Zhong's rights as a criminal defendant. Far from it. Instead of offering specific proof and documentary exhibits, the government relies on general summaries and oblique descriptions of the evidence at issue, as well as its own rank speculation, all of which are argumentatively inserted into the government's memorandum, as if the factual accuracy of these assertions already were established. In this fashion, the government obscures the evidence it proposes to introduce, as well as the nature of its case, thereby frustrating the defense's efforts to conduct a meaningful investigation and prepare for trial.

For example, without citing any factual basis, the government asserts that Mr. Zhong acted "as a principal" of "a forced labor scheme" starting in 2001 – *nearly a decade before the January 1, 2010 starting point for all five counts in the Indictment* – and at a time when, by the government's own admission, Mr. Zhong "was an accredited diplomat." (Gov't Mem. at 2). The government never identifies, or even describes to any substantial degree, the "multiple victim witnesses" and "confidential sources" whom it says it intends to call as trial witnesses. Nonetheless, it asks the Court to accept general, bare bones and question-begging descriptions of these individuals' putative testimony, and to rule their testimony admissible despite the vast temporal gulf between the events the witnesses supposedly would describe and the beginning of the Indictment period.

Employing the same "hide-the-ball" technique, the government seeks critical relief with respect to certain documents that – at least according to the government's description of them – go to the core of this case; yet the government fails to permit either the Court or the defense to see those documents. Most saliently, the government asks the Court to admit into evidence, sight unseen, generically described "PRC legal documents such as forfeiture judgments and underlying employment contracts" (*id*. at 18), documents of obvious fundamental relevance to the forced labor charges allegedly perpetrated "by means of . . . the abuse and threatened abuse of law and legal process." (Dkt. No. 20 ¶¶ 1-2).

The government's strategy of continuing to withhold disclosure of its evidence is no accident. Rather, it reflects a considered decision to hamstring the defense's ability to conduct a thorough investigation and prepare effectively for trial. Moreover, by attempting to substitute vague generalities for specific evidence, the government attempts to overcome the reality that credible evidence of direct participation by Mr. Zhong in wrongdoing simply does not exist.

Like the Complaint (Dkt. No. 1), the present motions rely overwhelmingly on allegations against Landong Wang and other unidentified actors, but not on allegations against Mr. Zhong himself, who is not implicated in any of the violence that the government describes (again, with a notable lack of specificity). The handful of new allegations by "victims" and "confidential sources" against Mr. Zhong that the government now references are remarkably indistinct:[1]  Mr. Zhong's supposed attempt,  "*in 2001 or 2002*" to "persuade" an unidentified worker to return to work (Gov't Mem. at 3); Mr. Zhong's alleged statements (at some unstated time) about having "participated in a search party to locate and abduct Rilin workers who escaped" (*id*. at 4); his alleged statement about having unsuccessfully "sent a search team to look for" an unnamed escaped worker sometime in 2010 (*id*.); his and Mr. Wang's supposed removal of unspecified "potentially incriminating materials" from a workers' residence to "PRC diplomatic facilities" (*id*. at 7); and an unenlightening report that Mr. Zhong and Mr. Wang "were very worried that they were in legal trouble because they had used Rilin employees to work on outside projects at private residences."  (*Id*. at 9).  The Court already has admonished the government not to rely on such "generalities" in an *ex parte* submission.[2]  (*See* Benavidez Decl., Ex. B at 21:22-22:4, 30:19-22).

Faced with the insufficiency of the factual record it presents in its Statement of Facts, the government – in the Argument section of its brief – proceeds to embellish and exaggerate its own

---

[1] At the February 21, 2018 pretrial conference, in response to concerns raised by the defense and echoed by the Court regarding the failure to identify the "victims" the government intends to prove up at trial, the government said it would "disclose the victims in connection with our motions in limine."  (*See* Declaration of Brittany N. Benavidez, dated May 11, 2018 ("Benavidez Decl."), Ex. A at 16:5-8).  It has not done so.

[2] At the pretrial conference held on October 25, 2017, the Court heard argument on the defense's request to review the entirety of a redacted search warrant affidavit, even if that meant identification of potential government witnesses.  Upon reviewing the affidavit and the government's *ex parte* submission in support of redaction, the Court noted that the government's submission expressed only "a generalized concern."  (*See* Benavidez Decl., Ex. B at 21:22-22:4).  Addressing the prosecutor, the Court said "the problem is, that you speak in generalities" and "I need to have something more than some general concern."  (*Id*. at 22:13, 30:19-22).

meager assertions, in an effort to shore up a fundamentally unsound position. Thus, the alleged incidents of contact between Mr. Zhong and two "escaped" workers described above (Gov't Mem. at 3-4) suddenly become "two episodes of *physical violence*" (*id.* at 17) (emphasis added); and the hasp (but no lock) that Jersey City employee Mark Redfield reported seeing at a workers' residence (*id.* at 10, 11) now, according to the government, actually "*was used* to lock workers inside" the building. (*Id.* at 17) (emphasis added).

Given the absence of any legitimate foundation for the extraordinary relief sought here, the government has no choice but to resort to its own conclusory and unconvincing pronouncements that the measures it advocates somehow would adequately safeguard Mr. Zhong's rights. The opposite is true: the government's motions threaten to transform the trial of this case into a manifestly unfair proceeding. This Court cannot let that happen.

## ARGUMENT

### I. PRE-INDICTMENT EVIDENCE OF MR. ZHONG'S ALLEGED PARTICIPATION IN THE FORCED LABOR SCHEME IS INADMISSIBLE

Arguing that Mr. Zhong was part of "an overarching forced labor scheme" spanning from 2001 to 2016, the government seeks to admit evidence of uncharged conduct, namely that Mr. Zhong allegedly "abduct[ed] and render[ed] workers who escaped from Rilin custody" between 2001 and 2002. (*Id*. at 15-16, 20). The government's motion fails on several grounds.

#### A. Mr. Zhong Has Residual Diplomatic Immunity For Acts Pre-Dating 2010

Fatal to the government's argument is the undisputed fact that Mr. Zhong was an accredited diplomat from 2001 through 2009 (Dkt. No. 1 ¶ 8), and therefore enjoys residual diplomatic immunity for acts performed in the "exercise of official functions." *See United States v. Khobragade*, 15 F. Supp. 3d 383, 386 (S.D.N.Y. 2014); *see also Swarna v. Al-Awadi*, 607 F. Supp. 2d 509, 518 (S.D.N.Y. 2009) (recognizing residual diplomatic immunity for, among other

things, the "act of hiring and employing an individual to work at the diplomatic mission"), *affirmed in part and vacated in part,* 622 F.3d 123 (2d Cir. 2010). By deliberately selecting an indictment period that began "in or about January 2010," the government implicitly acknowledged that evidence predating this time period would be barred on immunity grounds. Accordingly, for the reasons stated in Mr. Zhong's Motion *In Limine* Regarding Pre-2010 Acts (Dkt. No. 116) – all of which are incorporated herein by reference – the Court should preclude the government from offering evidence or making any argument about alleged conduct by Mr. Zhong between 2001 and 2009.

Relegating the immunity issue to a footnote, the government advances the erroneous and conclusory assertion that "the acts in question here are not prior official acts." (Gov't Mem. at 16 n.6). To the contrary, any actions that Mr. Zhong may have taken with respect to China Rilin workers who absconded from their assigned projects at PRC facilities reflected Mr. Zhong's exercise of his official duties at that time as an accredited diplomat and China Rilin worker contracted to perform work for the PRC. Simply put, under the Vienna Convention and 22 U.S.C. § 254d, he cannot be prosecuted for those acts.

**B.    Evidence Related To Mr. Zhong's Alleged Conduct Before November 2009 Is Not Direct Evidence Of The Charged Forced Labor Scheme**

The government contends that evidence of the pre-Indictment uncharged conduct is direct evidence of the charged forced labor scheme. (Gov't Mem. at 15-17). The government is wrong. Counts One and Two allege that from 2010 through 2016, Mr. Zhong benefitted financially from a forced labor scheme while he was the principal of *U.S.* Rilin and was working on *non-PRC* projects. (Dkt. No. 20 ¶¶ 1-2). The government's motion seeks to admit evidence related to isolated incidents that allegedly occurred in 2001 and 2002, during Mr. Zhong's tenure as a *China* Rilin employee and an accredited diplomat working on *PRC* projects.

5

As the plain language of the Indictment confirms, the uncharged conduct falls outside the temporal and subject matter scope of the charged conspiracy.  Indeed, the government does not provide any basis to conclude that in the pre-Indictment period, the workers were physically restrained in their residences or were forced to work on non-PRC construction projects, as charged in the Indictment and the Complaint.  The government thus has failed to establish that the uncharged conduct in 2001 and 2002 "arose out of the same transaction or series of transactions as the charged offenses;" or is "inextricably intertwined" with the conduct underlying the charges; or is necessary to provide context.  *See United States v. Dolney*, 2005 WL 2129169, at *1-2 (E.D.N.Y. Sept. 1, 2005) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)) (declining to admit evidence of uncharged conduct as direct evidence where the proffered testimony "is not so tightly connected to the alleged conspiracy . . . that it clearly represents intrinsic evidence"), *aff'd sub nom. United States v. Pirgousis*, 290 F. App'x 388 (2d Cir. 2008) (summary order).

Put another way, the government has provided no basis for the Court to find that Mr. Zhong's alleged contacts with the China Rilin workers *at least eight years* prior to the beginning of the Indictment period – with no allegation of any intervening physical restraint or forced labor – is "part of the same continuum of illegal actions that the defendant and his coconspirators engaged in during the charged conspiracy."  (Gov't Mem. at 16).  Evidence of what happened almost a decade before January 2010 does not "directly prove" what happened after January 2010.  *See United States v. Ahmed*, 2016 WL 3647686, at *6 (E.D.N.Y. July 1, 2016) (DLI) (uncharged criminal conduct that occurred "between four and seven years prior to the conduct charged . . . [is] too remote to be considered inextricably intertwined with the evidence regarding the charged offense") (internal quotation marks omitted); *United States v. Hatfield*, 685 F. Supp.

6

2d 320, 323 (E.D.N.Y. 2010) (denying motion in a fraud case to admit evidence relating to uncharged fraud scheme that "ceased before the Indictment's allegations began"); *Dolney*, 2005 WL 2129169, at *2 (two-year gap between uncharged conduct and the actual charges required court to consider admission of evidence under Rule 404(b)).

If admitted, the proffered evidence concerning Mr. Zhong's uncharged pre-Indictment conduct would amount to a constructive amendment of the Indictment. Constructive amendment occurs when the evidence at trial modifies the essential terms of the charged offense in such a way that there is a "substantial likelihood that the defendant may have been convicted of an offense other than the one charged" in the indictment. *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997) (internal quotation marks omitted). Having chosen to charge a forced labor scheme spanning from 2010 until 2016, the government may not now expand the covered time frame and present evidence that would force Mr. Zhong to answer additional charges that were not voted on by the grand jury. If admitted as direct evidence, the proffered evidence would invite the trial jury to convict Mr. Zhong for uncharged conduct. At a minimum, admitting this historical evidence would constitute a prejudicial variance, vitiating any conviction. *See United States v. Mollica*, 849 F.2d 723, 729 (2d Cir. 1988) ("[T]here is a variance when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.") (internal quotation marks omitted).

### C.    The Proffered Evidence Is Not Admissible Under Rule 404(b)

As a fallback, the government seeks admission of the pre-Indictment uncharged conduct under Fed. R. Evid. 404(b), as proof of Mr. Zhong's "intent, planning, and knowledge of the charged criminal conduct." (Gov't Mem. at 17). Where evidence is offered for a Rule 404(b) purpose, the evidence must involve more than just "the same category of crime;" to be admissible, the evidence and the charges must have "a similarity or connection . . . that makes

7

the prior act relevant to establishing knowledge of the current [*i.e.*, charged] act." *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002).  The government has failed to satisfy this requirement.

Beyond invoking the talismanic language of Rule 404(b)(2), the government's motion (at pages 17-18) fails to show *how* the pre-Indictment uncharged acts are probative of Mr. Zhong's intent, planning, or knowledge of the charged conduct.  Based on the government's cryptic summary of the proffered testimony, the only similarity between the charged and uncharged conduct is that both involved China Rilin workers.  This does not suffice.  *See Garcia*, 291 F.3d at 137 (abuse of discretion to admit drug conviction pre-dating charged drug conspiracy by 12 years where only "similarity or connection between the two transactions" was that both involved cocaine); *United States v. Gordon*, 987 F.2d 902, 908 (2d Cir. 1993) (probative value of other act evidence "depends largely on whether or not there is a close parallel between the crime charged and the acts shown") (internal quotation marks omitted).  Moreover, the government has presented no basis for this Court to conclude that Mr. Zhong's alleged interactions with workers in 2001 or 2002 is meaningfully probative of Mr. Zhong's "intent, planning, and knowledge" regarding the charged forced labor scheme allegedly perpetrated at least eight years later.  *See United States v. Rivera*, 2015 WL 1875658, at *20 (E.D.N.Y. Apr. 22, 2015) (finding evidence of defendants' uncharged conduct from more than ten years prior to the start of the indictment period "barely probative of intent, knowledge, and lack of mistake" and inadmissible under Rules 403 and 404(b)).

Indeed, the only possible relevance of the proffered Rule 404(b) evidence to the charged offenses is that because Mr. Zhong allegedly participated in locating and returning workers to a PRC property in the distant past, he intended to participate in a forced labor scheme from 2010

onward relating to *non*-PRC properties – precisely the type of impermissible "propensity evidence" that Rule 404(b) is designed to exclude.  *See, e.g.*, *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009) (abuse of discretion to admit evidence of defendant's prior convictions); *Hatfield*, 685 F. Supp. 2d at 324 (denying government's motion to admit other acts evidence); *United States v. Kahale*, 789 F. Supp. 2d 359, 385-86 (E.D.N.Y. 2009) (precluding admission of "other crimes" evidence because of the "significant risk" the evidence "could undermine the fairness of the trial with classic, and powerful, evidence of propensity") (internal quotation marks omitted).

### D.    The Proffered Evidence Should Be Excluded Under Rule 403

Even if a valid basis existed for the admission of the uncharged conduct, preclusion is still appropriate because any minimal probative value of the proffered evidence would be substantially outweighed by the danger of unfair prejudice under a Fed. R. Evid. 403 analysis, particularly given the protracted length of time between the charged and uncharged conduct. Because the proffered testimony of the victim witnesses involves conduct that is "more inflammatory, sensational and/or disturbing to the jury" than the charged conduct, it would be likely to prejudice Mr. Zhong.  *See United States v. Midyett*, 603 F. Supp. 2d 450, 456 (E.D.N.Y. 2009) (precluding admission of evidence of uncharged conduct).

According to the government, as to the uncharged conduct, two workers will testify that they were physically assaulted by "rendition squads" of "Rilin personnel" who, in attempting "to abduct" the workers, inflicted "a laceration" on one with a ceramic tool and "similarly beat" the second.  (Gov't Mem. at 3).  Any such testimony certainly would be far more inflammatory than any of the acts that allegedly took place during the Indictment period.  This Court, like other courts, has not hesitated to preclude prior act evidence when the risk of prejudice was as substantial as it is here.  *See United States v. Khan*, 591 F. Supp. 2d 202, 206 (E.D.N.Y. 2008)

9

(DLI) (excluding evidence of uncharged conduct as more prejudicial than probative and noting that "courts in this circuit have repeatedly expressed disapproval of the admission of uncharged criminal conduct that is more serious than the charged crime") (internal quotation marks omitted); *see also United States v. Curley*, 639 F.3d 50, 62 (2d Cir. 2011) (vacating conviction for stalking and harassing where the introduction at trial of evidence that police found a gun during a traffic stop was "especially troubling because it tended to show [the defendant] was more violent and disturbed than he appeared from the other evidence"); *United States v. Bourne*, 2011 WL 4458846, at *16 (E.D.N.Y. Sept. 23, 2011) (excluding evidence that "strongly implies" defendant's involvement in a murder, which is "a crime that is more serious than" the charged drug trafficking offense).

Finally, the defense doubtless will contest the proffered witnesses' accounts. Hence, introducing the workers' accounts of their "escape" from China Rilin will prolong the proceedings with an otherwise unnecessary trial within a trial. *See United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (affirming district court's conclusion that the "adverse consequences of jury confusion and trial delay" outweighed the benefits of evidence proposed under Rule 404(b) based on a fear that the proposed testimony would require the jury to conduct a "trial within a trial").

Accordingly, the government's motion to admit evidence of the uncharged conduct as proof of the forced labor scheme should be denied under Rule 403 in any event.

## II.    THE COURT SHOULD DEFER RULING ON THE GOVERNMENT'S MOTION TO ADMIT "PRC LEGAL DOCUMENTS"

The government seeks admission of various unspecified "PRC legal documents" – such as "forfeiture judgments" and "employment contracts between Rilin and victim workers" – as verbal acts, arguing that the documents are admissible not for their truth but "for their legal

impact on the victims of the forced labor scheme." (Gov't Mem. at 18-19). The government's motion is premature. To date – 17 months after indictment – the government still has not produced any of the PRC legal documents to the defense (*id.* at 3 n.2); nor has it produced any documentation or identified any witnesses that might properly authenticate the PRC legal documents under Fed. R. Evid. 901. The Court, therefore, should defer ruling on the motion until trial.

Because the PRC legal documents continue to be withheld from the defense, Mr. Zhong is unable to determine whether, and if so, how, to challenge their authenticity. "Authentication of evidence is a condition precedent to admissibility." *Gonzales v. Digital Equipment Corp.*, 8 F. Supp. 2d 194, 196 (E.D.N.Y. 1998); *see also United States v. Sliker,* 751 F.2d 477, 499 (2d Cir. 1984) (same). Ordinarily, an item is authenticated by "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). However, certain items of evidence do not require extrinsic evidence and are self-authenticating, such as "foreign public documents." Fed. R. Evid. 902(3). That an item is proffered for non-hearsay purposes does not dispense with the general authentication requirement. *United States v. Prevezon Holdings, Ltd.*, 319 F.R.D. 459, 462 (S.D.N.Y. 2017) (request to admit criminal case file as verbal act required government to "satisfy the threshold requirement of authentication"); *see also S.E.C. v. Boock*, 2011 WL 3792819, at *10 (S.D.N.Y. Aug. 25, 2011) (documents offered as "verbal acts" evidence still required authentication).

Thus far, the government has not provided any basis for the Court to find that the proffered documents are authentic. It has put forth no evidence as to the original source of the documents and has failed to submit any certification or attestation as to their authenticity. In fact, the government's own account of how it obtained possession of the documents – from

workers who claim they received copies "from family members who continue to reside in the PRC" (Gov't Mem. at 3) – raises a genuine question as to whether any of them can be authenticated.  Further, the information currently before the Court provides no basis to conclude that any of the proffered, but unseen, forfeiture judgments satisfy any of the self-authentication requirements set forth in Rule 902.

Additionally, until the documents are produced, the defense cannot assess their relevance and probative value.  Without seeing the documents, counsel cannot learn either the names of the workers with forfeiture judgments against them or the dates on which those judgments were issued; nor can it determine the execution dates for the "underlying employment contracts."  (*Id.* at 18).  Therefore, the defense is unable to discern, for instance, whether any of the documents predate the Indictment period and thus should be precluded for the reasons stated in Mr. Zhong's Motion *In Limine* Regarding Pre-2010 Acts (Dkt. No. 116 at 1-5) and discussed above at pages 4-10.

In sum, the Court should defer ruling on the government's motion to admit PRC legal documents until trial, when both the defense and the Court have an adequate basis to assess authenticity and admissibility.

## III.    EVIDENCE AND ARGUMENT REGARDING PRC LAW ARE ADMISSIBLE

In direct contradiction of the rationale underlying the preceding motion, the government asks the Court to exclude evidence or argument concerning "the legality under foreign law of forced labor or of debt bondage contracts" on the grounds that such evidence is irrelevant and likely would cause jury confusion.[3]  (Gov't Mem. at 19-22).  The government's arguments

---

[3] In its preliminary statement, the government asserts that the instant motion also seeks to "preclude argument, introduction of evidence, or cross-examination of government witnesses concerning…the treatment of victim workers in the United States compared to similarly situated workers in the PRC."  (Gov't Mem. at 1).  But since the government never articulates any reason to exclude such evidence, the Court should deny this request out of hand.

ignore the purpose and relevance of such evidence, misconstrue controlling law, and fail to reconcile the government's objection to evidence of PRC law with its position that contracts and judgments that are the product of the application of that law – *i.e.,* the "PRC legal documents" – should be received in evidence.

Evidently oblivious to the striking irony of simultaneously moving to admit the PRC legal documents while seeking to exclude as irrelevant the law underlying those documents, the government asks the Court to bless a fundamentally unfair "heads I win, tails you lose" result. Contrary to the government's claims, evidence regarding PRC law is highly probative with respect to Counts One and Two, the forced labor charges. (*See* Dkt. No. 20 ¶¶ 1-2). In particular, Count One charges that Mr. Zhong "did *knowingly and intentionally* conspire . . . to provide and obtain the labor and services of one or more persons by means of . . . *the abuse and threatened abuse of law and legal process*," and Count Two asserts that Mr. Zhong committed the related substantive offense. (*Id.*) (emphasis added). The term "abuse or threatened abuse of law or legal process" means:

> [T]he use or threatened use of a law or legal process . . . in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. *See* 18 U.S.C. § 1589(c)(1).

As set out in the Complaint, the government's theory is that Mr. Zhong participated in "forced labor" activities by abusing or threatening to abuse *PRC* law or legal process. (*See, e.g.*, Dkt. No. 1 ¶ 10 ("[T]he Construction Business maintains a policy of forcing construction workers brought to the United States to work as directed by threatening them with the loss of their houses *in China* . . . .") (emphasis added); *see also* Dkt. No. 8 at 3 ("[T]he Construction Business maintains a policy of requiring workers it brings to the United States to pledge their houses *in the PRC*. . . .") (emphasis added); Dkt. No. 115 at 3 ("[China] Rilin obtained judicial

rulings *from PRC courts* holding that the victims had breached their contracts . . . .") (emphasis added)).[4]

While the government would have it otherwise, Mr. Zhong has the constitutional right to defend himself against the pending forced labor charges, including the Indictment's allegations concerning his "abuse or threatened abuse of [*PRC*] law or legal process." *See* U.S. Const. amend. VI. To that end as well, Mr. Zhong should be able to introduce evidence relating to the legality, as a matter of PRC law, of the very employment contracts, entered into in China, that the government seeks to admit. Fed. R. Evid. 401, 402 ("Evidence is relevant . . . if the fact is of consequence in determining the action.").

Whether the conduct of Mr. Zhong and his alleged co-conspirators complied with PRC law also is probative of his alleged knowledge and intent to participate in the charged forced labor scheme. To obtain a conviction under Counts One and Two, the government must prove Mr. Zhong acted knowingly. *See United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999) (government must show defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy); 18 U.S.C. § 1589 (criminalizing "knowingly" providing or obtaining the labor or services of a person by a variety of means). Accordingly, evidence regarding the impact of PRC law on the workers' employment contracts should be admitted.

Finally, evidence regarding PRC law, accompanied by appropriate limiting instructions, will neither confuse nor mislead the jury, as the government suggests. (Gov't Mem. at 20). And, any danger of jury confusion falls far short of substantially outweighing the probative value of

---

[4] The government has never asserted that Mr. Zhong participated in the purported forced labor scheme by abusing or threatening to abuse *U.S.* law or legal process. Nor could any of the allegations made in this case conceivably support such a theory of prosecution.

14

evidence establishing that Mr. Zhong did not knowingly participate in any forced labor scheme by means of "the abuse or threatened abuse of law or legal process" in China.

The cases the government cites do not hold otherwise. *None* of them involved a defendant charged with conspiracy to engage in or substantive participation in a forced labor scheme. *None* involved a defendant's company obtaining judicial rulings from foreign courts. And, most tellingly, *none* involved allegations that a defendant committed a crime "by means of . . . the abuse and threatened abuse of law and legal process." *See, e.g.*, *United States v. Napout*, 2017 WL 6375729, at *13 (E.D.N.Y. Dec. 12, 2017) (defendants charged with honest services fraud and related crimes)*; Butler v. United States*, 992 F. Supp. 2d 165, 179 (E.D.N.Y. 2014) (wire fraud); *United States v. Chalmers*, 474 F. Supp. 2d 555, 562 (S.D.N.Y. 2007) (wire fraud).[5]

Because aspects of PRC law are integral to Counts One and Two, the Court should deny the government's motion.

## IV.    THE GOVERNMENT'S WITNESSES SHOULD NOT BE PERMITTED TO TESTIFY USING PSEUDONYMS

Heedless of the Court's prior admonition that "more than some general concern" is required to withhold alleged victim/witness information on safety grounds (*see* Benavidez Decl., Ex. B at 30:19-22), the government now seeks permission to have its witnesses testify using pseudonyms. The government's sole ground for this extraordinary request is violence allegedly committed *sixteen years ago* by China Rilin employees (not Mr. Zhong) against victim witnesses who "escaped from Rilin custody." (Gov't Mem. at 25). Based on this ancient and unproven conduct, without any evidence of any threats or violent acts since 2002, and without any evidence of violence connected to Mr. Zhong, the government seeks a protective order that would (1) permit victim witnesses and their family members to testify using pseudonyms and

---

[5] *Napout* is incorrectly cited in the government's brief as "*United States v. Tapout.*"

without revealing their names, home or work addresses, or dates and places of birth; (2) permit the government to redact from trial exhibits and witness statement disclosures the actual witnesses' names and "other personal identifying information"; and (3) prohibit defense counsel from showing unredacted copies of discovery materials concerning these witnesses to either Mr. Zhong himself or anyone outside of defense counsel's legal team.  (*Id.* at 22-23).  The government has failed to provide the slightest factual or legal support for such extreme relief, which would infringe upon Mr. Zhong's Sixth Amendment right to confront witnesses against him, and would stymie the defense's effort to conduct a meaningful investigation of the relevant witnesses and events.

In addition to permitting witnesses to testify using pseudonyms, the relief sought by the government includes permitting it to delay producing to the defense (i) any materials the "victims" have given the government until four months before trial; and (ii) any Jencks Act and *Giglio* material until one month before trial.  (*Id.* at Ex. B ¶ 2).  As set out in the proposed protective order, the government seeks to produce two versions of these "Victim Materials" – an unredacted version that will be designated "attorneys' eyes only" and thus may not be reviewed even by Mr. Zhong, and a redacted version with the witnesses' pseudonyms, which Mr. Zhong would be allowed to review *only* in the presence of counsel.[6]  (*Id.* ¶¶ 3-5).  This unjustified arrangement cannot be squared with Mr. Zhong's constitutional right to prepare for trial.

In *Smith v. Illinois*, 390 U.S. 129 (1986), the Supreme Court held that the Sixth Amendment's Confrontation Clause includes the right to "ask the witness who he is and where he lives" because this is "the very starting point in exposing falsehood and bringing out the truth through cross-examination" when "the credibility of a witness is in issue."  *Id.* at 131 (defendant

---

[6] The proposed protective order does not specify which categories of information will be redacted from the so-called Victim Materials, and is unclear as to whether the government intends to stagger the disclosure of the redacted and unredacted versions of those materials.  These ambiguities provide an independent basis for the Court to reject it.

has Sixth and Fourteenth Amendment rights to cross-examine regarding the witness's actual name and address).  When the government seeks to withhold a witness's name and other personal identifying information, it bears the heavy burden of demonstrating that "the threat to the witness [is] actual and not a result of conjecture."  *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (quoting *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969)).  If the government demonstrates an actual threat to the witness, a court must then consider whether concealing the witness's identifying information will deprive the defendant the opportunity for effective cross-examination.  *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1140-41 (10th Cir. 2014).

The government's remarkable position that the victim witnesses should be permitted to testify using pseudonyms, and that discovery material with their names should be withheld from the defendant himself, hinges on violence by unnamed "Rilin personnel" that supposedly took place long ago, in 2001 or 2002, at least eight years before the Indictment period.  (Gov't Mem. at 3).  Yet, the government does not allege that Mr. Zhong or anyone affiliated with China Rilin has since threatened or harmed any witness – or even discussed the possibility of doing so.

This case – and the entirely speculative nature of any alleged current threat against any witness – differs significantly from the cases cited by the government in which courts have permitted concealment of the identity of witnesses.  Those cases all involved either undercover agents or witnesses testifying against extremely violent gangs or terrorist organizations, where concrete and lurid evidence supported findings that public exposure of identities would endanger witnesses' safety.  *See, e.g.*, *Ramos-Cruz*, 667 F.3d at 501 (demonstrated threat to El Salvadorian witnesses who testify against MS-13); *United States v. El-Mezain*, 664 F.3d 467, 493 (5th Cir. 2011) (Israeli Security Agency agent whose name is classified under Israeli and American law

17

because Hamas and other terrorist organizations seek out agents' identities and publish descriptions so agents can be targeted); *United States v. Celis*, 608 F.3d 818, 833 (D.C. Cir. 2010) (witnesses were connected to Colombian revolutionaries who had threatened to kill cooperating witnesses); *United States v. Naseer*, No. 10-CR-19 (S-4) (E.D.N.Y. Jan. 26, 2015) (Dkt. No. 382 at 2) (disclosing identities of MI-5 officers working in undercover capacity would compromise pending covert operations and jeopardize the officers' safety).  In the present case, by contrast, the evidence of violence, in addition to being exceedingly stale, is not nearly pervasive enough to warrant the restrictions the government seeks.  (*See* Gov't Mem. at 3).[7]

Although the government would have the Court also protect the identity of workers' family members, it makes no attempt to show any actual threat, at any time, by China Rilin (much less Mr. Zhong) to any such potential witness.  That China Rilin may have initiated litigation against its former employees in 2001 or 2002 in a public forum in the PRC does not at all establish an actual threat to any potential witness.  Such a generalized statement falls far short of demonstrating a threat that was "actual and not a result of conjecture."  *See Palermo*, 410 F.2d at 472 (vacating and remanding where prosecution failed to show threat to life of witness who refused to disclose address and present employment).

Relying on nothing more than its own say-so, the government contends that the use of pseudonyms rather than witnesses' actual names will not deprive Mr. Zhong the ability to confront the witnesses against him or challenge the substance of their testimony.  (Gov't Mem. at 26).  To the contrary, the proposed protective order prohibits counsel from *ever* sharing with Mr.

---

[7] Nor does this case implicate the public policy objective of protecting the privacy of victim witnesses, as in the case of victims of sexual abuse.  *See, e.g.*, *United States v. Paris*, 2007 WL 1484974 (D. Conn. May 18, 2007) (finding legitimate and substantial interest in protecting the witnesses from likely adverse personal, professional and psychological consequences of publicly linking their identities to their past lives as sex workers); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) (permitting adult plaintiff alleging sexual abuse when he was a child to proceed anonymously).

Zhong or any other witness any protected witness's name or personal identifying information. (*Id*. at Ex. B ¶ 4). Based on the government's proffered testimony, at least one such witness may be called to testify about an alleged conversation he had with Mr. Zhong. (*Id*. at 3). The defense team will be effectively barred from investigating the witness and relevant facts and cannot adequately prepare to cross-examine this person regarding that conversation if counsel is prohibited from disclosing the witness's identity to Mr. Zhong or other potential defense witnesses. Mr. Zhong has the Sixth Amendment right to have counsel confront and cross-examine adverse witnesses, to present evidence and to subpoena witnesses. Preventing defense counsel from ever sharing the identity of such witnesses with Mr. Zhong – leaving him perhaps to recognize and thereby identify them only when they take the stand at trial – would unacceptably compromise all of those rights. The government's motion should be denied.

## V. THE GOVERNMENT PROVIDES NO BASIS TO ADMIT DOCUMENTS ALLEGEDLY IN THE POSSESSION OF WORKERS

In keeping with its practice of providing only generalized descriptions of the documents it plans to introduce at trial – instead of presenting the documents themselves – the government asks the Court to admit as co-conspirator statements "in furtherance of the forced labor conspiracy" or as business records, "time sheets" that, according to the government, were in the possession of Rilin workers in October 2015 when they sought to leave the United States and return to their own country. (*Id*. at 27). The Court should deny the motion.

Having neglected, once again, to identify any basis to authenticate these documents, the government certainly is not now entitled to have the Court rule them admissible. The documents are not self-authenticating, and the government has not identified any witness who could attest to what they are. Nor is the government's interpretation of the documents an adequate substitute for competent authentication testimony.

19

Given the lack of any apparent means of authentication, there is no basis to admit the documents under either of the government's proposed theories.  Admission as co-conspirator statements, under Fed. R. Evid. 801(d)(2)(E), would be premature, as the Court has not yet had the opportunity to find that the necessary predicates for admissibility exist.  *See United States v. Gasperini*, 2017 WL 3140366, at *6 (E.D.N.Y. July 21, 2017) (reserving decision on objections because "[a]t this stage, the court lacks sufficient information to predetermine the admissibility of co-conspirator statements").  Before admitting co-conspirator statements, the Court must find by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."  *United States v. Napout*, 2017 WL 6375729, at *1 (E.D.N.Y. Dec. 12, 2017) (internal quotation marks omitted).  Here, the government has not supplied any basis for finding that these documents are statements "made during the course of and in furtherance of the conspiracy."  Instead, the government volunteers only its conclusion that the "time sheets at issue are coconspirator statements of Landong Wang in furtherance of the forced labor conspiracy" (Gov't Mem. at 27), and assumes the Court will automatically admit these documents based on the government's unsupported assertion.  But the documents – as described by the government and the workers whom it allegedly interviewed – contain no information establishing that they were made in furtherance of the forced labor conspiracy, as the government maintains.  Without such evidence, the documents cannot be admitted as co-conspirator statements.

Nor do the documents at issue qualify under Fed. R. Evid. 803(6), the business records exception to the hearsay rule.  The law is clear that a record may be admitted as a business record only if:

(1) the record was made at or near the time by someone with knowledge;

(2) the record was kept in the course of a regularly conducted activity of a business;

(3) making the record was a regular practice of that activity;

(4) all of these conditions are shown by fact testimony or a Rule 902 certification; and

(5) there is no lack of trustworthiness.

*United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC*, 2018 WL 1517691, at *6 (E.D.N.Y. Mar. 28, 2018).  The government's failure to meet the foregoing requirements through a qualified witness or records custodian dooms its attempt to invoke Rule 803(6).

Finally, even if they somehow could be deemed admissible under either proposed theory, the proffered documents – once the government actually presents them – likely will prove to be unduly prejudicial under Rule 403 without testimony by a witness who can explain what they are, a witness the government evidently does not have.

## VI.    THE GOVERNMENT PROVIDES NO BASIS TO ADMIT EVIDENCE OF OBSTRUCTIVE CONDUCT

In its motion, the government seeks a ruling on the admissibility of evidence of allegedly obstructive conduct, again without identifying with any degree of specificity the evidence at issue.  The Court should deny the motion on Fed. R. Evid. 401 and 403 grounds.

Most of the allegedly "obstructive conduct" that the government describes consists of acts attributed to Landong Wang, not Mr. Zhong.  At most, that evidence could be relevant to Mr. Wang's state of mind, but not to Mr. Zhong's.  In addition, the introduction of this evidence would only result in a mini-trial concerning the absent Mr. Wang's conduct, including his alleged "evacuation of potential witnesses" (Gov't Mem. at 9), the government's grossly exaggerated and distorted interpretation of the workers' return to China from the United States. Further, any alleged obstructive conduct by Mr. Wang plainly is not rendered admissible by

vague "expected testimony" that he generally "could not take actions without approval of [Mr. Zhong], in his capacity as principal of Rilin."[8]  (*Id.* at 28).  In short, evidence of the workers' departure is not relevant to the charges against Mr. Zhong and, in any event, would have a prejudicial effect substantially outweighing any possible probative value.

Mr. Zhong's own "obstructive conduct" is even more vaguely described.  According to a "confidential source" cited by the government, Mr. Wang and Mr. Zhong "moved" unidentified "potentially incriminating materials" from a workers' residence to "secure" them "from potential searches by U.S. law enforcement."  (*Id.* at 7, 28).  This is mere speculation, not evidence of anything, much less "consciousness of guilt" on Mr. Zhong's part.  Nor does a confidential informant's generalized and highly subjective statement that Mr. Zhong and Mr. Wang supposedly "were very worried that they were in legal trouble because they had used Rilin employees to work on outside projects at private residences" supply sufficient basis to admit evidence of the so-called obstructive conduct.  (*Id.* at 9).  The government also seeks to admit unspecified taped calls that took place between Mr. Zhong and members of his family after his arrest and incarceration in this case.  To date, the government still has not provided complete translations of the calls it has in mind.[9]  Accordingly, it is not entitled to a ruling of admissibility regarding any recorded phone calls.

The government's string-cited cases provide no support for its motion.  All of the cited cases involve conduct by the defendants themselves, rather than by alleged co-conspirators, and none of them reflect facts even remotely analogous to the present case.  *See United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 160 (2d Cir. 2008) (specific testimony involved

---

[8] Mr. Zhong actually was the president of a company called *U.S.* Rilin, and not "a principal" of the entire family of Rilin entities, as the government misleadingly implies.

[9] The government cites its opposition to Mr. Zhong's bail motion (Dkt. 89), which included only a handful of translations of short outtakes from recorded phone calls.  The defense disputes the accuracy of those translations.

defendant's own obstructive conduct); *United States v. Malpiedi*, 62 F.3d 465, 467 (2d Cir. 1995) (testimony that defendant himself altered certain documents evidenced obstruction of justice and consciousness of guilt); *United States v. Robinson*, 635 F.2d 981, 986 (2d Cir. 1980) (discrete instances of defendant's own conduct, including threats and inducing others to commit fraud, evidenced obstruction of justice and consciousness of guilt).

The Court should deny the government's motion.

## VII.  THE MOTION TO PERMIT TESTIMONY ABOUT THE REDFIELD AFFIDAVIT SHOULD BE DENIED AS PREMATURE

The government anticipates that the cross-examination of Mark Redfield will make specific reference to the January 6, 2017 affidavit that Mr. Redfield signed, which prior defense counsel submitted in support of a bail application for Mr. Zhong.  The defense currently does not know whether it will refer to Mr. Redfield's affidavit when cross-examining him at trial.  Absent such cross-examination, as the government appears to recognize, "the circumstances surrounding" the affidavit's creation would have no relevance whatsoever and would be inadmissible.  (*See* Gov't Mem. at 29).  Should the defense decide to refer to the affidavit during its cross-examination, the Court will, at that point, have ample opportunity to take steps to ensure the government a fair opportunity to present any relevant facts while safeguarding Mr. Zhong from unfairly prejudicial attacks against the professionalism and integrity of prior counsel.

## VIII.  THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO PRECLUDE DEFENSE EXHIBITS NOT PRODUCED TO THE GOVERNMENT FOUR MONTHS BEFORE TRIAL

The government seeks to preclude the defense from offering any exhibits not produced to the government four months before trial.  The motion is meritless and should be denied.

A criminal defendant's reciprocal discovery obligation is not triggered until *after* the government complies with its own Rule 16 disclosure obligations.  *See* Fed. R. Crim. P.

23

16(b)(1)(A) (reciprocal discovery obligation not triggered until "the government complies" with defendant's Rule 16 disclosure requests).  In this case – 17 months after indictment – the government has yet to fulfill its discovery obligations.  As the government admits, it is intentionally withholding from the defense discoverable material that is crucial to this case – including "judicial rulings [Rilin obtained] from PRC courts holding that the victims had breached their [employment] contracts" and "the underlying employment contracts between Rilin and the victim workers."  (Gov't Mem. at 3, 18).  Indeed, the government has confirmed its intention to continue to withhold such discovery until 120 days before trial.  (*See* Benavidez Decl., Ex. B at 11:12-25).  Further, the government still has not produced all of the diplomatic notes relating to the allegations in the Indictment, documents requested by the defense long ago.[10]  Finally, the government recently informed the defense that it anticipates producing additional Rule 16 material sometime within the next month, which will include documents relating to the workers' residences and electronically stored information extracted from devices seized during searches of those residences, over 18 months ago.  Accordingly, Mr. Zhong's reciprocal discovery obligation has not yet been triggered, and will not be until the government has produced all of the foregoing material.

Once the government finally satisfies its Rule 16 discovery obligations, Mr. Zhong and his counsel will need sufficient time to review and investigate all of the newly produced material before a determination can be made as to the evidence the defense intends to use in its case-in-chief at trial.[11]  *See generally* Fed. R. Crim. P. 16(b)(1)(A) (requiring defendant to provide

---

[10] *See* Benavidez Decl., Ex. C ¶ 9.  On multiple occasions, the government has incorrectly represented to the Court that the defense acquiesced in the government's unilateral and arbitrary decision to produce only those diplomatic notes dating from approximately March 2016 to November 2016.  The defense has never agreed to this curtailment of its original request.

[11] The time needed to analyze and investigate that late-produced discovery will be more protracted than in the usual case because many of the documents undoubtedly will be in Chinese and will relate to people and events in the PRC.

discovery of only those items within defendant's possession *and that defendant intends to use in case-in-chief*) (emphasis added).  It is patently unreasonable – and invites error of constitutional proportions – for the government to demand that Mr. Zhong be required to compile and disclose his case-in-chief evidence prior to having received evidence critical to the government's case-in-chief and essential to preparing his defense.

The Court should reject this plainly unfair and baseless demand, and should deny the government's motion.

## CONCLUSION

For the foregoing reasons, the government's motions should be denied.


Date:  May 11, 2018
      New York, New York

                                                        Respectfully submitted,

                                                        */s/ Robert J. Cleary*
                                                        Robert J. Cleary
                                                        Dietrich L. Snell
                                                        Brittany N. Benavidez
                                                        Samantha Springer
                                                        PROSKAUER ROSE
                                                        Eleven Times Square
                                                        New York, New York 10036
                                                        Telephone: 212.969.3000
                                                        Facsimile: 212.969.2900
                                                        rjcleary@proskauer.com
                                                        dsnell@proskauer.com
                                                        bbenavidez@proskauer.com
                                                        sspringer@proskauer.com

                                                        *Attorneys for Defendant Dan Zhong*