UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA,

       v.

DAN ZHONG and LANDONG WANG,

                 Defendants.

------------------------------------------------------------x

Index No. 16-CR-614 (DLI)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT DAN ZHONG'S MOTIONS *IN LIMINE*
REGARDING PRE-2010 ACTS AND NON-A2 OR G2 VISAS**

Robert J. Cleary
Dietrich L. Snell
Samantha Springer
Brittany N. Benavidez
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900

*Attorneys for Defendant Dan Zhong*

Defendant Dan Zhong respectfully submits this reply memorandum of law in further support of his motions *in limine* for an order: (1) precluding the government from offering evidence or making any argument relating to any alleged conduct occurring while Mr. Zhong held diplomatic immunity; and (2) precluding the government from offering evidence relating to alleged false or fraudulently obtained visas that are not A2 or G2 visas.

**ARGUMENT**

**I.    THE GOVERNMENT SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OR MAKING ARGUMENT INVOLVING ANY ALLEGED CONDUCT WHILE MR. ZHONG HELD DIPLOMATIC IMMUNITY**

For the reasons set forth in Mr. Zhong's opposition to the government's motions *in limine* (Dkt. No. 119 at 4-5), the government cannot credibly dispute (1) that any actions that Mr. Zhong may have taken prior to giving up diplomatic immunity in 2010 with respect to China Rilin workers were within the exercise of his official duties at that time as an accredited diplomat and China Rilin worker contracted to perform work for the PRC, or (2) that residual diplomatic immunity attaches to such conduct.  Instead, the government now seeks to sidestep the broad protections afforded by the Vienna Convention on Diplomatic Relations by asserting that residual immunity does not preclude the introduction of evidence concerning protected conduct and that Mr. Zhong has, in any event, waived the protections of residual immunity.  Both arguments should be rejected.

As a preliminary matter, Mr. Zhong's motion (as well as his response to the government's motions *in limine*) references exclusion of evidence concerning conduct that occurred pre-2010.  Upon further examination of the contents of Mr. Zhong's U.S. immigration file with particular focus on the Form I-508 relied on by the government, the defense now believes that Mr. Zhong continued to enjoy diplomatic immunity at least through May 3, 2010, the date that the Form I-508 was executed.  While we recognize that the Court may ultimately

need to decide the terminus of the immunity, for purposes of the pending motions, we request that in granting any relief, the Court order exclusion up to the date when Mr. Zhong gave up diplomatic immunity to become a permanent U.S. resident.  If that date is disputed by the parties, the Court can invite supplemental briefing on the issue and/or resolve the issue at a later date.

As to the merits, the government relies solely on a thinly reasoned and non-precedential unpublished order from the Eastern District of Wisconsin, *United States v. Wen*, No. 04-CR-241 (E.D. Wis. Sept. 12, 2015), to contend that residual diplomatic immunity does not bar the introduction of evidence concerning conduct that is protected by residual immunity.  The government's position, if followed, would essentially obliterate the very concept of residual diplomatic immunity.  Diplomatic immunity serves to ensure that members of diplomatic missions can perform diplomatic functions without fear of interference, including a concern about later legal reprisal by host governments.  *See Swarna v. Al-Awadi*, 622 F.3d 123, 137 (2d Cir. 2010).  Immunity with respect to a diplomat's official acts continues indefinitely even after termination of diplomatic status.  *Id.* at 135.  To permit the government to make evidentiary use of such protected conduct would violate these principles and would chill the conduct of diplomats in a manner at odds with the broad immunity granted to them under the Vienna Convention.  Because, as explained below, these are reciprocal rights, the government's efforts here to shrink that broad protection could have the pernicious effect of diminishing the parallel protection currently afforded former U.S. diplomats who reside abroad.  Absent clear legal authority for doing so – and the government points to none – the Court should decline the government's invitation to undermine the protections of diplomatic immunity through an evidentiary back door, and should recognize Mr. Zhong's residual immunity.

This result is neither "irrational" nor "ridiculous," as the government asserts. (Gov't Opp. (Dkt. No. 121) at 2). Nothing in the interpretation advanced by the defense would prevent the government from offering evidence of a defendant's planning to commit a murder while a diplomat – conduct plainly outside the scope of any official diplomatic duties – in a prosecution for the murder which took place after the defendant ceased to be a diplomat. In such a circumstance, residual immunity would not apply to the planning because it would fall outside of the exercise of the former diplomat's functions as a member of the mission. *See Swarna*, 622 F.3d at 134. Moreover, it is neither "irrational" nor "ridiculous" for the U.S. government to forego the ability to utilize evidence of immunized conduct. This is the very nature of the tradeoffs inherent in providing diplomatic immunity to foreign missions in return for receiving the same protections for U.S. diplomats serving in sometimes hostile nations. The limits imposed on domestic law enforcement resulting from such international agreements reflect an entirely rational compromise to ensure reciprocal protection for U.S. diplomats and former diplomats living abroad.

Further, the government now contends, for the first time, that Mr. Zhong waived any claim of diplomatic immunity through the execution of a Form I-508 when he applied for U.S. permanent residence status in 2010. However, the language in Form I-508 upon which the government relies for this novel argument cannot constitute retrospective waiver of immunity for past protected acts. The government's reading to the contrary clashes with both the plain language and context of the provision, and the nature of diplomatic immunity itself. As shown in Exhibit B to the government's opposition memorandum (Dkt. No. 121-2), the waiver language that appears in the second paragraph of Form I-508 is clearly intended for individuals who at the

time of execution, have "an occupational status" that could entitle them to immunity, as stated in the first paragraph of the same form.

| Last Name | First Name | Middle Name | |
|---|---|---|---|
| I, ZHONG | Dan | | |

believe that I have an occupational status entitling me to a nonimmigrant classification under paragraph 15(A) (Government Official), 15(E) (Treaty Trader or Treaty Investor) or 15(G) (International Organization Representative) of section 101(a) of the Immigration and Nationality Act.

Accordingly, I seek to acquire or retain the status of an alien lawfully admitted for permanent residence and hereby waive all rights, privileges, exemptions, and immunities that would otherwise accrue to me under any law or executive order by reason of such occupational status.

**NOTE:** French Nationals receiving a salary from the French Republic are required to complete Form I-508, and also complete an additional waiver on Form I-508F. Both Form I-508 and I-508F must be submitted together to U.S. Citizenship and Immigration Services (USCIS).

At the time Mr. Zhong executed this form in May 2010, he was seeking to adjust his status from a diplomatic nonimmigrant – who enjoyed the full protection of diplomatic immunity – to a U.S. permanent resident. (*See* Gov't Opp., Ex. B at 2, Part 3(2)(d)). Read in this context, the second paragraph of Form I-508 reflects that in seeking to obtain permanent residence status, Mr. Zhong was agreeing to waive only those rights, privileges and immunities "that *would otherwise accrue*" by reason of his occupational status as a diplomat. The plain meaning of the phrase "would otherwise accrue" is a reference to the acquisition of a right, privilege or immunity *in the future*. And such rights, privileges or immunities could otherwise accrue by reason of the applicant's occupational status as a diplomat. In plain English, the form requires someone seeking to become a permanent U.S. resident to agree that *going forward* they will subject themselves to U.S. law, without diplomatic immunity protection.

To misread the form as a retrospective waiver concerning past conduct is also at odds with the very nature of residual diplomatic immunity, which "'is in reality the immunity of the sending sovereign state.'" *Swarna*, 622 F.3d at 135 (quoting Satow's Diplomatic Practice 131). The government's interpretation thus would permit a former diplomat to waive the legal

4

immunities of the foreign mission for past acts done on behalf of the mission. That is not, and cannot be, the law.[1]

## II.  THE COURT SHOULD EXCLUDE EVIDENCE RELATING TO NON-A2 OR NON-G2 VISAS

The government concedes that there is no basis to offer substantive evidence or argument concerning non-A2 or non-G2 visas. Nonetheless, in misplaced reliance on Federal Rule of Evidence 608(b), the government argues that if Mr. Zhong testifies, it should be permitted to cross-examine him about "false statements in other visa applications, apart from the A2 and G2 visa applications that are the subject of Count Five." (Gov't Opp. at 5). The government misapprehends the proper scope of cross-examination under Rule 608(b).

Rule 608(b) permits cross examination concerning "specific instances of a *witness's* conduct" if they are probative of the "*witness's* character for truthfulness." The government's response does not identify any specific instances of conduct *by Mr. Zhong* with respect to non-A2 or non-G2 visa applications that could form the basis for proper cross-examination. With respect to whose visa applications does the government seek to cross-examine Mr. Zhong? What specific statements in such visa applications are alleged to be false? Who made them? And what if any basis does the government have to demonstrate that any such false statements reflect specific instances of conduct by Mr. Zhong? The government's response provides no basis to answer any of these foundational questions. Without a specific false statement attributable to Mr. Zhong – and the government identifies none – the government cannot properly invoke Rule 608(b).

---

[1] The government's estoppel argument is misplaced for the simple reason that the Form I-508 does not at all mean what the government asserts it means.

As each of the cases cited by the government reflects, it is the witness's *own* prior false statements that a court found to be probative of the witness's character for truthfulness or untruthfulness. *United States v. Triumph Capital Grp., Inc.*, 237 F. App'x 625, 629 (2d Cir. 2007) (defendant appropriately cross-examined about specific instances in which *defendant* made prior false statements); *United States v. Jones*, 900 F.2d 512, 521 (2d Cir. 1990) (affirming use on cross of *defendant's* prior false statements on various applications); *United States v. Kozlovski*, 2011 WL 4916915, at *2 (E.D.N.Y. Oct. 14, 2011) (permitting cross based on *witness's* false statements on time sheets). The government fails to explain how this Court could reasonably conclude that unspecified statements by unspecified individuals at unspecified times could constitute "specific instances of conduct" *by Mr. Zhong* that are probative of *his* character for truthfulness.

Given the government's concession of substantive irrelevance and its meritless reliance on Rule 608(b), evidence concerning visa applications must be limited to the procurement of A2 and G2 visas, as charged in Count V.

## CONCLUSION

For the foregoing reasons set forth herein, in his opening brief (Dkt. No. 116) and in his opposition to the government's motions *in limine* (Dkt. No. 119), Mr. Zhong's motion for an order (1) precluding the government from offering evidence or making any argument relating to any conduct that occurred while he held diplomatic immunity; and (2) precluding the government from offering evidence relating to alleged false or fraudulently obtained visas that are not A2 or G2 visas, should be granted in its entirety.

Date:   May 18, 2018
        New York, New York

Respectfully submitted,

*/s/ Robert J. Cleary*
Robert J. Cleary
Dietrich L. Snell
Samantha Springer
Brittany N. Benavidez
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: 212.969.3000
Facsimile: 212.969.2900
rjcleary@proskauer.com
dsnell@proskauer.com
sspringer@proskauer.com
bbenavidez@proskauer.com

*Attorneys for Defendant Dan Zhong*

7