AAS:DMP/ICR
F. #2015R01787

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                                 Docket No. 16-CR-614 (DLI)

DAN ZHONG and
LANDONG WANG,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# GOVERNMENT'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTIONS *IN LIMINE*

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Alexander A. Solomon
Douglas M. Pravda
Ian C. Richardson
Nicholas J. Moscow
Assistant U.S. Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The defendant's opposition brief is heavy on incendiary rhetoric but light on substantive responses to the government's arguments in its motion in limine. (Def. Opp. 1, ECF No. 119). Indeed, on a number of issues, the defendant asks the Court to defer ruling on issues that will determine the evidentiary parameters of the trial. In the interests of judicial economy, the Court should address these issues pretrial and, for the reasons outlined below and in the government's omnibus motions in limine (Gov't Mot., ECF No. 115), should grant the relief requested by the government.

I. Pre-Indictment Evidence of the Defendant's Misconduct Is Admissible

In an effort to prevent the government from presenting evidence of his knowledge of the means and methods of coercion used by his coconspirators to compel PRC workers to labor in the United States, the defendant makes several arguments that the government should not be permitted to present evidence of conduct pre-dating the conspiracy charged in the indictment.

First, the defendant repeats his argument that his prior status as a PRC diplomat provides him with an evidentiary privilege that not only prohibits the government from prosecuting him for his conduct while he held diplomatic status, but also prevents the government from offering any evidence from the time period in which he held diplomatic status. (Def. Opp. 4-5). This argument is without merit for the reasons stated in the government's memorandum in opposition to the defendant's motions in limine. (See Gov't Opp. 1-4, ECF No. 121). Although "evidentiary privileges in litigation are not favored," Herbert v. Lando, 441 U.S. 153, 174–75 (1979), and the proponent of a privilege bears the heavy burden of "establishing the existence of a privilege and its applicability to a particular case," In re Grand Jury Subpoenas Dated Jan. 20, 1998, 995 F. Supp. 332, 334 (E.D.N.Y. 1998) (Raggi, J.), the defendant cites no case, rule of evidence, treaty or statute that recognizes the existence of a diplomatic evidentiary privilege. The sole statute cited

1

by the defendant provides for dismissal of "[a]ny <u>action or proceeding</u> brought against an individual who is entitled to immunity with respect to <u>such action or proceeding</u>." 22 U.S.C. § 254d (emphasis added). But as the defendant recognizes in his brief (Def. Opp. 5), the defendant has not been charged for his conduct as a diplomat and § 254d does not help him.

Next, the defendant argues that his participation in the forced labor scheme as an employee of <u>China</u> Rilin before the period of the forced labor scheme charged in the indictment is not proof of that he used coercion to compel the workers as the president of <u>U.S.</u> Rilin and instead is a prejudicial variance of the time period charged in the indictment. (Def. Opp. 5-7). He similarly argues that this evidence is not admissible under Federal Rule of Evidence 404(b), and that the risk of unfair prejudice from its admission would substantially outweigh its probative value under Rule 403. (Def. Opp. 7-10).

Each of these arguments turns on the defendant's assertion that evidence of his past participation in the Rilin forced labor scheme is irrelevant to establishing his knowledge of and agreement to use coercion to compel the PRC workers to labor during the period in the indictment. The government expects to prove that the defendant became familiar with and used various methods of coercion and control over Rilin's PRC workers as an employee of <u>China</u> Rilin, including by forcing workers to sign the same debt-bondage contracts that were used during the period charged in the indictment. The consistency between the means and methods of coercion used by Rilin throughout the period when the defendant supervised their work as formally an employee of <u>China</u> Rilin, and the means and methods of coercion used by Rilin to control the workers when the defendant—now formally the president of <u>U.S.</u> Rilin—forced them to do private contracting work, is strong evidence that the defendant knowingly and intentionally agreed to participate in a conspiracy to force the workers to work on private projects during the

2

time period charged in the indictment. While the defendant claims that the government's evidence will be limited to uncharged conduct in 2001 and 2002 (see Def. Opp. 5-6), the government stated in its motions in limine that Rilin's efforts to use debt bondage contracts to compel PRC workers to labor in the United States "spanned this entire period" from 2001 to the defendant's arrest, (Gov't Mot. 15). Inasmuch as the defendant emphasizes that he was working for U.S. Rilin and not China Rilin during the period charged in the indictment (see Def. Opp. 5 (adding emphasis to "U.S." and "China")), the evidence is all the more relevant to prove that he knew of and used coercion to compel the PRC workers who were China Rilin employees to labor on private, non-PRC government work though he was not formally employed by China Rilin.

II.     PRC Legal Documents Are Admissible Verbal Acts

Complaining that the government has not produced PRC legal documents or identified witnesses to authenticate such documents, the defendant argues that the Court should defer ruling on the admissibility of such materials. However, the government has already proffered that these PRC legal documents—for which the Court has authorized delayed disclosure—comprise either underlying employment contracts calling for the forfeiture of property in the event the Rilin workers fled from Rilin custody or actual forfeiture orders.[1] The government has further proffered that aggrieved family members in the PRC provided these documents to the victim workers who had fled.

---

[1] While vigorously claiming that the government has not produced any PRC legal documents in Rule 16 discovery, the defendant ignores the fact that the criminal complaint quotes extensively from one such employment debt bondage contract requiring the Rilin employee to post RMB150,000 (then equal to approximately $22,000) prior to traveling to the United States. (See Compl. ¶¶ 12-14). The government has already produced this document, obtained via search of an email premises, to the defense. Notably, the contractual language is substantially similar to that found in other employment contracts the government intends to offer at trial.

3

While the government agrees that the Court can address questions of authenticity at trial—at which time the government expects witnesses with knowledge to testify about the PRC legal documents and sufficiently identify any distinctive characteristics therein to satisfy the authentication requirements, see Fed. R. Evid. 901(b)—the Court can, as an initial matter, determine that legal documents such as employment contracts constitute admissible verbal acts. While conceding that the government seeks to offer these materials "for non-hearsay purposes," (Def. Opp. 11), the defense does not point to any contrary authority suggesting that employment contracts or forfeiture orders are not verbal acts. See, e.g., United States v. Dupree, 706 F.3d 131 (2d Cir. 2013) (holding that restraining order is a verbal act).

III.    Evidence and Argument Regarding PRC Law Are Inadmissible

The Court should reject any attempt by the defense to offer evidence or arguments concerning the legality of debt bondage employment contracts under PRC law, as the government is not proceeding on a theory of abuse of legal process in the PRC as to the defendant and Rilin's use of these contracts generally. Rather, the government expects to argue that the debt bondage employment contracts constitute evidence of "serious harm or threats of serious harm" to victim workers. 18 U.S.C. § 1589(a)(2). Indeed, the statutory definition of "serious harm" includes:

> any harm, whether physical or nonphysical, including psychological [or] financial . . . , that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2) (emphasis added); see Paguirigan v. Prompt Nursing Employment Agcy. LLC, 286 F. Supp. 3d 430, 438 (E.D.N.Y. 2017) (Gershon, J.) ("The threat of financial harm constitutes serious harm within the meaning of [Section 1589].").

4

Evidence or arguments pertaining to the legality of forced labor contracts under PRC law are irrelevant to the question of whether the victims reasonably perceived the threat of serious financial harm sufficient to continue working for the defendant's company, see Butler v. United States, 992 F. Supp. 2d 165, 179 (E.D.N.Y. 2014) (Weinstein, J.) (explaining that proof of a violation of "foreign law" is not required to prove wire fraud), and moreover, if admitted, would undoubtedly confuse and mislead the jury); United States v. Tapout, No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017). Accordingly, the government has properly moved to preclude introduction of evidence or argument regarding the legality of forced labor or debt bondage contracts in the PRC.

Notably, the government's abuse of legal process theory of prosecution pertains solely to an episode in which Rilin employees photographed a victim (the "Victim") with a stack of currency belonging to Rilin, which the Victim was told totaled RMB1 million. Rilin employees told the Victim that if he escaped while in the United States, the photograph would be used as evidence that Rilin had lent the money to the Victim, and it would be used to obtain a court judgment against the Victim for the value of the money—a judgment which in fact Rilin obtained after the Victim's escape from Rilin custody. To the extent that the defense can proffer any applicable PRC legal authority permitting such extortion practices, the government will not object to admission of such evidence or argument at trial.

IV. Victim Witnesses Should Be Permitted To Testify Using Pseudonyms

Significantly mischaracterizing the basis for the government's request that victims be permitted to testify using pseudonyms, the defense argues that the government has not provided adequate justification for its request. But the defendant's suggestion that the only basis is a single instance of violence committed 16 years ago (Def. Opp. 15) ignores the government's summary of Rilin's history of retaliation against victim escapees, including Rilin's use of

5

rendition squads to abduct victims after their escapes (including the defendant's use of such a search team in 2010) and Rilin's efforts to seize property from victims and friends and family members of victims, including initiating litigation to seize real property. (Gov't Mot. 2-4, 25). Moreover, far from expressing only "general concern" about withholding victim information on safety grounds (Def. Opp. 15), the government has previously set forth at length specifics concerning Rilin's threats to the safety of victims and government witnesses in its March 6 and November 1, 2017 <u>ex parte</u> filings in support of withholding information for safety reasons.

The defendant relies on <u>Smith v. Illinois</u>, 390 U.S. 129 (1986), to argue that the name and address of a testifying witness (an informant) are essential to effective cross-examination. (Def. Opp. 16). But in that case, Illinois made no showing why the informant could not testify as to his name and address. <u>See</u> <u>Smith</u>, 390 U.S. at 134 (White, J., concurring). Here, in contrast, the government has set forth an adequate factual basis for the relief it seeks.

Finally, because the government will disclose the names of victim witnesses and testifying family members of victim witnesses to defense counsel, the defense team will have the opportunity to conduct their own investigation of such witnesses. Rather than engaging meaningfully with the government's proposed protective order, the defendant instead asserts that "ambiguities" in the proposed order should lead the Court to reject it outright. (Def. Opp. 16 n.6). The government disagrees that there are any ambiguities, but is prepared to discuss modifications deemed appropriate by the Court. A protective order is necessary to protect the victims and their family members while preserving the defendant's confrontation rights.

V.     <u>Copies of Documents in Possession of Fleeing Rilin Workers Are Admissible</u>

As to the time sheets copied from Rilin workers fleeing the United States at the direction of codefendant Landong Wang, the defense again seeks to avoid pretrial adjudication of evidentiary issues by claiming that the government will be unable to authenticate evidence

6

offered at trial. The Court should ignore the defendant's invitation to delay all evidentiary rulings until trial, (see Def. Opp. 21 (arguing that the time sheets are inadmissible because, inter alia, they "likely will prove to be unduly prejudicial under Rule 403")), and should determine, as an initial matter, that the materials constitute coconspirator statements and/or business records.

As outlined in the government's omnibus motion papers, the time sheets—all signed by Landong Wang—contain Landong Wang's coconspirator statements as to Rilin's practice of not paying victim workers for months or years of completed work until the workers returned to the PRC and submitted the signed time sheets. They thus constitute evidence of the threat of serious financial harm and the Court should find them admissible through the coconspirator exception to the hearsay rule. See United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). Alternatively, assuming that the testimony of a government witness satisfies the requirements of Federal Rule of Evidence 803(6), the Court should rule that the time sheets qualify under the business records exception to the hearsay rule. See United States v. Kaiser, 609 F.3d 556, 574-75 (2d Cir. 2010) (holding that cooperating witness's notes of telephone conversations were admissible business records).

VI. The Defendant's Obstructive Conduct Is Evidence of Consciousness of Guilt

The defendant opposes the introduction of evidence of the defendant and his coconspirators' obstructive conduct, but does not offer a single case in support of his position. That is because the law is clear that evidence of a defendant's efforts to impede an investigation into his conduct is probative of consciousness of guilt. See, e.g., United States v. Mastropieri, 685 F.2d 776, 790 (2d Cir. 1982) ("There can be no doubt that an attempt to suppress [evidence] permits an inference of consciousness of guilt and therefore of guilt itself.") (Friendly, J.) (citations omitted)); United States v. Ahmed, No. 14-CR-277 (DLI), 2016 WL 8732355, at *10

(E.D.N.Y. June 24, 2016) (admitting evidence of a wire transfer after the charged crime as evidence of consciousness of guilt).

The defendant raises two discernible objections, neither of which is persuasive. First, the defendant claims that the government has not identified with particularity the evidence that it will use to prove every act that the defendant and his coconspirators took to obstruct the investigations. (See Def. Opp. 22). In fact, the government has indicated that (1) witnesses with personal knowledge will testify to the obstructive conduct of the defendant and his coconspirators, (see Gov't Mot. 7-9), and (2) "the defendant directed family members to hide assets and possibly evidence" during "recorded calls" while incarcerated, (id. at 28; see also Gov't Opp. 3-4, ECF No. 122).[2] The defendant has not argued, nor is there a basis to conclude, that the evidence should be suppressed because the government has not revealed the identity of a confidential source with personal knowledge as to the subject of his or her testimony.

Second, the defendant argues that the government's obstruction evidence improperly includes acts of his direct subordinate, Landong Wang, and other coconspirators. (Def. Opp. 21-22). This argument is misplaced. There is ample authority to support the introduction of evidence that coconspirators took steps to conceal their guilt if the defendant knew of, or was involved in, those efforts. See United States v. Pirgousis, 290 F. App'x 388, 391 (2d Cir. 2008) (unpublished); Mastropieri, 685 F.2d at 791. In this case, some of the evidence that the defendant knew of and approved of the obstructive steps (such as testimony regarding the relationship between the defendant—the principal of Rilin—and his coconspirator and deputy Landong Wang, (see Gov't Mot. 28)) is circumstantial—but that does not mean that

---

[2] Also without authority, the defendant argues that the Court should not rule on the admissibility of any recorded calls because the government has not provided translations of the pertinent phone calls.

8

it is nonexistent or otherwise inadmissible. See United States v. Lopez-Monzon, 850 F.3d 202, 207 (11th Cir. 2017) (affirming the admission of "circumstantial evidence of consciousness of guilt" (alterations and citation omitted)). Moreover, evidence that members of the charged conspiracy took steps to further the aims of the conspiracy, one of which "was to obstruct the Government's investigation into their ongoing [criminal] operation," constitutes direct evidence of the conspiracy. United States v. Robinson, 635 F.2d 981, 986 (2d Cir. 1980).

VII.   The Redfield Affidavit

As with the issues of the PRC legal documents and the documents copied from PRC workers, the defense seeks to preclude the Court from making the evidentiary ruling as to whether, if the defense inquires on cross-examination as to the Redfield Affidavit, the government can inquire as to the background of the document on redirect. Surely, at this procedural juncture, it is preferable to craft boundaries that would "ensure the government a fair opportunity to present any relevant facts while safeguarding Mr. Zhong from unfairly prejudicial attacks against the professionalism and integrity of prior counsel," (Def. Opp. 23), rather waiting until a sidebar following cross-examination of Redfield to do so.

VIII.   The Court Should Preclude Defense Exhibits Not Produced in Reciprocal Discovery

The defendant asserts that the government "has yet to fulfill its discovery obligations," in substantial part because the government has withheld, pursuant to a protective order entered by the Court, certain materials until 120 days before trial. (Def. Opp. 24). This argument is disingenuous. The government has produced hundreds of thousands of pages of discovery. As to any outstanding discovery, much includes providing specifically requested

9

documents and limited documents that the Court has authorized the government to withhold until 120 days before trial.

The government should not be forced to elect between litigating every defense discovery request (of which there have been a substantial number) or forgoing any opportunity to receive reciprocal discovery. Instead, once the government has made it clear that it is complying with its discovery obligations, even if there remain loose ends, the defense must comply with its discovery obligations. See, e.g., United States v. Abrams, 539 F. Supp. 378, 391 (S.D.N.Y. 1982) (identifying remaining matters for government to produce, but noting that "government is adequately complying with its obligations under [Rule 16]" and "grant[ing] the government's motion for reciprocal discovery"); see generally United States v. Smith, 985 F. Supp. 2d 506, 521 (S.D.N.Y. 2013); United States v. LoBlue, 761 F. Supp. 56, 57 (N.D. Ill. 1990).

The government has requested that the defendant be given a reasonable deadline by which to complete reciprocal discovery. (See Gov't Mot. 29). The defendant blithely responds that he "and his counsel will need sufficient time to review and investigate all of the newly produced material before a determination can be made as to the evidence the defense intends to use in its case-in-chief at trial." (Def. Opp. 24). This same logic cuts both ways, as does the need to avoid trial by surprise. Cf. Tyson v. Trigg, 50 F.3d 436, 445 (7th Cir. 1995) ("No one doubts that criminal defendants like other parties to litigation can be subjected to reasonable rules regulating discovery. The central aim of such rules is to minimize surprise at trial . . . ."); United States v. Allen, 337 F. Supp. 1041, 1043 (E.D. Pa. 1972) ("Rule 16(c) was intended to eliminate surprise regarding exculpatory evidence . . . .").

## CONCLUSION

For the reasons stated above, the Court should grant the relief sought in the government's omnibus motions in limine.

Dated: Brooklyn, New York
       May 18, 2018

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        United States Attorney

By:    /s/Alexander A. Solomon
           Alexander A. Solomon
           Douglas M. Pravda
           Ian C. Richardson
           Nicholas J. Moscow
           Assistant U.S. Attorneys
           (718) 254-7000