Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

July 25, 2018

Robert J. Cleary
Member of the Firm
d 212.969.3340
f 212.969.2900
rjcleary@proskauer.com
www.proskauer.com

**By ECF**

The Honorable Dora L. Irizarry
Chief United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Dan Zhong*
                Criminal Docket No. 16-614 (DLI)

Dear Chief Judge Irizarry:

     We write in response to the government's supplemental letter brief concerning defendant Dan Zhong's diplomatic immunity as it relates to the pending motions *in limine* filed by both Mr. Zhong and the government regarding the government's intention to introduce evidence about pre-2010 acts.  (Dkt. No. 130).  Both motions have been fully briefed (Dkt. Nos. 115-117, 119, 121-125) and were argued by the parties before Your Honor at the pretrial conference that took place on June 20, 2018.

     At the June 20 conference, the Court requested, and the government agreed to submit, supplemental briefing on just one very narrow issue: the government's position – raised for the first time at the conference – that Mr. Zhong lacks diplomatic immunity because he was "improperly notified" by the People's Republic of China ("PRC") to the U.S. Department of State ("DOS") as a registered diplomat.  (*See* Tr. 12:17-21, 13:21-22).  Far from supporting this eleventh hour claim, the DOS Certification attached to the government's letter conclusively refutes it.  Not surprisingly, the government has completely abandoned that argument.

     Specifically, the government now concedes – as it must, based on the Certification – that DOS *was appropriately notified* as to Mr. Zhong's diplomatic status and that he therefore continues to hold "residual immunity for any official conduct occurring between April 3, 2002 and November 27, 2009."  (Dkt. No. 130 at 1).  Indeed, the record contains no evidence that might call into question Mr. Zhong's ability to assert diplomatic immunity.  At the very outset of this case, the government explicitly recognized in its Complaint that Mr. Zhong "*was an accredited diplomat*" from 2001 through 2009 (Dkt. No. 1, ¶ 8) (emphasis added).  And even at the June 20 conference, the government similarly represented to the Court that Mr. Zhong retains "residual immunity as to his official acts between roughly 2001, and November of 2009.  *That is our position*." (Tr. 11:5-13) (emphasis added).

**Proskauer»**

The Honorable Dora L. Irizarry
July 25, 2018
Page 2

Instead of restricting itself to the sole issue identified by the Court for supplemental briefing, the government has converted the Court's request into a license to respond further to arguments the defense advanced in its motion papers and at the June 20 conference, arguments the government ignored in its briefs and oral argument. The Court should reject the government's letter on this basis alone.

But even on the merits, the government's attempt to re-argue fails. In both his motion to exclude pre-2010 evidence on immunity grounds and his opposition to the government's mirror-image motion to admit such evidence, Mr. Zhong argued in detail that he has residual diplomatic immunity for any alleged acts pre-dating 2010 because those acts were performed, if at all, "in the exercise of official functions." (*See* Dkt. No. 116 at 3 and Dkt. No. 119 at 4-5, citing *United States v. Khobragade*, 15 F. Supp. 3d 383, 386 (S.D.N.Y. 2014) and *Swarna v. Al-Awadi*, 607 F. Supp. 2d 509, 518 (S.D.N.Y. 2009) (recognizing residual diplomatic immunity for, among other things, the "act of hiring and employing an individual to work at the diplomatic mission"), *affirmed in part and vacated in part,* 622 F.3d 123 (2d Cir. 2010)).

The government tellingly concedes that "some of the conduct at issue, such as the defendant's ministerial decisions regarding the deployment of PRC construction workers at various construction sites does 'fall within the ambit of the [defendant's] professional responsibility.'" (Dkt. No. 130 at 4, quoting *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010)). The reality of Mr. Zhong's job responsibilities during the pre-indictment phase compels this concession. Yet, the government now urges that Mr. Zhong's alleged participation in attempts to find China Rilin workers who absconded somehow exceeded his "official duties." The government is wrong. The forced labor allegations relating to pre-indictment conduct that the government seeks to introduce – allegations that Mr. Zhong categorically denies – fall squarely within the scope of Mr. Zhong's alleged official managerial responsibility to supervise (according to the government) employees who performed construction work at the PRC Mission. (*See* Dkt. No. 116 at 5; Dkt. No. 119 at 5; June 20 Tr. 25:18-26:8). The sudden disappearance of certain workers plainly would have jeopardized China Rilin's ability to fulfill its contractual obligations to the PRC Mission; it therefore would have been entirely appropriate for, if not incumbent upon, the company and its management to attempt to locate the missing workers.

Rather than proffer any further evidence of Mr. Zhong's alleged "non-official" conduct regarding the workers, the government relies on more generalities, like those that riddle so many of its statements in this case. Nowhere in any of the government's vague but rhetorically charged offers of proof on this issue is there any allegation that Mr. Zhong personally participated or otherwise was involved in any violence or use of force. (*See* Dkt. No. 115 at 3; Dkt. No. 119 at 3). And in any event, the government's exaggerated characterization of the alleged search conduct utterly fails to render such conduct non-official. Simply put, any actions that Mr. Zhong allegedly took with respect to China Rilin workers who absconded from their

Case 1:16-cr-00614-AMD   Document 133   Filed 07/25/18   Page 3 of 4 PageID #: 3157

**Proskauer»**

The Honorable Dora L. Irizarry
July 25, 2018
Page 3

assigned projects at PRC facilities would have reflected an exercise of his official duties in connection with the company's construction contract with the PRC government.[1]

      Next, the government rehashes its fully briefed and argued position that the pre-indictment conduct at issue is "necessary background" to the charged conspiracy or, in the alternative, admissible under Rule 404(b). (Dkt. No. 130 at 5). The government's untenable claim that Mr. Zhong's participation in isolated and vaguely described pre-2002 search efforts is not protected by his diplomatic immunity – in addition to being inconsistent with the government's position elsewhere that Mr. Zhong did have immunity from 2001 through 2009 – fails to support admission of such extraordinarily stale evidence on either ground. Indeed, the government's letter does not even attempt to address the significant "problem" that the Court identified at the June 20 conference: the "huge gap" of at least eight years between the uncharged alleged conduct of 2001-2002 and the indictment period, 2010-2016. (Tr. 16:12-13). Nowhere does the government allege *any* intervening evidence of physical restraint during the gap period. Further, for the reasons stated in Mr. Zhong's opposition to the government's motions *in limine*, the uncharged conduct is not in any way "direct evidence" of the charged forced labor scheme; nor is it probative of Mr. Zhong's supposed "intent, planning, or knowledge" of the charged conduct or evidence of a "common scheme or plan," as required for admission under Rule 404(b). (*See* Dkt. No. 119 at 5-9). Moreover, the government's repeated insistence that the ancient alleged conduct constitutes essential "direct evidence" of the charged conspiracies fatally undermines its simultaneous denial that it is attempting to prosecute Mr. Zhong for acts he allegedly committed while possessing diplomatic immunity.

      Even if some valid basis existed for the admission of the uncharged conduct, preclusion nevertheless would be appropriate because any minimal probative value of the proffered evidence is substantially outweighed by the great danger of unfair prejudice under a Rule 403 analysis. (*See id.* at 9-10). On this score, the government's letter provides a troubling preview of how it intends improperly to use spurious evidence of the uncharged conduct to brand Mr. Zhong with "repeated participation in kidnapping and abducting unwilling victims" and leading "efforts to abduct escaped workers by force" (Dkt. No. 130 at 1, 5), even though *none* of the government's cited examples of forceful worker abduction involve Mr. Zhong at all. According to the government, two workers would testify that they were physically assaulted by "rendition

---

[1] None of the cases the government cites are to the contrary; in fact, they lend support to the defense position, either by contrast or directly. *See, e.g., Swarna*, 622 F.3d at 137 (diplomat not immune from acts arising from his employment relationship with domestic servant "employed to meet [diplomat's] and [diplomat's] family's *private* needs and not any mission-relation functions") (emphasis added); *Brzak*, 597 F.3d at 113 (affirming dismissal of sex discrimination and retaliation in violation of Title VII, as well as RICO and state common law tort claims against former UN officials where alleged conduct related to "acts that the defendants performed in exercise of their official functions, namely, their management of the office in which the plaintiffs worked"); *Baoanan v. Baja*, 627 F. Supp. 2d 155, 168 (S.D.N.Y. 2009) (no residual immunity for diplomat against claims brought by domestic servant who was employed "to perform *private*, domestic services") (emphasis added).

**Proskauer»**

The Honorable Dora L. Irizarry
July 25, 2018
Page 4

squads" of "Rilin personnel" – *personnel who, according to the government's own submission, did not even include Mr. Zhong* – with one worker allegedly suffering "a laceration" and the other allegedly being "similarly beat[en]." (Dkt. No. 115 at 3). Any such testimony obviously would be far more inflammatory and prejudicial than any alleged act by Mr. Zhong that, according to the government, took place within the indictment period.

  Finally, the government futilely attempts to re-argue the applicability of *United States v. Ning Wen*, Case No. 04-CR-241 (E.D. Wis.). Although, as with the majority of the government's letter, the discussion of *Wen* extends far beyond the scope of what was supposed to be a limited briefing, a short response is warranted here. First, as noted in Mr. Zhong's reply brief (Dkt. No. 123 at 2), the unpublished order in *Wen* contains virtually no analysis and is neither controlling nor directly on point. Second, the defendant in *Wen* was a diplomat from January 1, 1987 through March 15, 1992, the day before the start of the indictment period in that case. The evidence the government sought to admit was from 1991, immediately prior to the commencement of the indictment period. Here, the government is seeking to admit evidence of conduct that supposedly occurred *at least eight years* prior to the indictment period. Third, the pre-indictment evidence that the government sought to admit in *Wen* apparently had no prejudicial impact under Rule 403 and represented a classic example of demonstrating background and showing a defendant's knowledge under Rule 404(b). In the present case, by contrast, the government seeks to use evidence of uncharged conduct for far more than just background or to establish a Rule 404(b) purpose. To the contrary, admission of this evidence would enable the government, in essence, to prosecute Mr. Zhong specifically for acts alleged to have taken place while he was an accredited diplomat and undeniably had immunity. As explained in Mr. Zhong's reply brief and as elaborated at oral argument, to permit the government to make evidentiary use of this protected conduct would violate the fundamental principles and vital policies underlying the doctrine of diplomatic immunity. (*See* Dkt. No. 123 at 3; Tr. 26:18-27:10).

  For all the foregoing reasons, and for the reasons stated in Mr. Zhong's opening and reply briefs (Dkt. Nos. 116, 123) and in his opposition to the government's motions *in limine* (Dkt. No. 119), as well as those reasons articulated at oral argument, the Court should preclude any evidence or argument involving any alleged conduct while Mr. Zhong held diplomatic immunity.

              Respectfully submitted,

              */s/ Robert J. Cleary*
              Robert J. Cleary

cc: AUSA Alexander A. Solomon (by ECF)
   AUSA Douglas M. Pravda (by ECF)
   AUSA Ian C. Richardson (by ECF)
   AUSA Nicholas J. Moscow (by ECF)