

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AAS/NJM | *271 Cadman Plaza East* |
| F. #2015R01787 | *Brooklyn, New York 11201* |

August 1, 2018

<u>By Hand Delivery and ECF</u>

The Honorable Dora L. Irizarry
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Dan Zhong
      <u>Criminal Docket No. 16-614 (DLI)</u>

Dear Chief Judge Irizarry:

  The government respectfully submits this reply brief regarding the issue of diplomatic immunity.

  As an initial matter, the defendant's July 25, 2018 submission does not contest the fact that most of the abductions of which the government is aware—from 2001 and early 2002—occurred prior to conferral upon the defendant of any diplomatic immunities and privileges. This fact alone renders almost entirely irrelevant the defendant's motion for application of an evidentiary privilege based solely on residual immunity.

  Below, the government addresses certain factual and legal inaccuracies found in the defendant's submission.[1]

  <u>First</u>, the defendant's suggestion that directing rendition squads to abduct workers who escaped from China Rilin custody constituted an "official managerial

---

[1] The government's July 18, 2018 submission was not, as the defendant argues, an improper sur-reply. At the June 20, 2018 oral argument, the government offered to obtain a certification from the Department of State addressing the applicable dates of the defendant's diplomatic privileges and immunities. (Tr. 11-12). The July 18, 2018 submission included such a certification and discussed the facts raised in the certification in the context of any outstanding issues regarding diplomatic immunity.

responsibility to supervise . . . employees" is nonsensical. (Def. Br. at 2). A recent district court decision from the District of Columbia—entirely unaddressed in the defendant's submission—makes clear that diplomatic protections do not cover all activities engaged at a defendant's official post. In United States v. Sharaf, 183 F. Supp. 3d 45 (D.D.C. 2016), the court rejected the argument that a money laundering scheme orchestrated from the defendant's place of official employment constituted protected activity. "Merely because the defendant may have engaged others with whom she worked in corrupt activities does not, however, cloak her actions with the immunity intended to protect the exercise of her official functions." Id. at 54. While the government agrees that the defendant's responsibilities in this case could theoretically have included efforts to "locate . . . missing workers," (Def. Br. at 2), the way in which the defendant sought to accomplish that goal matters. Instead of contacting local authorities or leading a peaceful search effort, the defendant directed extra-judicial kidnapping squads that roamed the streets of New York City and physically abducted noncompliant victims. It strains credulity to assert that this conduct constituted an "exercise of . . . official functions." Sharaf, 183 F. Supp. 3d at 54.

  Second, the defendant incorrectly claims that the government fails to allege that "Mr. Zhong personally participated or otherwise was involved in any violence or use of force." (Def. Br. at 2); see (id. at 3-4). Indeed, at oral argument, the government rebutted this very assertion by proffering that the defendant himself directed these kidnapping efforts in 2001 and 2002, as he later did in 2010. (Tr. at 22); see (Gov't Ltr. 7/18/18 at 5 ("[T]he defendant's efforts to abduct escaped workers by force during 2001 and early 2002 are not subject to any diplomatic or consular protection.")). A party who directs such kidnapping squads is least as culpable as the parties who execute orders to abduct victims by force. Cf. United States v. Littrell, 478 F. Supp. 2d 1179, 1190 (C.D. Cal. 2007) (describing as "more culpable" than the murderer the individuals who ordered the murder).

  Third, any "gap" between the uncharged conduct and the indictment period is a result of the uncharged conduct itself and is, together with the uncharged conduct, helpful in understanding the charged conduct. (Def. Br. at 3). As the government noted during oral argument:

> The use of the bondage contracts, was throughout. And, the persons, the escapees who are the subject of rendition efforts by the defendant, and other members of China Rilin, entered into the same bondage contracts that the workers who did not escape between 2002, and 2010, entered into.
>  Moreover, in 2010, when one of the workers escaped again, the evidence will show that this defendant sent a rendition squad to attempt to locate the escapee.
>  The mere fact that the rendition squad was unsuccessful in locating the escapee, does not mean that the conduct in 2001, 2002, is more inflammatory than what occurred in 2010.

(Tr. at 22). Similarly without merit is the suggestion that the government failed to "allege any intervening evidence of physical restraint during the gap period." (Def. Br. at 3). As

2

noted during oral argument, the defendant and his criminal associates increased the collateral required of workers entering the United States, in response to the number of escapes in 2001 and 2002. (Tr. at 18). Moreover, the workers who did not attempt to escape during the so-called "gap" were aware of the measures that the defendant had taken against their predecessors and presumably understood that any attempt to escape would result in kidnapping and assault, in addition to the loss of their family's home in China. Accordingly, the fact that no workers escaped during the "gap" period simply manifests the effectiveness of the increased restraint used on the victim workers and the victims' reasonable fear of physical force.

Finally, the defendant's efforts to distinguish United States v. Ning Wen, Case No. 04-CR-241 (E.D. Wis.) are misplaced. While the defendant repeats his claim that Ning Wen "contains virtually no analysis," (Def. Br. at 4), the defendant fails to proffer any statute, treatise, case, or rule of evidence to support an entirely novel evidentiary privilege based solely on residual immunity. Moreover, the government is not seeking to offer evidence that occurred "at least eight years prior to the indictment period." (Def. Br. at 4 (emphasis in original)). Rather, as in Ning Wen, the government is seeking to offer evidence that occurred over a long period of time immediately prior to the indictment period.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/ Alexander A. Solomon
      Alexander A. Solomon
      Douglas M. Pravda
      Ian C. Richardson
      Nicholas J. Moscow
      Assistant U.S. Attorneys
      (718) 254-7000

cc:    Defense counsel (by ECF)
       Clerk of Court (DLI) (by ECF)