

Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

November 8, 2018

Robert J. Cleary
Member of the Firm
d +1.212.969.3340
f 212.969.2900
rjcleary@proskauer.com
www.proskauer.com

**By ECF**

The Honorable Dora L. Irizarry
Chief United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   *United States v. Dan Zhong*
      Criminal Docket No. 16-614 (DLI)

Dear Chief Judge Irizarry:

We represent Dan Zhong in the above-referenced action. We write concerning several discovery issues in anticipation of the upcoming status conference scheduled for November 13, 2018. In accordance with Local Criminal Rule 16.1, we have been discussing these issues with the government for many months in an effort to avoid having to seek judicial intervention. This effort, however, has proven unsuccessful.[1] In light of the fast-approaching January 7, 2019 trial date, these issues are ripe for the Court's consideration, and the defense respectfully requests that the Court treat this letter as a motion to compel production, under Rule 16.

Consistent with its track record of hamstringing the defense at every turn,[2] the government continues to take an impermissibly narrow view of its discovery obligations and has redacted, or withheld entirely, documents and information to which Mr. Zhong is entitled. Mr. Zhong, through counsel, has requested production of four categories of documents or information:

- Unredacted versions of documents relating to the forced labor charges;

---

[1] Pursuant to Local Criminal Rule 16.1, the undersigned declares under penalty of perjury that counsel for Mr. Zhong have conferred with counsel for the government and have been unable to resolve the issues presented herein.

[2] On several occasions, Mr. Zhong has requested this Court's assistance to address the government's reliance on vague generalities in its filings and its unjustifiable redaction of discovery materials. For example, the government's skeleton Indictment failed to identify the false statements referenced in the visa fraud charge, requiring this Court to order the government (1) to provide Mr. Zhong with a bill of particulars, and (2) to amend the initial bill of particulars to address its deficiencies. (Dkt. No. 77 and Feb. 8, 2018 order). Similarly, this Court had to intervene to correct the government's wholesale redaction of the search warrant affidavit for Mr. Zhong's email account and ordered the government to provide the unredacted affidavit on an "attorneys' eyes only basis." (Dkt. No. 82). And, as the Court observed at the last status conference, the government "just isn't forthcoming" and "has not been cooperative" with the defense in arranging Rule 15 depositions. (Oct. 3, 2018 Tr. at 6:16-21).

**Proskauer»**

The Honorable Dora L. Irizarry
November 8, 2018
Page 2

- Identification of the sources of electronically stored information produced by the government pursuant to Rule 16;

- Communications between the Department of State ("DOS") and the Department of Justice ("DOJ") concerning the investigation underlying the Indictment; and

- Additional visa applications relating to the 53 individuals the government has characterized as the "victims" of Mr. Zhong's alleged criminal conduct.

The government has refused the first three requests outright. While implicitly acknowledging both the existence of documents responsive to the fourth request and its obligation to produce them, the government has failed to do so.

Accordingly, Mr. Zhong seeks an order compelling the government to comply with its discovery obligations pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny,[3] and to produce the requested documents and information forthwith. Rule 16 requires the government to produce certain categories of information, including evidence "material to preparing the defense." Rule 16(a)(1)(E)(i). Evidence is material if it "could be used to counter the government's case or to bolster a defense." *United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993). The materiality standard of Rule 16 "normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Messina*, 2011 WL 3471511, at * 1 (E.D.N.Y. Aug. 8, 2011) (quoting *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007)). Similarly, under *Brady*, the government must disclose evidence favorable to an accused when such evidence is material to guilt or punishment because it is exculpatory or impeaching. *Brady*, 373 U.S. at 87-88.

A. **Redacted Documents Produced Pursuant to Rule 16**

Without the benefit of any protective order, the government has granted itself license to redact critical information from certain Rule 16 discovery materials, namely, identifying information regarding potential witnesses. The redacted material clearly is "material to preparing the defense" within the meaning of Rule 16(a)(1)(E)(i).

The Indictment charges Mr. Zhong with crimes falling essentially into two categories: forced labor (Counts One, Two and Three) and visa fraud (Counts Four and Five). The forced

---

[3] Mr. Zhong's request for *Brady* material includes disclosures due pursuant to *Kyles v. Whitley*, 514 U.S. 419, 432-40 (1995), *United States v. Bagley*, 473 U.S. 667 (1985), *United States v. Agurs*, 427 U.S. 97 (1976), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny. *See United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) ("Favorable evidence" that must be disclosed for purposes of *Brady* "includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness," also known as "*Giglio* material.").

**Proskauer»**

The Honorable Dora L. Irizarry
November 8, 2018
Page 3

labor charges allege that the China Rilin workers (the "Workers") were compelled to work by means of "physical restraint." (*See* Dkt. No. 1 ¶¶ 7, 17-22; *see also* Dkt. No. 20 ¶¶ 1-2). In support of this charge, the government has cited housing inspections conducted in 2011 and 2013 of three residences in Jersey City where the Workers resided. (Dkt. No. 1 at ¶¶ 17-22). Those inspections allegedly revealed hazardous living conditions at the Workers' residences and, specifically, that the Workers were locked inside their residences. (*Id.*). As part of its Rule 16 discovery, the government produced documents obtained from the Jersey City Police Department and Fire Department relating to the inspections, as well as documents obtained from the landlord of one of the properties. The government also produced documents obtained from alleged victims of the forced labor charges.[4] Before providing those documents to the defense, however, the government unilaterally and unjustifiably redacted the names, and in some instances the contact information or other identifying information, of potential witnesses identified in these documents. For example, the government redacted identifying information concerning witnesses who were present during one of the Jersey City inspections. Without knowing all the details about these key individuals, Mr. Zhong cannot adequately prepare his defense, including the preparation and issuance of trial subpoenas for the relevant witnesses.

The government also searched the Workers' Jersey City residences in November 2016, days after arresting Mr. Zhong. Although the government duly produced as Rule 16 discovery records and photographs of those searches, including photograph logs and property receipts, here too, it inexplicably redacted the names of the law enforcement officers who participated in the searches. For example, the government has produced photos which reflect a clean, middle-class home and the absence of any form of restraint. Testimony by the agents who searched and photographed the premises as to what they observed at the Jersey City houses is both material to Mr. Zhong's defense and potentially exculpatory. It must, therefore, be produced pursuant to both Rule 16 and *Brady*. The government's response to our request that the agents' names *may* be produced as *Jencks* material and disclosed prior to trial through that means fails to account for the distinct possibility that the government will not call those agents as witnesses, in which case Mr. Zhong will never learn their identities and be able to obtain their testimony. Moreover, *Brady* material must be produced at a reasonable time "for its effective use at trial," not suppressed until the eve of trial. *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).

### B. The Sources of Electronically Stored Information

In the almost two years since its first Rule 16 discovery production, the government has produced *more than 11,300 electronically-stored information files* ("ESI"), including emails seized from third parties and "loose" files (*i.e.*, files not attached to an email). In making those productions, the government has refused to identify the source of the ESI or the identities of the

---

[4] These documents, which the government withheld from Mr. Zhong until 120 days prior to trial, pursuant to the March 22, 2017 protective order, include three pages that are redacted almost in their entirety. The government has asserted that the redacted material is "not discoverable." Without knowing what information the government is withholding, the defense cannot determine the propriety of these redactions. Accordingly, we request that the Court review an unredacted version of this material *in camera* to determine whether the redacted material is discoverable.

**Proskauer»**

The Honorable Dora L. Irizarry
November 8, 2018
Page 4

email custodians whose accounts were searched. Instead, the government's production letters state generally that the ESI files were obtained "as a result of a search of electronic devices and email accounts belonging to third parties" (*e.g.*, Dkt. No. 51 at 3), or that the files were "obtained by the government pursuant to search warrants" (*e.g.*, Dkt. No. 78 at 2; Dkt. No. 87 at 2; Dkt. No. 90 at 1; Dkt. No. 93 at 1; Dkt. No. 156 at 1) or, even more vaguely, that the files were "obtained from a search of email accounts" (*e.g.*, Dkt. No. 102 at 1; Dkt. No. 103 at 2; Dkt. No. 134 at 2).

Determining the provenance of these ESI files is crucial to the preparation of Mr. Zhong's defense. Many of the "loose" files have no custodian or author metadata information, making it impossible for the defense to investigate the documents or determine who the appropriate authenticating witness would be. Although defense counsel have repeatedly asked the government to identify the ESI sources and the custodians of the email accounts or devices that were searched and from which the data was collected, the government has remained obdurate that it is "not obligated" to provide additional information related to the source of the ESI.

In the absence of any protective order or governing case law permitting the withholding of such vital information – and the government, not surprisingly, cites none – the Court should not allow the government to stymie defense counsel's ability to identify and investigate potential witnesses, including potentially exculpatory witnesses. Simply put, the government should be compelled to identify (i) the source of the data and (ii) the custodians of the email accounts or devices that were searched.

C. **Communications between DOS and DOJ Concerning the Investigation Underlying the Indictment**

In its motion practice, the government repeatedly has argued that Mr. Zhong and alleged co-conspirator Landong Wang engaged in "obstructive conduct" evidencing "consciousness of wrongdoing" by participating in an effort to "evacuate" the Workers from the United States. (Dkt. No. 115 at 4-9; 28). Moreover, the visa fraud charges – as elucidated in the government's Court-ordered bill of particulars – focus on diplomatic notes and invitation letters exchanged between DOS and the Embassy of the People's Republic of China ("PRC"). Given the obvious materiality of the diplomatic notes and invitation letters relating to the Workers' visas, the government has produced these documents, pursuant to both Rule 16 and the bill of particulars, in which the government identified several of the diplomatic notes as containing the alleged "false and fraudulent statements" upon which the visa fraud conspiracy charge is based. (Dkt. No. 81).

Yet, despite repeated requests from the defense – starting with a discovery letter sent by counsel on August 16, 2017 – the government has flatly refused to produce any of the communications that unquestionably took place between DOJ and DOS during the investigation leading up to Mr. Zhong's arrest and indictment. Contrary to the government's position, the

**Proskauer»**

**Proskauer»**

The Honorable Dora L. Irizarry
November 8, 2018
Page 5

requested documents are material under both Rule 16 and *Brady*; they should be produced immediately.

The government's stated intention to introduce evidence and present argument at trial regarding the supposed "evacuation" of Workers and Mr. Zhong's "consciousness of wrongdoing" injects directly into the case the question whether it was the United States Government – including not just DOJ but DOS as well – rather than the alleged conspirators, that precipitated the Workers' departure from the United States. As argued in our pending motion for depositions under Rule 15, the defense has shown that Workers would provide compelling *exculpatory* evidence directly rebutting the forced labor and visa fraud allegations. (*See* Dkt. No. 147-1 at 6, 8; Dkt. No. 157 at 8-10). Evidence tending to show that the Workers left the United States in 2016 because DOS issued a diplomatic note disavowing their diplomatic status and effectively terminating their employment in the United States dramatically undercuts the government's argument and thus is highly material to Mr. Zhong's defense.

Indeed, the record amply reflects that DOJ enlisted DOS as a partner in the investigation that preceded the charges lodged in this case, a fact the prosecution effectively conceded at oral argument before the Second Circuit in *In re Grand Jury Subpoenas Returnable December 16, 2015*, No.16-266. There, an Assistant United States Attorney acknowledged that DOJ and DOS coordinated their activities with respect to the Workers' immigration status, as part of DOJ's investigation shortly before Mr. Zhong's arrest.[5] The diplomatic notes issued by DOS to the PRC – questioning the Workers' visa status and requesting information about the work they were doing in the United States – plainly were investigative and reflected extraordinary pre-arrest coordination between the two federal departments in furtherance of their common objective of assessing the legitimacy of the Workers' visa applications. The issue whether those applications relied on "false statements," as the government contends, goes to the core of the visa fraud charges against Mr. Zhong, who therefore is entitled to have counsel review any DOJ-DOS communications bearing on that issue.

In sum, evidence collected and communicated by DOS concerning the reasons the Workers applied for visas and details about the PRC projects to which they were assigned would help the defense refute the government's claim in Count Five of the Indictment that the visas were "procured by means of one or more false claims and statements," and that the Workers came to the United States for an improper purpose, as the government further charges in its bill

---

[5] At the oral argument, Judge Briccetti, sitting by designation, observed that one of the diplomatic notes issued by the DOS "seems like it was drafted by the Justice Department. *It's very investigative in nature* . . . . Was it done . . . hand in glove between the State Department and Justice Department?" (Dkt. No. 54-11 at 28:17-25) (emphasis added). The AUSA responded that "both the State Department and the Department of Justice are parts of the executive branch of the government, and *there was a certain amount of coordination* between the Justice Department and State Department" in connection with the issuance of the diplomatic note. (*Id.* at 29:7-11) (emphasis added).

**Proskauer»**

The Honorable Dora L. Irizarry
November 8, 2018
Page 6

of particulars.  Both Rule 16 and *Brady* dictate that such material be produced without any further delay.

>   D.   **Visa Application Materials Pertaining to the Identified "Victims."**

In connection with the Court's directive that it file a bill of particulars, the government has identified 53 Workers whom it intends to prove at trial were victims of Mr. Zhong's alleged criminal conduct.  The defense has requested any and all visa applications for those 53 individuals, apart from those already produced in discovery.  Such documentation must be produced, under both Rule 16 and *Brady,* and the government has not argued otherwise.  While the government represented nearly four months ago that it would "endeavor to gather and produce" the requested materials, based on our review of the Workers' travel records, it appears that the government has failed to produce *all* of the visa applications for *all* 53 of the identified Workers.  Mr. Zhong therefore requests that the Court order the government to provide the remaining visa applications immediately.

Respectfully submitted,

*/s/ Robert J. Cleary*
Robert J. Cleary

cc:   AUSA Alexander A. Solomon (by ECF)
      AUSA Douglas M. Pravda (by ECF)
      AUSA Ian C. Richardson (by ECF)
      AUSA Nicholas J. Moscow (by ECF)
      AUSA Craig R. Heeren (by ECF)