Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

November 15, 2018

<div style="float:right">
Robert J. Cleary  
Member of the Firm  
d +1.212.969.3340  
f 212.969.2900  
rjcleary@proskauer.com  
www.proskauer.com
</div>

**By ECF**

The Honorable Dora L. Irizarry  
Chief United States District Judge  
United States District Court for the Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re:   *United States v. Dan Zhong*  
      Criminal Docket No. 16-614 (DLI)

Dear Chief Judge Irizarry:

We write to reply to the government's opposition to Mr. Zhong's motion to compel discovery. (Dkt. No. 163).

As an initial matter, the motion to compel is timely. In arguing otherwise, the government retreads the same meritless objection it made in opposition to Mr. Zhong's motion for depositions pursuant to Rule 15. (*See* Dkt. No. 153 at 15-16). The April 27, 2018 deadline the Court set for motions *in limine* did not apply to a motion to compel discovery any more than it did to a Rule 15 motion. When the Court set the *in limine* briefing schedule on February 21, 2018, we advised the Court that while we were working with the government to resolve these discovery issues, we wanted to "flag" the motion to compel "as a potential issue down the road." (Tr. at 32:18-23). The Court acknowledged this potential discovery motion and appropriately set no deadline, presciently so, as the government still has not met its Rule 16 discovery obligations *over two years* into the case.

As to its substantive arguments, three fundamental flaws pervade the government's opposition. First, the government misses the fundamental point of Mr. Zhong's motion. In responding to defendant's discovery requests, the government has made clear that it is focused solely on *its* case and providing the defense with the documents *it* intends to use at trial, while minimizing its obligation to provide the defense with items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Not surprisingly, therefore, the government mischaracterizes Mr. Zhong's motion to compel as seeking to (i) preview the government's Section 3500 disclosures by requesting unredacted versions of documents referencing potential government witnesses and (ii) gain information about the sources of third-party ESI for a potential suppression motion. The Court should disregard these strawman arguments.

Mr. Zhong's motion seeks unredacted versions of documents produced in Rule 16 discovery so as to investigate potential *defense witnesses*. The government's response that the names and contact information of *its own witnesses* will not be disclosed until 30-days before

**Proskauer»**

The Honorable Dora L. Irizarry
November 15, 2018
Page 2

trial fails to account for the likely possibility that the government *will never disclose* the names and contact information of individuals whom the government chooses not to call as witnesses in its case-in-chief.[1] Mr. Zhong has a constitutional right to mount a defense, which includes investigating and interviewing potential defense witnesses – including law enforcement witnesses.[2] Similarly, Mr. Zhong seeks information concerning the sources of the ESI so that he may use the ESI effectively in presenting his defense. Consistent with its disclosure obligations, the government provided the ESI to the defendant; for counsel to determine the admissibility and utility of that material in Mr. Zhong's defense, it must know the provenance of those files in advance of trial.

Second, the government appears to believe that its *Brady* obligation ends whenever it has disclosed sufficient material to enable defense counsel to make a particular argument. (*See* Dkt. No. 163 at 4). Not so. It is axiomatic that the government is required to produce *all* evidence favorable to the accused. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (citing *Brady*). By issuing the visas to the China Rilin workers (the "Workers"), the U.S. Department of State ("DOS") plainly considered the statements in the Workers' visa applications to be truthful and reflective of a legitimate basis for granting A2/G2 status, a view that conflicts 180 degrees with the position of the Department of Justice ("DOJ") in this case. Accordingly, any communications between DOS and DOJ are potentially exculpatory and must be disclosed.

Moreover, the government's argument that communications between DOS and DOJ are not discoverable because they are covered by the attorney-client privilege and work product doctrine fails as a matter of law. (*See* Dkt. No. 163 at 4). As the government's own cited authority makes abundantly clear, an email to or from a DOJ attorney does not automatically render that communication privileged. *See United States v. Painting Known as "Le Marche"*, 2008 WL 2600659, at *4-5 (S.D.N.Y. June 25, 2008) (determining that only one of the nine documents the government withheld was actually privileged). The government has not met its burden of establishing that every communication between DOJ and DOS was intended to ascertain or render legal advice, or that all the communications were created "in anticipation of litigation" rather than in the regular course of business. *See id*. at *3-6.

---

[1] The cases the government cites are not to the contrary, as they relate to the scope of the government's obligation to disclose the names of *its own* witnesses. *See United States v. Bejasa*, 904 F.2d 137, 139-40 (2d Cir. 1990); *United States v. Rivera*, 2010 WL 1438787, at *4 (E.D.N.Y. Apr. 7, 2010).

[2] The government's reliance on *United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) is entirely misplaced. The defendants in *Orena* were aligned with an organized crime family and were charged with conspiracy to murder. The court granted the government's motion to quash defendants' subpoena only to the extent compliance would reveal the names or addresses of law enforcement officers, identify undercover surveillance vehicles, or disclose law enforcement techniques and even procedures. Here, for all its vague and baseless expressions of concern for witness safety, the government has never suggested that any law enforcement officer requires "additional protection" because of some action allegedly taken by Mr. Zhong or some other person.

Proskauer»

The Honorable Dora L. Irizarry
November 15, 2018
Page 3

   Third, as to the visa applications,[3] the government now asserts, for the first time, that it "has been unable to locate any other visa applications for the 53 victims, so no further disclosures are coming." (Dkt. No. 163 at 5). While we take the government at its word that it has not located additional visa applications, we also note that, based on our review of the Workers' travel records, the government's production of A2/G2 visa applications and non-diplomatic visas for the 53 Workers appears incomplete.[4] Thus, at the very least, the government has a continuing obligation to produce any additional visa application materials relating to the 53 Workers that may surface.

   For all the foregoing reasons, and for the reasons stated in Mr. Zhong's motion to compel (Dkt. No. 161), the Court should order the government to produce the requested documents and information.

<div style="text-align:right">
Respectfully submitted,

/s/ Robert J. Cleary
Robert J. Cleary
</div>

cc: AUSA Alexander A. Solomon (by ECF)
   AUSA Douglas M. Pravda (by ECF)
   AUSA Ian C. Richardson (by ECF)
   AUSA Nicholas J. Moscow (by ECF)
   AUSA Craig R. Heeren (by ECF)

---

[3] In wrongly contesting the applicability of Rule 16 to these materials, the government creates another red herring by misstating our request. (Dkt. No. 163 at 4-5). Contrary to the thrust of the government's July 13, 2018 discovery letter – which the government quotes at length – the defense is not asking for production of the allegedly false visa applications the government claims Mr. Zhong signed. Rather, the present request seeks only those visa applications that pertain to the 53 Workers identified by the government itself as victims of the forced labor crimes charged in the Indictment. Based on the discovery produced to date, Mr. Zhong did not sign any of the Workers' visa applications and the government has never suggested otherwise.

[4] The government designated the Workers' visa applications and travel records as Sensitive Discovery Material. The defense is prepared to provide the Court with the documents and a brief explanation, under seal, at the Court's request.