

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AAS/DMP/CMH/ICR
F. #2015R01787

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 3, 2019

<u>By ECF and Hand Delivery</u>

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Dan Zhong</u>
      <u>Criminal Docket No. 16-614 (AMD)</u>

Dear Judge Donnelly:

  Pursuant to the Court's directive, the government respectfully submits this response to the defendant's December 22, 2018 letter.  While the government has offered substantial accommodations regarding the defendant's Rule 15 motion, the government opposes the latest proposal to conduct videoconference depositions in the United Arab Emirates (the "UAE").

  In response to the defendant's initial motion to conduct Rule 15 depositions in Hong Kong or in the UAE, the government offered safe passage for putative witnesses previously designated as victims (the "Witnesses") to travel to the United States for trial. The government also offered to participate in live depositions in the United Kingdom, promising not to seek the extradition of or cause the border searches of the Witnesses. Regrettably, counsel for the defendant's company Rilin informed the government that the Witnesses rejected these compromises.  Notably, Rilin counsel previously advised the government that Rilin would terminate any witnesses who did not return to the United States to comply with grand jury subpoenas, and the government is unaware of any adverse employment consequences for the uniform failure of subpoenaed Rilin employees to appear in the grand jury.  Rather than working with the government to secure the Witnesses' appearance at trial, the defendant now proposes the alternative of testimony by videoconference from the UAE, a country whose only apparent link to the present litigation is the absence of any extradition treaty with the United States.  For the reasons discussed below, the government opposes this proposal.

<u>First</u>, the government disputes whether the Witnesses are indeed unavailable to appear at trial. As previously indicated, the government has offered safe passage to these individuals for travel to the United States or the United Kingdom. The basis for the Witnesses' apparent refusal to travel to the United States—or even the United Kingdom—remains murky. None of the Witnesses was present for the outbound inspections and interviews at John F. Kennedy International Airport or Newark Liberty International Airport on October 19, 20, or November 30, 2015, which the defendant and Rilin counsel seem to identify as the core traumatic experience causing the Witnesses' purported unavailability. (<u>See</u> Gov't Opp. to Rule 15 Dep. at 17, ECF No. 153). Notably, the defendant's description of the purported value of the Witnesses' testimony, regarding their prior travel to and residence in the United States, is contrary to any notion of unavailability because of fear of travel to this country:

> Witnesses who worked for China Rilin in the United States—all of whom spent one or more multi-year tours in this country—noted that they had voluntarily sought out the opportunity and expressed tremendous enthusiasm for their experience, which enabled them to earn multiples of the salaries paid to them in the PRC and to engage in a host of leisure and recreational activities, all the while living in comfortable accommodations provided by their employer.

(Def. Mot. for Dep. at 5, ECF No. 614). It is inconsistent to argue that workers who enthusiastically and voluntarily lived in the United States for years are now unavailable to return because of a newfound fear of persecution.

<u>Second</u>, videoconference depositions conducted in the UAE constitute an insufficiently reliable method to secure trial testimony. Without in-person attendance by counsel, and absent production by the defense of any documents or materials regarding the Witnesses, there is no way to be certain (1) what coercive measures, if any, caused the Witnesses' travel to the UAE; (2) what persons remain in the room with the Witnesses during their deposition testimony; and (3) what else may be happening during the Witnesses' deposition testimony. These concerns are heightened given this case involves allegations that the defendant and his company maintained meticulous control over its workers (like the Witnesses), including restricting where they lived, where they traveled, and what they could say to people. At bottom, there would be little the government could do to enforce the Witnesses' oaths to testify truthfully, without a viable means to investigate further. <u>See United States v. Banki</u>, 2010 WL 1063453, at *3 (S.D.N.Y. Mar. 23, 2010) ("Even if the Court were to administer the oath to the Iranian witnesses over the computer monitor in real time, there is no way to ensure truth-telling as the Government cannot prosecute the witnesses for perjury or for the making of false statements. Without the teeth of the penalty of perjury, the oath becomes nothing more than an empty recital. Thus, the strongest indicator of the reliability of a witness' testimony—the oath—is effectively absent here."). As a further logistical complication, the parties would likely need to show exhibits to (and

introduce exhibits through) the Witnesses, who would be testifying remotely and with the assistance of foreign language interpreters.

   Third, the purported exculpatory value of the Witnesses' information is insufficiently material to warrant depositions under Rule 15. See United States v. Vilar, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008) (testimony is "material" within meaning of Rule 15 if it is "highly relevant to a central issue in the case."). Whether the Witnesses preferred living as debt-bonded workers in the United States to conditions in the PRC is irrelevant to any material issues of fact. As the defense has not produced any reciprocal discovery—much less contracts of Rilin workers that do not require the pledging of collateral—it appears unlikely that the Witnesses could credibly testify that they were not the victims of improper contractual restraint. In sum, the sought testimony will not "challenge central aspects of the government's allegations," United States v. Pham, 12-cr-423, 2015 WL 7871348, at *1 (S.D.N.Y. Dec. 4, 2015) (internal quotations and citations omitted), and therefore the defendant has not sustained his burden of establishing materiality under Rule 15.

            Respectfully submitted,

            RICHARD P. DONOGHUE
            United States Attorney

      By: /s/ Alexander A. Solomon
         Alexander A. Solomon
         Ian C. Richardson
         Craig M. Heeren
         Assistant U.S. Attorneys
         (718) 254-7000

cc: Defense counsel (by ECF)