RMT:AAS/ICR/CRH
F. #2015R01787

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                            Docket No. 16-CR-614 (AMD)

DAN ZHONG,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


THE GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTIONS *IN LIMINE*


RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Alexander A. Solomon
Ian C. Richardson
Craig R. Heeren
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND AND RELEVANT PROCEDURAL HISTORY.......................................... 2

ARGUMENT ...................................................................................................................... 4

    I.      Admissible Evidence Related to Forced Labor Charges ................................. 4

          A.    Background on the Trafficking Victims Protection Act ......................... 4

          B.    Financial Harm and Other Methods of Non-Violent Harm Are Admissible.......... 6

          C.    Evidence Related to the Victim's Particular Vulnerabilities Is Admissible .......... 7

          D.    "Climate of Fear" Evidence Is Admissible ........................................... 9

    II.     Other Admissible Evidence Expected to Be Offered by the Government............................................................................................. 12

          A.    Statements Made By The Defendant Are Admissible By The Government For Their Truth, But Are Inadmissible Hearsay When Offered By the Defendant .......................................... 12

          B.    Statements Made By The Defendant's Coconspirators Are Admissible For Their Truth ....................................................... 12

          C.    Past Recollections Recorded Are Admissible For Their Truth ........................... 15

          D.    Business and Official Records Certifications in Lieu of Stipulation.................... 17

    III.    Expert Testimony Regarding Methods of Forced Labor and Conditions in China ..................................................................... 17

    IV.    Evidence and Argument That Should Be Excluded ................................. 20

          A.    Any Alleged Motive for Investigating and Arresting the Defendant Is Irrelevant ................................................. 20

          B.    The Defendant May Not Elicit His Own Out-of-Court Statements or Those of His Coconspirators................. 22

CONCLUSION.................................................................................................................. 23

## TABLE OF AUTHORITIES

## CASES

Elat v. Ngoubene,
  993 F. Supp. 2d 497 (D. Md. 2014) ........................................................................ 19

Gill v. Arab Bank, PLC,
  893 F. Supp. 2d 523 (E.D.N.Y. 2012) ..................................................................... 19

Javier v. Beck,
  No. 13 CV 2926 (WHP), 2014 WL 3058456 (S.D.N.Y. July 3, 2014) ..................................... 6

Mandal v. City of New York,
  No. 02 CV 1234 (WHP), 2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006) ................................ 16

Marcus v. United States,
  No. 14 CV 5780 (ARR), 2015 WL 3869689 (E.D.N.Y. June 22, 2015) ................................... 9

McDonnell Douglas Corp. v. Islamic Republic of Iran,
  591 F. Supp. 293 (E.D. Mo. 1984), aff'd, 758 F.2d 341 (8th Cir. 1985) ................................ 20

Niam v. Ashcroft,
  354 F.3d 652 (7th Cir. 2004) ............................................................................... 19

Oak-Jin Oh v. Soo Bok Choi,
  No. 11 CV 3764 (MDG), 2016 WL 11430442 (E.D.N.Y. Feb. 29, 2016) ................................ 9

Paguirigan v. Prompt Nursing Employment Agency LLC,
  286 F. Supp. 3d 430 (E.D.N.Y. 2017) ................................................................... 6, 8

Parker v. Reda,
  327 F.3d 211 (2d Cir. 2003) ............................................................................... 16

Shukla v. Sharma,
  No. 07 CV 2972 (CBA), 2012 WL 481796 (E.D.N.Y. Feb. 14, 2012) .................................... 7

Sulastri v. Halsey,
  No. 12 CV 3538 (ARL), 2014 WL 4904718 (E.D.N.Y. Aug. 21, 2014) ................................... 6

United States v. Alzanki,
  54 F.3d 994 (1st Cir. 1995) ......................................................................... 8, 10, 18

United States v. Amato,
  15 F.3d 230 (2d Cir. 1994) ................................................................................ 14

United States v. Armstrong,
  517 U.S. 456 (1996) ....................................................................................... 21

United States v. Bibbs,
   564 F.2d 1165 (5th Cir. 1977) ................................................................ 11

United States v. Bradley,
   390 F.3d 145 (1st Cir. 2004) ............................................................. 8, 10

United States v. Cicale,
   691 F.2d 95 (2d Cir. 1982) ................................................................... 13

United States v. Dann,
   652 F.3d 1160 (9th Cir. 2011) ............................................................... 6

United States v. Davidson,
   308 F. Supp. 2d 461 (S.D.N.Y. 2004) ................................................. 12

United States v. DeJesus,
   806 F.2d 31 (2d Cir. 1986) ................................................................... 13

United States v. Farhane,
   634 F.3d 127 (2d Cir. 2011) ........................................................... 21, 22

United States v. Farrell,
   563 F.3d 364 (8th Cir. 2009) ............................................................... 18

United States v. Garcia,
   282 F. App'x 14 (2d Cir. 2008) ............................................................ 16

United States v. Harris,
   701 F.2d 1095 (4th Cir. 1983) ............................................................. 10

United States v. Kampiles,
   609 F.2d 1233 (7th Cir. 1979) ............................................................. 20

United States v. Kelly,
   No. 07 CR 374 (SJ), 2008 WL 5068820 (E.D.N.Y. July 10, 2008) ........... 9

United States v. Kozminski,
   487 U.S. 931 (1988) ............................................................................. 5

United States v. Local 1804-1, Int'l Longshoremen's Ass'n,
   812 F. Supp. 1303 (S.D.N.Y. 1993) .................................................... 11

United States v. Maldonado-Rivera,
   922 F.2d 934 (2d Cir. 1990) ................................................................ 13

United States v. Marin,
   669 F.2d 73 (2d Cir. 1982) ................................................................... 12

United States v. Mulder,
273 F.3d 91 (2d Cir. 2001).................................................................................. 14

United States v. Nektalov,
No. 03 CR 828 (PKL), 2004 WL 1469487 (S.D.N.Y. June 30, 2004) .................................... 18

United States v. Regan,
103 F.3d 1072 (2d Cir. 1997)................................................................................ 21

United States v. Rivera,
799 F.3d 180 (2d Cir. 2015).................................................................................. 8

United States v. Rosado,
728 F.2d 89 (2d Cir. 1984).................................................................................. 21

United States v. Sabhnani,
599 F.3d 215 (2d Cir. 2010).................................................................................. 5

United States v. Sanin,
113 F.3d 1230, 1997 WL 280083 (2d Cir. May 23, 1997) ...................................... 13

United States v. Scarpa,
897 F.2d 63 (2d Cir. 1990).................................................................................. 20

United States v. Simmons,
923 F.2d 934 (2d Cir. 1991)................................................................................ 14

United States v. Stewart,
433 F.3d 273, 293 (2d Cir. 2006)........................................................................... 14

United States v. Stewart,
No. 03 CR 717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004)...................................... 22

United States v. Thomas,
116 F.3d 606 (2d Cir. 1997)................................................................................. 21

United States v. Warren,
772 F.2d 827 (11th Cir. 1985)................................................................................ 11

## STATUTES

Title 18, United States Code, Section 1581 ................................................................. 5

Title 18, United States Code, Section 1584 ............................................................... 5, 10

Title 18, United States Code, Section 1589 .......................................................... passim

Title 18, United States Code, Section 1592 ................................................................. 5

Title 22, United States Code, Section 7101 ................................................................. 5, 8

Title 18, United States Code, Appendix 3, Section 5(a) ............................................... 20

Title 18, United States Code, Appendix 3, Section 5(b) ............................................... 21

<u>RULES</u>

Federal Rule of Criminal Procedure 12(b)(3)(A) ........................................................ 21

Federal Rule of Evidence 702 ...................................................................................... 18

Federal Rule of Evidence 801(d)(2) ............................................................................. 11

Federal Rule of Evidence 801(d)(2)(A) ....................................................................... 12

Federal Rule of Evidence 801(d)(2)(E) ................................................................... 13, 22

Federal Rule of Evidence 803(3) .................................................................................. 11

Federal Rule of Evidence 803(5) ............................................................................. 15, 17

Federal Rule of Evidence 804(3) .................................................................................. 11

PRELIMINARY STATEMENT

The government respectfully requests rulings from the Court permitting the government to introduce the following relevant evidence:

(1)      Evidence reflecting "serious harm" as that term is defined in Title 18, United States Code, Section 1589.

(2)      Evidence related to the victim workers' particular vulnerability and susceptibility to forced labor by the defendant.

(3)      Statements of third parties and other evidence relevant to the victim workers' state of mind and the "climate of fear" created by the defendant.

(4)      Statements made by the defendant as party-opponent admissions.

(5)      Statements made by the defendant's coconspirators in furtherance of the conspiracy.

(6)      Expert testimony pursuant to Federal Rule of Evidence 702, regarding (i) methods of forced labor and human trafficking and (ii) political, economic and social conditions in the People's Republic of China for low-wage Chinese workers.

(7)      Recorded recollections of various witnesses, including law enforcement witnesses, pursuant to Federal Rule of Evidence 803(5), who are anticipated to have difficulty recalling relevant details that they recorded in written documents while the events were still fresh in the witnesses' memories.

(8)      Absent agreement between the parties by stipulation, business and public records by certification pursuant to Federal Rule of Evidence 902.

The government further requests rulings from the Court that:

(1)      The defendant may not introduce evidence, examine witnesses, or make any argument regarding the government's motivation for arresting the defendant.

(2)      The defendant may not introduce or elicit the defendant's own out-of-court statements or the statements of the defendant's coconspirators.

BACKGROUND AND RELEVANT PROCEDURAL HISTORY

The defendant, Dan Zhong, is charged with forced labor conspiracy and forced labor, in violation of 18 U.S.C. §§ 1589(a), 1589(b), 1589(d); concealing passports and immigration documents in connection with forced labor ("document servitude"), in violation of § 1592(a); alien smuggling conspiracy, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I); and visa fraud conspiracy, in violation of 18 U.S.C. § 371.

The defendant and his coconspirators operated a construction business through multiple corporate entities that operated as alter egos of one another (collectively referred to as "Rilin") that brought workers from the People's Republic of China ("PRC") to the United States on visas that permitted them to work solely on PRC diplomatic facilities. The defendant, together with fugitive co-defendant Landong Wang and other coconspirators, managed a scheme to compel the workers' labor on various construction projects in the United States. As part of this scheme, the defendant and his coconspirators caused materially false statements to be made to the U.S. Department of State in connection with the workers' visa applications, coerced workers to labor through threats of financial harm against the workers and their families, withheld the workers' passports, controlled the most fundamental aspects of the workers' daily lives, and attempted to prevent escape and re-capture escapees (at times by violent force). Additionally, although the visa applications prepared for the workers by Rilin asserted that the workers would work only at PRC diplomatic facilities and their visas permitted them to work only at PRC diplomatic facilities, these workers were also directed by the defendant and his coconspirators to perform work for Rilin on private construction projects, including a commercial building in Midtown Manhattan and private residences in Queens and on Long Island to earn additional revenue for Rilin. A more detailed summary of the government's evidence can be found in the complaint, previous filings by the

2

government, and prior orders of the Court.  See, e.g., Complaint (ECF No. 1); Gov't Opp. to Mot. to Dismiss (ECF No. 179); Op. and Order on Motions in Limine (ECF No. 170).

On September 6, 2017, Chief Judge Irizarry granted the government's motion to withhold certain classified materials, pursuant to the Classified Information Procedures Act, 18 U.S.C. App. III § 4, because the information was "largely . . . not discoverable," "had nothing to do with the issues in this case . . . [or] allegations against Defendant," and that the remaining information that was "liberally construe[d] as discoverable" was properly withheld pursuant to CIPA and the State Secrets privilege.  See Sept. 6, 2017 Order at 3 (ECF No. 70).  On November 26, 2018, Chief Judge Irizarry ruled that (1) evidence of the defendant's participation in the forced labor conspiracy while he was a diplomat (i.e. conduct prior to 2010) is admissible as both direct evidence of the crimes and also to show the defendant's intent, planning and knowledge of the conspiracy; (2) fraudulent visa applications signed by the defendant (separate and apart from the A2 and G2 visa applications that are the basis of the visa fraud conspiracy) are admissible to cross-examine the defendant, subject to an appropriate limiting instruction; (3) evidence related to the defendant and co-defendant Landong Wang's obstructive conduct is admissible to show the defendant's consciousness of guilt, subject to an appropriate limiting instruction; (4) evidence that U.S.-based affiliates of Rilin do not engage in legitimate business is admissible and relevant to the defendant's involvement in the visa fraud conspiracy and relevant to the defendant's knowledge of the forced labor conspiracy; and (5) the defendant is precluded from introducing evidence or argument relating to PRC law, and in particular, the legality of forced labor or debt bondage in the PRC.[1]

---

[1] Chief Judge Irizarry also granted, without objection from the government, the defendant's motion to exclude evidence or argument related to certain paragraphs of an email search warrant

ARGUMENT

I.      Admissible Evidence Related to Forced Labor Charges

The government intends to introduce testimony and other evidence that the defendant and his coconspirators: (1) used psychological, financial and reputational harm, and threats of the same, to victims and third parties to obtain the victims' labor;[2] (2) preyed on the victims' particular vulnerabilities to lure and keep them bound to these illegal work arrangements; and (3) created a "climate of fear" among the victim workers to further the forced labor scheme. Each category of evidence constitutes a method by which the forced labor statute may be violated, and therefore such evidence is relevant and admissible.

A.      Background on the Trafficking Victims Protection Act

The defendant is charged with forced labor and forced labor conspiracy in violation of Title 18, United States Code, Section 1589.  That statute states, in pertinent part:

(a)      Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1)      by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2)      by means of serious harm or threats of serious harm to that person or another person;

(3)      by means of the abuse or threatened abuse of law or legal process; or

(4)      by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,

---

affidavit, and deferred ruling on (1) the government's motion seeking admission of PRC legal documents as verbal acts; (2) the government's motion to admit certain victim documents as coconspirator statements or business records; (3) the government's motion to permit Mark Redfield to testify about the circumstances surrounding the creation of an affidavit draft by prior defense counsel; and (4) whether the defendant should be precluded from using evidence at trial, or otherwise sanctioned, for failing to disclose any discovery to the government.

[2] The government also intends to present evidence showing that the defendant and his coconspirators used actual force, threats of force, physical restraint and abuse of law or the legal process.  See 18 U.S.C. § 1589.

shall be [guilty of an offense against the United States].

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589.  Congress enacted Section 1589 as part of the Trafficking Victims Protection Act (the "TVPA"), see 18 U.S.C. §§ 1589-1594.  The TVPA was passed in 2000 to allow prosecution of traffickers and employers who hold their victims using more subtle forms of coercion than physical force, such as psychological manipulation, financial coercion or confiscation of travel documents.[3]  In particular, the law was designed to supplement the existing forced labor statutes, like involuntary servitude and peonage in violation of 18 U.S.C. §§ 1581 and 1584 (created in the wake of the Civil War), which had been interpreted by the Supreme Court to require proof of physical or legal coercion.  See United States v. Kozminski, 487 U.S. 931, 945, 951-52 (1988).

As reflected in its legislative history, the TVPA broadened the definition of the kinds of coercion that could cause forced labor, and criminalized a wider range of coercive conduct, including non-physical coercion.  See, e.g., 22 U.S.C. § 7101(b) (explaining that TVPA was created to combat "force, fraud, or coercion," "debt bondage," threats to third parties and other conduct that might be excluded from then-existing statutes).  The statute was designed to "provide federal prosecutors with the tools to combat severe forms of worker exploitation and to address

---

[3] "Document servitude," the confiscation of official travel documents to further a forced labor scheme, is also a separate crime in the TVPA.  See 18 U.S.C. § 1592(a); United States v. Sabhnani, 599 F.3d 215, 224 (2d Cir. 2010) (describing crime).  The defendant is charged with this crime in addition to the substantive and conspiratorial forced labor charges.

situations in which traffickers threaten harm to third persons or restrain their victims without physical violence, all while taking into account the individual circumstances of [the] victim[ ] . . . including [ ] age and background." Paguirigan v. Prompt Nursing Employment Agency LLC, 286 F. Supp. 3d 430, 437–38 (E.D.N.Y. 2017) (citations omitted).

       B.      Financial Harm and Other Methods of Non-Violent Harm Are Admissible

            The government expects to prove that the defendant used debt-bondage contracts and other methods of threatening and inflicting financial harm, such as refusing to pay workers in the United States, to unlawfully coerce the victims into providing labor.   In 2008, Congress amended Section 1589 to codify existing case law and defined "serious harm" as:

> any harm, whether physical <u>or nonphysical</u>, including <u>psychological, financial, or reputational harm</u>, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c)(2)(emphasis added).  As courts have long recognized, serious harm under the statute includes situations where a person is indebted to or owes money to their employer.  See, e.g., Sulastri v. Halsey, No. 12 CV 3538 (ARL), 2014 WL 4904718, at *15 (E.D.N.Y. Aug. 21, 2014), report and recommendation adopted, No. 12 CV 3538 (JS), 2014 WL 4904527 (E.D.N.Y. Sept. 30, 2014) (discussing cases in which victims had to keep working to pay off incurred debts and fees or experience financial penalties were threats of serious harm under the TVPA); Javier v. Beck, No. 13 CV 2926 (WHP), 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) (concluding in civil forced labor case that threat to enforce $15,000 judgment if the victim left employment was sufficient to state a claim under Section 1589); United States v. Dann, 652 F.3d 1160, 1171 (9th Cir. 2011) (holding that the threat that a non-immigrant would owe $7,500 to her employer if she

quit, leaving her without "money to leave or live," constituted a threat of "serious harm" under Section 1589).

Among other things, the government expects to admit documentary evidence and testimony from victim workers and their family members to establish that workers' pay was withheld until they completed their work and returned to China, that workers' contracts threatened them with the loss of security deposits and other collateral if they failed to complete their work and return to China, that the workers were dependent on the defendant and his coconspirators for loans while they worked in the United States because they were not paid in the United States, and, finally, that the defendant and his coconspirators made good on these threats when the workers escaped from their control and inflicted severe economic harm on the workers and their families, to include the non-payment of wages and the seizure of posted collateral, including workers' homes.  Such conduct clearly falls within the confines of the statute.  Accordingly, the government respectfully requests that the Court permit the government to introduce evidence relevant to proving that the defendant and his coconspirators used serious harm and threats of serious harm to the victims and third parties, including financial harm, to coerce the victims to labor.

C.    Evidence Related to the Victim's Particular Vulnerabilities Is Admissible

The government intends to introduce evidence of the victims' individual backgrounds, including their limited education, poor financial conditions, and their residence in a tightly controlled authoritarian country to show their susceptibility to coercion by the defendant. Section 1589(c)(2) expressly requires consideration of whether a reasonable person "of the same background and in the same circumstances" would be compelled to work in that situation.  This includes consideration of objective facts, such as employment and living conditions, see, e.g., Shukla v. Sharma, No. 07 CV 2972 (CBA), 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012) (collecting cases), as well as special vulnerabilities of the particular victims involved in the matter,

see, e.g., Paguirigan, 286 F. Supp. 3d at 437–38 (explaining that the statute was designed to account for "the individual circumstances of [the] victim[ ] . . . including [ ] age and background."); United States v. Bradley, 390 F.3d 145, 153 (1st Cir. 2004), vacated on other grounds, 545 U.S. 1101 (2005) (explaining that "conditions that make the victim especially vulnerable to pressure (such as youth or immigrant status)" are relevant); United States v. Alzanki, 54 F.3d 994, 1007-08 (1st Cir. 1995) (holding that evidence of "repressive Kuwaiti customs and practices towards domestic workers" was relevant to show "special vulnerability" to threats).  In passing the TVPA and Section 1589, Congress itself identified a litany of vulnerabilities relevant to forced labor, including "poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin," "unfamiliar[ity] with the laws, cultures and languages of the countries in which they have been trafficked," "retribution or other hardship" upon return to their home country, and "official indifference, by corruption, and sometimes even . . . official participation in trafficking" by those countries.  22 U.S.C. § 7101.  As a result, "[t]he correct standard is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances."  United States v. Rivera, 799 F.3d 180, 186-87 (2d Cir. 2015).

Among other things, the government expects to introduce testimony from victim workers that they were poorly educated and had comparatively few economic opportunities in China and that the security deposits and collateral that they were required to provide before traveling to the United States were so significant that the workers were able to meet the requirement only by pooling resources from friends and family who would suffer serious harm by the loss of such collateral.  The government further expects to admit testimony and documentary evidence that the workers feared and continue to fear the influence that the defendant and his

coconspirators have with the PRC Government and their implied power to threaten their families in China.  Based on the hybrid standard used to assess whether a person was compelled against their will to work, the Court should permit the admission of evidence relevant to the factors that made the victims in this case especially susceptible to the coercive measures used by the defendant and his coconspirators to compel them to labor in the United States.

        D.      <u>"Climate of Fear" Evidence Is Admissible</u>

The government intends to show that the defendant and his coconspirators created a "climate of fear" surrounding the victim as one method of coercing their labor.  This evidence will include, among other things, statements made to testifying witnesses by workers regarding the means and methods used by the defendant and his coconspirators to create and maintain a climate of fear.  Additionally, the government will introduce evidence of the workers' knowledge of prior escape attempts and the defendant's and his coconspirators' responses to those escape attempts, as well as documentary evidence reflecting restrictions on the workers' liberty imposed by the defendant and his coconspirators to maintain a climate of fear.

Evidence of harm and maltreatment by the defendant and his coconspirators, including harm inflicted on people other than the immediate victims, is relevant to establish a pervasive environment of fear.  <u>See</u> <u>Marcus v. United States</u>, No. 14 CV 5780 (ARR), 2015 WL 3869689, at *10 (E.D.N.Y. June 22, 2015) (reaffirming that "climate of fear" evidence was admissible to "explain how and why" the victim was compelled to stay in response to collateral challenge); <u>United States v. Kelly</u>, No. 07 CR 374 (SJ), 2008 WL 5068820, at *6 (E.D.N.Y. July 10, 2008) ("Courts in this circuit have allowed the government to present evidence that punishments meted out by a defendant can create a climate of fear that [is] sufficient to cause [the victim] to perform labor or services against her will.") (collecting cases); <u>Oak-Jin Oh v. Soo Bok Choi</u>, No. 11 CV 3764 (MDG), 2016 WL 11430442, at *2 (E.D.N.Y. Feb. 29, 2016)

(recommending that default judgment on Section 1589 civil claim be granted where, among other things, "[p]laintiff alleges the family was able to coerce her into working without pay 'by creating a climate of fear and intimidation' through threats of physical harm and verbal abuse."). A defendant may therefore violate Section 1589 even if he never personally assaulted or threatened his victim, if his actions and threats created a climate of fear under which that victim labored. See Alzanki, 54 F.3d at 999 (upholding conviction that was based in part on "climate of fear" that "was enhanced by [the victim] witnessing one incident involving [her employer's] physical abuse of [his wife], and by learning from [the wife] that [the employer] struck [her] again shortly thereafter."); United States v. Harris, 701 F.2d 1095, 1100 (4th Cir. 1983) (evidence that the defendant beat people other than victim was relevant because it contributed to a "reign of physical terror" and defendant's conviction under § 1584 was upheld despite the fact that he had never personally assaulted or threatened his victim).[4]

      In particular, the government's evidence of a "climate of fear" is expected to include testimony about what the government's witnesses were told about the coercive treatment of the workers and their families by Rilin. For example, one witness is expected to testify about what he both saw and heard regarding the confinement and poor treatment of a worker who had attempted to escape and was forced to return. Another witness is expected to testify that one of the co-conspirators explained how they photographed a victim with a large amount of money (that

---

[4] Although a number of these cases involve involuntary servitude under Section 1584, the holdings apply with equal force under Section 1589 since, as explained above, Section 1589 was enacted to criminalize an even broader array of coercive labor practices than those prohibited in Section 1584. See Bradley, 390 F.3d at 156 ("Congress thought of forced labor as a species of involuntary servitude.")

was kept by the company) as fraudulent "proof" of a loan to use as leverage while the victim worked in the United States.

In addition to being relevant for the reasons described above, such evidence is not excluded by the hearsay rule, because it is "state of mind" evidence. See Fed. R. Evid. 803(3).[5] The testimony about what workers at Rilin heard about the treatment of others is not being offered for the truth of these statements (though the government will prove, based on other admissible evidence, that such conduct did in fact happen), but rather is offered to establish the state of fear that compelled the victims' continued service to defendant. See United States v. Warren, 772 F.2d 827, 831, 833-34 (11th Cir. 1985) (affirming sufficiency of evidence in conviction of defendant for involuntary servitude that included evidence "of stories [the victims] heard from other laborers" about the defendant's violent conduct); United States v. Bibbs, 564 F.2d 1165, 1168 (5th Cir. 1977) (noting that even victims who had not been beaten for attempting to escape "were aware that the defendants had beaten other persons who attempted to escape" and that they "did not leave. . . because [they] feared that [they] would be physically harmed by the defendants."); cf. United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 812 F. Supp. 1303, 1337 (S.D.N.Y. 1993) (admitting testimony that "rumors regarding Carson and DiGilio's association with organized crime were prevalent on the waterfront" as evidence relevant to determination that "a climate of fear existed" within union chapter in civil RICO case that "resulted in forfeiture of their [labor] rights"). Testimony about what the defendant and his coconspirators did to other victims, including stories passed throughout the rotating groups of Rilin workers, is relevant and admissible.

---

[5] To the extent the out-of-court declarant is the defendant, the testimony is also admissible as a party-opponent statement or a statement against interest. See Fed. R. Evid. 801(d)(2), 804(3).

II.     Other Admissible Evidence Expected to Be Offered by the Government

    A.     Statements Made By The Defendant Are Admissible By The Government For Their Truth, But Are Inadmissible Hearsay When Offered By the Defendant

The government expects to admit testimony and documents, including email communications, reflecting statements made by the defendant that are relevant to his crimes.  Such statements are admissible and not hearsay if "offered against an opposing party and . . . made by the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2)(A).  By contrast, a defendant is generally prohibited from introducing his own out-of-court statements at trial.  See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").  A defendant may not elicit his own statements as an "attempt to get [his] side of the . . . story in front of the jury without him[self] testifying and opening him[self] up to cross-examination."  United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).  Accordingly, the government respectfully requests that the court admit the defendant's statements offered by the government, and preclude any separate attempts by the defendant to elicit his own out-of-court statements unless he testifies and offers an appropriate basis for admission of such statements.

    B.     Statements Made By The Defendant's Coconspirators Are Admissible For Their Truth

The scheme charged in the indictment, which the government will prove at trial, involved numerous participants located both in the United States and in China over many years.  The evidence will prove that the defendant exercised a managerial role in the conspiracy and, accordingly, issued directions and received updates from numerous other participants, some, but not all, of whom were employed by Rilin entities.  Accordingly, much of the government's evidence of the defendant's participation in the scheme will consist of coconspirator statements offered into evidence for their truth.  For example, the government expects to offer testimony

regarding statements made by other managers and executives of China Rilin and other Rilin entities including the defendant's fugitive co-defendant Landong Wang, and the defendant's family members who directed and assisted in the scheme.

These types of statements are admissible as coconspirator statements made in furtherance of the conspiracy.  See Fed. R. Evid. 801(d)(2)(E) (statements of a conspirator are admissible as a statement against a party opponent when "the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy"); United States v. DeJesus, 806 F.2d 31, 34 (2d Cir. 1986) (coconspirator statements are admissible against a defendant if "the defendant was a member of the conspiracy and the statements were in furtherance of the conspiracy").  Proof that an individual is a coconspirator is satisfied "by a fair preponderance of the evidence that the defendant was in fact a member of the conspiracy," which means "a likelihood of an illicit association between the declarant and the defendant."  United States v. Cicale, 691 F.2d 95, 103 (2d Cir. 1982) (internal quotation marks omitted).  In addition, the Second Circuit has held that Rule 801(d)(2)(E) requires only that the declarant and the non-offering party were members of the conspiracy, not that the person to whom the statement was made was also a member.  United States v. Sanin, 113 F.3d 1230, 1997 WL 280083, at *3 (2d Cir. May 23, 1997) (unpublished opinion).

A statement is "in furtherance of the conspiracy," if it should "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of criminal activity."  United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990) (further explaining that the statement should "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy") (citation omitted).  The statement need not actually further the

conspiracy, but instead need only be made with the intent to further some objective of the conspiracy. United States v. Stewart, 433 F.3d 273, 293 (2d Cir. 2006). Thus, a status update is sufficient to satisfy the "in furtherance" requirement of Rule 801(d)(2)(E). United States v. Amato, 15 F.3d 230, 234 (2d Cir. 1994). In United States v. Mulder, for example, the Second Circuit upheld the admission of a coconspirator's statements even though they appeared to merely narrate conversations between members of the conspiracy because it kept fellow coconspirators apprised of the arrangements for their extortion scheme. 273 F.3d 91, 103 (2d Cir. 2001).

Here, the evidence is expected to include statements made by and between the coconspirators, to each other and other witnesses, regarding Rilin business activities in the United States, victims' contracts, treatment and living conditions, visa and immigration status, work conditions and the logistics of managing the overall scheme. These statements were either made to explicitly and directly further the conspirators' criminal activities—such as by requesting additional workers from China to illegally work on projects in violation of the workers' visa applications, or finding housing that kept workers away from Chinese-American communities to which the workers could escape—or were made to more generally advance or provide notice about Rilin's business activities as it related to projects being done by the victim workers—such as statements about the status of construction at work sites involving the victim workers. In either case, the statements were made with the intent of furthering the conspiracy and are therefore admissible. See, e.g. Amato, 15 F.3d at 234 (holding that coconspirator's statement was properly admitted because it was made during the course of the conspiracy and apprised another member of the status of a particular illegal activity associated with the conspiracy.); United States v. Simmons, 923 F.2d 934, 945 (2d Cir. 1991) (holding that coconspirator's statements were properly admitted because "[t]he coconspirators' discussions of [the victim's] brutal murder, and the

14

reasons for it, may well have served to promote the criminal activities of the [conspiracy] by enforcing discipline, promoting cohesiveness or inducing assistance").

      C.    <u>Past Recollections Recorded Are Admissible For Their Truth</u>

      The government expects to admit evidence of the recorded recollections of the testimony of law enforcement officers and agents that were made while the matters that were recorded were fresh in the witnesses' minds, but about which the witnesses currently lack sufficient recollection to testify accurately.   Among other things, the recorded recollections the government will seek to admit include matters recorded by an Officer of the New York City Police Department in 2001 shortly after an assault by Rilin workers on a worker who attempted to escape, and matters recorded by an Officer of the Jersey City Police Department about a 2011 housing inspection at a rooming house in New Jersey at which several Rilin workers were encountered and during which unindicted coconspirators made several statements to the officer in furtherance of the conspiracy. Finally, the government may, if necessary, admit evidence of the recorded recollections of other witnesses, including law enforcement agents, who documented events while they were fresh in their minds, but who can no longer accurately remember specific and relevant details, such as the names, dates of birth, and passport numbers of Rilin workers encountered during various law enforcement operations in 2015.  Such testimony is admissible under Federal Rule of Evidence 803(5), which exempts recorded recollections from Rule 802's general exclusion of hearsay and allows a document that meets the foundational requirements to be read into the record. <u>See</u> Fed. R. Evid. 803(5).

      Rule 803(5) defines a recorded recollection as: "A record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5).  If admitted under Rule 803(5),

a writing may be read into evidence, but may not itself be received as an exhibit unless offered by an adverse party.  Id.  Before any document can be read into evidence under Rule 803(5), the proponent of the document must make a showing that: (i) the witness' "memory of the events detailed in the memorandum was sufficiently impaired"; (ii) the witness had "prepared or adopted the memorandum at or near the time of the events" at issue; and (iii) at the time the witness "prepared or adopted [the memorandum], it correctly reflected his knowledge of the events." Parker v. Reda, 327 F.3d 211, 213 (2d Cir. 2003) (per curiam) (citations omitted); see also United States v. Garcia, 282 F. App'x 14, 23 (2d Cir. 2008) (holding that the district court did not abuse its discretion in permitting two police officers to read from arrest reports and booking sheets under Rule 803(5) where the government made the required showings under Parker).  Courts in the Second Circuit have not only admitted evidence under the recorded recollections exception where the documents were created within days or even hours of the time of the event in question, see Parker, 327 F.3d at 213 (admitting a memorandum under Rule 803(5) that "bore the signature of [the witness] and was dated the day of the incident"); Garcia, 282 Fed. App'x at 23 (admitting arrest reports and booking sheets under Rule 803(5) in part because they were prepared or adopted within a few hours of the event), but have also admitted evidence under Rule 803(5) where the witness testified that he made or adopted the document "when the subject was fresh in [his] memory," even though the timing between the event in question and the creation of the document was unclear, see Mandal v. City of New York, No. 02 CV 1234 (WHP), 2006 WL 3405005, at *4 (S.D.N.Y. Nov. 26, 2006) (admitting recorded recollections after two reporters testified that they wrote the articles when the subject was fresh in their memory).

        To fulfill Rule 803(5)'s requirements, before offering the witnesses' recorded recollections into evidence, the government expects to show that the witnesses contemporaneously

recorded their activities and observations in formal written reports and other documents, which, depending the witness, may include field notes, a memo book, a criminal complaint and arrest processing and evidence collection paperwork.  The government will establish that the reports and other documents were prepared or adopted by the testifying witness while the events recorded were fresh in the witnesses' memories and accurately reflected the witnesses' knowledge at the time, as required by Rule 803(5)(B)-(C).  The government will also establish that, years later, the witnesses cannot recall the events or specific details that they recorded well enough to testify fully and accurately about the events, as required by Rule 803(5)(A). With this foundation these recorded recollections will satisfy Rule 803(5)'s requirements and are admissible for their truth.

>D.     Business and Official Records Certifications in Lieu of Stipulation

The government expects to offer evidence of certain business records and government documents, including but not limited to bank records, email records, New Jersey and New York Department of Motor Vehicles records, New York Secretary of State Records, New York City Department of Buildings records, U.S. Department of State visa records, U.S. Customs and Border Protection border-crossing records and U.S. Customs and Immigration Services records.  The government will coordinate with defense counsel to attempt to agree on a set of stipulations regarding the admissibility of these records.  In the event the parties are unable to come to an agreement, the government provides notice that it intends to offer these documents through certifications, pursuant to Rule 902 or through an appropriate records custodian if an appropriate certification is unavailable.

## III.   Expert Testimony Regarding Methods of Forced Labor and Conditions in China

The government intends to present expert testimony regarding methods of forced labor and the political, economic and social conditions in the PRC for low-wage Chinese workers. Expert testimony is permitted where a witness who is qualified to testify about their specialized

knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue." See Fed. R. Evid. 702. "The Second Circuit has routinely upheld the admission of expert testimony offered by the government to explain the workings of criminal transactions and enterprises—such as narcotics trafficking, organized crime, and money laundering—that, without explanation, would be esoteric or otherwise beyond the understanding of the average juror." United States v. Nektalov, No. 03 CR 828 (PKL), 2004 WL 1469487, at *2 (S.D.N.Y. June 30, 2004) (collecting cases).

Here, the government intends to introduce two types of expert testimony that is relevant to the charged offenses and will be helpful to the jury. One category of testimony is expected to explain the relatively complex nature of forced labor and human trafficking operations. The methods by which the perpetrators coerce victims in ways more subtle than violence, why certain victims may be treated better than others, why victims may initially volunteer to participate in the scheme, why victims may not realize they are victims and why victims do not attempt to escape are all issues about which a qualified expert can testify.

Similar testimony has been found by multiple courts to be admissible in forced labor, peonage and trafficking cases. See United States v. Farrell, 563 F.3d 364, 377 (8th Cir. 2009) (holding that expert testimony regarding "warning signs" that indicate a victim is working due to a climate of fear was admissible and "relevant as it provided this broader context for the jury to understand the workers' actions, to understand the conditions in which they may have labored, and to assess the truthfulness of their allegations," but finding error because the expert opined on the strength of the case); Alzanki, 54 F.3d at 1006 (testimony of expert on victim responses to abuse, including failure to escape, was "'reasonably likely' to assist the jury in understanding and assessing the evidence, in that the matter at issue was highly material, somewhat technical, and beyond the realm of acquired knowledge normally possessed by lay jurors"); Elat

v. Ngoubene, 993 F. Supp. 2d 497, 514 (D. Md. 2014) (permitting expert testimony about "the effect of this type of social isolation on a young woman"; "the patterns of coercion and threats that are typically present in situations involving the exploitation of foreign workers"; "the effects that lack of familiarity with United States laws, customs, and norms, little or no access to information or support outside the employer's family, and physical isolation have on the behavior of migrant workers"; and "how it is common for traffickers to exert control and foster dependency in a variety of ways that are both subtle and overt").

A second category of expert testimony will involve explanations of the unique social, political and economic issues that can make Chinese workers like those hired by Rilin initially susceptible to joining the forced labor scheme and to fear leaving the scheme once they realize that they are being harmed.  For example, the expert is expected to testify about how historical Chinese practices, like indentured servitude, influence perception of modern debt-bondage agreements, as well as how Chinese political corruption, the influence of powerful companies on the authoritarian PRC Government, and the PRC Government's regular threats and persecution of individuals for activities arbitrarily deemed subversive can cause a Chinese worker to reasonably fear for themselves and their families if they refuse to obey and work for a company with connections to the PRC Government.

Expert testimony about a foreign country that is relevant to the facts of the case is admissible under Rule 702.  See Gill v. Arab Bank, PLC, 893 F. Supp. 2d 523, 532 (E.D.N.Y. 2012) (admitting expert testimony regarding strategies and methods of middle eastern terrorist groups and relationships between these groups, as well as on historical origins and contemporary practice of form of charity used by groups to obtain funding); Niam v. Ashcroft, 354 F.3d 652, 659-660 (7th Cir. 2004) (reversing asylum decision by Board of Immigration Appeals in part for

its refusal to consider expertise of witness providing opinion concerning political conditions in foreign country of asylee); McDonnell Douglas Corp. v. Islamic Republic of Iran, 591 F. Supp. 293, 307 (E.D. Mo. 1984), aff'd, 758 F.2d 341 (8th Cir. 1985) (accepting expert testimony of witness regarding "status of the Iranian legal system"); cf. United States v. Kampiles, 609 F.2d 1233, 1247 (7th Cir. 1979) (admitting expert testimony regarding Soviet intelligence recruiting practices).

Accordingly, the government respectfully requests that the court permit expert testimony on the aforementioned subjects.

IV.     Evidence and Argument That Should Be Excluded

A.      Any Alleged Motive for Investigating and Arresting the Defendant Is Irrelevant

The government expects to introduce testimony and evidence from agents of law enforcement involved in counterintelligence investigations related to the PRC, as well as from multiple witnesses who provided information to law enforcement agents conducting such investigations.  Facts related to any investigation by testifying witnesses separate from the investigation of the defendant is self-evidently not relevant, and therefore examination on those topics should not be permitted.  See, e.g., United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) (affirming decision to exclude recording of conversations which were "either wholly innocuous or involve[d] criminality that has nothing to do with the crimes charged in this case").

Moreover, any attempt to elicit testimony regarding counterintelligence investigations from law enforcement agents, or from others who may have provided information to law enforcement agents conducting such investigations, could "reasonably [be] expect[ed] to disclose or cause the disclosure of classified information," and would thus be subject to the notice procedures of Section 5(a) of the Classified Information Procedures Act ("CIPA").  18 U.S.C. App. 3 § 5(a).  Because the defendant has not provided notice within 30 days of trial pursuant to

Section 5(a) of CIPA, he should be precluded from questioning any witness on that subject pursuant to CIPA Section 5(b).

Similarly, any argument that the defendant, his coconspirators and Rilin were specifically targeted by law enforcement based on their relationship with the PRC Government, or for some other reason, is irrelevant and inadmissible.  "The Supreme Court has observed that a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.  Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury."  United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)). Any claim alleging a defect in instituting the prosecution based on alleged governmental motives must be raised with the Court in advance of trial.  Fed. R. Crim. P. 12(b)(3)(A); United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011).

Because the government's motive in bringing charges against a defendant is irrelevant to guilt, permitting the defense to ask the jury to focus on the government's motive would improperly encourage the jury to decide the case on the basis of something other than the elements of the charged crimes.  That is impermissible.  See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt"); see also United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997) (noting that "trial courts have a duty to forestall or prevent jury nullification").  Courts therefore regularly preclude criminal defendants from presenting such arguments to the jury in opening statements and summations, as well as in cross examinations of the government's witnesses.  See, e.g.,

Farhane, 634 F.3d at 167; United States v. Stewart, No. 03 CR 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004).  The Court should preclude the defendants from doing so in this case.

      B.      <u>The Defendant May Not Elicit His Own Out-of-Court Statements or Those of His Coconspirators</u>

As explained, <u>supra</u>, it is impermissible for the defendant to elicit his own self-serving false exculpatory statements, if any, made outside of court.  Similarly, the defendant should be prohibited from introducing or eliciting the out-of-court statements of his coconspirators.  As with the defendant's own out-of-court statements, Rule 801(d)(2)(E) provides that an out-of-court statement "made by the party's coconspirator during and in furtherance of the conspiracy" is hearsay, unless it "is offered against an opposing party."  Thus, statements of the defendant's coconspirators are inadmissible hearsay when offered by the defendant, but are admissible non-hearsay when offered by the government against the defendant.  Accordingly, the Court should preclude the defendant from offering into evidence his and his coconspirators' out-of-court statements.

<u>CONCLUSION</u>

For the reasons stated above, the Court should grant the government's motion.

Dated: Brooklyn, New York
February 4, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/ Craig R. Heeren
Alexander A. Solomon
Ian C. Richardson
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

23