UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                            Docket No. 16-CR-614 (AMD)

DAN ZHONG,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X


## JOINT AND DISPUTED REQUESTS TO CHARGE

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

REQUEST NO. 1A (GOVERNMENT) - GENERAL REQUESTS ............................... 2

REQUEST NO. 1B (DEFENDANT) GENERAL REQUESTS ................................... 4

REQUEST NO. 1C (REDLINE) - GENERAL REQUESTS ...................................... 5

REQUEST NO. 2 THE INDICTMENT .................................................................... 7

REQUEST A (DEFENDANT) – COCA ................................................................ 11

REQUEST B (DEFENANT) – DIPLOMATIC IMMUNITY ................................... 14

REQUEST 3A (GOVERNMENT) - KNOWLEDGE AND INTENT ........................ 17

REQUEST NO. 3C (REDLINE) - KNOWLEDGE AND INTENT ........................... 21

REQUEST NO. 4 CONSCIOUS AVOIDANCE [If Applicable] ................................ 23

REQUEST C (DEFENDANT) – GOOD FAITH ..................................................... 25

REQUEST NO. 5A (GOVERNMENT) - CONSPIRACY ........................................ 28

REQUEST NO. 5B (DEFENDANT) - CONSPIRACY ........................................... 32

REQUEST NO. 5C (REDLINE) - CONSPIRACY .................................................. 34

REQUEST 6A (GOVERNMENT) - COUNT TWO – FORCED LABOR ................. 40

REQUEST NO. 6B (DEFENDANT) - COUNT TWO – FORCED LABOR ............. 49

REQUEST NO. 6C (REDLINE) - COUNT TWO – FORCED LABOR .................... 57

REQUEST NO. 7A (GOVERNMENT) - COUNT ONE: CONSPIRACY TO COMMIT
         FORCED LABOR ...................................................................... 74

REQUEST NO. 7B (DEFENDANT) - COUNT ONE: CONSPIRACY TO COMMIT
         FORCED LABOR ...................................................................... 75

REQUEST NO. 7C (REDLINE) - COUNT ONE: CONSPIRACY TO COMMIT
         FORCED LABOR ...................................................................... 76

REQUEST NO. 8A (GOVERNMENT) - COUNT THREE: DOCUMENT SERVITUDE ........ 78

REQUEST NO. 8B (DEFENDANT) - COUNT THREE: CONCEALING PASSPORTS AND
         IMMIGRATION DOCUMENTS IN CONNECTION WITH
         FORCED LABOR ...................................................................... 81

REQUEST NO. 8C (REDLINE) - COUNT THREE: CONCEALING PASSPORTS AND
         IMMIGRATION DOCUMENTS IN CONNECTION WITH
         FORCED LABOR ...................................................................... 85

REQUEST NO. 9A (GOVERNMENT) - COUNT FOUR: CONSPIRACY TO ENGAGE
         IN ALIEN SMUGGLING ........................................................... 90

REQUEST 9B (DEFENDANT) - COUNT FOUR: CONSPIRACY TO ENGAGE IN ALIEN SMUGGLING ........................................ 94

REQUEST 9C (REDLINE) - COUNT FOUR: CONSPIRACY TO ENGAGE IN ALIEN SMUGGLING ........................................ 98

REQUEST 10A (GOVERNMENT) - COUNT FIVE: CONSPIRACY TO COMMIT VISA FRAUD ........................................ 106

REQUEST 10B (DEFENDANT) - COUNT FIVE: CONSPIRACY TO COMMIT VISA FRAUD ........................................ 110

REQUEST 10C (REDLINE) - COUNT FIVE: CONSPIRACY TO COMMIT VISA FRAUD ........................................ 117

REQUEST 11 AIDING AND ABETTING ........................................ 125

REQUEST 12A (GOVERNMENT) - GUILT OF SUBSTANTIVE OFFENSE DUE TO MEMBERSHIP IN A CONSPIRACY ........................................ 128

REQUEST 12B (DEFENDANT) - GUILT OF SUBSTANTIVE OFFENSE DUE TO MEMBERSHIP IN A CONSPIRACY ........................................ 130

REQUEST 12C (REDLINE) - GUILT OF SUBSTANTIVE OFFENSE DUE TO MEMBERSHIP IN A CONSPIRACY ........................................ 132

REQUEST NO. 13 CO-CONSPIRATOR ACTS AND STATEMENTS ........................................ 134

REQUEST NO. 14 TESTIMONY OF DEFENDANT (IF APPLICABLE) ........................................ 136

REQUEST NO. 15 FALSE EXCULPATORY STATEMENTS (IF APPLICABLE) ........................................ 137

REQUEST NO. 16A (GOVERNMENT) - INTERVIEWS OF WITNESSES (IF APPLICABLE) ........................................ 138

REQUEST NO. 16B (DEFENDANT) - INTERVIEWS OF WITNESSES (IF APPLICABLE) ........................................ 139

REQUEST NO. 16C (REDLINE) - INTERVIEWS OF WITNESSES (IF APPLICABLE) ........................................ 140

REQUEST NO. 17 EXPERT WITNESSES (If Applicable) ........................................ 141

REQUEST NO. 18A (GOVERNMENT) - PERSONS NOT ON TRIAL ........................................ 142

REQUEST NO. 18B (DEFENDANT) - PERSONS NOT ON TRIAL ........................................ 143

REQUEST NO. 18C (REDLINE) - PERSONS NOT ON TRIAL ........................................ 144

REQUEST NO. 19A (GOVERNMENT) - ACCOMPLICE WITNESSES ........................................ 145

REQUEST NO. 19B (DEFENDANT) - ACCOMPLICE WITNESSES ........................................ 147

REQUEST NO. 19C (REDLINE) - ACCOMPLICE WITNESSES ........................................ 149

REQUEST NO. 20A (GOVERNMENT) - INFORMANT WITNESSES ........................................ 151

REQUEST NO. 20B (DEFENDANT) - INFORMANT WITNESSES ..................................... 152

REQUEST NO. 20C (REDLINE) - INFORMANT WITNESSES ................................... 153

REQUEST 21A (GOVERNMENT) - STIPULATED TESTIMONY (IF APPLICABLE) ....... 154

REQUEST 21B (DEFENDANT) - STIPULATED TESTIMONY (IF APPLICABLE) ........... 155

REQUEST 21C (REDLINE) - STIPULATED TESTIMONY (IF APPLICABLE) ................. 156

REQUEST NO. 22 DEPOSITION TESTIMONY (IF APPLICABLE) .................................... 157

REQUEST NO. 23 TRANSLATIONS ................................................................. 158

REQUEST NO. 24 AUDIO TAPES: TRANSCRIPTS (IF APPLICABLE) ........................... 159

REQUEST NO. 25A (GOVERNMENT) UNCALLED WITNESSES EQUALLY
              AVAILABLE TO BOTH SIDES ................................................... 160

REQUEST NO. 26 DISCREPANCIES IN TESTIMONY ......................................... 162

REQUEST NO. 27 CHARTS AND SUMMARIES (If Applicable) .......................... 163

REQUEST NO. 28 ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED .............. 164

REQUEST NO. 29 PARTICULAR INVESTIGATIVE TECHNIQUES NOT REQUIRED .... 165

REQUEST NO. 29 EVIDENCE LAWFULLY OBTAINED .................................... 166

REQUEST NO. 30 CAUTIONARY AND LIMITING INSTRUCTIONS
              (IF APPLICABLE) ........................................................... 167

REQUEST NO. D (DEFENDANT) LIMITING INSTRUCTION CONCERNING PRE-
              INDICTMENT CONDUCT (For Use During Trial) ...................... 168

PRELIMINARY STATEMENT

The parties respectfully submit the foregoing jury instructions for the Court's consideration.   Pursuant to the Court's order, dated February 12, 2019, the parties have submitted a single document that contains (1) agreed-upon requests (Nos. 2, 4, 11, 13-15, 17, 22-24, 26-30)[1] and (2) disputed requests (Nos. 1, 3, 5-10, 12, 16, 18-21, 25 and Defendant's Additional Requests No. A-D).

Where the parties have competing versions of the same request, we have included (1) the government's request (2) the defendant's request and (3) a redline of the defendant's changes to the government's request.   Also pursuant to the Court's order, the parties have submitted objections to the other party's charge following each relevant charge (or set of clean and redline charges) to which the party objects.

The parties respectfully request leave to offer additional instructions and/or objections to instructions as may become appropriate during the course of the trial.

---

[1] The parties agree on the language of Request No. 4 (Conscious Avoidance), but dispute whether such a charge is applicable at this time.

1

REQUEST NO. 1A (GOVERNMENT) -

<u>GENERAL REQUESTS</u>

The parties respectfully request that the Court charge the jury in its usual manner on the following subjects:

a.  Function of the Court and the Jury;

b.  Jury Communications with Lawyers and the Court;

c.  Equality of the Prosecution and the Defense Before the Court;

d.  Presumption of Innocence;

e.  Burden of Proof and Reasonable Doubt;

f.  Multiple Counts;

g.  Circumstantial Evidence and Direct Evidence;

h.  Function of Indictment and What is Not Evidence;

i.  Conduct of Counsel;

j.  Inferences Drawn from the Evidence;

k.  Dates Approximate/Variance in Dates;

l.  Stipulations and Objections;

m.  Right to See Exhibits and to Have Testimony Read During Deliberations;

n.  Credibility of Witnesses and Discrepancies in Testimony;

o.  Testimony of Law Enforcement Witnesses;

p.  Improper Consideration of Defendant's Right Not to Testify (If Defendant Does Not Testify) or Testimony of Defendant (If Defendant Testifies);

q.  Venue;

r.  No Questioning Wisdom of Law, and Basing Verdict on Sympathy or Prejudice Prohibited;

s.  Considerations of Punishment not the Province of the Jury;

t.  Oath of Jurors;

u.  Duty to Consult and Need for Unanimity; and

v.  Deliberations.

2

The parties also request that copies of the indictment and the jury instructions be provided to the jurors during their deliberations.

REQUEST NO. 1B (DEFENDANT)

<u>GENERAL REQUESTS</u>

The parties respectfully request that the Court charge the jury in its usual manner on the following subjects:

w.  Function of the Court and the Jury;

x.  Jury Communications with Lawyers and the Court;

y.  Equality of the Prosecution and the Defense Before the Court;

z.  Presumption of Innocence;

aa. Burden of Proof and Reasonable Doubt;

bb. Multiple Counts;

cc. Circumstantial Evidence and Direct Evidence;

dd. Function of Indictment;

ee. Conduct of Counsel;

ff.  Inferences Drawn from the Evidence;

gg. Dates Approximate/Variance in Dates;

hh. Stipulations and Objections;

ii.  Right to See Exhibits and to Have Testimony Read During Deliberations;

jj.  Credibility of Witnesses and Discrepancies in Testimony;

kk. Testimony of Law Enforcement Witnesses;

ll.  Improper Consideration of Defendant's Right Not to Testify (If Defendant Does Not Testify) or Testimony of Defendant (If Defendant Testifies);

mm.    Venue;

nn. Considerations of Punishment not the Province of the Jury;

oo. Oath of Jurors;

pp. Duty to Consult and Need for Unanimity; and

qq. Deliberations.

The parties also request that copies of the jury instructions be provided to the jurors during their deliberations.

4

REQUEST NO. 1C (REDLINE) -

<u>GENERAL REQUESTS</u>

The parties respectfully request that the Court charge the jury in its usual manner

on the following subjects:

    a.   Function of the Court and the Jury;

    b.   Jury Communications with Lawyers and the Court;

    c.   Equality of the Prosecution and the Defense Before the Court;

    d.   Presumption of Innocence;

    e.   Burden of Proof and Reasonable Doubt;

    f.   Multiple Counts;

    g.   Circumstantial Evidence and Direct Evidence;

    h.   Function of Indictment ~~and What is Not Evidence~~;

    i.   Conduct of Counsel;

    j.   Inferences Drawn from the Evidence;

    k.   Dates Approximate/Variance in Dates;

    l.   Stipulations and Objections;

    m.  Right to See Exhibits and to Have Testimony Read During Deliberations;

    n.   Credibility of Witnesses and Discrepancies in Testimony;

    o.   Testimony of Law Enforcement Witnesses;

    p.   Improper Consideration of Defendant's Right Not to Testify (If Defendant Does Not Testify) or Testimony of Defendant (If Defendant Testifies);

    q.   Venue;

    ~~r.   No Questioning Wisdom of Law, and Basing Verdict on Sympathy or Prejudice Prohibited;~~

    ~~s.~~r. Considerations of Punishment not the Province of the Jury;

    ~~t.~~s. Oath of Jurors;

    ~~u.~~t. Duty to Consult and Need for Unanimity; and

    ~~v.~~u. Deliberations.

The parties also request that copies of the ~~indictment and the~~ jury instructions be provided to the jurors during their deliberations.

### Explanation of Defense Objection

The defendant objects to the inclusion of Request (r) – No Questioning Wisdom of Law, and Basing Verdict on Sympathy or Prejudice Prohibited – because it is not a standard instruction that the government has provided to the defense.

### Government's Objections

The government requests the Court's standard charge regarding "No Questioning Wisdom of Law, and Basing Verdict on Sympathy or Prejudice Prohibited."   The defendant asks that such an instruction be omitted.   Such an instruction is a standard and necessary admonishment.   See, e.g., Sand, Modern Federal Jury Instruction, Instructions 2-11, 2-12 (improper considerations and sympathy); United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

The defendant also does not appear to want the indictment to be provided to the jurors.   Consistent with common practice in this district, as approved by the Second Circuit, the government requests that both the indictment and jury charge be provided to the jurors during deliberations.   See United States v. Esso, 684 F.3d 347, 350 (2d Cir. 2012) (affirming decision to permit jury to take indictment home during deliberations and noting that "[w]e have long recognized that trial courts may, in their discretion, 'permit[ ] the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment [is] not to be considered evidence.'") (citations omitted).

6

REQUEST NO. 2

<u>THE INDICTMENT</u>

I will now proceed to discuss the offenses formally charged against the defendant in the Indictment.   The Indictment in this case contains five separate counts, and you will be called upon to render a separate verdict on each count.   Before I read you the Indictment, I will provide a brief summary to give you an overview.

Count One charges the defendant with participating in a conspiracy to provide or obtain forced labor and to benefit from forced labor.

Count Two charges the defendant with providing or obtaining forced labor and benefitting from forced labor.

Count Three charges the defendant with withholding passports in connection the commission of a forced labor offense.

Count Four charges the defendant with participating in a conspiracy to smuggle aliens for the purpose of financial gain.

Count Five charges the defendant with participating in a visa fraud conspiracy.

I have summarized the counts in the Indictment simply to give you an overview of the charges.   In your deliberations, you should refer to the exact text of the Indictment, which I will read now:

Count One of the indictment charges that:

In or about and between January 2010 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAN ZHONG, together with others, did knowingly and intentionally conspire to (1) provide and obtain the labor and services of one or more persons by means of (a) physical restraint, (b) serious harm and threats of

7

serious harm to such persons and other persons, (c) the abuse and threatened abuse of law and legal process and (d) a scheme, plan and pattern intended to cause such persons to believe that, if they did not perform such labor and services, they would suffer serious harm and physical restraint, contrary to Title 18, United States Code, Section 1589(a), and (2) benefit, financially and by receiving one or more things of value from participation in a venture that engaged in such acts, knowing and in reckless disregard of the fact that such venture had engaged in the providing and obtaining of labor and services by any of such means, contrary to Title 18, United States Code, Section 1589(b).

Count Two of the indictment charges that:

In or about and between January 2010 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAN ZHONG, together with others, did knowingly and intentionally (1) provide and obtain the labor and services of one or more persons by means of (a) physical restraint, (b) serious harm and threats of serious harm to such persons and other persons, (c) the abuse and threatened abuse of law and legal process and (d) a scheme, plan and pattern intended to cause such persons to believe that, if they did not perform such labor and services, they would suffer serious harm and physical restraint, and (2) benefit, financially and by receiving one or more things of value from participation in a venture that engaged in such acts, knowing and in reckless disregard of the fact that such venture had engaged in the providing and obtaining of labor and services by any of such means.

Count Three of the indictment charges that:

In or about and between January 2010 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAN ZHONG, together with others, did knowingly and intentionally conceal, remove, confiscate and possess one or more actual and purported passports and other immigration documents of one or more persons (a) in the course of one or more violations of Title 18, United States Code, Section 1589 and Title 18, United States Code, Section 1594(a), (b) with intent to violate Title 18, United States Code, Section 1589, and (c) to prevent and restrict and to attempt to prevent and restrict, without lawful authority, one or more persons' liberty to move and travel, in order to maintain the labor and services of such persons, when such persons were and had been victims of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000, to wit: the recruitment, harboring, transportation, provision, and obtaining of one or more persons for labor and services, through the use of force and coercion for the purpose of subjection to debt bondage.

8

Count Four of the indictment charges that:

In or about and between January 2010 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAN ZHONG, together with others, knowingly and in reckless disregard of the fact that one or more aliens had remained in the United States in violation of law, did knowingly and intentionally conspire to transport and move such aliens within the United States by means of transportation, in furtherance of such violation of law, and for the purpose of commercial advantage and private financial gain, contrary to Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i).

Count Five of the indictment charges that:

In or about and between January 2010 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAN ZHONG, together with others, did knowingly and intentionally conspire to utter, use, possess, obtain, accept and receive one or more documents prescribed by statute or regulation for entry into, and as evidence of authorized stay and employment in the United States, knowing such documents to have been procured by means of one or more false claims and statements and otherwise procured by fraud and unlawfully obtained, contrary to Title 18, United States Code, Section 1546(a).

Count Five also alleges the following overt acts:

a.   On or about December 10, 2014, LANDONG WANG sent an electronic communication to DAN ZHONG in which WANG sought ZHONG's assistance to arrange for workers to enter the United States from the People's Republic of China to perform work contrary to the terms of their United States visas.

b.   In or about June 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Old Brookville, New York, contrary to the terms of their United States visas.

c.   In or about August 2015, ZHONG sent an electronic communication to an accessory, an individual whose identity is known to the Grand Jury ("Accessory #1"), concerning the use of workers to provide labor in the United States, contrary to the terms of their United States visas, at a residence in Old Brookville, New York.

9

      d.   In or about September 2015, ZHONG and Accessory #1 exchanged electronic communications concerning the use of workers to provide contracting work at a residence in Flushing, New York, contrary to the terms of their United States visas.

      e.   In or about October 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Fresh Meadows, New York, contrary to the terms of their United States visas.

      f.   In or about October 2015, LANDONG WANG possessed workers' passports and visas at a residence in Fresh Meadows, New York.

REQUEST A (DEFENDANT) –

<u>COCA</u>

You have heard testimony about an Agreement between the Government of the United States of America and the Government of the People's Republic of China on the Conditions of Construction of New Embassy Complexes in Washington and Beijing, referred to as "COCA." This agreement sets guidelines for the conditions of construction that apply for the construction of diplomatic and consular facilities to be built in the People's Republic of China, referred to as the "PRC," and the United States.   Under COCA, both parties have rights and obligations arising from this agreement, including:

The United States has the "right to select project-related personnel and companies of its own choosing and of any nationality" to work on its diplomatic properties in China and is "responsible for the quality and safety of its project during construction."   To facilitate this work, the PRC agreed to permit US nationals to enter China to perform construction work on US diplomatic facilities in the PRC.

Similarly, China has the "right to select project-related personnel and companies of its own choosing and of any nationality" to work on its diplomatic properties in the United States, and is "responsible for the quality and safety of its project during construction."   To facilitate this work, the United States agreed to permit PRC nationals to enter the United States to perform construction work on PRC diplomatic facilities in the United States.   Under this agreement, "the construction personnel of Chinese nationality shall be issued A-2 visas" by the United States.

You have heard testimony about China Rilin construction workers who entered the United States on A-2 and G-2 visas to work on PRC diplomatic properties, such as the Consulate

11

General of the People's Republic of China, the Embassy of the People's Republic of China in the

Unites States, and the Permanent Mission of the People's Republic of China to the United Nations.

Those workers entered the United States pursuant to COCA.

Authority

COCA §§ 5.3, 9.1, 9.5.

**Government's Objection**

The government opposes the defense's requested instruction on the "Agreement between the Government of the United States of America and the Government of the People's Republic of China on the Conditions of Construction of New Embassy Complexes in Washington and Beijing", or "COCA" because it is both inaccurate and an unwarranted attempt to instruct the jury as a matter of law on factual issues that will be the subject of testimony at trial.

The COCA agreement between the United States Department of State, on behalf of the Executive Branch of the U.S. Government, and the People's Republic of China sets forth a bilateral understanding as to how each government will regulate the other government's construction and renovation of diplomatic facilities in their respective territories.  The document is not a treaty under the U.S. Constitution, and the Executive Branch of the U.S. Government has sole authority to interpret and apply the agreement in the conduct of the foreign affairs of the United States.

At trial, the government expects to introduce the testimony of the Acting Director of the U.S. State Department's Office of Foreign Missions ("OFM") who is responsible for regulating the conduct of all foreign missions in the United States, including their diplomats.   The Acting Director of OFM will describe, among other things, the process and requirements for issuing diplomatic visas, the limits placed on those who hold diplomatic visas in the United States, the requirement to notify the State Department of the arrival in the United States of an alien issued a diplomatic visa, and the State Department's process for determining whether such persons should be afforded diplomatic privileges and immunities and to what extent.   As a factual matter, the government expects that the COCA agreement, and the broader context of international law and customary diplomatic practice in which the U.S. Government and the PRC Government entered into the agreement, will be part of this testimony.    The facts relating to how the State Department applies COCA are relevant to explaining the falsity of the statements made in support of the diplomatic visa applications that are the subject of the visa fraud conspiracy charge, and the materiality of those false statements in the visa application process.   The government further expects that the Acting Director of OFM will explain the limitations imposed on construction workers issued diplomatic visas under COCA, specifically, the limitation that such workers perform work only on those construction projects at PRC diplomatic facilities specifically

12

approved by the State Department as falling under COCA.    That testimony is relevant to explaining both the materiality of various false statements made in connection with the workers' visa applications, as well as the fact that the workers' legal status in the United States changed once they violated the conditions under which their visas were issued by working on projects that had not been approved by the State Department.

    Because COCA is part of the factual context of the case and will be the subject of testimony at trial by the State Department official vested with the authority to implement it as part of his duty to regulate the conduct of foreign missions in the United States, it is improper to instruct the jury as a matter of law regarding its meaning and significance.

13

REQUEST B (DEFENANT) –

DIPLOMATIC IMMUNITY

You heard testimony about China Rilin workers who entered the United States on A-2 or G-2 visas.

Foreign personnel assigned to official duty at bilateral diplomatic or consular missions in the United States, such as the PRC Consulate in New York or the PRC Embassy in Washington, D.C., are issued A-category visas.   G-category visas are issued to foreign personnel assigned to duty at an international organization in the United States or at a foreign country's mission to such organization, such as the PRC Mission to the United Nations.

Bearers of A-2 or G-2 visas are entitled to diplomatic immunity.   Diplomatic immunity is a principle of international law by which certain foreign government officials are not subject to the jurisdiction of local courts and other authorities for both their official and, to a large extent, their personal activities.

The Vienna Convention on Diplomatic Relations ("VCDR") grants immunity to former diplomats for any acts conducted in the diplomat's official capacity.   The VCDR defines the functions of a diplomatic mission to include, among others, protecting its nationals in the foreign state – here, the Chinese workers who were in the United States.

Dan Zhong is a former accredited diplomat of the PRC.   He is entitled to diplomatic immunity for his official acts as an accredited diplomat for the period April 3, 2002 until January 15, 2006 and February 21, 2006 until November 27, 2009.

14

Authority

22 U.S.C. § 254(d); U.S. Dep't of State, Bureau of Diplomatic Security, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities, Dep't of State Publ'n 150546 at 1, 17, n.6 (2015), *available at* https://www.state.gov/documents/organization/150546.pdf; VCDR, art. 39(1)-(2); Swarna v. Al-Awadi, 622 F.3d 123, 134 (2d Cir. 2010) (citing VCDR art. 39(2)); Dkt. No. 170 at 11 ("There is no dispute that Defendant was an accredited diplomat from April 3, 2002 until January 15, 2006 and February 21, 2006 until November 27, 2009. Thus Defendant is entitled to residual diplomatic immunity during those periods.")

## Government's Objection

The government opposes the defense's proposed instruction on diplomatic immunity. As an initial matter, the Second Circuit has already rejected the defendant's proposed instruction that "[b]earers of A-2 or G-2 visas are entitled to diplomatic immunity." See In re Grand Jury Subpoenas Returnable Dec. 16, 2015, 871 F.3d 141, 149–50 (2d Cir. 2017), cert. denied, 138 S. Ct. 1710 (2018) (recognizing that "these visas can be issued to individuals who are not entitled to diplomatic immunity" and deferring to State Department determination that holders of A-2 and G-2 visas did not have diplomatic privileges and immunities). In any event, however, whether the victim workers held diplomatic privileges and immunities is wholly irrelevant to the charges against the defendant. An alien's immunity to legal process does not immunize him from the protections of the law and the defendant is no less guilty for victimizing an alien entitled to diplomatic immunity than he would be if he victimized an undocumented immigrant. There is similarly no basis for an instruction that members of a diplomatic mission are supposed to "protect[] its nationals in the foreign state." Implicit within that instruction, for which the defendant has cited no authority, is the suggestion that the defendant committed his crimes out of necessity to defend the China Rilin workers he victimized. The facts do not support a necessity instruction in this case and the defendant has not requested one. Referring to the functions of a foreign mission as including the protection of its citizens would merely confuse the jury as to the issues before it.

This instruction is also improper and irrelevant because it is yet another attempt by the defendant to relitigate Chief Judge Irizarry's determination that his residual immunity does not prevent the government from introducing evidence of his conduct as evidence of the crimes he committed after his immunity was terminated during the period charged in the indictment. As the defense itself has acknowledged, see, e.g., Dkt. No. 201, the defendant is not being prosecuted for "any acts during the period in which he held diplomatic or consular immunity." Dkt. No. 130 at 1. Chief Judge Irizarry granted the government's motion to admit evidence from the pre-

15

indictment period because it is direct evidence of the charged forced labor conspiracy, irrespective of his diplomatic statuts.   That the defendant may have had diplomatic immunity while he was committing crimes is simply not relevant and will confuse the jury as to the issues before it.

16

REQUEST 3A (GOVERNMENT) -

<u>KNOWLEDGE AND INTENT</u>

During these instructions, you will hear me use the words "knowingly" and "intentionally."   Therefore, I will define these terms for you before addressing the individual charges.

A person acts "knowingly" if he acts purposely and voluntarily and not because of a mistake, accident or other innocent reason. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

A person acts "intentionally" when he acts deliberately and purposefully.   That is, the defendant's acts must have been the product of his conscious, objective decision rather than the product of a mistake or accident.   I instruct you that you may infer that a person ordinarily intends all natural and probable consequences of an act knowingly done.   The person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the specific intent to do whatever it is the law forbids.

You have also heard the phrase "reckless disregard" in some counts of the Indictment.   I will explain what that phrase means later, when I instruct you on those crimes.

These issues of knowledge, intent and reckless disregard require you to make a determination about a defendant's state of mind, something that can rarely be proved directly. A wise and careful consideration of all the circumstances shown by the evidence and the exhibits in the case may, however, permit you to make a determination as to the defendant's state of mind.   Indeed, experience has taught that frequently actions speak louder and more clearly than

17

words, and in your everyday affairs, you are frequently called upon to determine a person's state

of mind from his words and actions in given circumstances.    You are asked to do the same here.

Authority

Adapted from the charges in <u>United States v. Rivera, et al.</u>, No. 13-CR-149 (KAM) (E.D.N.Y.) (hereafter "<u>Rivera</u>"); <u>United States v. Korchevsky</u>, No. 15-CR-381 (RJD) (E.D.N.Y.) (hereafter "<u>Korchevsky</u>"); <u>United States v. Herron</u>, No. 10-CR-615 (NGG) (E.D.N.Y.) (hereafter "<u>Herron</u>"); <u>see also</u> L. Sand <u>et al.</u>, <u>Modern Federal Jury Instructions</u> (hereafter "Sand") § 3A.01, Instructions 3A-1 (including in instruction charge that "Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case."); Instruction 3A-4; <u>United States v. Russo</u>, 302 F.3d 37, (2d Cir. 2002) (affirming instruction that included "you may infer that a person ordinarily intends" language); Sand, § 6.06 cmt (noting Eleventh Circuit's approval of "you may infer that a person ordinarily intends" language).

18

REQUEST NO. 3B (DEFENDANT) -

<u>KNOWLEDGE AND INTENT</u>

During these instructions, you will hear me use the words "knowingly" and "intentionally" because all three counts of conspiracy in the indictment use those terms. Therefore, I will define these terms for you before addressing the individual charges.

A person acts "knowingly" if he acts purposely and voluntarily and not because of a mistake, accident or other innocent reason.

A person acts "intentionally" when he acts deliberately and purposefully.   That is, to be "intentional," the defendant's acts must have been the product of his conscious, objective decision rather than the product of a mistake or accident.   A person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the specific intent to do whatever it is the law forbids.

You have also heard the phrase "reckless disregard" in some counts of the Indictment.   I will explain what that phrase means later, when I instruct you on those crimes.

These issues of knowledge, intent and reckless disregard require you to make a determination about a defendant's state of mind, something that can rarely be proved directly. A wise and careful consideration of all the circumstances shown by the evidence and the exhibits in the case may, however, permit you to make a determination as to the defendant's state of mind.   Indeed, experience has taught that frequently actions speak louder and more clearly than

19

words, and in your everyday affairs, you are frequently called upon to determine a person's state

of mind from his words and actions in given circumstances.   You are asked to do the same here.

Authority

Modification of government's Request No. 3A; <u>see</u> Sand Instructions 3A-1 and 3A-4.

20

REQUEST NO. 3C (REDLINE) -

<u>KNOWLEDGE AND INTENT</u>

During these instructions, you will hear me use the words "knowingly" and "intentionally." because all three counts of conspiracy in the indictment use those terms. Therefore, I will define these terms for you before addressing the individual charges.

A person acts "knowingly" if he acts purposely and voluntarily and not because of a mistake, accident or other innocent reason. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case.

A person acts "intentionally" when he acts deliberately and purposefully.   That is, to be "intentional," the defendant's acts must have been the product of his conscious, objective decision rather than the product of a mistake or accident.   I instruct you that you may infer that a person ordinarily intends all natural and probable consequences of an act knowingly done.        TheA person need not be aware of the specific law or rule that his conduct may be violating, but he must act with the specific intent to do whatever it is the law forbids.

You have also heard the phrase "reckless disregard" in some counts of the Indictment.    I will explain what that phrase means later, when I instruct you on those crimes.

These issues of knowledge, intent and reckless disregard require you to make a determination about a defendant's state of mind, something that can rarely be proved directly. A wise and careful consideration of all the circumstances shown by the evidence and the exhibits in the case may, however, permit you to make a determination as to the defendant's state of

21

mind.    Indeed, experience has taught that frequently actions speak louder and more clearly than words, and in your everyday affairs, you are frequently called upon to determine a person's state of mind from his words and actions in given circumstances.    You are asked to do the same here.

## Explanation of Defense Objection

The defense's modifications to the proposed government instruction are for clarity and to remove argumentative statements about the nature of evidence that the jury can consider, a subject the parties jointly request be addressed through the Court's standard instructions.

## Government's Objection

The language the defendant seeks to omit are standard and appropriate parts of the knowledge instruction that courts have given in this district and elsewhere, as well as a standard part of the model instructions, as reflected in the authorities included in the government's request to charge.    See also Sand § 3A.01, Instructions 3A-1 (including in instruction charge that "Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case."); Instruction 3A-4; United States v. Russo, 302 F.3d 37, (2d Cir. 2002) (affirming instruction that included "you may infer that a person ordinarily intends" language); Sand, § 6.06 cmt (noting Eleventh Circuit's approval of "you may infer that a person ordinarily intends" language).

REQUEST NO. 4

<u>CONSCIOUS AVOIDANCE [If Applicable]</u>

In determining whether a defendant acted knowingly, you may consider whether the defendant deliberately closed his eyes to what would have been obvious to him.   If you find beyond a reasonable doubt that the defendant acted with, or that the defendant's ignorance was solely and entirely the result of, a conscious purpose to avoid learning the truth, then this element may be satisfied.   However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent, foolish or mistaken.

If you find that the defendant was aware of a high probability that he was involved in one or more of the crimes charged in the Indictment, and that the defendant acted in deliberate disregard of the facts, you may find that the defendant acted knowingly.   For example, if you find that the defendant was aware of a high probability that he obtained labor of one or more persons by means of threats of serious harm, or was aware of a high probability that he benefitted financially from a forced labor scheme, you may find that he acted knowingly as to that crime.

However, if you find that the defendant actually believed that the conduct was lawful, he may not be convicted of that crime.   To use the same example I just mentioned, if you find that the defendant actually believed that he was not obtaining labor by threatening serious harm of one or more persons, or that the defendant actually believed he was not benefitting financially from a forced labor scheme, he may not be convicted of that crime.   It is entirely up

23

to you whether you find that the defendant deliberately closed his eyes and any inferences to be

drawn from the evidence on this issue.

<u>Authority</u>
Adapted from <u>Korchevsky</u>; Sand, Instruction No. 3A-2.

### **Government's Objection**

The defendant believes that the conscious avoidance instruction should only be given "if applicable."   The government respectfully submits that the conscious avoidance charge is already applicable in this case and should be included.   The defendant's theory of defense is based largely on a claimed lack of knowledge of the criminal activities, and therefore a conscious avoidance charge is both appropriate and necessary.   <u>See</u>, <u>e.g.</u>, <u>United States v. Henry</u>, 888 F.3d 589, 601 (2d Cir. 2018) (affirming conscious avoidance charge where lack of knowledge was defense); Sand, Instruction No. 3A-2, Cmt. ("Instruction 3A-2 is appropriate when a defendant has claimed a lack of any aspect of the knowledge necessary for conviction under the particular statute, or lack of knowledge as to the unlawful aims of a conspiracy, but the evidence suggests deliberate ignorance.").

REQUEST C (DEFENDANT) –

<u>GOOD FAITH</u>

The offenses charged in the indictment require proof that the defendant acted with a specific state of mind, such as knowingly, willfully, corruptly, or with intent to defraud. However, "good faith" is a complete defense to a charge that requires a defendant to have acted with a specific state of mind, because good faith on the part of a defendant would be inconsistent with acting knowingly, willfully, corruptly, or with intent to defraud.

A person acts in "good faith" when he or she has an honestly held belief, opinion, or understanding that is inconsistent with the required mental state, such as an honest belief about the existence of a fact, an honest belief in the truth of statements, or an honest opinion that acts were not unlawful, even though the belief, opinion, or understanding turns out to be inaccurate or incorrect.   Similarly, evidence of a mistake in judgment, an error in management, or carelessness cannot establish that the defendants acted knowingly, willfully, corruptly, or with intent to defraud.

The government has the burden of proving defendant did not act in good faith.   As I have said, good faith is a defense because it is inconsistent with a requirement of an offense charged, namely, that the defendant acted knowingly, willfully, corruptly, or with intent to defraud. It is always the government's burden to prove beyond a reasonable doubt each element of the offense, including the mental state element.   In deciding whether the government has proven beyond a reasonable doubt that a defendant acted knowingly, willfully, corruptly, or with intent to defraud, you should consider all of the evidence presented in the case that may bear on the defendant's state of mind.   If you find from the evidence that the government has not established beyond a reasonable doubt that a defendant failed to act in good faith, or if you find for any other

25

reason that the government has not proven beyond a reasonable doubt that a defendant acted with

the required mental state, you must find the defendant not guilty of the offense you are considering.

<u>Authority</u>

> Adapted from Sand Instruction 8-1; <u>Ratzlaf v. United States</u>, 510 U.S. 135 (1994); <u>United States v. Hamilton</u>, 3 F. App'x 7, 10 (2d Cir. 2001) (noting "a good faith belief in the honesty of the representations is a complete defense"); <u>see also</u> <u>United States v. Kalu</u>, 791 F.3d 1194, 1207 (10th Cir. 2015)(noting one of the jury instructions pertaining to the alien transportation statute was on the defense of good faith); <u>United States v. Diaz-Gonzalez</u>, 10 F. App'x 407, 409 (9th Cir. 2001) (finding harmful the lower court's error of excluding evidence that could have supported a good faith defense against a 1546(a) charge, and thus reversing & remanding conviction).

## **<u>Government's Objections</u>**

The defendant's good faith instruction is improper because it is an attempt to re-instruct the jury on the government's burden to prove the requisite mental state, a matter already addressed in the court's instructions on the elements of the offenses.  The Second Circuit "has long adhered to the view held by a majority of the circuits that a district court is not required to give a separate 'good faith defense' instruction provided it properly instructs the jury on the government's burden to prove the elements of knowledge and intent, because, in so doing, it necessarily captures the essence of a good faith defense."  <u>United States v. Al Morshed</u>, 69 F. App'x 13, 16 (2d Cir. 2003) (summary order) (citing <u>United States v. Doyle</u>, 130 F.3d 523, 540 (2d Cir. 1997) and <u>United States v. McElroy</u>, 910 F.2d 1016, 1026 (2d Cir. 1990) and collecting cases).

In addition to the fact that a good faith instruction is ordinarily disfavored and not used, a good faith defense is itself only appropriate where the government is required to prove some specific knowledge of a legal duty or fraudulent intent, such as in a tax evasion or mail fraud case.  <u>See</u> <u>United States v. Ansaldi</u>, 372 F.3d 118, 128 (2d Cir. 2004) (affirming denial of good faith instruction in drug distribution case because "knowing and intentional" distribution does not require "as part of its mens rea element, proof of a defendant's knowledge of his legal duty.").   The defendant's own supporting citations bear out that only crimes with a heightened pleading standard should be considered for a good faith instruction.  <u>See</u> <u>United States v. Hamilton</u>, 3 F. App'x 7, 10 (2d Cir. 2001) (considering good faith instruction in context of embezzlement, where "proof of fraudulent intent" is required, and wire fraud, where specific intent to harm is required); <u>United States v. Kalu</u>, 791 F.3d 1194, 1207 (10th Cir. 2015)(considering good faith defense for mail

26

fraud); <u>United States v. Diaz-Gonzalez</u>, 10 F. App'x 407, 409 (9th Cir. 2001) (holding that illegal reentry is a specific intent crime, and therefore permitted good faith instruction.).   A heightened pleading standard does not apply to the charges in this case, and thus a good faith instruction is not appropriate.

Further, even where the government is required to establish the defendant's specific knowledge of a legal duty or fraudulent intent, the defendant is only entitled to a good faith defense instruction if there exists some evidence in the record from which the jury could reasonably infer that the defendant had an actual good faith belief that he was not breaking the law. <u>United States v. Kozeny</u>, 667 F.3d 122, 136 (2d Cir. 2011) (noting that good faith instruction requires "adequate basis in the record"); <u>United States v. Evangelista</u>, 122 F.3d 112, 116–17 (2d Cir. 1997) (finding that defendant is not entitled to a good faith jury instruction, even when it is an accurate statement of the law, unless there is a sufficient factual basis in the record for such an instruction).   The defendant has proffered no evidence that would permit the jury to find that he held the good faith belief that his actions were lawful in this case, and even if he were to demonstrate his ignorance of the law, ignorance is not a defense.   <u>Ansaldi</u>, 372 F.3d at 128 (noting that "ignorance or mistake of law is not a defense to all criminal charges.").   In the absence of any evidentiary basis for this instruction, the Court should decline to give it.

27

REQUEST NO. 5A (GOVERNMENT) -

<u>CONSPIRACY</u>

Because the Indictment alleges, in Counts One, Four and Five, that the defendant conspired to violate certain federal laws, I will first instruct you about conspiracies in general.   I will then instruct you on the requirements for finding a conspiracy relating to each count.

A conspiracy is a kind of criminal partnership—an agreement by two or more persons to accomplish some unlawful purpose.   The crime of conspiracy to violate federal law is an independent offense.   It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."   Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense even though the substantive crime that was the object of the conspiracy was not actually committed.   Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.

In order to prove the crime of conspiracy charged in Counts One, Four, and Five, the government must establish the following elements of the crime of conspiracy beyond a reasonable doubt:

<u>First</u>, that two or more persons entered into an agreement to engage in conduct prohibited by the law.

<u>Second</u>, that the defendant knowingly and intentionally became a member of the conspiracy.

Let me discuss these in more detail with you.

28

Existence of the Agreement

The first element that the government must prove is that two or more persons entered the unlawful agreement that is charged in the count that you are considering.   In other words, one person cannot commit a conspiracy alone.   Rather, the proof must convince you that at least two persons joined together in a common criminal scheme.

In order for the government to satisfy this element, however, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement.   The government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out or the part to be played by each conspirator.   Indeed, common sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding.   What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act by means of a joint plan or common design.

You may of course find that the existence of an agreement between two or more persons to engage in criminal conduct has been established by direct proof.   But since a conspiracy is, by its very nature, characterized by secrecy, direct proof may not be available.   You may therefore infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved.

In a very real sense then, in the context of conspiracy cases, actions often speak louder than words.   In this regard you may, in determining whether an agreement existed here,

29

consider the actions and statements of all of those you find to be participants as proof that a common scheme existed to act together for the unlawful purpose.

<u>Membership in the Conspiracy</u>

The second element requires that you must be convinced that the defendant knowingly and intentionally became a member in the conspiracy charged in Counts One, Four, or Five.

You must determine whether the defendant participated in the particular conspiracy willfully and with knowledge of its unlawful purpose and in furtherance of its unlawful purpose. I have previously instructed you as to the terms "knowingly" and "intentionally."   Follow those instructions here.   A person acts knowingly and intentionally if he acts voluntarily, deliberately, and purposefully, and not because of ignorance, mistake, accident, or carelessness.   In other words, did the defendant join the particular conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement?   And did the defendant participate in the particular conspiracy with the intention of furthering its business or objectives?

A defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy.   Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member.   A person may know, or be friendly with, a criminal, without being a criminal himself.

The defendant's knowledge is a matter of inference from the facts proven.   I instruct you that to become a member of the conspiracy, the defendant need not have known the identities of each and every other member of the conspiracy, nor need he have been apprised of all of their activities.   Moreover, the defendant need not have been fully informed as to all of

30

the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.   Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

In addition, the extent of a defendant's participation has no bearing on the issue of a defendant's guilt.   A conspirator's liability is not measured by the extent or duration of his participation.   Indeed, each member may perform separate and distinct acts and may perform them at different times.   Some conspirators play major roles, while others play minor parts in the scheme.   An equal role is not what the law requires.   In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

In sum, to find a defendant guilty of conspiracy, you must find that, with an understanding of the unlawful nature of the conspiracy, the defendant intentionally engaged, advised, or assisted in the particular conspiracy for the purpose of furthering an illegal undertaking.

<u>Authority</u>

Adapted from <u>Rivera</u>; <u>see also</u> Sand, Instructions 19-3, 19-4, 19-6.

31

REQUEST NO. 5B (DEFENDANT) -

<u>CONSPIRACY</u>

In order for a defendant to be guilty of a conspiracy to violate federal law, the government must prove beyond a reasonable doubt, first, that such a conspiracy existed; second, that, at, some point, the defendant knowingly and willfully joined and participated in the conspiracy; and third, that, at least one overt act in furtherance of the conspiracy was knowingly and willfully committed by at least one member of the conspiracy.

With respect to the first element, a "conspiracy" is an agreement among two or more persons to achieve an unlawful object, in this case, the carrying out of forced labor, alien smuggling, and visa fraud.   To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact, but only that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether or not they were successful.   Also, it is not necessary for the government to prove that the conspiracy lasted throughout the entire period alleged, that is between January 2010 and November 2016, but only that it existed for some time within that period.

With respect to the second element – that the defendant knowingly and willfully joined and participated in the conspiracy – to act "knowingly" means to act consciously and deliberately rather than mistakenly or inadvertently, and to act "willfully" means to act purposely and with an intent to do something unlawful.   Thus, a defendant enters into a conspiracy "knowingly and willfully" if he joins and participates in the conspiracy with knowledge of, and the intent to further its unlawful object.   It is not necessary, however, that a defendant be fully informed of all the details of the conspiracy, or all of its participants.   He may not know more

32

than one other member of the conspiracy, or more than one of its objects.   He may have joined the conspiracy at any time in its duration, and may not have received any benefit in return. However, mere association by a defendant with a conspirator does not itself make the defendant a member of the conspiracy even if he knows of the conspiracy.   In other words, knowledge is not enough; the defendant himself must intentionally participate in the conspiracy with the purpose of helping to achieve at least one of its unlawful objects.

Finally, with respect to the third element – that a member of the conspiracy, not necessarily the defendant, knowingly and willfully committed an overt act in furtherance of the conspiracy – an "overt act" is any action intended to help achieve the object of the conspiracy. An overt act need not itself be a criminal act, but it must contribute to furthering the conspiracy. As I will explain in a moment, Count Five – the charge of visa fraud conspiracy – is the only one of the three conspiracy charges for which the government must prove the existence of an overt act.

<u>Authority</u>

Sand, Instruction No. 19-3S (adapted from the charge of Judge Rakoff in *United States v. Rodin*, 03 Cr. 1499) (JSR) (S.D.N.Y. July 15, 2005).

REQUEST NO. 5C (REDLINE) -

<u>CONSPIRACY</u>

~~Because the Indictment alleges, in Counts One, Four and Five, that the~~ <u>In order for a</u> defendant ~~conspired to violate certain federal laws, I will first instruct you about conspiracies in general.   I will then instruct you on the requirements for finding~~ <u>to be guilty of</u> a conspiracy ~~relating to each count.~~

~~A conspiracy is a kind of criminal partnership—an agreement by two or more persons to accomplish some unlawful purpose.   The crime of conspiracy~~ to violate federal law ~~is an independent offense.   It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as "substantive crimes."   Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense even though the substantive crimes that was the object of the conspiracy was not actually committed.   Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime even if the conspiracy is not successful.~~

~~In order to prove the crime of conspiracy charged in Counts One, Four, and Five~~, the government must ~~establish the following elements of the crime of conspiracy~~ <u>prove</u> beyond a reasonable doubt~~:~~

<u>First, first</u>, that ~~two or more persons entered into an agreement to engage in conduct prohibited by the law.~~

~~Second, that the defendant knowingly and intentionally became~~<u>such</u> a ~~member of the~~ conspiracy~~.~~

~~Let me discuss these in more detail with you.~~

34

Existence of the Agreement

The first element that the government must prove is that two or more persons entered the unlawful agreement that is charged in the count that you are considering. In other words, one person cannot commit a conspiracy alone. Rather, the proof must convince you that at least two persons joined together in a common criminal scheme.

In order for the government to satisfy this element, however, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. The government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out or the part to be played by each conspirator. Indeed, common sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act by means of a joint plan or common design.

You may of course find that the existence of an agreement between two or more persons to engage in criminal conduct has been established by direct proof. But since a conspiracy is, by its very nature, characterized by secrecy, direct proof may not be available. You may therefore infer the existence of a conspiracy from the circumstances of this case and the conduct of the parties involved.

In a very real sense then, in the context of conspiracy cases, actions often speak louder than words. In this regard you may, in determining whether an agreement existed here,

35

~~consider the actions and statements of all of those you find to be participants as proof that a common scheme existed to act together for the unlawful purpose.~~

~~Membership in the Conspiracy~~

~~The~~; second ~~element requires,~~ that ~~you must be convinced that~~, at, some point, the defendant knowingly and ~~intentionally became a member in the conspiracy charged in Counts One, Four, or Five.~~

~~You must determine whether the defendant~~willfully joined and participated in the ~~particular~~ conspiracy ~~willfully;~~ and ~~with knowledge of its unlawful purpose and~~third, that, at least one overt act in furtherance of ~~its unlawful purpose. I have previously instructed you as to the terms "knowingly" and "intentionally." Follow those instructions here. A person acts knowingly and intentionally if he acts voluntarily, deliberately, and purposefully, and not because of ignorance, mistake, accident, or carelessness. In other words, did the defendant join the particular conspiracy with an awareness of~~the conspiracy was knowingly and willfully committed by at least ~~some of the basic aims and purposes of the unlawful agreement? And did the defendant participate in the particular conspiracy with the intention of furthering its business or objectives?~~one member of the conspiracy.

~~A defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself.~~

~~The defendant's knowledge is a matter of inference from the facts proven. I instruct you that to become a member of the conspiracy, the defendant need not have known the~~

36

identities of each and every other member of the conspiracy, nor need he have been apprised of all of their activities.   Moreover, the defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his part.   Furthermore, the defendant need not have joined in all of the conspiracy's unlawful objectives.

In addition, the extent of a defendant's participation has no bearing on the issue of a defendant's guilt.   A conspirator's liability is not measured by the extent or duration of his participation.   Indeed, each member may perform separate and distinct acts and may perform them at different times.   Some conspirators play major roles, while others play minor parts in the scheme.   An equal role is not what the law requires.   In fact, even a single act may be sufficient to draw the defendant within the ambit of the conspiracy.

In sum, to find a defendant guilty of conspiracy, you must find that, with an understanding of the unlawful nature of the conspiracy, the defendant intentionally engaged, advised, or assisted in the particular conspiracy for the purpose of furthering an illegal undertaking.

With respect to the first element, a "conspiracy" is an agreement among two or more persons to achieve an unlawful object, in this case, the carrying out of forced labor, alien smuggling, and visa fraud.   To show a conspiratorial agreement, the government is not required to prove that two or more people entered into a solemn pact, but only that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object, whether or not they were successful.   Also, it is not necessary for the government to prove that the

37

conspiracy lasted throughout the entire period alleged, that is between January 2010 and November 2016, but only that it existed for some time within that period.

With respect to the second element – that the defendant knowingly and willfully joined and participated in the conspiracy – to act "knowingly" means to act consciously and deliberately rather than mistakenly or inadvertently, and to act "willfully" means to act purposely and with an intent to do something unlawful.   Thus, a defendant enters into a conspiracy "knowingly and willfully" if he joins and participates in the conspiracy with knowledge of, and the intent to further its unlawful object.   It is not necessary, however, that a defendant be fully informed of all the details of the conspiracy, or all of its participants.   He may not know more than one other member of the conspiracy, or more than one of its objects.   He may have joined the conspiracy at any time in its duration, and may not have received any benefit in return. However, mere association by a defendant with a conspirator does not itself make the defendant a member of the conspiracy even if he knows of the conspiracy.   In other words, knowledge is not enough; the defendant himself must intentionally participate in the conspiracy with the purpose of helping to achieve at least one of its unlawful objects.

Finally, with respect to the third element – that a member of the conspiracy, not necessarily the defendant, knowingly and willfully committed an overt act in furtherance of the conspiracy – an "overt act" is any action intended to help achieve the object of the conspiracy. An overt act need not itself be a criminal act, but it must contribute to furthering the conspiracy. As I will explain in a moment, Count Five – the charge of visa fraud conspiracy – is the only one of the three conspiracy charges for which the government must prove the existence of an overt act.

## Explanation of Defense Objection

The defense objects to the government's proposed long-form conspiracy instruction because it is unnecessarily lengthy and confusing, and raises precisely the concerns identified in the Comment to Sand Instruction No. 19-3S ("Short-Form Conspiracy Instruction").   The Short-Form Conspiracy Instruction presents a clearer explanation of the conspiracy charge, without confusing repetition and unbalanced prosecutorially-framed assumptions about the supposed nature of criminal conspiracies.   The government's proposal also includes an issue-mixing discussion of co-conspirator statements, which is better dealt with elsewhere in the instructions on an evidentiary matter.   (See government's proposed Instruction No. 15).

## Government's Objection

This case involves a complex set of facts and multiple charged conspiracies, including a dual-object conspiracy.   In such cases, the law is clear that the "complete" standard conspiracy charge should be given so that the jury understands the law and is not confused by any shorthand.   See, e.g., Sand, Instruction 19-3S, Cmt. (explaining that short-form charge is appropriate for "straightforward conspiracy cases" but that "a court must exercise caution to make sure that it is not leaving out more detailed or added instructions that would be needed if the case is more complicated or raises special concerns.").

For example, the defendant's shorthand conspiracy charge fails to explain to the jury that a conspiracy is separate from the substantive offense and the defendant can be convicted even where the offense is not completed.   Such an instruction is particularly important in this case, where the defendant is charged with both substantive crimes and conspiracies, and the defendant also disputes that the substantive crimes ever actually occurred.   Additionally, the defendant's proposed instruction is improper because it includes "overt act" charging language that does not apply to two of the three conspiracies.   Neither forced labor nor alien smuggling require any overt acts be proven by the government.   See United States v. Shabani, 513 U.S. 10, 14 (1994) (holding that no overt act needs to be proven for conspiracy statutes that do not include language requiring an overt act); 18 U.S.C. § 1594(b) (forced labor conspiracy provision contains no overt act requirement); 8 U.S.C. § 1324(a)(1)(A)(v)(I) (alien smuggling conspiracy contains no over act requirement).

REQUEST 6A (GOVERNMENT) -

COUNT TWO – FORCED LABOR

I will first start with Count Two, which charges the defendant with engaging in forced labor.   I will then provide you with the instructions for Count One, which alleges a forced labor conspiracy.

The relevant language of the forced labor statute, Title 18, United States Code, Section 1589, provides that:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of the, or by any combination of, the following means-

(1)     by means of . . . physical restraint . . . [against] that person or another person;

(2)     by means of serious harm or threats of serious harm to that person or another person;

(3)     by means of the abuse or threatened abuse of law or legal process; or

(4)     by means of any scheme, plan, or pattern intended to cause the person to believe that, if such person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, [has committed a crime].

* * * *

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a) knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, [has committed a crime].

There are two different ways to find the defendant guilty of forced labor as charged in Count Two: (1) by finding beyond a reasonable doubt that the defendant knowingly provided or obtained labor or services by one or more prohibited means or (2) by finding beyond a reasonable doubt that the defendant knowingly benefitted from participating in a venture that he knew or recklessly disregarded was engaged in providing or obtaining labor or services by one or

40

more prohibited means.   I will explain both of these ways of proving the defendant guilty of Count Two now.

      I.    <u>Provides or Obtains Labor Or Services By Means of Forced Labor</u>

Under the first way of finding the defendant guilty of Count Two, you must find that the government has proven each of the following three elements beyond a reasonable doubt:

<u>First</u>, that the defendant provided or obtained the labor or services of a person;

<u>Second</u>, that the defendant did so through one or more of the following prohibited means:

(a) through physical restraint against the person or another person;

(b) through serious harm or threats of serious harm to the person or any other person;

(c) through abuse or threatened abuse of law or legal process; or

(d) through a scheme, plan or pattern intended to cause the person to believe that, if they did not perform such labor or services it would result in serious harm to, or physical restraint against, that person or any other person; and

<u>Third</u>, that the defendant acted knowingly.

I will now explain each of the three elements in greater detail.

To "obtain" means to gain, acquire or attain.   "Labor" means the expenditure of physical or mental effort."   "Services" means conduct or performance that assists or benefits someone.   "Provide" means to furnish or supply.   The government does not have to prove that the victim performed work for the defendant in the economic sense, although that would satisfy this first element. All the government must prove is that the victims provided labor or services as

41

I just defined them. If you find that the government has established that the defendant has obtained the labor or services of another person, then the first element has been satisfied.

If you find that the defendant provided or obtained the labor or services of a person, then you must determine under the second element whether that defendant did so through one of the four prohibited means, that is, either through (1) force or physical restraint or threatening to do either to the person or another person, (2) serious harm or threats of serious harm to the person or another person, (3) the abuse or threatened abuse of law or the legal process, or (4) a scheme, plan or pattern intended to cause the person to believe that serious harm would result if he did not perform the labor or services required of him. In order to find that the second element has been satisfied, you must find that one of the prohibited means I just mentioned was used to obtain the labor or services of another person.

I now want to define for you some of the terms you will be considering in determining whether the second element of this first line of inquiry has been satisfied.

The term "physical restraint" means to be confined, for example by the use of chains or locked rooms.

The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

A "threat" is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking

42

manner.   A statement is a threat if it was made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.   As I just mentioned, a threat of serious harm need not involve any threat of physical violence.

However, the threats must be improper and must involve consequences that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person with the background of the alleged victims into engaging in labor or services in which they would not otherwise have willingly engaged.   You may consider the totality of the defendant's conduct as well as any aspects of the victims' age, background, or circumstances that were known to the defendant and that would make the alleged victim especially vulnerable to pressure.   In other words, to determine whether the defendant made a threat of serious harm that could reasonably be believed by a victim, you should consider the victim's particular station in life, physical and mental condition, age, education, training, experience, and intelligence.

You may consider not only overt threats that defendant might have made to place the workers in fear of suffering certain consequences. You may also consider, if you so find, other surrounding circumstances, such as verbal abuse and insults, isolation, poor working and living conditions, denial of adequate rest, food, and medical care, withholding of pay, or any combination of these conditions, and any other techniques that the defendants might have used to intimidate the workers and compel them to serve.

The term "abuse or threatened abuse of law or legal process," means the use or threatened use of law or legal process, whether administrative, civil or criminal, in any manner or

43

for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

Finally, a person uses "a scheme, plan or pattern intended to cause [a victim] to believe that serious harm would result if he did not perform the labor or services required of him" if they use any scheme or plan to make the victim believe that, if the person did not perform such labor or services, serious harm or physical restraint to that person or another person could occur. To satisfy this element, the government must prove that the defendant engaged in a course of behavior intended to cause a victim to believe that if he or she did not provide labor or services to the defendant, a victim, or his or her family would suffer serious harm.

In order to find that the second element has been satisfied, you must find that any one of, or any combination of, the prohibited means I just mentioned was used to provide or obtain the labor or services of a person.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause the alleged victims to reasonably believe that they had no choice but to work or remain working for the defendant. In making that determination, you may consider the cumulative effect of the conduct of the defendant on the alleged victims. Again, you may consider any condition known to a defendant that made the victims vulnerable to pressure.   In this regard, you may find that not all persons are of the same courage or firmness. You may consider, for example, the background, physical and mental condition, experience, education, socioeconomic status and any inequalities between the alleged victims and the defendant with respect to these considerations but only insofar as you find that these matters were known to the defendants at the time. Simply put, you may ask whether the

44

alleged victims were vulnerable in some way known to the defendant so that the actions of the defendant, even if not sufficient to compel some other person to work under different circumstances, were enough to compel the victims here to work.

I want to mention a few other instructions about this second element of the offense of forced labor. To prove forced labor, the government does not need to link specific threats allegedly made or actions allegedly taken against the workers to particular labor tasks performed by them. If the workers were threatened with or suffered serious harm or physical restraint, as I have defined these terms respectively, in connection with the services they purportedly rendered, either as punishment or as part of a climate of fear that overcame their wills and compelled their service, that is sufficient to establish the second element of the offense of forced labor. If you find that the alleged victims were threatened with serious harm, the government need not prove actual physical restraint—such as the use of chains or locked doors—in order to establish the offense of forced labor.

Also, the fact that some alleged victims may have had an opportunity to escape is irrelevant if the defendant and his co-conspirators placed the workers in such fear or circumstances that they did not reasonably believe they could leave. A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape.

In addition, in considering whether service performed by someone was involuntary, you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the work. If a person willingly begins work, but later desires to withdraw, and is then forced to remain and perform work against his will by threats of serious harm, or by a scheme, plan or pattern, intended to cause him to believe that

45

non-performance will result in serious harm to him, or by the use or threatened use of a law or legal process, then his service becomes involuntary.

Finally, whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor. In other words, if a person is compelled to labor against their will by any one of the means prohibited by the forced labor statute, such service is involuntary even if they are paid or compensated for the work.

The third element that the government must prove beyond a reasonable doubt is that the defendant in question acted knowingly.  I have previously instructed you as to what knowingly means.   You must apply those instructions here.

If you unanimously find that all three elements are satisfied then you must find the defendant guilty of Count Two.

II.    Benefitting From Participation In a Forced Labor Venture

Under the second way of finding the defendant guilty of Count Two, you must find that the government has proven each of the following three elements beyond a reasonable doubt:

First, that the defendant knowingly benefitted financially or by receiving anything of value from participation in a venture;

Second, that the venture was engaged in providing or obtaining labor or services through any one of, or any combination of, the prohibited means that I previously identified; and

Third, that the defendant knew or recklessly disregarded the fact that the venture was engaged in providing or obtaining of labor or services by any of these prohibited means.

As my instructions indicate, under this way of proving the defendant's guilt the government does not need to prove that the defendant himself engaged in providing or obtaining

46

the labor or services of a person.   The government need only prove that there was a venture that engaged in one of the prohibited means, that the defendant knowingly participated in some way in that venture and benefitted financially or by receiving a thing of value from that venture, and that the defendant knew or recklessly disregarded the fact that the venture was involved in forced labor.

As to the first element, a "venture" is two or more persons associated in fact, whether or not a legal entity.   It is sufficient for the purposes of this first element to find that the defendant played any role in the venture, even if that role was minor, and even if that role was not related to the actual providing or obtaining of a person's labor or services.   The defendant needs to have knowingly benefitted financially or by receiving anything of value from participation in the venture.   I have already instructed you on the definition of knowingly and you should apply that instruction here.

With regard to the second element, I have already instructed you previously on the prohibited means of providing or obtaining labor or services.    You should apply those instructions here.

With regard to the third element, the government must prove that the defendant knew or recklessly disregarded the fact that the venture was providing or obtaining labor or services by any of the four prohibited means, which I instructed you about earlier.   "Reckless disregard" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the venture was engaging in forced labor.

47

If you unanimously find that all three elements are satisfied, then you must find the defendant guilty of Count Two.

<u>Authority</u>

Adapted from charges from <u>United States v. Marcus</u>, No. 05-CR-457 (ARR) (E.D.N.Y.) (hereafter "<u>Marcus</u>"), <u>United States v. Yannai</u>, No. 10-CR-594 (ERK) (E.D.N.Y.), and <u>United States v. Sabhnani</u>, No. 07-CR-429 (ADS) (E.D.N.Y.) (hereafter "<u>Sabhnani</u>"); Sand, § 47A.02, Instruction 47A-9, 47A-10, 47A-12, 47A-13, 47A-14, 47A-15, 47A-17, 47A-21

48

REQUEST NO. 6B (DEFENDANT) -

<u>COUNT TWO – FORCED LABOR</u>

I will first start with Count Two, which charges the defendant with engaging in forced labor.   I will then provide you with the instructions for Count One, which alleges a forced labor conspiracy.

The relevant language of the forced labor statute, Title 18, United States Code, Section 1589, provides that:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of the, or by any combination of, the following means-

    (1)    by means of . . . physical restraint . . . [against] that person or another person;

    (2)    by means of serious harm or threats of serious harm to that person or another person;

    (3)    by means of the abuse or threatened abuse of law or legal process; or

    (4)    by means of any scheme, plan, or pattern intended to cause the person to believe that, if such person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, [has committed a crime].

* * * *

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a) knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, [has committed a crime].

Count Two of the Indictment charges that the defendant committed forced labor in two different ways: (1) by finding beyond a reasonable doubt that the defendant knowingly provided or obtained labor or services by one or more prohibited means or (2) by finding beyond a reasonable doubt that the defendant knowingly benefitted from participating in a venture that he

49

knew or recklessly disregarded was engaged in providing or obtaining labor or services by one or more prohibited means.    I will explain both of these theories of forced labor for Count Two now.

III.    Provides or Obtains Labor Or Services By Means of Forced Labor

Under the first theory, you must find that the government has proven each of the following three elements beyond a reasonable doubt:

First, that the defendant provided or obtained the labor or services of a person;

Second, that the defendant did so through one or more of the following prohibited means:

(a) through physical restraint against the person or another person;

(b) through serious harm or threats of serious harm to the person or any other person;

(c) through abuse or threatened abuse of law or legal process; or

(d) through a scheme, plan or pattern intended to cause the person to believe that, if they did not perform such labor or services it would result in serious harm to, or physical restraint against, that person or any other person; and

Third, that the defendant acted knowingly.

I will now explain each of the three elements in greater detail.

To "obtain" means to gain, acquire or attain.    "Labor" means the expenditure of physical or mental effort."    "Services" means conduct or performance that assists or benefits someone.    "Provide" means to furnish or supply.    If you find that the government has

50

established, beyond a reasonable doubt, that the defendant has obtained the labor or services of another person, then the first element has been satisfied.

If you find that the defendant provided or obtained the labor or services of a person, then you must determine under the second element whether that defendant did so through one of the four prohibited means, that is, through (1) force or physical restraint or threatening to do either to the person or another person, (2) serious harm or threats of serious harm to the person or another person, (3) the abuse or threatened abuse of law or the legal process, or (4) a scheme, plan or pattern intended to cause the person to believe that serious harm would result if he did not perform the labor or services required of him.   Before you can find that the second element has been satisfied, you must find, beyond a reasonable doubt, that one of the prohibited means I just mentioned was used to obtain the labor or services of another person.

I now want to define for you some of the terms you will be considering in determining whether the second element of this first line of inquiry has been satisfied.

The term "physical restraint" means forcible restraint such as being tied, bound or locked up.

The term "serious harm" includes both physical and nonphysical types of harm.

A "threat" is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner.   For a statement to be a threat, it must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.   In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

51

A threat of serious harm need not involve any threat of physical violence. However, the threats must be improper and must involve dire consequences that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide labor or services.   You may consider the totality of the defendant's conduct as well as any aspects of the victims' age, background, or circumstances that were known to the defendant.   It is not a threat of serious harm under the statute, however, to warn someone of adverse but legitimate consequences, for instance, the consequence for breach of a voluntarily entered into employment agreement.

The term "abuse or threatened abuse of law or legal process," means the use or threatened use of law or legal process, whether administrative, civil or criminal, in any manner or for any purpose for which the law was not designed, in order to coerce someone into working against that person's will.   However, abuse of law or legal process does not involve mere enforcement of contractual provisions.   Rather, it requires proof that the defendant "knowingly" abused the law or legal process as a means to coerce someone to provide labor or services against his or her will in a manner not authorized by law.

Finally, the words "scheme," "plan," and "pattern" are to be given their ordinary meanings.   A "scheme" is a plan or program of action, especially a crafty or secret one.   A "plan" is a method for achieving an end or a detailed formulation of a program of action.   A "pattern" is a form or model proposed for imitation or a discernible coherent system based on the intended interrelationship of component parts.

If you find that any of the prohibited means was used, you must then determine whether such use was sufficient to cause the China Rilin workers reasonably to believe that they

52

had no choice but to work or to remain working for the defendant.   You should consider the victim's particular station in life, physical and mental condition, age, education, training, experience, and intelligence.   You may ask whether the China Rilin workers were vulnerable in some way known to the defendant so that the actions of the defendant, even if not sufficient to compel another person to work, were enough to compel the China Rilin workers to work.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause any of the China Rilin workers to reasonably believe that they had no choice but to work or remain working for the defendant.   In making that determination, you may consider the worker's particular station in life, physical and mental condition, experience, and intelligence.   You may ask whether the China Rilin workers were vulnerable in some way known to the defendant so that the actions of the defendant, even if not sufficient to compel some other person to work, were enough to compel the China Rilin workers here to work.

In considering whether service performed by someone was involuntary, you are instructed that it is a defense to the crime of forced labor that the person agreed, voluntarily, to render the service or perform the work.   However, if a person willingly begins work, but later desires to withdraw, and is then forced to remain and perform work against his will by threats of serious harm, or by a scheme, plan or pattern, intended to cause him to believe that non-performance will result in serious harm to him beyond adverse but legitimate consequences, such as the consequences agreed to in advance in an employment agreement entered into voluntarily, then his service may become involuntary, provided his acquiescence in the demands placed on him was objectively reasonable.

53

The third element that the government must prove beyond a reasonable doubt is that the defendant in question acted knowingly.   I have previously instructed you as to what knowingly means.   You must apply those instructions here.

If you unanimously find, beyond a reasonable doubt, that all three elements are satisfied then you may find the defendant guilty of Count Two.

IV.    Benefitting From Participation In a Forced Labor Venture

Under the government's second theory of prosecution for Count Two, you must consider whether the government has proven each of the following three elements beyond a reasonable doubt:

First, that the defendant knowingly benefitted financially or by receiving anything of value from participation in a venture;

Second, that the venture was engaged in providing or obtaining labor or services through any one of, or any combination of, the prohibited means that I previously identified; and

Third, that the defendant knew or recklessly disregarded the fact that the venture was engaged in providing or obtaining of labor or services by any of these prohibited means.

As my instructions indicate, under this theory of forced labor the government does not need to prove that the defendant himself engaged in providing or obtaining the labor or services of a person.   The government need only prove that there was a venture that engaged in one of the prohibited means, that the defendant knowingly participated in some way in that venture and benefitted financially or by receiving a thing of value from that venture, and that the defendant knew or recklessly disregarded the fact that the venture was involved in forced labor.

54

As to the first element, a "venture" is two or more persons associated in fact, whether or not a legal entity.   It is sufficient for the purposes of this first element to find that the defendant played any role in the venture, even if that role was minor, and even if that role was not related to the actual providing or obtaining of a person's labor or services.   The defendant needs to have knowingly benefitted financially or by receiving anything of value from participation in the venture.   I have already instructed you on the definition of knowingly and you should apply that instruction here.

With regard to the second element, I have already instructed you previously on the prohibited means of providing or obtaining labor or services.   You should apply those instructions here.

With regard to the third element, the government must prove, beyond a reasonable doubt, that the defendant knew or recklessly disregarded the fact that the venture was providing or obtaining labor or services by any of the four prohibited means, which I instructed you about earlier.   "Reckless disregard" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the venture was engaging in forced labor.

If you unanimously find that all three elements are satisfied, then you may find the defendant guilty of Count Two.

Authority

Modified version of government's Request No. 6A.   Adapted from Sand, Instruction No. 47A-9, 47A-10, 47A-11, 47A-12, 47A-13, 47A-14, 47A-15, 47A-21; see 18 U.S.C. § 1589; United States v. Sabhnani, 539 F. Supp. 2d 617, 629 (E.D.N.Y. 2008), aff'd, 599 F.3d 215 (2d Cir. 2010); United States v. Bradley, 390 F.3d 145, 154

(1st Cir. 2004) ("in an appropriate case we think that the court in instructing the jury would be required to draw a line between improper threats or coercion and permissible warnings or adverse but legitimate consequences"); see also Muchira v. Al-Rawaf, 850 F.3d 605 (4th Cir. 2017) (rejecting plaintiff's claims "that she has presented sufficient evidence that the [defendants] knowingly coerced her into providing her labor and services by . . . "means of the abuse or threatened abuse of law or legal process" where defendants never threatened her with arrest, concealed her passport, coerced her to lie to immigration officials, or threatened her with other adverse consequences); Baird v. Tech Providers, Inc., 2017 WL 1057637 (N.D. Ala. Mar. 21, 2017) (dismissing allegations of forced labor where defendant threatened to sue former employee for violating the non-compete clause of the employment contract).

56

REQUEST NO. 6C (REDLINE) -

<u>COUNT TWO – FORCED LABOR</u>

I will first start with Count Two, which charges the defendant with engaging in forced labor.   I will then provide you with the instructions for Count One, which alleges a forced labor conspiracy.

The relevant language of the forced labor statute, Title 18, United States Code, Section 1589, provides that:

(a) Whoever knowingly provides or obtains the labor or services of a person by any one of the, or by any combination of, the following means-

   (1)   by means of . . . physical restraint . . . [against] that person or another person;

   (2)   by means of serious harm or threats of serious harm to that person or another person;

   (3)   by means of the abuse or threatened abuse of law or legal process; or

   (4)   by means of any scheme, plan, or pattern intended to cause the person to believe that, if such person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, [has committed a crime].

* * * *

(b) Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a) knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, [has committed a crime].

There are two different ways to findCount Two of the Indictment charges that the defendant guilty ofcommitted forced labor as charged in Count Twotwo different ways: (1) by finding beyond a reasonable doubt that the defendant knowingly provided or obtained labor or services by one or more prohibited means or (2) by finding beyond a reasonable doubt that the defendant knowingly benefitted from participating in a venture that he knew or recklessly

57

disregarded was engaged in providing or obtaining labor or services by one or more prohibited means.   I will explain both of these ~~ways~~theories of ~~proving the defendant guilty of~~forced labor for Count Two now.

## V.   Provides or Obtains Labor Or Services By Means of Forced Labor

Under the first ~~way of finding the defendant guilty of Count Two~~theory, you must find that the government has proven each of the following three elements beyond a reasonable doubt:

First, that the defendant provided or obtained the labor or services of a person;

Second, that the defendant did so through one or more of the following prohibited means:

(a) through physical restraint against the person or another person;

(b) through serious harm or threats of serious harm to the person or any other person;

(c) through abuse or threatened abuse of law or legal process; or

(d) through a scheme, plan or pattern intended to cause the person to believe that, if they did not perform such labor or services it would result in serious harm to, or physical restraint against, that person or any other person; and

Third, that the defendant acted knowingly.

I will now explain each of the three elements in greater detail.

To "obtain" means to gain, acquire or attain.   "Labor" means the expenditure of physical or mental effort."   "Services" means conduct or performance that assists or benefits

58

someone.   "Provide" means to furnish or supply.   ~~The government does not have to prove that the victim performed work for the defendant in the economic sense, although that would satisfy this first element. All the government must prove is that the victims provided labor or services as I just defined them.~~ If you find that the government has established, beyond a reasonable doubt, that the defendant has obtained the labor or services of another person, then the first element has been satisfied.

If you find that the defendant provided or obtained the labor or services of a person, then you must determine under the second element whether that defendant did so through one of the four prohibited means, that is, ~~either~~ through (1) force or physical restraint or threatening to do either to the person or another person, (2) serious harm or threats of serious harm to the person or another person, (3) the abuse or threatened abuse of law or the legal process, or (4) a scheme, plan or pattern intended to cause the person to believe that serious harm would result if he did not perform the labor or services required of him. ~~In order to~~ Before you can find that the second element has been satisfied, you must find, beyond a reasonable doubt, that one of the prohibited means I just mentioned was used to obtain the labor or services of another person.

I now want to define for you some of the terms you will be considering in determining whether the second element of this first line of inquiry has been satisfied.

The term "physical restraint" means ~~to be confined, for example by the use of chains~~forcible restraint such as being tied, bound or locked ~~rooms~~up.

~~The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same~~

59

circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. The term "serious harm" includes both physical and nonphysical types of harm.

A "threat" is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. A For a statement is to be a threat if, it was must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm. As I just mentioned, a threat of serious harm need not involve any threat of physical violence. In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat.

A threat of serious harm need not involve any threat of physical violence. However, the threats must be improper and must involve dire consequences that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person with in the background of the alleged victims into engaging in same situation to provide labor or services in which they would not otherwise have willingly engaged. You may consider the totality of the defendant's conduct as well as any aspects of the victims' age, background, or circumstances that were known to the defendant and that would make the alleged victim especially vulnerable to pressure. In other words, to determine whether the defendant made a threat of serious harm that could reasonably be believed by a victim, you should consider the victim's particular station in life, physical and mental condition, age, education, training, experience, and intelligence. It is not a threat of serious harm under the statute, however, to warn someone of adverse but legitimate

60

consequences, for instance, the consequence for breach of a voluntarily entered into employment agreement.

You may consider not only overt threats that defendant might have made to place the workers in fear of suffering certain consequences. You may also consider, if you so find, other surrounding circumstances, such as verbal abuse and insults, isolation, poor working and living conditions, denial of adequate rest, food, and medical care, withholding of pay, or any combination of these conditions, and any other techniques that the defendants might have used to intimidate the workers and compel them to serve.

The term "abuse or threatened abuse of law or legal process," means the use or threatened use of law or legal process, whether administrative, civil or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action coerce someone into working against that person's will.   However, abuse of law or legal process does not involve mere enforcement of contractual provisions.   Rather, it requires proof that the defendant "knowingly" abused the law or legal process as a means to coerce someone to provide labor or services against his or her will in a manner not authorized by law.

Finally, a person uses "a scheme, plan or pattern intended to cause [a victim] to believe that serious harm would result if he did not perform the labor or services required of him" if they use any scheme or plan to make the victim believe that, if the person did not perform such labor or services, serious harm or physical restraint to that person or another person could occur. To satisfy this element, the government must prove that the defendant engaged in a course of

61

behavior intended to cause a victim to believe that if he or she did not provide labor or services to the defendant, a victim, or his or her family would suffer serious harm.

In order to find that the second element has been satisfied, you must find that any one of, or any combination of, the prohibited means I just mentioned was used to provide or obtain the labor or services of a person.

Finally, the words "scheme," "plan," and "pattern" are to be given their ordinary meanings. A "scheme" is a plan or program of action, especially a crafty or secret one. A "plan" is a method for achieving an end or a detailed formulation of a program of action. A "pattern" is a form or model proposed for imitation or a discernible coherent system based on the intended interrelationship of component parts.

If you find that any of the prohibited means was used, you must then determine whether such use was sufficient to cause the China Rilin workers reasonably to believe that they had no choice but to work or to remain working for the defendant. You should consider the victim's particular station in life, physical and mental condition, age, education, training, experience, and intelligence. You may ask whether the China Rilin workers were vulnerable in some way known to the defendant so that the actions of the defendant, even if not sufficient to compel another person to work, were enough to compel the China Rilin workers to work.

If you find that any of the prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause any of the alleged victimsChina Rilin workers to reasonably believe that they had no choice but to work or remain working for the defendant. In making that determination, you may consider the cumulative effect of the conduct of the defendant on the alleged victims. Again, you may consider any condition known to a

62

~~defendant that made the victims vulnerable to pressure.   In this regard, you may find that not all~~ ~~persons are of the same courage or firmness. You may consider, for example, the~~ ~~background~~<u>worker's particular station in life</u>, physical and mental condition, experience, ~~education, socioeconomic status~~ and ~~any inequalities between the alleged victims and the~~ ~~defendant with respect to these considerations but only insofar as you find that these matters were~~ ~~known to the defendants at the time. Simply put, you may~~ <u>intelligence.   You may</u> ask whether the ~~alleged victims~~<u>China Rilin workers</u> were vulnerable in some way known to the defendant so that the actions of the defendant, even if not sufficient to compel some other person to work ~~under~~ ~~different circumstances~~, were enough to compel the ~~victims~~<u>China Rilin workers</u> here to work.

~~I want to mention a few other instructions about this second element of the offense~~ ~~of forced labor. To prove forced labor, the government does not need to link specific threats~~ ~~allegedly made or actions allegedly taken against the workers to particular labor tasks performed~~ ~~by them. If the workers were threatened with or suffered serious harm or physical restraint, as I~~ ~~have defined these terms respectively, in connection with the services they purportedly rendered,~~ ~~either as punishment or as part of a climate of fear that overcame their wills and compelled their~~ ~~service, that is sufficient to establish the second element of the offense of forced labor. If you find~~ ~~that the alleged victims were threatened with serious harm, the government need not prove actual~~ ~~physical restraint   such as the use of chains or locked doors   in order to establish the offense of~~ ~~forced labor.~~

~~Also, the fact that some alleged victims may have had an opportunity to escape is~~ ~~irrelevant if the defendant and his co-conspirators placed the workers in such fear or circumstances~~

63

~~that they did not reasonably believe they could leave. A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape.~~

In ~~addition, in~~ considering whether service performed by someone was involuntary, you are instructed that it is ~~not~~ a defense to the crime of forced labor that the person ~~may have initially~~ agreed, voluntarily, to render the service or perform the work. ~~If~~ However, if a person willingly begins work, but later desires to withdraw, and is then forced to remain and perform work against his will by threats of serious harm, or by a scheme, plan or pattern, intended to cause him to believe that non-performance will result in serious harm to him~~, or by the use or threatened use of a law or legal process, then his service becomes involuntary~~ beyond adverse but legitimate consequences, such as the consequences agreed to in advance in an employment agreement entered into voluntarily, then his service may become involuntary, provided his acquiescence in the demands placed on him was objectively reasonable.

~~Finally, whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor. In other words, if a person is compelled to labor against their will by any one of the means prohibited by the forced labor statute, such service is involuntary even if they are paid or compensated for the work.~~

The third element that the government must prove beyond a reasonable doubt is that the defendant in question acted knowingly.  I have previously instructed you as to what knowingly means.   You must apply those instructions here.

If you unanimously find, beyond a reasonable doubt, that all three elements are satisfied then you ~~must~~may find the defendant guilty of Count Two.

VI.  <u>Benefitting From Participation In a Forced Labor Venture</u>

Under the ~~government's~~ second ~~way~~theory of ~~finding the defendant guilty of~~prosecution for Count Two, you must ~~find that~~consider whether the government has proven each of the following three elements beyond a reasonable doubt:

<u>First</u>, that the defendant knowingly benefitted financially or by receiving anything of value from participation in a venture;

<u>Second</u>, that the venture was engaged in providing or obtaining labor or services through any one of, or any combination of, the prohibited means that I previously identified; and

<u>Third</u>, that the defendant knew or recklessly disregarded the fact that the venture was engaged in providing or obtaining of labor or services by any of these prohibited means.

As my instructions indicate, under this ~~way of proving the defendant's guilt~~theory of forced labor the government does not need to prove that the defendant himself engaged in providing or obtaining the labor or services of a person.   The government need only prove that there was a venture that engaged in one of the prohibited means, that the defendant knowingly participated in some way in that venture and benefitted financially or by receiving a thing of value from that venture, and that the defendant knew or recklessly disregarded the fact that the venture was involved in forced labor.

As to the first element, a "venture" is two or more persons associated in fact, whether or not a legal entity.   It is sufficient for the purposes of this first element to find that the defendant played any role in the venture, even if that role was minor, and even if that role was not related to the actual providing or obtaining of a person's labor or services.   The defendant needs to have knowingly benefitted financially or by receiving anything of value from participation in

65

the venture.   I have already instructed you on the definition of knowingly and you should apply

that instruction here.

   With regard to the second element, I have already instructed you previously on the

prohibited means of providing or obtaining labor or services.   You should apply those instructions

here.

   With regard to the third element, the government must prove, beyond a reasonable

doubt, that the defendant knew or recklessly disregarded the fact that the venture was providing or

obtaining labor or services by any of the four prohibited means, which I instructed you about

earlier.   "Reckless disregard" means deliberate indifference to facts that, if considered and

weighed in a reasonable manner, indicate the highest probability that the venture was engaging in

forced labor.

   If you unanimously find that all three elements are satisfied, then you ~~must~~may find

the defendant guilty of Count Two.

Explanation of Defense Objection

> The defense's modifications to the government's proposed charge
> are intended to take into account the specific legal authorities cited
> above as well as to remove unbalanced, prosecutorially-framed
> assumptions as to the supposed "two different ways to find the
> defendant guilty."   Moreover, the government's proposed
> explanations of "serious harm," "threat," "threat of serious harm,"
> "abuse or threatened abuse of law or legal process" and "scheme,"
> and its application of those terms to the second element of the forced
> labor charge, go beyond the standard Sand instructions and the
> applicable case law.

**Government's Objections**

   The government's charge is legally accurate and based on the jury instructions used

by Judge Ross, Judge Korman, and Judge Spatt, respectively, in United States v. Marcus, 05-CR-

66

457, United States v. Yannai, 10-CR-496, and United States v. Sabhnani, 07-CR-429, three forced labor cases conducted in this district.   The verdicts in each of these cases have been upheld on appellate review.   See United States v. Marcus, 517 Fed. App'x 8 (2d Cir. 2013) (describing procedural history); cert. denied 517 U.S. 942 (2013); United States v. Yannai, 791 F.3d 226 (2d Cir. 2015) (affirming verdict); cert. denied 136 S. Ct. 1503 (2016); United States v. Sabhnani, 599 F.3d 215 (2d Cir. 2010) (vacating restitution but affirming the judgment "in all other respects"). Copies of the instructions from those trials are attached for the Court's convenience as Exhibits 1 through 3.   The government submits the following in further support of the charge:

A.   Voluntary Execution of A Contract Is Not a Defense

The defendant asks for an instruction that "it is a defense to the crime of forced labor that the person agreed, voluntarily, to render the service or perform the work."   This contradicts established law and the jury instructions previously used in this district.   See, e.g., Marcus at 22 ("it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the work") (emphasis added).

If victims willingly began work, but later wanted to withdraw, and were then forced to remain and perform work by any of the proscribed means, then the service became involuntary. See United States v. Marcus, 628 F.3d 36 (2d. 2010) (mere fact that victim initially consented did not remove defendant's conduct from scope of forced labor statute, given evidence that woman had continued behaving as defendant's sex slave solely out of fear induced by his increasingly severe punishments); United States v. Mussry, 726 F.2d 1448, 1454, n.6 (9th Cir. 1984) ("Even though a person may come to a job voluntarily, subsequent coerced service constitutes involuntary servitude" under § 1584), overruled on other grounds.   Indeed, in the legally overlapping context of a peonage charge (involuntary servitude through the use of debt), Judge Glasser explained that the voluntary or involuntary nature of the entry into the debt-relationship is irrelevant:   while it "is sometimes classified as voluntary or involuntary…this implies simply a difference in the mode or origin, but none in the character of the servitude…that which is contemplated by the stature is compulsory service to secure the payment of a debt."   United States v. Kyongja Kang, 2006 WL 208882, at *2 (E.D.N.Y. Jan. 25, 2006) (quoting Clyatt v. United States, 197 U.S. 207, 215 (1905)).

Courts in this district and elsewhere expressly include an instruction in forced labor jury charges that the initial voluntariness of the relationship is not a defense.   See, e.g., Jury Instructions at 22, United States v. Marcus, No. 05 CR 457 (E.D.N.Y.) (ECF No. 202); Trial Tr. at 1235, United States v. Yannai, No. 10-CR-594 (E.D.N.Y.) (ECF No. 155) (instructing the jury that "it was not a defense to the crime of forced labor, that the person may have intentionally agreed voluntarily to provide the labor or services"); Trial Tr. at 5030-31 United States v. Sabhnani, No. 07-CR-429 (E.D.N.Y.) (ECF No. 476) ("[I]n considering whether service performed by someone was involuntary, you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed voluntarily to render the service or perform the work. If a person willingly begins work but later desires to withdraw and is then forced to remain and perform work against her will by threats of serious harm or physical restraint or by a

67

scheme, plan or pattern intended to cause her to believe that non-performance will result in serious harm or physical restraint to her or by the use or threatened use of a law or legal process, then her service becomes involuntary."); see also Pattern Crim. Jury Instr. 11th Cir. (2017) Involuntary Servitude and Peonage 18 U.S.C. §§ 1581 & 1584 ("It makes no difference whether the person initially voluntarily agreed to perform the work or service…What matters is whether the person did the work willingly at all times.").   The court should use the same trial-tested instruction in this case.

### B.   Payment of Workers Is Not a Defense

The defendant eliminates the instruction that payment of a salary is not determinative of whether a person has been forced to labor.   This is contrary to prior approved forced labor jury instructions in this district, and inconsistent with the broadly inclusive forced labor statute.   See Marcus at 22 ("[W]hether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor"); Trial Tr. at 1235, Yannai (same); Trial Tr. at 5031, Sabhnani (same, and further instructing the jury that "if a person is compelled to labor against her will by any one of the means prohibited by the forced labor statute such service is involuntary even if she is paid or compensated for the work.").

As courts have recognized, "'whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor.   In other words, if a person is compelled to labor against his will by any one of the means prohibited by the forced labor statute, such service is forced, even if he is paid or compensated for the work.'" United States v. Bradley, 390 F.3d 145, 153 (1st Cir. 2004), vacated on other grounds, 545 U.S. 1101 (2005) (quoting and upholding jury instruction and affirming conviction in case where victims were paid $7 per hour but were compelled to remain through threats); see also Marcus at 22; Trial Tr. at 1235, Yannai (same); Trial Tr. at 5031, Sabhnani (same, and further instructing the jury that "if a person is compelled to labor against her will by any one of the means prohibited by the forced labor statute such service is involuntary even if she is paid or compensated for the work.").   If victims were reasonably coerced or forced to labor against their will by defendant's use of any one of the means prohibited by the statute, such service was involuntary even if they were paid or compensated for their work.

### C.   A Victim's Failure to Escape Is Not a Defense

The defendant also wrongly eliminates the instruction that a victim has no "duty to escape."   Courts have recognized that the fact that the victims were not physically restrained or confined is of no consequence if the victims reasonably feared that serious harm would result if they attempted to flee.   As the First Circuit explained in Bradley, "an opportunity to flee is not determinative of the question of forced labor if either or both of the defendants placed [the victim] in such fear or circumstances that he did not reasonably believe he could leave."   390 F.3d 153; see also United States v. Booker, 655 F.2d 562, 567 (4th Cir. 1981) (holding that trial court "should not have charged the jury that it would have to find that the defendant[s] ... effectively denied the

68

possibility of escape to the victims. The availability of escape ... or even a situation where the discipline of terror is not constantly enforced, does not preclude a finding that persons are held as slaves" under section 1584); Alzanki, 54 F.3d at 1000 (discussing definition of involuntary servitude and noting precedents "upholding involuntary servitude conviction even though victim had opportunity to escape") (citations omitted); see also Marcus at 22 ("The fact that [the victim] may have had an opportunity to escape is irrelevant if the defendant placed [the victim] in such fear or circumstances that she reasonably believed that she could not leave."); Trial Tr. at 1234, Yannai (same); Trial Tr. at 5030, Sabhnani (same and further instructing the jury that "[a] victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape.")

### D.   A Victim's Particular Vulnerabilities May be Considered by the Jury

On several occasions, the defendant eliminates portions of the instruction regarding the victims' particular vulnerabilities.   Conditions and characteristics that make a victim especially vulnerable to pressure bear on whether a victim's labor was forcibly obtained.   Trial Tr. at 5028, Sabhnani (instructing the jury that in determining whether prohibited means were "sufficient to cause [a victim] reasonably to believe that she had no choice but to work or remain working for the defendants…You may also consider any condition known to a defendant that made each [victim] vulnerable to pressure. In this regard, you may find that not all persons are of the same courage or firmness.").

Section 1589(c)(2) expressly requires consideration of whether a reasonable person "of the same background and in the same circumstances" would be compelled to work in that situation.   This includes consideration of objective facts, like employment and living conditions, see, e.g., Shukla v. Sharma, 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012) (collecting exemplary cases), as well as special vulnerabilities of the particular victims involved in the matter, see, e.g., Paguirigan v. Prompt Nursing Employment Agency LLC, 286 F. Supp. 3d 430, 437–38 (E.D.N.Y. 2017) (explaining that the statute was designed to account for "the individual circumstances of [the] victim[ ]... including [ ]   age and background."); Sabhnani, Trial Tr. at 5028-29 (instructing the jury that in determining whether prohibited means were "sufficient to cause [a victim] reasonably to believe that she had no choice but to work or remain working for the defendants…You may consider, for example, the background, physical and mental condition, experience, education, socioeconomic status and any inequalities between [a victim] and the defendants with respect to these considerations but only insofar as you find that these matters were known to the defendants at the time. Simply put, you may ask whether [victims] were vulnerable in some way known to the defendants so that the actions of the defendants even if not sufficient to compel another person to work were enough to compel [victims] to work."). See also United States v. Alzanki, 54 F.3d 994, 1007-08 (1st Cir. 1995) (holding that evidence of "repressive Kuwaiti customs and practices towards domestic workers" was relevant to show "special vulnerability" to threats).   Indeed, in passing the statute, Congress itself identified a litany of vulnerabilities relevant to forced labor, including "poverty, the lack of access to education, chronic unemployment, discrimination, and the lack of economic opportunities in countries of origin," "unfamiliar[ity] with the laws, cultures and languages of the countries in which they have been

69

trafficked," "retribution or other hardship" upon return to their home country, and "official indifference, by corruption, and sometimes even…official participation in trafficking" by those countries.   22 U.S.C. § 7101.

As a result, "[t]he correct standard is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances." Rivera, 799 F.3d at 186–87.   Based on this hybrid standard, factors that made the victims especially susceptive may be considered by the jury, as reflected in the government's charge and the charges from which it was adapted.

> E.   A Climate of Fear May be Sufficient to Compel a Victim to Provide Service or Labor Against Their Will

The defendant eliminates the instruction about indirect threats and a "combination of conditions" that might intimidate a victim to continue to work.   This is inconsistent with the law on creating a "climate of fear," as well as the fact that the statute criminalizes a "scheme or plan" designed to coerce a person to provide labor or services.

It is sufficient to prove that labor was obtained forcibly if the workers were threatened with or suffered serious harm or physical restraint in connection with the services they purportedly rendered as part of a climate of fear that overcame their wills and compelled their service. Trial Tr. at 5029, Sabhnani (instructing the jury that "To prove forced labor, the government does not need to link specific threats allegedly made or actions allegedly taken against the workers to particular labor tasks performed by them. If the workers were threatened with or suffered serious harm or physical restraint…in connection with the services they purportedly rendered, either as punishment or as part of a climate of fear that overcame their wills and compelled their service, that is sufficient to establish the second element of the offense of forced labor."); see also United States v. King, 840 F.2d 1276, 1281 (6th Cir. 1988) (force, threats, and other coercion created "pervasive climate of fear"); United States v. Booker, 655 F.2d 562, 566 (4th Cir. 1981) (assaults and threats created "climate of fear"); 22 U.S.C. § 7101(b)(5)(TVPA's legislative findings discussing conduct that isolates victims "from family and friends, religious institutions, and other sources of protection and support, leaving the victims defenseless and vulnerable"); H.R. Conf. Rep. No. 106-939 at 100-01 (TVPA legislative history discussing schemes to place victims in fear of "harms such as banishment, starvation, or bankruptcy" as examples of means by which traffickers unlawfully intimidate victims).

Threats of or actual harm and maltreatment by the defendant and his coconspirators, including harm and threats thereof inflicted on people other than the immediate victims, may establish a pervasive environment of fear that compelled the victims' continued service to defendant.   See Marcus v. United States, No. 14-CV-5780 ARR, 2015 WL 3869689, at *10 (E.D.N.Y. June 22, 2015) (finding "climate of fear" evidence admissible to "explain how and why" the victim was compelled to stay); United States v. Kelly, No. 07-CR-374 (SJ), 2008 WL 5068820, at *6 (E.D.N.Y. July 10, 2008) (stating that "Courts in this circuit have allowed the government to

present evidence that punishments meted out by a defendant can create "a climate of fear that [is] sufficient to cause [the victim] to perform labor or services against her will.") (collecting cases); Oak-Jin Oh v. Soo Bok Choi, 2016 WL 11430442, at *2 (E.D.N.Y. Feb. 29, 2016) (recommending that default judgment on Section 1589 civil claim be granted where, inter alia, "[p]laintiff alleges the family was able to coerce her into working without pay 'by creating a climate of fear and intimidation' through threats of physical harm and verbal abuse."). See also United States v. Warren, 772 F.2d 827, 831, 833-34 (11th Cir. 1985) (affirming sufficiency of evidence in conviction of defendant for involuntary servitude that included evidence "of stories [the victims] heard from other laborers" about the defendant's violent conduct); United States v. Bibbs, 564 F.2d 1165, 1168 (5th Cir. 1977) (noting that even victims who had not been beaten for attempting to escape "were aware that the defendants had beaten other persons who attempted to escape" and that they "did not leave. . . because [they] feared that [they] would be physically harmed by the defendants.")

A defendant may therefore violate Section 1589 even if he never personally assaulted or threatened his victim, if his actions and threats created a climate of fear under which that victim labored.   See United States v. Alzanki, 54 F.3d 994, 99 (1st Cir. 1995) (upholding conviction that was based in part on "climate of fear" that "was enhanced by [the victim] witnessing one incident involving [her employer's] physical abuse of [his wife], and by learning from [the wife] that [the employer] struck [her] again shortly thereafter."); United States v. Harris, 701 F.2d 1095, 1100 (4th Cir. 1983) (evidence that the defendant beat people other than victim was relevant because it contributed to a "reign of physical terror" and defendant's conviction under § 1584 was upheld despite the fact that he had never personally assaulted or threatened his victim).

F.   Additional Objections to the Defendant's Proposed Charge

The government makes the following additional objections to the defendant's proposal:

1.   The defendant eliminates the proposed instruction regarding the definition of "serious harm."   The definition proposed by the government is the same as the statutory definition.   See 18 U.S.C. § 1589(c)(2).   The shorter definition provided by the defendant is inconsistent with the statute, and improper, because it leaves out key parts of the definition—for example, that the harm can include "financial" or "psychological" harm.   Id.

2.   The defendant proposes an instruction stating that threats of serious harm must involve "dire" consequences.   The statute defines "serious harm" as "any harm…that is sufficiently serious…to compel a reasonable person of the same background" to perform labor or services.   18 U.S.C. § 1589(c)(2).   The idea that the threats must involve "dire" consequence is wrong.   See Bradley, 390 F.3d at 151 (holding that instruction properly excluded term "dire" given statutory definition).

71

3.   The defendant incorrectly adds an instruction that "the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat."   As explained above, whether something satisfies the statutory standard for a "serious harm" or a threat thereof is based on whether a reasonable person in the victim's position would have believed it to be a threat.   In other words, it is a mixed objective-subjective standard taken from the perspective of the victim.   The defendant's subjective opinion as to whether something constitutes a threat is not what the jury needs to consider.

4.   The defendant changes the language of the definition of "abuse or threatened abuse of law or legal process."   The definition provided by the government is taken verbatim from the statute, and therefore is more accurate.   See 18 U.S.C. § 1589(c)(1).

5.   The defendant adds additional charging language about "mere enforcement of contractual provisions." The government is aware of no legal precedent that permits an instruction about "mere enforcement" (the defendant also leaves this term entirely undefined).   To the contrary, the statute is clear that any conduct, including enforcement of a contractual provision, could alone or together with other conduct, constitute evidence of coercion to perform labor or services.   If the defendant wants to argue that enforcing contractual provisions was insufficiently coercive, then he can do so in his case or closing.   But such a charge is neither warranted nor proper.

6.   The defendant eliminates the instruction that threats do not need to be linked to the specific labor performed.   This is also inconsistent with the law.   As explained above, the statute is deliberately expansive, and permits a jury to consider any serious harm or threats of serious harm that could be used to compel labor, and does not tie the definition to harm or threats directly linked to the work.   Indeed, the statute expressly criminalizes serious harm and threats of serious harm to third parties, which is a self-evident example of harm that is not directly linked to the specific labor performed.

7.   The defendant's inclusion of language about "legitimate consequences" is likewise improper.   The only support identified by the defendant is a First Circuit decision, United States v. Bradley, where the court speculated in dicta that there could be a fact-specific setting where a jury needs to be instructed about "legitimate warnings."   See 390 F.3d at 151-52.   The only two examples the court gave— explaining to a person that they would not receive future wages and would have to pay for a trip home if they stopped working—are both far outside the facts in this case.   Id.   Indeed, the defendant's conduct in this case is strikingly similar to the conduct of the defendants in Bradley—like those defendants, the facts here involve

72

withholding passports, failure to pay promised wages, threats of harm and physical violence to escapees. Id. at 148-49.   Accordingly, just like the court in Bradley this court should reject a purely hypothetical "legitimate consequences" charge because the conduct here is far removed from any legitimate behavior.   See id. at 152 ("No evidence was offered at trial that the defendants made "legitimate" threats, so there is no risk that the jury convicted them for such threats. The defendants' arguable threats or coercion involved the taking of passports and mentions of violence, combined with what the jury could have found to be complementary scrutiny of, or restrictions on, the victims' local travel.").

8.   The defendant modifies the instruction to say that the jury "may" find the defendant guilty if the government meets its burden.   The government submits that "may is improper, because the jury "should" or "must" find the defendant guilty if they conclude the burden of proof has been met.   See United States v. Carr, 424 F.3d 213, 221 (2d Cir. 2005) (affirming instruction jurors that it was their "duty to find a verdict of guilty" if the government met its burden of proof).

REQUEST NO. 7A (GOVERNMENT) -

<u>COUNT ONE: CONSPIRACY TO COMMIT FORCED LABOR</u>

Count One charges the defendant with conspiracy to commit forced labor.   The conspiracy charged in Count One is a conspiracy with two objects: (1) to provide or obtain forced labor or (2) to benefit from participation in a venture engaged in forced labor.   To find the defendant guilty of the conspiracy charged in Count One, you need only find, beyond a reasonable doubt, that the defendant conspired to commit one of these two objects, however you must be unanimous as to the object or objects of the conspiracy on which your verdict is based.

I have already instructed you on the general definition of conspiracy, which, as I said, is an agreement among two or more people to commit a crime.   Here, the alleged crime charged in Count One is forced labor.   I just instructed you on forced labor and you should apply those instructions here.

As I already instructed you, a conspiracy is a crime even if it fails to achieve its purpose.   Thus, to prove Count One, the government does not have to prove that the defendant actually committed the crime of forced labor.   Rather, if you find that the defendant knowingly and intentionally agreed to commit the crime of forced labor, then you should find the defendant guilty of Count One.   If you find the defendant guilty of Count One, you must state whether that finding unanimously was based upon one or more of the objects of the conspiracy, namely providing or obtaining forced labor or (2) benefitting from participation in a venture engaged in forced labor.

<u>Authority</u>

Adapted from the charges in <u>Rivera</u>, <u>Herron</u>, and <u>Korchevsky</u>.

74

REQUEST NO. 7B (DEFENDANT) -

<u>COUNT ONE: CONSPIRACY TO COMMIT FORCED LABOR</u>

Count One charges the defendant with conspiracy to commit forced labor.   The conspiracy charged in Count One is a conspiracy with two objects: (1) to provide or obtain forced labor or (2) to benefit from participation in a venture engaged in forced labor.   To find the defendant guilty of the conspiracy charged in Count One, you need only find, beyond a reasonable doubt, that the defendant conspired to commit one of these two objects, however you must be unanimous as to the object or objects of the conspiracy on which your verdict is based.

I have already instructed you on the general definition of conspiracy, which, as I said, is an agreement among two or more people to commit a crime.   Here, the alleged crime charged in Count One is forced labor.    I just instructed you on forced labor and you should apply those instructions here.

As I already instructed you, a conspiracy is a crime even if it fails to achieve its purpose.   Thus, to prove Count One, the government does not have to prove that the defendant actually committed the crime of forced labor.   Rather, if you find, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed to commit the crime of forced labor, then you may find the defendant guilty of Count One.   If you find the defendant guilty of Count One, you must state whether that finding unanimously was based upon one or more of the objects of the conspiracy, namely providing or obtaining forced labor or (2) benefitting from participation in a venture engaged in forced labor.

<u>Authority</u>

Modified version of government's Instruction No. 7A.

75

REQUEST NO. 7C (REDLINE) -

<u>COUNT ONE: CONSPIRACY TO COMMIT FORCED LABOR</u>

Count One charges the defendant with conspiracy to commit forced labor.   The conspiracy charged in Count One is a conspiracy with two objects: (1) to provide or obtain forced labor or (2) to benefit from participation in a venture engaged in forced labor.   To find the defendant guilty of the conspiracy charged in Count One, you need only find, beyond a reasonable doubt, that the defendant conspired to commit one of these two objects, however you must be unanimous as to the object or objects of the conspiracy on which your verdict is based.

I have already instructed you on the general definition of conspiracy, which, as I said, is an agreement among two or more people to commit a crime.   Here, the alleged crime charged in Count One is forced labor.   I just instructed you on forced labor and you should apply those instructions here.

As I already instructed you, a conspiracy is a crime even if it fails to achieve its purpose.   Thus, to prove Count One, the government does not have to prove that the defendant actually committed the crime of forced labor.   Rather, if you find, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed to commit the crime of forced labor, then you ~~should~~may find the defendant guilty of Count One.   If you find the defendant guilty of Count One, you must state whether that finding unanimously was based upon one or more of the objects of the conspiracy, namely providing or obtaining forced labor or (2) benefitting from participation in a venture engaged in forced labor.

<u>Authority</u>

Adapted from the charges in <u>Rivera</u>, <u>Herron</u>, and <u>Korchevsky</u>.

76

## Explanation of Defense Objection

The defendant's modification simply adds a reference to the beyond a reasonable doubt standard.


## Government's Objection

The parties largely agree on this charge.   However, the defendant again modifies the instruction to say that the jury "may" find the defendant guilty if the government meets its burden.   As noted above, this is improper – the jury "should" find the defendant guilty if the burden is met.   <u>See</u> <u>Carr</u>, 424 F.3d at 221 (affirming instruction about "duty to find a verdict of guilty").

77

REQUEST NO. 8A (GOVERNMENT) -

<u>COUNT THREE: DOCUMENT SERVITUDE</u>

Count Three charges the defendant with document servitude in violation of Title 18, United States Code, Section 1592.   The relevant part of the statute provides that:

> Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person–
>
> (1) in the course of a violation of section . . . 1589 [forced labor statute];
>
> (2) with intent to violate section . . . 1589 [forced labor statute]; or
>
> (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons,
>
> [has committed a crime].

In order to prove a violation of Section 1592, the government must prove the following three elements beyond a reasonable doubt:

<u>First</u>, that the defendant concealed, removed, confiscated or possessed an actual or purported passport, visa, or other government identification document of another person;

<u>Second</u>, that the defendant did so (1) in the course of violating the forced labor statute; (2) with intent to violate the forced labor statute; or (3) to unlawfully prevent or restrict or to attempt to prevent or restrict a person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons; and

<u>Third</u>, that defendant acted knowingly.

I will now explain each of these three elements in greater detail.

78

The first element the government must prove beyond a reasonable doubt is that the defendant concealed, removed, confiscated or possessed an actual or purported passport, immigration document, or other government identification document of another person.   The word "conceal" means the act of refraining from disclosure or preventing the discovery of the document, or hiding the document.   To "remove" means to take away or transfer from one place to another.   To "confiscate" means to appropriate or seize the document.   To "possess" means to hold and have actual control of the document.

The second element requires that the government prove that the defendant engaged in the concealment, removal, confiscation, or possession of the document either

(1) in the course of a forced labor violation; or

(2) with the intent to commit forced labor; or

(3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

In other words, the government must prove, beyond a reasonable doubt, that the defendant did any of these acts in the course of a violation of Title 18, United States Code Section 1589, the forced labor statute, or with the intent to violate that statute.   When considering whether the defendant concealed, removed, confiscated, or possessed the passports in the course of a forced labor offense, you should consider the instructions that I previously gave you regarding the elements of the offense of forced labor.

When considering whether the defendant acted with intent to violate the forced labor statute, I instruct you that the government need not prove an actual violation of the forced

labor statute to prove this element beyond a reasonable doubt.   Even if the defendant does not succeed in committing forced labor, it is enough for the second element of Count Three if you find that the defendant acted with the intent to violate the forced labor statute.

"A severe form of trafficking in persons" means the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

"Peonage" means holding a victim in involuntary servitude for the purpose of repaying a debt.   I instruct you that it does not matter if the debt was legally enforceable.

"Debt bondage" means the status or condition of a debtor arising from a pledge by the debtor of their personal services or of those of a person under their control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined.

The third and final element of Count Three is that the defendant acted knowingly. I have previously instructed you on the definition of knowingly, and that definition applies here.

<u>Authority</u>

Adapted from charge in <u>Sabhnani</u>; <u>see also</u> 18 U.S.C. § 1592;
22 U.S.C. § 7102; Sand, Instruction 47A-6

REQUEST NO. 8B (DEFENDANT) -

COUNT THREE: CONCEALING PASSPORTS AND IMMIGRATION DOCUMENTS IN

CONNECTION WITH FORCED LABOR

Count Three charges the defendant with concealing passports and immigration documents in connection with forced labor, in violation of Title 18, United States Code, Section 1592.   The relevant part of the statute provides that:

> Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person–
>
> (1) in the course of a violation of section . . . 1589 [forced labor statute];
>
> (2) with intent to violate section . . . 1589 [forced labor statute]; or
>
> (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons,
>
> [has committed a crime].

In order to prove a violation of Section 1592, the government must prove each of the following three elements beyond a reasonable doubt:

First, that the defendant concealed, removed, confiscated or possessed an actual or purported passport, visa, or other government identification document of another person;

Second, that the defendant did so (1) in the course of violating the forced labor statute; (2) with intent to violate the forced labor statute; or (3) to unlawfully prevent or restrict or to attempt to prevent or restrict a person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons; and

Third, that defendant acted knowingly.

81

I will now explain each of these three elements in greater detail.

The first element the government must prove beyond a reasonable doubt is that the defendant concealed, removed, confiscated or possessed an actual or purported passport, immigration document, or other government identification document of another person.   The word "conceal" means the act of refraining from disclosure or preventing the discovery of the document, or hiding the document.   To "remove" means to take away or transfer from one place to another.   To "confiscate" means to appropriate or seize the document.   To "possess" means to hold and have actual control of the document.

The second element requires that the government prove that the defendant engaged in the concealment, removal, confiscation, or possession of the document either

(1) in the course of a forced labor violation; <u>or</u>

(2) with the intent to commit forced labor; <u>or</u>

(3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

In other words, the government must prove, beyond a reasonable doubt, that the defendant did any of these acts in the course of a violation of Title 18, United States Code Section 1589, the forced labor statute, or with the intent to violate that statute.   When considering whether the defendant concealed, removed, confiscated, or possessed the passports in the course of a forced labor offense, you should consider the instructions that I previously gave you regarding the elements of the offense of forced labor.

82

When considering whether the defendant acted with intent to violate the forced labor statute, I instruct you that the government need not prove an actual violation of the forced labor statute to prove this element beyond a reasonable doubt.   Even if the defendant does not succeed in committing forced labor, it is enough for the second element of Count Three if you find, beyond a reasonable doubt, that the defendant acted with the intent to violate the forced labor statute.

"A severe form of trafficking in persons" means the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

"Peonage" means holding a victim in involuntary servitude for the purpose of repaying a debt.   I instruct you that it does not matter if the debt was legally enforceable.

"Debt bondage" means the status or condition of a debtor arising from a pledge by the debtor of their personal services or of those of a person under their control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined.   Thus, in order for the condition of "debt bondage" to exist, there must be a debt.   The posting of assets as security for the performance of contractual obligations does not constitute a debt.   Moreover, a contract entered into voluntarily cannot form the basis of establishing the status or condition of "debt bondage."   I instruct you that under the law a person who signs a contract is presumed to know its terms and consents to be bound by it.

83

The third and final element of Count Three is that the defendant acted knowingly.

I have previously instructed you on the definition of knowingly, and that definition applies here.

<u>Authority</u>

Modified version of government's Request No. 8A.   <u>See</u> 18 U.S.C. § 1592; 22 U.S.C. § 7102; Sand, Instruction 47A-6; <u>United States v. Garcia</u>, 2003 WL 22956917, at *1 (W.D.N.Y. Dec. 2, 2003)(finding debt bondage where defendants "repeatedly [told workers] that they owed large sums of money to the defendants and could not leave without paying off their debts."); <u>Muchira v. Al-Rawaf</u>, 850 F.3d 605, 620 (4th Cir. 2017) (rejecting forced labor claim where plaintiff "reviewed the terms of the contract . . . before signing it, and she came to the United States voluntarily with full knowledge of" the provisions); <u>Equal Employment Opportunity Communications v. Global Horizons, Inc.</u>, 2014 WL 11429302 (E.D. Wash. May 19, 2014)(debt bondage at issue where impoverished farmers from rural Thailand were recruited by defendant and "incurred large debts or were forced to mortgage their family homes in order to pay high recruitment fees"); <u>Panwar v. Access Therapies, Inc.</u>, 975 F. Supp. 2d 948 (S.D. Ind. 2013)(granting defendants' motion for summary judgment because "the fact that they voluntarily entered into the employment contracts belies [the plaintiffs'] characterization" that the situation was a "forced labor scheme"); Report of the Special Rapporteur on Contemporary Forms of Slavery, United Nations Human Rights Council, July 4, 2016, U.N. Doc. A/HRC/33/46, ¶ 5 (noting the International Labour Organization Forced Labour Convention of 1930's definition of "debt bondage as 'work or service which is exacted from any person under the menace of any penalty and for which the said person has not offered himself voluntarily'"); <u>Preston Frankford Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Butler Dining Servs., LLC</u>, 757 F. Supp. 2d 248, 252 (W.D.N.Y. 2010) (explaining that it "is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them)(internal citations omitted).

REQUEST NO. 8C (REDLINE) -

COUNT THREE: ~~DOCUMENT SERVITUDE~~CONCEALING PASSPORTS AND

IMMIGRATION DOCUMENTS IN CONNECTION WITH FORCED LABOR

Count Three charges the defendant with ~~document servitude~~concealing passports

and immigration documents in connection with forced labor, in violation of Title 18, United States

Code, Section 1592.   The relevant part of the statute provides that:

> Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person–
>
> > (1) in the course of a violation of section . . . 1589 [forced labor statute];
> >
> > (2) with intent to violate section . . . 1589 [forced labor statute]; or
> >
> > (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the ~~person's~~person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons,
>
> [has committed a crime].

In order to prove a violation of Section 1592, the government must prove each of

the following three elements beyond a reasonable doubt:

First, that the defendant concealed, removed, confiscated or possessed an actual or

purported passport, visa, or other government identification document of another person;

Second, that the defendant did so (1) in the course of violating the forced labor

statute; (2) with intent to violate the forced labor statute; or (3) to unlawfully prevent or restrict or

to attempt to prevent or restrict a ~~person's~~person's liberty to move or travel, in order to maintain

the labor or services of that ~~person,~~person, when the person is or has been a victim of a severe

form of trafficking in persons; and

Third, that defendant acted knowingly.

85

I will now explain each of these three elements in greater detail.

The first element the government must prove beyond a reasonable doubt is that the defendant concealed, removed, confiscated or possessed an actual or purported passport, immigration document, or other government identification document of another person.   The word "conceal" means the act of refraining from disclosure or preventing the discovery of the document, or hiding the document.   To "remove" means to take away or transfer from one place to another.   To "confiscate" means to appropriate or seize the document.   To "possess" means to hold and have actual control of the document.

The second element requires that the government prove that the defendant engaged in the concealment, removal, confiscation, or possession of the document either

(1) in the course of a forced labor violation; or

(2) with the intent to commit forced labor; or

(3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

In other words, the government must prove, beyond a reasonable doubt, that the defendant did any of these acts in the course of a violation of Title 18, United States Code Section 1589, the forced labor statute, or with the intent to violate that statute.   When considering whether the defendant concealed, removed, confiscated, or possessed the passports in the course of a forced labor offense, you should consider the instructions that I previously gave you regarding the elements of the offense of forced labor.

86

When considering whether the defendant acted with intent to violate the forced labor statute, I instruct you that the government need not prove an actual violation of the forced labor statute to prove this element beyond a reasonable doubt.   Even if the defendant does not succeed in committing forced labor, it is enough for the second element of Count Three if you find, beyond a reasonable doubt, that the defendant acted with the intent to violate the forced labor statute.

"A severe form of trafficking in persons" means the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

"Peonage" means holding a victim in involuntary servitude for the purpose of repaying a debt.   I instruct you that it does not matter if the debt was legally enforceable.

"Debt bondage" means the status or condition of a debtor arising from a pledge by the debtor of their personal services or of those of a person under their control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined.   Thus, in order for the condition of "debt bondage" to exist, there must be a debt.   The posting of assets as security for the performance of contractual obligations does not constitute a debt.   Moreover, a contract entered into voluntarily cannot form the basis of establishing the status or condition of "debt bondage."   I instruct you that under the law a person who signs a contract is presumed to know its terms and consents to be bound by it.

87

The third and final element of Count Three is that the defendant acted knowingly.

I have previously instructed you on the definition of knowingly, and that definition applies here.

### Explanation of Defense Objection

The defense objects to the government's reference to Count 3 as "document servitude" because that term is not in the statute and is inconsistent with the charging language in the Indictment.   (Dkt. No. 20).    Furthermore, the defense objects to government's Instruction No. 6A in that it fails to adequately define "debt bondage."   The defendant's proposed instruction is consistent with the applicable case law and other authority, including the UN report that is cited above, and previously was cited by the government in its opposition to defendant's motion to dismiss (Dkt. No. 179 at 3 n.1).

### Government's Objections

The defendant strikes the term "document servitude" from its proposed charge. The government proposes to describe this crime as "document servitude," because that is what the crime is called by federal courts around the country.   See, e.g., United States v. Sabhnani, 599 F. 3d 215 (2d Cir. 2010) (describing charge as "two counts of document servitude"); United States v. Dann, 652 F.3d 1160, 1173 (9th Cir. 2011) ("Document servitude occurs where a defendant 'knowingly ... conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document ... of another person ... in the course of' trafficking, peonage, slavery, involuntary servitude or forced labor.").

The defendant adds several instructions about debt bondage, including that the government must "prove beyond a reasonable doubt" that (1) "there was in fact a debt"; (2) the "defendant demanded the workers' labor as a repayment of a loan or money provided in advance, and that the value of those services was not applied toward reducing debt, or that the length and nature of the workers' services were not retrospectively limited and defined"; (3) that posting "assets" rather than "services" does not count as "debt bondage," and (4) that "the contract was not entered into voluntarily."

First, as reflected in the government's request to charge, "debt bondage" is defined by federal statute and "means the status or condition of a debtor arising from a pledge by the debtor of their personal services or of those of a person under their control as a security for debt, if the value of those services as reasonably assessed is not applied toward the liquidation of the debt or the length and nature of those services are not respectively limited and defined."   22 U.S.C. § 7102(5).   Consistent with the deliberately expansive reach of the modern forced labor statutes

88

arising out of the Trafficking Victims Protection Act, the definition of "debt bondage" does not include any of the added requirements requested by the defendant.

Second, the defendant's instruction that there must be a finding that the contract was not voluntarily executed is incorrect as a matter of law, because, as previously explained above, the initial voluntary nature of an arrangement is not dispositive of whether the conduct constitutes forced labor. See, e.g., United States v. Marcus, 628 F.3d 36 (2d. 2010) (mere fact that victim initially consented did not remove defendant's conduct from scope of forced labor statute, given evidence that woman had continued behaving as defendant's sex slave solely out of fear induced by his increasingly severe punishments); United States v. Kyongja Kang, 2006 WL 208882, at *2 (E.D.N.Y. Jan. 25, 2006) (Glasser, J.) (explaining that the voluntary or involuntary nature of the entry into the debt-relationship is irrelevant:   while it "is sometimes classified as voluntary or involuntary…this implies simply a difference in the mode or origin, but none in the character of the servitude…that which is contemplated by the stature is compulsory service to secure the payment of a debt.") (quotation omitted).

Third, these instructions erroneously imply that the government must prove several additional elements as part of a document servitude charge.   As 18 U.S.C. § 1592 and the government's request explains, the government does not need to actually prove a violation of the forced labor statute to prove the offense of document servitude.

None of the cited authorities provided by the defendant support these instructions either.   For example, in United States v. Garcia, a Report & Recommendation from the Western District of New York, the magistrate judge said nothing about the definition of "debt bondage," and instead simply noted that the forced labor charges against the defendants were supported in part by threats that the workers "owed large sums of money to the defendants."   See 2003 WL 22956917, at *1.   In E.E.O.C. v. Global Horizons, Inc., the court also did not define "debt bondage"; rather, the court described workers suffering from debt bondage because they were forced to "mortgage their family homes" to pay recruitment fees.   In this case, the defendant and his company took large amounts of collateral (both cash and the homes of the victims and their families) before the workers began their work.   Muchira v. Al-Rawaf was a case that involved an employment contract that did not entail any collateral pledge or deposit by the employee.   See 850 F.3d 605, 620 (4th Cir. 2017).   In Panwar v. Access Therapies, Inc., the court denied the defendant's motion to dismiss because it determined that allegations that the victims were forced to work by the threat of debt via a promissory note and having their visas revoked constituted a colorable claim under the forced labor statute.   See 975 F. Supp. 2d 948, 958 (S.D. Ind. 2013).

Put simply, it is an illogical reading of the statute to conclude that the broad definition of debt bondage would somehow exclude a situation where the defendant didn't just coerce labor through an IOU, but actually seized the victims' limited funds before they even started to work.   The entirety of this added set of instructions are improper and should be rejected.

89

REQUEST NO. 9A (GOVERNMENT) -

COUNT FOUR: CONSPIRACY TO ENGAGE IN ALIEN SMUGGLING

Count Four of the indictment charges the defendant with conspiracy to engage in alien smuggling.   The relevant statutes provide that any person who "knowing or in reckless disregard of the fact that an alien . . . remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law" or conspires to do the same, has committed a crime.

The defendant is charged in Count Four with conspiring to engage in alien smuggling.   I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.    Here, the alleged crime the defendant is charged with agreeing to commit is alien smuggling.   The elements of the crime of alien smuggling are as follows:

First, that an alien was in the United States in violation of the law;

Second, knowledge or reckless disregard of the fact that such alien remained in the United States in violation of law;

Third, transportation of such alien within the United States; and

Fourth, willful conduct in furtherance of such alien's illegal presence in the United States.

The first element requires that an alien remained in the United States in violation of law.   An "alien" is a person who is not a natural-born or naturalized citizen, or a national of the United States.   A "national of the United States" is a person born in a United States territory.

90

An alien is in the United States in violation of the law if they violate a condition of the visa under which they were admitted to the United States.

I instruct you that, under an agreement between the government of the United States and the government of the People's Republic of China, Chinese workers for a private construction company could be admitted to the United States under diplomatic visas for the purpose of performing work on specific construction projects approved by the United States Department of State on Chinese government diplomatic facilities in the United States, and that working on other projects or non-government facilities, or remaining in the United States after the completion of the work on the government facilities, was a violation of the conditions of those visas.   In other words, any Chinese worker admitted to the United States under a diplomatic visa for the purpose of performing approved construction work on Chinese diplomatic facilities who works on non-approved construction projects, including work on non-diplomatic facilities, is in the United States in violation of the law.

The second element requires knowledge or reckless disregard of the fact that such alien remained in the United States in violation of the law.   In other words, to be guilty of alien smuggling conspiracy the defendant must either know that the person he transported was an alien who was in the United States in violation of law, or he must have acted with reckless disregard of the facts concerning the alien's status.

I have previously instructed you on knowledge and you should apply that instructions here.   For purposes of this instruction, the phrase "reckless disregard of the facts" means deliberate indifference to facts that, if considered and weighed in a reasonable manner,

indicate the highest probability that the alleged alien was in fact an alien and was in the United States unlawfully.

The third element requires transportation of an alien who is remaining in the United States unlawfully.

The fourth element requires willful conduct in furtherance of the alien's violation of the law. There must be a direct and substantial relationship between the transportation and furthering the alien's unlawful presence in the United States. Transportation of illegal aliens is not, by itself, a violation of the statute if it is merely incidental to the alien's presence in the United States, for the law proscribes such conduct only when it is in furtherance of the alien's unlawful presence. When determining whether there was a direct and substantial relationship between the transportation and furthering the aliens' unlawful presence in the United States, you should consider all relevant evidence including the time of the transportation, place, distance of the transportation, and the overall impact of the transportation.

As I already instructed you, a conspiracy is a crime even if it fails to achieve its purpose. Thus, to prove Count Four, the government does not have to prove that the defendant actually committed the crime of alien smuggling. Rather, if you find that the defendant knowingly and intentionally agreed to commit the crime of alien smuggling, then you should find the defendant guilty of Count Four.

If you find the defendant guilty of conspiracy to commit alien smuggling under Count Four, you must then determine whether the defendant acted for the purpose of commercial advantage or private financial gain. "Commercial advantage" is a profit or gain in money or property obtained through business activity. "Private financial gain" is profit or gain in money

92

or property specifically for a particular person or group.   There is no requirement that the defendant actually received some financial gain, although, of course, you may consider evidence that the defendant did receive financial gain in deciding whether he acted for that purpose.

<u>Authority</u>

Adapted from <u>Sabhnani</u>, <u>Rivera</u> and Sand, § 33A.02, Instructions 33A-7, 33A-8, 33A-9, 33A-10, 33A-11, 33A-12, 33A-13, 33A-17; <u>see also United States v. Rodriguez</u>, 587 F.3d 573 (2d Cir. 2009); <u>United States v. Kim</u>, 193 F.3d 567, 572 (2d Cir. 1999).

REQUEST 9B (DEFENDANT) -

<u>COUNT FOUR: CONSPIRACY TO ENGAGE IN ALIEN SMUGGLING</u>

Count Four of the indictment charges the defendant with conspiracy to engage in alien smuggling.   The relevant statutes provide that any person who "knowing or in reckless disregard of the fact that an alien . . . remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law" or conspires to do the same, has committed a crime.

The defendant is charged in Count Four with conspiring to engage in alien smuggling.   I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.   Here, the alleged crime the defendant is charged with agreeing to commit is alien smuggling.   The elements of the crime of alien smuggling are as follows:

<u>First</u>, that an alien was in the United States in violation of the law;

<u>Second</u>, that the defendant knew, or acted in reckless disregard of the fact that such alien remained in the United States in violation of law;

<u>Third</u>, that the defendant transported such alien within the United States; and

<u>Fourth</u>, that the defendant acted willfully to further the alien's illegal presence in the United States.

The first element requires that an alien remained in the United States in violation of law.   An "alien" is a person who is not a natural-born or naturalized citizen, or a national of the United States.   A "national of the United States" is a person born in a United States territory.

94

I instruct you that, under the COCA agreement between the government of the United States and the government of the People's Republic of China, Chinese workers for a private construction company could be admitted to the United States under diplomatic visas for the purpose of performing work on specific construction projects approved by the United States Department of State on Chinese government diplomatic facilities in the United States.   Although workers receiving such diplomatic visas did so for purposes of working on PRC diplomatic facilities in the United States, there is no absolute prohibition under the law that their work be limited solely to those projects.

The second element requires knowledge or reckless disregard of the facts that (a) the Chinese workers entered or remained in the United States in violation of the law.

I have previously instructed you on knowledge and reckless disregard, and you should apply that instructions here.

The third element requires transportation of an alien who is remaining in the United States unlawfully.

The fourth element requires willful conduct in furtherance of the alien's illegal presence in the United States.   There must be a direct and substantial relationship between the purpose of the transportation and furthering the alien's unlawful presence in the United States. Transportation of illegal aliens is not, by itself, a violation of the statute if it is merely incidental to the alien's presence in the United States, for the law proscribes such conduct only when its purpose is to advance or assist the alien's unlawful presence.   When determining whether there was a direct and substantial relationship between the transportation and furthering the aliens' unlawful presence in the United States, you should consider all relevant evidence including the

95

time of the transportation, place, distance of the transportation, and the overall impact of the transportation.

As I already instructed you, a conspiracy is a crime even if it fails to achieve its purpose.   Thus, to prove Count Four, the government does not have to prove that the defendant actually committed the crime of alien smuggling.   Rather, if you find, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed to commit the crime of alien smuggling, then you may find the defendant guilty of Count Four.

If you find the defendant guilty of conspiracy to commit alien smuggling under Count Four, you must then determine whether the defendant acted for the purpose of commercial advantage or private financial gain.   "Commercial advantage" is a profit or gain in money or property obtained through business activity.   "Private financial gain" is profit or gain in money or property specifically for a particular person or group.   There is no requirement that the defendant actually received some financial gain, although, of course, you may consider any evidence that the defendant did receive financial gain in deciding whether he acted for that purpose. On the other hand, actual receipt of financial gain by the defendant, standing alone, does not suffice.   Rather, to satisfy this element, the government must prove, beyond a reasonable doubt, that the defendant was motivated to commit the offense by the desire for such gain.

Authority

Modified version of government's Request No. 9A.   Adapted from Sand, Instructions 33A-7, 33A-8, 33A-9, 33A-10, 33A-11, 33A-12, 33A-13, 33A-17; see 8 C.F.R. § 214.2(a)(10), (g)(10) (an A or G visa holder "who is a principal alien and who engages in employment outside the scope of his/her official position *may be* considered in violation of section 241(A)(1)(C)(i) of the Act.") (emphasis added); United States v. Vargas-Cordon, 2011 WL

13127890, at *3 (E.D.N.Y. June 28, 2011) (Glasser, J.) (finding the
defendant acted "in furtherance of" keeping his undocumented niece
in the United States when he unlawfully and intentionally removed
her from her foster home and transported her to Brooklyn), *aff'd*,
733 F.3d 366 (2d Cir. 2013); United States v. Perez-Gonzalez, 307
F.3d 443, 445–46 (6th Cir. 2002) (affirming conviction that the
transportation was "in furtherance of" the aliens' illegal presence
where the "the intent to conceal the passengers is unmistakable");
United States v. Moreno, 561 F.2d 1321, 1322 (9th Cir. 1977)
(finding defendant's "transportation of the aliens . . . too attenuated
to come within the boundaries of [the transportation charge]" where
he was simply "transporting the aliens as part of the ordinary and
required course of his employment as a foreman."); United States v.
Moreno-Duque, 718 F. Supp. 254, 255 (D. Vt. 1989) ("government
must prove that the defendant specifically intended by means of
transportation to advance or assist the aliens violation of law, not
merely that the effect of the transportation was to allow the alien to
remain in the United States.")

REQUEST 9C (REDLINE) -

COUNT FOUR: CONSPIRACY TO ENGAGE IN ALIEN SMUGGLING

Count Four of the indictment charges the defendant with conspiracy to engage in alien smuggling.   The relevant statutes provide that any person who "knowing or in reckless disregard of the fact that an alien . . . remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law" or conspires to do the same, has committed a crime.

The defendant is charged in Count Four with conspiring to engage in alien smuggling.   I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.   Here, the alleged crime the defendant is charged with agreeing to commit is alien smuggling.   The elements of the crime of alien smuggling are as follows:

First, that an alien was in the United States in violation of the law;

Second, ~~knowledge~~that the defendant knew, or acted in reckless disregard of the fact that such alien remained in the United States in violation of law;

Third, ~~transportation of~~that the defendant transported such alien within the United States; and

Fourth, ~~willful conduct in furtherance of such~~that the defendant acted willfully to further the alien's illegal presence in the United States.

The first element requires that an alien remained in the United States in violation of law.   An "alien" is a person who is not a natural-born or naturalized citizen, or a national of

98

the United States.    A "national of the United States" is a person born in a United States territory. An alien is in the United States in violation of the law if they violate a condition of the visa under which they were admitted to the United States.

I instruct you that, under an~~the COCA agreement between the government of the United States and the government of the People's Republic of China, Chinese workers for a private construction company could be admitted to the United States under diplomatic visas for the purpose of performing work on specific construction projects approved by the United States Department of State on Chinese government diplomatic facilities in the United States, and that working on other projects or non-government facilities, or remaining in the United States after the completion of the work on the government facilities, was a violation of the conditions of those visas.    In other words, any Chinese worker admitted to the United States under a diplomatic visa for the purpose of performing approved construction work on Chinese diplomatic facilities who works on non-approved construction projects, including work on non-diplomatic facilities, is in the United States in violation of the law.    Although workers receiving such diplomatic visas did so for purposes of working on PRC diplomatic facilities in the United States, there is no absolute prohibition under the law that their work be limited solely to those projects.

The second element requires knowledge or reckless disregard of the ~~fact~~facts that such alien(a) the Chinese workers entered or remained in the United States in violation of the law. In other words, to be guilty of alien smuggling conspiracy the defendant must either know that the person he transported was an alien who was in the United States in violation of law, or he must have acted with reckless disregard of the facts concerning the alien's status.

99

I have previously instructed you on knowledge and ~~you should apply that instructions here.   For purposes of this instruction, the phrase "reckless disregard of the facts" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that the alleged alien was in fact an alien and was in the United States unlawfully.~~reckless disregard, and you should apply that instructions here.

The third element requires transportation of an alien who is remaining in the United States unlawfully.

The fourth element requires willful conduct in furtherance of the alien's ~~violation of~~illegal presence in the ~~law.~~United States.   There must be a direct and substantial relationship between the purpose of the transportation and furthering the alien's unlawful presence in the United States.   Transportation of illegal aliens is not, by itself, a violation of the statute if it is merely incidental to the alien's presence in the United States, for the law proscribes such conduct only when ~~it~~its purpose is ~~in furtherance of~~to advance or assist the alien's unlawful presence. When determining whether there was a direct and substantial relationship between the transportation and furthering the aliens' unlawful presence in the United States, you should consider all relevant evidence including the time of the transportation, place, distance of the transportation, and the overall impact of the transportation.

As I already instructed you, a conspiracy is a crime even if it fails to achieve its purpose.   Thus, to prove Count Four, the government does not have to prove that the defendant actually committed the crime of alien smuggling.   Rather, if you find, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed to commit the crime of alien smuggling, then you ~~should~~may find the defendant guilty of Count Four.

100

If you find the defendant guilty of conspiracy to commit alien smuggling under Count Four, you must then determine whether the defendant acted for the purpose of commercial advantage or private financial gain.   "Commercial advantage" is a profit or gain in money or property obtained through business activity.   "Private financial gain" is profit or gain in money or property specifically for a particular person or group.   There is no requirement that the defendant actually received some financial gain, although, of course, you may consider any evidence that the defendant did receive financial gain in deciding whether he acted for that purpose. On the other hand, actual receipt of financial gain by the defendant, standing alone, does not suffice.   Rather, to satisfy this element, the government must prove, beyond a reasonable doubt, that the defendant was motivated to commit the offense by the desire for such gain.

<u>Explanation of Defense Objection</u>

The defendant objects to the government's proposed instruction on a number of grounds, including its failure to frame the elements of the offense in terms of the defendant's alleged conduct and because it makes assertions about the law under COCA for which there is no legal authority.   The defense's proposed modifications are consistent with and required by the language of the immigration regulations and the applicable case law.

**<u>Government's Objections</u>**

The government objects to the defendant's charge, and submits the following additional statement of law in support of its charge:

A. <u>An Alien Who Violates the Terms of Their Nonimmigrant Visa and Remains in the United States is a Deportable Alien</u>

Under Section 237 of the Immigration and Nationality Act (INA), classes of deportable aliens include those individuals who fail to comply with their nonimmigrant status. See 8 U.S.C. §§ 1227 (a)(1)(C)(i) ("Any alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable."). If an alien who is admitted to the United States under a nonimmigrant visa violates any condition

101

or term of that visa, such as engaging in unauthorized work, they are out of status and therefore a deportable alien. Cf. United States v. Rodriguez-Rodriguez, 840 F.2d 697 (9th Cir. 1988) (by transporting undocumented aliens who had not applied for adjustment of status and who therefore remained in the United States in violation of law, defendant violated § 1324, even assuming aliens were eligible for adjustment of status). In other words, "[t]he law is clear that 'an alien who was admitted as a nonimmigrant and who has failed to maintain the nonimmigrant status in which the alien was admitted ... or to comply with the conditions of such status, is deportable.'" Ali v. Mukasey, 542 F.3d 1180, 1182 (7th Cir. 2008) (finding that although alien had entered United States on valid visa authorizing him to work for one company, alien was deportable due to commencing work at second company three months prior to second company's filing petition to allow him to work there lawfully, under statute providing for deportation of alien who was admitted as nonimmigrant but failed to maintain or to comply with conditions of such status) (quoting 8 U.S.C. § 1227(a)(1)(C)(i)).

Under the Agreement Between the Government of the United States of America and the Government of the People's Republic of China on the Conditions of Construction of Diplomatic and Consular Complexes in the People's Republic of China and the United States of America Section 9.4, construction workers admitted to the United States under diplomatic visas for the purpose of performing construction work on diplomatic facilities "shall be restricted to project-related work and shall leave the [United States] upon conclusion of the project," except that "a limited number of [PRC] personnel . . . shall be permitted to remain in the [United States] . . . for the sole purpose of correcting any construction defects and establishing maintenance and operation procedures."

Accordingly, any construction worker admitted to the United States under diplomatic visas for the purpose of performing construction work on diplomatic facilities, but who worked unauthorized on other non-diplomatic facilities, has failed to maintain the nonimmigrant status under which they were admitted.   See 8 U.S.C. § 1227(a)(1)(C)(i) ("Any alien who was admitted as a nonimmigrant and who has failed . . . to comply with the conditions of any such status, is deportable.").

### B. Actual Knowledge of an Alien's Illegal Status is Not Required

Proving actual knowledge of an alien's unlawful status is not necessary to meet the requirement that a person knew or recklessly disregarded the fact that the aliens he or she transported were in the United States illegally. See United States v. Mussaleen, 35 F.3d 692, 698 (2d Cir. 1994).   Although ignorance is a common defense to a charge under § 1324(a), circumstantial evidence alone can establish a person's knowledge or reckless disregard that the people he or she transported were illegally present in the United States or to support an inference by the jury he or she knew an alien's illegal status. See, e.g., Rodriguez v. United States, No. 11-CV-5470 SJF, 2015 WL 1509490, at *5 (E.D.N.Y. Mar. 31, 2015) (explaining that "Section 1324(a) prohibits the knowing transportation of an illegal alien, as well as the same act done with reckless disregard of the fact that the person is an illegal alien" and "[c]ircumstantial evidence alone can establish a defendant's knowledge or reckless disregard that the people harbored are

illegally in the country.") (denying relief and quoting United States v. Mussaleen, 35 F.3d 692, 698 (2d Cir.1994) and United States v. De Jesus–Batres, 410 F.3d 154, 161 (5th Cir.2005)) (unreported).

        For example, the Second Circuit upheld a conviction under § 1324(a)(1)(A)(ii) by concluding that the circumstantial evidence was sufficient to permit the jury to conclude that defendant knew or recklessly disregarded the fact that aliens were in the country illegally.   See United States v. Hernandez-Sanchez, 315 Fed. App'x 308, 309–10 (2d Cir. 2008) (affirming conviction under 1324(a)(1)(A)(ii) on the basis of, inter alia, evidence that (1) the area where defendant picked up the aliens is commonly used to smuggle people across the border; (2) defendant specifically requested a large car from the rental agency and paid $300 for a sport utility vehicle despite owning one; and (3) police recovered from defendant's rental car a map with highlighted route to defendant's destination using back roads)) (summary order).   Similarly, evidence about the defendant's own immigration history may also establish the defendant's knowledge or reckless disregard of alienage, the immigration laws, and other facts about the immigration process.   A jury can fairly conclude that a person who himself was here on a visa that had certain restrictions would know that another person that violated those same visa conditions would be a deportable alien.

        An "ignorance of the law," "good faith," or "mistake of law" instruction is therefore not required for an alien smuggling charge under Section 1324. See United States v. Kim, 193 F.3d 567, 572 (2d Cir. 1999) (upholding Judge Rakoff's jury instructions for a charge under 8 U.S.C. § 1324(a)(1)(A)(iii) and his decision to exclude defense's requested instruction on good faith defense); see also United States v. Fierros, 692 Fd 1291, 1295-1296 (9th Cir. 1983), cert. denied, 462 U.S. 1120 (1983) ("[The ignorance of law instruction] cannot be extended to cover an assertion that, while [defendants] knew that the workers were illegal aliens, and they knew they were transporting or shielding them, they were unaware that § 1324 prohibited their conduct.").

C.   Transportation of Aliens That Is More Than "Incidental" to Aliens' Violation of U.S. Law Directly Facilitates Their Unlawful Presence in the United States

        The defendant incorrectly requests an instruction that the "purpose" of the transportation must be to facilitate an alien's unlawful presence.   For an alien smuggling charge, there must be evidence of "a direct and substantial relationship between the transportation and furthering the alien's unlawful presence in the United States"; the transportation must be more than "incidental" to the alien's illegal presence.   United States v. Rodriguez, 587 F.3d 573, 584 (2d Cir. 2009) (approving jury instructions and affirming conviction under 8 U.S.C. § 1324(a)(1)(A)(ii)).   Although there are no precise guidelines for determining when a "direct or substantial relationship" exists, the Ninth Circuit has suggested relevant factors include the "time, place, distance and overall impact" of the transportation.   United States v. Moreno, 561 F.2d 1321, 1323 (9th Cir. 1977).   The defendant's idea of transportation needing to be solely for the "purpose" of alien smuggling improperly elevates the legal standard beyond what the law requires – a direct and substantial relationship.

103

Indeed, cases in which job-related transport was deemed to be incidental to the aliens' violation of U.S. law did not involve transportation that was a necessary condition for the violation of U.S. law.   For example, the aliens in those cases were, inter alia, already unlawfully present in the United States before the transport even took place.   See, e.g., United States v. Moreno-Duque, 718 F.Supp. 254, 259 (D. Vt. 1989) (concluding the alien transportation statute requires "more than mere knowing employment and employment-related transportation of illegal aliens to satisfy all of its essential elements"); United States v. Moreno, 561 F.3d F.2d 1321 (9th Cir. 1977) (providing an illegal alien with a ride to work or from one jobsite to another is an example of transportation that is only "incidentally connected to" the alien's continued unlawful presence); United States v. 1982 Ford Pick-Up, VIN 1FTDX15G7CKA31957, Texas Lic. No. VM-5394, 873 F.2d 947, 952 (6th Cir. 1989) (reversing forfeiture of vehicle because defendant transported illegal aliens for purpose of seeking employment, which was insufficient to prove the "in furtherance of" element). It is of course, true, however, that when an employer's transportation of aliens is a necessary condition for the aliens' violation of U.S. law, such transportation does also have a direct and substantial relationship with furthering the aliens' violation of U.S. law. See, e.g., United States v. Velasques-Cruz, 929 F.2d 420 (8th Cir. 1991) (affirming conviction by noting that because an illegal alien organized a cross-country trip for herself and other illegal aliens, the transport was more than just "incidental"); United States v. Hernandez-Guardado, 228 F.3d 1017, 1023 (9th Cir. 2000) (affirming conviction because transporting aliens between cities for employment directly and substantially furthered illegal presence).

In other words, if the transport "advance[d] or assist[ed] the alien's violation of law"—when the transportation is not simply a matter of a third party giving a ride to an already illegally present alien—there is a direct and substantial relationship between the defendant's transportation and the aliens' violation of U.S. law.   United States v. Moreno-Duque, 718 F. Supp. 254, 259 (D. Vt. 1989).   The facts in this case are exemplary.   The worker-aliens at issue were present in the United States under nonimmigrant visas that permitted them to work only on certain facilities.   Those workers lived under the employer-defendant's control and were transported to and from worksites at the direction of the defendant.   Among other places, the defendant directed drivers to transport those workers to private, unauthorized work sites, causing the violation of their visas and rendering them deportable aliens.   Because those aliens were directed by their employer to perform labor at unauthorized worksites, it was the employer-organized transport that directly caused the violation of their nonimmigrant status. In other words, transportation of the aliens to those unauthorized worksites was essential to furthering the workers' violation of their visa terms and U.S. law.

Furthermore, where an employer not only transported aliens to unauthorized jobsites, but also they arranged for aliens' transport back to employer-controlled housing facilities, such transportation is not merely "incidental" to aliens' violation of U.S. law.   Indeed, as the Seventh Circuit has explained, where a person transports aliens "to his or her destination or place of refuge, or helps the alien remain in the country unlawfully, undetected by those responsible for enforcing the immigration laws," such transportation is in furtherance of the alien's unlawful presence.   United States v. Parmelee, 42 F.3d 387, 389–90 (7th Cir. 1994) (quoting jury instructions at Tr. 2954-56 and upholding convictions for transporting illegal aliens). Compare

104

ibid. ("A surreptitious or furtive transportation of an alien which inhibits the enforcement of immigration laws may be in furtherance of the alien's unlawful entry [or] presence.") with United States v. Dominguez, 661 F.3d 1051, 1061–62 (11th Cir. 2011) (finding insufficient evidence for 8 U.S.C. § 1324(a)(1)(A)(ii) conviction because, inter alia, defendant transported aliens to immigration authorities for processing and aliens lived openly and did not act in any manner to suggest they were avoiding immigration authorities, there was no direct and substantial relationship between transportation of such aliens and furthering violations of U.S. law).

The government additionally objects to the following:

1.   The defendant wrongly changes the four elements of alien smuggling to reflect actions by the defendant (e.g. "the defendant transported such alien…").   The defendant is charged with conspiracy to commit alien smuggling.   Accordingly, the defendant himself did not have to commit any of the elements of the substantive offense – he only needed to agree with one or more other persons to commit the underlying offense (indeed, no over act is even required).   It would be incorrect to instruct the jury that they must find that "the defendant transported" an alien to find him guilty.   So long as the defendant knowingly agreed with others to smuggle an alien, even if he wasn't the transporter or even if no transportation ever occurred, the defendant could still be convicted of participating in the conspiracy.

2.   The defendant again incorrectly asks for an instruction that the jury "may" find the defendant guilty.   As indicated previously, this is wrong.

REQUEST 10A (GOVERNMENT) -

<u>COUNT FIVE: CONSPIRACY TO COMMIT VISA FRAUD</u>

Count Five of the indictment charges the defendant with conspiracy to engage in visa fraud.   The relevant statutes provide that any person who "utters, uses, attempts to use, possesses, obtains, accepts, or receives any . . . document prescribed by statute or regulation for entry into, and as evidence of authorized stay and employment in the United States, knowing it . . . to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained," or conspired to do the same, has committed a crime.

The defendant is charged in Count Five with conspiring to engage in visa fraud.   I have previously instructed you on conspiracy law, which applies here.   I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.   Here, the alleged crime the defendant is charged with agreeing to commit is visa fraud.   The elements of the crime of visa fraud are as follows:

<u>First</u>, that an individual uttered, used, attempted to use, possessed, obtained, accepted or received a document that was procured by means of a false statement and by fraud and was unlawfully obtained;

<u>Second</u>, that the document in question was a nonimmigrant visa; and

<u>Third</u>, that at the time the document was uttered or used or attempted to be used, possessed, obtained, accepted or received by an individual, that individual knew that the document was procured by means of a false statement or by fraud or was unlawfully obtained.

To "utter" a document means to use the document by means of a fraudulent representation that it is genuine.   To "use or attempt to use" means to present the document to

106

immigration officers in an attempt to enter the United States.   A statement is "false" if it was untrue when made.

For a document to be "procured by" means of a false statement or fraud, the false statement must have been material. A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it is addressed.   In other words, to constitute visa fraud, an individual must have made a false statement with the natural tendency to influence or was capable of influencing the U.S. Department of State's decision to issue a visa, not simply that an individual made any false statement. However, the false statement need not have actually influence the Department of State's decision or had any actual effect.

I have already explained to you the definition of "knowledge," which applies here as well.

Lastly, the conspiracy charged in Count Five requires proof of at least one overt act.   An overt act is any action intended to help the object of the conspiracy.   An overt act need not itself be a criminal act, but it must contribute to furthering the conspiracy.   It is not required that all of the overt acts alleged in the indictment be proven or that the overt act was committed at precisely the time alleged in the indictment.   It is sufficient if you are convinced beyond a reasonable doubt that the overt act occurred at or about the time and place stated.   Similarly, you need not find that the defendant himself committed the overt act.   It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all of the members of the conspiracy.

107

If you find that the defendant agreed to enter into an unlawful agreement to commit visa fraud, you must also determine whether one of the members of the conspiracy knowingly committed at least one overt act and that the overt act or overt acts you find to have been committed was or were committed to further some objective of the conspiracy.   You may only find the defendant guilty of Count Five if you find that the government has satisfied the overt act requirement beyond a reasonable doubt.

For your convenience, I will again read the overt acts charged in the indictment:

    a.  On or about December 10, 2014, LANDONG WANG sent an electronic communication to DAN ZHONG in which WANG sought ZHONG's assistance to arrange for workers to enter the United States from the People's Republic of China to perform work contrary to the terms of their United States visas.

    b.  In or about June 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Old Brookville, New York, contrary to the terms of their United States visas.

    c.  In or about August 2015, ZHONG sent an electronic communication to an accessory, an individual whose identity is known to the Grand Jury ("Accessory #1"), concerning the use of workers to provide labor in the United States, contrary to the terms of their United States visas, at a residence in Old Brookville, New York.

    d.  In or about September 2015, ZHONG and Accessory #1 exchanged electronic communications concerning the use of workers to provide contracting work at a residence in Flushing, New York, contrary to the terms of their United States visas.

    e.  In or about October 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Fresh Meadows, New York, contrary to the terms of their United States visas.

108

      f.   In or about October 2015, LANDONG WANG possessed workers' passports and visas at a residence in Fresh Meadows, New York.

Finally, in addition to the foregoing elements of the conspiracy offense, you must consider whether any overt act in furtherance of the crime occurred within the Eastern District of New York.   You are instructed that the Eastern District of New York encompasses the counties of Kings, Nassau, Queens, Richmond, and Suffolk, and concurrently with the Southern District of New York, the waters within the counties of Bronx and New York.   In this regard, it is sufficient to satisfy this element if any act in furtherance of the crime occurred within this district.   If you find that the government has failed to prove that any act in furtherance of the crime occurred within this district, or if you have reasonable doubt on this issue, then you must acquit.

<u>Authority</u>

Adapted from charge in <u>United States v. Miller</u>, No. 15-CR-580 (WFK) (E.D.N.Y.) and <u>United States v. Archer</u>, No. 08-CR-288 (SJ) (E.D.N.Y.); <u>see also</u> <u>Korchevsky</u>, Sand, §§ 19.01, 47.02.

109

REQUEST 10B (DEFENDANT) -

COUNT FIVE: CONSPIRACY TO COMMIT VISA FRAUD

Count Five of the indictment charges the defendant with conspiracy to engage in visa fraud.   The relevant statutes provide that any person who "utters, uses, attempts to use, possesses, obtains, accepts, or receives any . . . document prescribed by statute or regulation for entry into, and as evidence of authorized stay and employment in the United States, knowing it . . . to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained," or conspired to do the same, has committed a crime.

The defendant is charged in Count Five with conspiring to engage in visa fraud.   I have previously instructed you on conspiracy law, which applies here.   I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.   Here, the alleged crime the defendant is charged with agreeing to commit is visa fraud.   The elements of the crime of visa fraud are as follows:

First, that the defendant uttered or used or attempted to use or possessed a document that was procured by means of a false statement and by fraud and was unlawfully obtained;

Second, that the document in question was a nonimmigrant visa; and

Third, that at the time the document was uttered or used or attempted to use or possessed by the defendant, he knew that the document was procured by means of a false statement or by fraud or was unlawfully obtained.

To "utter" a document means to use the document by means of a fraudulent representation that it is genuine.   To "use or attempt to use" means to present the document to

110

immigration officers in an attempt to enter the United States.   A statement is "false" if it was untrue when made.

For a document to be "procured by" means of a false statement or fraud, the false statement must have been material.   A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it is addressed.   In other words, to constitute visa fraud, there must be a false statement with the natural tendency to influence or was capable of influencing the U.S. Department of State's decision to issue a visa, not simply that any false statement was made.

Here, the government has identified 10 false statements that it alleges were made in invitation letters that were submitted to the U.S. Department of State to procure the China Rilin workers' visas.   The government has identified the following statements that it alleges were false:

1) A letter dated January 26, 2010 that was written by the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Upon the requirement of the Project of the Residential Building of the Permanent Mission of the People's Republic of China to the United Nations, technicians and workers of your company are hereby invited to come to New York as soon as possible for the Interior Finish Job that has been assigned to you.   According to the schedule of the above mentioned project, the technicians and workers are expected to stay in New York for around one year.   Attached is the name list of 36 persons to be invited."

2) A letter dated May 13, 2010 from the Department of the Ministry of Foreign Affairs of the PRC to the Embassy of the United States in Beijing stated: "At the invitation of the Permanent Mission of the People's Republic of China to the UN, 17 technicians and workers from the China Rilin Construction (Group) will go to the United States for the interior finish job of the Chinese Mission."   The May 13, 2010 letter enclosed a second letter dated November 4, 2009, from the Permanent Mission of the PRC to the United Nations to China Rilin, which stated: "Upon the requirement of the Project of the Residential Building of the Permanent Mission of the People's Republic of China to the United Nations, technicians and workers of your company are hereby invited to come to New York as soon as possible for the Interior Finish Job that has been assigned to you.   According to the schedule of the above mentioned project, the

111

technicians and workers are expected to stay in New York for around one year. Attached is the name list of 20 persons being invited."

3) A letter dated September 13, 2010 from the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Upon the requirement of the Project of the Residential Building of the Permanent Mission of the People's Republic of China to the United Nations, the workers of your company are hereby invited to come to New York as soon as possible for the construction Job that has been assigned to you.   See attachment for the name list of the 29 workers that are invited.   According to the schedule of the above mentioned project, the workers are expected to stay in New York for around one year."

4) A letter dated December 13, 2012 from the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Requested for the construction of the office building renovation project of Permanent Mission of the People's Republic of China to the United Nations, the managers and workers of your company are hereby invited to the United States of America to undertake the job of preparation work and then the construction work."   The letter identified 14 individuals.

5) A letter dated February 4, 2013 from the Consular Department of the Ministry of Foreign Affairs of the People's Republic of China to the Embassy of the United States of America in Beijing stated: "At the invitation of the Chinese Permanent Mission at UN, [name omitted] and other 11 members are going for the construction work from February 2013 to February 2015 on the internal engineering projects of the apartment building of the Chinese Mission at UN."   The letter attached a list identifying 12 individuals.

6) A letter dated March 27, 2013 from the Consular Department of the Ministry of Foreign Affairs of the People's Republic of China to the Embassy of the United States of America stated: "At the invitation of the Chinese Permanent Mission in the UN, [name omitted] will participate in, from March 2013 to March 2015, the construction work of the internal engineering projects of the apartment building of the Chinese Mission at UN."   An attachment to the letter identified one individual.

7) A letter dated March 25, 2014 from the Foreign Affairs Office of the People's Government of Liaoning to the United States Consulate General in Shenyang stated: "[M]y office hopes your consulate can issue A2 visas to [name omitted] and other seventeen people (list attached) of Dandong Riling Construction Co., Ltd. They are invited by the People's Republic of China Mission to the United Nations and they will go to New York to carry on the transformation project of the office buildings on April 5th from Beijing."   The letter attached a list identifying 18 individuals.

112

8) A letter dated April 24, 2015 from the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Requested for the construction of our building renovation project of Permanent Mission of the People's Republic of China to the United Nations, the engineers and workers of your company are hereby invited to the United States of America to undertake the job of preparation work and then the construction work.   According to the schedule of the work, they will depart on April 2015 and stay in the United States of America for about three years."   The letter attached a list identifying 19 individuals.

9) A letter dated May 5, 2015 from the Foreign Affairs Office of the People's Government of Liaoning to the United States Consulate General in Shenyang stated: "[M]y office hopes your consulate can issue A2 visas to [name omitted] and other Seventeen people (list attached) of Dandong Riling Construction Co., Ltd. They are invited by Permanent Mission of the People's Republic of China to the United Nations and they will go to New York to carry on the transformation project on May 20th from Beijing."   The letter attached a list identifying 18 individuals.

10) A letter dated August 24, 2015 from the Foreign Affairs Office of the People's Government of Liaoning to the United States Consulate General in Shenyang stated: "[M]y office hopes your consulate can issue A2 visas to [name omitted] and other thirteen people (list attached) of Dandong Riling Construction Co., Ltd. They are invited by the People's Republic of China Mission to the United Nations and they will go to New York to carry on the transformation project of the office buildings on September 20th from Beijing."   The letter attached a list identifying 14 individuals.

To satisfy the second element, the government must prove beyond a reasonable doubt that the document in question was a non-immigrant visa or another document required for lawful entry by statute or regulation.   If you find that the document is not required for entry into the United States, then this element is not satisfied.

As to the third element that the defendant knew that the document was procured by means of a false statement or by fraud or was unlawfully obtained, please refer to my earlier explanation of "knowledge," which applies here as well.

Lastly, the conspiracy charged in Count Five requires proof of at least one overt act.   An overt act is any action intended to help attain the object of the conspiracy, which in this case is the uttering, using, possession, obtaining, accepting and receiving of non-immigrant visas

113

known to have been procured unlawfully.   An overt act need not itself be a criminal act, but it must contribute to furthering the conspiracy.   It is not required that all of the overt acts alleged in the indictment be proven or that the overt act was committed at precisely the time alleged in the indictment.   It is sufficient if you are convinced beyond a reasonable doubt that the overt act occurred at or about the time and place stated.   Similarly, you need not find that the defendant himself committed the overt act.   It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all of the members of the conspiracy.

If you find that the defendant agreed to enter into an unlawful agreement to commit visa fraud, you must also determine whether one of the members of the conspiracy knowingly committed at least one overt act and that the overt act or overt acts you find to have been committed was or were committed to further some objective of the conspiracy.   You may only find the defendant guilty of Count Five if you find that the government has satisfied the overt act requirement beyond a reasonable doubt.

For your convenience, I will again read the overt acts charged in the indictment:

g. On or about December 10, 2014, LANDONG WANG sent an electronic communication to DAN ZHONG in which WANG sought ZHONG's assistance to arrange for workers to enter the United States from the People's Republic of China to perform work contrary to the terms of their United States visas.

h. In or about June 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Old Brookville, New York, contrary to the terms of their United States visas.

i. In or about August 2015, ZHONG sent an electronic communication to an accessory, an individual whose identity is

114

known to the Grand Jury ("Accessory #1"), concerning the use of workers to provide labor in the United States, contrary to the terms of their United States visas, at a residence in Old Brookville, New York.

j.  In or about September 2015, ZHONG and Accessory #1 exchanged electronic communications concerning the use of workers to provide contracting work at a residence in Flushing, New York, contrary to the terms of their United States visas.

k.  In or about October 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Fresh Meadows, New York, contrary to the terms of their United States visas.

l.  In or about October 2015, LANDONG WANG possessed workers' passports and visas at a residence in Fresh Meadows, New York.

Finally, in addition to the foregoing elements of the conspiracy offense, you must consider whether any overt act in furtherance of the crime occurred within the Eastern District of New York.   You are instructed that the Eastern District of New York encompasses the counties of Kings, Nassau, Queens, Richmond, and Suffolk, and concurrently with the Southern District of New York, the waters within the counties of Bronx and New York.   In this regard, it is sufficient to satisfy this element if any act in furtherance of the crime occurred within this district.   If you find that the government has failed to prove that any act in furtherance of the crime occurred within this district, or if you have reasonable doubt on this issue, then you must acquit.

115

116

REQUEST 10C (REDLINE) -

## COUNT FIVE: CONSPIRACY TO COMMIT VISA FRAUD

Count Five of the indictment charges the defendant with conspiracy to engage in visa fraud.   The relevant statutes provide that any person who "utters, uses, attempts to use, possesses, obtains, accepts, or receives any . . . document prescribed by statute or regulation for entry into, and as evidence of authorized stay and employment in the United States, knowing it . . . to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained," or conspired to do the same, has committed a crime.

The defendant is charged in Count Five with conspiring to engage in visa fraud.   I have previously instructed you on conspiracy law, which applies here.   I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.   Here, the alleged crime the defendant is charged with agreeing to commit is visa fraud.   The elements of the crime of visa fraud are as follows:

First, that ~~an individual~~the defendant uttered~~, or~~ used~~, or~~ attempted to use~~, or~~ possessed~~, obtained, accepted or received~~ a document that was procured by means of a false statement and by fraud and was unlawfully obtained;

Second, that the document in question was a nonimmigrant visa; and

Third, that at the time the document was uttered or used or attempted to ~~be used,~~use or possessed~~, obtained, accepted or received~~ by ~~an individual, that individual~~the defendant, he knew that the document was procured by means of a false statement or by fraud or was unlawfully obtained.

117

To "utter" a document means to use the document by means of a fraudulent representation that it is genuine.   To "use or attempt to use" means to present the document to immigration officers in an attempt to enter the United States.   A statement is "false" if it was untrue when made.

For a document to be "procured by" means of a false statement or fraud, the false statement must have been material.   _A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it is addressed.   In other words, to constitute visa fraud, an individualthere must have madebe a false statement with the natural tendency to influence or was capable of influencing the U.S. Department of State's decision to issue a visa, not simply that an individual made any false statement. However, the false statement need not have actually influence the Department of State's decision or had any actual effect.any false statement was made.

I have already explained to you the definitionHere, the government has identified 10 false statements that it alleges were made in invitation letters that were submitted to the U.S. Department of State to procure the China Rilin workers' visas.   The government has identified the following statements that it alleges were false:

11) A letter dated January 26, 2010 that was written by the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Upon the requirement of the Project of the Residential Building of the Permanent Mission of the People's Republic of China to the United Nations, technicians and workers of your company are hereby invited to come to New York as soon as possible for the Interior Finish Job that has been assigned to you.   According to the schedule of the above mentioned project, the technicians and workers are expected to stay in New York for around one year.   Attached is the name list of 36 persons to be invited."

12) A letter dated May 13, 2010 from the Department of the Ministry of Foreign Affairs of the PRC to the Embassy of the United States in Beijing stated: "At the invitation of

118

the Permanent Mission of the People's Republic of China to the UN, 17 technicians and workers from the China Rilin Construction (Group) will go to the United States for the interior finish job of the Chinese Mission."   The May 13, 2010 letter enclosed a second letter dated November 4, 2009, from the Permanent Mission of the PRC to the United Nations to China Rilin, which stated: "Upon the requirement of the Project of the Residential Building of the Permanent Mission of the People's Republic of China to the United Nations, technicians and workers of your company are hereby invited to come to New York as soon as possible for the Interior Finish Job that has been assigned to you.   According to the schedule of the above mentioned project, the technicians and workers are expected to stay in New York for around one year.   Attached is the name list of 20 persons being invited."

13) A letter dated September 13, 2010 from the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Upon the requirement of the Project of the Residential Building of the Permanent Mission of the People's Republic of China to the United Nations, the workers of your company are hereby invited to come to New York as soon as possible for the construction Job that has been assigned to you.   See attachment for the name list of the 29 workers that are invited.   According to the schedule of the above mentioned project, the workers are expected to stay in New York for around one year."

14) A letter dated December 13, 2012 from the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Requested for the construction of the office building renovation project of Permanent Mission of the People's Republic of China to the United Nations, the managers and workers of your company are hereby invited to the United States of America to undertake the job of preparation work and then the construction work."   The letter identified 14 individuals.

15) A letter dated February 4, 2013 from the Consular Department of the Ministry of Foreign Affairs of the People's Republic of China to the Embassy of the United States of America in Beijing stated: "At the invitation of the Chinese Permanent Mission at UN, [name omitted] and other 11 members are going for the construction work from February 2013 to February 2015 on the internal engineering projects of the apartment building of the Chinese Mission at UN."   The letter attached a list identifying 12 individuals.

16) A letter dated March 27, 2013 from the Consular Department of the Ministry of Foreign Affairs of the People's Republic of China to the Embassy of the United States of America stated: "At the invitation of the Chinese Permanent Mission in the UN, [name omitted] will participate in, from March 2013 to March 2015, the construction work of the internal engineering projects of the apartment building of the Chinese Mission at UN."   An attachment to the letter identified one individual.

119

17) A letter dated March 25, 2014 from the Foreign Affairs Office of the People's Government of Liaoning to the United States Consulate General in Shenyang stated: "[M]y office hopes your consulate can issue A2 visas to [name omitted] and other seventeen people (list attached) of Dandong Riling Construction Co., Ltd. They are invited by the People's Republic of China Mission to the United Nations and they will go to New York to carry on the transformation project of the office buildings on April 5th from Beijing."   The letter attached a list identifying 18 individuals.

18) A letter dated April 24, 2015 from the Permanent Mission of the People's Republic of China to the United Nations to China Rilin stated: "Requested for the construction of our building renovation project of Permanent Mission of the People's Republic of China to the United Nations, the engineers and workers of your company are hereby invited to the United States of America to undertake the job of preparation work and then the construction work.   According to the schedule of the work, they will depart on April 2015 and stay in the United States of America for about three years."   The letter attached a list identifying 19 individuals.

19) A letter dated May 5, 2015 from the Foreign Affairs Office of the People's Government of Liaoning to the United States Consulate General in Shenyang stated: "[M]y office hopes your consulate can issue A2 visas to [name omitted] and other Seventeen people (list attached) of Dandong Riling Construction Co., Ltd. They are invited by Permanent Mission of the People's Republic of China to the United Nations and they will go to New York to carry on the transformation project on May 20th from Beijing."   The letter attached a list identifying 18 individuals.

20) A letter dated August 24, 2015 from the Foreign Affairs Office of the People's Government of Liaoning to the United States Consulate General in Shenyang stated: "[M]y office hopes your consulate can issue A2 visas to [name omitted] and other thirteen people (list attached) of Dandong Riling Construction Co., Ltd. They are invited by the People's Republic of China Mission to the United Nations and they will go to New York to carry on the transformation project of the office buildings on September 20th from Beijing."   The letter attached a list identifying 14 individuals.

To satisfy the second element, the government must prove beyond a reasonable doubt that the document in question was a non-immigrant visa or another document required for lawful entry by statute or regulation.   If you find that the document is not required for entry into the United States, then this element is not satisfied.

120

As to the third element that the defendant knew that the document was procured by means of a false statement or by fraud or was unlawfully obtained, please refer to my earlier explanation of "knowledge," which applies here as well.

Lastly, the conspiracy charged in Count Five requires proof of at least one overt act.   An overt act is any action intended to help attain the object of the conspiracy, which in this case is the uttering, using, possession, obtaining, accepting and receiving of non-immigrant visas known to have been procured unlawfully.   An overt act need not itself be a criminal act, but it must contribute to furthering the conspiracy.   It is not required that all of the overt acts alleged in the indictment be proven or that the overt act was committed at precisely the time alleged in the indictment.   It is sufficient if you are convinced beyond a reasonable doubt that the overt act occurred at or about the time and place stated.   Similarly, you need not find that the defendant himself committed the overt act.   It is sufficient for the government to show that one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all of the members of the conspiracy.

If you find that the defendant agreed to enter into an unlawful agreement to commit visa fraud, you must also determine whether one of the members of the conspiracy knowingly committed at least one overt act and that the overt act or overt acts you find to have been committed was or were committed to further some objective of the conspiracy.   You may only find the defendant guilty of Count Five if you find that the government has satisfied the overt act requirement beyond a reasonable doubt.

For your convenience, I will again read the overt acts charged in the indictment:

121

m.  On or about December 10, 2014, LANDONG WANG sent an electronic communication to DAN ZHONG in which WANG sought ZHONG's assistance to arrange for workers to enter the United States from the People's Republic of China to perform work contrary to the terms of their United States visas.

n.  In or about June 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Old Brookville, New York, contrary to the terms of their United States visas.

o.  In or about August 2015, ZHONG sent an electronic communication to an accessory, an individual whose identity is known to the Grand Jury ("Accessory #1"), concerning the use of workers to provide labor in the United States, contrary to the terms of their United States visas, at a residence in Old Brookville, New York.

p.  In or about September 2015, ZHONG and Accessory #1 exchanged electronic communications concerning the use of workers to provide contracting work at a residence in Flushing, New York, contrary to the terms of their United States visas.

q.  In or about October 2015, ZHONG and LANDONG WANG caused workers to provide contracting work at a residence in Fresh Meadows, New York, contrary to the terms of their United States visas.

r.  In or about October 2015, LANDONG WANG possessed workers' passports and visas at a residence in Fresh Meadows, New York.

Finally, in addition to the foregoing elements of the conspiracy offense, you must consider whether any overt act in furtherance of the crime occurred within the Eastern District of New York.   You are instructed that the Eastern District of New York encompasses the counties of Kings, Nassau, Queens, Richmond, and Suffolk, and concurrently with the Southern District of New York, the waters within the counties of Bronx and New York.   In this regard, it is sufficient to satisfy this element if any act in

122

furtherance of the crime occurred within this district.    If you find that the government has

failed to prove that any act in furtherance of the crime occurred within this district, or if

you have reasonable doubt on this issue, then you must acquit.

Explanation of Defense Objection

Modified version of government's proposed Request No. 10A to include the false claims identified by the government in its Bill of Particulars (Dkt. No. 81) which are a necessary part of the charge that must be explained to the jurors. See United States v. Bortnovsky, 820 F.2d 572, 575 (2d Cir. 1987) (reversing convictions based on district court's refusal to order particulars regarding documents alleged to be falsified).

**Government's Objections**

The defendant seeks an instruction that says "the defendant uttered or used or attempted to use or possessed a document that was procured by means of a false statement and by fraud and was unlawfully obtained" (emphasis added).    The defendant is charged with conspiracy to commit visa fraud.   Accordingly, the government does not need to prove that the defendant himself uttered, used, possessed or obtained a visa by means of a false statement or fraud.   So long as he came to an agreement with others that a member of the conspiracy would cause, any member of the conspiracy could have done this.

By requesting the deletion of the sentence "However, the false statement need not have actually influenced the Department of State's decision or had any actual effect," the defendant also seeks the removal of that part of the instruction on the element of materiality that clarifies that the government need not prove that the false statement or fraudulent omission of a material fact would actually have changed the State Department's decision to issue the visa.   Deleting that sentence has a tendency to mislead the jury as to the issue it must decide when it is required to decide whether the defendant agreed with others to make false statements to the State Department that would be material to the State Department's decision-making process.   The jury does not need to find that "but for" the false statement the State Department would not have issued the visa, rather the jury must decide whether the defendant agreed with others to make fraudulent statements that would have a natural tendency to affect the State Department's decision-making process in issuing visas.   See United States v. Pirela Pirela, 809 F.3d 1195, 1201 (11th Cir. 2015) (relying on United States v. An Antique Platter of Gold, 184 F.3d 131, 136 (2d Cir. 1999), to reject "but for" material test and holding that under 18 U.S.C. § 1546(a) government need only prove that visa applicant's false statement exhibited a level of materiality such that it would have had "a natural tendency to influence or the capability to influence government action."); see also United

123

States v. Wu, 419 F.3d 142, 146 (2d Cir. 2005) (applying Antique Platter of Gold in § 1546(a) prosecution).

        The defendant also seeks to include the Bill of Particulars in the instruction.   The purpose of a Bill of Particulars is to provide notice to the defendant of the factual basis for charge against him, it does not alter the elements of the offense with which he is charged and is not the proper subject for a legal instruction.   See Fed. R. Crim. P. 7(f).   There is no basis to include the Bill of Particulars in an instruction to the jury, and will only serve to confuse them as the questions they must decide.   See United States v. Nathan, 816 F.3d 230, 235 (6th Cir. 1987) (affirming jury charge that did not include specifics of the bill of particulars) (collecting cases).   The instruction on the elements of visa fraud conspiracy is sufficient to inform the jury of the law that they must apply in reaching their verdict.

        As to the second element of visa fraud, proof that the document obtained was a nonimmigrant visa, the defendant seeks an improper instruction that "To satisfy the second element, the government must prove beyond a reasonable doubt that the document in question was a non-immigrant visa or another document required for lawful entry by statute or regulation.   If you find that the document is not required for entry into the United States, then this element is not satisfied."   This is inaccurate and misleading.   Section 1546(a) applies to fraud in the acquisition of a number of documents, including an "immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card," and includes a catchall clause that brings within its scope any "other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States."   The defendant's proposed instruction would mislead the jury by instructing them that the government must prove that the specific documents at issue in this case are "required for entry into the United States."   Under U.S. law, numerous documents listed in § 1546(a) may be used to enter the United States, no single document is "required," for admission and, indeed, the word "required" does not appear in the portion of § 1546(a) that the defendant is charged with conspiring to violate.   The government need only prove that the A-2 and G-2 visas at issue are non-immigrant visas and the jury should be instructed accordingly.

        Finally, the defendant requests to insert a summary of the object of the visa fraud conspiracy in the explanation of the overt act requirement.   This is unnecessary.   The government's requested conspiracy instruction explains that a conspiracy is an unlawful agreement to commit a crime, and the specific instruction on visa fraud makes clear the elements that the jury must find the defendant agreed to commit when he joined the visa fraud conspiracy.   The defendant's proposed short-hand synopsis of the object of the visa fraud conspiracy risks confusing the jury as to the elements it must find satisfied to find the defendant guilty of visa fraud.

124

REQUEST 11

AIDING AND ABETTING

With regard to Count Two, engaging in or benefitting from forced labor and Count Three, document servitude, the defendant is also charged under an aiding and abetting theory. The relevant statute provides:

> Whoever commits an offense against the United States or aids or abets or counsels, commands or induces, or procures its commission, is punishable as a principal; and

> Whoever willfully causes an act to be done which, if directly performed by him, would be an offense against the United States, is punishable as a principal.

Under the aiding and abetting statute it is not necessary for the government to prove that a defendant himself physically committed the act or crime with which he is charged in order to find the defendant guilty.   A person who aids or abets another to commit a crime is just as guilty of that crime as if he committed it himself.

Accordingly, you may find the defendant guilty of the crimes charged in Counts Two and Three if you find beyond a reasonable doubt that the government has proven that another person actually committed the crime with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the crime.

As you can see, the first requirement is that you find that another person has committed the act or crime charged.   No one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place.   But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

125

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he knowingly seek by some act to help make the crime succeed.

To establish that the defendant knowingly associated himself with the crimes charged in Counts Two and Three, the government must prove, beyond a reasonable doubt, that the defendant knew that the crime was being committed.   To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting.   One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of the crime is not an aider and abettor.   An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture.

To determine whether the defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

126

If he did, then the defendant would be an aider and abettor, and therefore guilty of the offense.   If, on the other hand, your answer to any one of these questions is "no," then the defendant would not be an aider and abettor, and you must find him not guilty under that theory.

<u>Authority</u>

Adapted from the charges in <u>United States v. Rivera, et al.</u>, No. 13-CR-149 (KAM) (E.D.N.Y.); <u>see also</u> Sand, Instructions 11-1 and 11-2.

127

REQUEST 12A (GOVERNMENT) -

<u>GUILT OF SUBSTANTIVE OFFENSE DUE TO MEMBERSHIP IN A CONSPIRACY</u>

There is another way in which you should evaluate the guilt of the defendant for the substantive charges—Counts Two and Three—even if you do not find that the government has satisfied its burden of proof with respect to each element of those counts.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count One of the Indictment, then you may also, but you are not required to, find the defendant guilty of the substantive crimes charged against him in the corresponding substantive Count Two and Three, provided you find, beyond a reasonable doubt, each of the following elements as to the count you are considering:

<u>First</u>, the crime charged in the substantive count was committed;

<u>Second</u>, the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

<u>Third</u>, the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

<u>Fourth</u>, the defendant was a member of that conspiracy at the time the substantive crime was committed; and

<u>Fifth</u>, the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime you are considering, even though he did

not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a co-conspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators.   Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, the substantive crime charged.

<u>Authority</u>

Adapted from the charge in <u>United States v. Basciano</u>, No. 05-CR-060 (NGG) (E.D.N.Y.); Sand, Instruction 19-13.

REQUEST 12B (DEFENDANT) -

GUILT OF SUBSTANTIVE OFFENSE DUE TO MEMBERSHIP IN A CONSPIRACY

There is another way in which you should evaluate the possible guilt or non-guilt of the defendant for the substantive charges—Counts Two and Three—even if you do not find that the government has satisfied its burden of proof with respect to each element of those counts.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count One of the Indictment, then you may also, but you are not required to, find the defendant guilty of the substantive crimes charged against him in the corresponding substantive Count Two and Three, provided you find, beyond a reasonable doubt, each of the following elements as to the count you are considering:

First, the crime charged in the substantive count was committed;

Second, the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

Third, the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

Fourth, the defendant was a member of that conspiracy at the time the substantive crime was committed; and

Fifth, the defendant could have reasonably foreseen that the substantive crime would be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime you are considering, even though he did

130

not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a co-conspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators.   Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, the substantive crime charged.

<u>Authority</u>

Adapted from the charge in <u>United States v. Basciano</u>, No. 05-CR-060 (NGG) (E.D.N.Y.); Sand, Instruction 19-3.

131

REQUEST 12C (REDLINE) -

<u>GUILT OF SUBSTANTIVE OFFENSE DUE TO MEMBERSHIP IN A CONSPIRACY</u>

There is another way in which you should evaluate the possible guilt or non-guilt of the defendant for the substantive charges—Counts Two and Three—even if you do not find that the government has satisfied its burden of proof with respect to each element of those counts.

If, in light of my instructions, you find, beyond a reasonable doubt, that the defendant was a member of the conspiracy charged in Count One of the Indictment, then you may also, but you are not required to, find the defendant guilty of the substantive crimes charged against him in the corresponding substantive Count Two and Three, provided you find, beyond a reasonable doubt, each of the following elements as to the count you are considering:

<u>First</u>, the crime charged in the substantive count was committed;

<u>Second</u>, the person or persons you find actually committed the crime were members of the conspiracy you found to have existed;

<u>Third</u>, the substantive crime was committed pursuant to the common plan and understanding you found to exist among the conspirators;

<u>Fourth</u>, the defendant was a member of that conspiracy at the time the substantive crime was committed; and

<u>Fifth</u>, the defendant could have reasonably foreseen that the substantive crime ~~might~~would be committed by his co-conspirators.

If you find all five of these elements to exist beyond a reasonable doubt, then you may find the defendant guilty of the substantive crime you are considering, even though he did

132

not personally participate in the acts constituting the crime or did not have actual knowledge of it.

The reason for this rule is simply that a co-conspirator who commits a substantive crime pursuant to a conspiracy is deemed to be the agent of the other conspirators.   Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the substantive crimes.

If, however, you are not satisfied as to the existence of any of these five elements, then you may not find the defendant guilty of the substantive crime, unless the government proves, beyond a reasonable doubt, that the defendant personally committed, or aided and abetted the commission of, the substantive crime charged.

Authority

Adapted from the charge in United States v. Basciano, No. 05-CR-060 (NGG) (E.D.N.Y.); Sand, Instruction 19-3.

**Government's Objection**

The defendant seeks to change the instruction to say that "the defendant could have reasonably foreseen that the substantive crime would be committed by his co-conspirators" (emphasis added).   This is a misstatement of the law.   Under the Pinkerton theory of liability, the defendant is liable if he "could have reasonably foreseen that the substantive crime might be committed by his co-conspirators."   See Sand, Instruction 19-13; see also United States v. Young, 561 Fed. App'x 85, 89 (2d Cir. 2014) (affirming charge as "consistent with well established law" that instructed that a defendant could be held liable if he "could reasonably have foreseen that the substantive crime might be committed by his co-conspirators") (emphasis added) (summary order).

133

REQUEST NO. 13

CO-CONSPIRATOR ACTS AND STATEMENTS

As I noted before, the charges against the defendant allege that he conspired to violate certain federal laws.   In that regard, I admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed by persons who, the government charges, were also confederates or co-conspirators of the defendant on trial.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy.   A conspiracy is often referred to as a partnership in crime.   Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

Thus, if you find that a defendant was a member of a criminal conspiracy charged, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against that defendant.   This is so even if such acts were done and statements were made in a defendant's absence and without his knowledge.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of a defendant's guilt, you must first determine that the acts and statements were made

134

during the existence, and in furtherance, of the unlawful scheme.    If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of that conspiracy, they may not be considered by you as evidence against a defendant as to that conspiracy.

<u>Authority</u>

Adapted from the charges in <u>United States v. Scalisi</u>, No. 10-CR-46 (SJ) (E.D.N.Y.) and <u>United States v. Barret</u>, No. 10-CR-806 (KAM) (E.D.N.Y).

135

REQUEST NO. 14

## TESTIMONY OF DEFENDANT (IF APPLICABLE)

The defendant in a criminal case never has any duty to testify or come forward with any evidence.    This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.    In this case, the defendant did testify and he was subject to cross-examination like any other witness.    You should examine and evaluate the testimony just as you would the testimony of any witness who has an interest in the outcome of the case.

### Authority

United States v. Brutus, No. 06-CR-2710, 2007 WL 2828690, n.7 (2d Cir. Oct. 2, 2007); adapting charging language from United States v. Gaines, 457 F.3d 238, 249 n.9 (2d Cir. 2006).

136

REQUEST NO. 15

## FALSE EXCULPATORY STATEMENTS (IF APPLICABLE)

You have heard testimony that the defendant made certain statements in which the defendant claimed that his conduct was consistent with innocence and not with guilt. The government claims that these statements in which he exonerated or exculpated himself are false.

If you find that the defendant gave a false statement in order to divert suspicion from himself, you may, but are not required to infer that the defendant believed that he was guilty. You may not, however, infer on the basis of this alone, that the defendant is, in fact, guilty of the crime for which he is charged.

Whether or not the evidence as to a defendant's statements shows that the defendant believed that he was guilty, and the significance, if any, to be attached to any such evidence, are matters for you, the jury, to decide.

## Authority

Adapted from Sand, Instruction 6-11

137

REQUEST NO. 16A (GOVERNMENT) -

INTERVIEWS OF WITNESSES (IF APPLICABLE)

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial.   You must not draw any unfavorable inference from that fact.

On the contrary, attorneys are obliged to prepare their case as thoroughly as possible, and one way to accomplish this is to properly interview witnesses before this trial and as necessary throughout the course of the trial.

Authority

Adapted from the charge in United States v. Brady, et al., No. 92-CR-792 (ILG).

138

REQUEST NO. 16B (DEFENDANT) -

INTERVIEWS OF WITNESSES (IF APPLICABLE)

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial.   You should not draw any unfavorable inference from that fact alone.

On the contrary, attorneys are obliged to prepare their case as thoroughly as possible, and one way to accomplish this is to properly interview witnesses before this trial and as necessary throughout the course of the trial.   However, in assessing the credibility of any witness, you are entitled to consider the extent to which, if at all, the witness's testimony was influenced by meeting with the counsel for the party who called the witness.

Authority

Modified version of government's proposed Request No. 16A.

139

REQUEST NO. 16C (REDLINE) -

<u>INTERVIEWS OF WITNESSES (IF APPLICABLE)</u>

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial.   You ~~must~~should not draw any unfavorable inference from that fact alone.

On the contrary, attorneys are obliged to prepare their case as thoroughly as possible, and one way to accomplish this is to properly interview witnesses before this trial and as necessary throughout the course of the trial.   <u>However, in assessing the credibility of any witness, you are entitled to consider the extent to which, if at all, the witness's testimony was influenced by meeting with the counsel for the party who called the witness.</u>

<u>Explanation of Defense Objection</u>

The defendant objects to the government's version because it is unbalanced and a misstatement of what the jury may consider in assessing the witnesses' credibility.

**<u>Government's Objections</u>**

The government objects to the inclusion of the additional sentence regarding whether a witness was "influenced by meeting with the counsel for the party who called the witness."   It is inconsistent with the remainder of the instruction, not supported by law and an attempt to incorrectly imply that something is wrong with a witness meeting with the government (the party calling most, if not all, witnesses in this case).

140

REQUEST NO. 17

<u>EXPERT WITNESSES (If Applicable)</u>

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.   A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience and training.   Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.   You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.   You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning their opinion.   Nor should you substitute it for your own reason, judgment and common sense.   The determination of the facts in this case rests solely with you.

<u>Authority</u>

Adapted from Sand, § 7.01, Instruction 7-21.

141

REQUEST NO. 18A (GOVERNMENT) -

<u>PERSONS NOT ON TRIAL</u>

You have heard evidence about the involvement of certain other people in the activities referred to in the indictment.   You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you.   That these individuals are not on trial before you is not your concern.   You also should not speculate as to the reason these people are not on trial before you, nor should you allow their absence as parties to influence in any way your deliberations in this case.   You should not draw any inference from the fact that any other person is not present at this trial.   Your concern is solely the defendant on trial before you.

<u>Authority</u>

Adapted from the charge in <u>United States v. Ronnell Wilson</u>, No. 04-CR-1016 (NGG).

142

REQUEST NO. 18B (DEFENDANT) -

<u>PERSONS NOT ON TRIAL</u>

You have heard evidence about the involvement of certain other people in the activities referred to in the indictment.   You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you.   That these individuals are not on trial before you is not your concern.   You also should not speculate as to the reason these people are not on trial before you, nor should you allow their absence as parties to influence in any way your deliberations in this case.   Your concern is solely the defendant on trial before you.

<u>Authority</u>

Adapted from the charge in <u>United States v. Ronnell Wilson</u>, No. 04-CR-1016 (NGG).

143

REQUEST NO. 18C (REDLINE) -

<u>PERSONS NOT ON TRIAL</u>

You have heard evidence about the involvement of certain other people in the activities referred to in the indictment.   You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you.   That these individuals are not on trial before you is not your concern.   You also should not speculate as to the reason these people are not on trial before you, nor should you allow their absence as parties to influence in any way your deliberations in this case.   ~~You should not draw any inference from the fact that any other person is not present at this trial.~~   Your concern is solely the defendant on trial before you.

144

REQUEST NO. 19A (GOVERNMENT) -

<u>ACCOMPLICE WITNESSES</u>

You have heard the testimony of witnesses who have testified under agreements with the government.

Under one such agreement, a witness agreed to testify and the government promised to bring their cooperation to the attention of the appropriate court.

Under another such agreement, a witness agreed to testify in return for an agreement by the government not to use that witness's truthful testimony against him in a later prosecution.

The government is permitted to enter into such agreements.   You, in turn, may accept the testimony of such witnesses and convict the defendant on the basis of this testimony alone, if the testimony convinces you of the defendant's guilt beyond a reasonable doubt.

Nevertheless, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from any ordinary witness.   A witness who realizes that he may be able to receive a lighter sentence by giving testimony favorable to the prosecution, or that he may be able to avoid prosecution for his crimes, may have a motive to testify falsely. Therefore, you must scrutinize his testimony with caution and weigh it with great care.

You should ask yourselves whether this witness would benefit more by lying, or by telling the truth.   Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment of any kind by testifying falsely?   Or did he believe that his interests would be best served by testifying truthfully?   If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie,

145

or was it one which would cause him to tell the truth?   Did this motivation color his testimony?

If, after examining his testimony, you decide to accept it, you may give it whatever weight, if any,

you find it deserves.

Authority

Adapted from charge in <u>United States v. Demetrios</u>, No. 95-CR-588
(S-2) (RJD).

REQUEST NO. 19B (DEFENDANT) -

ACCOMPLICE WITNESSES

You have heard the testimony of a witness who testified under an agreement with the government.

Under that agreement, the witness agreed to testify and the government promised to bring his cooperation to the attention of the appropriate court.

The government is permitted to enter into such agreements.   You, in turn, may accept the testimony of that witness and convict the defendant on the basis of this testimony alone, if the testimony convinces you of the defendant's guilt beyond a reasonable doubt.

Nevertheless, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from any ordinary witness.    A witness who realizes that he may be able to receive a lighter sentence by giving testimony favorable to the prosecution, or that he may be able to avoid prosecution for his crimes, may have a motive to testify falsely. Therefore, you must scrutinize his testimony with caution and weigh it with great care.

You should ask yourselves whether this witness would benefit more by lying, or by telling the truth.   Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment of any kind by testifying falsely?   Or did he believe that his interests would be best served by testifying truthfully?   If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie,

147

or was it one which would cause him to tell the truth?    Did this motivation color his testimony? If, after examining his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

Authority

Modified version of the government's Request No. 19A.

148

REQUEST NO. 19C (REDLINE) -

<u>ACCOMPLICE WITNESSES</u>

You have heard the testimony of ~~witnesses~~a witness who ~~have~~ testified under ~~agreements~~an agreement with the government.

Under ~~one such~~that agreement, ~~a~~the witness agreed to testify and the government promised to bring ~~their~~his cooperation to the attention of the appropriate court.

~~Under another such agreement, a witness agreed to testify in return for an agreement by the government not to use that witness's truthful testimony against him in a later prosecution.~~

The government is permitted to enter into such agreements.   You, in turn, may accept the testimony of ~~such witnesses~~that witness and convict the defendant on the basis of this testimony alone, if the testimony convinces you of the defendant's guilt beyond a reasonable doubt.

Nevertheless, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from any ordinary witness.   A witness who realizes that he may be able to receive a lighter sentence by giving testimony favorable to the prosecution, or that he may be able to avoid prosecution for his crimes, may have a motive to testify falsely. Therefore, you must scrutinize his testimony with caution and weigh it with great care.

You should ask yourselves whether this witness would benefit more by lying, or by telling the truth.   Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment of any kind by testifying falsely?   Or did he believe that his interests would be best served by testifying truthfully?   If you believe that the witness

149

was motivated by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth?   Did this motivation color his testimony? If, after examining his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

### Explanation of Defense Objection

The defendant objects to the government's proposed instruction because the defense is unaware of any witness who is testifying pursuant to an agreement that the government will not use that witness's truthful testimony against him in a later proceeding.

### Government's Objections

The government's proposed charge is a proper statement of the law, and is consistent with the evidence that is expected to be presented at trial.

150

REQUEST NO. 20A (GOVERNMENT) -

<u>INFORMANT WITNESSES</u>

You have heard testimony from witnesses who were paid by the government for information about the defendant.

Sometimes the government uses informants who may conceal their true identities in order to investigate suspected violations of the law.   There is nothing improper or illegal in the government using these techniques, so long as the defendant's rights are not violated, and the defendant has not claimed that his rights were violated in this case.   Indeed, certain types of evidence would be extremely difficult to detect without the use of informants.

Whether or not you approve of the use of an informant to detect unlawful activities is not to enter into your deliberations in any way.

<u>Authority</u>

Adapted from Sand, Instruction 5-23.

REQUEST NO. 20B (DEFENDANT) -

<u>INFORMANT WITNESSES</u>

You have heard testimony from witnesses who were paid by the government for information about the defendant.

Sometimes the government uses informants who may conceal their true identities in order to investigate suspected violations of the law.    There is nothing improper or illegal in the government using these techniques, so long as the defendant's rights are not violated.    Indeed, certain types of evidence would be extremely difficult to detect without the use of informants.

Whether or not you approve of the use of an informant to detect unlawful activities is not to enter into your deliberations in any way.

<u>Authority</u>

Modified version of government's Request No. 20A.

REQUEST NO. 20C (REDLINE) -

<u>INFORMANT WITNESSES</u>

You have heard testimony from witnesses who were paid by the government for information about the defendant.

Sometimes the government uses informants who may conceal their true identities in order to investigate suspected violations of the law.   There is nothing improper or illegal in the government using these techniques, so long as the defendant's rights are not violated, and the defendant has not claimed that his rights were violated in this case.   Indeed, certain types of evidence would be extremely difficult to detect without the use of informants.

Whether or not you approve of the use of an informant to detect unlawful activities is not to enter into your deliberations in any way.

<u>Explanation of Defense Objection</u>

The defense's modified version of the requested instruction takes account of the fact that the defendant believes his rights were violated.

**Government's Objection**

There is no basis to cut this line from a standard instruction, and doing so will only improperly permit the jury to speculate that there has been some violation of the law.

153

REQUEST 21A (GOVERNMENT) -

STIPULATED TESTIMONY (IF APPLICABLE)

During the trial, you have been read stipulations regarding the testimony of witnesses who did not appear in Court and testify before you in person and under oath.

The government and the defendant have agreed what the testimony of these witnesses would be if they had been called as witnesses.   The government and the defendant have not agreed, however, that such stipulated testimony is true or correct.   You may consider that testimony in the same way as if it had been given here in court by the witness, but you should exercise caution in considering that testimony because it was not provided under oath.

Authority

Adapted from S1 Modern Federal Jury Instructions-Criminal, 3d Cir. Pattern Jury Instructions § 2.02.

154

REQUEST 21B (DEFENDANT) -

<u>STIPULATED TESTIMONY (IF APPLICABLE)</u>

During the trial, you have been read stipulations regarding the testimony of witnesses who did not appear in Court and testify before you in person.

The government and the defendant have agreed what the testimony of these witnesses would be if they had been called as witnesses to testify under oath.   The government and the defendant have not agreed, however, that such stipulated testimony is true or correct.   You may consider that testimony in the same way as if it had been given here in court by the witness.

REQUEST 21C (REDLINE) -

STIPULATED TESTIMONY (IF APPLICABLE)

During the trial, you have been read stipulations regarding the testimony of witnesses who did not appear in Court and testify before you in person and under oath.

The government and the defendant have agreed what the testimony of these witnesses would be if they had been called as witnesses to testify under oath.  The government and the defendant have not agreed, however, that such stipulated testimony is true or correct.   You may consider that testimony in the same way as if it had been given here in court by the witness, but you should exercise caution in considering that testimony because it was not provided under oath.

**Explanation of Defense Objection**

Modified version of the government's Request No. 21A.   The defense's modification is consistent with the stipulations being admitted into evidence as if the witness testified at trial.

**Government's Objection**

The stipulated testimony of defense witnesses was not made under oath, and the jury should exercise caution in considering the stipulated testimony of a witness who refuses to appear in the United States despite the ability to travel.

156

REQUEST NO. 22

DEPOSITION TESTIMONY (IF APPLICABLE)

Some of the testimony before you is in the form of depositions which have been received in evidence.   A deposition is simply the examination of a witness by the attorneys for the parties before trial.   A deposition is taken before a court stenographer and, as in the case at trial, the witness testifies under oath.   You should consider the testimony of a witness given in the form of a deposition according to the same standards for evaluating the testimony of a witness given at trial.

Authority

Adapted from L. Sand, et al., Modern Federal Jury Instructions, Instruction 5-8.

157

REQUEST NO. 23

<u>TRANSLATIONS</u>

During the trial, you have heard from some witnesses who testified in Mandarin, and whose testimony was simultaneously translated for you into English.   You have also been shown documents that were partially or entirely written in Chinese, and you were provided with English translations of those documents or portions of documents.   The translations of witness testimony and of those portions of the documents and recordings embody the testimony of interpreters. As such, those portions of the material reflecting the foreign language-to-English translation have also been admitted into evidence. To the extent some of you may know Mandarin, it is important for all jurors to consider the same evidence.   For this reason, you must base your decision on the evidence presented in the English translation.

<u>Authority</u>

Adapted from the charge of Hon. Raymond J. Dearie in <u>United States v. Naseer</u>, No. 10-CR-19 (S-4).

158

REQUEST NO. 24

<u>AUDIO TAPES: TRANSCRIPTS (IF APPLICABLE)</u>

You have heard evidence in the form of tape recordings obtained with the knowledge of both parties to the conversations.   These tape recordings were lawfully obtained. The use of this procedure to gather evidence is perfectly lawful and the government has the right to use such evidence in this case.

The tape recorded conversations you heard were in Mandarin.   During the playing of these tape recordings, you were provided with English transcripts.   The English transcripts of the tapes of the recorded calls are the evidence of what was said in those calls.     Although the tapes were played, the transcripts are the evidence.   The evidence you are to consider is what is in the transcripts.   Although some of you may understand Mandarin, it is important that all jurors consider the same evidence.   Therefore, you must base your decision on the evidence presented in the English transcripts and disregard any different meaning.

<u>Authority</u>

Adapted from L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, §
5.04, Instructions 5-10, and the charge of Hon. Edward R. Korman
in <u>United States v. Velazquez</u>, No. 03-CR-0836 (S-1) (ERK).

159

REQUEST NO. 25A (GOVERNMENT)

UNCALLED WITNESSES EQUALLY AVAILABLE TO BOTH SIDES

Both the government and the defense have the same power to subpoena witnesses to testify on their behalf.   If a potential witness could have been called by the government or by the defendant and neither called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the government or to the defendant or to both.

On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.   On the other hand, I remind you that the defendant has no obligation to present any evidence at all.   Only the government has the burden of proof.

160

<u>Authority</u>

Adapted from L. Sand, <u>et al.</u>, <u>Modern Federal Jury Instructions</u>, Instruction 6-7; <u>see</u> <u>generally</u> <u>United States v. Erb</u>, 543 F.2d 438, 444-45 (2d Cir.) (discussing propriety of missing witness charges), <u>cert. denied</u>, 429 U.S. 981 (1976)).

## **Explanation of Defense Objection**

The defense objects to the request which by instructing the jury that it can draw a negative inference based on the defendant's failure to call a witness undermines the government's burden of proof and the presumption of innocence.

## **Government's Objection**

As reflected in the above authorities, the uncalled witness instruction is a standard instruction that is appropriate in all criminal cases.   The instruction specifically guards against the concern raised by the defendant in that it reminds the jury of the burden of proof.

161

REQUEST NO. 26

DISCREPANCIES IN TESTIMONY

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel has argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between their testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict him-or herself.   It is also a fact that two people witnessing an event may see or hear it differently.   Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance.   A willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of a witness, how to weigh the discrepancies in their testimony.   You should, as always, use common sense and your own good judgment.

Authority

Adapted from the charge in Herron.

162

REQUEST NO. 27

<u>CHARTS AND SUMMARIES (If Applicable)</u>

The government has presented exhibits in the form of charts and summaries.   I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.   You should consider the charts and summaries that I have received into evidence as you would any other evidence.

Other charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence.   They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence.   Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.   You are entitled to consider the charts, schedules and summaries if you find that they are of assistance to you in analyzing and understanding the evidence.   It is for you to decide whether the charts, schedules or summaries correctly present the information contained in the testimony and in the exhibits on which they were based.

<u>Authority</u>

Adapted from Sand, Instructions 5-12, 5-13; <u>United States v. Nathan</u>, 536 F.2d 988, 992 (2d Cir. 1976).

163

REQUEST NO. 28

ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial.   Nor does the law require any party to produce as exhibits all papers and things mentioned during the course of the trial.

Authority

Adapted from charges in United States v. Discala, No. 14-CR-399 (E.D.N.Y. May 4, 2018) (ENV), available at 2018 WL 4941797 and United States v. Ahmed, No. 14-CR-277 (E.D.N.Y., July 29, 2016) (DLI), available at 2016 WL 4088081; see also E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 72.11 (3d ed. 1977).

164

REQUEST NO. 29

<u>PARTICULAR INVESTIGATIVE TECHNIQUES NOT REQUIRED</u>

Although the government bears the burden of proof, and although a reasonable

doubt can arise from lack of evidence, I instruct you that the law does not require that any

particular investigative techniques be used by law enforcement authorities to uncover or

prosecute crime.   Law enforcement techniques are not your concern.   Your concern is to

determine whether or not, based upon all the evidence presented in the case, the government has

proven that the defendant guilty beyond a reasonable doubt.

<u>Authority</u>

Adapted from the charges in <u>United States v. Wilson</u>, No. 08-CR-
690 (BMC) (E.D.N.Y.), and <u>United States v. Breheney</u>, No. 94-
CR-244 (ILG) (E.D.N.Y.); Sand, Instruction 4-4.

165

REQUEST NO. 29

<u>EVIDENCE LAWFULLY OBTAINED</u>

During the trial in this case, you have heard evidence concerning a variety of investigative techniques and methods of collecting evidence.    I instruct you that any evidence that was presented to you was obtained legally and can be considered.    The methods of collecting evidence or investigative techniques used should not enter into your deliberations in any respect.

<u>Authority</u>

Adapted from <u>Rivera</u>.

166

REQUEST NO. 30

<u>CAUTIONARY AND LIMITING INSTRUCTIONS (IF APPLICABLE)</u>

During the trial in this case, I admitted particular items of evidence for a limited purpose and I instructed you on the purposes for which that particular evidence can and cannot be used.   I remind you that evidence admitted for a limited purpose can be used by you only for one particular purpose, and not for any other purpose.

<u>Authority</u>

Adapted from Sand Instruction 3.07.

167

REQUEST NO. D (DEFENDANT)

LIMITING INSTRUCTION CONCERNING PRE-INDICTMENT CONDUCT

(For Use During Trial)

In certain instances evidence may be admitted only for a particular purpose and not generally for all purposes.   You heard evidence that [name of declarant and statement of testimony].   That evidence may be considered only to the extent you find it has any relevance to Mr. Zhong's intent, planning, or knowledge of the alleged forced labor conspiracy.   You may not, however, use [name of declarant's] statements as evidence that Mr. Zhong actually participated in those events or as evidence of the crimes charged in this case.

Authority

> Dkt. No. 170 at 12 ("Although Defendant is entitled to residual immunity from prosecution, the government may admit evidence of Defendant's acts while he was an accredited diplomat as direct evidence, and to prove Defendant's intent, planning, and knowledge of the alleged forced labor conspiracy").

**Government's Objections**

The defendant's instruction is wrong.   As the quote from Chief Judge Irizarry clearly indicates, the evidence of pre-2010 conduct may be admitted as "direct" evidence" against the defendant.   Specifically, the Chief Judge noted the relevance of proof "that Defendant's coercive techniques and practices as a China Rilin employee were the same as those Defendant used as president of U.S. Rilin during the charged conspiracy," and also agreed that evidence related to the "kidnapping and abduction of victim laborers" was both relevant and not unduly prejudicial.   See Nov. 26, 2018 Order at 12-13 (ECF No. 170).   Indeed, Chief Judge Irizarry found the evidence to so plainly be directly relevant to the crimes, that she declined to analyze in detail the additional proper use of this evidence under Rule 404(b) of the Federal Rules of Criminal Procedure.   Id.   Accordingly, the defendant's attempt to limit this evidence to Rule 404(b)-type uses is plainly incorrect, yet another attempt to relitigate an issue that the court ruled on already, and should be entirely rejected.

168

CONCLUSION

The parties respectfully submit the foregoing for the Court's consideration in advance of any charging conference.   In addition, the parties request the opportunity to submit further instructions or amend those submitted as appropriate.

Dated:        Brooklyn, New York
              February 25, 2019

                                        Respectfully submitted,


                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York


_____          _____
Robert J. Cleary, Esq.                    Alexander A. Solomon
Dietrich L. Snell, Esq.                   Ian C. Richardson
William C. Komaroff, Esq.                 Craig R. Heeren
Samantha Springer, Esq.                   Assistant U.S. Attorneys
Brittany Benavidez, Esq.
Attorneys for Dan Zhong


cc:      Clerk of Court (AMD) (By ECF)


169