1

```
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        16-CR-614(AMD)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4              Plaintiff,              Brooklyn, New York

5              -against-               December 11, 2018
                                        10:30 a.m.
6    DAN ZHONG,

7              Defendant.

8    ------------------------------x

9         TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
                BEFORE THE HONORABLE ANNE DONNELLY
10                 UNITED STATES DISTRICT JUDGE

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  ALEXANDER A. SOLOMON
                                     IAN CRAIG RICHARDSON
15                                   CRAIG HEEREN
                                     DOUGLAS M. PRAVDA
16
                                Assistant United States Attorneys
17
     For the Defendant:        PROSKAUER ROSE LLP
18                              Eleven Times Square
                                New York, New York 10036-8299
19                              BY:  ROBERT J. CLEARY, ESQ.
                                     DIETRICH L. SNELL, ESQ.
20                                   BRITTANY BENEVIDEZ, ESQ.

21
     Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
22                              Phone:  718-613-2330
                                Fax:    718-804-2712
23                              Email:  LindaDan226@gmail.com

24

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.
```

PROCEEDINGS                                    2

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.

3              THE COURT:  Hi.  Everybody can have a seat.

4              THE COURTROOM DEPUTY:  This is criminal cause for a

5    status conference, Docket Number 16-CR-614, U.S.A. versus Dan

6    Zhong.

7              Counsel, state your appearance, government first.

8              MR. SOLOMON:  Good morning, Your Honor.  Alexander

9    Solomon, Ian Richardson, Craig Heeren and Douglas Pravda for

10   the government.

11             THE COURT:  Hi.  Good morning.

12             MR. CLEARY:  Good morning, Your Honor.  Robert

13   Cleary for Mr. Zhong.  Mr. Zhong is present in court with an

14   interpreter.  And also appearing with me are Dietrich Snell

15   and Brittany Benavidez for the defense.

16             THE COURT:  Hi.

17             All right.  So I know this is not news to everybody,

18   but Judge Irizarry asked me to take over this case, which I'm

19   happy to do.  And I'm pretty sure -- I know I've seen a couple

20   of the AUSAs before, but I don't think that I've ever had any

21   trials with any of the members of the defense.  So I guess

22   today what we'll talk about is the schedule for the trial.

23             I did receive last night some long submissions.

24   Maybe there are judges in this world that like getting those

25   the night before a conference, I'm not one of them.  So I hope

PROCEEDINGS                                    3

1    we won't have too much more of that.

2                I have taken a look at them.  To the extent that

3    you're going to seek to reargue decisions that Judge Irizarry

4    has made already, I've reviewed everything that she's done so

5    far and I'm not inclined to go back.  I think we should really

6    go forward.

7                I will take a closer look at what was submitted last

8    night, and I'll let the government know if I need a response.

9    But it seems to me it's just asking me to revisit what she

10   already decided.

11               Am I right about that?

12               MR. CLEARY:  It is, Your Honor.

13               Just to be clear, we weren't expecting to deal with

14   it today.  We had a two-week window within which to file, and

15   that's the only reason we filed.

16               THE COURT:  No, no, I know.  I thought we had such

17   smooth sailing going on here.  It's fine.

18               I will take a look at it, but as I said, I don't

19   think that's the best use of everybody's time to ask me to

20   revisit what Judge Irizarry already took quite a bit of time

21   in deciding, and those decisions look quite sensible to me.

22               I know there's also an open motion to dismiss, and I

23   just wondered if that was still your intention to file that

24   motion, given the fact that we're not going to have a January

25   trial date.

PROCEEDINGS                                    4

1              MR. CLEARY:  Yes, Your Honor.  So we filed that as

2     quickly as we could, on the 27th, which happened to be the day

3     the case was assigned to Your Honor.

4              THE COURT:  Right.

5              MR. CLEARY:  It's based on a late production of

6     *Brady* material, which we had just gotten, so we got the late

7     *Brady* material --

8              THE COURT:  I'm sorry, can you use the mic.

9              You know what, Mr. Cleary, you can just stay seated,

10    if you want.  I think it's just so much easier for everybody

11    to use the microphone.  So just start from the beginning.

12             Is that helpful for the interpreter?

13             Oh, you know, wait one second.

14             Did you not swear the interpreter in?

15             THE COURTROOM DEPUTY:  No.

16             THE COURT:  Oh, right, sorry about that.

17             I'm reminded that we need to swear in the

18    interpreter, which I was thinking of as I walked in and

19    promptly forget about.  Go ahead.

20             (Whereupon, JOHN LAU was sworn as interpreter.)

21             THE INTERPRETER:  Yes, I do.

22             THE COURTROOM DEPUTY:  Please put your name on the

23    record.

24             THE INTERPRETER:  John Lau, L-A-U.

25             THE COURT:  Is everybody fine with not starting all

PROCEEDINGS                                    5

1    over again?

2              MR. CLEARY:  Yes, Your Honor.

3              THE COURT:  Mr. Cleary, if you could just start with

4    what you were saying about that motion.

5              MR. CLEARY:  Sure.

6              We would still like to litigate the motion, Your

7    Honor, even recognizing the Court is going to adjourn the

8    trial, because part of it relates to the timing that you're

9    addressing now, which is getting the information in time where

10   we would not be able to use it for an early-dated trial.

11             But the other part of it is, and I don't want to be

12   pejorative here so I'm going to be as polite as possible, is

13   that in seeking bail, in seeking detention in 2016 and again

14   in 2017, the government made representations to the Court that

15   are, we believe, completely inconsistent with that *Brady*

16   material.

17             We didn't have it.  They didn't give it to us.  The

18   Court didn't have it, and that's the key part of what the due

19   process violation is in the motion to dismiss.

20             THE COURT:  Okay.  I'm going to confess, I haven't

21   read it very carefully.

22             My question was really, is there any part of it that

23   will be not -- that doesn't apply any more because we're going

24   to have a later trial date?  I just rather only have to decide

25   the things I really have to decide.

PROCEEDINGS                              6

1          MR. CLEARY:  It would apply for, A, that reason;

2    and, B, the other reason, there's two interrelated problems

3    we're dealing with here, is we have a defendant who's in jail

4    and has been in jail for two years.

5          THE COURT:  In other words -- I'm interrupting

6    because I don't want to litigate it now.

7          MR. CLEARY:  Yes.  No.  No.

8          THE COURT:  The whole thing is the government's

9    going to have to answer the whole thing.

10         MR. CLEARY:  I believe so, Your Honor.

11         THE COURT:  So how long is it going to take you to

12   respond to that motion?

13         MR. SOLOMON:  I could respond this Friday.

14         THE COURT:  Sure.  So that is that.

15         THE COURTROOM DEPUTY:  The 14th.

16         THE COURT:  On the 14th.  Yes.  All right.

17         Now, there are a couple of open matters.

18         I have a couple of questions about this Rule 15

19   motion.  Because I mean it's a little bit unusual, at least in

20   the context of the cases that I've seen, that the witnesses --

21   and just correct me if I'm wrong about this -- but the people

22   that we're talking about are two categories.  There's a group

23   of people that were identified as victims by the government.

24         Correct so far?

25         MR. CLEARY:  That's correct.

PROCEEDINGS                                      7

1          THE COURT:  And then there are two others, like an

2     HR person and somebody who actually was deposed, but the

3     defense didn't participate.

4          Also correct?

5          MR. CLEARY:  Kind of.

6          THE COURT:  Close enough?

7          MR. CLEARY:  Close enough for present purposes.

8          THE COURT:  So let's deal, first of all, with the --

9     let me just ask first of all:  Can you all agree on anything

10    here?  Because I -- let me just say a couple of things about

11    it.

12         First, in my view, if you can agree about these

13    witnesses, that's good.  I don't think, and maybe I'm putting

14    the cart before the horse here, I don't think it's acceptable

15    to have one side by Skype and one side in person.  I mean I

16    just don't think that's a workable situation.  So that to me

17    is not a solution.

18         But here's my question.  Let's just deal with that

19    category of people who are characterized as victims.

20         Are there six of them; is that right?

21         MR. CLEARY:  Nine, Your Honor.

22         THE COURT:  Nine of them.

23         So I just want to make sure I understand what the

24    materiality piece is.  Is it because they'll say we weren't

25    enslaved, essentially?

PROCEEDINGS                           8

1          MR. CLEARY:  Correct.  And they're designated as

2    victims by the government, and they'll deny that.

3          THE COURT:  Okay.  But so -- I mean do you have a

4    response to whether that's material?  I mean presumably you

5    could bring in a whole bunch of people who said I wasn't

6    victimized, but that -- I mean that's like bringing in if

7    somebody's charged with robbing a bank and you bring in other

8    people in other banks who they say that they didn't rob our

9    bank.  I'm not quite sure I see the materiality.

10         MR. CLEARY:  Your Honor, I will address that.

11         I think the analogy is if the government were to

12   charge five bank robberies and there are alibi witnesses for

13   the defendant for each of the five robberies, each one of

14   those alibi witnesses is relevant and material to the defense.

15         The same thing is true here.  Because the

16   government's position is if they force labor, threatened or

17   used any single one of these 53 witnesses who -- 53 victims

18   that they've identified, they would argue, and I think they'd

19   be correct about this, that that suffices for purposes of the

20   statute.

21         Now, we're never going to be able to depose 53

22   witnesses, but to the extent we could depose a large number of

23   them, nine in the instance we're talking about and they say I

24   wasn't victimized, I came voluntarily to the United States and

25   I don't know anyone else that was victimized, and I lived in

PROCEEDINGS                          9

1   the same house with a number of those people, that to us is

2   highly relevant and highly exculpatory.

3            THE COURT:  I have to say, I haven't decided it,

4   but -- go ahead, what do you have to say about it.

5            MR. SOLOMON:  I think the defense and the government

6   take different views as to what's material.  The thrust of our

7   prosecution is based on debt bondage contracts.

8            Yes, there were instances early on in the

9   conspiracy, in the charged conspiracy, when someone escaped,

10  rendition squads were sent out to that person, but the thrust

11  of the prosecution here is whether these individuals, the

12  victims, were forced to pledge as collateral significant

13  assets in order to be allowed to travel to the United States

14  to work.

15           What's unclear from Mr. Cleary's submissions is

16  whether these witnesses will say, yes, we're not subject to

17  the debt bondage contracts.  Whether they were locked up, or

18  whether they were, you know, operating at gun point, that's

19  not something we're going to be arguing at trial.  So I don't

20  think he meets the materiality threshold.

21           MR. CLEARY:  Your Honor, they've charged that, they

22  charged in Charge One and Count Two of the indictment physical

23  restraint.  So that's a charge that we have to deal with,

24  number one.

25           Number two, each of these witnesses, and the nine

PROCEEDINGS                                    10

1    I've interviewed, all of them, they will say they were not

2    debt bonded, that they all entered into employment contracts

3    voluntarily that had benefits for them, and they came over to

4    the United States under those contracts.  And some of them

5    came several times.  They were willingly here.

6              THE COURT:  Well, then my next question is:  You

7    know, obviously, if they're beyond the subpoena power but

8    there's an unusual feature, at least in my view in this case,

9    that -- and if I'm wrong about this I'm sure I'll hear about

10   it -- but aren't they employees of the defendant's company?

11             MR. CLEARY:  It's not the defendant's company, Your

12   Honor.  A number of them, and maybe even the majority or most

13   of them, are employees of a different company called China

14   Rilin that's owned by the -- I believe it's owned by the -- my

15   client's uncle.

16             THE COURT:  I see.  So, and at least at one point

17   the company -- and, again, correct me if I'm wrong -- but at

18   one point didn't the company say that it would make them

19   available and would fire them if they didn't come?

20             MR. CLEARY:  I don't know.  I don't think that's the

21   case, Your Honor, I wasn't involved in those.

22             But company counsel is in the courtroom, so they can

23   answer that question.

24             THE COURT:  I'm sure I read that somewhere.  Did I?

25             MR. SOLOMON:  That's correct, Your Honor.

PROCEEDINGS                                    11

1          THE COURT:  So I guess my question is, I don't

2    understand -- I know they say they don't want to come back to

3    the United States because they're afraid of being prosecuted;

4    is that right?

5          MR. CLEARY:  I haven't spoken to them about this,

6    Your Honor.  That's my understanding.  They are concerned

7    about being prosecuted or put in jail.

8          THE COURT:  For what?

9          MR. CLEARY:  I'm not entirely sure.

10         All I spoke to them about was the foundation for the

11   Rule 15, which is whether they would come to testify in the

12   United States, and they said they would not do that.

13         And then company counsel, their own individual

14   counsel, talked to them about the issues Your Honor is

15   raising.

16         THE COURT:  I mean but the government has promised

17   what?  That you'll give them safe passage and you won't -- I

18   mean, obviously if they were to do something criminal here, I

19   mean if they robbed a bank while they were here.

20         But assuming you promise that you're not going to

21   prosecute them for anything in connection with this case or

22   anything, right?

23         MR. SOLOMON:  That would be correct, Your Honor.

24         THE COURT:  I don't understand why that's not

25   enough, particularly -- I mean this is not the usual case,

PROCEEDINGS                                    12

1    because they seem, at least in my uneducated view, to have

2    some connection to the defendant.  He at least -- there's

3    somebody that has some measure of control over them.

4              MR. CLEARY:  That's not true, Your Honor.  Most of

5    them, most of this nine do not know the defendant at all.

6              THE COURT:  They worked for his uncle.

7              MR. CLEARY:  Right.  But, again, different company

8    in a different country.

9              And they told us they don't -- there may be one or

10   two exceptions to this, but in the main, they don't know him.

11   They don't know my client.

12             THE COURT:  That's not quite the point I was making.

13             It seems to me that it's just somewhat unusual in

14   the context of these cases to have the witnesses working for

15   someone who is certainly connected to the defendant and who

16   previously, apparently, were willing to be here.

17             So I'm not making a decision today.  I will say

18   then -- the only thing I will say about those other two

19   witnesses, I think I'm unlikely to grant the Rule 15 on those.

20             I've got everybody's submissions.  I think I

21   understand everybody's arguments.  But the HR person, as I

22   read it, seems to be prepared to testify that everybody loved

23   coming over to the United States or something along those

24   lines.  I don't really see that that's material.

25             MR. CLEARY:  Well, what he could testify to is the

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                    13

1    process for selecting people to come, and the main point --

2    there are several subsidiary points, but the main point there

3    is there were a lot of people willing and anxious to come over

4    for these jobs in the United States.  So -- and only a few

5    were selected for it.  And he'll describe that process.

6              And that, too, seems to us to be exculpatory.

7              THE COURT:  Okay.  And then there's the other one

8    who looks like there was the opportunity to depose him.  I

9    think the defense passed on that.  I don't know if that was

10   you or whatever.

11             MR. CLEARY:  It wasn't me.  I don't think he's that

12   other one.  There is another one who is a worker --

13             THE COURT:  Oh, that's right.

14             MR. CLEARY:  -- who is not denominated as a victim.

15             THE COURT:  Yes.  Okay.

16             Well, as I say, I'm not going to rule on that today.

17             I would encourage you to try to reach some

18   accommodation on this because, you know, if the government is

19   willing to make all these concessions, and that was the proper

20   reason, as I understood, they were afraid of something

21   being -- you know, prosecuted here.

22             If that's not going to happen, that removes the

23   concern, and they ought to be able to get here as witnesses.

24   So if you can work that out, you can work it out, otherwise --

25   and just let me know, so -- as much as I love drafting all

PROCEEDINGS                                    14

1    kinds of opinions, if there's one I don't have to, you'll let

2    me know about that.

3           Let me just briefly address some of these other open

4    discovery questions.

5           All right, well, I think I have to -- I will let you

6    know about that on -- all right, so there were four -- I hope

7    I have this right -- four categories of documents that the

8    defense wants to compel.

9           The first category is these unredacted versions of

10   documents that relate to the forced labor charge.

11          This is another thing I'm going to ask you to work

12   together on, to turn over information about witnesses that

13   won't pose safety concerns.  The one that sort of I was

14   thinking of was the law enforcement officers who participated

15   in some of the searches.

16          Is it your position that that poses a safety

17   concern?

18          MR. SOLOMON:  It's not a safety concern.  We

19   intended to disclose that information to the extent we're

20   relying on reports made by these witnesses referencing these

21   witnesses at the time of 3500 disclosures.

22          THE COURT:  All right.

23          MR. CLEARY:  I'm sorry, Your Honor, on that, that

24   would only be for the witnesses, agent witnesses they're

25   calling.  We think we're entitled to it for all the agents,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    15

1    because we may want to call a couple of the agents in our

2    case.

3                THE COURT:  You don't have any problem with giving

4    them the names of law enforcement people who were there; do

5    you?

6                MR. SOLOMON:  No.

7                THE COURT:  Okay.  So that solves that.

8                MR. CLEARY:  And will that be done now, Your Honor,

9    as opposed to waiting to the time of 3500?

10               THE COURT:  I'm going to let you guys work that out.

11               I guess I'll jump to this now.  Obviously, you know,

12   I'm not in a position to try this case in January, so I was --

13   so the date that -- I'll come back to these, but let me just

14   make sure that we can be kind of on the same page.

15               Is it correct that you're about a two-week trial?

16   Two weeks for your witnesses?

17               MR. SOLOMON:  It could be a little longer.  The

18   difficulty with this trial is a number of the witnesses will

19   be testifying in Chinese or Chinese-language documents, so the

20   pace of the trial will be slower than typical.

21               THE COURT:  Do you have any idea of how many

22   witnesses you might call?

23               MR. SOLOMON:  Most of the witnesses are quite short.

24   I think there are probably six or seven longer witnesses.

25               THE COURT:  Okay.

PROCEEDINGS                                          16

1       MR. SOLOMON:  And then probably 20 or 30 shorter

2   witnesses.

3       THE COURT:  Okay.  And I don't want to pin you down

4   by this, but have you thought about to the extent to which you

5   will put on a case?

6       MR. CLEARY:  We certainly plan on it, Your Honor,

7   and that goes for the depositions or to encourage people to

8   come here.  That group, so that's eleven or nine, depending on

9   how you're counting.

10       And then there's the *Brady* that just got produced.

11   And if you want, I can hand up a piece of it so you can just

12   see the sort of testimony --

13       THE COURT:  No, I'm a simple person.  One thing at a

14   time.

15       MR. CLEARY:  If we get access to those witnesses,

16   those, too, are highly exculpatory, people designated as

17   victims saying I was not subjected to force or threat, that

18   would if -- the big "if," I don't know if we can get ahold of

19   those people, but I assume they are all in China, that would

20   add a few more witnesses to our list.

21       THE COURT:  So what are we talking?

22       Should we set aside four weeks for this trial?

23       MR. SOLOMON:  To be on the conservative side, I

24   think, Your Honor.

25       THE COURT:  Okay.  Of course, no one will object if

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                17

 1    it's shorter than that.

 2              MR. SOLOMON:  Of course.

 3              THE COURT:  I think at the end of February,

 4    February 25th is a good day for us.

 5              How does that work for you all?

 6              MR. SOLOMON:  It's wonderful.

 7              THE COURT:  Is that okay for you, Mr. Cleary?

 8              MR. CLEARY:  It's fine, Your Honor.

 9              THE COURT:  Good.  Then I'm going to move on it

10    quickly.

11              MR. CLEARY:  If I can just squeeze in one other

12    comment.

13              The only thing I'm concerned about -- I mean it's

14    fine in the sense that we've been trying to get to trial for a

15    long time --

16              THE COURT:  That's what I hear.

17              MR. CLEARY:  -- as you might imagine.

18              I'm concerned about this new material that was just

19    produced.  There's no way that we're going to be able to use

20    that in a meaningful way between now and the end of February.

21    It's just not possible.

22              If my assumption is right, and I think it is, that

23    all of the people reflected in this *Brady* material are in

24    China.  It's just going to take us time to find them, and I

25    can tell you the steps that we have to.  That's the problem.

PROCEEDINGS                                           18

1    But I'm betwixt and between, because I don't want to have

2    Mr. Zhong sitting in jail any longer than necessary.

3              THE COURT:  Well, the only reason I'm asking is

4    because I know this will shock you, but this is not my only

5    case, and so I need to set aside a period of time.

6              I mean do you have anything -- I know he keeps

7    referring to -- counsel keeps refer to it as "*Brady*

8    materials*".  Is there something that you want to say about

9    that?

10             MR. SOLOMON:  Sure.

11             THE COURT:  I don't want to look at it now.

12             MR. SOLOMON:  Obviously we are not ready to argue

13   the motion right now, but our view is that the materials are

14   not *Brady*.  I think, as you'll see in the briefing that we

15   filed on Friday, before 2011, February of 2011, the

16   defendant's company had a practice of keeping workers

17   confined.  This practice stopped after there were several

18   housing inspections performed on premises in which the

19   defendant's company maintained workers.  After that point,

20   workers were more or less free to come and go within the

21   facilities, but they were still debt bonded.

22             So the fact that in 2016 a number of these witnesses

23   were interviewed and they indicated that they were not subject

24   to forced confinement or the threat of physical violence is

25   not *Brady*.

PROCEEDINGS                                    19

1          Most of these people indicated that they were, in

2    fact, subject to debt bondage contracts.  Almost all of them

3    indicated that their passports had been forfeited to Rilin, so

4    Rilin kept their passports.  One of them indicated that that

5    practice was done to prevent the workers from fleeing.

6          And, finally, almost all the workers indicated that

7    they were hoping to go back to China immediately, or they were

8    planning to go back to China immediately.  In fact, they

9    traveled back to China a few days later where they were

10   expecting one payment for the full performance for the past

11   months or past several years.

12         So our view is that is not --

13         THE COURT:  I didn't let Mr. Cleary argue his

14   position, and I should have cut you off a little earlier.

15         I promise I'm going to read it.  I'm just really

16   trying to get an idea of our schedule.

17         So let me ask you this, Mr. Cleary:  Let's say that

18   you come in second on the *Brady* material question.  Is

19   February a reasonable -- February 25th reasonable?

20         MR. CLEARY:  When you say "come in second," you mean

21   the Court finds it's not exculpatory?

22         THE COURT:  Yes.

23         MR. CLEARY:  Can I have one second to confer?

24         THE COURT:  Yes.

25         (Pause.)

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                          20

1          MR. CLEARY:  That would be fine, assuming we get the

2     Rule 15 depositions or the live testimony.

3          THE COURT:  If you don't come in second on that one,

4     right.

5          I'm going to -- I don't have their response yet, and

6     as I said I have not read your submissions because I wanted to

7     have both of them, so I mean that might change things.

8          But let's put that as a placeholder, that

9     February 25th, and if something changes, we'll all be

10    flexible.

11         Let me just get back to -- just before I forget,

12    these other categories of discovery of the motion to compel.

13    One of them would be the communications between the Department

14    of State and the DOJ about the investigation.

15         My view is that the defense has the diplomatic note,

16    which seems to establish what it is that the defense wants to

17    establish.  So unless there's *Brady* material in there, I'm

18    going to deny that motion to compel.

19         The additional visa applications about the 53

20    people, I think that one might be moot.  I think the

21    government has said that they can't find any additional

22    documents.

23         Am I right about that?

24         MR. SOLOMON:  That's correct.

25         THE COURT:  All right.  And then is there -- oh,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    21

1    there's -- let me just ask my clerk a question here.

2                 (Pause.)

3                 THE COURT:  The limits of my computer knowledge are

4    so glaringly obvious.

5                 So the other question was about the ESI sources.

6                 I don't think the government is obligated to produce

7    that kind of information.  So that is denied.

8                 I think we've covered all of those things.

9                 I'll just say a couple of things.  You know, every

10   judge is different on how they handle things.  We tend to take

11   a low-drama approach to everything here.  I think it works

12   better.

13                You know, for purposes of trial, I usually let the

14   parties try their cases.  I'm not a big sidebar person, but

15   I'll have them if I think it's necessary.

16                In terms of objections and things, I've made my

17   ruling and we move on.  I might be wrong, it's happened

18   before, but I don't tend to go back and revisit those things.

19                I mean I'm not -- at least I think I'm not

20   unreasonable, but I think if we keep going and rehashing old

21   things, we'll be on trial for four months instead of four

22   weeks.  So that's kind of the way we roll here.  But we'll

23   find out.

24                So I'm going to get your response on Friday.

25                MR. SOLOMON:  Right.

PROCEEDINGS                                    22

1            THE COURT:  And we'll decide it as quickly as we

2     can.

3            And you're going to see what you can work out about

4     the Rule 15 things and you're going to let me know.  And I

5     think that's it.

6            MR. CLEARY:  And I guess, Your Honor, we would reply

7     to their response, right?

8            THE COURT:  Oh, right, yes, sorry.

9            So how much time do you need to reply?

10           Will I be deciding this on Christmas?

11           MR. CLEARY:  Let me count that.

12           Will the 21st be bad?

13           THE COURT:  We're a 24-hour-a day operation.

14           (Pause.)

15           THE COURT:  Are there going to be any more CIPA

16    motions?

17           MR. SOLOMON:  No, Your Honor.

18           THE COURT:  Okay, good.

19           So you're going to answer on the 21st.

20           Okay.  And we'll work hard to get you a decision.

21    Okay?

22           MR. SOLOMON:  Just one final note, Your Honor.  We

23    need to exclude time.

24           THE COURT:  Yes, indeed.

25           The time will be excluded, in the interest of

PROCEEDINGS                                    23

1    justice, while we resolve all these motions.

2              I don't think anybody's objecting to that.

3              MR. SOLOMON:  Right.  In fact, I think we had to the

4    two weeks since the defense filed their motion to dismiss, and

5    so would we ask that time be excluded since the filing of that

6    motion.

7              THE COURT:  Do you remember when that was?

8              MR. CLEARY:  The 27th.

9              THE COURT:  Okay.  So it's excluded from then on.

10   Okay?

11             MR. SOLOMON:  Thank you, Your Honor.

12             THE COURT:  All right, anything else?

13             MR. SOLOMON:  No.  Thank you.

14             THE COURT:  See you soon.

15             MR. CLEARY:  Thank you, Your Honor.

16             THE COURT:  Thank you.

17

18             (Whereupon, the matter was concluded.)

19

20                   *    *    *    *    *

21

22   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

23

24   s/ Linda D. Danelczyk                December 12, 2018

25     LINDA D. DANELCZYK                      DATE