2123

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                        16-CR-614(AMD)
3    UNITED STATES OF AMERICA,
                                        United States Courthouse
4              Plaintiff,               Brooklyn, New York

5              -against-                March 22, 2019
                                        9:30 a.m.
6    DAN ZHONG,

7              Defendant.
     ------------------------------x
8
                   TRANSCRIPT OF CRIMINAL CAUSE FOR TRIAL
9              BEFORE THE HONORABLE ANNE DONNELLY
                   UNITED STATES DISTRICT JUDGE
10                      BEFORE A JURY

11   APPEARANCES

12   For the Government:        UNITED STATES ATTORNEY'S OFFICE
                                Eastern District of New York
13                              271 Cadman Plaza East
                                Brooklyn, New York 11201
14                              BY:  ALEXANDER A. SOLOMON
                                     IAN CRAIG RICHARDSON
15                                   CRAIG HEEREN
                                Assistant United States Attorneys
16
     For the Defendant:         PROSKAUER ROSE LLP
17                              Eleven Times Square
                                New York, New York 10036-8299
18                              BY:  ROBERT J. CLEARY, ESQ.
                                     DIETRICH L. SNELL, ESQ.
19                                   SAMANTHA SPRINGER, ESQ.
                                     BRITTANY BENAVIDEZ, ESQ.
20
     Also Present:              HEATHER BUTLER, PARALEGAL
21                              S.A. RYAN CAMPBELL

22
     Court Reporter:            LINDA D. DANELCZYK, RPR, CSR, CCR
23                              Phone:  718-613-2330
                                Fax:    718-804-2712
24                              Email:  LindaDan226@gmail.com

25   Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.

PROCEEDINGS                    2124

1              (In open court.)

2              (WHEREUPON, commencing at 10:06 a.m., the following

3     further proceedings were had in open court, outside the

4     presence and hearing of the jury, to wit:)

5              THE COURT:  All right.  So I guess last night,

6     sometime around 7:00, little -- between 6:00 and 7:00, we got

7     a letter from the defense.  I guess the rage just built up all

8     day so we didn't really have a chance to look at it until

9     later.

10             I am sure you read it.  The first complaint is that

11    they don't want -- you don't want to have the conscious

12    avoidance charge in on the theory that you didn't have notice

13    of when he summed up.

14             I looked over the transcript of the arguments, and

15    the conversation we had before, and I remain convinced that

16    this is not a big deal.  But, on balance, the thing I said

17    that I was going to think about and listen to the summations

18    was a different topic.  So I won't give the conscious

19    avoidance charge.

20             The second thing about what people said about

21    material omissions, I mean, I tell the jury that they take the

22    law from me.  There's no material omission instruction in the

23    final instructions.  So it was a motion for a mistrial, it is

24    denied.

25             Anything else that we have to do?

PROCEEDINGS                    2125

1          MR. CLEARY:  Just one other thing I need to let you

2     know before you charge the jury, Judge, and this is under

3     Rule 32.2.

4          There are forfeiture allegations in the case, as you

5     know.  And as the government knows, we have not waived our

6     rights to a jury determination on that issue.  So in the event

7     of a conviction under 32.2, I'm going to request that the jury

8     be retained to determine that issue.

9          THE COURT:  So that was a thing that might have been

10    interesting to know when we selected the jury.  What's your

11    position on this?

12         MR. HEEREN:  Your Honor, it's true that if

13    requested, as was just requested now, it can go to the jury

14    instead of being decided by the judge, which is what we

15    expected to happen when it wasn't raised after we put --

16         THE COURT:  Is it waived by not raising it?

17         MR. HEEREN:  Yes, it is.

18         THE COURT:  Is there a rule that you can cite that

19    says it is waived?

20         MR. HEEREN:  32.2 says before the jurors deliberate.

21    So I think what Mr. Cleary is saying is they're raising it

22    now, they're not deliberating yet, so he hasn't waived it.

23         THE COURT:  Oh.  So he hasn't waived it.  I have to

24    say, I find it -- I'm trying to think of what the word is,

25    annoying, that I am hearing about this right before I am

1  supposed to charge the jury.  And, again, I am not sure why

2  this couldn't have been raised earlier.

3          MR. CLEARY:  So my record is clear, Your Honor, I

4  know I didn't raise it with the Court.  I apologize for that.

5          THE COURT:  Don't you think when I'm selecting a

6  jury, that that's something that they might be interested to

7  know, that they might have to hang around here after a

8  verdict?  I mean, these people have lives.  They have given up

9  their lives for this.  And I would give them notice of that.

10 And I am about as mad as I've been during the course of this

11 trial.  Why didn't you tell me this before?

12         MR. CLEARY:  I apologize, Your Honor.  I didn't

13 think of it.  I did tell the government.  The government's

14 known about this since the trial started.

15         THE COURT:  Okay.  How would this procedure work?

16 How much extra time would they have to spend?  How do you

17 propose I tell them that, by the way.  By the way -- and when

18 do you think I should do that?  Before I give them the charge?

19         MR. CLEARY:  You could either to it -- I've only

20 done this once before in my career, Your Honor, and the way it

21 was done that time --

22         THE COURT:  Did you give the judge notice before you

23 did it?

24         MR. CLEARY:  We did not, I don't believe, and the

25 judge told them after they came back with the verdict.  And

PROCEEDINGS                                    2127

1    what happened there, I don't know if that would happen here,

2    is neither the government nor the defense put on any evidence,

3    there was a short argument by both sides, and the jury made

4    their decision.

5            THE COURT:  So what would happen in this situation?

6    Maybe I don't have to get so steamed up.  But what would

7    happen in this situation?  Would there be evidence?

8            MR. CLEARY:  That's up to them, Your Honor.  We

9    don't have any evidence to offer.

10           MR. HEEREN:  So there's two issues that --

11   regardless of the evidence.  One is, they need to be charged

12   on it.  As we indicated, we didn't provide a charge because we

13   put them on notice and we expected that since they hadn't

14   raised it again, we'd be able to go to the Court afterwards

15   and have a determination by the judge on it.

16           Now they are making this argument, the jury will

17   need to be charged on it.

18           THE COURT:  It would be a separate --

19           MR. HEEREN:  It would be a separate charge we could

20   do afterwards.  They also will need a separate verdict form,

21   too, that will --

22           THE COURT:  I am not going to tell them before I

23   charge.  I am not going to tell them that's a possibility.  So

24   we will see what happens.  If there's an acquittal, we don't

25   have to worry about it.  If there's a conviction, then we

PROCEEDINGS                    2128

1    will.

2              But let's just -- I mean, I don't think it is too

3    much to ask to give a heads up that this is something you were

4    thinking of.  And I just -- I don't understand why that

5    wouldn't be something that you would raise so that I could

6    give the jurors some notice about it.  I'm mystified by this.

7    But the situation is what it is.  What's your view of what

8    would happen at a proceeding about forfeiture?  Would you just

9    use bank records?

10             MR. HEEREN:  Yes.  I mean, I think at the very least

11   we'd have to make arguments.  I don't know if there's anything

12   more that needs to go in.  I don't think so.

13             THE COURT:  All right.  Well, maybe it is not such

14   a big deal.  Is there anything else that you might want to

15   share with me before we start this process?

16             MR. CLEARY:  There is not, Your Honor.

17             THE COURT:  Is there anything you all have anything

18   that's on your mind?

19             MR. HEEREN:  Your Honor, just briefly, I would like

20   to put on record regarding this omission argument by them.

21             THE COURT:  You won that one.

22             MR. HEEREN:  I know.

23             THE COURT:  Don't snatch defeat from the jaws of

24   victory.

25             MR. HEEREN:  I will not, Your Honor, I don't think I

PROCEEDINGS                              2129

1   will, but I just want to point out, because it is important.

2   The claim was that they were not on notice of this.  They were

3   on notice since June of 2018 about this.  And what I want to

4   flag for the Court is, the letter in which we put them on

5   notice on is the same letter that Mr. Snell handed up to you

6   and was heavily redacted.

7            So we had put in that letter, as -- I won't read the

8   whole thing, but the end of it, were, in fact, brought to the

9   United States to work on private property, in addition to PRC

10  government facilities, contrary to the terms of the visas.

11           THE COURT:  All right.  Just so it is clear, I don't

12  think Mr. Snell was redacting that so I wouldn't see it.  I

13  think the purpose of it was, you wanted me to show the jury.

14           MR. SNELL:  That's right.

15           THE COURT:  I don't think he was trying to trick me.

16           MR. SNELL:  I believe I actually showed the Court

17  the unredacted version and the redacted version.

18           THE COURT:  I just wanted to make it clear, I don't

19  think anybody's saying that.

20  Let's get the jury.

21           MR. HEEREN:  Your Honor, are we also getting the

22  verdict form that you're giving to --

23           THE COURT:  We didn't give them that?

24           THE LAW CLERK:  We didn't give them that.

25           THE COURT:  Let's give it to them.

PROCEEDINGS                              2130

1          Well, you submitted one and you did not submit a

2    sample verdict form.  You did?

3          MR. SNELL:  No, Judge, we did not submit our own

4    verdict form.  We had one objection to the government's, but

5    we thought we'd just see the Court's, and assumed that the

6    Court's was consistent with the charge.

7          THE COURT:  Tell Donna not to bring them out yet.

8    Is there anything else?  Verdict sheets?  Charge?

9          MR. SNELL:  Nothing.

10         (Short pause.)

11         THE COURT:  All right.  You guys don't have a copy

12   of your verdict sheet, do you?

13         THE LAW CLERK:  I have it right here.

14         THE COURT:  Never mind.  We're good.

15   Everybody have a copy?

16         MR. HEEREN:  Yes.

17         MR. SNELL:  Yes.

18         THE COURT:  What's the trouble?

19         MR. SNELL:  Your Honor, we just have one very minor

20   request, and that's with respect to Count 3, the description

21   of Count 3 in the government's proposed verdict sheet is

22   document servitude, and in the judge's charge, in the Court's

23   charge, it's concealing passports and immigration documents in

24   connection with forced labor.

25         THE COURT:  All right.  We'll change it.

PROCEEDINGS                                    2131

1          MR. HEEREN:  No objection, Your Honor.

2          MR. SNELL:  That's it.

3          THE COURT:  That's it?  All right.

4          I'm sorry that I lost my patience there, but I

5    really try when I'm selecting a jury to give them an idea of

6    what this job is going to entail.  And it's just -- it makes

7    me mad that I feel that I -- that they may feel they have been

8    mislead.  So I wish this hadn't happened.

9    What is it that we're calling it?

10         MR. SNELL:  It is in the Court's charge, Count 3.

11         THE COURT:  I see.

12         MR. SNELL:  Concealing passports.

13         THE COURT:  Okay.

14         MR. SNELL:  And immigration documents in connection

15   with forced labor.

16         THE COURT:  Okay.  We're ready.

17         (WHEREUPON, 10:21 a.m., the jury entered the

18   courtroom.)

19         THE COURT:  Good morning, everyone.

20         THE JURY:  Good morning.

21         THE COURT:   Glad you got here on this rainy day.

22         You have now heard all of the evidence in the case.

23   You've heard the lawyers' arguments.  And I am now going to

24   instruct you on the law that applies to this case.

25         You've all paid very careful attention during the

1   course of the trial, and I am going to ask that you continue

2   to pay attention as I give you these instructions.

3          These instructions are going to be divided into

4   three parts.  In the first section, I'll instruct you about

5   the general rules that define and govern your duties as jurors

6   in a criminal case.  In the second part of the instructions,

7   I'll talk to you about the crimes that have been charged, and

8   the elements that the government has to prove for each crime.

9          In the final section of the charge, I am going to

10  talk to you about the process of your deliberations.

11         The first thing I am going to do is to remind you of

12  your role as jurors and what my role is as the judge.

13         Your duty, as I told you when you were selected and

14  in the opening instructions, is to find the facts from all of

15  the evidence in the case.

16         You are the sole judges of the facts, and it is for

17  you and you alone to determine the weight that you are going

18  to give the evidence, to resolve any conflicts in the

19  evidence, and to draw those inferences that you believe are

20  reasonable and warranted from the evidence.  My job is to

21  instruct you on the law.  You must follow the law as I give it

22  to you, even if you don't agree with it.  You must not be

23  concerned about the wisdom of any rule of law that I state, no

24  matter what opinion you might have about what the law may be

25  or what you think it should be, you would violate your oaths

1    as jurors if you based your verdict on anything other than the

2    law as I define it for you.

3              If any of the lawyers have said something about the

4    law that is different from my instructions, you must ignore it

5    and be guided only by what I instruct you on the law.  You

6    should not single out any one instruction, but consider my

7    instructions as a whole.

8              Since it is your job and not mine to determine what

9    the facts are, I have not expressed or implied an opinion

10   about how you should do your job in deciding the facts of this

11   case.  You shouldn't conclude from anything that I might have

12   said during the trial, including these instructions, that I

13   have any opinion about the facts or the merits of this case.

14   There were times when I asked a question of some of the

15   witnesses, but there's nothing significant about that, and you

16   shouldn't assume there is just because I asked them.

17             The fact that the government is prosecuting this

18   case in the name of the United States of America should not

19   affect your evaluation of the evidence and the facts before

20   you.  The government is not entitled to greater consideration

21   than the defendant.  By the same token, it is entitled to no

22   less consideration.  All parties, the government or

23   individuals, stand as equals in this court and are entitled to

24   equal consideration.  Neither the government nor the defendant

25   is entitled to any sympathy or favor.

JURY CHARGE                                    2134

1          It is your responsibility to decide the facts with

2     complete fairness and impartiality, without bias or prejudice

3     or sympathy for any party.  You must perform your duty as a

4     juror with complete fairness and impartiality.  You must

5     carefully and impartially consider the evidence, you must

6     follow the law as I give it to you, and reach a just verdict

7     regardless of the consequences.

8          It would be improper to consider any feelings that

9     you might have about the defendant's race, religion, national

10    origin, ethnic background, occupation, gender, or age.  Every

11    person is entitled to the presumption of innocence, and the

12    government has the same burden of proof as to every defendant.

13    It would also be improper for you to permit any feelings that

14    you might have about the nature of the crimes charged to

15    influence your decision making process.

16         The indictment is the document that the government

17    uses to give the defendant notice of the charges against him

18    and to bring him here to court.  It is an accusation and

19    nothing more.  The indictment is not evidence, and it is

20    entitled to no weight in your determination of the facts.  The

21    defendant has pled not guilty to the indictment.  The burden

22    is on the government to prove the defendant's guilt beyond a

23    reasonable doubt.  This burden never shifts to the defendant.

24    He does not have to prove that he is innocent, he does not

25    have to present any evidence at all.  If the government does

1    not meet its burden of proving the defendant's guilt beyond a

2    reasonable doubt, you must reach a verdict of not guilty.

3            The defendant is presumed to be innocent of all of

4    the charges against him.  The presumption of innocence alone,

5    unless it is overcome by proof beyond a reasonable doubt, is

6    sufficient to acquit the defendant.  The defendant is presumed

7    innocent unless and until you decide unanimously that the

8    government has met its burden and has proven him guilty beyond

9    a reasonable doubt.  This presumption was with the defendant

10   when the trial began, it remains with him now, and will

11   continue into your deliberations unless and until you are

12   convinced that the government has proved his guilt beyond a

13   reasonable doubt.

14           What is a reasonable doubt?  It's a doubt that is

15   based upon reason and common sense, the kind of doubt that

16   would cause a reasonable person to hesitate to rely on it and

17   act on it in a matter of importance in his or her personal

18   life.

19           A reasonable doubt is not a caprice or a whim.  It

20   is not speculation.  It is not suspicion.  It is not an excuse

21   to avoid an unpleasant duty.  It should not be based on

22   sympathy.  Proof beyond a reasonable doubt is not proof beyond

23   all doubt; rather, it is proof that is so convincing that a

24   reasonable person, based on that proof, would not hesitate to

25   draw the conclusion that's offered by the government.

JURY CHARGE                                    2136

1      If after a fair and impartial consideration of all

2  the evidence that you heard during the course of this trial

3  you have a reasonable doubt, it is your duty to acquit the

4  defendant.  On the other hand, if after fair and impartial

5  consideration of all of the evidence you have heard, you are

6  satisfied of the defendant's guilt beyond a reasonable doubt,

7  you should vote to convict.

8      Under your oaths as jurors, you are not permitted to

9  consider the question of punishment that the defendant might

10  receive if he is convicted.  It is my duty and my duty alone

11  to determine an appropriate sentence.  It is your job to weigh

12  the evidence in the case and to determine whether the

13  defendant is guilty beyond a reasonable doubt, based solely on

14  the evidence.

15      I am now going to talk to you about what evidence is

16  and how you should consider it.

17      You must determine the facts in this case based only

18  on the evidence that was presented and on the inferences that

19  you can reasonably draw from that evidence.

20      The evidence consists of the testimony of the

21  witnesses on direct and cross examination, that's the question

22  plus the answer, the physical exhibits that came into

23  evidence, and stipulations between the parties.  A

24  stipulation, I think as I have told you before, is an

25  agreement between the parties that certain facts are true.

1    You should regard those agreed upon facts as true.

2              There are some things that are not evidence, and you

3    should disregard them when you are deciding what the facts are

4    in this case.  First, the arguments and statements by the

5    lawyers at any point during the trial, but including their

6    opening statements and the summations, those are not evidence.

7    If anything that they said about the evidence and the -- at

8    any point during the trial, the openings, the closings, if

9    that conflicts with your recollection of the evidence, it is

10   your recollection of the evidence that controls.

11             The second thing, questions that a lawyer puts to a

12   witness are not evidence.  And as I said before, I think I may

13   have asked a few questions of some of the witnesses, and I am

14   going to remind you again, that that doesn't mean I have an

15   opinion about the case.  If I asked a question, it was either

16   to make something clear because I didn't understand it, or to

17   move the trial along.  Don't attach any significance to the

18   questions that I ask.  As I said before, you must not consider

19   anything that I've said or done during the course of the trial

20   in determining whether the defendant is guilty or not guilty

21   of any of these charges.  I don't have anything view about the

22   defendant's guilt or innocence.  It is your job to determine

23   the facts.  It is not mine.

24             The third rule to keep in mind, objections to the

25   questions or exhibits are also not evidence.  Statements, if

JURY CHARGE                    2138

1  somebody made a statement while they made an objection, that's

2  not evidence either.  I told you I think when you were

3  selected that the attorneys have the right and the duty to

4  object and ask for a sidebar conference if they believe that

5  evidence shouldn't be received.  But don't be influenced by

6  any objections or by any of my rulings on the objections.  If

7  I sustained an objection, ignore the question.  If I overruled

8  an objection, treat the answer just like any other answer.

9        Any testimony that I've stricken from the record and

10  told you to disregard is not evidence.  And the last thing,

11  anything that you might have heard or seen outside of the

12  courtroom is not evidence.  I told you when you were selected

13  that you must base your verdict only on the evidence that's

14  presented at the trial or the lack of the evidence.  I have

15  directed you not to read any articles or watch any television

16  or listen to the radio, to the extent there's been any news

17  about the case that.  That instruction continues now, and it

18  will continue until the end of the case until after you have

19  rendered your verdict.

20        There was some evidence that was received for a

21  limited purpose only.  When that evidence was received, I

22  instructed you that you could only consider it for a limited

23  purpose.  I remind you that you must continue to follow that

24  limiting instruction, and you can't consider the evidence that

25  I permitted for any other purpose or to prove an other issue.

1        I gave you an instruction about conduct that

2   occurred before the time period that's charged in the

3   indictment.

4        The indictment charges the defendant with crimes

5   that are based on conduct and events that occurred between

6   2010 and 2016.

7        I told you that you would hear evidence about

8   conduct and evidence that took place before that time, before

9   2010, and that you could consider that evidence as direct

10  evidence of the forced labor conspiracy and of the defendant's

11  intent, planning, and knowledge of the forced labor

12  conspiracy.  And you could also consider that evidence as

13  relevant background information about the conspiracy.

14  However, in order to find the defendant guilty of any of the

15  charged crimes, you have to remember that the government must

16  prove beyond a reasonable doubt that the defendant committed

17  the alleged crimes during the time period that's charged in

18  the indictment.

19       Now, there are generally speaking two kinds of

20  evidence.  There's direct evidence and there's circumstantial

21  evidence.  You can use both types in reaching your verdict in

22  this case.  Direct evidence is testimony from a witness about

23  something that she knows from her own senses.  Something she

24  saw, something she felt, something she heard, tasted.  Things

25  like that.

1              The other kind of evidence, circumstantial evidence,

2      is proof of a chain of circumstances that point to the

3      existence or nonexistence of certain facts.  And there's a

4      very simple example of circumstantial evidence.

5              Let's say that you came to court one day when the

6      weather was clear and sunny and dry.  You sit in this

7      windowless room all day, and then you see someone coming in

8      with a wet umbrella, or a wet raincoat, someone's shaking the

9      umbrella.  Of course you can't look outside the courtroom,

10     because there are no windows, and determine whether or not it

11     is raining.  So you have no direct evidence that it is

12     raining.

13             But on the combination of facts that I described for

14     you, it would be reasonable and logical for you to infer from

15     those circumstances, the wet coat and the dripping umbrella,

16     that while you were sitting here in court, that it rained

17     outside.

18             That is really all there is to circumstantial

19     evidence.  On the basis of reason, experience, and common

20     sense, you may infer the existence or nonexistence of a fact

21     from one or more established facts.

22             Inferences are deductions or conclusions that your

23     reason and your common sense lead you to draw from the facts

24     that were established from the evidence.  Use your common

25     sense in drawing inferences.  An inference is not a suspicion

1    or a guess.  It is a reasoned, logical decision to conclude

2    that a disputed fact exists -- a disputed fact exists on the

3    basis of another fact that you know exists, just like that

4    rain example.

5              So while you're considering the evidence that

6    presented to you, you are permitted to draw reasonable

7    inferences from the proven facts in this trial.  Our law makes

8    no distinction between the weight that you can give to direct

9    evidence or to circumstantial evidence.  One is not better

10   than the other.  You must base your verdict on a reasonable

11   assessment of all of the evidence in the case.  Let me remind

12   you that whether your -- whether it is based on direct or

13   circumstantial evidence or upon logical, reasonable inferences

14   that are drawn from the evidence, you must be convinced of the

15   defendant's guilt beyond a reasonable doubt before you can

16   convict.

17             The government has presented exhibits in the form of

18   charts and summaries.  These were shown to you in order to

19   save some time, to make evidence more meaningful, and to

20   assist you in considering the evidence.  It is up to you to

21   decide whether the charts or summaries correctly present the

22   information that's contained in the testimony and in the

23   exhibits on which those charts and summaries are based.

24   Because those charts and summaries were admitted into

25   evidence, you may consider them as evidence, but you are to

1    give them no greater consideration than you would give to the

2    evidence on which they are based.

3              During the trial, you heard from some witnesses who

4    testified in Mandarin and whose testimony was simultaneously

5    translated into English.  There were also documents that were

6    partially or entirely written in Chinese, and you were given

7    English translations of those documents.  The interpreters

8    translated the witnesses' testimony, and the parties agreed on

9    the English translations of the documents and records.

10   Chinese to English translations of that evidence have been

11   admitted into evidence.  All jurors have to consider the same

12   evidence, so if anybody speaks Mandarin or reads Mandarin, you

13   must base your decision on the evidence that's presented in

14   the English translation.

15             I am going to talk to you now about evaluating the

16   witnesses and the witnesses' credibility.  You are the sole

17   judges of the witnesses' and the weight that their testimony

18   deserves.  There is no magical formula for determining whether

19   a witness is credible.  You all make these decisions in your

20   own lives, and the standards that you use in your own lives to

21   determine whether you believe something that someone is

22   telling you are the staple standards that you should use here.

23   Your determination of credibility depends on the impression

24   that the witness made upon you as to whether that witness was

25   telling the truth or giving you an accurate version of events.

1    You should be guided by your common sense.

2              In making your decision about credibility, you can

3    take into account any number of factors.  I am going to

4    suggest a few for you:  The witness' opportunity to see, hear,

5    and know about the events that the witness described; the

6    witness' ability to recall and describe those things

7    accurately; the witness' manner of testifying.  Was the

8    witness candid and forthright, or did he seem to be hiding

9    something; was the witness evasive or suspect in some way; how

10   did the witness' testimony on direct examination compare with

11   her testimony on cross examination; the reasonableness of the

12   witness' testimony in light of all the other evidence in the

13   case; whether the witness had any possible bias, any

14   relationship to the government or the defendant, any loyalty

15   or any motive to shade the truth, or any possible interest in

16   the outcome of the trial, and whether the witness' testimony

17   was contradicted by his other testimony, by what the witness

18   said or did on another occasion, by other witness' testimony,

19   or by other evidence.

20             Now, inconsistencies and discrepancies in a witness'

21   testimony or between the testimony of different witnesses, may

22   or may not cause you to discredit the witness' testimony.  If

23   there is a discrepancy, or an inconsistency, you should

24   consider whether it relates to something that's important or

25   whether it is unimportant, whether the discrepancy or the

1    mistake was intentional, or whether it was the result of an

2    innocent mistake, and you should also consider whether there's

3    a common sense explanation for the inconsistency.  If you

4    determine that a witness has purposely lied to you, that's

5    important, and you should consider it seriously.

6            A witness' testimony may be discredited or impeached

7    by showing that the witness previously said something

8    inconsistent with the witness' testimony in front of you.  It

9    is your job to determine the weight, if any, to be given to

10   all or part of the testimony of a witness who's been impeached

11   by prior inconsistent statements.

12           If you find that a witness has made an inconsistent

13   statement, you can consider that fact in your assessment of

14   the witness' credibility.  You can consider whether you

15   believe the witness or accept the witness' testimony in light

16   of the prior inconsistent statement.  Again, in making this

17   determination, you should consider the importance of the

18   subject matter of this statement.  If you find that the matter

19   is relatively unimportant, you may decide not to attach much

20   significance to the inconsistency.  If you find that the

21   matter is important, you may decide that it casts substantial

22   doubt on the witness' credibility.

23           If you find that a witness' statement on the stand

24   is false in whole or in part, you can disregard the particular

25   part that you find to be false, or you can disregard the

1    witness' entire testimony.

2            You heard expert witness testimony from Luis

3    De Baca.  He testified as an expert in human trafficking and

4    forced labor.  An expert witness, I think as I told you at the

5    time that he testified, is allowed to express an opinion on

6    matters about which the witness has special knowledge or

7    training.  Ordinarily, the rules of evidence don't permit

8    witnesses to testify about their conclusions or their

9    opinions, but experts are the exception to this rule.  If

10   specialized knowledge will help you as jurors understand the

11   evidence or decide a disputed fact, a witness qualified as an

12   expert by knowledge, skill, experience, training, or education

13   may testify about that evidence or facts in the form of an

14   opinion.

15           You should consider the expert testimony you heard

16   in this case and give it the weight that you think it

17   deserves.  If you think that the witness' opinion is not based

18   on enough education or experience, or that the reasons that

19   supported the opinion are not sound, or that the expert's

20   opinion is outweighed by other evidence, you can disregard the

21   opinion in its entirety.

22           In short, the expert witness is the same as any

23   other witness.  You should consider his qualification,

24   experience, any interest he might have in the outcome of the

25   case, his reason for testifying, his demeanor, and all of

1    those other factors that you consider in assessing a witness'

2    credibility.  You shouldn't accept the testimony of an expert

3    just because he is an expert, or merely because I allowed the

4    witness to testify about his opinion, nor should you

5    substitute it for your own reason, judgment, and common sense.

6    The determination of the facts rest entirely with you.

7             You also have heard from some law enforcement

8    witnesses.  You should evaluate these witnesses in the same

9    way that you evaluate the testimony of other witnesses -- of

10   any other witness.  The fact that a witness is a law

11   enforcement agent does not mean that you should give that

12   witness' testimony any more or less consideration than any

13   other witness.  You should use all of those tests of

14   credibility that we just talked about to evaluate the law

15   enforcement witness' testimony.  It is up to you to decide,

16   after you review the evidence, whether to accept the testimony

17   of law enforcement witnesses and to give it the weight that

18   you believe it deserves.

19            You also heard testimony from two informant

20   witnesses, Ray Tan and Ken Wang.  Informants are witnesses

21   whom the government paid for information about a defendant.

22   Sometimes the government uses informants who may conceal their

23   true identities in order to investigate suspected violations

24   of the law.  There is nothing improper or illegal in the

25   government using these techniques.  Indeed, it would be

1    extremely difficult to find certain kinds of evidence without

2    informants.  Whether or not you approve of using an informant

3    to defect unlawful activity is not to enter into your

4    deliberations in any way.

5            The defendant did not testify in this case.  Under

6    our constitution, the defendant in a criminal case never has

7    any duty to testify or to come forward with evidence.  This is

8    because the burden of proof remains on the government at all

9    times and the defendant is presumed innocent.  A defendant is

10   never required to prove that he is innocent.  You may not

11   attach any significance to the fact that the defendant did not

12   testify.  You may not draw any inference against the defendant

13   because he did not testify.  You may not consider this against

14   the defendant in any way during your deliberations in the jury

15   room.

16           During the trial, counsel read stipulations about

17   what three witnesses would have said had they testified before

18   you in person.  These witnesses were not under oath.  The

19   government and defendant have agreed about what the testimony

20   of these witnesses would be if they had been called as

21   witnesses at trial.  The government and the defendant have not

22   agreed, however, that the stipulation is true or correct.

23   They have just agreed about the -- what the witnesses would

24   have said had they testified.

25           During the course of the trial, you heard testimony

JURY CHARGE                                        2148

1    that the lawyers for both parties interviewed witnesses when

2    prepping for trial.  You must not draw any unfavorable

3    inference from that fact.  On the contrary, lawyers are

4    obligated to prepare for their case as thoroughly as possible,

5    and in the discharge of that responsibility properly interview

6    witnesses in preparation for trial.

7            Now, as I will explain to you in the next portion of

8    the charge, some of the charges against the defendant allege

9    that he conspired to violate certain federal laws.  Because of

10   that, I have admitted into evidence certain acts and

11   statements of other people whom the government alleges were

12   coconspirators of the defendant.

13           The reason that we allow this evidence has to do

14   with the nature of the crime of conspiracy, as I said, I will

15   explain to you shortly.  A conspiracy is often referred to as

16   a partnership in crime.  Thus, as in other types of

17   partnerships, when people enter into conspiracy to do

18   something illegal, they each become an agent for the other

19   conspirators in carrying out the conspiracy.

20           Accordingly, the reasonably foreseeable acts,

21   declarations, and statements of any member of the conspiracy

22   and in furtherance of the purpose of the conspiracy, are

23   deemed to be the acts of all of the members and all of the

24   members of the conspiracy are responsible for each other acts,

25   declarations, and statements.  Thus, if you find beyond a

1   reasonable doubt that the defendant was a member of a criminal

2   conspiracy charged, then you may also consider any of the

3   actions or statements of the people that you find to be

4   members of that conspiracy.  This is the case even if those

5   actions or statements were made when the defendant wasn't

6   there and without his knowledge.

7           However, before you may consider the statements or

8   acts of a coconspiracy in evaluating the defendant's guilt or

9   innocence, you must first determine that the act and

10  statements were made during the existence and in furtherance

11  of the unlawful scheme.  If the acts were done or the

12  statements were made by somebody who was not a member of the

13  conspiracy, or if they were not done or said in furtherance of

14  that conspiracy, you may not consider them as evidence against

15  the defendant.

16          You have heard evidence about the involvement of

17  certain other people in the activities that are referred to in

18  the indictment.  You may not draw any inference, favorable or

19  unfavorable, to the government or the defendant from the fact

20  that those people are not on trial before you.  You should not

21  speculate about why these people are not on trial before you,

22  and you should not allow their absence to influence you in any

23  way or influence your deliberations in this case.  Your

24  concern is solely with the defendant who is on trial before

25  you.

1          The law does not require either party to call as

2    witnesses every person who might have been present at the time

3    or place involved in the case or who may appear to have some

4    knowledge of the issue at trial.  Nor does the law require any

5    party to produce all papers and things that are mentioned

6    during the course of the trial and to introduce them into the

7    evidence.

8          Both the government and the defense have the same

9    power to subpoena witnesses to testify on their behalf.  You

10   should remember that there is no side has a duty to call a

11   witness whose testimony would be cumulative of testimony

12   that's already in evidence, or who would just provide

13   additional testimony about facts that are already in evidence.

14   I'm reminding you that the defendant has no obligation to

15   present any evidence at all.  Only the government has the

16   burden of proof.

17         Although the government does bear the burden of

18   proof, and although a reasonable doubt can arise from the lack

19   of evidence, the law does not require that law enforcement

20   authorities use any particular investigative techniques to

21   uncover or prosecute crime.  Law enforcement techniques are

22   not your concern.  Your concern is to determine whether, based

23   upon all the evidence that's been presented in the case, the

24   government has proven the defendant's guilt beyond a

25   reasonable doubt.

JURY CHARGE                          2151

1      During the trial you did hear evidence about a

2  variety of investigative techniques and methods of collecting

3  evidence.  I instruct you that any evidence that was presented

4  to you was obtained legally and you can consider it.  The

5  methods used to collect evidence or to investigate should not

6  enter into your deliberations in any respect.

7      So now we are on the second part of the charge.

8  We're moving along well.

9      All right.  There are five -- I am going to explain

10 to you what the elements of each of the crimes are that's

11 charged in the indictment, and these are elements that the

12 government must prove beyond a reasonable doubt.

13     The indictment contains five different counts, and

14 you'll be called upon to render a separate verdict as to each

15 count.  Each count charges the defendant with a different

16 crime.  You must consider those -- each count separately and

17 return a separate verdict of guilty or not guilty for each of

18 the counts.  Whether you find the defendant guilty or not

19 guilty of one offense should not affect your verdict as to any

20 other offense that's charged.

21     So we're going to start with the indictment and what

22 each count charges.  And then I am going to explain to you the

23 law regarding each count.

24     So first we'll start with a summary of what those

25 counts are.

JURY CHARGE                                    2152

1          Count 1 charges the defendant with participating in

2     a conspiracy to provide or obtain forced labor and to benefit

3     from forced labor.

4          Count 2 charges the defendant with providing or

5     obtaining forced labor and benefiting from forced labor.

6          Count 3 charges the defendant with withholding

7     passports in connection with the commission of a forced labor

8     offense.

9          Count 4 charges the defendant with participating in

10    a conspiracy to smuggle aliens for purpose of financial gain.

11         Count 5 charges the defendant with participating in

12    a visa fraud conspiracy.

13         You have to come to a verdict on each of these five

14    counts.  In your deliberations, you should refer to the text

15    of the indictment, which I will read to you now.

16         Count 1 of the indictment charges that in or about

17    and between January 2010 and November 2016, both dates being

18    approximate and inclusive, within the Eastern District of New

19    York and elsewhere, the defendant, Dan Zhong, together with

20    others, did knowingly and intentionally conspire to, one,

21    provide and obtain the labor and services of one or more

22    persons by means of, (a), physical restraint, (b), serious

23    harm and threats of serious harm to such persons and other

24    persons, (c), the abuse and threatened abuse of law and legal

25    process, (d), a scheme, plan, and pattern intended to cause

JURY CHARGE                                          2153

1    such persons to believe that if they did not perform such

2    labor and services, they would suffer serious harm and

3    physical restraint, contrary to the Title 18, United States

4    Code, Section 1589(a), and, (2), benefit, financially and by

5    receiving one or more things of value from participation in a

6    venture that engaged in such acts, knowing and in reckless

7    disregard of the fact that such venture had engaged in

8    providing and obtaining labor and services by any such means,

9    contrary to Title 18, United States Code, Section 1589(b).

10            Count 2 of the indictment charges that in or about

11   and between January 2010 and November 2016, both dates being

12   approximate and inclusive, within the Eastern District of New

13   York and elsewhere, the defendant Dan Zhong, together with

14   others, did knowingly and intentionally provide and obtain the

15   labor and services of one or more persons by means of physical

16   restraint, serious harm and threats of serious harm to such

17   persons and other persons, the abuse and threatened abuse of

18   law and legal process, and a scheme, plan, and pattern

19   intended to cause such persons to believe that if they did not

20   perform such labor and services, they would suffer serious

21   harm and physical restraint and benefit financially and by

22   receiving one or more things of value from participation in a

23   venture that engaged in such acts, knowing and in reckless

24   disregard of the fact that such venture had engaged in the

25   providing and obtaining of labor and services by any such

1   means.

2           Count 3 of the indictment provides in or about and

3   between January 2010 and November 2016, both dates being

4   approximate and inclusive, within the Eastern District of New

5   York and elsewhere, the defendant Dan Zhong, together with

6   others, did knowingly and intentionally conceal, remove,

7   confiscate, and possess one or more actual and purported

8   passports and other immigration documents of one or more

9   persons in the course of one or more violations of Title 18,

10  United States Code, Section 1589 and Title 18, United States

11  Code, Section 1594(a), with intent to violate Title 18, United

12  States Code, Section 1589, and, to prevent and restrict and to

13  attempt to prevent and restrict without lawful authority one

14  or more persons' liberty to move and travel in order to

15  maintain the labor and services of such persons when such

16  persons were and had been victims of a severe form of

17  trafficking in persons, as defined in section 103 of the

18  Trafficking Victims Protection Act of 2000, to wit, the

19  requirement, harboring, transportation, provision and

20  obtaining of one or more persons for labor and services

21  through the use of force and coercion for the purpose of

22  subjection to debt bondage.

23          Count 4 charges that in or about and between January

24  2010 and November 2016, both dates being approximate and

25  inclusive, within the Eastern District of New York and

1  elsewhere, the defendant Dan Zhong, together with others,

2  knowingly and in reckless disregard of the fact that one or

3  more aliens had remained in the United States in violation of

4  law, did knowingly and intentionally conspire to transport and

5  move such aliens within the United States by means of

6  transportation, in furtherance of such violation of the law

7  and for the purpose of commercial advantage and private

8  financial gain, contrary to Title 8, United States Code,

9  Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i).

10

11                  (Continued on the next page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  (Cont'g.)  The last count of the

2   indictment charges:

3          That in or about and between January 2010 and

4   November 2016, both dates being approximate and inclusive,

5   within the Eastern District of New York and elsewhere, the

6   defendant, Dan Zhong, together with others, did knowingly and

7   intentionally conspire to utter, use, attempt to use, possess,

8   obtain, accept and receive one or more documents prescribed by

9   statute or regulation for entry into, and as evidence of

10  authorized stay and employment in the United States, knowing

11  those documents to have been procured by means or one of or

12  more false claims and statements and otherwise procured by

13  fraud and unlawfully obtained, contrary to Title 18, United

14  States Code Section 1546(a).

15         Now this count also included the following overt

16  acts.  The first one is that:

17         On or about December 10, 2014, Landong Wang sent an

18  electronic communication to Dan Zhong in which Wang sought

19  Zhong's assistance to arrange for workers to enter the United

20  States from the People's Republic of China to perform work

21  contrary to the terms of their United States visas.

22         In or about June 2015, Zhong and Landong Wang caused

23  workers to provide contracting work at a residence in Old

24  Brookville, New York, contrary to the terms of their United

25  States visas.

1           The third overt act:

2           In or about August 2015, Zhong sent an electronic

3    communication to an accessory -- excuse me one second.  I

4    think I have a typo.

5           Thank you so much.

6           Okay, all right I'm just going to start that one

7    over.  This is the third overt act.

8           In or about August 2015, Zhong sent an electronic

9    communication to Ying Randi Lin concerning of use of workers

10   to provide labor in the United States, contrary to the terms

11   of the United States visas at a residence in Old Brookville,

12   New York.

13          The fourth overt act:

14          In or about September 2015, Zhong and -- sorry --

15   Zhong and Ying Randi Lin exchanged electronic communications

16   concerning the use of workers to provide contracting work at a

17   residence in Flushing, New York, contrary to the terms of

18   their United States visas.

19          In or about October 2015, Zhong and Landong Wang

20   caused workers to provide contracting work at a residence in

21   Fresh Meadows, New York, contrary to the terms of their United

22   States visas.

23          And finally:  In or about 2015, Landong Wang

24   possessed workers' passports and visas at a residence in Flesh

25   Meadows, New York.

1          All right, so those are the counts in the

2     indictment.

3          One of the things that you'll notice is that the

4     indictment charges that conduct occurred on or about certain

5     dates.  The government does not have to establish the exact

6     date of an alleged offense.  It is enough if the evidence

7     establishes beyond a reasonable doubt that an offense was

8     committed on a date that's reasonably near the dates that are

9     alleged in the indictment.

10         Venue refers to the location of the charged crimes.

11    Each count of the indictment alleges that the crime charged

12    occurred in whole or in part in this judicial district, which

13    is the Eastern District of New York.  This district includes

14    Brooklyn, Queens, Staten Island, Nassau and Suffolk counties

15    on Long Island.  To establish a venue for a crime in this

16    district, the government must prove that some act in

17    furtherance of the crime happened in the Eastern District.

18         Now, during these instructions you're going to hear

19    me use the words "knowingly" and "intentionally".  I will

20    define those terms for you before I talk about the individual

21    charges.

22         A person acts knowingly if he acts purposely and

23    voluntarily, and not because of a mistake, accident, or other

24    innocent reason.  Whether the defendant acted knowingly may be

25    proved by the defendant's conduct and by all of the facts and

1    circumstances surrounding the case.

2           A person acts intentionally when he acts

3    deliberately and purposely.  To be intentional, the

4    defendant's acts must have been the product of his conscious

5    objective decisions rather than the product of a mistake or

6    accident.  You may infer that a person ordinarily intends all

7    of the natural and probable consequences of an act that is

8    done knowingly.

9           A person does not have to be aware of the specific

10   law or rule that his conduct might be violating, but he must

11   act with the specific intent do whatever it is that the law

12   forbids.

13          You will also hear the phrase "reckless disregard"

14   in some of the counts of the indictment.  Reckless disregard

15   means to be aware of, but consciously and carelessly ignore

16   facts and circumstances.  I'll explain what that phrase means

17   when I instruct you on the crimes that contain that phrase.

18          These issues about knowledge, intent and reckless

19   disregard require you to make a determination about the

20   defendant's state of mind, which is something that can rarely

21   be proved directly.  A wise and careful consideration of all

22   the circumstances shown by the evidence and the exhibits in

23   this case may permit you to make the determination about the

24   defendant's state of mind.  Indeed, experience has taught that

25   frequently actions speak louder and more clearly than words,

1   and in your everyday affairs, you are frequently called upon

2   to determine a person's state of mind from his words and

3   actions in a given set of circumstances.  That's what you're

4   being asked to do here.

5           Now I'm going to explain the charges against the

6   defendant in a different order than the indictment.  I'm going

7   to start with Counts Two and Three.  Those charge the

8   defendant with forced labor and concealing passports and

9   immigration documents in connection with forced labor.  After

10  I instruct you on Counts Two and Three, I'll define the two

11  additional ways, other than the defendant personally

12  committing the crimes charged in Count Two and Three.  That

13  the government can prove the defendant's guilt of the crimes

14  charged in Counts Two and Three.

15          Give me just a minute again.

16          All right.  So the other thing I want to talk to you

17  about is aiding and abetting.

18          In addition to charging the defendant with forced

19  labor and conspiracy to conceal immigration documents, the

20  government has charged the defendant with aiding and abetting

21  each of those crimes.  So that means the defendant is charged

22  with aiding and abetting the crimes charged in Counts Two and

23  Three.

24          So that means that the defendant's charged with

25  aiding and abetting the crimes that are charged in counts Two

1    and Three.

2            The relevant statute provide this:

3            Whoever commits an offense against the United

4    States, or aid or abets, or counsels, commands, induces or

5    procures its commission, is punishable as a principal; and

6    whoever wilfully causes an act to be done, which if directly

7    performed by him, would be an offense against the United

8    States is punishable as a principal.

9            Under a theory of aiding and abetting, it is not

10   necessary that the government prove that the defendant himself

11   physically committed the crimes of forced labor or concealing

12   immigration documents.  A person who aids or abets in order to

13   commit a crime is just as guilty of that crime as if he

14   committed it himself.  Accordingly, you may find the defendant

15   guilty of the crimes that are charged in Counts Two or Three,

16   which I am going to define for you, if you find that the

17   government proved beyond a reasonable doubt that another

18   person committed those crimes, and that the defendant aided or

19   abetted that person committing those crimes.

20           The first requirement that the government has to

21   prove that another person committed the act or crimes charged.

22   Nobody can be convicted of aiding or abetting the criminal

23   acts of another person if no crime was committed in the first

24   place.  If you do find that a crime was committed, then you

25   have to consider whether the defendant aided or abetted the

1   commission of that crime.

2           In order to be an aider or an abettor, it is

3   necessary that the defendant knowingly associated himself in

4   some way with the crime, and that he knowingly tried to help

5   make the crime succeed with some action.

6           To establish that the defendant knowingly associated

7   himself with crimes charged in Count Two and Three, the

8   government must prove beyond a reasonable doubt that the

9   defendant knew that the crime was being committed.  To

10  establish that the defendant participated in the commission of

11  a crime, the government must also prove that the defendant

12  engaged in some affirmative conduct or overt act in order to

13  accomplish that crime.  It is not sufficient for the

14  government to show that the defendant was present where a

15  crime was committed, that he knew a crime was committed, or

16  merely associated with other people who committed the crime.

17  They must show that the defendant took some action that was

18  intended to help accomplish the crime.

19          Similarly, someone who has no knowledge that a crime

20  is being committed, or is about to be committed but

21  inadvertently does something that aids in the commission of

22  the crime, is not an aider and an abettor; both knowledge and

23  action are required.  An aider and abettor must know -- an

24  aider and an abettor must know that the crime is being

25  committed and act in a way that is intended to accomplish the

JURY CHARGE                                    2163

1   crime.

2          To determine whether the defendant aided and abetted

3   the crimes that are charged in Count Two Or Three, ask

4   yourself these questions:

5          Did he participate and intend to participate in the

6   crime?

7          Did he knowingly associate himself with the criminal

8   venture?

9          Did he act in a way that was intended to help

10  accomplish the crime?

11         If you find that the defendant in each of these

12  three things, the defendant would be an aider and abettor and,

13  therefore, guilty of the offense.  On other hand if your

14  answer to these questions is "no", then the defendant would

15  not be an aider and abettor and you must find him not guilty

16  under that theory.

17         The second concept that you should have -- the

18  second way that you should evaluate the defendant's guilt or

19  possible guilt for Counts Two and Three -- and Count Two is

20  providing and obtaining forced labor, and Count Three is

21  concealing or withholding passports in connection with forced

22  labor -- even if you do not find that the defendant personally

23  committed all of the acts that constitute the element of those

24  counts.

25         If you find beyond a reasonable doubt that the

1   defendant was a member of a conspiracy that's charged in Count

2   One, which I'm also going to charge you on, you may also but

3   are not required to find the defendant guilt of the

4   substantive crimes that are charged in Counts Two and Three

5   if, you find beyond a reasonable doubt, each of the following

6   elements:

7           First, that the crime charged in Count Two Or Three

8   was committed.

9           Second, that the person or persons that you find

10  actually committed the crime were members of the conspiracy

11  that you decided existed.

12          Third, that the substantive crime was committed

13  pursuant to the common plan and understanding among the

14  conspirators.

15          Fourth, that the defendant was a member of the

16  conspiracy at the time the crime was committed.

17          And fifth, that the defendant could have reasonably

18  foreseen that the substantive crime might be committed by his

19  coconspirators.

20          If you find all five of these elements to exist

21  beyond a reasonable doubt, then you may find the defendant

22  guilty of the substantive crime that you're considering, even

23  though he didn't personally participate in the crime or have

24  knowledge of every aspect of it.  The reason for this the rule

25  is simply that a coconspirator who commits a substantive crime

1    pursuant to a conspiracy is deemed to act on behalf of all of

2    the other conspirators; therefore, all coconspirators bear

3    criminal responsibility for the substantive crimes within

4    their conspiracy.  If you are not satisfied about any of these

5    five elements, then you may not find the defendant guilty of

6    the substantive crimes in Counts Two Or Three, unless the

7    government proves beyond a reasonable doubt that the defendant

8    personally committed or aided and abetted in the commission of

9    the substantive crime.

10          So now we'll turn to Count Two, that I told you I'm

11   going out of order, because I think it makes a little more

12   sense.

13          All right, I think easier to understand the law that

14   applies if I talk to you about the substantive counts that

15   are -- the substantive charges that are in Counts Two Or

16   Three, and then explain Count One, which charges the defendant

17   with conspiracy to commit forced labor.

18          Count Two charges the defendant with forced labor

19   and is the substantive charge for Count One.  Count One

20   alleges the conspiracy to commit forced labor while Count Two

21   alleges what we call a substantive forced labor charge.

22          The forced labor statute, which is Title 18, United

23   States, Code Section 1589, provides in relevant part:

24          Whoever knowingly provides or obtains the labor or

25   services of a person by any one of the, or by any combination

JURY CHARGE                                    2166

1     of following means:

2              1, by means of physical restraint against that

3     person or another person;

4              By means of serious harm or threats of serious harm

5     to that person or another person;

6              By the means of the abuse or threatened abuse of law

7     or legal process;

8              By means of any scheme, plan, or pattern intended to

9     cause the person to believe that if such person did not

10    perform such labor and services, that person or another person

11    would suffer serious harm or physical restraint has committed

12    a crime.

13             B, whoever knowingly benefits, financially or by

14    receiving anything of value from participating in a venture

15    which has engaged in the providing or obtaining of labor or

16    services by any of the means described in subsection (a),

17    knowingly or in reckless disregard of the fact that the

18    venture has engaged in the providing or obtaining of labor or

19    service the by any such means has committed a crime.

20             Count Two charges, as I told you before, that the

21    defendant committed forced labor in two different ways:

22             By knowingly providing or obtaining services --

23    sorry.  By knowingly providing or obtaining labor or services

24    by prohibited means, or by knowingly benefiting from

25    participating in a venture that he knew or recklessly

1   disregarded was engaged in providing or obtaining forced labor

2   services or services by prohibited means.

3           I'm going to explain both of these theories of

4   forced labor.

5           The first theory on forced labor.

6           Under the first theory, in order to find a defendant

7   guilty, you must find that the government has proven each of

8   the following three elements beyond a reasonable doubt.

9           First, that the defendant obtained the labor or

10  services of another person;

11          Second, that the defendant did so through one of the

12  following prohibited means;

13          A, through physical restraint against a person or

14  another person;

15          B, through serious harm or threats of serious harm

16  to the person or any other person;

17          Through abuse or threatened abuse of law or legal

18  process or -- that was C;

19          And then D, through a scheme, plan, pattern intended

20  to cause the person to believe that if he did not perform such

21  labor or services, could result in serious harm to or physical

22  restraint against that person or any other person and;

23          Third, that the defendant acted knowingly.

24          The first element:  Obtaining labor or services.

25          In considering this first element, you must decide

1    whether the defendant obtained the labor or services of

2    another person.  The term "obtain" means gain or acquire.

3    "Labor" means the expenditure of physical or mental effort.

4    "Services" means conduct or performance that assists or

5    benefits someone.  If you find that the government has proven

6    beyond a reasonable doubt that the defendant obtained the

7    labor or services of another person, then the first element

8    has been satisfied.

9            The second element is prohibited means.

10           If you find that the defendant obtained the labor or

11   services of the alleged victims, then you must determine

12   whether the defendant did so through one of the four

13   prohibited means; that is, through (1), forced or physical

14   restraint or threatening to do either to the person or to

15   another person, (2), serious harm or threats of serious harm

16   to the person or another person, (3), abuse or threatened

17   abuse of the law or legal process, or (4), a scheme, plan, or

18   pattern intended to cause the person to believe that serious

19   harm would result if he did not perform the labor or services

20   required of him.  Before you can find that the second element

21   has been satisfied, you must find beyond a reasonable doubt

22   that one of those prohibited means that I just talked to you

23   about was used to obtain the alleged victim's labor or

24   services.

25           I'm going to define for you some of the terms that

JURY CHARGE                                2169

1    you will consider in determining whether this second element

2    of Count Two has been satisfied.

3            "Physical restraint".  That means being confined by

4    being tied, bound, or locked up.

5            A "threat" is a serious statement expressing an

6    intention to inflict harm, at once or in the future, and which

7    is different from idle or careless talk exaggeration or

8    something that is said in a joking manner.  For a statement to

9    be a threat, the statement must have been made under such

10   circumstances that a reasonable person who heard or read the

11   statement would understand it as a serious expression of an

12   intent to cause harm.  In addition, the statement must have

13   been made with the intent that it be a threat, or with the

14   knowledge that the statement would be viewed as a threat.

15           The term "serious harm" includes both physical and

16   nonphysical types of harm.  It can include psychological,

17   financial, or reputational harm.  Therefore, a threat of

18   serious harm does not have to involve any threat of physical

19   convenience.  However, the threats must have serious enough

20   that, considering all of the surrounding circumstances, a

21   reasonable person of the same background and in the same

22   circumstances as the alleged victim would perform or continue

23   performing labor that the victim would otherwise not have

24   willing performed in order to avoid the harm.

25           It is for you to determine whether any statements

1    made or threats, as I just defined them, in considering

2    whether a threat of harm is sufficient to compel or coerce an

3    alleged victim's services, you may consider the totality of a

4    defendant's conduct as well as the victim's age, background or

5    circumstances that were known to the defendant and would make

6    the victim -- the alleged victim especially vulnerable to

7    pressure.

8            You may consider overt threats that the defendant

9    might have made to place the alleged victims in fear.  You may

10   also consider, if you do so find, other surrounding

11   circumstances, such as verbal abuse and insults, isolation,

12   poor working and living conditions, denial of adequate rest,

13   food and medical care, pay withholding, or any combination of

14   these conditions and any other techniques that you find that

15   the defendant might have used to intimidate victims and compel

16   them to work.  If you find that any of the four prohibited

17   means that I mentioned earlier was used, you must then

18   determine whether their use caused any victim reasonably to

19   believe that he had no choice but to work or remain working

20   for the defendant.

21           The term "abuse or threat end abuse of law or legal

22   process", means the use or threatened use of law or legal

23   process, whether it's administrative, civil or criminal, in

24   any manner or for any purpose for which the law was not

25   designed in order to exert pressure of another person to cause

1    that person to take some action or to refrain from taking

2    action.

3           You should give the words "scheme, plan and pattern"

4    their ordinary meanings.  A "scheme" is a plan or program of

5    action, especially a crafty or secret one.  A "plan" is a

6    method for achieving an end or a detailed formulation of

7    program of actions.  A "pattern" is a mode of behavior or

8    series of acts that are recognizably consistent.

9           A few final things about the second element of

10   forced labor:

11          To prove forced labor, the government does not need

12   to link each of the threats allegedly made or actions

13   allegedly taken against a victim to a particular labor task

14   that that victim performed.  If a victim was threatened with

15   or suffered serious harm or physical restraint, as I've

16   defined them, either as punishment or as part of a climate of

17   fear that overcame his will and compelled his service, that is

18   sufficient to establish the second element of the offense of

19   forced labor.

20          If you find that the victim was threatened with

21   serious harm, the government does not have to prove physical

22   restraint, such as use of chains or locked doors, in order to

23   establish the offense of forced labor.  The fact that a victim

24   might have had the opportunity to escape is irrelevant if the

25   defendant placed the victim in such fear or circumstances that

1   the victim reasonably believed that he could not leave.  A

2   victim who has been placed in such fear or circumstances is

3   under no affirmative duty to try to escape.

4           You may consider any condition that made each victim

5   vulnerable to pressure, as long as you believe that the

6   defendant also knew about it.  You may find that not all

7   people have the same courage or firmness.  You may consider,

8   for example, the background, physical and mental condition,

9   experience, education, socioeconomic status and any

10  inequalities between the victims and the defendant, but only

11  if these conditions were known to the defendant at the time.

12  Simply put, you may ask whether the alleged victims were

13  vulnerable in some way known to the defendant so that the

14  defendant's actions, even if not sufficient to compel another

15  person to work or enough to compel the victims to work.

16          Finally, in considering whether service performed by

17  someone was voluntary, you should keep in mind that it is not

18  the defense to the crime of forced labor that the person might

19  have initially agreed voluntarily to render the services or to

20  perform the work.  If a person willfully begins work but later

21  wants to stop and then is forced to keep working against his

22  will by threats of serious -- serious harm or physical

23  restraint, or by a scheme, plan or pattern intended to cause

24  him to believe that stopping will result in serious harm or

25  physical restraint to him or another person, then the service

JURY CHARGE                                      2173

1    becomes involuntary.

2              Also, the fact that a person is paid a salary or a

3    wage is not determinative of whether that person has been held

4    in forced labor.  In other words, if a person is compelled to

5    labor against his will by any one of the four means I told you

6    about earlier, his labor is involuntary, even if he is paid or

7    compensated for the work.

8              The third element of forced labor is the defendant

9    must have acted knowingly.  I previously instructed you on

10   knowledge and reckless disregard, and those definitions should

11   apply here.

12             A person acts knowingly if he acts voluntarily and

13   intentionally not because of mistake, accident or other

14   innocent reason.  The person does not have to know the

15   specific law that he might be violating, but that person must

16   act with specific intent to do the illegal action.

17             Okay, the second theory on forced labor.

18             Under this theory, you may consider whether the

19   government has proved each of the following three elements

20   beyond a reasonable doubt.

21             First, that the defendant knowingly benefited

22   financially or by receiving anything of value from

23   participating in the venture.

24             Second, that the venture was engaged in providing or

25   obtaining labor or services through any one or any combination

JURY CHARGE                                    2174

1    of the prohibited means that I've previously identified.

2            And third, that the defendant knew or recklessly

3    disregarded the fact that the venture it was engaged in

4    providing or obtaining labor or services by any of the these

5    prohibited means.

6            Under the second theory of forced labor, the

7    government does not need to prove that the defendant himself

8    engaged in providing or obtaining the labor or services of a

9    person.  The government need only prove that there was a

10   venture that engaged in one of the prohibited means, that the

11   defendant knew or recklessly disregarded the fact that the

12   venture was involved in forced labor, and that he knowingly

13   participated in some way and benefited financially or by

14   receiving a thing of value from that venture.

15           How's everybody doing, okay?  Good.  Okay.

16           As to the first element:  A venture is two or more

17   persons associated in fact, whether or not their association

18   forms a legal entity.  It is sufficient to find that the

19   defendant played any role in the venture, even if that role

20   was minor, and even if that role was not related to actually

21   obtaining of person's labor or services.  In order to be found

22   guilty, the defendant needs to have knowingly benefited

23   financially or received something of value from participating

24   in the venture.  I instructed you on the definition of

25   knowingly and you should apply that instruction here.

1        The second element is prohibited means, and I

2   already instructed you on those four prohibited means of

3   providing or obtaining labor or services, and you should apply

4   those instructions here.

5        The third element the government must prove beyond a

6   reasonable doubt that the defendant knew or recklessly

7   disregarded the fact that the venture was providing or

8   obtaining labor or services by any of the prohibited means I

9   previously -- let's see, oh, sorry.  I'm just going to start

10  over again.

11       With regard to the third element, the government

12  must prove beyond a reasonable doubt that the defendant knew

13  or recklessly disregarded the fact that the venture was

14  providing or obtaining labor or services by any of those four

15  prohibited means.  I instructed you on knowledge and reckless

16  disregard, and you should apply those definitions here.

17       So if you find that the government has met its

18  burden of proving beyond a reasonable doubt each of the three

19  elements of forced labor under the second theory, then you

20  will have concluded that defendant committed forced labor.

21  The government does not have to prove both of those theories;

22  however, the government does have to prove every element under

23  either the first theory or every element under the second

24  theory beyond a reasonable doubt in order to prove the

25  defendant's guilt.  If you make this finding, then you should

1   convict the defendant on Count Two.  However, if the

2   government fails to prove any element of a theory beyond a

3   reasonable doubt, then you cannot find the defendant guilty

4   under that theory of forced labor.

5           The third count is concealing passports and

6   immigration documents in connection with forced labor in

7   violation of Title 18, United States Code, Section 1592.

8           The relevant part of the statute provide that:

9           Whoever knowingly destroys, conceals, removes,

10  confiscates or possesses any actual or purported passport or

11  other immigration document or other actual or purported

12  government identification document of another person in the

13  course of a violation of the forced labor statute with intent

14  to violate the forced labor statute, or to prevent or

15  restrict, or attempt to prevent or restrict without lawful

16  authority, the person's liberty to move or travel in order to

17  maintain the labor and services of that person, or the person

18  has been a victim of a severe form of trafficking in persons,

19  has committed a crime.

20          In order to prove a violation of this section, the

21  government must prove the following three elements beyond a

22  reasonable doubt:

23          First, that the defendant concealed, removed,

24  confiscated or possessed an actual or purported passport,

25  visa, or other identification document of another person:

JURY CHARGE                                    2177

1      Second, that the defendant did so in connection with

2 violating the forced labor statute, or with intent to violate

3 the forced labor statute, or unlawfully prevent or restrict,

4 or to attempt or prevent or restrict a person's liberty to

5 move or travel in order to maintain the labor and services of

6 that person, when the person is or has been the victim of a

7 severe form of trafficking in person, and third;

8      That the defendant acted knowingly.  I'm going to

9 give a little bit more detailed discussion of each of those

10 element.

11      The first element that the government must prove

12 beyond a reasonable doubt is that the defendant concealed,

13 removed, confiscated or possessed an actual or purported

14 passport, immigration document, or other government

15 identification document of another person.

16      The word "conceal" means the act of refraining from

17 disclosure or preventing the discovery of the document, or of

18 hiding the document.  To "remove" means to take away or

19 transfer from one place to another.  To "confiscate" means to

20 appropriate or seize the document.  To "possess" means to hold

21 and have actual control of the document.

22      The second element requires that the government

23 prove the defendant engaged in the concealment, removal,

24 confiscation or possession of the document either in the

25 course of violating the forced labor statute; or with intent

1    to commit forced labor, or to prevent or restrict, or attempt

2    to prevent or restrict without lawful authority the person's

3    liberty to move or travel in order to maintain the labor or

4    services of that person when the person is or has been the

5    victim of a severe form of trafficking in person.

6            In other words, the government must prove beyond a

7    reasonable doubt that the defendant did any of these acts

8    while violating the forced labor statute, or with the intent

9    to violate that statute.  When considering whether the

10   defendant concealed, removed, confiscated or possessed the

11   passports in the course of a forced labor event, you should

12   consider the instructions that I gave you previously on the

13   elements of forced labor.  When considering whether the

14   defendant acted with the intent to violate the forced labor

15   statute, I instruct you that the government does not have to

16   proof an actual violation of forced labor statute to prove

17   this element beyond a reasonable doubt.  Even if the defendant

18   does not succeed in committing forced labor, it is enough for

19   the element -- for the second element of Count Three if you

20   find that the defendant acted with the intent to violate the

21   forced labor statute.

22           "A severe form of trafficking in persons," means the

23   recruitment, harboring, transportation, provision or obtaining

24   of a person for labor or services through the use of force,

25   fraud, coercion for the purpose of involuntary servitude,

1    peonage, debt bondage or slavery.

2            "Peonage" means holding a victim in involuntary

3    servitude for the purpose of repaying a debt.  It does not

4    matter if the debt was legally enforceable.

5            "Debt bondage" means the status or condition of a

6    debtor arising from a pledge by the debtor of his personal

7    services or those of a person under his control as security

8    for a debt, if the value of those services as reasonably

9    assessed is not applied toward the liquidation of the debt or

10   the length and nature of those services are not respectively

11   limited and defined.

12           The third and final element of Count Three, is the

13   defendant acted knowingly and intentionally.

14           I've instructed you on these before, but I'm going

15   to remind you of the definitions now.

16           A person acts knowingly if he acts voluntarily and

17   intentionally and not because of negligence, accident or other

18   innocent reason or mistake.  A person acts intentionally if he

19   acts deliberately and purposefully with the specific intent to

20   do something illegal.  The person does not have to know the

21   specific law might that he violating, but the person must act

22   with the specific intent to do the illegal action.

23           In conclusion on Count Three, if you find the

24   defendant has met its burden of proving each of the three

25   elements I just described --

1          MR. CLEARY:  Excuse me, Your Honor, that would be

2     the government.

3          THE COURT:  Oh, my gosh.  Sorry about that.

4          Let's start over again.

5          In conclusion on Count Three, if you find that the

6     government has met its burden of proving each of the three

7     elements that I've just described beyond a reasonable doubt,

8     then you will have concluded that the defendant has committed

9     the crime of concealing passports and information documents in

10    connection with forced labor, and you should find him guilty

11    of this charge.  But if you find that the government fails to

12    prove any of these three elements beyond a reasonable doubt,

13    then you must acquit of defendant of Count Three.

14         I did misspeak, the defendant has no burden of proof

15    at all in this regard.  Slip of tongue.  It's the government

16    that has the burden.

17         All right, now I'm going to go back to Count One,

18    which is conspiracy to commit forced labor.

19         This Count charges the defendant with knowingly and

20    intentionally conspiring to commit the crime of forced labor.

21    Since some of the other counts in the indictment also included

22    a charge of conspiracy to violate other federal laws, pay

23    attention -- I know you're paying careful attention to

24    everything -- but I'm going to explain to you what a

25    conspiracy is.

1              A conspiracy is a kind of criminal partnership.

2    It's an agreement between two or more people to join together

3    to accomplish an unlawful purpose.  The essence of the crime

4    of conspiracy is an agreement or understanding to violate

5    other laws.  A conspiracy is punishable as a crime, even if it

6    does not achieve its purpose.

7              The crime of conspiracy to violate a federal law is

8    a separate and distinct crime from any offense that might have

9    been committed pursuant to the conspiracy.  That is because

10   the formation of a conspiracy or a partnership for criminal

11   purposes is in and of itself a crime.  It is separate and

12   distinct from the actual violation of any specific federal

13   law, such as the forced labor statute, which is called a

14   substantive crime.  That means you may find the defendant

15   guilty of the crime of conspiracy even though he might not

16   have committed the substantive crime that was the object of

17   the conspiracy.

18             The first count of the indictment charges that the

19   defendant, together with others, conspired to commit forced

20   labor.  To prove the crime of conspiracy charged in Count One,

21   the government must establish each one of the following two

22   elements beyond a reasonable doubt:

23             First, that two or more persons knowingly and

24   intentionally and entered into an agreement to commit forced

25   labor and;

1      Second, that the defendant knowingly and

2  intentionally became a member of the conspiracy.

3      The government must prove beyond a reasonable doubt

4  that the purpose of the conspiracy in this case was to commit

5  the crime of forced labor, and that the defendant knowingly

6  and intentionally joined that conspiracy.  If you find that

7  the government has proven each of these two elements beyond a

8  reasonable doubt, then you must find the defendant guilty of

9  Count One.  On the other hand, if you find that the government

10  has not proven either of these elements beyond a reasonable

11  doubt, then you must find the defendant not guilty.

12      The first element of this charge is the existence of

13  an agreement.

14      The government must prove beyond a reasonable doubt

15  that two or more people entered into an agreement to commit

16  forced labor, which is the object of a conspiracy.  One person

17  cannot commit a conspiracy alone.  The proof must convince you

18  that at least two people joined together in a common criminal

19  scheme.  The government does not have to prove that members of

20  the conspiracy met together or entered into any express or

21  formal agreement like a contract.  You do not have to find

22  that the alleged conspirators stated in words, or in writing,

23  what the scheme was, its object or purpose, or that the means

24  by which the scheme was to be accomplished.  Indeed, common

25  sense would suggest that when people do, in fact, undertake to

1    enter a conspiracy, much is left to an unexpressed

2    understanding.  What the government must show is the

3    conspirators came to a mutual understanding to cooperate

4    together to accomplish an unlawful act by means of a joint

5    plan or a common design.

6              The existence of an agreement to violate the law may

7    be established by direct evidence or by circumstantial

8    evidence.  You may infer the existence of a conspiracy from

9    the circumstances in the case and the conduct of the parties

10   involved.  However, because a conspiracy may be secret by its

11   very nature, there may not be direct proof of its existence.

12   In the context of conspiracy cases, actions may speak louder

13   than words.  You may consider the actions and statements of

14   all of those you find to be participants as proof that a

15   conspiracy existed.

16             If all of these evidence, direct and circumstantial,

17   establishes that the government proved beyond a reasonable

18   doubt that the minds of at least two of the alleged

19   conspirators, one of whom was the defendant, came to an

20   understanding and agreed to work together to accomplish the

21   object of the charged conspiracy, then the first element, the

22   existence of a conspiracy, has been established.

23             The second element is knowing membership in a

24   conspiracy.

25             If you conclude that the government has proved

JURY CHARGE                                    2184

1    beyond a reasonable doubt that a conspiracy existed, then you

2    must next consider the second element:  Whether the defendant

3    knowingly and intentionally participated in the conspiracy.

4            I've instructed several times about what knowingly

5    and intentionally means and you should follow those

6    instructions here.  A person acts knowingly and intentionally

7    if he acts voluntarily, deliberately and purposefully and not

8    because of ignorance, mistakes, accident or carelessness.  In

9    other words, did the defendant join the conspiracy with an

10   awareness of at least some of the basic gains and purposes of

11   the unlawful agreement, and did the defendant participate in

12   the conspiracy with the intention of furthering its goals.

13           The defendant's knowledge is something that you may

14   infer from the proven facts.  To become a member of the

15   conspiracy, the defendant did not have to know the identities

16   of every member of the conspiracy, nor did he have to know all

17   their activities.  Moreover, the defendant did not have to be

18   fully informed about the details or scope of the conspiracy in

19   order for you to infer that he knowingly participated.

20           A defendant can join a conspiracy at any time that

21   the conspiracy was operating.  The defendant did not have to

22   join a conspiracy at the beginning.  A conspiracy, once

23   formed, is presumed to continue either until its objectives

24   are accomplished or there is some affirmative act of

25   termination by its members.  Once a person is found to be a

JURY CHARGE                                    2185

1    member of a conspiracy, he is presumed to continue his

2    membership in the conspiracy until it is finished, unless it

3    is shown by some affirmative proof that he withdrew and

4    disassociated himself from it.

5           In addition, the extent of a defendant's

6    participation has no bearing on the issue of a defendant's

7    guilt.  A conspirator's liability is not measured by the

8    extent or duration of his participation.  Some conspirators

9    play minor -- sorry, some conspirators play major roles while

10   others play minor roles.

11          I want to caution you, though, that the defendant's

12   mere presence at the scene of an alleged crime does not, by

13   itself, make him a member of a conspiracy.  Similarly, mere

14   association with one or more members of the conspiracy does

15   not automatically make the defendant a member.  A person may

16   know or be friendly with a criminal without being a criminal

17   himself.

18

19          (Continued on next page.)

20

21

22

23

24

25

JURY CHARGE                                    2186

1        THE COURT:  (Cont'g.)  The fact they have may have

2   been together and discussed common interests does not

3   necessarily establish proof that the conspiracy existed or

4   knowing membership in the conspiracy.

5        A defendant's participation in the conspiracy must

6   be established by independent evidence of his own acts or

7   statements, as well as those of the other alleged

8   coconspirators, and the reasonable inferences that may be

9   drawn from them.

10        I further caution you that mere knowledge or

11   acquiescence without participating in the unlawful plan, is

12   not sufficient.  Moreover, a fact that a defendant's acts

13   without his knowledge merely happen to further the purposes of

14   the object -- or objectives of the conspiracy does not make

15   the defendant a member.  More is required under the law.

16        What is required is that a defendant must have

17   participated with knowledge of at least some of the purposes

18   or objectives of the conspiracy and with the intention of

19   helping achieve its unlawful ends.  If you find that the

20   government proved beyond a reasonable doubt that the defendant

21   knowingly participated in a conspiracy to commit forced labor,

22   then the government has met its burden on this second element.

23        Okay.  This is the fourth count, which is alien

24   smuggling conspiracy.  This charges the defendant with

25   conspiracy to engage in alien smuggling.  The relevant statute

1    provides, in pertinent part, that any person who knowing or in

2    reckless disregard of the fact that an alien has come to,

3    entered, or remains in the United States in violation of law,

4    transported or moves or attempts to transport or move such

5    alien within the United States by means of transportation or

6    otherwise in furtherance of such violation of law or conspires

7    to do the same has committed a crime.

8           The defendant is charged with conspiring to engage

9    in alien smuggling.  I have already given you the instruction,

10   general definition of conspiracy.  That's the agreement among

11   two or more people to commit a crime.  The crime of conspiracy

12   to violate a federal law is a separate offense from the

13   underlying crime.

14          It is a separate and distinct -- it is separate and

15   distinct from an actual violation of alien smuggling, which is

16   the object of the conspiracy and what we call a substantive

17   crime.

18          In order to find the defendant guilty of conspiracy

19   to commit alien smuggling, you must find that two or more

20   people agreed to commit the crime of alien smuggling, and the

21   defendant knowingly and intentionally became a member of the

22   conspiracy.  Here are the elements of alien smuggling.

23          First, that the alien workers were in the United

24   States in violation of the law.

25          Second, that the defendant or a coconspirator knew

JURY CHARGE                                        2188

1  or acted in reckless disregard of the fact that the alien

2  workers remained in the United States in violation of the law.

3          Third, that the defendant or a coconspirator

4  transported the alien workers within the United States.

5          And, fourth, that the defendant or a coconspirator

6  acted willfully to further the alien workers' illegal presence

7  in the United States.

8          The first element is that an alien was, in fact, an

9  alien at the time of the offense alleged in the indictment.

10 An alien is a person who is not a natural born or naturalized

11 citizen or a national of the United States.  A national of the

12 United States is someone who is born in a United States

13 territory.

14         Under the agreement between the United States of

15 America and the People's Republic of China, on the conditions

16 of construction of new embassy complexes in Washington and

17 Beijing, that's referred to as COCA, Chinese workers for a

18 private construction company can be admitted to the United

19 States under diplomatic visas for the purpose of performing

20 work on an approved construction projects on Chinese

21 government diplomatic facilities in the United States.

22         Working on other projects or remaining in the United

23 States after their work is done is a violation of the

24 conditions of those visas.  In other words, an alien who is

25 admitted to the United States under a diplomatic visa for the

1    purpose of performing certain construction work, but who works

2    on nonapproved construction projects or stays here after their

3    work is done is in the United States illegally.

4           The second element is knowledge or disregard of the

5    facts -- of the fact that an alien remained in the United

6    States in violation of the law.  In other words, to be guilty

7    of alien smuggling conspiracy, the defendant must have known

8    that the alien workers that he or his coconspirators

9    transported were aliens who were in the United States

10   illegally, or they must have acted with reckless disregard of

11   the facts about their status.

12          I instructed you before on knowledge.  Apply that

13   instruction here.  And just as a reminder, reckless disregard

14   means deliberate indifference to facts, that if considered and

15   weighed in reasonable manner, indicate the highest probability

16   that the alleged alien was, in fact, an alien, and was in the

17   United States unlawfully.

18          Said another way, reckless disregard means to be

19   aware of but consciously and carelessly ignore facts and

20   circumstances, clearly indicating that a person transported

21   was an alien who entered and remained in the United States

22   illegally.

23          The third element is transportation of an alien who

24   is in the United States unlawfully.  That does not mean

25   transporting a person from China to the United States, but

1    means transporting an alien who's already present here within

2    the United States.

3            The fourth element is willful conduct in furtherance

4    of the alien's illegal presence in the United States.  The

5    evidence must show a direct and substantial relationship

6    between the transportation and furthering the aliens' unlawful

7    presence in the United States.

8            If the transportation of illegal aliens is merely

9    incidental to the aliens' presence in the United States, it is

10   not a violation of the law.  The transportation is illegal

11   only when it is in furtherance of the aliens' unlawful

12   presence.  Transportation is in furtherance of the aliens'

13   unlawful presence when the transportation advanced or assisted

14   the aliens' illegal presence.

15           In determining whether there is direct -- whether

16   there was a direct and substantial relationship between the

17   transportation and furthering the aliens' unlawful presence in

18   the United States, you should consider all of the relevant

19   evidence, including the time of the transportation, place,

20   distance of the transportation, and the overall impact of the

21   transportation.

22           To conclude, if you find that the government proved

23   beyond a reasonable doubt that the defendant knowingly and

24   intentionally agreed with others to commit the crime of alien

25   smuggling, then you should find the defendant guilty of

JURY CHARGE                                    2191

1    Count 4.

2              As I have already instructed you, a conspiracy is a

3    crime even if it does not achieve its purpose.  The government

4    does not have to prove that the defendant or his

5    coconspirators actually committed the crime of alien

6    smuggling.  What the government must prove is that the

7    defendant voluntarily entered a conspiracy whose purpose was

8    to commit alien smuggling.

9              If you find the defendant guilty of Count 4, you

10   then have to decide whether he acted for the purpose of

11   commercial advantage or private financial gain.  The phrase

12   commercial advantage or private financial gain should be given

13   its ordinary and natural meaning.  Commercial advantage is a

14   profit or gain in money or property obtained through business

15   activity.  Private financial gain is a profit or gain in money

16   or property specifically for a particular person or group.

17   There is no requirement that the defendant actually received

18   some financial gain, however, you may consider any evidence

19   that the defendant did or did not receive financial gain in

20   deciding whether he acted for the purpose of achieving

21   financial gain.

22              The final count is visa fraud conspiracy.  This

23   count charges the defendant with conspiracy to engage in visa

24   fraud.  The relevant statute is Title 18, United States Code,

25   Section 1546(a), which provides that any person who utters,

JURY CHARGE                           2192

1   uses, attempts to use, possesses, obtains, accepts, or

2   receives any visa permit, border crossing card, alien

3   registration receipt card, or other document prescribed by

4   statute or regulation, for entry into or as evidence of

5   authorized stay or employment in the United States, knowing it

6   to have been procured by means of any false claim or

7   statement, or to have been otherwise procured by fraud or

8   unlawfully obtained or conspired to do the same has committed

9   a crime.

10          I have already instructed you on conspiracy law.

11  That applies here, as does the general definition of

12  conspiracy, which is an agreement among two or more people to

13  commit a crime.  Here, the defendant is charged with agreeing

14  with others to commit visa fraud.  Here are the elements for

15  the crime of visa fraud.

16          First, the defendant or his coconspirators uttered,

17  used, attempted to use, possessed, obtained, accepted or

18  received a document that was procured by means of a false

19  statement, or by fraud, or was unlawfully obtained.

20          Second, that the document was a nonimmigrant visa.

21          And, third, that at the time the document was

22  uttered or used or attempted to be used, possessed, obtained,

23  accepted, or received, that the defendant or his

24  coconspirators knew that the document was procured by means of

25  a false statement or by fraud or was unlawfully obtained.

JURY CHARGE                                              2193

1              The first element is that the person uttered, used,

2       attempted to use, possessed, obtained, accepted or received a

3       document that was procured by means of a false statement, or

4       fraud, or was unlawfully obtained.

5              To utter a document means to use the document by

6       means of a fraudulent representation that is as genuine.  To

7       use or attempt to use means to present the document to

8       immigration officers in an attempt to enter the United States.

9       A statement is false if it was untrue when made.

10             For a document to be procured by means of a false

11      statement or fraud, the false statement must have been

12      material.  A misrepresentation is material if has a natural

13      tendency to influence or is capable of influencing the

14      decision of the decision making body to which it is addressed.

15             It is not sufficient that an individual simply made

16      any false statement.  To constitute visa fraud, an individual

17      must have made a false statement that would tend to influence

18      or was capable of influencing the United States Department of

19      State's decision to issue a visa.  However, the false

20      statement need not have actually influenced the Department of

21      State's decision or had any actual effect, but it must have

22      been capable of doing so.

23             The second element is that the document in question

24      was a nonimmigrant visa.

25             The third element is that at the time the defendant

1    uttered or used or attempted to use or possessed or obtained

2    or accepted or received the document, the defendant or his

3    coconspirators knew that it was procured by means of a false

4    statement or by fraud or was unlawfully obtained.

5            I have already explained to you what knowledge means

6    and that applies here as well.

7            Acting knowingly means to act intentionally and

8    voluntarily.

9            The visa fraud conspiracy that's charged in Count 5

10   requires proof of at least one overt act for the purpose of

11   carrying out the conspiracy.  An overt act is any action

12   intended to help the object of the conspiracy, which in this

13   charge is uttering, using, possessing, obtaining, accepting or

14   receiving of nonimmigrant visas that were known to be procured

15   through false statement or fraud or other unlawful means.

16           An overt act does not have to be a criminal act, but

17   it must contribute to advancing the goals of the conspiracy.

18   The government does not have to prove that all overt acts

19   alleged in the indictment occurred, or that any overt act was

20   committed at precisely the time alleged in the indictment.  It

21   is sufficient for the government to prove beyond a reasonable

22   doubt that the overt act occurred at or about the time and

23   place stated.  You also do not have to find that the defendant

24   himself committed the overt act.  It is sufficient for the

25   government to show that one conspirator knowingly committed an

1  overt act in furtherance of the conspiracy, since in the eyes

2  of the law, such an act becomes the act of all members of the

3  conspiracy.

4          If you find that the defendant agreed to enter into

5  an unlawful agreement, to commit visa fraud, you must also

6  determine whether one of the members of the conspiracy

7  knowingly committed at least one overt act and that the overt

8  act was committed to further the goal of the conspiracy.  You

9  may only find the defendant guilty of this count if you find

10 that the government has satisfied the overt act required

11 beyond a reasonable doubt.

12         Here are the indictments -- the overt acts that are

13 charged in the indictment.

14         On or about December 10 of 2014, Landong Wang sent

15 an electronic communication to Dan Zhong in which Wang sought

16 Zhong's assistance to arrange for workers to enter the United

17 States from the People's Republic of China to perform work

18 contrary to the terms of the United States visas -- of their

19 United States visas.

20         The second overt act.  In or about June 2015, Zhong

21 and Wang caused workers to provide contracting work at a

22 residence in Old Brookville, New York, contrary to the terms

23 of their United States visas.

24         Third overt act.  In or about August 2015, Zhong

25 sent an electronic communication to Ying Randi Lin, concerning

1    the use of workers to provide labor in the United States,

2    contrary to the term of their United States visas, at a

3    residence in Old Brookville, New York.

4           I think we are onto the fourth one now.

5           In or about September 2015, Zhong and Ying Randi Lin

6    exchanged electronic communications concerning the use of

7    workers to provide contracting work at a residence in

8    Flushing, New York, contrary to the terms of their United

9    States visas.

10          The next overt act.  In or about October 2015, Zhong

11   and Wang caused workers to provide contracting work at a

12   residence in Fresh Meadows, New York, contrary to the terms of

13   their United States visas.

14          And the final overt act, in or about October 2015,

15   Landong Wang possessed workers' passports and visas at a

16   residence in Fresh Meadows, New York.

17          You must consider whether any overt act in

18   furtherance of the crime occurred within the Eastern District

19   of New York.  As a reminder, the Eastern District of New York

20   encompasses Kings County, Nassau County, Queens County,

21   Richmond County, which is Staten Island, Suffolk County, and

22   along with the Southern District of New York, the waters

23   within the counties of the Bronx and New York.

24          In this regard, it is enough to satisfy this element

25   if any act in furtherance of the crime occurred within this

JURY CHARGE                          2197

1    district.  If you find that the government has failed to prove

2    that any act in furtherance of the crime occurred within this

3    district or if you have a reasonable doubt on any element of

4    visa fraud, then you must acquit.

5             All right.  We are in the home stretch.

6             So I want -- this is the final part of my charge to

7    you.

8             In a few minutes, you are going to begin your

9    deliberations, and I want to give you some general rules about

10   your deliberations.

11            I want to remind you that nothing that I've said in

12   these instruction or at any point in the trial is intended to

13   suggest that I think you should reach any particular verdict.

14   Your verdict is entirely up to you.  In order for your

15   deliberations to proceed in an ordinarily way, you have to

16   have a foreperson.  In this district, traditionally, juror

17   number 1 acts as the foreperson, but when you begin your

18   deliberations, if you all decide that you want to elect

19   another foreperson, you can do so.

20            The foreperson will be responsible for signing all

21   communications to the Court and for handing them to the deputy

22   marshal during your deliberations.  But, of course, the

23   foreperson's vote is not entitled to any more weight than that

24   of any other juror.

25            Your duty is to reach a fair conclusion from the law

1    as I have given it to you and the evidence that's been

2    presented in this case.  This is an important duty.  When you

3    are in the jury room, listen to each other, discuss the

4    evidence and the issues in the case amongst yourself.  It is

5    the duty of each jury to consult with your fellow jurors, to

6    deliberate with an eye toward reaching a verdict, if you can

7    do that without violating your individual judgment.

8            No one should surrender a conscientious conviction

9    of what the truth is and what the weight and effect of the

10   evidence is.  Each of you must decide the case for yourself

11   and not merely give in to the conclusions of your fellow

12   jurors.  You should examine the evidence and the issues before

13   you with candor and with frankness, and with proper deference

14   to and respect for the opinions of your fellow jurors.

15           You should not hesitate to reconsider your opinion

16   from time to time, and to change your opinion if you are

17   convinced that you are wrong.  But don't surrender an honest

18   conviction about the weight and effect of the evidence just to

19   arrive at the verdict.  Your decision must be unanimous.  All

20   of you must agree.  It is extremely important that you not

21   communicate with anyone outside the jury room about your

22   deliberations or about anything related to this case.  You

23   can't use any electronic device or media, telephone, cell

24   phone, smart phone, tablet, computer, text messaging device,

25   blog, social networking site, to communicate with anybody

JURY CHARGE                                    2199

1    regarding any information about this case.  You can't research

2    or do any kind of investigation about the case until after I

3    accept your verdict.

4            There is only one exception to this rule about

5    communicating.  If you have a question for me, or if it

6    becomes necessary for you to communicate with me, you can send

7    a note through the deputy marshal that's signed by your

8    foreperson.  No member of the jury should try to communicate

9    with me accept by a signed note, and I will never communicate

10   with any member of the jury on any subject touching on the

11   merits of this case other than in writing or here in an open

12   court.  If during your deliberations you have questions about

13   the law or you want more explanation about the law, you may

14   send me a note.

15           During your deliberations, if you can't remember

16   part of the testimony, you may request that a witness'

17   testimony or portions of the testimony be sent back to you in

18   the jury room.  If you want to see any of the exhibits, we'll

19   send those back, too.

20           Sometimes it is not always easy to locate the --

21   what you want, if you want some particular piece of testimony,

22   so be as specific as you can in requesting exhibits or

23   portions of testimony.

24           The government must prove the defendant's guilt

25   beyond a reasonable doubt, as we've already talked about.  If

1    you find that the government meets this burden -- meets its

2    burden, then your verdict should be guilty.  If the government

3    does not meet its burden, your verdict must be not guilty.

4           To reach a verdict, you must be unanimous.  To

5    assist you, I prepared a verdict form that may help you in

6    your deliberations.  On the verdict sheets are spaces that are

7    marked not guilty and guilty for each count.  It is in no way

8    meant to tell you how to deliberate or decide the facts of the

9    case.  The foreperson, when you have reached a verdict, the

10   foreperson should use a check mark in the appropriate space

11   for guilty or not guilty for each count of the indictment, and

12   the foreperson should also initial and put the date between

13   each mark on the verdict form.

14          As I said before, each of you is entitled to your

15   opinion, but you should consult with each other, reach an

16   agreement based solely and wholly on the evidence, if you can

17   do so without contradicting your individual judgment.

18          Each of you must decide the case for yourself.

19   However, if after carefully considering all the evidence and

20   the arguments of your jurors your view is different from the

21   others, you shouldn't change your opinion just because you are

22   outnumbered.  Your final vote must reflect your conviction and

23   how the issues should be decided.  When you have reached a

24   verdict, just send me a note that is signed by your foreperson

25   that says you have reached a verdict.  Do not write down what

JURY CHARGE                                    2201

1    the verdict is.

2             You should never give a numerical count of where the

3    jury stands in its deliberations in any notes or

4    communications with the Court.

5             Ladies and gentlemen, the government, the defendant,

6    and the Court rely on you to give full and conscientious

7    deliberation and consideration to the issues and the evidence

8    before you.  When you do that, you carry out your oaths as

9    jurors to render a true verdict.

10            I am going to ask you to wait for a minute.  I want

11   to make sure I haven't left anything out.  So I am going to

12   consult with counsel at the side.

13            (Sidebar conference.)

14            (Continued on the next page.)

15

16

17

18

19

20

21

22

23

24

25

SIDEBAR CONFERENCE                    2202

1          (WHEREUPON, the following proceedings were had at

2     sidebar, out of the hearing of the open courtroom, to wit:)

3          (The following occurred at sidebar.)

4          MR. SOLOMON:  Is it the Court's intention to provide

5     the jury instructions, written instructions to the jury?

6          THE COURT:  We're going to fix them.

7          MR. SOLOMON:  I think we have a new nits.  I don't

8     think most of these things need to be read to the jury, but if

9     we can bring them up now.

10         THE COURT:   Sure.

11         MR. SOLOMON:  So the first one was on informant

12    witnesses.  My page number is 14.

13         So the sentence -- second sentence reads:

14    Informants are witnesses who the government paid for

15    information about a defendant.

16         THE COURT:  Yes.

17         MR. SOLOMON:  That's inconsistent with the evidence.

18    I think what's more accurate is, informants are witnesses who

19    provide information to the government and they are sometimes

20    paid.

21         THE COURT:  Here's the only thing about this.  We

22    distributed this to you with this language.  So are we talking

23    about -- I want to be accurate, but --

24         MR. SOLOMON:  That's the only edit of that type

25    of --

SIDEBAR CONFERENCE                    2203

1          THE COURT:  All right.  Did they both get paid?  I

2   don't remember.

3          MR. SOLOMON:  No.  Just Ken Wang got paid.

4          THE COURT:  I suppose it should be accurate.  Do you

5   object to that?

6          MR. CLEARY:  Tell me what you --

7          MR. SOLOMON:  Informants are witnesses who provide

8   information to the government.  They are sometimes paid.

9          MR. CLEARY:  I am fine with that.

10          THE COURT:  Informants are witnesses -- say it

11   again.

12          MR. SOLOMON:  Who provide information to the

13   government.  They are sometimes paid.

14          THE COURT:  Okay.

15          MR. SOLOMON:  Next one I have is on page 22, and

16   this might be an older version here.  You explained that you

17   would provide further instructions on reckless disregard.

18          THE COURT:  I wondered if I forgot that, but I said

19   it, didn't I?

20          MR. SOLOMON:  For -- you did.  You did make that

21   instruction.  So there is a further reckless disregard section

22   just on alien smuggling, but it did not occur in the forced

23   labor section theory.

24          MR. HEEREN:  It is on page 43, where the

25   instruction -- the more detailed instruction occurs.

SIDEBAR CONFERENCE                    2204

1          THE COURT:  Okay.  So that should go --

2          MR. HEEREN:  That's specific to alien smuggling, but

3    just swapping out the alien language.

4          THE COURT:  What page?

5          MR. HEEREN:  It should go on page -- I think page

6    30, under third element, knew or recklessly disregarded.

7          THE COURT:  This is -- okay.  And then insert that

8    right there.

9          MR. SOLOMON:  In other words, a version of that

10   language should appear in that element as well.

11         THE COURT:  Okay.

12         MR. SOLOMON:  I think there might be a version

13   control issue with page numbers.  I have page 29.  This is the

14   "knowingly" instruction for the first theory of Count 1.

15         THE COURT:  Yes.

16         MR. SOLOMON:  There's a reference -- page 28.  I

17   apologize.

18         So there's a reference to reckless disregard in that

19   instruction that should not apply.

20         THE COURT:  Where is this?

21         MR. SOLOMON:  This is second sentence of the first

22   paragraph.

23         MR. HEEREN:  Page 28, Your Honor.

24         THE COURT:  Okay.

25         MR. SOLOMON:  And last item I had was --

SIDEBAR CONFERENCE                    2205

1          THE COURT:  One of the jurors has to go to the

2    bathroom.  Let me let them go.

3              (Sidebar conference paused.)

4

5              (Continued on the next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                              2206

1              (Open court.)

2              THE COURT:  Sorry, folks.  This will take me a

3   couple minutes.  I know you need to use the facilities.  I

4   understand.  Please don't talk about the case.  But it may be

5   a minute or so.  Okay?

6              THE COURTROOM DEPUTY:  All rise.

7              (WHEREUPON, at 12:24 p.m., the jury exited the

8   courtroom.)

9

10

11             (Continued on the next page.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                    SIDEBAR CONFERENCE                2207

 1                (Sidebar conference continues.)

 2                THE COURT:  Next?

 3                MR. SOLOMON:  The last issue -- Mr. Heeren also has

 4     one issue.  Last issue I had there was a shorthand reference

 5     to Count 3 as --

 6                THE COURT:  Nothing in this charge was shorthand.

 7     Believe me.

 8                MR. SOLOMON:  I understand.  Apologies.

 9                THE COURT:  That's all right.

10                MR. SOLOMON:  Conspiracy to conceal immigration

11     documents.

12                MR. CLEARY:  What page?

13                MR. SOLOMON:  Page 33.  Aiding and abetting.

14                THE COURT:  Yeah.

15                MR. SOLOMON:  There's a reference to conspiracy to

16     conceal immigration documents, and I think the full title is

17     conspiracy to conceal passport and immigration documents.

18                THE COURT:  Okay.

19                MR. SOLOMON:  And then the following page, there was

20     another reference to concealing immigration documents.  This

21     was under the statutory definition.

22                THE COURT:  Right.

23                MR. SOLOMON:  So it is the second line under the

24     statutory definition.  I think it should be right there.  So

25     we would ask for the insertion of the words "passport or

SIDEBAR CONFERENCE                    2208

1    immigration documents."

2              MR. CLEARY:  Sorry, Alex, where are you?

3              MR. SOLOMON:  Page 34, under the statutory

4    definition.

5              MR. CLEARY:  Got it.

6              MR. HEEREN:  And then the last one, Your Honor, was

7    there was no mention of the special findings that needed to be

8    made in the verdict sheet.  I don't think the Court needs to

9    say much except to say, "There's some additional findings that

10   you may need to make.  Follow the instruction on the verdict

11   sheet, as appropriate," or something along those lines.

12             THE COURT:  All right.  I think I will tell them to

13   follow the instruction, assuming they can read.

14             MR. HEEREN:  That's fine.

15             THE COURT:  All right.  What have you got?

16             MR. CLEARY:  Nothing on the instructions.  I had one

17   issue about sending exhibits back.  You want to hear that now?

18             THE COURT:  No.  But we send them all back.

19             MR. CLEARY:  The instruction says you send them back

20   if they ask.

21             THE COURT:  I am going to send them all back.

22             MR. CLEARY:  My issue on that, on the bank

23   documents, which we stimulated to, we only stipulated to the

24   documents themselves, and the documents got offered by the

25   government, they had transmittal letters on them, and we would

SIDEBAR CONFERENCE                    2209

1    ask the government to delete the transmittal letters and just

2    put in the bank documents.

3                MR. SOLOMON:  That's fine.

4                MR. HEEREN:  I thought we had taken that out.

5                MR. SNELL:  No, they are not out yet.

6                THE COURT:  All right.  Anything else?

7                MR. CLEARY:  Nothing from us.

8                MR. SOLOMON:  Thank you, Your Honor.

9                THE COURT:  I think what I am going to do is, since

10   I am going to tell them about the verdict sheet, I think I

11   will change that language about the -- do you think it makes

12   sense to give them the reckless disregard on the --

13               MR. SOLOMON:  I think it would because you promised

14   to give that instruction.

15               THE COURT:  So that would be on page 30, and then I

16   also will tell them about the informant, and I will just tell

17   them that I misspoke, and I will tell them about the verdict

18   sheet.  So those are the three things that I am going to tell

19   them about.

20               So let's give them a few minutes to do whatever they

21   need to do, and then -- we will be in recess for just a couple

22   minutes.

23               Do you want the verdict sheets?

24               MR. CLEARY:  Thank you.

25               MR. HEEREN:  Thank you, Your Honor.

SIDEBAR CONFERENCE                     2210

1              THE COURT:  All right.  So let's reconvene in about

2   ten.

3              (WHEREUPON, at 12:24 p.m., a recess was had.)

4

5              (Continued on the next page.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                    2211

1              THE COURTROOM DEPUTY:  All rise.

2              THE COURT:  All right, everybody can sit down.

3              All right, so just to be clear, and I'm just going

4    to say this because it annoys me.  I gave out these

5    instructions before for the specific -- I know sometimes we

6    don't look at them and then when you hear them you decide you

7    want something else.  I'm going change them.  But it's

8    annoying.

9              You guys have not really annoyed me the whole trial,

10   but today.  All right.

11             So I'll add that reckless disregard business, which

12   is on page 30, and the informant.  And then I'll tell them to

13   read the verdict sheet.

14             All right, let's get the jury, please.

15             (Pause.)

16             THE COURTROOM DEPUTY:  All rise.

17             (Jury enters the courtroom.)

18             THE COURTROOM DEPUTY:  You may be seated.

19             THE COURT:  I'm just going to take a little bit more

20   of your time.  I want to clarify a couple of things.

21             I gave you an instruction about informant witness,

22   and I just want to clarify.

23             The informant witnesses in this case were Ray Tan

24   and Ken Wang.  And informants are witness whose provide

25   information to the government and they are sometimes paid, not

1    always.

2              I also talked to you about reckless disregard as one

3    of the states of mind.

4              So in the forced labor count, which is Count Two,

5    the third element of that crime is new or recklessly

6    disregarded.  And in this context of this case, reckless

7    disregard means deliberate indifference to facts that if

8    considered and weighed in a reasonable manner indicate the

9    highest probability that the venture was engaging in forced

10   labor.

11             And the last thing that I want to tell you about, I

12   did tell you that you'd have a verdict sheet.  The verdict

13   sheet does require at points you to answer a couple -- you can

14   all read, but I'm just telling you that in addition to

15   checking it off, it requires you to answer a couple of

16   questions.  So I think it will be clear when you look at it.

17             I just want to see the lawyer at the side one more

18   time to make sure that we dotted all our Is and crossed our

19   Ts.

20             (Continued on the next page.)

21             (Sidebar conference.)

22

23

24

25

SIDEBAR CONFERENCE                    2213

1            (The following occurred at sidebar.)

2            MR. SOLOMON:  Absolutely.

3            THE COURT:  Okay, nobody has any objections,

4    correct?

5            MR. CLEARY:  Correct.

6            MR. SOLOMON:  Yes.

7            THE COURT:  All right.

8            (End of sidebar conference.)

9            (Continued on the next page.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                           2214

 1                  (In open court; Jury present.)

 2                  THE COURTROOM DEPUTY:  Will the marshal please come

 3      forward and be sworn.

 4                  (Whereupon, the marshal was sworn.)

 5                  THE MARSHAL:  I do.

 6                  THE COURTROOM DEPUTY:  Thank you.

 7                  THE COURT:  All right, ladies and gentlemen, you may

 8      begin your deliberations.

 9                  THE COURTROOM DEPUTY:  All rise.

10                  THE COURT:  And just to be clear, we'll keep the

11      alternates separate from the 12 regular jurors.

12                  (Jury retires to deliberate at 12:49 p.m.)

13                  (Jury exits the courtroom.)

14                  THE COURTROOM DEPUTY:  You may be seated.

15                  THE COURT:  All right, so anything else.

16                  MR. SOLOMON:  One quick item, Your Honor.

17                  We'll provide the Court with proposed instructions

18      on forfeiture this afternoon.

19                  THE COURT:  Okay.  All right.

20                  And you anticipate that's going to be what, just no

21      witnesses?

22                  MR. SOLOMON:  I think just a little bit of argument,

23      five to ten minutes.

24                  THE COURT:  In front of the jury.

25                  MR. SOLOMON:  Correct.

PROCEEDINGS                                   2215

1          THE COURT:  Okay.  All right.  That's fine.

2          MR. CLEARY:  Do you want us to wait in the

3    courtroom?

4          THE COURT:  Just as long as you can -- if you're

5    easily reachable.

6          MR. CLEARY:  We can stay in the lounge down the

7    hall.

8          THE COURT:  You can do whatever you want.

9          Except don't go in the jury room.

10         (Whereupon, a recess was taken at 12:50 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                           2216

1                    (In open court; Jury not present.)

2                    THE COURTROOM DEPUTY:  All rise.

3                    THE COURT:  Everybody can sit down.

4              Oh good, the defendant is here.

5              Has everybody seen the note?

6              Okay, so it's signed by the foreperson, it reads:

7              Can we have the testimony of Ray Tan and Ken Wang,

8    specifically regarding passports.

9              As I said, it's signed by the foreperson.

10             So can you track down that testimony?

11             MR. CLEARY:  It will take us a while, but we

12   certainly can --

13             THE COURT:  It shouldn't take you a while.

14             Is there a lot of it?

15             MR. CLEARY:  I don't believe there is.

16             THE COURT:  I don't think there is either.

17             Is there a way to search it?

18             MR. RICHARDSON:  Yes.

19             THE COURT:  Okay.

20             This is marked as Court Exhibit 3.

21             (Court Exhibit 3, was received in evidence.)

22

23             (Whereupon, a recess was taken at 3:00 p.m.)

24

25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    2217

1

2              THE COURTROOM DEPUTY:  All rise.

3              THE COURT:  Hi everybody.  Sit down.

4              All right, more transcript work.

5              They also want the testimony -- here's the note,

6   which we're giving copies of to you.

7              The first witness, Officer Dina Reilly Lionakis, and

8   Fire Inspector Barret testimony regarding passports at 210

9   Pavonia.  Thanks.

10             That's signed by the foreperson.

11             This will be Court Exhibit 4.

12             (Court Exhibit 4, was received in evidence.)

13             THE COURT:  So I'm going to stay here while you find

14  that, because I don't think that's going to take too long.

15             (Pause.)

16             THE COURT:  I think while we're looking for that, we

17  should send the other testimony back.

18             So if you've got that let's --

19             MR. CLEARY:  We do have an agreement on that, Your

20  Honor.

21             So you're not going to read the testimony to them?

22             THE COURT:  No.

23             MR. CLEARY:  Okay.  So the testimony begins and ends

24  in most instances in the middle of a page.  I would object to

25  anything going back that's not part of the relevant portion

PROCEEDINGS                              2218

1    they asked for.

2              THE COURT:  I mean, I hardly think it makes a

3    difference.

4              What do you want them to do?  I mean it's admissible

5    evidence, it's --

6              MR. CLEARY:  Okay.

7              THE COURT:  I mean, do you really want me to black

8    out the thing before they can look at it?

9              MR. CLEARY:  All right.

10             THE COURT:  Are you okay?

11             All right, so let's send it back.

12             MR. SOLOMON:  (Proffering.)

13             (Pause.)

14             THE COURT:  So I can't imagine that this is an

15   incredibly complex set of negotiations.  It's a pretty

16   discrete kind of testimony.  Can we just send it back?

17             Oh, goody.

18             (Pause.)

19             THE COURT:  Folks, we have another note.

20             The jury indicates that they've reached a verdict.

21             So I just want to make sure we're all clear on this,

22   because they reached a verdict, do you want me to send that

23   testimony back?  It sounds like they don't want it.

24             Does everybody agree that that's the case?

25             MR. CLEARY:  I agree.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    2219

1              THE COURT:  Okay, all right.

2              Just so the record is clear, the note says:

3              We have reached a verdict.

4              It's Court Exhibit Number 5, and it's signed by the

5    foreperson.

6              So let's get the jury.

7              (Court Exhibit 5, was received in evidence.)

8              THE COURT:  I don't intend to bring the alternates

9    in.

10             Is that all right with everybody?

11             MR. RICHARDSON:  Yes, Your Honor.

12             THE COURT:  All right.

13             THE COURTROOM DEPUTY:  All rise.

14             (Jury enters the courtroom.)

15             THE COURTROOM DEPUTY:  You may be seated.

16             THE COURT:  Okay.  Ladies and gentlemen, we have

17   received your note indicating that you have reached a verdict.

18             Will the foreperson please rise.

19             Has the jury reached a verdict?

20             THE JURY:  Yes, Your Honor.

21             THE COURT:  With respect to Count One, forced labor

22   conspiracy.  How do you find the defendant Dan Zhong; guilty

23   or not guilty?

24             THE JURY:  Guilty.

25             THE COURT:  If you unanimously find the defendant

PROCEEDINGS                                    2220

1   guilty as to Count One -- well, I'll say:  Which of the

2   following do you unanimously find to the object of the

3   conspiracy in Count One:

4            A, provide or obtain a labor or services of one or

5   more persons by one or more prohibited means; B, benefit from

6   participation in a venture engaged in providing or obtaining

7   the labor or services or one or more persons by one or more

8   prohibited means or; C, both?

9            THE JURY:  C both.

10           THE COURT:  Count Two, forced labor.  How do you

11  find the defendant Dan Zhong; guilty or not guilty?

12           THE JURY:  Guilty.

13           THE COURT:  Which of the following do you

14  unanimously find to be the basis of guilt for Count 2:

15           A, provided or obtained the labor or services of one

16  or more persons by one or more prohibited means; B, benefited

17  from participation in the venture engaged in, providing or

18  obtaining the labor or services of one or more persons by one

19  or more prohibited means; or C, both.

20           THE JURY:  C both.

21           THE COURT:  Count Three, concealing passports and

22  immigration documents in connection with forced labor.  How do

23  you find the defendant Dan Zhong; guilty or not guilty?

24           THE JURY:  Guilty.

25           THE COURT:  Count Four, conspiracy to the commit

PROCEEDINGS                                    2221

1    alien smuggling.  How do you find the defendant Dan Zhong;

2    guilty or not guilty?

3              THE JURY:  Guilty.

4              THE COURT:  If you unanimously find the defendant

5    guilty as to Count Four, did the defendant act for the purpose

6    of commercial advantage or private financial gain?

7              THE JURY:  Yes.

8              THE COURT:  Count Five, conspiracy to commit visa

9    fraud.  How do you find the defendant Dan Zhong; guilty or not

10   guilty?

11             THE JURY:  Guilty.

12             THE COURT:  Thank you.  You may be seated.

13             Would either side like the jury poled?

14             MR. CLEARY:  I would, Your Honor.

15             THE COURT:  All right.

16             Ladies and gentlemen, through your foreperson you

17   say that you have found the defendant guilty of Count One,

18   forced labor conspiracy; Count Two, forced labor; Count Three,

19   concealing passports and immigration documents in connection

20   with forced labor; Count Four, conspiracy to commit alien

21   smuggling; and Count Five, conspiracy to commit visa fraud.

22             Juror Number 1, is that your verdict?

23             THE JUROR:  Yes.

24             THE COURT:  Juror Number 2, is that your verdict?

25             THE JUROR:  Yes.

PROCEEDINGS                          2222

1      THE COURT:  Juror Number 3, is that your verdict?

2      THE JURY:  It is.

3      THE COURT:  Juror Number 4, is that your verdict?

4      THE JUROR:  Yes.

5      THE COURT:  Jury Number 5, is that your verdict?

6      THE JUROR:  Yes.

7      THE COURT:  Juror Number 6, is that your verdict?

8      THE JUROR:  Yes.

9      THE COURT:  Juror Number 7, is that your verdict?

10     THE JUROR:  Yes.

11     THE COURT:  Juror Number 8, is that your verdict?

12     THE JUROR:  Yes.

13     THE COURT:  Juror Number 9, is that your verdict?

14     THE JUROR:  Yes.

15     THE COURT:  Juror Number 10, is that your verdict?

16     THE JUROR:  Yes.

17     THE COURT:  Juror Number 11, is that your verdict?

18     THE JUROR:  Yes.

19     THE COURT:  Juror Number 12, is that your verdict?

20     THE JUROR:  Yes.

21     THE COURT:  All right, the jurors have been polled.

22     All right, I need to see lawyers on the side for

23     just one matter.  Sit tight for just a second folks.  With the

24     court reporter, please.

25          (Continued on the next page.)

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                    2223

1          (The following occurred at sidebar.)

2          THE COURT:  Okay, so I guess in light of that

3   information, that you want the jury for forfeiture on Monday.

4          MR. CLEARY:  Correct.

5          MR. SOLOMON:  Yes.

6          THE COURT:  The other thing is ordinarily I would

7   tell them they can talk about the case.  I'm not sure that's a

8   great idea.

9          MR. CLEARY:  I agree that they should not.

10          MR. SOLOMON:  Agreed that they should not talk about

11   the case.

12          THE COURT:  All right, so what I'm going to tell

13   them is that we have one more phase that they need to come

14   back on Monday.  And we'll just get going then.

15          And it's just going to be argument?

16          MR. RICHARDSON:  Yes.

17          MR. CLEARY:  Yes.

18          THE COURT:  Tell me how this is going to work.

19          (End of sidebar conference.)

20          (Continued on the next page.)

21

22

23

24

25

PROCEEDINGS                                    2224

1          (In open court; Jury present.)

2          THE COURT:  Okay, ladies and gentlemen, when you

3    were selected, I told you that the case might last for four

4    weeks.  It's not going to last for four weeks, but I do need

5    your services for an additional task on Monday at 9:30.

6          Ordinarily I would tell you that since you've

7    reached a verdict you can talk about the case, but I need your

8    services for an additional consideration on Monday morning.

9    So I'm going to continue to direct you not to talk about the

10   case; not to look anything up at all about the case, about

11   anything.  And as I said, don't discuss it either amongst

12   yourself or with anyone else.

13         I thank you for your patience and for the attention

14   you've paid during the trial.  As I said, I'm going to prevail

15   upon you to give me just a bit more of your time on Monday.

16         So we'll see you here at 9:30 on Monday morning.

17         Please have a good weekend.  Thank you so much.

18         THE COURTROOM DEPUTY:  All rise.

19         (Jury exits the courtroom.)

20         THE COURT:  Wait.  Hold on.  I'm going to ask the

21   jurors to sit in the jury room for just a minute.

22         (Jury exits the courtroom.)

23

24         (Continued on the next page.)

25         (Sidebar conference.)

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

SIDEBAR CONFERENCE                    2225

1          (The following occurred at sidebar.)

2          THE COURT:  We have alternate jurors.  So I've never

3    actually been in this situation before.  So if a juror were to

4    be become unavailable during the course of the forfeiture

5    proceeding, I really don't see how we can use alternate jurors

6    in that proceeding, since they didn't sit.  I'm not -- I don't

7    know what the answer is.  Maybe --

8          MR. CLEARY:  I think you're right about that.

9          THE COURT:  I don't know if I'm right because I --

10   another reason why I'm so annoyed by this is because I'd like

11   to know about what to do with them, had I known that this was

12   going to be the procedure.  So I don't think any of us really

13   knows.

14         I hate to waste their time, but I would like to know

15   what the answer to that question is.  Because what's the

16   alternative?  Let's say a juror becomes unavailable?  Then

17   what?

18         MR. RICHARDSON:  We can theoretically proceed with

19   11, if that were necessary.

20         THE COURT:  You want me to release the alternates?

21         MR. SOLOMON:  We might have to research this and get

22   back to the Court, as soon as possible.

23         THE COURT:  I think I'll just ask them to come back.

24   We did tell them it might be four weeks.  Okay.

25         So let's get them.  So I'm going to tell them to

1    come back.  I'll thank them for their continued service.  I

2    guess they're going to figure out that there was a verdict.

3              It's likely.

4              I mean --

5              MR. SOLOMON:  They are going to hear the arguments

6    and understand from the arguments regarding forfeiture that

7    there has been a verdict.

8              THE COURT:  You know, I'm going to drive off that

9    bridge when we come to it.

10             Yes, I'll just bring them out and ask them to come

11   back on Monday.  All right.

12             (End of sidebar conference.)

13             (Continued on the next page.)

14

15

16

17

18

19

20

21

22

23

24

25

PROCEEDINGS                           2227

1            (In open court; Jury not present.)

2            THE COURTROOM DEPUTY:  All rise.

3            (Alternate Jurors enter the courtroom.)

4            THE COURT:  Everybody can sit down.

5            All right my stalwart group of alternate jurors, I

6     am going to ask you come back on Monday morning for some

7     additional proceeding at 9:30.  We shouldn't be taking too

8     much more of your time.

9            I'm going to direct you to continue not to discuss

10    the case, either amongst yourself or with anyone else.

11           Please don't read any news accounts or anything like

12    that.  But I will see you Monday morning at 9:30.

13           I hope you have a wonderful weekend.  Thank you.

14           THE COURTROOM DEPUTY:  All rise.

15           (Alternate jurors exit the courtroom.)

16           THE COURT:  All right, you can all have a seat.

17           So between now -- at least I'd like to know this

18    sooner rather than later what your positions are on the extent

19    to which should it happen, I don't have any reason to think it

20    should happen, but should one of the regular jurors become

21    unavailable, whether an alternate can be substituted in for

22    the second phase for the forfeiture portion of the trial.

23           I don't know what the answer is, but I'm sure you'll

24    tell me.

25           Is there anything else that we have to resolve

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                              2228

1    today?

2               MR. CLEARY:  No, Your Honor.

3               THE COURT:  No?

4               MR. SOLOMON:  So, Your Honor, how would you like to

5    address the issue of the additional jury instructions?

6               We provided the Court the government's proposed

7    instructions.  I understand the defense is providing their

8    instructions as well.

9               Are we going to have an additional charging

10   conference on Monday morning?

11              THE COURT:  I hope not.

12              No, I'll look at them.  I've asked -- I think we've

13   asked you to do that same thing of redlining.  I don't know

14   how -- how much difference you'll have, but I guess I'll find

15   out.

16              So I'll let you know -- we'll talk about that before

17   we bring the jurors out.

18              And just, do you have any approximation of how long

19   your presentation will be?

20              MR. SOLOMON:  Five to ten minutes.

21              THE COURT:  And what about you?

22              MR. SNELL:  Comparable.

23              THE COURT:  Okay.  So it's basically going to

24   consist of argument?

25              MR. SOLOMON:  Yes.

2229

1           THE COURT:  Then I'll give them another charge, and
2      then they'll decide what they're going to decide.
3           What's the standard of proof?
4           MR. SOLOMON:  Preponderance.
5           THE COURT:  Okay.  So let's meet back here Monday
6      morning then.  All right.
7           Thanks so much.  Have a good weekend.
8           MR. SOLOMON:  Thank you, Your Honor.
9
10                       *    *    *    *    *
11           (Proceedings adjourned at 4:30 p.m. to resume on
12      March 25, 2019 at 9:30 a.m.)
13
14                          I N D E X
15                                          PAGE
16
       JURY CHARGE                          2132
17
18                       E X H I B I T S
19      COURT                    PAGE
        3                        2216
20      4                        2217
        5                        2219
21
22
23
24
25

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*